Exhibit 7

US 169179613v1

```
                    UNITED STATES BANKRUPTCY COURT
                        DISTRICT OF DELAWARE


                                     .  Chapter 11
        IN RE:                       .
                                     .  Case No. 20-50850(JTD)
        MALLINCKRODT PLC, et al,     .
                                     .
                                     .  824 Market Street
                                     .  Wilmington, Delaware 19801
                          Debtors.   .
        . . . . . . . . . . . . . . .  Monday, November 23, 2020
        MALLINCKRODT PLC, et al,     .
                                     .  Adv. Proc. No. 20-50850(JTD)
                vs.                  .
                                     .
        STATE OF CONNECTICUT, et al. .
        . . . . . . . . . . . . . . .

                     TRANSCRIPT OF TELEPHONIC HEARING
                    BEFORE THE HONORABLE JOHN T. DORSEY
                     UNITED STATES BANKRUPTCY JUDGE

        APPEARANCES VIA TELEPHONE:

        For the Debtors:         Mark D. Collins, Esq.
                                 Michael J. Merchant, Esq.
                                 Amanda R. Steele, Esq.
                                 Brendan J. Schlauch, Esq.
                                 Robert C. Maddox, Esq.
                                 Sarah Silveira, Esq.
                                 Robert J. Stearn, Esq.
                                 RICHARDS, LAYTON & FINGER, PA




        (Appearances Continued)

        Audio Operator:          Electronically Recorded
                                 by CourtSmart and ECRO

        Transcription Company:   Reliable
                                 1007 N. Orange Street
                                 Wilmington, Delaware 19801
                                 (302)654-8080
                                 Email: gmatthews@reliable-co.com


        Proceedings recorded by electronic sound recording,
        transcript produced by transcription service.
```

```
          APPEARANCES VIA TELEPHONE:   (Continued)

          For the Debtors:              George A. Davis, Esq.
                                        Jeffrey E. Bjork, Esq.
                                        Elizabeth Marks, Esq.
                                        Jason B. Gott, Esq.
                                        Christopher R. Harris, Esq.
                                        Andrew Sorkin, Esq.
                                        Anupama Yerramalli, Esq.
                                        Hugh K. Murtagh, Esq.
                                        Sara Brown, Esq.
                                        Liza Burton, Esq.
                                        Jason Moehlmann, Esq.
                                        Viola So, Esq.
                                        Kelsey Zottnick, Esq.
                                        LATHAM & WATKINS, LLP

                                        John Bueker, Esq.
                                        Daniel Egan, Esq.
                                        Andrew O'Connor, Esq.
                                        Brien O'Conner, Esq.
                                        ROPES & GRAY, LLP

                                        Michael Cassel, Esq.
                                        Emil Kleinhaus, Esq.
                                        Philip Mindlin, Esq.
                                        Neil M. Snyder, Esq.
                                        WACHTEL, LIPTON, ROSEN & KATZ

                                        George Klidonas, Esq.
                                        KIRKLAND & ELLIS, LLP

          For the U.S. Trustee:         Jane M. Leamy, Esq.
                                        Richard Schepacarter, Esq.
                                        OFFICE OF THE U.S. TRUSTEE

          For the Official Committee
          of Unsecured Creditors:       Jamie L. Edmonson, Esq.
                                        James Lathrop, Esq.
                                        Natalie D. Ramsey, Esq.
                                        ROBINSON & COLE, LLP

                                        Cathy Hershcopf, Esq.
                                        Cullen D. Speckhart, Esq.
                                        COOLEY, LLP




          (Appearances Continued)
```

```
          APPEARANCES VIA TELEPHONE:   (Continued)

For the Official Committee
of Opioid Claimants:            Justin Alberto, Esq.
                                Sarah A. Carnes, Esq.
                                Anthony De Leo, Esq.
                                Stuart Komrower, Esq.
                                Patrick J. Reilley, Esq.
                                Andrew Roth-Moore, Esq.
                                COLE SCHOTZ, PC

                                Sara Brauner, Esq.
                                Mitch Hurley, Esq.
                                Arik Preis, Esq.
                                AKIN, GUMP, STRAUSS, HAUER
                                  & FELD, LLP

For Wilmington Saving
Fund Society:                   William Bowden, Esq.
                                Michael D. DeBaecke, Esq.
                                ASHBY & GEDDES

                                Sameer M. Alifarag, Esq.
                                PRYOR CASHMAN, LLP

Legal Representatives for
Future Claimants:               Robert S. Brady, Esq.
                                Jaime Chapman, Esq.
                                Edwin Harron, Esq.
                                Jaclyn C. Marasco, Esq.
                                James Patton, Esq.
                                Melanie K. Sharp, Esq.
                                YOUNG, CONAWAY, STARGATT
                                  & TAYLOR, LLP

                                Roger Frankel, Esq.
                                Richard Wyron, Esq.
                                FRANKEL WYRON, LLP

For Acthar IP Unlimited
Company:                        Daniel Astin, Esq.
                                Walter W. Gouldsbury, III
                                CIARDI, CIARDI & ASTIN

                                Don Haviland, Esq.
                                HAVILAND HUGHES, LLC



          (Appearances Continued)
```

```
         APPEARANCES VIA TELEPHONE:   (Continued)

   For Deerfield Partners,
   LP:                        Jeremy W. Ryan, Esq.
                              Christopher M. Samis, Esq.
                              Aaron Stulman, Esq.
                              POTTER, ANDERSON & CORROON, LLP

                              Benjamin Beller, Esq.
                              James Bromley, Esq.
                              Thiago Nascimento dos Reis, Esq.
                              SULLIVAN & CROMWELL

   For the Governmental
   Plaintiff Ad Hoc
   Committee:                 Brya M. Keilson, Esq.
                              MORRIS JAMES, LLP

                              Philip Bentley, Esq.
                              Kenneth Eckstein, Esq.
                              KRAMER, LEVIN, NAFTALIS
                               & FRANKEL, LLP

   For the Ad Hoc Group of
   First Lien Term Lenders:   David M. Fournier, Esq.
                              Kenneth A. Listwak, Esq.
                              Marcy J. McLaughlin Smith, Esq.
                              TROUTMAN PEPPER HAMILTON
                               SANDERS, LLP

                              Matthew Biben, Esq.
                              Michael J. Cohen, Esq.
                              Jennifer Conn, Esq.
                              Jeremy D. Evans, Esq.
                              Scott Greenberg, Esq.
                              Oscar Garza, Esq.
                              Eric Haitz, Esq.
                              Leesa Haspel, Esq.
                              Mark Kirsch, Esq.
                              Peter Saba, Esq.
                              GIBSON, DUNN & CRUTCHER, LLP

   (Appearances Continued)
```

```
APPEARANCES VIA TELEPHONE:  (Continued)

For the Ad Hoc Group of
Unsecured Noteholders:        Richard S. Cobb, Esq.
                              LANDIS, RATH & COBB, LLP

                              Alice B. Eaton, Esq.
                              Andrew N. Rosenberg, Esq.
                              Claudia Tobler, Esq.
                              PAUL, WEISS, RIFKIND, WHARTON
                               & GARRISON

For OCM Luxembourg OPPS
XB Sarl:                      Scott D. Cousins, Esq.
                              COUSINS LAW, LLC

For the Independent
Managers of the Specialty
Generic Debtors:              David Crichlow, Esq.
                              Geoffrey King, Esq.
                              KATTEN MUCHIN ROSENMAN, LLP

For the National Association
for the Advancement of
Colored People:               Ronald Gellert, Esq.
                              GELLERT, SCALI, BUSENKELL
                               & BROWN, LLC

For the Multi-State
Governmental Entities
Group:                        James S. Green, Jr., Esq.
                              SEITZ, VAN OGTROP & GREEN, PA

                              Kevin Maclay, Esq.
                              Todd E. Phillips, Esq.
                              Steven J. Reisman, Esq.
                              CAPLIN & DRYSDALE, CHARTERED

For the Ad Hoc First
Lien Notes Group:             William A. Hazeltine, Esq.
                              SULLIVAN HAZELTINE ALLINSON, LLC

For the Ad Hoc Revolving
Loan Participants Group:      James O. Johnston, Esq.
                              JONES DAY

For Deutsche Bank National
Trust:                        Kent C. Kolbig, Esq.
                              MOSES & SINGER, LLP

(Appearances Continued)
```

```
APPEARANCES VIA TELEPHONE:  (Continued)

For the Express Group
Entities:                   Michael Lyle, Esq.
                            Erik Lyttle, Esq.
                            Meghan McCaffrey, Esq.
                            K. John Shaffer, Esq.
                            QUINN, EMANUEL, URQUHART
                             & SULLIVAN, LLP

For the State of
Connecticut:                Christine M. Miller, Esq.
                            OFFICE OF THE ATTORNEY GENERAL

For New Pharmatop, LP:      James E. O'Neill, Esq.
                            PACHULSKI, STANG, ZIEHL
                             & JONES, LLP

For Board County of
Commissioners of San Miguel
County:                     Felicia Weingartner, Esq.
                            FELICIA WEINGARTNER, PC

For Deutsche Bank, AG
New York Branch:            Andrew Zatz, Esq.
                            WHITE & CASE, LLP

For the NAS Children:       Scott Bickford, Esq.
                            MARTZELL, BICKFORD & CENTOLA

For Bristol Myers:          Bruce Buechler, Esq.
                            LOWENSTEIN SANDLER, LLP

For MSP Recovery Claims
Series:                     David Hundley, Esq.
                            PENDLEY, BAUDIN & COFFIN, LLP

For Canadian Elevator
Industry Pension Trust
Fund:                       Laurence May, Esq.
                            EISEMAN LEVINE

Also Appearing:             Karin I. Bray, Esq.
                            GREENBERG TRAURIG, LLP

                            Mark Casey
                            Matt Peters
                            Bryan Reasons
                            Stephen Welch
                            MALLINCKRODT, PLC

(Appearances Continued)
```

```
APPEARANCES VIA TELEPHONE:  (Continued)

Also Appearing:              Nikan Ansari
                             Teddy Kindelan
                             Olivia Parsons
                             David Skatoff
                             Agnes Tang
                             DUCERA PARTNERS

                             Daun Chung
                             Brendan Hayes
                             GUGGENHEIM PARTNERS

                             Randall Eisenberg
                             ALIXPARTNERS, LLC
```

<u>INDEX</u>

| | <u>Page</u> |
|---|---|
| <u>RETENTION APPLICATIONS</u> | 10 |
| <u>INTERCOMPANY RESTRUCTURING TRANSACTIONS</u> | 14 |
| <u>BAR DATE MOTION</u> | 21 |
| <u>COURT DECISION RE:  SUPPLEMENTAL MOTION TO EXTEND STAY TO CERTAIN THIRD PARTIES</u> | 41 |

| <u>EXHIBIT</u> | <u>IDENT.</u> | <u>EVID.</u> |
|---|---|---|
| Welch Declaration Re:  Latham | | 13 |
| Welch Declaration Re:  Wachtell | | 13 |
| Welch Declaration Re:  Ropes | | 13 |
| Davis Declaration | | 13 |
| Davis Supplemental Declaration | | 13 |
| Mindlin Declaration | | 13 |
| Mindlin Supplemental Declaration | | 13 |
| O'Connor Declaration | | 13 |
| Peters Declaration | | 15 |

1         (Proceedings commence at 2:02 p.m.)

2             THE OPERATOR:  Thank you, Your Honor.  Recording

3    has begun, and we are now live.

4             THE COURT:  Thank you.

5             Good afternoon, everyone.  This is Judge Dorsey.

6    We're on the record in Mallinckrodt PLC, Case Number 20-

7    12522.

8             Before we begin, just a reminder, if you wish to be

9    heard, please use the raise your hand feature on the Zoom

10   call.  It makes it easier for me to identify who wants to

11   speak.  I see Mr. Gott already has his hand up.

12            And if you are in the waiting room, if you're not

13   on CourtCall, if you didn't sign up for CourtCall, we do not

14   allow you into the Zoom meeting.  And if you're signed up on

15   CourtCall, but you're not using a proper name, we do not

16   allow you in, either, in order to avoid having disruptions to

17   the Zoom call.

18            So, with that, I'll go ahead and turn it over to

19   debtors' counsel to run the agenda.

20            MR. GOTT:  Thank you, Your Honor.  Jason Gott from

21   Latham & Watkins.  We are here today for the debtors' omnibus

22   hearing in the Mallinckrodt PLC matter.

23            We filed an updated agenda today at Docket Number

24   611.  It's a long agenda, but there's really only one matter

25   that's contested, and that's a tribute to the engagement and

1   the cooperation that we're continuing to get from all corners

2   here in the cases, and that includes the U.S. Trustee, who

3   has been very helpful and very cooperative with their

4   comments, from our (indiscernible) parties, from the

5   committees, and from our secured creditor constituency.

6           To preview the hearing briefly, all that remains

7   from the agenda, after Your Honor entered several orders on

8   certification, are three of the debtors' retention

9   applications, a motion seeking authorization to execute

10  certain intercompany restructuring transactions, and our bar

11  date motion.  We'll plan to take them up in that order for

12  efficiency's sake because the bar date motion is the one

13  topic where we're going to have some argument, so we propose

14  to save that for last, unless Your Honor would prefer to

15  proceed differently.

16          THE COURT:  No, that's fine.  Thank you.

17          MR. GOTT:  All right.  First up then are the

18  debtors' retention applications for Latham & Watkins at

19  Docket Number 384, for Wachtell, Lipton, Rosen & Katz at

20  Docket Number 382, and for Ropes & Gray at Docket Number 380,

21  and those are Agenda Items 15 through 17.  And I lumped them

22  together because I think the resolution of the three is the

23  same (indiscernible) today.

24          As Your Honor heard during the November 20th

25  hearing, just on Friday, there was an obligation filed by the

 1    Acthar plaintiffs group to these retentions.  After the

 2    scheduling discussion at that hearing, the Acthar plaintiffs

 3    withdrew their objection and filed a limited objection in its

 4    place at Docket Number 604.  And based on the statements on

 5    the record of the November 20th hearing, based on our

 6    correspondence with counsel to the Acthar plaintiffs and the

 7    statements and the limited objection that they filed, our

 8    understanding is that the orders approving these three

 9    retention applications today are uncontested.

10         And so, presuming that's the case, I'll just

11    proceed with some housekeeping around declarations and the

12    orders.  But I'll pause now to make sure that we are

13    proceeding on that basis.

14         THE COURT:  Okay.  Is there anyone who disagrees

15    that, as of -- for today's purposes at least, the retention

16    motions are unopposed?

17       (No verbal response)

18         THE COURT:  Okay.  You may proceed, Mr. Gott.

19         MR. GOTT:  Thank you, Your Honor.

20         So, to address the housekeeping, we request that

21    the declarations filed in support of the three applications

22    be admitted into evidence, and these are the following:

23         For Latham's retention application, those are the

24    declaration of George Davis and the declaration of Stephen

25    Welch, which were both attached to the application at Docket

1    Number 384, as well as the supplemental declaration of George

2    Davis, filed at Docket Number 589, to address certain

3    requests from the U.S. Trustee.

4              THE COURT:  Mr. Gott, that last -- the last name

5    you just said did not come through.  There was some rustling

6    of papers that cut you off.

7              MR. GOTT:  Okay.  No problem.  That reference is to

8    the supplemental declaration of George Davis, filed at Docket

9    Number 589.

10             THE COURT:  Okay.  Thank you.

11             MR. GOTT:  For Wachtel's retention application,

12   those declarations are Philip Mindlin, and also Stephen

13   Welch, both of which were, likewise attached to the

14   application at Docket Number 382; as well as the supplemental

15   declaration of Philip Mindlin filed at Docket Number 588,

16   likewise, to address certain requests from the U.S. Trustee.

17             And for Ropes & Gray's retention application, the

18   relevant declarations are those of Brien O'Connor and of

19   Stephen Welch, which were attached to the application at

20   Docket Number 380.

21             Each of these witnesses -- Mr. Welch, Mr. Davis,

22   Mr. Mindlin, and Mr. O'Connor, are present on the call for

23   today's hearing and are available for cross-examination.  But

24   we would request that these declarations be admitted into

25   evidence.

1          THE COURT:  Is there any objection?

2      (No verbal response)

3          THE COURT:  They're admitted without objection.

4      (Welch Declaration Re:  Latham received in evidence)

5      (Welch Declaration Re:  Wachtell received in evidence)

6      (Welch Declaration Re:  Ropes received in evidence)

7      (Davis Declaration received in evidence)

8      (Davis Supplemental Declaration received in evidence)

9      (Mindlin Declaration received in evidence)

10     (Mindlin Supplemental Declaration received in evidence)

11     (O'Connor Declaration received in evidence)

12         MR. GOTT:  Thank you.

13         Turning briefly to the forms of order, just as a

14     point of order, we uploaded revised forms of order for the

15     Wachtell and Ropes & Gray retentions that addressed certain

16     comments from the United States Trustee's Office.

17         For the Wachtell order, the one substantive change

18     was to add a paragraph around the treatment of Wachtell's

19     retainer.  For the Ropes order, there is, likewise, a change

20     regarding the retainer held by Ropes, as well as an added

21     statement that Ropes will use reasonable efforts to avoid

22     duplication of services with the debtors' other

23     professionals.  And both of those revised forms of order were

24     approved by the U.S. Trustee and were shared yesterday with

25     the committees and with the Acthar plaintiffs.  And for the

1    third order, for Latham's retention, there have been no

2    changes from the originally filed version.

3              And so, absent any questions from Your Honor, we

4    would request entry of the orders approving the Latham, the

5    Wachtell, and the Ropes & Gray retention applications.

6              THE COURT:  Okay.  I have no questions.  I did

7    review the redlines, so I'm satisfied.

8              Is there anyone else who wishes to be heard?

9        (No verbal response)

10             THE COURT:  Okay.  I'm satisfied then, based on the

11   record, that the requested relief is appropriate and the

12   retention of the three firms is appropriate, and I will enter

13   the order.

14             UNIDENTIFIED:  (Indiscernible)

15             MR. GOTT:  Next on the agenda and for moving

16   through the hearing is Agenda Item 18, and that's the

17   debtors' intercompany restructuring motion.

18             And before a short presentation on this item, I

19   would move the declaration of Matthew Peters in support of

20   this motion -- which was filed at Docket Number 405 -- into

21   evidence.  Mr. Peters is present on the call for today's

22   hearing and is available for cross-examination.

23             THE COURT:  Is there any objection?

24        (No verbal response)

25             THE COURT:  It's admitted without objection.

1      (Peters Declaration received in evidence)

2           MR. GOTT:   Thank you, Your Honor.

3           So, by this motion, the debtors are seeking

4      authority to execute on a series of intercompany

5      restructuring transactions.   The net effect of these

6      transactions will be to save the debtors from needlessly

7      incurring as much as 12 million to $15 million per month of

8      income tax liability, beginning on December 26th, 2020, at

9      the start of the debtors' next fiscal year.

10          And while that justification speaks for itself, the

11     debtors recognize that, as debtors-in-possession, they must

12     be mindful that there are many, many parties-in-interest out

13     there, who, when they read this motion and they see the plan

14     movement of assets and the institution of new liabilities,

15     that they might be concerned about how all of this could

16     affect their rights.

17          So the debtors built into this transaction -- and

18     this is part of both the proposed order, and will also be

19     part of the transaction documents themselves -- there are a

20     number of protections for creditors.   These include what the

21     Court would have seen described in the motion and in the

22     order.   We have special provisions that will be placed in the

23     new notes being issued that subordinate those notes to other

24     claims and limit their recourse and principal amounts, based

25     on the value of the issuer's assets against its liabilities.

1            There are provisions in the order that the claims

2      and interests at the transferring debtors will travel with

3      the assets being moved, and that recourse at the recipient

4      entity will be cabined between its old claims and its old

5      assets on the one hand and its new assumed claims and new

6      received assets on the other hand.

7            And then, finally, we've built in several

8      reservation of rights for all creditors, especially those who

9      have engaged with us to make sure that all interests were

10     properly protected with those goals in mind.

11           And that's an important point here.  We've had the

12     benefit of some really great engagement by all our key

13     creditor groups to add to and to clarify the form of order,

14     and that includes our RSA parties, the ad hoc term loan

15     group, the credit agreement agent, the ad hoc group of

16     revolver lenders, the trustee under our first and second lien

17     notes, the unsecured creditors' committee, the opioid

18     claimants' committee, and also the -- certain of the

19     counterparties whose contracts we will assume and assign in

20     these transactions.

21           Of course, each group has been focused primarily on

22     its own interests and the interests of the creditors they

23     represent in certain cases.  And -- but I think what that

24     means is that, at the end of the process, we've reached a

25     balanced resolution.  Tax claims and interests will be

1   properly guarded.  Go forward relationships are clearly

2   delineated.  And all the parties that have engaged with us

3   seemingly feel that they will be protected.

4        The resolutions that we've reached are mostly all

5   shown in the revised form of order we filed in the last

6   couple of hours at Docket Number 609.  We also included a

7   redline to the originally filed form.  And our understanding

8   is that all substantive comments, at least that we've

9   received (indiscernible) hearing are resolved by that form of

10  order.  Although I'll note that we are still working on some

11  language tweaks that we will be working to address with all

12  the parties after today's hearing.  And we expect to be in a

13  position to file a further revised form of order under

14  certification, either tonight or perhaps tomorrow.

15       But absent any questions from the Court -- and I'm

16  happy to walk through either the redline that was filed or to

17  address specific questions, if there are any -- I think we

18  would leave it at that, with the intent being to file the

19  order on certification.

20       THE COURT:  Okay.  No, I don't have any questions.

21  I did see the redline before the hearing, so I'm familiar

22  with the relief that's being requested.

23       Ms. Speckhart raised her hand.

24       MS. SPECKHART:  Are you able to hear me, Your

25  Honor?

18

1        THE COURT:  I can.  Thank you.

2        MS. SPECKHART:  Great.  Good afternoon, Your Honor.

3   Cullen Speckhart, for the record, of Cooley, LLP, appearing

4   on behalf of the Official Committee of Unsecured Creditors in

5   this case.

6        And just briefly, to offer some perspective on the

7   topic of the intercompany motion, which was filed on November

8   2nd, after what was clearly a very thorough consideration by

9   the debtors of their corporate income tax strategy and how to

10  optimize their structures, in light of recent changes to the

11  law.

12       The intercompany motion does indicate, as Mr. Gott

13  just noted, that no creditors will be prejudiced by the

14  requested relief for a number of reasons.  And in approaching

15  this motion, we were particularly interested in understanding

16  what those reasons are, and just as importantly, how that

17  preservation of creditor interest and related protections

18  could be demonstrated in a way that would allow us to remedy

19  that no harm to creditors would be done.

20       And in our view, that kind of understanding

21  requires more than just a high level conception of what the

22  request entails, but a deeper knowledge of how value is

23  intended to move within the corporate structure to capture

24  the tax advantages that we all believe are worthwhile to

25  pursue.  And I have to say the debtors were quite patient in

1    helping us and the committee's tax professionals to get to a

2    place where we're comfortable in our own awareness of what's

3    involved in the transaction and in revising the order to

4    provide for certain tools that will be useful to us in our

5    efforts to evaluate the economic consequences along the way

6    and after the fact.

7          So we understood from the very beginning how

8    critical the timing is here.  And while we could have

9    probably spent several months learning and considering the

10   finer points of Irish tax law as they operate on the debtors,

11   we didn't want to cause any detrimental delay.  So we worked

12   very hard to learn the material on a condensed time frame and

13   to achieve a level of ongoing visibility that we think is

14   appropriate to test the transactions and their impact on the

15   interests of unsecured creditors.

16         So we support the debtors in their business

17   judgment and we're satisfied with the provisions of the

18   revised order by which the transactions will be implemented

19   under 363(b)(1).

20         THE COURT:  Thank you, Ms. Speckhart.  I appreciate

21   the comments.

22         Mr. O'Neill raised his hand.

23         MR. O'NEILL:  Yes, Your Honor.  Good afternoon.

24   Can you hear me okay?

25         THE COURT:  I can.  Thank you.

1          MR. O'NEILL:  Good afternoon, Your Honor.  James

2     O'Neill appearing on behalf of New Pharmatop, LP.

3          New Pharmatop's agreement is being assumed as part

4     of the transaction, and we've worked with Mr. Gott and his

5     team on language, which has been incorporated into the form

6     of order that appears in the revised order at Paragraph 14.

7     It includes the cure amount for New Pharmatop and also terms

8     regarding the payment.

9          We're appreciative of the debtors' help in getting

10    us to this point.  And our informal comments are resolved as

11    a result of this language being added to the order.  Thank

12    you.

13          THE COURT:  Thank you, Mr. O'Neill.

14          Anyone else wish to be heard?

15       (No verbal response)

16          THE COURT:  Okay.  Mr. Gott, who are you still

17    needing to negotiate some of the language with, or at least

18    tweak some of the language with?

19          MR. GOTT:  That is a -- there's a complicated

20    answer there because each one of the gives and takes requires

21    some back and forth between different constituencies.  But we

22    hope to have it all resolved very shortly.

23          There -- I think the -- what's left to be done are

24    mainly clarifications around a particular -- the reference

25    dates used in various provisions of the order and whether

1    the, you know, potential harm to creditors or the base line

2    against which any perceived harm to creditors would be

3    tested, you know, just clarifying that that will be as of

4    immediately before the restructuring transactions are

5    implemented.

6              THE COURT:  Okay.  Thank you, Mr. Gott.

7              All right.  Well, based on the representations and

8    the record presented, I'm satisfied that the requested relief

9    is appropriate and subject to receipt of the final version of

10   the form of order under COC.  I will enter the order when I

11   receive it.

12             MR. GOTT:  Thank you, Your Honor.

13             And that takes us, last, to Agenda Item 14, back up

14   the agenda.  Next, the debtors' bar date motion, filed at

15   Docket Number 270.

16             The bar date represents an important step here

17   toward plan confirmation and emergence, as it always does.

18   The claims information to be gathered by the bar date process

19   will allow the debtors to allocate recoveries for general

20   unsecured creditors and to funnel that information into the

21   disclosure statement, to make sure voting creditors have

22   appropriate information, as required under the Bankruptcy

23   Code.  So setting the bar date now will ensure that the

24   debtors can meet their milestones and proceed on the pace

25   that they currently carry towards confirmation.

1       We're proposing to send out notices of the bar date

2   within five business days after filing our schedules and

3   statements.  And so, in all likelihood, that period will

4   begin likely during the last week of the year or even to the

5   first day or two of the new year, given that our deadline to

6   file the schedules and statements is December 24th.

7       We received comments on the proposed form of order

8   from several parties, including the U.S. Trustee, certain

9   funded debt creditors, and the Official Committee of

10  Unsecured Creditors.  We filed a revised form of order this

11  morning at Docket Number 607.

12      The most material change from those comments is

13  that we agreed to extend the claims filing period for non-

14  governmental creditors to 45 days from the original 35.  And

15  that was based on a request from the unsecured creditors'

16  committee.

17      And there's also been one further change since this

18  morning, which we tried to circulate quickly ahead of the

19  hearing, just so no one was caught by surprise, although we

20  think it's -- we don't think it's contentious.  And that was

21  to add the following proviso at the end of some language that

22  had been requested by the Chubb Companies, which appears in

23  Paragraph 19.  An the proviso reads:

24          "Provided further that the debtors and all parties-

25          in-interest's rights, defenses, and objections in

1          respect of any claims filed by the Ace Companies or

2          the Chubb Companies, other than for the express

3          reasons listed in Subpoints (1) through (3) of this

4          sentence, are fully preserved."

5               And we'll, of course -- you know, we'll make sure

6     that that change is apparent to all parties and that they'll

7     have time to review it and ensure that they have no

8     objections.

9               But the good news on the front for all those

10    comments we received is we've resolved the vast majority of

11    them.  And if the motion is granted, then we expect to have a

12    final form of order to file on certification shortly after

13    the hearing.

14              And Your Honor, that takes me to the two responses

15    we've received formally on the docket.  Those are the only

16    objections to the bar date motion, which was filed by the

17    Acthar plaintiffs at Docket Number 422.  We did have

18    discussions with the Acthar plaintiffs around resolving the

19    objection, but ultimately, we could not resolve all of their

20    issues.

21              And we've also been in discussions with the opioid

22    claimants' committee around the bar date order and the

23    proposed structure, but there is a difference of opinion

24    there, as Your Honor may have seen from the OCC's statement

25    that was filed at Docket Number 566.

1    So, again, aside from those two parties, we have no

2    other responses to the order at this time.  And at this

3    point, I suggest it may make sense to have counsel for the

4    Acthar plaintiffs present their objection to the Court.

5         THE COURT:  All right.  I see Mr. Haviland has

6    raised his hand.  Go ahead, Mr. Haviland.

7         MR. HAVILAND:  Good afternoon, Your Honor.  So I

8    want to begin by thanking Mr. Gott for making himself

9    available to us.  As you've heard in the past from others,

10   the debtors' counsel have been very willing to give up their

11   time, day and night and over the weekend.  And we did receive

12   some comments over the weekend and tried to get to finality.

13        I don't want to bury the lead, Judge.  There were

14   three issues we raised.  One is the bar date itself, one is

15   the desire of the Acthar plaintiffs to file a class proof of

16   claim, and the third was concerns about the notice, plan, and

17   proposal for that.

18        Mr. Gott and I did agree that, with some additional

19   language that was added to the order at Paragraph 3, you'll

20   see, Judge, that there's nothing in the order intended to

21   permit or prohibit any party from seeking permission from the

22   Court to file a class proof of claim on proper motion.  So

23   that issue has been resolved, Judge, by that language.  We

24   recognize there is a procedure for the Court to decide

25   whether to allow class proofs of claim.  We just wanted to

1    make clear that, by the motion and the Court's order, that

2    that wasn't precluded.

3            And we're going to be moving forward with that

4    probably right after the holiday, to get, hopefully, a

5    briefing schedule with debtors' counsel that we can have that

6    proceed on a track that Your Honor is comfortable with.

7            And that then takes me to the next two issues

8    because they key off of that.  And just to be clear, Judge,

9    three of the Acthar plaintiffs that you've been hearing from,

10   most importantly Rockford, they are putative class

11   representatives in cases under Rule 23, and have been for

12   years.

13           And in fact, the debtors' Chapter 11 filing

14   preceded the Rockford deadline for filing the Rule 23 motion

15   by five days.  It was due to be filed that week.  I think

16   they filed on a Monday; we were going to file our class

17   motion on Friday.  So that was an immediate concern of our

18   clients, to make sure that we have the opportunity now, in

19   the bankruptcy, to file a class proof of claim, to allow that

20   representative status to proceed.  But I won't belabor that

21   issue, Judge.  We did reach agreement with the debtors that

22   that process should take place after this procedure.

23           The bar date was a concern of ours, Judge, because

24   of the 35 days.  It seemed -- and I realize it doesn't line

25   up with the bankruptcy procedures.  But in our world, where

1    we've got thousands and thousands of unsecured claimants who

2    have purchased Acthar, we're waiting on that notice to know

3    when to proceed.  And Your Honor heard a lot through the

4    proceedings in the last month about the notoriety of this

5    case, the 60 Minutes.  And so, without getting that notice

6    and knowing that this has moved to a different phase and the

7    opportunity now exists to submit an unsecured proof of claim,

8    we're concerned that the claims won't go file.

9         So that was the discussion I had with Mr. Gott,

10   about how that might happen, so that we could make sure that

11   we had a robust notice period, and then enough time for folks

12   to respond, realizing that mail notice has some issues with

13   what's been going on with the mail service.  I know Your

14   Honor probably has seen what's happened in the election

15   arena.  And we're just concerned about that bar date being

16   really too tight for that.

17        It was extended ten days.  I will tell Your Honor,

18   we had originally proposed could we not have the same date as

19   the Government, April the 12th.  I then said to Mr. Gott I

20   was willing to cut the baby, if you will, and agree to St.

21   Patrick's Day.  And then, finally, my last proposal, as I was

22   bidding against myself, I said give me March 1, and we can

23   take that back to our clients and co-counsel.

24        I respect the debtors' counsel had some issues in

25   terms of that changing of the date from 45 days even two more

1    weeks, but that's where we left it.  Our final proposal was

2    March the 1st, which I think gives us six weeks, as opposed

3    to the current -- I'm sorry -- eight weeks, as opposed to the

4    six weeks we currently have.  So that's where it is, Judge.

5           I thought that the 60 days was appropriate, given,

6    as I said, the issues with the mails and responsive periods

7    and all that's going on in people's lives these days.  But we

8    leave that to the Court to decide.  I think we're looking

9    basically at Valentine's Day versus the 1st of March.

10          And then, finally, on the notice -- I know Your

11   Honor probably read in our objection -- I'm always interested

12   in where the Rule 23 procedures align with the Bankruptcy

13   Code.  And all courts recognize the Supreme Court in Mullane,

14   that first-class mail notice is the best practicable under

15   the circumstances.  And I understand the debtors are

16   proposing to send first-class mail notice to all known

17   unsecured creditors.  We had some good discussions with Mr.

18   Gott about that.

19          It's our position that the purchasers of Acthar are

20   known by the company.  Attached to one of our complaints, we

21   had the actual forms that are filled out by doctors, and the

22   patients fill it out, as well.  So the medication is sent to

23   people's homes, nurses are sent to their homes, so ...

24          But we did reach an agreement with Mr. Gott that

25   that is an issue that can be addressed down the road, in

1  conjunction with the class claim process.  So I don't want to

2  tell you that we didn't object to the proposed plan, as

3  stated, because we thought that the, quote, "unknown

4  creditors" can be known.  But that really gets to a question,

5  I guess, Judge, of ascertainability [sic] and the

6  reasonableness of the debtor pulling that data and being able

7  to mail notice to people's homes.

8         So the bar date issue is a question of two weeks.

9  The notice, I believe, can be taken up down the road.  And we

10 have agreement on class claims.  That was a long way of

11 saying that I appreciate Mr. Gott's efforts.  I thought we

12 got really far along on an issue of significance to the

13 Acthar plaintiffs.  But we leave it to the Court to decide

14 how best to proceed.  Thank you.

15        THE COURT:  Thank you, Mr. Haviland.

16        Ms. Ramsey, you had your hand up.

17        MS. RAMSEY:  Thank you, Your Honor.  Can you hear

18 me okay?

19        THE COURT:  I can, thank you.

20        MS. RAMSEY:  Thank you.

21        Good afternoon.  For the record, Natalie Ramsey,

22 Robinson & Cole, appearing on behalf of the Official

23 Committee of Unsecured Creditors.

24        Your Honor, as Mr. Gott indicated, we have been

25 actively engaged in discussions with the debtors, really,

1    since our retention.  And the Court may recall that the

2    official committee is a very diverse group of claimants and

3    represents really the diversity of the interests of our

4    constituents.  So, accordingly, our comments and our

5    discussion was very wide-ranging.

6           As Mr. Gott indicated, it's important, first of

7    all, to talk about the period of time.  And the additional 10

8    days, we think, is a reasonable compromise between our

9    desire, when we started off, Your Honor, at 60, 90 days, but

10   recognizing that the debtor has certain milestones in the

11   RSA, 45 days was an agreeable period to the committee.

12          We also, as Mr. Haviland had talked with the debtor

13   extensively about ensuring that there was nothing in the bar

14   date order that would prohibit a party from seeking

15   permission of the Court to proceed with a class proof of

16   claim.  And Your Honor, now that that is expressly written

17   into the order and not just absent as a prohibition from it,

18   we are very much supportive of that.

19          A third significant change, Your Honor, was

20   providing a non-mandatory provision for holders of debt

21   claims to file a single master proof of claim.

22          And finally, Your Honor, a significant change to us

23   was providing that counsel representing un-manifested

24   asbestos claimants could file a single claim with an exhibit

25   noting the individuals that they had identified that might

1    have claims based on exposure.

2           As part of that, Your Honor -- and you'll hear more

3    about this on December the 7th, in connection with the motion

4    for an FCR -- one of the important aspects to us, also, was

5    to specifically leave open a door for an eventual 524(g)

6    trust resolution and channeling injunction for the asbestos

7    claimants.  The debtor has currently indicated that it is not

8    intending to proceed with that relief, but we didn't want to

9    foreclose it, and we wanted to make it clear that we were not

10   foreclosing it through the bar date order.

11          Although we had requested more extensive changes,

12   Your Honor -- and as the Court knows, some of our committee

13   members, in their individual capacities, are not satisfied

14   with the changes that have been made up to this point.  The

15   committee, as a whole, as a fiduciary, has not objected and

16   supports the bar date order as revised.

17          We finally just wanted to add, Your Honor, again --

18   you've heard this a lot -- but we appreciate very much

19   (indiscernible) the debtor working with us to reach this

20   resolution.

21          THE COURT:  Thank you, Ms. Ramsey.

22          MS. RAMSEY:  Thank you.

23          THE COURT:  Mr. Preis, you have your hand up.

24          MR. PREIS:  Good afternoon, Your Honor.  Can you

25   hear me?

1            THE COURT:  I can.  Thank you.

2            MR. PREIS:  Your Honor, Arik -- for the record,

3    Arik Preis, Akin, Gump, Strauss, Hauer & Feld.  We are

4    proposed counsel to the Official Committee of Opioid Related

5    Claimants.

6            Your Honor, we -- per the extension granted to us

7    by the debtors, we filed a very short statement regarding the

8    motion, it is Docket Number 566.  It is not my intention to

9    repeat the statements we made in that motion, but I do want

10   to mention a few things to you today and make, basically,

11   three points.  The first is as follows:

12           At the beginning of the case, the debtors announced

13   that it was their current intention not to seek the

14   establishment of a bar date for any opioid related claimant.

15   Although they apparently have reserved their rights to seek

16   the establishment of an opioid related bar date in their

17   motion and proposed form of order, nothing in what they have

18   said to date evidences anything other than their intent not

19   to seek a bar date for the opioid claimants.

20           We disagree with this decision, and we've had a few

21   discussions with the debtors about this.  Admittedly, the

22   debtors have been focused on numerous things to date, and so

23   the depth of those discussions have not been at the level

24   they deserve throughout absolutely no fault of the debtors.

25   We hope to continue those discussions, including whether a

1    bar date would be needed for opioid related claimants,

2    whether there be different proofs of claim forms, the breadth

3    and extent of a noticing program, et cetera.

4    　　　　We understand that nothing in the relief requested

5    is being -- today would exclude the establishment of a bar

6    date for opioid related claimants; and, as such, we're not

7    objecting to the relief being sought today.  That being said,

8    if we are unable to reach our issues -- resolve the issues

9    consensually, we may be back in front of Your Honor seeking

10   your assistance in helping us resolve that issue.  So that's

11   the first part.

12   　　　　The second point -- because we do believe in

13   flagging issues for Your Honor, as we try to do each time

14   we're in front of you -- we wanted to note that we believe

15   the debtors' decision not to seek approval of an opioid

16   related claims bar date is closely intertwined with their

17   motion to appoint a future claims rep, as well as that

18   proposed rep's request to retain three sets of legal

19   advisors, one financial advisor, and one investment banker.

20   　　　　The debtors have agreed to adjourn the hearing on

21   the retention of the proposed FCR to December 7th, and our

22   objection deadline is now this Saturday, November 28th, at 5

23   p.m.  And the debtors' response deadline is Thursday,

24   December 3rd, at noon.

25   　　　　The proposed FCR also agreed to adjourn the hearing

1   on its retention application to December 7th, but was

2   unwilling to extend the objection deadline for the retention

3   of its professionals past this Wednesday, November 25th, at 7

4   p.m.  Therefore, again, to flag something for Your Honor,

5   unless we reach resolution, we will be filing responses to

6   all six motions within the next six days, but separately and

7   on different days, unfortunately.  In these responses, we're

8   going to address the relationship between the debtors'

9   proposed manner to avoid having an opioid claims bar date and

10  the relief requested in those motions.  Again, I raise this

11  to emphasize that none of this is going to be decided until

12  December 7th.

13          So, third, because of this timing and because of

14  our relief -- our belief that the issues are intertwined, we

15  asked the debtors to modify the order slightly, to insert a

16  provision stating that the mailing deadline for the relief

17  being sought today will not occur until the Court makes a

18  determination with regard to the establishment of a opioid

19  claims bar date, one way or the other.

20          Given that, as you just heard from Mr. Gott, the

21  mailing deadline is likely not to occur until the second half

22  of December, maybe early January, the way we understand it,

23  we figured that all of the opioid related issues could be

24  decided, as it relates to the bar date and the FCR, before

25  then.  And then the debtors, perhaps more efficiently, could

1    just have one mailing solicitation date, but with two

2    different bar dates, two different noticing procedures

3    potentially, and two different proof of claim forms.

4          The debtors declined to grant our request and told

5    us merely that the issue that we are raising is not relevant

6    to today's motion.  We disagree.  We actually think it's

7    extremely relevant to ensuring that creditors are not

8    confused by whatever they may see in publications,

9    newspapers, or any other noticing forum of communication.

10   And given that what we're proposing is not going to affect

11   the time line of the case, we would think that we could and

12   should deal with it in the month of December, perhaps at the

13   omnibus hearing scheduled for the 22nd.  That will give us

14   time for the debt -- you know, to talk to the debtors

15   further.

16         And if they're willing to establish a bar date, we

17   think that that could occur in the month of December.  And if

18   not, we can resolve it at the December 22nd hearing.  We

19   think the debtors would have to then submit some sort of

20   written submission as to why they're not going to seek an

21   opioid claim related bar date, and all the parties would have

22   a right to object.  Again, in taking heed from the

23   noteholders statement that was filed last week, nothing we're

24   asking for today would change the time line of the bar date

25   for the non-opioid creditors.

1     I realize the time line I'm setting forth here is

2  not something we've put in a motion.  But we were a little

3  surprised, frankly, that the debtors didn't just agree to the

4  clarification that we asked, given that it doesn't really

5  affect the timing that they lay out in their motion or their

6  proposed form of order, nor does it prejudice any creditor or

7  other party-in-interest in the case.  Therefore, again, while

8  I understand it's a bit unorthodox for me to do this, this

9  way, we fail to see how anyone is prejudiced.  And again, we

10  were a little bit surprised that the debtors just didn't

11  agree.

12     Your Honor, with that, unless you have any

13  questions, that was what we wanted to say.

14     THE COURT:  So you're not asking for any relief

15  today, Mr. Preis.

16     MR. PREIS:  The only request we would ask is that

17  they modify the order to clarify or to confirm that the

18  mailing date for the non-opioid claimants would not occur

19  until the opioid related claimant bar date issue has been

20  resolved.  And we would -- you know, we can put a deadline to

21  that for December 31st or December -- whatever comports with

22  their already proposed mailing deadline, which, as Mr. Gott

23  said earlier, I think about ten minutes ago, was probably

24  likely early January.

25     THE COURT:  Mr. Gott?  I'll do this first, and then

1    I'll come back to Mr. Haviland's issue.  Mr. Gott?

2            MR. GOTT:  Oh, I'm sorry.  I did not -- I did not

3    hear you redirect to me.

4            So -- okay.  So you'd like me to address the opioid

5    claimants first.  Is that right, Your Honor?

6            THE COURT:  Yes.

7            MR. GOTT:  Okay.  So, look, I think our view here

8    is that the relief we've requested is -- does specifically

9    carve out opioid claims.  The issue of whether and when to

10   impose an opioid bar date is for another day, it's for

11   another motion.

12           And this is our -- this is the debtors' view that

13   this is the right path forward for proceeding with these

14   cases, to have a bar date that accepts opioids claims, to

15   have a future claims representative, and to have all opioid

16   claims -- regardless of whether they are filed before a bar

17   date or not -- channeled to the opioid settlement trust.  We

18   think that that is the process that gives -- that actually

19   gives greater due process and gives greater opportunity for

20   recovery to opioid claimants.

21           Your Honor, I -- if -- we had not heard previously

22   a request to put an outside date on what the opioid

23   claimants' committee is suggesting; you know, in other words,

24   a -- sort of a parachute that would allow us to start the

25   process, in the event that there is no resolution by a date

1    certain.  That is a new aspect to the relief that they're --

2    to their request that I could certainly take back and we

3    could discuss on our side.  I just don't have the -- I don't

4    have the benefit of being able to run around the courtroom

5    right now, to check with folks and see if they're comfortable

6    with it.

7          But I think, if the request is simply to just put

8    on hold this bar date process -- which Mr. Preis just said,

9    even if we do move forward with an opioid bar date process,

10   and even if that starts at the same time as the non-opioid

11   bar date process, it's going to involve different dates,

12   different proofs of claim form, different publication notice.

13   It's just a completely separate issue from what we're looking

14   to establish today.  And so we don't see a need or a reason

15   to tie the two together, and so we just don't think that

16   that's appropriate at this time.

17         THE COURT:  Mr. Preis, it seems like the debtors

18   have now indicated on the record that they're -- the opioid

19   claimants are carved out of this order.  And they're willing

20   to continue to discuss with you the issues that you have

21   concerns about.

22         So, at this point, I don't think there's anything

23   that I need to do.  I think we can just send you back -- and

24   unfortunately, I can't send you to the hallway to talk about

25   it before the hearing is over.  But it sounds like this is

1    something that can and should be able to be resolved.  So I

2    would ask you to go back and talk after the hearing.  And

3    obviously, we're going to have to submit a revised order

4    under COC, in any event.  So let's handle it that way for

5    now, I think.

6              MR. PREIS:  Thank you, Your Honor.

7              THE COURT:  Okay.  Thank you.

8              Now to Mr. Haviland's question, Mr. Gott.  The

9    holidays are coming up, 45 days, with all of the things that

10   are going on with COVID, I do have some concerns that that

11   might not be enough time.

12             MR. GOTT:  Sure, Your Honor.  I think I can address

13   that with a couple of points.

14             First is that, as I mentioned, the mailing is

15   looking like it will occur -- you know, the letters will go

16   in the mail very much towards the end of the year, the last

17   few days of the calendar year.  So I think that largely gets

18   us past the holiday season, when those things will be

19   arriving in the mailboxes of the folks who will receive them.

20             You know, I think another important point here is,

21   you know, as is typical for large Chapter 11s, we have a very

22   smooth, electronic claims submission process through Prime

23   Clerk's website now that eliminates delays on the back end.

24   So, once someone receives that notice, it's very easy for

25   them to go onto the website and get their claim in, as

1    opposed to putting it together in paper, putting it in an

2    envelope, and then risking the delay on the back end, as well

3    as on the front end.

4            And Your Honor, you know, I think mailing delays

5    are certainly nothing new.  Yes, they receive more press

6    lately in connection with election mailings.  But you know,

7    it's not unusual for there to be some delays in the postal

8    service and in the mail getting to folks.  But that doesn't

9    change and has never changed that the minimum period for

10   notice here is 21 days under the federal rules, and that our

11   forty-five-day period is typical, if not on the long end for

12   bar date periods for large cases in this district.  It

13   (indiscernible) of course not dispositive, but it is just to

14   say that the period sought here is very much in line with the

15   norm.

16           And just to clarify one thing, our reluctance to

17   extend the period further here isn't arbitrary.  We are

18   aiming to have our plan and our disclosure statement on file

19   well ahead of the February 12th milestone for doing so under

20   the RSA.  And that would allow us to get the notice and

21   voting process for confirmation started as soon as that bar

22   date comes and goes and we're able to -- we're able to piece

23   together information that we need to complete that disclosure

24   statement.  This is an expensive case with a high run rate,

25   and delay always opens the risk to disruption, to second

1    guessing, and to more delay.  So waiting that extra two weeks

2    would be meaningful here.

3            And so, for all those reasons, we think that that

4    forty-five-day period is the appropriate resting point here.

5    We have the support for that period from the unsecured

6    creditors' committee, from the ad hoc noteholder group, and

7    our opioid claimants that are party to the RSA, as well.  And

8    so we think that's the right date to stick to.

9            THE COURT:  All right.  All right.  Well, it is

10   beyond the time required by the Code, 45 days.  And if the

11   mailings aren't going to go out until the end of this year,

12   or maybe even early January, that puts us past the holiday

13   time.  And we do need to get the proofs of claim filed for

14   voting purposes.

15           But that doesn't mean, Mr. Haviland, that, if some

16   individual claimants file claims late, that I won't have the

17   opportunity to say that those claims can be filed, and they

18   can still bring their claim against the estate.  They might

19   not have time to be able to vote, but they will have a claim

20   against the estate.  So I'll approve the forty-five-day

21   period.

22           Mr. Gott, anything else?

23           MR. GOTT:  No.  Thank you, Your Honor.

24           So, as mentioned, we will -- we'll plan to file an

25   order with some slight tweaks and any other changes that may

1    arise out of further discussions with the opioid claimants'

2    committee on certification.

3            THE COURT:  Okay.

4            MR. GOTT:  And with that, I believe, you know, at

5    least the part of the agenda that we were going to run is

6    concluded.  And I think Your Honor indicated that a ruling

7    would be coming on the 105 motion.

8            THE COURT:  Yes.

9            MR. GOTT:  But I think my part of the day is done

10   here.

11           THE COURT:  Okay.  Thank you, mister -- excuse me.

12   Thank you, Mr. Gott.

13           Yes, I will issue my bench ruling on the

14   supplemental motion to extend the stay to certain third

15   parties.

16           When the debtors filed their petitions, they had

17   approximately 3,000 proceedings pending against them in

18   various federal, state, and other fora.  They had also

19   entered into a restructuring support agreement -- or RSA --

20   with certain constituencies, including unsecured noteholders

21   holding more than 84 percent of the fulcrum unsecured notes;

22   50 Attorneys General of various states, Washington D.C., and

23   U.S. territories, with respect to opioid claims; and members

24   of the plaintiffs executive committee, who indicated they

25   would recommend to more than 1,000 plaintiffs they represent

1   in national opioid litigation that they should also support

2   the RSA.  The debtors had also reached an agreement in

3   principle with the Federal Government and others related to

4   debtors' Acthar product.  Despite the RSA, however, the

5   debtors still had approximately 2,650 lawsuits and

6   administrative actions brought by various government entities

7   pending against them.

8        The debtors filed a motion for injunctive relief,

9   the initial motion, seeking a two-hundred-and-seventy-day

10  stay of all those actions, anticipating that the governmental

11  entities would argue that the claims they were asserting were

12  a function of their police powers, and therefore exempt from

13  the automatic stay provided by Section 362 of the Bankruptcy

14  Code.  Prior to the time of the -- prior to the time for the

15  hearing on that motion, all of the entities subject to that

16  motion agreed to the two-hundred-and-seventy-day stay.

17       Ten days after filing the initial motion, the

18  debtors filed an amended complaint and supplemental motion

19  for injunctive relief, pursuant to Section 105 of the

20  Bankruptcy Code, seeking to extend the stay to nondebtor

21  entities and individuals who are co-defendants with debtors

22  in certain actions.  Those actions include the following:

23  First, certain securities actions, Solomon v. Mallinckrodt,

24  pending in the District of Columbia; Healthcor Offshore

25  Master Fund, LP v. Mallinckrodt, pending in the -- also in

1   the District of Columbia; and Broadhurst [sic] -- Brandhorst

2   v. Mallinckrodt, also pending in the District of Columbia.

3   None of the plaintiffs in those three actions objected to the

4   relief.  And since there were no objections made by these

5   parties, the motion to stay the parties from pursuing actions

6   against -- the motions to stay the parties from pursuing

7   those actions will be granted.

8          A fourth action called Strougo v. Mallinckrodt,

9   pending in the District of New Jersey, the plaintiffs in that

10  case did file a late objection for the -- and for the reasons

11  that I'll explain in a moment, that objection will be

12  overruled.

13         And finally, there's Shenk v. Mallinckrodt, pending

14  in the District of Columbia.  Debtors seek to carve out this

15  case solely to the extent necessary to permit mediation from

16  proceeding, which seeks to obtain a settlement in principle,

17  subject to court approval.  I will approve that request and

18  exclude the Shenk case from the order.

19         In addition to the securities actions, the

20  supplemental motion also seeks to stay the plaintiffs in the

21  following actions from pursuing claims against nondebtor

22  parties relating to debtors' Acthar Gel product:  The City of

23  Rockford v. Mallinckrodt, pending in the Northern District of

24  Illinois; MSP Recovery Plaintiff, Series v. Mallinckrodt,

25  pending in the Northern District of Illinois; Steamfitters

1    Local Union 420 v. Mallinckrodt, pending in the Eastern

2    District of Pennsylvania; International Union of Operating

3    Engineers Local 542 v. Mallinckrodt, pending in Pennsylvania

4    Court of Common Pleas; and Acument Global Tech v.

5    Mallinckrodt, pending in Tennessee Circuit Court.

6          These cases are collectively referred as the

7    "Acthar litigation matters."  The plaintiffs in these cases,

8    the Acthar plaintiffs, are represented -- they're represented

9    by the same counsel.  For the reasons I am about to explain,

10   the Acthar plaintiffs' objection to the motion is overruled.

11         I will first address the objections raised by the

12   Acthar plaintiffs, and then turn to the Strougo securities

13   litigation.

14         As the Acthar plaintiffs correctly point out, this

15   Court has subject matter jurisdiction over cases that, quote,

16   "relate to" a bankruptcy proceeding, pursuant to 28 USC

17   1334(b).  A proceeding is related to a bankruptcy case if,

18   quote:

19              "-- the outcome of the proceeding could conceivably

20              have any effect on the estate being administered in

21              bankruptcy."

22         Pacor v. Higgins, 743 F.2d 984, at 994 (3d Cir.

23   1984).

24         Thus, if an action could alter the debtors' rights,

25   liabilities, options, or freedom of action, either positively

1    or negatively, and in any way impacts upon the handling and

2    administration of the bankruptcy estate, related to

3    jurisdiction exists.

4          The Acthar plaintiffs argue, however, that the

5    debtors have not established the existence of related to

6    jurisdiction.  I disagree.  The debtors cite to several

7    factors establishing that related to jurisdiction exists,

8    including the assertion of indemnity claims by Express

9    Scripts, a co-defendant in the actions, and its affiliates,

10   collectively referred as "ESI," by submitting discovery

11   demands will be placed on the debtors if the actions against

12   the nondebtors are allowed to proceed; that there is a risk

13   of collateral estoppel and record taint if the actions are

14   allowed to proceed; that the ESI defendants will defend the

15   actions based upon the alleged conduct of the debtors,

16   damages to the debtors' business if the actions proceed,

17   including potential impact on the morale and employees that

18   could result in significant attrition during this critical

19   time; and disruption of the debtors' reorganization by

20   causing other parties that have agreed to a stay to their

21   actions to walk away, including potentially withdrawing from

22   the RSA.  Debtors argue that any one of these factors is

23   sufficient (indiscernible) related to jurisdiction.

24         The Acthar plaintiffs principally argue that

25   related to jurisdiction does not exist pursuant to the

1   purported indemnification claims asserted by ESI.  They argue

2   that the three agreements referred to by ESI in asserting

3   their contractual indemnity claims do not establish a

4   credible claim for indemnity.  In support of this argument,

5   the Acthar plaintiffs point to the language of the indemnity

6   agreements and make legal arguments about whether the claims

7   raised by the Acthar plaintiffs in their cases would fit

8   within the legal requirements for asserting an

9   indemnification claim under those agreements.

10          It is not for this Court to make that -- make the

11  ultimate determination, ultimate ruling on whether the

12  question -- excuse me.  It is not for this Court to make an

13  ultimate ruling on the question of whether ESI indemnity

14  claims will be successful.  The question is only whether

15  potential indemnity claims exist.  Whatever the ultimate

16  answer to the question of indemnification, prudence dictates

17  that the debtor treat its indemnity obligations as very real

18  and substantial.  See In Re American Film Technology, 175

19  B.R. 847 (Bankr. D. Del. 1994) and Sudbury, Inc. v. Escott,

20  140 B.R. 461, at 464 (Bankr. N.D. Ohio).

21          Therefore, based solely on the existence of

22  potential contractual indemnification claims, the Court has

23  subject matter jurisdiction.  See W.R. Grace & Company, 384

24  B.R. 17, at 28 (Bank. D. Del. 2008).

25          Even if I were to find that the ESI -- that ESI's

1    alleged indemnification claims were not valid, the debtors

2    have pointed to several other reasons (indiscernible) why

3    continuing -- excuse me -- why continuation of the litigation

4    against the nondebtor entities would have an adverse impact

5    on the debtors' estates.  Significantly, the Acthar

6    plaintiffs themselves describe the litigations as involving

7    assertions of conspiracy to fix the price of Acthar.  The

8    conspiracy only exists if there's more than one party

9    involved in the alleged conspiracy.

10             The allegations in the complaint show that the

11   claims against the debtors and the nondebtors are

12   inextricably intertwined, creating a risk of collateral

13   estoppel and record taint that would require the debtors to

14   participate in the litigation in order to protect their

15   interests.  The Acthar plaintiffs also admit that they would

16   need to take discovery of debtors' officers and directors in

17   order to establish their claims against the debtors.  And as

18   the debtors noted, ESI will need to defend itself against the

19   claims against the Acthar plaintiffs by pointing to the

20   conduct of the debtors, the party that manufactured and

21   priced the drug for marketing, especially in light of the

22   assertions of joint and several liability against debtors and

23   ESI.  Any of these factors could have an adverse impact on

24   the debtors' estates sufficient to establish related to

25   jurisdiction under 1334.

1          Having established that the Court does have

2     jurisdiction, I will now turn to whether the debtors have met

3     the requirements for imposing an injunction on the

4     continuation of the Acthar actions against nondebtor

5     entities.

6          The Acthar plaintiffs assert that, in order to

7     impose an injunction, the debtors must first establish the

8     existence of unusual circumstances.  These unusual

9     circumstances exist where there is such an identity of

10    interest between the debtor and the third-party defendant

11    that the debtor may be said to be the real party-in-interest,

12    and that a judgment against the third party will in, effect,

13    be a judgment against the debtor.  Citing to W.R. Grace, 386

14    B.R. 17, at 33, and American Film Technologies, 175 B.R. 847,

15    at 851.

16         The Acthar plaintiffs claim that, while both the

17    debtors and ESI are parties to the same actions, quote:

18              "-- their liability is predicated on different acts

19              in the conspiracy, and they do not share the

20              identity of interest required so as to create

21              unusual circumstances" --

22         Sufficient to meet the standard of imposing an

23    injunction.

24         As an example, during argument, the Acthar

25    plaintiffs cite to the Steamfitters case pending in

1    Pennsylvania State Court to say that there are also claims

2    independent of the debtors; specifically, a breach of

3    contract claim between the plaintiffs in that action and ESI.

4    As I will discuss in a moment, I disagree.

5         The debtors counter that they do not need to

6    establish exceptional circumstances because they can also

7    show the right to an injunction based on the separate concept

8    of adverse impact on the debtors' estates.  Moreover, they

9    argue, even if it was necessary to show exceptional

10   circumstances, the debtors have done so by showing that the

11   unmistakable focus of the actions is an alleged conspiracy

12   between the ESI defendants and the debtors to exploit a

13   monopoly controlled by the debtors.  These allegations, the

14   debtors argue, are sufficient to show an identity of interest

15   between the ESI defendants and debtors.  I agree with the

16   debtors.

17        It is not necessary to establish unusual

18   circumstances when the debtor can establish a stay protection

19   was essential to the debtor's reorganization efforts.  As the

20   Third Circuit recognized in McCartney v. Integra National

21   Bank North, 106 F.3d 506, at 510 (3d Cir. 1997), courts have

22   extended the stay in two circumstances:  One, where the

23   debtor shows unusual circumstances, such that there is an

24   identity of interest between the third-party defendant and

25   the debtor; and two, where extending the stay is essential to

1    the debtors' reorganization efforts.

2           Even so, the debtors have shown unusual

3    circumstances in this case.  As Judge Fitzgerald noted in

4    W.R. Grace, the existence of contractual indemnification

5    claims is sufficient to meet the unusual circumstances test.

6    Moreover, in this case, all of the complaints make

7    allegations of similar conspiracy between debtors and the

8    nondebtor defendants.  It would be impossible to proceed

9    against the nondebtor defendants only without creating

10   significant risk of collateral estoppel and record taint, to

11   the point where the debtors would need to participate in

12   those actions to protect their interests.

13          The Acthar plaintiffs' example of proceeding

14   against the ESI defendants in the Steamfitter case is

15   unavailing for two reasons:

16          First, there is no separate cause of action pled in

17   that case for breach of contract against the ESI defendants.

18          Second, even if there was, the ESI defendants would

19   still assert indemnification claims against the debtors --

20   whether those claims would be valid, as I have said, is an

21   issue for another day -- and would likely defend the actions

22   by asserting that the breach was caused by debtors' actions;

23   i.e., setting the price for Acthar, thus bringing us back to

24   square one.

25          I will now turn to whether the debtors have met the

four-factor test for imposing an injunction.  Those factors
are well established:  One, the likelihood of success on the
merits; two, whether continuation of the actions against the
nondebtors would cause irreparable harm to the debtors;
three, whether the harm suffered by the Acthar plaintiffs
substantially outweighs the harm to the debtors; and four,
whether the -- whether injunctive relief will further the
public interest.

Likelihood of success is determined by whether the
debtor has demonstrated a reasonable likelihood of success,
of a successful reorganization.  See Lane v. Philadelphia
Newspapers, 423 B.R. 98, at 106 (E.D.P.A. 2010), and W.R.
Grace, 386 B.R. 17, at 33.

It certainly is not necessary, at this early stage
of the debtors' cases, to require that the debtors prove that
they have a confirmable plan.  As noted in Lyondell Chemical
Company, 402 B.R. 571, at 590 (Bankr. S.D.N.Y. 2009), quote:

"Where the debtors are proceeding on track and have
met the challenges faced so far, that is
sufficient."

As I noted at the beginning of this ruling, the
debtors established that they entered bankruptcy with an RSA
that included many of the key players in these cases.  They
have added to those numbers since the time of the filing.  In
addition, all but a few parties involved in the original

1    motion and this motion have agreed to a stay, pending -- have

2    agreed to stay the pending litigation against the debtors, in

3    order to give them the breathing spell they need to work

4    toward a successful reorganization.

5            The Acthar plaintiffs attempt to undermine this

6    evidence by pointing to the potential decline in sales of

7    Acthar, which could have a negative impact on debtors'

8    revenues, and that the Acthar plaintiffs are not parties to

9    the RSA.  Neither of these points are persuasive, and

10   certainly do not overcome the overwhelming evidence put on by

11   the debtors to show that they are, indeed, on track to a

12   successful reorganization and have met the challenges

13   presented so far.  Therefore, the debtors have met the burden

14   of showing likelihood of success.

15           Irreparable harm to the debtors.  The debtors

16   presented extensive evidence at the hearing on the potential

17   harms to the estate if the Acthar litigation goes forward

18   against the nondebtor defendants.  This included the

19   testimony of Stephen Welch and Randall Eisenberg, who

20   testified about the burdensome and distracting discovery that

21   would occur if these actions proceed, the potential indemnity

22   claims against the debtors, the significant cost the debtors

23   would incur in participating in discovery, and the potential

24   significant adverse effects on the restructuring process.

25   This included parties to the RSA potentially withdrawing

53

1      their support.

2              They also testified that it would create

3      significant distraction for senior management, not just in

4      the discovery process, but also in spending time attempting

5      to reassure customers, who might want to (indiscernible)

6      elsewhere for their product in light of the ongoing

7      litigation taint.  This is more than sufficient to meet the

8      burden of showing that the debtors will suffer irreparable

9      harm if the Acthar cases can proceed against the nondebtor

10     entities.

11             As for the potential harm to the Acthar plaintiffs,

12     debtors contend that the only potential harm to the Acthar

13     plaintiffs is the delay in being allowed to pursue their

14     claims, and that delay is not sufficient to overcome the

15     potential harm to the debtors.  The Acthar plaintiffs counter

16     that, if they are not allowed to pursue their causes of

17     action against the nondebtors, their unlawful conduct will

18     continue, causing harm to the patients who must purchase

19     Acthar.

20             In closing statements, counsel for the Acthar

21     plaintiffs argued the Court should not bless the antitrust

22     and RICO conduct of the debtors on its watch.  This

23     presupposes that I am making a finding on whether the

24     debtors, in fact, committed antitrust or RICO violations.  I

25     am not making any findings on those claims, one way or the

54

1    other.  Those issues are for another day.

2              Similarly, I make no findings that any particular

3    person will be unable to purchase Acthar because of pricing

4    issues.  No evidence, other than statements of counsel, was

5    presented on that issue.  The debtors contend that they work

6    with patients to ensure that the -- and the debtors contend

7    that they work with patients to ensure that those who need

8    the drug can get it.  Therefore, I find that the Acthar

9    plaintiffs have not shown that any harm to them will outweigh

10   the harm to the estates, if the injunction is not granted.

11             With regard to whether the injunction will further

12   the public interest, debtors correctly state that, in the

13   context of a bankruptcy proceeding, the public interest

14   element means the promoting of a successful reorganization.

15   American Film Technologies, 175 B.R. at 849.

16             For the reasons I've already articulated, imposing

17   an injunction to stay the Acthar claims for 270 days

18   certainly promotes a successful reorganization.  Indeed, the

19   debtors have already done a great deal in pulling together

20   vastly different constituencies to move these cases forward.

21   The Acthar plaintiffs assert that the Court, quote:

22             "-- should not prevent action to root out corporate

23             misconduct occurring on its watch."

24             Once again, this presupposes that the Court is

25   making findings regarding the nature of debtors' conduct.  I

am not.  The stay being imposed in temporal in scope.  It is
not a permanent injunction that will prevent the Acthar
plaintiffs from pursuing their claims.  They will have that
opportunity when the time comes.  Therefore, the debtors have
shown that public policy favors granting the injunction.

I will now turn to the Strougo securities action.
The Strougo plaintiffs do not allege that the Court does not
have jurisdiction to consider the proposed injunction.
Indeed, the only argument the Strougo plaintiffs make is
that, given the procedural posture of the case -- of their
case, no irreparable harm would come to the debtors if the
case can proceed, at least in the near term.

They point out that, currently, the only remaining
items to be dealt within the case are the filing of a reply
brief by the debtors, in connection with debtors' pending
motion to dismiss, and perhaps oral argument on that motion.
And they assert that, during the pendency of the motion to
dismiss, no discovery can occur.  Counsel also represented
that they do not believe the motion to dismiss will be
decided for at least six months, if not nine months.  They
concede, however, that, once the motion to dismiss is
decided, there will either be an appeal, if the case is
dismissed, or discovery would begin.

I would note that, given the arguments made by
counsel at the hearing, it would appear that the Strougo

1    plaintiffs are asking us for a lift of the automatic stay to

2    allow the action to proceed, not only against the nondebtor

3    defendants, but also against the debtors.  No motion to lift

4    stay has been filed; and, if there were, the burden of proof

5    would be on the Strougo plaintiffs, not the debtors.

6              Nevertheless, the debtors argue that there would

7    still be some distraction to management in dealing with the

8    motion if it goes forward.  Indeed, several senior members of

9    management are the third parties to that litigation.  But

10   there are no guarantees when the District Court might decide

11   the motion to dismiss, and once decided, the debtors would be

12   forced to come back to this Court to seek a stay of the

13   action if it was appealed or to stop discovery from going

14   forward if it was not, causing further distraction and cost

15   to the estate in seeking a second injunction.

16             Moreover, if the case proceeded only against the

17   nondebtor defendants, issues of collateral estoppel, record

18   taint, indemnification, and depletion of insurance proceeds

19   to which the debtor is a co-insured with the nondebtors would

20   create further issues of irreparable harm to the estates.

21   Therefore, I agree with the debtors and overrule the Strougo

22   objection.

23             So, based on the ruling, the debtors should submit

24   a revised form of order, making reference to the Court's

25   ruling on the record, and I'll enter that order.

```
 1                   Any questions?

 2             (No verbal response)

 3             THE COURT:  Okay.  And I guess that's all we have

 4     for today.  Mr. Gott, nothing further, right?

 5             MR. GOTT:  That's correct, Your Honor.

 6             THE COURT:  Okay.  Thank you all very much.  Then

 7     we are adjourned.  I'll see everybody on -- what is it,

 8     December 7th?

 9             MR. GOTT:  Yes, correct.

10             THE COURT:  See everybody December 7th.  Have a

11     good Thanksgiving, stay safe, and we'll see you in a couple

12     of weeks.  Thank you.  We're adjourned.

13             COUNSEL:  Thank you, Your Honor.  Thank you, Your

14     Honor.

15             (Proceedings concluded at 3:07 p.m.)

16                            *****
```

58

CERTIFICATION

1

2          I certify that the foregoing is a correct

3     transcript from the electronic sound recording of the

4     proceedings in the above-entitled matter to the best of my

5     knowledge and ability.

6

7

8

9

10

11     _____          November 24, 2020

12     Coleen Rand, AAERT Cert. No. 341

13     Certified Court Transcriptionist

14     For Reliable