# Exhibit 9-2

ELECTRONICALLY FILED
2019 Jul 29 4:47 PM
CLERK OF COURT

**IN THE CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE
FOR THE THIRTIETH JUDICIAL CIRCUIT AT MEMPHIS**

| | |
|---|---|
| **ACUMENT GLOBAL TECHNOLOGIES, INC.** | **DOCKET NO. CT-2275-19** |
| Plaintiff, | **DIVISION: VII** |
| v . | |
| **MALLINCKRODT ARD INC., ET AL.,** | |
| Defendants. | |

## DEFENDANT MALLINCKRODT ARD INC. AND MALLINCKRODT PLC'S MOTION TO DISMISS COMPLAINT PURSUANT TO TENNESSEE RULES OF CIVIL PROCEDURE 12.02(1) and (6)

Pursuant to Tennessee Rules of Civil Procedure 12.02(1) and 12.02(6), Defendants Mallinckrodt ARD Inc. and Mallinckrodt plc (collectively, "Mallinckrodt"), by and through their undersigned counsel, respectfully move this Court to dismiss with prejudice all of the counts against them in the Complaint filed by Plaintiff Acument Global Technologies, Inc. ("Acument") for lack of standing and failure to state a claim upon which relief can be granted. The grounds supporting this Motion are set forth more fully in Mallinckrodt's accompany memorandum of law and supporting authorities.

WHEREFORE, Defendants Mallinckrodt ARD Inc. and Mallinckrodt plc respectfully request that this Court enter an Order dismissing with prejudice the Complaint filed by Acument. and any such other and further relief as the Court deems just and proper. For convenience, a proposed order is attached to this Motion.

Dated:  July 29, 2019                    Respectfully submitted,

**COUNSEL FOR DEFENDANTS
MALLINCKRODT ARD INC. and
MALLINCKRODT plc**

/s/ _[signature]_

Daniel W. Van Horn (#18940)
Diana M. Comes (#30112)
Kathryn K. Van Namen (#31322)
**BUTLER SNOW LLP**
6075 Poplar Avenue, 5th Floor
Memphis, TN  38119
T: (901) 680-7200F: (901) 680 (7201)
Danny.VanHorn@butlersnow.com
Diana.Comes@butlersnow.com
Kate.VanNamen@butlersnow.com

G. Patrick Watson (*pro hac vice forthcoming*)
Lindsay Sklar Johnson (*pro hac vice forthcoming*)
**BRYAN CAVE LEIGHTON PAISNER LLP**
One Atlantic Center, 14th Floor
1201 W. Peachtree St., NW
Atlanta, GA 30309
(404) 572-6600
patrick.watson@bclplaw.com
lindsay.johnson@bclplaw.com

Herbert R. Giorgio, Jr.
**BRYAN CAVE LEIGHTON PAISNER LLP**
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO 63102
(314) 259-2000
herb.giorgio@bclplaw.com

*Counsel for Mallinckrodt ARC Inc. and
Mallinckrodt plc*

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing has been delivered via U.S. mail

this 29th day of July, 2019 to the following:

Patrick M. Ardis
R.H. "Chip" Chockley
Daniel V. Parish
**WOLF ARDIS, P.C.**
5810 Shelby Oaks Drive
Memphis, TN  38134

Donald E. Haviland, Jr.
William H. Platt II
**HAVILAND HUGHES**
201 S. Maple Way, Suite 110
Ambler, PA  19002

## IN THE CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE
## FOR THE THIRTIETH JUDICIAL CIRCUIT AT MEMPHIS

| | |
|---|---|
| **ACUMENT GLOBAL TECHNOLOGIES, INC.** | **DOCKET NO. CT-2275-19** |
| Plaintiff, | DIVISION: VII |
| v. | |
| **MALLINCKRODT ARD INC.,** | |
| Defendants. | |

### PROPOSED ORDER GRANTING MOTION TO DISMISS

It is therefore **ORDERED** that Mallinckrodt ARD Inc. and Mallinckrodt plc's Motion to

Dismiss the Complaint is hereby **GRANTED** with respect to Plaintiffs' claims identified therein.

Plaintiff's Complaint is hereby dismissed with prejudice.

Dated: _____, 2019

_____
The Honorable Mary L. Wagner

PRESENTED BY:

/s/ _____

Daniel W. Van Horn (#18940)
Diana M. Comes (#30112)
Kathryn K. Van Namen (#31322)
**BUTLER SNOW LLP**
6075 Poplar Avenue, 5th Floor
Memphis, TN  38119
T: (901) 680-7200F: (901) 680 (7201)
Danny.VanHorn@butlersnow.com
Diana.Comes@butlersnow.com
Kate.VanNamen@butlersnow.com

G. Patrick Watson (*pro hac vice forthcoming*)
Lindsay Sklar Johnson (*pro hac vice forthcoming*)
**BRYAN CAVE LEIGHTON PAISNER LLP**
One Atlantic Center, 14th Floor
1201 W. Peachtree St., NW
Atlanta, GA 30309
(404) 572-6600
patrick.watson@bclplaw.com
lindsay.johnson@bclplaw.com

Herbert R. Giorgio, Jr.
**BRYAN CAVE LEIGHTON PAISNER LLP** One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO 63102
(314) 259-2000
herb.giorgio@bclplaw.com

*Counsel for Mallinckrodt ARD Inc. and Mallinckrodt plc*

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing has been delivered via U.S. mail

this _____ day of _____, 2019 to the following:

Patrick M. Ardis
R.H. "Chip" Chockley
Daniel V. Parish
**WOLF ARDIS, P.C.**
5810 Shelby Oaks Drive
Memphis, TN  38134

Donald E. Haviland, Jr.
William H. Platt II
**HAVILAND HUGHES**
201 S. Maple Way, Suite 110
Ambler, PA  19002

                                 _____

ELECTRONICALLY FILED
2019 Jul 29 4:47 PM
CLERK OF COURT

**IN THE CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE**
**FOR THE THIRTIETH JUDICIAL CIRCUIT AT MEMPHIS**

| | |
|---|---|
| **ACUMENT GLOBAL TECHNOLOGIES, INC.** | **DOCKET NO. CT-2275-19** |
| Plaintiff, | DIVISION: VII |
| v. | |
| **MALLINCKRODT ARD INC., ET. AL.,** | |
| Defendants. | |

## DEFENDANT MALLINCKRODT ARD INC. AND MALLINCKRODT PLC'S MEMORANDUM IN LAW AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT PURSUANT TO TENNESSEE RULES 12.02(1) AND 12.02(6)

Defendants Mallinckrodt ARD Inc. and Mallinckrodt plc (collectively, "Mallinckrodt") file this Memorandum of Law in Support of their Motion to Dismiss with Prejudice the Complaint ("Complaint") filed against Mallinckrodt by Plaintiff Acument Global Technologies, Inc. ("Plaintiff" or "Acument"). In support, Mallinckrodt states as follows:

### INTRODUCTION

This case is another in a series of cases by Plaintiff's lead counsel complaining about the price of Mallinckrodt's specialty drug, H.P. Acthar Gel ("Acthar"). Here, Acument re-lodges claims and allegations that it previously attempted to bring in Federal Court in Rockford, Illinois, only to have those claims rejected and dismissed at the pleadings stage in their entirety earlier this year. *See City of Rockford and Acument Global Technologies, Inc. v. Mallinckrodt ARD, Inc., et. al.*, 360 F. Supp. 3d 730, 776−77 (N.D. Ill. Jan. 25, 2019) (the "Rockford Action"). Acument's Rockford Action against these Defendants,[1] which Acument joined in December 2017, was a sweeping putative class action on behalf of third party payors, just like Plaintiff,

---

[1] Dr. Tumlin was not a named defendant in the Rockford Action.

1

alleging federal and state antitrust claims, federal RICO claims, and a variety of state law claims. After two amendments to the complaint (including adding Acument as a plaintiff), the Rockford Court dismissed all of Acument's claims, including federal and state antitrust claims and state law claims for fraud, conspiracy, unjust enrichment, and consumer protection claims – some virtually identical to those brought here and based on a virtually identical set of underlying factual allegations. Although the Rockford Court gave Acument leave to amend, Acument chose to voluntarily dismiss its complaint and shop for another forum to see if it might have better luck.

This case is based on the same basic factual allegations as Acument's failed effort in the Rockford Action – the majority of which are copied and pasted directly from that lawsuit. Primarily, (1) in 2007, Mallinckrodt's predecessor, Questcor, entered a well-publicized contract with Express Scripts entities to act as the sole distributor of Acthar; and (2) Mallinckrodt purchased the rights to Synacthen, a synthetic ACTH product not approved for use in the United States. Plaintiff alleges these actions enabled Defendants "to limit distribution, and to raise and fix the prices of Acthar above competitive levels." Compl. ¶ 7.

Acument brings claims here for monopolization (Count I) and anticompetitive agreements in unreasonable restraint of trade (Count II) under the Tennessee Trade Practices Act (the "TTPA"). These two claims are virtually identical to Acument's failed federal antitrust claims under the Sherman Act in the Rockford Action (Counts VI and VII of the Rockford Action, respectively). Acument asserts a claim for violation of the Tennessee Consumer Protection Act (the "TCPA") (Count III) based on alleged anticompetitive conduct. Acument's three remaining claims for unjust enrichment (Count IV), fraud (Count V), and conspiracy to defraud / concerted action (Count VI), are lifted nearly verbatim from the Rockford Action.

At its core, Plaintiff's grievance here – as it was in the Rockford Action – is that beginning in December 2015 and spanning a thirteen-month period, Plaintiff allegedly paid (for one beneficiary's spouse) more for Acthar than it now believes it is worth. ¶ 17. Plaintiff makes these allegations while also admitting that Acthar was prescribed by the patient's physician and approved by Plaintiff's Pharmacy Benefits Manager ("PBM") CVS Caremark (and presumably by its insurer, BlueCross BlueShield of Michigan), all professionals who must have believed that the drug was effective and approved the payment of the price being paid. ¶¶ 307-08.

While the Complaint is lengthy and contains a wide variety of allegations about Defendants and others, at base it lacks the necessary allegations and specificity to survive a challenge to the pleadings under Tennessee law. The Complaint is loaded with inconsistent, sweeping, and conclusory allegations that attempt to transform a perfectly legal drug distribution pricing arrangement into a civil recovery. Ultimately, as in the Rockford Action, these allegations fail to state *any* cause of action. As further detailed below, Plaintiff wholly fails to state claims under the TTPA and the TCPA, and further fails to state a claim upon which relief can be granted for unjust enrichment, fraud, or conspiracy to defraud against Mallinckrodt. The Complaint should be dismissed in its entirety with prejudice.

## RELEVANT FACTUAL ALLEGATIONS

Plaintiff alleges Mallinckrodt acquired the rights to Acthar from Questcor in 2014 and has continued to manufacture, distribute, and market Acthar since the acquisition. Compl. ¶¶ 3,4. Acthar is a "specialty pharmaceutical" and "[i]t is not sold in retail pharmacies, nor is it distributed through wholesalers to retail pharmacies." ¶ 9. Instead, it is distributed only through "specialty pharmacy distributors." ¶ 9. "Acthar is the only therapeutic ACTH product sold in the United States." ¶ 3. As a result, Plaintiff alleges that because Questcor acquired Acthar in 2001,

3

Mallinckrodt has effectively had its ACTH monopoly since that time. ¶ 4. However, Plaintiff also alleges that "there existed other equally or more efficacious, and cheaper, treatments for the disease states for which Acthar was marketed, prescribed and sold." ¶ 2. Plaintiff further alleges that Mallinckrodt took steps to maintain its purported ACTH monopoly by acquiring the rights to develop, market, and sell the "only competitive product in the marketplace, Synacthen," and by entering into direct agreements with Express Scripts. ¶¶ 8, 12. However, Plaintiff also alleges that Acthar is valuable as "the 'gold standard'" for treating infantile spasms and was granted "orphan drug status" in 2010. ¶ 57.

In 2007, Mallinckrodt's predecessor, Questcor, publically announced a new distribution strategy for Acthar. ¶ 60. Plaintiff alleges this new strategy involved the "implementation of actual, written agreements, signed by both Mallinckrodt and Express Scripts, by which Express Scripts was granted exclusive specialty distribution of Acthar in exchange for its agreement to allow Mallinckrodt to raise the prices of Acthar to exorbitant, non-competitive levels." ¶ 12. This arrangement includes a patient support program "Acthar Support and Access Program" ("ASAP") which is operated by co-defendant UBC. When Acthar is prescribed by a physician for a patient, "UBC confirms the prescription . . . with a specialty pharmacy . . . UBC then confirms the patient's insurance coverage or other source of payment . . . UBC then arranges for Acthar to be delivered directly to the patient by CuraScript [SD]." ¶¶ 78-79. Plaintiff alleges the ASAP program was one of the main ways through which Defendants maintained their unlawful scheme. ¶ 78.

Plaintiff alleges that as part of the exclusive distribution agreement described above, Defendants jointly agreed to raise the average wholesale price for Acthar from $40 per vial in 2001 to over $40,000 per vial in 2015. ¶ 16. Plaintiff further alleges that through this exclusive

distribution arrangement, "both companies would share the financial rewards of the Acthar monopoly and resulting price fixing agreement." ¶ 11.

Plaintiff also contends that Mallinckrodt's predecessor, Questcor, identified Synacthen as a competitive product and purchased the rights to market, distribute, and sell Synacthen in order "to protect its monopoly." ¶ 266. Plaintiff contends Mallinckrodt "keeps Synacthen off the market to protect its monopoly power and high prices for Acthar," but also admits there was an "uncertainty that Synacthen, a preclinical drug, would be approved by the FDA." ¶¶ 266, 239.

Plaintiff also alleges Defendants have misrepresented to the public the value and effectiveness of Acthar, including through "false and misleading" marketing and advertising strategy. ¶¶ 376, 271. As part of this alleged strategy, Plaintiff contends Defendants "disparaged the goods, services or business of other sellers of drugs that treat such diseases more effectively and safely, and for much less money, by false or misleading representations of fact." ¶ 376.

Plaintiff alleges it provides healthcare benefits to its employees, and that one of its employee's spouses was prescribed Acthar over a thirteen month period beginning in December 2015. ¶¶ 24, 25. At that time, CVS/Caremark was Plaintiff's PBM and Blue Cross Blue Shield of Michigan was its insurer. ¶¶ 15, 24. In connection with these prescriptions, during that thirteen month period, Plaintiff claims to have paid over $890,000 for Acthar. ¶ 25. Plaintiff did not pay any Defendant for the Acthar at issue; rather, Plaintiff paid its PBM – non-party CVS Caremark at a price set by CVS Caremark. ¶¶ 79, 98, 311.

## DISCUSSION

### I.   Overview of Tennessee Pleading Standards

A complaint must "contain sufficient factual allegations to articulate a claim for relief." *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011); *Abshure*

*v. Methodist Healthcare-Memphis Hosps.*, 325 S.W.3d 98, 104 (Tenn. 2010). If the factual "allegations contained in the complaint, considered alone and taken as true, are insufficient to state a claim as a matter of law," dismissal is proper. *Cook By & Through Uithoven v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934, 938 (Tenn. 1994). To survive a motion to dismiss, "the facts pleaded, and the inferences reasonably drawn from these facts, must raise the pleader's right to relief beyond the speculative level." *Runyon v. Zacharias*, 556 S.W.3d 732, 737 (Tenn. Ct. App. 2018), *appeal denied* (May 17, 2018) (quoting *Webb*, 346 S.W.3d at 427). Courts are only required to consider factual allegations, "and are not required to accept as true assertions that are merely legal arguments or 'legal conclusions' couched as facts." *Id.*

## II.    Plaintiff's Complaint Fails to Properly Plead the Elements of Any of its Claims and Should Be Dismissed With Prejudice in its Entirety as to Mallinckrodt.

### A. Plaintiff Lacks Standing to Bring Antitrust Claims under the Tennessee Trade Practices Act, Tenn. Code Ann. § 47-25-101, et seq. (Counts I and II).

Tennessee courts require proper standing to bring an action, and a plaintiff carries the burden of alleging facts sufficient to demonstrate it has standing to pursue each discrete claim. *See Am. Civil Liberties Union of Tenn. v. Darnell*, 195 S.W.3d 612, 620 (Tenn. 2006); *see also* Tenn. R. Civ. P. 12.02(1). Courts balance several factors when evaluating whether an antitrust plaintiff has standing, including (1) causal connection between the antitrust violation and harm to the plaintiff and whether the harm was intended to be caused; (2) the nature of the plaintiff's alleged injury including status of the plaintiff as consumer or competitor in the relevant market; (3) the directness or indirectness of the injury, and the related inquiry of whether the damages are speculative; (4) the potential for duplicative recovery or complex apportionment of damages; and (5) the existence of more direct victims of the alleged antitrust violation. *See Gold v. Methodist Healthcare Memphis Hosp.*, Case No. 06-2329, 2008 WL 6875019 (W.D. Tenn. Jan. 15, 2008) (citing *Assoc. Gen. Contractors of Cal. Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519,

545 (1983) ("*ACG*") and *Southaven Land Co., Inc. v. Malone & Hyde, Inc.*, 715 F.2d 1079, 1085 (6th Cir. 1983)).

Although Tennessee state courts have yet to expressly adopt *ACG*,[2] they would likely follow the *AGC* evaluation given Tennessee's articulation that courts utilize "the standing doctrine to determine whether a particular plaintiff is 'properly situated to prosecute the action.'" *Darnell*, 195 S.W.3d at 619 (citing *Knierim v. Leatherwood*, 542 S.W.2d 806, 808 (Tenn. 1976)). And, where Tennessee law has not expressly ruled on an antitrust concept, Tennessee authority has found federal interpretations of the Sherman Act to be the "most persuasive." *State ex rel. Leech v. Levi Strauss & Co.*, No. 79-722-III, 1980 WL 4696, at *2 n.2 (Tenn. Ch. Sept. 25, 1980). Moreover, the Tennessee Court of Appeals – the only Tennessee state court to cite to *ACG* – analogized to it with approval in evaluating a plaintiff's standing. *See Tennessee Medical Ass'n v. BlueCross BlueShield of Tenn.*, 229 S.W.3d 304, 308 (Tenn. Ct. App. 2007).

Here, Plaintiff's alleged injury, if any, is indirect and attenuated. In its Complaint, Plaintiff alleges that "CVS Caremark, like Express Scripts, thus collects payments for the price of Acthar from the payer on behalf of both Express Scripts and Mallinckrodt, and transfers *a portion* of those payments to Defendants." Compl. ¶ 104 (emphasis added); *see also* ¶ 307 ("Acument was billed for Acthar by CVS/Caremark at a discounted price based on AWP. The discount CVS/Caremark provided Acument for the Acthar was AWP minus 15.75%"). Here, there are intermediary parties and steps separating Mallinckrodt from Plaintiff, which create difficult damage calculation and apportionment issues and raise the possibility of duplicative recoveries. The Rockford Court already dismissed Plaintiff's claims for lack of standing, noting that "Acument would not meet even the least stringent state's 'proximate cause' test" and that

---

[2] Moreover, a number of state courts (including Arizona, California, Illinois, Iowa, Kansas, Michigan, Minnesota, Mississippi, Nebraska, North Carolina, North Dakota, New York, Oregon, South Dakota, Utah and Washington) have expressly adopted *AGC*.

Acument's complaint "lacks sufficient allegations to allow the court to determine how Acument's injuries in Tennessee are connected to Defendants' conduct." *City of Rockford v. Mallinckrodt ARD, Inc.*, 360 F. Supp. 3d 730, 760-61 (N.D. Ill. 2019). This Court should do the same, apply the *AGC* factors, and dismiss Plaintiff's antitrust claims for lack of appropriate standing.

## B. Plaintiff Fails to Plead a Cognizable Claim for Monopolization under the Tennessee Trade Practices Act, Tenn. Code Ann. § 47-25-101, et seq. (Count I).

Count I of Plaintiff's Complaint fails to state a claim for monopolization under the TTPA. To establish a claim for monopolization under the TTPA, a plaintiff must allege facts showing "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *Duke v. Browning-Ferris Indus. of Tenn., Inc.,* Case No. W2005-00146-COA-R3-CV, 2006 WL 1491547, at *5 (Tenn. Ct. App. May 31, 2006) (*quoting United States v. Grinnell Corp. et al.*, 384 U.S. 563, 570–71 (1966)). To succeed on a monopolization claim, a plaintiff must also allege facts showing the defendant "engaged in improper conduct that has or is likely to have the effect of controlling prices or excluding competition, thus creating or maintaining market power." *Id.* (per curiam) (quoting *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 108 (2d Cir. 2002)).

Here, Plaintiff's TTPA monopolization claim centers on two alleged acts: 1) Mallinckrodt's use of an exclusive distribution strategy and 2) the Mallinckrodt's acquisition of Synacthen. Plaintiff makes sweeping, conclusory allegations, but in those allegations, not only does it fail to allege a relevant market, but it also concedes that there is no monopoly. Moreover, the alleged improper conduct is not tied to the maintenance of market power, and the Court should dismiss the monopolization claim as improperly stated under Tennessee law.

8

### *1.   Plaintiff fails to properly allege a relevant market.*

As set out above, a monopolization claim requires plaintiff to allege facts showing "the possession of monopoly power in the relevant market." *Duke*, 2006 WL 1491547, at *5. Absent sufficient market allegations to demonstrate injury in an appropriately-defined market, the Court should dismiss Plaintiff's claim for monopolization.

In its Complaint, Plaintiff repeatedly states that Acthar is "the only therapeutic ACTH product sold in the United States." Compl. ¶ 2. Plaintiff refers to Defendants' "power in the market for the sale of ACTH drugs" and alleges "Acthar has a 100% share of the market for ACTH drugs." Compl. ¶¶ 234, 331. Elsewhere Plaintiff refers to "the ACTH market." Compl. ¶¶ 149, 162, 339. To the extent Plaintiff's allegations define a market, it is a single product market comprised of Acthar.

But, it is "the rare case in which a single-brand market is actionable." *Maui Jim, Inc. v. SmartBuy Guru Enterprises*, No. 1:16 CV 9788, 2019 WL 2076366, at *10 (N.D. Ill. May 10, 2019). When a complaint limits the relevant market to a "single brand, franchise, institution, or comparable entity that competes with potential substitutes," a court should dismiss the complaint unless the complaint contains sufficient factual allegations that make it plausible there is no substitute. *Todd v. Exxon Corp.*, 275 F.3d 191, 200 (2d Cir. 2001); *see also Hack v. President & Fellows of Yale College*, 237 F.3d 81 , 86–87 (2d Cir. 2000) (affirming dismissal where plaintiff alleged that Yale University was own product market); *Tanaka v. Univ. of S. Cal.*, 252 F.3d 1059, 1063–64 (9th Cir. 2001) (affirming dismissal where plaintiff alleged that UCLA women's soccer program constituted its own market); *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 438 (3d Cir. 1997) (affirming dismissal where plaintiff alleged market of products approved by Domino's pizza for Domino's stores); *see also* Antitrust Law Developments 591

(8th ed. 2017) ("Relevant markets generally cannot be limited to a single manufacturer's products").

Plaintiff has not alleged circumstances to show that this is the rare case. Moreover, it will never be able to demonstrate a single product market. It is clear that there are numerous substitutes for Acthar for most indications, and Acthar is a small player in the markets for such indications. Plaintiff alleges just so in its Complaint, stating that "Acthar was not the preferred course of treatment" for nephrology. ¶ 278 Further, Plaintiff contends that Defendants "overcharge[ed] [Plaintiff] for Acthar when there existed *other equally or more efficacious, and cheaper, treatments for the disease states for which Acthar was marketed, prescribed and sold.*" Compl. ¶ 2 (emphasis added). In other words, Plaintiff affirmatively alleges that the proper product market is not just Acthar, and consequently Plaintiff has not defined an appropriate market.[3] Its monopolization claim should be dismissed.

### 2.    *Plaintiff's allegations belie any monopoly power.*

Not only has Plaintiff failed to properly allege facts setting out a single-product market, but Plaintiff's own allegations undermine its assertion that Mallinckrodt had a monopoly in that market. In antitrust parlance, "[m]onopoly power is the power to control prices or exclude competition." *United States v. E. I. du Pont de Nemours & Co.*, 351 U.S. 377, 391 (1956). But, Plaintiff's Complaint alleges that Mallinckrodt "feared that the market for drug treatments for [disease states other than IS], such as the MS market, would not tolerate such a higher price." ¶ 74. Moreover, when Mallinckrodt raised its price in 2012, Plaintiff alleges such higher prices would mean a loss in business as "health insurer Aetna announced that it would cut back

---

[3] Moreover, Plaintiff has failed to allege a plausible geographic market. In its Complaint, Plaintiff appears to be trying out two alternative theories, whether the market for Acthar is limited to Tennessee (¶¶ 223, 225, 235, 331) or is a national market (¶ 2 ("U.S. market"); ¶ 223 ("part of the larger United States market"); ¶ 235 ("the larger United States ACTH market"); ¶ 331). In any event, this failure to define a properly relevant geographic market simply exacerbates the failure to allege a plausible product market.

reimbursements for Acthar." ¶ 128. And, Plaintiff further claims Mallinckrodt's actions have failed to exclude competition in the alleged market as Plaintiff notes the existence of "other equally or more efficacious, and cheaper, treatments for the disease states for which Acthar was marketed." ¶ 2. In short, Plaintiff's allegations show that Mallinckrodt does not have monopoly power.

### 3.     *Plaintiff alleges no improper conduct by Mallinckrodt.*

As set out above, to succeed on a monopolization claim, a plaintiff must allege facts showing the defendant "engaged in improper conduct that has or is likely to have the effect of controlling prices or excluding competition, thus creating or maintaining market power." *Duke,* 2006 WL 1491547, at *5 (quoting *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 108 (2d Cir. 2002)). Neither of the two acts alleged by Plaintiff are improper conduct nor has Plaintiff alleged that either has or is likely to create or maintain market power.

### a.     *Exclusive Distribution Agreement*

First, Plaintiff claims the Acthar distribution agreement allowed Mallinckrodt to maintain its "natural" monopoly. Compl. ¶¶ 331, 338. Plaintiff alleges that in 2007, Mallinckrodt restricted distribution from three wholesalers to Express Scripts, thus "lock[ing] patients into receiving Acthar through one channel and prevent[ing] a competitive product from entering the market." ¶ 335. Plaintiff also alleges "UBC facilitated all aspects of Acthar's distribution and payment as Mallinckrodt's exclusive agent," and claims this allowed Mallinckrodt to "maintain and enhance its monopoly power in the ACTH market." ¶ 337.

Plaintiff offers no allegations explaining how this exclusive distribution agreement was anticompetitive.[4] Instead, Plaintiff simply pairs general allegations about Acthar's distribution

---

[4] And, this exclusive dealing arrangement is apparently not even exclusive as Plaintiff's patient "dealt with CVS Caremark Specialty for their fulfillment of Acthar." Compl. ¶ 98.

process with conclusory statements regarding monopolistic conduct. Compl. ¶¶ 337–38. However, under well accepted antitrust precedent, exclusive distribution agreements are not de facto illegal; to the contrary, "[t]he benefits of exclusive dealing are many." Phillip E. Areeda & Herbert J. Hovenkamp, ANTITRUST LAW: AN ANALYSIS OF ANTITRUST PRINCIPLES AND THEIR APPLICATION, ¶ 1810; *see also Republic Tobacco Co. v. North Atlantic Trading Co., Inc.*, 381 F.3d 717, 736 (3d Cir. 2004) ("Unlike horizontal agreements between competitors, vertical exclusive distributorships . . . are presumptively legal"). Moreover, courts are not required to accept as true "legal conclusions couched as facts," and simply stating that Defendants' exclusive dealing arrangements were anticompetitive does not meet Tennessee pleading requirements. *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 427 (Tenn. 2011).

### b.    The Synacthen Acquisition

Plaintiff also alleges Mallinckrodt's purchase of the rights to Synacthen violated the TTPA because Plaintiff contends that Synacthen was a "viable synthetic alternative." Compl. ¶ 340. Plaintiff appears to presume that had any other company purchased Synacthen, it would have lowered the price of Acthar or allowed Plaintiff to purchase Acthar at a lower price. Essentially, Plaintiff contends it would have paid less but-for Mallinckrodt's acquisition of Synacthen. There are gaping, and insurmountable, holes in Plaintiff's speculative assumptions that render the claim deficient as a matter of law.

Plaintiff's contention that Mallinckrodt's Synacthen acquisition violated the TTPA fails for a number of reasons. First, Plaintiff concedes there was "uncertainty that Synacthen, a preclinical drug, would be approved by the FDA." ¶ 239. Indeed, Plaintiff does not, and cannot, allege any facts showing that Synacthen would have been approved for marketing in the United

12

States, nor does it allege that Synacthen would have been priced lower than Acthar – much less by the time that Plaintiff would have paid CVS Caremark for the drug in 2015/2016. This failure alone renders Plaintiff's claim defective.

Plaintiff also fails to account for the fact that Acthar can command the prices it commands in the marketplace because of, at least in part, its status as an orphan drug. The Orphan Drug Act was enacted in 1983 (Public Law No. 97-414) to incentivize pharmaceutical companies to develop drugs for rare diseases and conditions. *See* 21 U.S.C. § 360aa-ff (2012). One such incentive is codified as "orphan drug exclusivity," 21 U.S.C. § 360bb(a)(2)(A-B), which provides a seven-year exclusivity period during which time "FDA will not approve another sponsor's marketing application for the same use or indication." 21 C.F.R. 316.31.

Given the rarity of infantile spasms and Acthar's unique ability to treat the disorder, the FDA granted Questcor's request to designate Acthar as an Orphan Drug on May 21, 2003 and provided marketing approval on October 15, 2010 (as Plaintiff notes) thus beginning the seven-year period of exclusivity. Compl. ¶ 57. The more plausible explanation for why patients and insurance companies purchased Acthar at its current price is that the price is the result of an FDA-approved exclusivity period for an orphan drug and reflects what patients are willing to pay. Plaintiff's failure to account for this alternative pricing explanation renders its claim not plausible as a matter of law.

### C. Plaintiff Fails to Plead a Cognizable Claim for Anti-Competitive Agreement in Unreasonable Restraint of Trade under the Tennessee Trade Practices Act, Tenn. Code Ann. § 47-25-101, *et seq.* (Count II).

Plaintiff's claim that Defendants participated in an anticompetitive agreement in unreasonable restraint of trade under TTPA fails for the same reasons as its monopoly claim above. Specifically, the claim rests on the idea that "Mallinckrodt has entered into exclusive

13

agreements with the agent for its largest customer, Express Scripts," thus allowing the Defendants to "raise and fix the prices for Acthar." ¶ 350. While Plaintiff attempts to distinguish this argument from its monopoly claim in Count I, Count II rests on the exact same general allegations coupled with conclusory antitrust allegations.

As discussed above, vertical agreements, even those that fix prices, are not per se illegal. *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 887, 890 (2007). Alleging the existence of an exclusive dealing agreement and then (in conclusory form) alleging anticompetitive harm based on a run-of-the-mill exclusive dealing agreement without any explanation is not sufficient to plead an antitrust violation. *See Methodist Health Servs. Corp. v. OSF Healthcare Sys.*, 859 F.3d 408, 410 (7th Cir. 2017) (Posner, J) ("What is more common than exclusive dealing?"). Courts are not required to accept as true these "legal conclusions couched as facts" and as a result, Plaintiff fails to allege an anticompetitive agreement in *unreasonable* restraint of trade. *See Webb* 346 S.W.3d at 427.[5]

## D. Plaintiff Fails to Plead a Cognizable Claim for Relief under The Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 (Count III).

This Court should dismiss Plaintiff's claim under the TCPA because this claim is entirely premised upon allegations of anticompetitive conduct. Under Tennessee law, claims based on alleged anticompetitive conduct "are not cognizable under the TCPA" and "must be dismissed." *Sherwood v. Microsoft Corp.*, No. M2000-01850-COA-R9-CV, 2003 WL 21780975, at *33 (Tenn. Ct. App. July 31, 2003). The *Sherwood* court reversed the trial court's refusal to dismiss plaintiff's TCPA claim where the plaintiff based its claim on antitrust allegations and failed to

---

[5] Moreover, to show an unreasonable restraint of trade, courts generally require Plaintiff plead facts establishing harm to competition in the relevant market. *See Texaco, Inc. v. Dagher*, 547 U.S. 1, 5 (2006) ("[T]his Court presumptively applies rule of reason analysis, under which antitrust plaintiffs must demonstrate that a particular contract or combination is in fact unreasonable and anticompetitive before it will be found unlawful.") *and Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 768 (1984) (testing a restraint of trade involves "an inquiry into market power and structure designed to assess the combination's actual effect"). As noted above, Plaintiff fails to define a relevant market and so its claim under an anticompetitive agreement should be dismissed as well.

14

articulate any further basis for the TCPA cause of action. Here, like in *Sherwood*, Plaintiff's TCPA claim is based on Defendants' alleged "unfair and deceptive conduct which allowed Defendants to raise and fix the price of Acthar at supra-competitive levels, and to maintain Mallinckrodt's monopoly." ¶ 378. Just as in *Sherwood*, the Court should dismiss these claims centered on "classic antitrust allegations dressed in TCPA clothing" as they are not actionable under the TCPA. *Id.*

Even if Plaintiff's Complaint could be construed as premised upon something other than allegations of anticompetitive conduct, it nevertheless fails to state a claim under the TCPA. To state a claim under the TCPA, a plaintiff must show "1) that the defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA and (2) that the defendant's conduct caused an "ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated." *Tucker v. Sierra Builders*, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005) (quoting Tenn. Code Ann. § 47–18–109(a)(1)). Claims under the TCPA must be plead with particularity. *Harvey v. Ford Motor Credit Co.*, 8 S.W.3d 273, 275 (Tenn. Ct. App. 1999).

### 1. There is no unfair or deceptive practice or misrepresentation by Mallinckrodt.

Plaintiff does not allege any unfair or deceptive acts or practices declared unlawful by the TCPA in connection with its purchases of Acthar from CVS Caremark – much less with the particularity required by Tennessee courts. *See Humphries v. West End Terrace, Inc.*, 795 S.W.2d 128, 132 (Tenn. Ct. App. 1990) (citing Tenn. R. Civ. P. 9.02 and dismissing plaintiff's complaint where there were "no allegations setting forth any particular fraudulent or deceptive act"). Plaintiff claims in conclusory fashion that Defendants violated the TCPA through various allegedly misleading and deceptive acts. For example, Plaintiff alleges Defendants have

15

misrepresented to the public the value and effectiveness of Acthar, including through a "false and misleading" marketing and advertising strategy. Compl. ¶ 376. Plaintiff does not identify any specific representations, statements, or advertising materials prior to Plaintiff's purchase of Acthar. *See generally*, Compl. ¶ 151 (citing statements from 2017 and 2018, after Plaintiff purchased Acthar); ¶ 271 (same). Plaintiff further contends that Defendants "disparaged the goods, services or business of other sellers of drugs that treat such diseases more effectively and safely, and for much less money, by false or misleading representations of fact." ¶ 376. Conspicuously absent, though, are any details or allegations showing which parties said what, when, to whom, and how. Plaintiff provides absolutely no detail supporting its claim that any Defendant made false or misleading representations about anyone or anything. Plaintiff's sweeping, non-specific allegations about Defendants' alleged unfair and deceptive practices are vague and conclusory and not plead with requisite particularity under Tennessee law. *See Sherwood*, 2003 WL 21780975, at *34 (dismissing plaintiff's TCPA claim where "no specific conduct [was] tied to this general allegation," and where the court could "find no further explanation for this conclusory allegation, and no facts supporting it").

### 2. Plaintiff's claim of loss is impermissibly speculative.

Plaintiff's TCPA claim fails for the additional independent reason that there are no allegations of ascertainable loss. A violation of the TCPA alone is insufficient to state a claim for relief. A plaintiff must also show it was injured as a result of the alleged violation. *See Tucker*, 180 at 115. Plaintiff claims its losses hinge on the "true price" of Acthar but fails to articulate what that "true price" is or how the price it ultimately agreed to pay its PBM, CVS Caremark, differed from the supposed "true price." Compl. ¶¶ 271, 377. Plaintiff does not sufficiently allege facts showing that "but-for" the alleged anticompetitive conduct, prices for Acthar would have

16

been lower or that a cheaper substitute product would have been available. Because the TCPA does not allow speculative losses to support a TCPA claim, Plaintiff's claim fails. *See Tucker,* 180 S.W.3d at 117 ("consumer injury must be more than trivial or speculative").

### E.   Plaintiff Fails to Plead a Cognizable Claim for Unjust Enrichment (Count IV).

Plaintiff's unjust enrichment claim is lifted nearly verbatim from the Rockford Action. Here, as there, the claim fails as a matter of law. *City of Rockford v. Mallinckrodt ARD, Inc.*, 260 F. Supp. 3d 730, 772 (N.D. Ill. 2019).

To state a claim for unjust enrichment, a Plaintiff must show 1) "[a] benefit conferred upon the defendant by the plaintiff"; 2) "appreciation by the defendant of such benefit"; and 3) "acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof." *Freeman Indus., LLC v. Eastman Chem. Co.,* 172 S.W.3d 512, 525 (Tenn. 2005) (quoting *Paschall's, Inc. v. Dozier,* 407 S.W.2d 150, 155 (Tenn. 1966)). A "plaintiff must further demonstrate that he or she has exhausted all remedies against the person with whom the plaintiff enjoyed privity of contract." *Id.; see also City of Rockford,* 360 F. Supp. 3d at 772 (observing the same).

As an initial matter, in view of its contract with its PBM CVS Caremark, to whom it tendered payment for the Acthar, Plaintiff has failed to address the "exhaustion-of-remedies" element of *Freeman.* This failure is fatal to an unjust enrichment claim. *Bearden v. Honeyweel Int'l, Inc.,* No. 3:09-CV-1035, 2015 WL 7574345, at *8 (M.D. Tenn. Nov. 23, 2015). The Rockford Court expanded on this failure in its order dismissing the unjust enrichment claim:

> With respect to the requirement that Acument must allege that it has exhausted all remedies against CVS (the entity with whom Acument may enjoy privity of contract), the court notes that the [Second Amended Complaint] does not describe any contract that Acument might have with CVS with anywhere near the amount of specificity that it details Rockford's agreement with Express Scripts. Although that level of specificity may not be required at this stage, an explanation of the contents of such a contract would certainly assist the court in assessing the issue

17

of exhaustion. Assuming that Acument is in privity of contract with CVS, Acument does not allege that it has exhausted any remedies against CVS. This is fatal to Acument's claim. The exhaustion requirement may be lifted if plaintiffs plausibly allege that such an effort would be "futile," but Acument has not done so. *Id.*; *see Bristol Pres., LLC v. IGC-Bristol, LLC*, No. 2:16-CV-360-TAV-MCLC, 2017 WL 2773663, at *5 (E.D. Tenn. June 26, 2017) (dismissing unjust enrichment claim where plaintiff failed to allege that it had exhausted all remedies against the entities in which it had privity of contract and failed to plead that doing so would be futile). Therefore, the court grants defendants' motions to dismiss Count III without prejudice, and grants Acument leave to replead to correct the deficiencies noted here if it can do so consistent with the proper pleading requirements.

*City of Rockford*, 360 F. Supp. 3d at 772.

Here, Plaintiff's claim for unjust enrichment is based on the same faulty allegations underlying its fraud claim, discussed *infra*, and as a result, it has failed to show the benefit it claims Defendants have received is "unjust." *See Bearden v. Honeyweel Int'l, Inc.*, No. 3:09-CV-1035, 2015 WL 7574345, at *8 (M.D. Tenn. Nov. 23, 2015) (holding "the most significant requirement of an unjust enrichment claim is that the benefit to the defendant be unjust"). The Rockford Court previewed a similar assessment in its dismissal order: "The court notes in passing that plaintiffs' arguments offer little in support of their unjust enrichment actions. Should plaintiffs choose to replead these claims, plaintiffs should offer more fully-developed arguments or else run the risk of the court finding that they have abandoned their claims." *City of Rockford*, 360 F. Supp. 3d at 772 n.30.

**F. Plaintiff Fails to Plead a Cognizable Claim for Fraud (Count V).**

Plaintiff's fraud claim is essentially identical to its fraud claim that was rejected in the Rockford Action. Just as there, the claim fails as a matter of law. *Id.* at 776–77.

To properly state a claim for fraud under Tennessee law, a plaintiff must allege facts showing: "(1) intentional misrepresentation of a material fact; (2) knowledge that the representation was false—that the misrepresentation was made knowingly or recklessly or

18

without belief or regard for its truth; (3) reasonable reliance on the misrepresentation by the plaintiff and resulting damages; (4) that the misrepresentation relates to an existing or past fact[.]" *Dog House Inv., LLC v. Teal Prop., Inc.*, 448 S.W.3d 905, 916 (Tenn. Ct. App. 2014) (*quoting Stacks v. Saunders*, 812 S.W.2d 587, 592 (Tenn.Ct.App. 1990)). "Fraud is never presumed, and where it is alleged facts sustaining it must be clearly made out." *Homestead Grp., LLC v. Bank of Tenn.*, 307 S.W.3d 746, 751 (Tenn. Ct. App. 2009).

Tennessee courts, just as their federal counterparts, impose a heightened pleading requirement for fraud: "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Tenn. R. Civ. P. 9.02. "[C]onclusory statements are not sufficient to make out a cause of action sounding in fraud." *Shaw v. FSGBank, N.A.*, No. E201401365COAR3CV, 2015 WL 5169155, at *6 (Tenn. Ct. App. Aug. 31, 2015) (quoting *PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525, 556 (Tenn. Ct. App. 2012)).

Plaintiff appears to allege Defendants committed fraud in two ways. First, "[i]n setting the inflated, AWP-based prices for Acthar, which prices Acthar paid, the Defendants made material misrepresentations that those prices represented the purported 'average' of 'wholesale prices' for Acthar, or some price reasonably related thereto, which they did not." Compl. ¶ 391. Second, "Defendants also misrepresented that the inflated AWP prices for Acthar represented the actual value of the product in the marketplace, which they did not." ¶ 391. As Plaintiff continues, "these prices were artificial prices, unrelated to any actual, reasonable price in the marketplace, or the actual value of Acthar, but created and manipulated by the Defendants for the purpose of generating exorbitant revenue, thus constituting false representations." ¶ 393.

Plaintiff's allegations are precisely the type of vague and conclusory allegations that Tennessee courts find insufficient to state a claim for fraud. Plaintiff attributes no statement about prices being the "average" of "wholesale prices" to Mallinckrodt, nor does Plaintiff otherwise begin to describe the required who, what, when, where, and why of such representations. And, "high prices do not in and of themselves constitute false representations." *City of Rockford*, 360 F.Supp.3d at 777; *see generally Thompson's Gas & Elec. Serv., Inc. v. BP Am. Inc.*, 691 F. Supp. 2d 860, 870 (N.D. Ill. 2010) ("The fact that Defendants were offering propane for sale at inflated prices does not mean those prices were somehow 'false'" so as to support a fraud claim).

And, as noted above, the fraud allegations here are nearly identical to the allegations that the Rockford Court squarely rejected:

> [P]laintiffs fail to sufficiently plead the factual information informing defendants of the "who, when, where, what, and how" components of a valid fraud claim. Instead, plaintiffs offer general allegations that because the "prices [for Acthar] were artificial prices," *id.* ¶ 206, "[d]efendants made material misrepresentations that those prices represented a calculation of real and fact-based prices for their drugs, and that they represented the actual value of the product in the marketplace," *id.* ¶ 204."

*City of Rockford*, 360 F. Supp. 3d at 776−77. As in *Rockford*, Plaintiff's fraud claim should be dismissed.

### G. Plaintiff Fails to Plead a Cognizable Claim for Conspiracy to Defraud/Concerted Action (Count VI).

Finally, Plaintiff's conspiracy claim is lifted nearly verbatim from the Rockford Action. Here, as there, the claim fails as a matter of law. *City of Rockford*, 360 F. Supp. 3d at 777.

Plaintiff's Complaint fails to properly plead a claim for conspiracy to defraud under Tennessee law. To state a claim for conspiracy under Tennessee law, a plaintiff must allege facts showing: (1) a common design between two or more persons, (2) to accomplish by concerted

20

action an unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury. *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 38 (Tenn. Ct. App. 2006). A claim for conspiracy to defraud further requires that "each conspirator must have the intent to accomplish this common purpose, and each must know of the other's intent." *Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 67 (Tenn. 2001).

Tennessee law is clear that "conspiracy, without proof of fraud, is not a cause of action." *USI Car Exch., Inc. v. Long Pontiac Co.*, No. 03A01-9707-CV-00268, 1998 WL 881860, at *6 (Tenn. Ct. App. Dec. 17, 1998). Here, because Plaintiff's claim for conspiracy to defraud relies on the same faulty allegations underlying its fraud claim, for the same reasons discussed above, Plaintiff's claim should be dismissed. This is precisely what the Rockford Court did, applying Tennessee law:

> Similarly, under Tennessee law, a "claim for civil conspiracy requires an underlying predicate tort allegedly committed pursuant to the conspiracy." *Lane v. Becker*, 334 S.W. 3d 756, 763 (Tenn. Ct. App. 2010). Because plaintiffs have not met their pleading requirements under Rule 9(b) for alleging fraud, plaintiffs' conspiracy to defraud claims must be dismissed as well."

*City of Rockford*, 360 F. Supp. 3d at 777.

Further, even if Plaintiff had alleged facts sufficient to establish fraud, "civil conspiracy claims must be pled with some degree of specificity in order to survive a motion to dismiss." *PNC Multifamily Capital*, 387 S.W.3d at 556. "[C]onclusory allegations unsupported by material facts will not be sufficient to state a claim" for relief. *Id. See also McGee v. Best*, 106 S.W.3d 48, 64 (Tenn. Ct. App. 2002) ("vague and conclusory allegations unsupported by material facts will not be sufficient" to state a fraud claim). Here, while Plaintiff's Complaint offers a disconnected array of conclusory allegations, such disjointed claims are insufficient to properly plead a conspiracy.

Dated: July 29, 2019                    Respectfully submitted,

                                        **COUNSEL FOR DEFENDANTS
                                        MALLINCKRODT ARD INC. and
                                        MALLINCKRODT plc**

                                        /s/ _Kathryn K. Van Namen_

                                        Daniel W. Van Horn (#18940)
                                        Diana M. Comes (#30112)
                                        Kathryn K. Van Namen (#31322)
                                        **BUTLER SNOW LLP**
                                        6075 Poplar Avenue, 5th Floor
                                        Memphis, TN 38119
                                        T: (901) 680-7200F: (901) 680 (7201)
                                        Danny.VanHorn@butlersnow.com
                                        Diana.Comes@butlersnow.com
                                        Kate.VanNamen@butlersnow.com

                                        G. Patrick Watson (*pro hac vice forthcoming*)
                                        Lindsay Sklar Johnson (*pro hac vice forthcoming*)
                                        **BRYAN CAVE LEIGHTON PAISNER LLP**
                                        One Atlantic Center, 14th Floor
                                        1201 W. Peachtree St., NW
                                        Atlanta, GA 30309
                                        (404) 572-6600
                                        patrick.watson@bclplaw.com
                                        lindsay.johnson@bclplaw.com

                                        Herbert R. Giorgio, Jr.
                                        **BRYAN CAVE LEIGHTON PAISNER LLP**
                                        One Metropolitan Square
                                        211 North Broadway, Suite 3600
                                        St. Louis, MO 63102
                                        (314) 259-2000
                                        herb.giorgio@bclplaw.com

                                        *Counsel for Mallinckrodt ARC Inc. and
                                        Mallinckrodt plc*

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing has been delivered via U.S. mail

this 29th day of July, 2019 to the following:

Patrick M. Ardis
R.H. "Chip" Chockley
Daniel V. Parish
**WOLF ARDIS, P.C.**
5810 Shelby Oaks Drive
Memphis, TN  38134

Donald E. Haviland, Jr.
William H. Platt II
**HAVILAND HUGHES**
201 S. Maple Way, Suite 110
Ambler, PA  19002

23

ELECTRONICALLY FILED
2019 Aug 07 3:27 PM
CLERK OF COURT

## IN THE CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE
## FOR THE THIRTIETH JUDICIAL CIRCUIT AT MEMPHIS

ACUMENT GLOBAL TECHNOLOGIES, INC.

       Plaintiff,

  v.

MALLINCKRODT ARD, INC., f/k/a QUESTCOR
PHARMACEUTICALS, INC., MALLINCKRODT
PLD, EXPRESS SCRIPTS HOLDING COMPANY,
EXPRESS SCRIPTS, INC., CURASCRIPT, INC.,
d/b/a CURASCRIPT, SD, PRIORITY HEALTHCARE
CORP. AND PRIORITY HEALTHCARE
DISTRIBUTION, INC., d/b/a CURASCRIPT SD AND
CURASCRIPT SPECIALTY DISTRIBUTION SD,
respectively, ACCREDO HEALTH GROUP, INC.,
UNITED BIOSOURCE CORPORATION, and
JAMES A. TUMLIN, M.D.,

       Defendants.

No. CT-2275-19
Div. VII

## NOTICE OF APPEARANCE

    Taylor English Duma LLP, by and through undersigned counsel, hereby gives notice of its appearance as counsel of record in this case for Defendant James A. Tumlin, M.D.

    This notice of appearance is without waiver of any defenses which may be available to Defendant James A. Tumlin, M.D.

Respectfully submitted this 7th day of August, 2019.

Daniel B. Brown
Tennessee Bar No. 010918
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, SE
Suite 200
Atlanta, Georgia 30339
Telephone: (770) 434-6868

*Counsel for Defendant James A. Tumlin, M.D.*

**IN THE CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE
FOR THE THIRTIETH JUDICIAL CIRCUIT AT MEMPHIS**

ACUMENT GLOBAL TECHNOLOGIES, INC.

        Plaintiff,

    v.

MALLINCKRODT ARD, INC., f/k/a QUESTCOR
PHARMACEUTICALS, INC., MALLINCKRODT
PLD, EXPRESS SCRIPTS HOLDING COMPANY,
EXPRESS SCRIPTS, INC., CURASCRIPT, INC.,
d/b/a CURASCRIPT, SD, PRIORITY HEALTHCARE
CORP. AND PRIORITY HEALTHCARE
DISTRIBUTION, INC., d/b/a CURASCRIPT SD AND
CURASCRIPT SPECIALTY DISTRIBUTION SD,
respectively, ACCREDO HEALTH GROUP, INC.,
UNITED BIOSOURCE CORPORATION, and
JAMES A. TUMLIN, M.D.,

        Defendants.

No. CT-2275-19
Div. VII

## CERTIFICATE OF SERVICE

    This is to certify that I have this date served a copy of the foregoing **NOTICE OF APPEARANCE** upon the following parties by depositing a true and correct copy of same in the United States Mail, with adequate postage affixed thereto, addressed as follows:

| | |
|---|---|
| Patrick M. Ardis | Donald E. Haviland, Jr. |
| Roy Harold Chockley | William H. Platt II |
| Daniel V. Parish | HAVILAND HUGHES |
| WOLFF ARDIS, P.C. | 201 S. Maple Way, Suite 110 |
| 5810 Shelby Oaks Drive | Ambler, PA  19002 |
| Memphis, TN  38134 | |
| | |
| Daniel W. Van Horn | G. Patrick Watson |
| Kathryn K. Van Namen | Lindsay Sklar Johnson |
| Diana M. Comes | BRYAN CAVE LEIGHTON PAISNER LLP |
| BUTLER SNOW LLP | 1201 W. Peachtree St., 14th Floor |
| 6075 Poplar Ave., 5th Floor | Atlanta, GA  30309 |
| Memphis, TN  38119 | |

Nathan A. Bicks
Lani D. Lester
William D. Irvine, Jr.
BURCH, PORTER & JOHNSON, PLLC
130 N. Court Ave.
Memphis, TN  38103

Herbert R. Giorgio, Jr.
BRYAN CAVE LEIGHTON PAISNER LLP
211 N. Broadway, Suite 3600
St. Louis, MO  63102

     This 7th day of August, 2019.

     Daniel B. Brown
     Tennessee Bar No. 010918
     TAYLOR ENGLISH DUMA LLP
     1600 Parkwood Circle, SE
     Suite 200
     Atlanta, Georgia 30339
     Telephone: (770) 434-6868

     *Counsel for Defendant James A. Tumlin, M.D.*

ELECTRONICALLY FILED
2019 Aug 15 8:52 AM
CLERK OF COURT

**CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE
FOR THE THIRTIETH JUDICIAL CIRCUIT AT MEMPHIS**

ACUMENT GLOBAL TECHNOLOGIES, INC.

      Plaintiff,

  v.

MALLINCKRODT ARD, INC., f/k/a QUESTCOR
PHARMACEUTICALS, INC., MALLINCKRODT
PLC, EXPRESS SCRIPTS HOLDING COMPANY,
EXPRESS SCRIPTS, INC., CURASCRIPT, INC.,
d/b/a CURASCRIPT, SD, PRIORITY HEALTHCARE
CORP. AND PRIORITY HEALTHCARE
DISTRIBUTION, INC., d/b/a CURASCRIPT SD AND
CURASCRIPT SPECIALTY DISTRIBUTION SD,
respectively, ACCREDO HEALTH GROUP, INC.,
UNITED BIOSOURCE CORPORATION, and
JAMES A. TUMLIN, M.D.,

      Defendants.

No. CT-2275-19
Div. VII

---

**<u>DEFENDANT JAMES A TUMLIN, M.D.'S MOTION TO DISMISS COMPLAINT</u>**

      Pursuant to Tennessee Rules of Civil Procedure 12.02(1) and 12.02(6), Defendant James

A. Tumlin, M.D. ("Dr. Tumlin"), by and through his undersigned counsel, respectfully moves this

Honorable Court to dismiss with prejudice all of the counts against him in the Complaint filed by

Plaintiff Acument Global Technologies, Inc. for lack of standing and failure to state a claim upon

which relief can be granted.  The grounds supporting this Motion are set forth more fully in Dr.

Tumlin's Memorandum of Law filed contemporaneously herewith.

      WHEREFORE, Defendant James A. Tumlin, M.D. respectfully requests that this Court

enter an Order dismissing with prejudice the Complaint filed by Plaintiff, and any such other and

further relief as the Court deems just and proper.  For the Court's convenience, a proposed order is attached to this Motion.

Respectfully submitted this 15th day of August, 2019.


Daniel B. Brown
Tennessee Bar No. 010918
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, SE, Suite 200
Atlanta, Georgia 30339
dbrown@taylorenglish.com
Telephone: (770) 434-6868

*Counsel for Defendant James A. Tumlin, M.D.*

2

## CERTIFICATE OF SERVICE

This is to certify that I have this date served a copy of the foregoing **DEFENDANT JAMES A. TUMLIN, M.D.'s MOTION TO DISMISS COMPLAINT** upon the following parties by depositing a true and correct copy of same in the United States Mail, with adequate postage affixed thereto, addressed as follows:

Patrick M. Ardis
Roy Harold Chockley
Daniel V. Parish
WOLFF ARDIS, P.C.
5810 Shelby Oaks Drive
Memphis, TN 38134

Herbert R. Giorgio, Jr.
BRYAN CAVE LEIGHTON PAISNER LLP
211 N. Broadway, Suite 3600
St. Louis, MO 63102

Daniel W. Van Horn
Kathryn K. Van Namen
Diana M. Comes
BUTLER SNOW LLP
6075 Poplar Ave., 5th Floor
Memphis, TN 38119

Donald E. Haviland, Jr.
William H. Platt II
HAVILAND HUGHES
201 S. Maple Way, Suite 110
Ambler, PA 19002

G. Patrick Watson
Lindsay Sklar Johnson
BRYAN CAVE LEIGHTON PAISNER LLP
1201 W. Peachtree St., 14th Floor
Atlanta, GA 30309

Nathan A. Bicks
Lani D. Lester
William D. Irvine, Jr.
BURCH, PORTER & JOHNSON, PLLC
130 N. Court Ave.
Memphis, TN 38103

This 15th day of August, 2019.

_Daniel B. Brown_
Daniel B. Brown
Tennessee Bar No. 010918
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, SE, Suite 200
Atlanta, Georgia 30339
dbrown@taylorenglish.com
Telephone: (770) 434-6868

*Counsel for Defendant James A. Tumlin, M.D.*

3

ELECTRONICALLY FILED
2019 Aug 15 8:52 AM
CLERK OF COURT

**CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE**
**FOR THE THIRTIETH JUDICIAL CIRCUIT AT MEMPHIS**

ACUMENT GLOBAL TECHNOLOGIES, INC.

        Plaintiff,

   v.

MALLINCKRODT ARD, INC., f/k/a QUESTCOR
PHARMACEUTICALS, INC., MALLINCKRODT
PLC, EXPRESS SCRIPTS HOLDING COMPANY,
EXPRESS SCRIPTS, INC., CURASCRIPT, INC.,
d/b/a CURASCRIPT, SD, PRIORITY HEALTHCARE
CORP. AND PRIORITY HEALTHCARE
DISTRIBUTION, INC., d/b/a CURASCRIPT SD AND
CURASCRIPT SPECIALTY DISTRIBUTION SD,
respectively, ACCREDO HEALTH GROUP, INC.,
UNITED BIOSOURCE CORPORATION, and
JAMES A. TUMLIN, M.D.,

        Defendants.

No. CT-2275-19
Div. VII

**PROPOSED ORDER GRANTING**
**DEFENDANT JAMES A. TUMLIN, M.D.'S MOTION TO DISMISS COMPLAINT**

It is hereby ORDERED that Defendant James A. Tumlin, M.D.'s Motion to Dismiss the

Complaint is GRANTED with respect to Plaintiff's claims against him as described in the

Complaint.  Plaintiff's Complaint is hereby dismissed with prejudice.

_____
The Honorable Mary L. Wagner

PRESENTED BY:

---

Daniel B. Brown
Tennessee Bar No. 010918
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, SE, Suite 200
Atlanta, Georgia 30339
dbrown@taylorenglish.com
Telephone: (770) 434-6868

*Counsel for Defendant James A. Tumlin, M.D.*

ELECTRONICALLY FILED
2019 Aug 15 8:54 AM
CLERK OF COURT

**CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE**
**FOR THE THIRTIETH JUDICIAL CIRCUIT AT MEMPHIS**

ACUMENT GLOBAL TECHNOLOGIES, INC.

     Plaintiff,

  v.

MALLINCKRODT ARD, INC., f/k/a QUESTCOR
PHARMACEUTICALS, INC., MALLINCKRODT
PLC, EXPRESS SCRIPTS HOLDING COMPANY,
EXPRESS SCRIPTS, INC., CURASCRIPT, INC.,
d/b/a CURASCRIPT, SD, PRIORITY HEALTHCARE
CORP. AND PRIORITY HEALTHCARE
DISTRIBUTION, INC., d/b/a CURASCRIPT SD AND
CURASCRIPT SPECIALTY DISTRIBUTION SD,
respectively, ACCREDO HEALTH GROUP, INC.,
UNITED BIOSOURCE CORPORATION, and
JAMES A. TUMLIN, M.D.,

     Defendants.

No. CT-2275-19
Div. VII

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT JAMES A TUMLIN, M.D.'S MOTION TO DISMISS COMPLAINT**

     Defendant James A. Tumlin, M.D. ("Dr. Tumlin"), by and through his undersigned

counsel, hereby files this Memorandum of Law in Support of his Motion to Dismiss the Complaint

with Prejudice ("Complaint") filed against him by Acument Global Technologies, Inc.

("Plaintiff"). In support, Dr. Tumlin shows as follows:

## INTRODUCTION

     Plaintiff's Complaint in this lawsuit is little more than a restatement of the allegations

dismissed in its original suit in the Northern District of Illinois against this group of Defendants,

with the exception of Dr. Tumlin. *City of Rockford and Acument Global Technologies, Inc. v.*

*Mallinckrodt ARD, Inc., et al.,* 360 F. Supp. 3d 730, 776-77 (N.D. Ill. Jan. 25, 2019)("*Rockford*"). After granting Plaintiff two opportunities to amend the Complaint, the Court held "The [Second Amended Complaint] does not sufficiently allege that Acument is a proper party to bring <u>any</u> antitrust or consumer protection claims (federal or state). Thus with leave to replead, the court dismisses Count VIII to the extent that Acument seeks to represent the claims of unnamed class members—including those in Tennessee." *Id.* at 760. (Emphasis in original). Rather than amend the allegations in *Rockford*, the Plaintiff abandoned that file and refiled those same allegations here.

Like an empty box car hitched to the end of a railroad train, Dr. Tumlin's name has been appended in this action as an afterthought; its presence adds nothing to the claims of commercial harm under Tennessee law alleged by Plaintiff. Indeed, the entire matter seems to be a Plaintiff's projection of speculation in search of a venue.

A respected academic, teacher and scholar, Dr. Tumlin is known nationwide as a specialist, a nephrologist, capable of, and experienced in diagnosing and treating extremely rare forms of kidney disease. As such, Dr. Tumlin prescribes Acthar, the only safe, effective, and FDA-approved drug available to reverse the cellular damage caused by idiopathic membranous nephropathy ("iMN") to that small group of patients actually suffering from iMN. This does not make Dr. Tumlin a monopolist, co-conspirator, or corporate shill. As even a cursory review of the Complaint reveals, Dr. Tumlin simply has no role in the sourcing, manufacture, pricing or distribution of the drug. Like the Plaintiff, Dr. Tumlin and his iMN patients come to Acthar at its market price, powerless to influence its level.

**Background and Parties**.

While not essential to whether or not a cause of action is stated, some background into the parties is helpful to understand the issues at bar. Dr. Tumlin is an internationally known and respected teacher, researcher, and practitioner specializing in the chemical causes and effects on the underlying biology of complex human diseases such as diabetes and kidney disease. He trained in internal medicine and then nephrology (kidney disease) as a Resident (1986-1989) and then Nephrology Fellow (1989-1992) at the Emory University Affiliated Hospitals in Atlanta. Upon completion of his Fellowship, Dr. Tumlin lectured on Acute Renal Failure at the Emory School of Medicine as an Associate Professor of Medicine (1992-2005). He continued to lecture on nephrotic syndromes as an Associate Professor of Medicine at the University of North Carolina, Charlotte (2005-2008) and as a full Professor of Medicine at the University of Tennessee College of Medicine – Chattanooga (2008-2017). Dr. Tumlin returned to Atlanta in 2017 and resumed formal teaching this year as a Professor of Medicine in the Renal Division of the Emory University School of Medicine. He currently practices clinical nephrology in Atlanta, Georgia.

He has been invited to lecture on the causes and prevention of kidney and related diseases at national and international scientific conferences no less than 44 times since 1999. Dr. Tumlin has presented over 60 lectures and seminars at the request of national and international universities and health systems.

In addition to teaching, Dr. Tumlin has generated a rich body of scientific knowledge. His bibliography lists over 100 published peer-reviewed medical and scientific papers on the chemistry and biology of the kidney and certain medicinal and auto-immune effects on the organ. Dr. Tumlin has received grants from the National Institutes of Health and private health-centered foundations

3

to conduct or participate in research on biomarkers in acute renal failure and kidney transplant survival.

Finally, Dr. Tumlin sees patients suffering from renal disease as part of his clinical nephrology practice. At all relevant times, and in addition to his teaching, speaking, writing and research, Dr. Tumlin practiced nephrology with Nephrology Associates of Chattanooga. It was in Chattanooga that Dr. Tumlin first examined and followed the patient covered by Plaintiff's employee health plan ("Patient AB"). As the Complaint concedes, in or about 2011 Dr. Tumlin diagnosed the patient with a nephrotic syndrome known as Idiopathic Membranous Nephropathy ("iMN") (Compl. ¶ 175), an often fatal auto-immune nephrotic syndrome that slowly destroys the kidney's filtration cells and, ultimately, the organ itself. To delay or reverse the disease's progression, Dr. Tumlin ordered the only safe, effective, and FDA-approved medication available in the United States to treat nephrotic syndromes such as iMN: the adrenocorticotropic hormone (ACTH) drug known as Acthar.

Mallinckrodt[1] is the sole manufacturer of Acthar. The formulated hormone compound stimulates the release of certain corticosteroids such as cortisol from the adrenal gland. Preliminary studies suggest that the corticosteroids stimulated by ACTH bind to certain kidney cells in a manner which slows or reverses cellular morbidity occurring as a consequence of iMN.

ACTH drugs are derived either naturally from pigs' pituitary glands or synthetically in laboratories. Mallinckrodt's Acthar-branded compound is of the natural, porcine-derived variety and is the only ACTH drug approved by the FDA for disease therapy in the United States. (Compl. ¶ 234). Acthar has a 100% share of the market for the naturally-derived ACTH drugs in Tennessee

---

[1] This brief refers to Mallinckrodt ARD, Inc. and Mallinckrodt PLC collectively as "Mallinckrodt." Unless otherwise noted, references to "Mallinckrodt" include its predecessor Questcor Pharmaceuticals, Inc.

and throughout the United States. (*Id.*)  The FDA has approved Acthar for long-term use for treatment of nephrotic syndromes such as iMN. (Compl., Exh. C, p. 5).

Express Scripts, Inc. and its affiliated entities included in the definition of "Express Scripts" undertake the distribution of Acthar to physicians and patients per the arrangements described in the Complaint. (Compl. ¶ 46).  The Complaint does not allege that Dr. Tumlin is an affiliated entity of Express Scripts or of Mallinckrodt, and Plaintiff does not allege that Dr. Tumlin was or is a separate party to any of the various distribution arrangements.  This is because, as a factual matter, Dr. Tumlin simply has no part in the manufacturing, storage, distribution or pricing of the drug.

## RELEVANT ALLEGATIONS IN THE COMPLAINT

The crux of Plaintiff's complaint is that Mallinckrodt and Express Scrips conspired to exclude competitors and limit Acthar's distribution channel in order to escalate the price of Acthar. Paragraph 47 of the Complaint specifically defines "Defendants" to be **only** "Mallinckrodt and Express Scripts." (Compl. ¶ 47).  Plaintiff separately defines Dr. Tumlin with particularity as "the treating physician for one for one of Acument's employee's spouse." (Compl. ¶ 45).   In each prayer for relief in each separate Count, Plaintiff "demands that judgment be entered in its favor, and against ***Defendants*...".  (Compl. ¶ 348, 366, 380, 388, 398, 405)(Emphasis added).  Thus, as a matter of pleading, Plaintiff has not actually sought relief against Dr. Tumlin in the Complaint. That said, at other places in the Complaint, Plaintiff appears to muddle its use of the term "Defendants" by also referring to Dr. Tumlin or his alleged conduct (*See e.g.,* Compl. ¶ 346). Thus, to the extent that Dr. Tumlin is a named defendant, Plaintiff's Complaint, as drafted, leaves unclear which, if any, claims are actually asserted against him.  Out of an abundance of caution, Dr. Tumlin is forced to address each in turn.

Specifically, with respect to Dr. Tumlin, Plaintiff alleges:

(a) that Mallinckrodt "hired" Dr. Tumlin (Compl. ¶ 287) and that he has been "paid hundreds of thousands of dollars for his work on behalf of [Mallinckrodt]" (Compl. ¶ 44). Plaintiff alleges that Tumlin pocketed Mallinckrodt's money (a) to develop data supporting the efficacy of Acthar on renal disease patients through clinical studies conducted on his and other Nephrologists' patients (Compl. ¶ 288); (b) for Dr. Tumlin's "promotional activity selling Acthar to other doctors throughout the country," (Compl. ¶ 299); (c) simply for prescribing Acthar (Compl. ¶ 220); and (d) for other unspecified purposes (Compl. ¶ 293);

(b) that Dr. Tumlin permitted Mallinckrodt to manipulate him as a "Key Opinion Leader" for purposes of so-called White Coat Marketing of Acthar to fellow nephrologists (Compl. ¶¶ 280-86);

(c) that Dr. Tumlin "conspired" with Mallinckrodt and Express Scripts (Compl. ¶ 332) to provide substantial assistance in a plan engineered by Mallinckrodt to promote Acthar for unapproved, off-label purposes such as long-term treatment of iMN and other nephrotic symptoms (Compl. ¶¶ 278, 332, 334), and

(d) that Dr. Tumlin "conspired" with Mallinckrodt and Express Scripts for him to charge his patients the exorbitant Acthar rate (Compl. ¶ 332) for Dr. Tumlin's economic benefit. (Compl. ¶ 384).

For the record, the Plaintiff's allegations are demonstrably false. More importantly, the allegations of the Complaint, taken together, even when construed as required by Tennessee law for purposes of a Motion to Dismiss, provide nothing more than unsupported conclusions based

on vague conjecture and speculation that simply will not support the stated causes of action against Dr. Tumlin.

### A.      Dr. Tumlin Never Promoted the Sale of Acthar.

Plaintiff alleges that Mallinckrodt "hired" Dr. Tumlin to provide favorable clinical data about Acthar (Compl. ¶ 287) and to perform promotional services for and on Mallinckrodt's behalf (Compl. ¶ 299). While Mallinckrodt did engage Dr. Tumlin to provide legitimate and customary consulting services from time to time, nothing in the Complaint, other than conjecture and innuendo, supports any allegation that he was hired to advocate on behalf of Mallinckrodt or Acthar.

As an initial matter, Dr. Tumlin was primed academically to research the chemical effects of the ACTH steroid on the glomerulus[2] and the role of the steroid in managing or reversing the atrophy and death of those cells making up the glomerulus. The iMN disease is indicated by atrophied glomerulus cells.

It is not surprising that Dr. Tumlin took an interest in having the opportunity to perform his own research with the only ACTH compound available in the US. Working with naturally-derived Acthar would allow him to examine the positive results generated by the synthetic compound available in Europe. (Compl. ¶ 177(e)).

Dr. Tumlin conducted two studies funded by Mallinckrodt. (Compl. ¶¶ 175, 178). While Mallinckrodt funded these studies, each was "Physician-Sponsored" rather than "Company Sponsored." Physician Sponsored studies and trials may be funded by a foundation or for-profit

---

[2] The glomerulus is the cluster of small blood vessels around the end of a kidney tubule where the body's waste products are filtered from the blood and into urine.

7

company, but the study design, trial protocols and presentation of the results are controlled exclusively by the physician or individual investigator. In other words, while Mallinckrodt may have paid for the work, they did not pay for any particular result.

But even setting aside how Dr. Tumlin was paid, the Complaint does not allege with particularity how or why any such research contributed to or created a monopoly or defrauded Plaintiff with regard to its decision to approve the Acthar prescription for payment under its plan.

**B.      Dr. Tumlin's Did Not Engage in Improper White Coat Marketing.**

Plaintiff alleges that Mallinckrodt paid Dr. Tumlin and other doctors "to serve as KOLs [Key Opinion Leaders] as part of the Mallinckrodt white coat marketing strategy into nephrology." (Compl. ¶ 282). Key Opinion Leaders ("KOLs") are typically healthcare professionals whose recognized expertise in a specific field empower them with an asymmetric influence on the opinion and medical practice of their peers, rather than their patients. Traditional KOLs often share thought leadership by publishing research or speaking at conferences.

It is true that Mallinckrodt supported research independently designed by Dr. Tumlin and other physicians to query the kidney's response to Acthar treatments. It is also true that Dr. Tumlin traveled at Mallinckrodt's expense to speak on the results of his research. But it is inaccurate, as Plaintiff speculates, that such payments were made to Dr. Tumlin to market the product, or as "secret kickbacks" for prescribing. (Compl. ¶ 220).

Research and speaking are customary methods for scientific discovery and medical education. While the cumulative amount of Mallinckrodt's payments to Dr. Tumlin is not insignificant, such amounts were always tendered at fair market value for services actually provided and for reimbursement of legitimate expenses actually incurred by Dr. Tumlin in

8

compliance with applicable Anti-Kickback Safe Harbors (42 C.F.R. § 1001.952(d)) and the PhRMA Code.[3]

Plaintiff's reliance on Propublica's publication of payments made by Mallinckrodt to Dr. Tumlin for "his promotional activity selling Acthar to other doctors throughout the country" (Comp; ¶ 299) is a bold mischaracterization. As admitted on Propublica's website, the data presented on its "DocDollars" website it taken directly from the payment data appearing in the government website www.cms.gov/openpayments/. Open Payments is a national disclosure program that promotes a more transparent and accountable health care system by making the financial relationships between manufacturers and health care providers (physicians and teaching hospitals) available to the public.[4] This government program requires drug companies to report their payments to doctors under specific "Nature of Payment" categories. Each category has a specific meaning and definition so that the actual purpose of the payment is clearly expressed.[5] The categories include (i) "Consulting Fee," (ii) "Compensation for services other than consulting, including serving as faculty or as a speaker at a venue other than a continuing education program," (iii) "Honoria," (iv) "Gifts," and (v) "Entertainment".

Plaintiff chooses to ignore the official governmental website, which catalogues every dollar paid to Dr. Tumlin by Mallinckrodt, and instead cites *Propublica* which is nothing more than a private website that arbitrarily and purposely reclassifies its data to confuse the nature of the drug company payments. For example, the official category titled "Compensation for services other

---

[3] The *Code on Interactions with Healthcare Professionals* (the "PhRMA Code") is published by the Pharmaceutical Research and Manufacturers of America. The PhRMA Code establishes recognized ethical standard for arrangements between drug manufacturers and physicians and other health care providers who provide research or speaking sponsored by the manufacturers.

[4] *See*, www.cms.gov/openpayments/

[5] *See*, https://openpaymentsdata.cms.gov/physician/156467/general-payments

than consulting, including serving as faculty or as a speaker at a venue other than a continuing education program" (category (ii) above) is re-named by *Propublica* as "Promotional Speaking/Other." Plaintiff repeats *Propublica's* mischaracterization of these payments as "facts" at Paragraph 302 in the Complaint in an attempt to argue Dr. Tumlin's role as a marketing agent, rather than an independent physician researcher. But the fact that Plaintiff pulled a mischaracterization from a private website, does not offer a factual basis for the conclusion that Mallinckrodt paid Dr. Tumlin to "promote" Acthar.

Finally, Plaintiff misrepresents the term White Coat Marketing to suggest that product marketing to other physicians is the principal role of Key Opinion Leaders. (Compl. ¶ 283). The Office of Inspector General of HHS, who is tasked with enforcing the Anti-Kickback law, explains that white coat marketing carries the danger of undue influence with patients, not other physicians. (*Id.*). To suggest otherwise is a mischaracterization of the accepted process of independent scientific experimentation and presentation actually performed by Dr. Tumlin and the global medical research community. Once more, Plaintiff's "allegations" are nothing more than speculation and conjecture. Plaintiff's speculation in this respect must also be dismissed, as mere conjecture.

**C.    Dr. Tumlin Did Not Promote Acthar for Off-Label or Unapproved Use.**

The Complaint discusses an unrelated federal False Claims Act ("FCA") case filed against Mallinckrodt in Pennsylvania at length. (Compl. ¶¶ 200-220). That unrelated FCA case involves the promotion of Acthar for the treatment of **neurological** disorders but not **nephrological** infirmities, which is the focus of this action. The Relators in that case are two former sales reps who focused on Acthar's distribution to physicians for the treatment of Multiple Sclerosis ("MS") and other neurological disorders. (Compl. ¶ 202). The Plaintiff alleges that Relators allege that

10

Mallinckrodt paid its sales representatives to promote Acthar to physicians to treat neurological diseases "off-label." (*Id.*).  Plaintiff explains while "Acthar is approved to treat acute exacerbations [flare-ups] of disease," sales reps pushed neurologists to use Acthar for long term therapy for their patient's MS and other neurological diseases in an effort to sell more product. (Compl. ¶¶ 211, 219).

Plaintiff observes that the Relators allege in their complaint that Mallinckrodt bribed doctors to prescribe Acthar for their Medicare MS patients by providing the drug for free.  (Compl. ¶ 207).  After repeating an allegation from another action (as yet unproven), Plaintiff then jumps from this hearsay to a full-throated – but completely unsupported statement that Dr. Tumlin therefore must have "received hundreds of thousands of dollars from Mallinckrodt to prescribe Acthar." (Compl. ¶ 220). This, by its very nature, is mere conjecture.  Plaintiff collapses legitimate consulting and speaking fees paid to doctors with the sales commissions allegedly paid by Mallinckrodt to its marketing reps in the MS arena and conflates allegations of off-label prescriptions for neurological diseases with FDA-approved uses in nephrological disorders.  This with the objective to conclude that Dr. Tumlin must be receiving bribes.  Not only is this conjecture, it is not even tied together with logic, and defies the facts that are available within the Complaint.

As noted in the Complaint, Acthar's label approves the drug's use for short-term exacerbations of MS and Rheumatic Disorders. [6]  (Compl. ¶ 210).  Unlike these two neurological disorders, Acthar's label clearly indicates FDA-approved use for kidney diseases treated by nephrologists that is **not** confined to short term use for occasional exacerbations.  As to use for

---

[6] Acthar is FDA approved for treatment of MS as follows: "Acthar Gel (repository corticotrophin injection) is indicated for the treatment of acute exacerbations of multiple sclerosis in adults. Controlled clinical trials have shown Acthar Gel to be effective in speeding the resolution of acute exacerbations of multiple sclerosis. However, there is no evidence that it affects the ultimate outcome or natural history of the disease.

nephrotic syndromes such as iMN, the label states that Acthar is approved "[t]o induce a diuresis or a remission of proteinuria in the nephrotic syndrome without uremia of the idiopathic type or that due to lupus erythematosus." (Compl. Exhibit C, p. 5). Thus, FDA has approved any Acthar regimen for nephrotic syndromes intended to induce a reduction of protein in the urine (proteinuria) caused by the inability of the glomerulus to retain proteins from leaking out of the kidney and into urine. (*Id.*) The duration of the therapy is dictated by the success in managing the proteinuria. (*Id.*)

Plaintiff's allegations that Dr. Tumlin accepted payments from Mallinckrodt to prescribe Acthar are equally as unfounded. All payments made by Mallinckrodt to Dr. Tumlin constitute usual and customary compensation for actual consulting services provided to Mallinckrodt or honoraria and speaking fees and reimbursement for legitimate expense actually expended by Dr. Tumlin as part of his speaking engagements. Speaking fees and honoraria are common in the pharmaceutical industry. All payments and interactions between Dr. Tumlin and Mallinckrodt are consistent with the Regulations (42 C.F.R. § 1001.952(d)), and the Code on Interactions with Healthcare Professionals, the PhRMA Code.

Setting aside all of these factual inaccuracies, this alleged misconduct still does not support a cognizable claim against Dr. Tumlin. These allegations neither show any involvement in monopolization, violations of Tennessee Consumer Protection Act, nor the other claims asserted in the Complaint.

**D.    Dr. Tumlin Never Conspired to Set Prices or "Charge" for Acthar Therapy**.

Plaintiff describes the pricing structure and marketing issues surrounding Acthar in great detail in the Complaint. (Compl. ¶¶ 49 through 176). In roughly 130 paragraphs, Plaintiff outlines claims about the market power of Express Scripts and the orphan drug status of Acthar. Never in

all of those paragraphs is Dr. Tumlin even mentioned.

Notwithstanding this absence, Plaintiff speculates that Dr. Tumlin participated in a far-flung drug pricing conspiracy "in order to charge [his patient] and Acument the artificially inflated [price] for Acthar, and to garner monopoly profits for all Defendants charged herein." (Compl. ¶ 312). Plaintiff seems to suggest that anyone who charged the asking price for Acthar, must necessarily be part of an antitrust conspiracy. But Plaintiff offers no facts to show that Dr. Tumlin ever "charged" anyone for Acthar therapy. As Plaintiff's own Complaint demonstrates, Dr. Tumlin's only charge to Patient AB was for the office visit. (Compl. ¶ 45). The conclusory allegations that suggest otherwise are belied by the facts showing what did occur in the present case: that Dr. Tumlin merely wrote a prescription to Patient AB for Acthar. (See ¶ 25, 309, 319, 332, 379, 383, 395).

Indeed, it is common knowledge that physicians do not routinely "charge" for the medications they prescribe. Plaintiff's Complaint itself concedes that Acthar is sold and dispensed by a pharmacy at the price charged by the pharmacy -- which is negotiated among the drug manufacturer, the health insurance plan, and the Pharmacy Benefit Manager ("PBM") contracted by the health insurance plan. (Compl. ¶¶ 61, 88, 92). Prices for drugs in the United States are typically a function of negotiations and arrangements among the drug manufacturer, the health plan payor, the pharmacy and the PBM hired by the health plan. Neither the patient nor the prescribing physician participate in these pricing machinations, and recognizing this, Plaintiff alleges no participation by Dr. Tumlin in the process. (Compl. ¶¶ 49-176).

No allegations exist in the Complaint that Dr. Tumlin had any financial relationship with the pharmacy-seller of Acthar or with Medco or CVS-Caremark, the PBM's that handled the drug

formulary for Acument's covered plan beneficiaries, or with Express Scripts. Plaintiff's conclusion that Dr. Tumlin "must" be a co-conspirator fails for lack of supporting facts.

## LEGAL ARGUMENT AND DISCUSSION

### I.  Overview of Applicable Pleading Standards

"[F]or a complaint to survive a motion to dismiss [under Rule 12.02(6)], the facts pleaded, and the inferences reasonably drawn from these facts, must raise the pleader's right to relief beyond the speculative level.  Moreover, courts are not required to accept as true assertions that are merely legal arguments or legal conclusions couched as facts." *West v. Schofield*, 468 S.W.3d 482, 489 (Tenn. 2015) (internal quotation marks and citations omitted).  Dismissal for failure to state a claim should occur when, "it appears that the plaintiff can prove no set of facts in support of his or her claim that would warrant relief." *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 37 (Tenn. Ct. App. 2006).  To survive a motion to dismiss, "the facts pleaded, and the inferences reasonably drawn from these facts, must raise the pleader's right to relief beyond a speculative level." *Runyon v. Zacharias*, 556 S.W.3d 732, 737 (Tenn. Ct. App. 2018), *appeal denied* (May 17, 2018)(quoting *Riggs v. Burson,* 941 S.W.2d 44, 47-8 (Tenn. 1997).

Tenn. Rule Civ. Proc. 9.02 applies to Plaintiffs claims under the TCPA and for fraud. *See, Diggs v. Lasalle Nat'l Bank Ass'n*, 387 S.W.3d 559, 565 (Tenn. Ct. App. 2012) (applying Rule 9.02 to fraud claim); *Harvey v. Ford Motor Credit Co.*, 8 S.W.3d 273,275 (Tenn. Ct. App. 1999) (TCPA claim "must be scrutinized in light of [Rule 9.02's particularity] requirements").

Rule 9.02 requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Tenn. R. Civ. P. 9.02. To satisfy Rule 9.02's particularity requirement, a complaint must allege "what representations were made

and by whom." *PNC Multifamily Capital Inst. Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525, 549 (Tenn. Ct. App. 2012).

**II.     The Complaint Fails to Assert a Claim for Relief Against Dr. Tumlin**

As noted *supra,* for purposes of the Complaint, Paragraph 47 expressly defines the term "Defendants" as used thereafter to be "Mallinckrodt and Express Scripts." (Compl. ¶ 47).   The term "Dr. Tumlin" is separately defined with particularity as "the treating physician for one of Acument's employee's spouse." (Compl. ¶ 45).   In its prayers for relief following each Count, Plaintiff demands "that judgment be entered in its favor, and against ***Defendants*…". (Compl. ¶ 348, 366, 380, 388, 398, 405).   Based on Plaintiff's own pleading, the Complaint fails to assert a claim of relief against Dr. Tumlin and should be dismissed on that ground alone. But even assuming that in some of the counts, Plaintiff did intend to seek relief against Dr. Tumlin, the Complaint fails to properly plead cognizable claims.

**III.    The Complaint Fails to Properly Plead the Elements of Any Cause of Action and It Should Be Dismissed With Prejudice in its Entirety as to Dr. Tumlin**

    **A.     Plaintiff Does Not Plead a Cognizable Claim Against Dr. Tumlin for Anti-Competitive Acts under the Tennessee Trade Practices Act 47-25-101, et seq. (Count I).**

        1.     Plaintiff Makes No Claim Against Dr. Tumlin Under Count I.

In order to state a claim for monopolization under the TTPA, a plaintiff is required to allege facts *showing* "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *Duke v. Browning-Ferris Indus. of Tenn., Inc.*, Case No. W2005-00146-COA-R3-CV, 2006 WL 1491547, at *5 (Tenn. Ct. App. May 31, 2006) (*quoting United States v. Grinnell Corp. et al.*, 384 U.S. 563, 570−71 (1966)).

In the current case, Plaintiff's monopolization case revolves around two alleged acts: first, Mallinckrodt's use of an exclusive distribution strategy, and second, that Mallinckrodt acquired Synacthen (a synthetic form of ACTH) to extend its market protection. Plaintiff makes no showing and alleges no facts that tie Dr. Tumlin to either of these activities. Paragraphs 177-78 appear to suggest that Dr. Tumlin had some sort of role in this putative TTPA violation by speculating that Acthar was somehow "recommended for approval" by Dr. Tumlin for the treatment of iMN. Plaintiff's own Exhibit C shows that the FDA "approved" Acthar for treatment of iMN. In his role as treating physician for Patient AB, Dr. Tumlin merely used his training and experience as a medical professional, to prescribe Acthar.

The Complaint, for all its 405 paragraphs, does not allege any facts showing that Dr. Tumlin had an actual role in sourcing, manufacturing, pricing, or distributing of Acthar. He comes to his patient with years of medical experience and research, acting under his Hippocratic Oath but, like his patient, Dr. Tumlin is powerless to influence Acthar's price. The Plaintiff simply has not shown how Dr. Tumlin participated in any of the monopolistic acts that the Complaint alleges to have occurred. Thus, the prayer for relief against "Defendants," to include Mallinckrodt and Express Scripts, but exclude Dr. Tumlin in Count 1, makes sense.

2. Plaintiff Does Not Allege Any Contract or Conspiracy Promoting Anti-Competitive Activity as Against Dr. Tumlin.

Despite accusatory and conclusory language about Mallinckrodt's use of "key opinion leaders" or "spokes-doctors," Plaintiff does not allege that any physicians who prescribed Acthar were given "bribes" or otherwise improperly influenced by the alleged misconduct of Mallinckrodt. ¶¶ 75, 174-5, 212-3, 220, 278, 286. Plaintiff makes frequent allegations that Dr. Tumlin created data to promote off-label uses of Acthar, and that he prescribed Acthar off-label for his Nephrology patients, such as Patient AB in the current case. The only actual evidence

16

presented by Plaintiff, however, belies this point. Attachment C to the Complaint clearly shows that the FDA approved Acthar for nephrotic syndromes prior to any research by Dr. Tumlin and prior to the prescription being issued to Patient AB.[7] (*See* Compl. Attachment C, p. 5). Plaintiff paid for the drug because its beneficiary was prescribed Acthar, and the payment for the drug was approved by Plaintiff and its PBM.

In addition, Plaintiff alleges that the numerous research studies conducted by Dr. Tumlin and published in the medical community was part of the grand conspiracy. ¶¶ 287-89. But this is unfounded speculation to support Plaintiff's desired legal conclusion, not fact. In fact, Dr. Tumlin conducted numerous nephrotic syndrome research studies, as well as a variety of treatments and pharmaceuticals. He worked for decades as a medical researcher, as described. These peer-reviewed studies are commonplace in the medical community and one of the methods by which medical advances are made. The Complaint offers no facts showing that any of these studies had any bearing on whether or not Mallinckrodt improperly obtained monopoly power in the relevant market.

Even with Plaintiff's unfounded assertions of "off label promotion and prescribing," it cannot tie Dr. Tumlin to either of the two "anticompetitive acts" of restricted distribution and the Synacthen acquisition, as alleged in ¶¶ 335-45. The occasional addition of "and Dr. Tumlin" in ¶ 346 does not suffice to meet the standard described in *West* or *Kincaid, supra.* Count I fails to state a claim against Dr. Tumlin and should be dismissed with prejudice.

---

[7] In ¶ 177, Plaintiff attempts to allege that in 2018, when Express Scripts modified its "prior authorization policy" that somehow that corporate decision undercut the independent medical advice given by Dr. Tumlin to Patient AB years before. In addition, in that same paragraph, Plaintiff seems to argue that this decision by Express Scripts somehow undercut the authority of the FDA to "approve" Acthar for certain medical indications, such as iMN. Clearly Plaintiff misapprehends the facts.

**B.    Plaintiff Does Not Plead a Cognizable Claim against Dr. Tumlin for Anti-Competitive Agreement in Unreasonable Restraint of Trade under the TTPA, Tenn. Code Ann § 47-25-101, et seq. (Count II).**

In Count II, Plaintiff alleges a violation of the TTPA for Mallinckrodt's exclusive dealing contract with Express Scripts. This Count fails as against Dr. Tumlin for the same reasons outlined in Section A, above. While Plaintiff attempts to distinguish this argument from its monopoly claim, Count II rests on the same generalized allegations coupled with conclusory antitrust allegations.

Furthermore, Dr. Tumlin's name is not even referenced within Count II (¶¶ 349-366). Even if Dr. Tumlin is considered to be named in Count II, then it should be dismissed, as to Dr. Tumlin, for the same reasons as Count I and for failure to meet the standards explained in *West, Kincaid, and Runyon, supra.*

**C.    Plaintiff Fails to Plead a Cognizable Claim Against Dr. Tumlin for Relief under The Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 (Count III).**

This Court should dismiss Plaintiff's claim under the TCPA because this claim is entirely premised upon allegations of anticompetitive conduct. Under Tennessee law, claims based on alleged anticompetitive conduct "are not cognizable under the TCPA" and "must be dismissed." *Sherwood v. Microsoft Corp.*, No. M2000-01850-COA-R9-CV, 2003 WL 21780975, at *33 (Tenn. Ct. App. July 31, 2003). In *Sherwood,* the Tennessee Court of Appeals explained that "the Tennessee General Assembly has chosen to include in the TCPA's prohibitions 'unfair or deceptive acts or practices affecting the conduct of any trade or commerce,' Tenn. Code Ann. § 47-18-104(a), "*[however] it did not include unfair competition or anticompetitive acts.*" *Id.* at *31. (Emphasis added). Here, as in *Sherwood*, Plaintiff's TCPA claim in Count III is based on Defendants' alleged "unfair and deceptive conduct which allowed Defendants to raise and fix the

prices of Acthar at supra-competitive levels, and to maintain Mallinckrodt's monopoly...." ¶ 378. Just as in *Sherwood*, the Court should dismiss these claims as "classic antitrust allegations dressed in TCPA clothing" as they are not actionable under the TCPA. (*Id* at 33).

Even if Plaintiff's Complaint could be construed as premised upon something other than allegations of anticompetitive conduct, it nevertheless fails to state a claim under the TCPA. To state a claim under the TCPA, a plaintiff must show "(1) that the defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA and (2) that the defendant's conduct caused an "ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated." *Tucker v. Sierra Builders*, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005) (quoting Tenn. Code Ann. § 47–18–109(a)(1)). Claims under the TCPA must be plead with particularity. *Harvey v. Ford Motor Credit Co.*, 8 S.W.3d 273, 275 (Tenn. Ct. App. 1999).

Unlike in Count II, the Plaintiff actually does include Dr. Tumlin in its TCPA allegations, but did so without the sufficient particularity required in *Tucker* or *Harvey*, *supra*. (¶¶ 376-79). Paragraph 376(a) avers that Dr. Tumlin received the Acthar prior authorization form. Although not specifically averred in Count III, Dr. Tumlin then presumably prescribed the medication. Paragraph 379 then claims that Dr. Tumlin "agreed to charge Acument," and its beneficiary Patient AB, certain prices. (Compl. ¶ 379). The Complaint, however, fails to aver facts showing that Dr. Tumlin actually did charge Acument, Patient AB, or anyone else for the Acthar. As discussed above, Dr. Tumlin did not "charge" Patient AB for the Acthar: he had no role in the distribution or pricing of the drug and was not the party who "approved" the drug, as this was the role of the FDA. As a medical professional, he merely prescribed Acthar to his patient. Plaintiff's PBM, which is not even named in the action, took the prescription, as well as the prior authorization form

and processed them in the course of filling *and charging for* the prescription, presumably in the ordinary course of business.

Conspicuously absent, though, are any details or allegations showing which parties said what, when, to whom, and how it actually constituted an unfair trade practice. Plaintiff provides absolutely no detail supporting its claim that any Defendant made false or misleading representations about anyone or anything. Plaintiff's sweeping, non-specific allegations about Defendants' alleged unfair and deceptive practices are vague and conclusory and not plead with requisite particularity under Tennessee law. *See Sherwood*, 2003 WL 21780975, at *34 (dismissing plaintiff's TCPA claim where "no specific conduct [was] tied to this general allegation," and where the court could "find no further explanation for this conclusory allegation, and no facts supporting it").

Under these circumstances, where the vague and amorphous allegations of the Plaintiff do not meet the heightened pleading standard for Rule 9.02, Count III should be dismissed.

### D.    Plaintiff Fails to Plead a Cognizable Claim Against Dr. Tumlin for Unjust Enrichment (Count IV).

Plaintiff's unjust enrichment claim is lifted nearly verbatim from the prior *Rockford* Action. Here, as there, the claim fails as a matter of law. *City of Rockford v. Mallinckrodt ARD, Inc.*, 260 F. Supp. 3d 730, 772 (N.D. Ill. 2019).

To state a claim for unjust enrichment, a Plaintiff must show 1) "[a] benefit conferred upon the defendant by the plaintiff"; 2) "appreciation by the defendant of such benefit"; and 3) "acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof." *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005) (quoting *Paschall's, Inc. v. Dozier*, 407 S.W.2d 150, 155 (Tenn. 1966)).

20

As an initial matter, the only role attributed to Dr. Tumlin in Count IV is to write the prescription for Acthar to his patient. (¶ 383). Plaintiff's conclusory allegation in conjunction with a statement that "Dr. Tumlin, and all Defendants were unjustly enriched" as a consequence of the prescription is insufficient to state a claim under the analysis in *Freeman*. In addition, in view of its contract with its PBM, CVS Caremark, to whom it tendered payment for the Acthar, Plaintiff has failed to address the "exhaustion-of-remedies" element of *Freeman*, which is fatal to an unjust enrichment claim. *Id.; Bearden v. Honeyweel Int'l, Inc.*, No. 3:09-CV-1035, 2015 WL 7574345, at *8 (M.D. Tenn. Nov. 23, 2015). *City of Rockford*, 360 F. Supp. 3d at 772.

The *Rockford* Court noted in its dismissal order: "The court notes in passing that plaintiffs' arguments offer little in support of their unjust enrichment actions. Should plaintiffs choose to replead these claims, plaintiffs should offer more fully-developed arguments or else run the risk of the court finding that they have abandoned their claims." *City of Rockford*, 360 F. Supp. 3d at 772 n. 30. Rather than fully develop their arguments in that case, Plaintiff chose to abandon their case in the Northern District of Illinois and file the same flawed action here in Tennessee and append Dr. Tumlin's name to the pleading.

For the foregoing reasons, Count IV should be dismissed in its entirety with prejudice.

### E.   Plaintiff Fails to Plead a Cognizable Claim Against Dr. Tumlin for Fraud (Count V).

Plaintiff's fraud claim is essentially identical to its fraud claim that was rejected in the *Rockford* case. Just as there, the claim fails as a matter of law. *Id.* at 776–77.

To properly state a claim for fraud under Tennessee law, a plaintiff must allege facts showing: "(1) intentional misrepresentation of a material fact; (2) knowledge that the representation was false—that the misrepresentation was made knowingly or recklessly or without belief or regard for its truth; (3) reasonable reliance on the misrepresentation by the plaintiff and

resulting damages; (4) that the misrepresentation relates to an existing or past fact[.]" *Dog House Inv., LLC v. Teal Prop., Inc.*, 448 S.W.3d 905, 916 (Tenn. Ct. App. 2014) (*quoting Stacks v. Saunders,* 812 S.W.2d 587, 592 (Tenn. Ct. App. 1990)). "Fraud is never presumed, and where it is alleged facts sustaining it must be clearly made out." *Homestead Grp., LLC v. Bank of Tenn.,* 307 S.W.3d 746, 751 (Tenn. Ct. App. 2009).

Tennessee courts, just as their federal counterparts, impose a heightened pleading requirement for fraud: "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Tenn. R. Civ. P. 9.02. "[C]onclusory statements are not sufficient to make out a cause of action sounding in fraud." *Shaw v. FSG Bank, N.A.*, No. E201401365COAR3CV, 2015 WL 5169155, at *6 (Tenn. Ct. App. Aug. 31, 2015) (quoting *PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.,* 387 S.W.3d 525, 556 (Tenn. Ct. App. 2012)).

Plaintiff appears to allege Defendants committed fraud in two ways. First, "[i]n setting the inflated, AWP-based prices for Acthar, which prices Acthar (sic) [Acument] paid, the Defendants made material misrepresentations that those prices represented the purported 'average' of 'wholesale prices' for Acthar, or some price reasonably related thereto, which they did not." (Compl. ¶ 391). Second, "Defendants also misrepresented that the inflated AWP prices for Acthar represented the actual value of the product in the marketplace, which they did not." (¶ 391). As Plaintiff continues, "these prices were artificial prices, unrelated to any actual, reasonable price in the marketplace, or the actual value of Acthar, but created and manipulated by the Defendants for the purpose of generating exorbitant revenue, thus constituting false representations...." (¶ 393).

Plaintiff then notes that Dr. Tumlin wrote the prescription for Acthar to Acument's Patient.[8] ¶ 396.

Plaintiff's allegations are precisely the type of vague and conclusory allegations that Tennessee courts find insufficient to state a claim for fraud. Plaintiff attributes no statement about prices being the "average" of "wholesale prices" to Dr. Tumlin, nor does Plaintiff otherwise begin to describe the required who, what, when, where, and why of such representations. And, "high prices do not in and of themselves constitute false representations." *City of Rockford*, 360 F.Supp.3d at 777; *see generally Thompson's Gas & Elec. Serv., Inc. v. BP Am. Inc.*, 691 F. Supp. 2d 860, 870 (N.D. Ill. 2010) ("The fact that Defendants were offering propane for sale at inflated prices does not mean those prices were somehow 'false'" so as to support a fraud claim).

And, as noted above, the fraud allegations here are nearly identical to the allegations that the Rockford Court squarely rejected:

> [P]laintiffs fail to sufficiently plead the factual information informing defendants of the "who, when, where, what, and how" components of a valid fraud claim. Instead, plaintiffs offer general allegations that because the "prices [for Acthar] were artificial prices," *id*. ¶ 206, "[d]efendants made material misrepresentations that those prices represented a calculation of real and fact-based prices for their drugs, and that they represented the actual value of the product in the marketplace," *id*. ¶ 204."

*City of Rockford*, 360 F. Supp. 3d at 776–77. Plaintiff generally avers that Defendants represented that these prices were the average of wholesale prices, but offers no facts supporting when, to whom, or how these alleged representations were made, or whether, in fact, they were untrue. And none of the alleged misrepresentations at all are attributed to Dr. Tumlin. As in *Rockford*, Plaintiff's fraud claim should be dismissed with prejudice.

---

[8] Plaintiff incorrectly alleges that Dr. Tumlin "charged" Patient AB for the Acthar. ¶ 395. See p___, for a discussion of the proper analysis of the transaction for medical treatments and prescriptions in the healthcare marketplace.

23

**F.      Plaintiff Fails to Plead a Cognizable Claim Against Dr. Tumlin for Conspiracy to Defraud/Concerted Action (Count VI).**

Finally, Plaintiff's conspiracy claim is lifted nearly verbatim from the *Rockford* Action. Here, as there, the claim fails as a matter of law. *City of Rockford,* 360 F. Supp. 3d at 777.

Plaintiff's Complaint fails to properly plead a claim for conspiracy to defraud under Tennessee law. To state a claim for conspiracy under Tennessee law, a plaintiff must allege facts showing: "(1) a common design between two or more persons, (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury." *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 38 (Tenn. Ct. App. 2006). A claim for conspiracy to defraud further requires that "each conspirator must have the intent to accomplish this common purpose, and each must know of the other's intent." *Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 67 (Tenn. 2001).

Here, because Plaintiff's claim for conspiracy to defraud relies on the same faulty allegations underlying its fraud claim in Count V, for the same reasons discussed above, Plaintiff's claim should be dismissed. This is precisely what the *Rockford* Court did, applying Tennessee law:

> Similarly, under Tennessee law, a "claim for civil conspiracy requires an underlying predicate tort allegedly committed pursuant to the conspiracy." *Lane v. Becker*, 334 S.W. 3d 756, 763 (Tenn. Ct. App. 2010). Because plaintiffs have not met their pleading requirements under Rule 9(b) for alleging fraud, plaintiffs' conspiracy to defraud claims must be dismissed as well."

*City of Rockford,* 360 F. Supp. 3d at 777.

Further, even if Plaintiff had alleged facts sufficient to establish fraud, "[c]ivil conspiracy claims must be pled with some degree of specificity in order to survive a motion to dismiss; conclusory allegations unsupported by material facts will not be sufficient to state a claim for relief." *PNC Multifamily Capital*, 387 S.W.3d at 556.  Here, while Plaintiff's Complaint offers a disconnected array of conclusory allegations, such disjointed claims are insufficient to properly

plead a conspiracy.  As with Count II, Plaintiff does not even mention Dr. Tumlin or any putative role in the facts surrounding the allegations in Count VI, and thus, it would seem that even Plaintiff concedes that this Count should not proceed as to him.

## CONCLUSION

As demonstrated above, Plaintiff's Complaint, despite its length, is short on facts to actually support the claims therein. Even when construed for purposes of a Motion to Dismiss, the Complaint simply does not state cognizable claims against Dr. Tumlin.  Based on Plaintiff's definition of "Defendants," the Complaint does not appear to technically even seek relief against Dr. Tumlin.  But even if it is construed to do so, the Complaint offers only conjecture, speculation and legal conclusions to make sweeping, baseless allegations against a reputable physician who is not shown to have any connection to the conspiracies and acts that Plaintiff complains of.  Thus, the Complaint against Dr. Tumlin should be dismissed in its entirety.

Respectfully submitted,

**COUNSEL FOR DEFENDANT**
**Dr. James A. Tumlin**

Daniel B. Brown (# 010918)
Taylor English Duma, LLP
1600 Parkwood Circle, Suite 200
Atlanta, GA  30339
T: 770 434-6868, F: 770 434-7376
dbrown@taylorenglish.com
*Counsel for Dr. James A. Tumlin*

William D. Dillon (*pro hac vice forthcoming*)
Taylor English Duma, LLP
1600 Parkwood Circle, Suite 200
Atlanta, GA  30339
T: 770 434-6868, F: 770 434-7376
bdillon@taylorenglish.com
*Counsel for Dr. James A. Tumlin*

## CERTIFICATE OF SERVICE

This is to certify that I have this date served a copy of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT JAMES A. TUMLIN, M.D.'s MOTION TO DISMISS COMPLAINT** upon the following parties by depositing a true and correct copy of same in the United States Mail, with adequate postage affixed thereto, addressed as follows:

Patrick M. Ardis
Roy Harold Chockley
Daniel V. Parish
WOLFF ARDIS, P.C.
5810 Shelby Oaks Drive
Memphis, TN 38134

Herbert R. Giorgio, Jr.
BRYAN CAVE LEIGHTON PAISNER LLP
211 N. Broadway, Suite 3600
St. Louis, MO 63102

Daniel W. Van Horn
Kathryn K. Van Namen
Diana M. Comes
BUTLER SNOW LLP
6075 Poplar Ave., 5th Floor
Memphis, TN 38119

Donald E. Haviland, Jr.
William H. Platt II
HAVILAND HUGHES
201 S. Maple Way, Suite 110
Ambler, PA 19002

G. Patrick Watson
Lindsay Sklar Johnson
BRYAN CAVE LEIGHTON PAISNER LLP
1201 W. Peachtree St., 14th Floor
Atlanta, GA 30309

Nathan A. Bicks
Lani D. Lester
William D. Irvine, Jr.
BURCH, PORTER & JOHNSON, PLLC
130 N. Court Ave.
Memphis, TN 38103

This 15th day of August, 2019.

Daniel B. Brown
Tennessee Bar No. 010918
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, SE
Suite 200
Atlanta, Georgia 30339
Telephone: (770) 434-6868
dbrown@taylorenglish.com

*Counsel for Defendant James A. Tumlin, M.D.*

ELECTRONICALLY FILED
2019 Sep 05 11:59 AM
CLERK OF COURT

## CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE
## FOR THE THIRTIETH JUDICIAL CIRCUIT AT MEMPHIS

ACUMENT GLOBAL TECHNOLOGIES, INC.,

                Plaintiff,

      v.                                    Docket No. CT-2275-19

MALLINCKRODT ARD, INC., et al.,

                Defendants.

## MOTION TO ADMIT MICHAEL J. LYLE TO PRACTICE *PRO HAC VICE*

Pursuant to Rule 19 of the Rules of the Tennessee Supreme Court, the undersigned, Nathan A. Bicks ("Movant" hereinafter), an attorney licensed and admitted to practice before this Court, moves for the entry of an order permitting the admission *pro hac vice* of Michael John Lyle of the law firm Quinn, Emanuel, Urquhart & Sullivan, LLP, located at 1300 I Street NW, Suite 900, in Washington, D.C 20005.

Mr. Lyle wishes to appear on behalf of Defendants Express Scripts Holding Company; Express Scripts, Inc.; CuraScript, Inc., doing business as CuraScript SD; Priority Healthcare Corp. and Priority Healthcare Distribution Inc., doing business as CuraScript SD; Accredo Health Group, Inc.; and United BioSource LLC (collectively the "Express Scripts Defendants").

*In support of this Motion, Movant would show to the Court:*

1.      As indicated by his affidavit attached hereto as Exhibit A, Mr. Lyle is licensed to practice in Illinois and the District of Columbia, and is in good standing to practice in both jurisdictions. Mr. Lyle has also been admitted to practice before the United States Supreme Court; the United States Court of Appeals for the Second, Fourth, Fifth, Seventh, and Eighth Circuits; and the United States District Courts for the District of Columbia, the Eastern District of Michigan,

the Western District of Michigan, the Central District of Illinois, and the Northern District of Illinois.

2.      Mr. Lyle has not been suspended or made the subject of any disciplinary action in any court or bar.

3.      Mr. Lyle has never been sanctioned by the Board of Professional Responsibility of the Supreme Court of Tennessee, by any similar lawyer disciplinary agency in any jurisdiction, or by any similar lawyer disciplinary authority.

4.      Mr. Lyle consents to the disciplinary jurisdiction of the Board of Professional Responsibility of the Supreme Court of Tennessee and the courts of Tennessee in any matter arising out of his conduct in this proceeding, and further agrees to be bound by the Tennessee Rules of Professional Conduct and any other rules of conduct applicable to lawyers generally admitted in Tennessee.

5.      Mr. Lyle has paid all fees required by Tennessee Supreme Court Rule 19 in connection with this motion for admission.

6.      Mr. Lyle is a reputable and ethical attorney with the highest standards of personal conduct, and, as such, merits admission to practice *pro hac vice* before this Court.

WHEREFORE, Movant asks the Court to enter an order admitting Mr. Lyle to practice *pro hac vice* in the above-captioned cause.

2

Respectfully submitted,

Nathan A. Bicks (#10903)
William D. Irvine, Jr. (#035193)
Lani D. Lester (#035226)
BURCH, PORTER & JOHNSON, PLLC
130 North Court Avenue
Memphis, TN 31803
Tel: (901) 524-5000
Facsimile: (901) 524-5024
*Attorneys for the Express Scripts Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent by electronic mail or U.S. mail as required to all attorneys and all interested parties in this matter on this the 5th day of September 2019.

Daniel V. Parish
Patrick M. Ardis
Roy Harold Chockley
WOLF ARDIS, P.C.
5810 Shelby Oaks Drive
Memphis, TN 38134
pardis@wolfardis.com
cchockley@wolfardis.com
dparish@wolfardis.com

Donald Haviland, Jr.
William H. Platt, II
HAVILAND HUGHES
201 S. Maple Way, Suite 110
Ambler, PA 19002
haviland@havilandhughes.com
platt@havilandhughes.com
*Attorneys for Acument Global Technologies, Inc.*

3

Daniel B. Brown (#010918)
TAYLOR ENGLISH DUMA, LLC
1600 Parkwood Circle, SE Suite 200
Atlanta, GA 30339
dbrown@taylorenglish.com
*Counsel for James A. Tumlin, M.D.*

Daniel W. Van Horn
Kathryn K. Van Namen
Diana M. Gomes
BUTLER SNOW, LLP
6075 Poplar Avenue, 5th Floor
Memphis, TN 38119
Danny.VanHorn@butlersnow.com
Diana.Comes@butlersnow.com
Kate.VanNamen@butlersnow.com

G. Patrick Watson
Lindsay Sklar Johnson
BRYAN CAVE LEIGHTON PAISNER, LLP
One Atlantic Center, 14th Floor
1201 Peachtree Street, NW
Atlanta, GA 30309
Patrick.Watson@bclplaw.com
Lindsay.Johnson@bclplaw.com

Herbert R. Giorgio, Jr.
BRYAN CAVE LEIGHTON PAISNER, LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO 63102
Herb.Giorgio@bclplaw.com
*Attorneys for Mallinckrodt ARC Inc. and Mallinckrodt plc*

Nathan Bicks

4

# EXHIBIT A

**CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE
FOR THE THIRTIETH JUDICIAL CIRCUIT AT MEMPHIS**

| | |
|---|---|
| ACUMENT GLOBAL TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> MALLINCKRODT ARD, INC., et al., <br><br> Defendants. | Docket No. CT-2275-19 |

CITY OF WASHINGTON

DISTRICT OF COLUMBIA

## AFFIDAVIT OF MICHAEL J. LYLE

Before me, the undersigned, personally appeared Michael J. Lyle, who after being duly sworn makes oath and states as follows:

1.     My full name is Michael John Lyle.  My residence address is 8015 Ellingson Drive, Chevy Chase, MD 20815.  I am an attorney with Quinn Emanuel Urquhart & Sullivan, LLP, located at 1300 I St NW, Suite 900, Washington, D.C. 20005.  My e-mail address is mikelyle@quinnemanuel.com and my telephone number is 202-538-8166.

2.     I seek to represent Defendants Express Scripts Holding Company; Express Scripts, Inc.; CuraScript, Inc., doing business as CuraScript SD; Priority Healthcare Corp. and Priority Healthcare Distribution Inc., doing business as CuraScript SD; Accredo Health Group, Inc.; and United BioSource LLC (collectively the "Express Scripts Defendants") in the above-captioned action.

3.      I am licensed to practice law in the state of Illinois, date of admission November 10, 1988, registration number 6199227 and the District of Columbia, date of admission November 2, 2001, registration number 475078.

4.      I am additionally licensed to practice before the United States Supreme Court, date of admission March 28, 2005, registration number 254705; the United States Court of Appeals for the Second Circuit, date of admission December 2, 2015; the United States Court of Appeals for the Fourth Circuit, date of admission March 19, 1997; the United States Court of Appeals for the Fifth Circuit, date of admission December 16, 2011; the United States Court of Appeals for the Seventh Circuit, date of admission December 15, 1995; the United States Court of Appeals for the Eighth Circuit, date of admission April 18, 2002; the United States District Court for the District of Columbia, date of admission August 4, 2005, registration number 475078; the United States District Court for the Eastern District of Michigan, date of admission February 1, 1991; the United States District Court for the Western District of Michigan, date of admission March 27, 2007; the United States District Court for the Central District of Illinois, date of admission April 24, 1990; and the United States District Court for the Northern District of Illinois, date of admission January 11, 1989.

5.      I am in good standing in all jurisdictions in which I am licensed to practice law.

6.      I have been admitted *pro hac vice* in Tennessee State Court once during the past three years. I was admitted on October 18, 2016 in *Accredo Health Group, Inc. v. GlaxoSmithKline, LLC f/k/a SmithKline Beecham Corporation d/b/a GlaxoSmithKline*, in the Circuit Court of Shelby Country, Tennessee.

7.      I have never been denied admission *pro hac vice*, nor have I had an admission *pro hac vice* revoked by any court in any jurisdiction.

2

8. I have never been disciplined or sanctioned by the Board of Professional Responsibility of the Supreme Court of Tennessee, by any similar lawyer disciplinary agency in any jurisdiction, or by any similar lawyer disciplinary authority.

9. There are no disciplinary actions or investigations concerning my conduct as a lawyer pending before the Board of Professional Responsibility of the Supreme Court of Tennessee, before any similar lawyer disciplinary agency in any jurisdiction, or before any similar lawyer disciplinary authority.

10. I am familiar with the Tennessee Rules of Professional Conduct and the rules governing the proceedings of the Circuit Court of Shelby County, Tennessee.

11. I consent to the disciplinary jurisdiction of the Board of Professional Responsibility of the Supreme Court of Tennessee and the courts of Tennessee in any matter arising out of the my conduct as a lawyer in the above-captioned action. I agree to be bound by the Tennessee Rules of Professional Conduct and any other rules of conduct applicable to lawyers generally admitted in Tennessee.

12. I am associated with Nathan Bicks (#10903), of the law firm Burch, Porter & Johnson, PLLC located at 130 North Court Avenue Memphis, TN 31803. Mr. Bicks's telephone number is (901) 524-5000.

13. I have paid all fees required by this Rule in connection with the Motion for Admission.

14. Service of the *pro hac vice* motion and all associated papers will be made upon all counsel of record in the proceeding and upon the Board of Professional Responsibility of the Supreme Court of Tennessee.

15.     A Certificate of Good Standing from the court of last resort of the licensing jurisdiction in which I principally practice is attached as Exhibit A to this affidavit and incorporated herein.

I declare under penalty of perjury that the foregoing is true and correct. Executed in Washington, DC.

_____

*Pro Hac Vice Applicant*

Sworn to and subscribed before me this 12ᵗʰ day of August . 20 19 .

_____

Notary Public

My commission expires: 8/31/20

4



On behalf of JULIO A. CASTILLO, Clerk of the District of Columbia Court of Appeals,
the District of Columbia Bar does hereby certify that

*Michael J Lyle*

was duly qualified and admitted on **November 2, 2001** as an attorney and counselor entitled
to practice before this Court; and is, on the date indicated below, an Active member in
good standing of this Bar.

In Testimony Whereof,
I have hereunto subscribed my
name and affixed the seal of this
Court at the City of Washington,
D.C., on July 23, 2019.

**JULIO A. CASTILLO**
Clerk of the Court

Issued By:

District of Columbia Bar Membership

For questions or concerns, please contact the D.C. Bar Membership Office at 202-626-3475 or email
memberservices@dcbar.org.

ELECTRONICALLY FILED
2019 Sep 05 12:02 PM
CLERK OF COURT

### CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE
### FOR THE THIRTIETH JUDICIAL CIRCUIT AT MEMPHIS

|  |  |
|---|---|
| ACUMENT GLOBAL TECHNOLOGIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>MALLINCKRODT ARD, INC., et al.,<br><br>Defendants. | Docket No. CT-2275-19 |

### MOTION TO ADMIT ERIC C. LYTTLE TO PRACTICE *PRO HAC VICE*

Pursuant to Rule 19 of the Rules of the Tennessee Supreme Court, the undersigned, Nathan A. Bicks ("Movant" hereinafter), an attorney licensed and admitted to practice before this Court, moves for the entry of an order permitting the admission *pro hac vice* of Eric C. Lyttle of the law firm Quinn, Emanuel, Urquhart & Sullivan, LLP, located at 1300 I Street NW, Suite 900, in Washington, D.C 20005.

Mr. Lyttle wishes to appear on behalf of Defendants Express Scripts Holding Company; Express Scripts, Inc.; CuraScript, Inc., doing business as CuraScript SD; Priority Healthcare Corp. and Priority Healthcare Distribution Inc., doing business as CuraScript SD; Accredo Health Group, Inc.; and United BioSource LLC (collectively the "Express Scripts Defendants").

In support of this Motion, Movant would show to the Court:

1.      *As indicated by his affidavit attached hereto as Exhibit A, Mr. Lyttle is licensed to* practice in the District of Columbia and is a member of the Virginia bar currently on inactive status. Mr. Lyttle is in good standing in both jurisdictions. Mr. Lyttle has also been admitted to practice before the United States Court of Appeals for the Fourth and Fifth Circuits; the District

Courts for the District of Columbia, the Western District of Michigan, and the United States Bankruptcy Court for the District of Columbia.

2.      Mr. Lyttle has not been suspended or made the subject of any disciplinary action in any court or bar.

3.      Mr. Lyttle has never been sanctioned by the Board of Professional Responsibility of the Supreme Court of Tennessee, by any similar lawyer disciplinary agency in any jurisdiction, or by any similar lawyer disciplinary authority.

4.      Mr. Lyttle consents to the disciplinary jurisdiction of the Board of Professional Responsibility of the Supreme Court of Tennessee and the courts of Tennessee in any matter arising out of his conduct in this proceeding, and further agrees to be bound by the Tennessee Rules of Professional Conduct and any other rules of conduct applicable to lawyers generally admitted in Tennessee.

5.      Mr. Lyttle has paid all fees required by Tennessee Supreme Court Rule 19 in connection with this motion for admission.

6.      Mr. Lyttle is a reputable and ethical attorney with the highest standards of personal conduct, and, as such, merits admission to practice *pro hac vice* before this Court.

WHEREFORE, Movant asks the Court to enter an order admitting Mr. Lyttle to practice *pro hac vice* in the above-captioned cause.

2

Respectfully submitted,

Nathan A. Bicks (#10903)
William D. Irvine, Jr. (#035193)
Lani D. Lester (#035226)
BURCH, PORTER & JOHNSON, PLLC
130 North Court Avenue
Memphis, TN 31803
Tel: (901) 524-5000
Facsimile: (901) 524-5024
*Attorneys for the Express Scripts Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent by electronic mail or U.S. mail as required to all attorneys and all interested parties in this matter on this the day of September 2019.

Daniel V. Parish
Patrick M. Ardis
Roy Harold Chockley
WOLF ARDIS, P.C.
5810 Shelby Oaks Drive
Memphis, TN 38134
pardis@wolfardis.com
cchockley@wolfardis.com
dparish@wolfardis.com

Donald Haviland, Jr.
William H. Platt, II
HAVILAND HUGHES
201 S. Maple Way, Suite 110
Ambler, PA 19002
haviland@havilandhughes.com
platt@havilandhughes.com
*Attorneys for Acument Global Technologies, Inc.*

Daniel B. Brown (#010918)
TAYLOR ENGLISH DUMA, LLC
1600 Parkwood Circle, SE Suite 200
Atlanta, GA 30339
dbrown@taylorenglish.com
*Counsel for James A. Tumlin, M.D.*

3

Daniel W. Van Horn
Kathryn K. Van Namen
Diana M. Gomes
BUTLER SNOW, LLP
6075 Poplar Avenue, 5th Floor
Memphis, TN 38119
Danny.VanHorn@butlersnow.com
Diana.Comes@butlersnow.com
Kate.VanNamen@butlersnow.com

G. Patrick Watson
Lindsay Sklar Johnson
BRYAN CAVE LEIGHTON PAISNER, LLP
One Atlantic Center, 14th Floor
1201 Peachtree Street, NW
Atlanta, GA 30309
Patrick.Watson@bclplaw.com
Lindsay.Johnson@bclplaw.com

Herbert R. Giorgio, Jr.
BRYAN CAVE LEIGHTON PAISNER, LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO 63102
Herb.Giorgio@bclplaw.com
*Attorneys for Mallinckrodt ARC Inc. and Mallinckrodt plc*

Nathan Bicks

`

# EXHIBIT A

## CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE
## FOR THE THIRTIETH JUDICIAL CIRCUIT AT MEMPHIS

ACUMENT GLOBAL TECHNOLOGIES, INC.,

     Plaintiff,

   v.

MALLINCKRODT ARD, INC., et al.,

     Defendants.

Docket No. CT-2275-19

CITY OF WASHINGTON

DISTRICT OF COLUMBIA

### AFFIDAVIT OF ERIC C. LYTTLE

Before me, the undersigned, personally appeared Eric C. Lyttle, who after being duly sworn makes oath and states as follows:

1.  My full name is Eric Christopher Lyttle. My residence address is 3200 N Albemarle Street, Arlington VA 22207-4219. I am an attorney with Quinn Emanuel Urquhart & Sullivan, LLP, located at 1300 I St NW, Suite 900, Washington, D.C. 20005. My e-mail address is ericlyttle@quinnemanuel.com and my telephone number is 202-538-8162.

2.  I seek to represent Defendants Express Scripts Holding Company; Express Scripts, Inc.; CuraScript, Inc., doing business as CuraScript SD; Priority Healthcare Corp. and Priority Healthcare Distribution Inc., doing business as CuraScript SD; Accredo Health Group, Inc.; and United BioSource LLC (collectively the "Express Scripts Defendants") in the above-captioned action.

3.      I am licensed to practice law in the District of Columbia, date of admission August 11, 2003, registration number 482856, and am a member of the bar in good standing on inactive status in Virginia, date of admission October 11, 2002, registration number 48518.

4.      I am additionally licensed to practice before the United States Court of Appeals for the Fourth Circuit, date of admission October 28, 2002; the United States Court of Appeals for the Fifth Circuit, date of admission March 1, 2016; the United States District Court for the District of Columbia, date of admission June 7, 2004, registration number 482856; the United States District Court for the Western District of Michigan, date of admission March 27, 2007; the United States Bankruptcy Court for the District of Columbia, date of admission October 5, 2015, registration number 482856.

5.      I have been admitted *pro hac vice* in Tennessee State Court once during the past three years.   I was admitted on October 18, 2016 in *Accredo Health Group, Inc. v. GlaxoSmithKline, LLC f/k/a SmithKline Beecham Corporation d/b/a GlaxoSmithKline*, in the Circuit Court of Shelby Country, Tennessee.

6.      I have never been denied admission *pro hac vice*, nor have I had an admission *pro hac vice* revoked by any court in any jurisdiction.

7.      I have never been disciplined or sanctioned by the Board of Professional Responsibility of the Supreme Court of Tennessee, by any similar lawyer disciplinary agency in any jurisdiction, or by any similar lawyer disciplinary authority.

8.      There are no disciplinary actions or investigations concerning my conduct as a lawyer pending before the Board of Professional Responsibility of the Supreme Court of Tennessee, before any similar lawyer disciplinary agency in any jurisdiction, or before any similar lawyer disciplinary authority.

9.      I am familiar with the Tennessee Rules of Professional Conduct and the rules governing the proceedings of the Circuit Court of Shelby County, Tennessee.

10.     I consent to the disciplinary jurisdiction of the Board of Professional Responsibility of the Supreme Court of Tennessee and the courts of Tennessee in any matter arising out of the my conduct as a lawyer in the above-captioned action. I agree to be bound by the Tennessee Rules of Professional Conduct and any other rules of conduct applicable to lawyers generally admitted in Tennessee.

11.     I am associated with Nathan Bicks (#10903), of the law firm Burch, Porter & Johnson, PLLC located at 130 North Court Avenue Memphis, TN 31803. Mr. Bicks's telephone number is (901) 524-5000.

12.     I have paid all fees required by this Rule in connection with the Motion for Admission.

13.     Service of the *pro hac vice* motion and all associated papers will be made upon all counsel of record in the proceeding and upon the Board of Professional Responsibility of the Supreme Court of Tennessee.

14.     A Certificate of Good Standing from the court of last resort of the licensing jurisdiction in which I principally practice is attached as Exhibit A to this Affidavit and incorporated herein.

I declare under penalty of perjury that the foregoing is true and correct.

_Pro Hac Vice Applicant_

3

Sworn to and subscribed before me this _6th_ day of _August_ , 20 _19_.


_signature_
Notary Public

My commission expires: _8/31/20_



# EXHIBIT A



On behalf of JULIO A. CASTILLO, Clerk of the District of Columbia Court of Appeals,
the District of Columbia Bar does hereby certify that

*Eric C. Lyttle*

was duly qualified and admitted on **August 11, 2003** as an attorney and counselor entitled to
practice before this Court; and is, on the date indicated below, an **Active** member in good
standing of this Bar.

**In Testimony Whereof,**
I have hereunto subscribed my
name and affixed the seal of this
Court at the City of Washington,
D.C., on July 26, 2019.

**JULIO A. CASTILLO**
**Clerk of the Court**

Issued By:

District of Columbia Bar Membership

For questions or concerns, please contact the D.C. Bar Membership Office at 202-626-3475 or email
memberservices@dcbar.org.

ELECTRONICALLY FILED
2019 Sep 05 12:05 PM
CLERK OF COURT

## CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE
## FOR THE THIRTIETH JUDICIAL CIRCUIT AT MEMPHIS

ACUMENT GLOBAL TECHNOLOGIES, INC.,

Plaintiff,

v.

MALLINCKRODT ARD, INC., et al.,

Defendants.

Docket No. CT-2275-19

## MOTION TO ADMIT MICHAEL D. BONANNO TO PRACTICE *PRO HAC VICE*

Pursuant to Rule 19 of the Rules of the Tennessee Supreme Court, the undersigned, Nathan A. Bicks ("Movant" hereinafter), an attorney licensed and admitted to practice before this Court, moves for the entry of an order permitting the admission *pro hac vice* of Michael Domenic Bonanno of the law firm Quinn, Emanuel, Urquhart & Sullivan, LLP, located at 1300 I Street NW, Suite 900, in Washington, D.C 20005.

Mr. Bonanno wishes to appear on behalf of Defendants Express Scripts Holding Company; Express Scripts, Inc.; CuraScript, Inc., doing business as CuraScript SD; Priority Healthcare Corp. and Priority Healthcare Distribution Inc., doing business as CuraScript SD; Accredo Health Group, Inc.; and United BioSource LLC (collectively the "Express Scripts Defendants").

In support of this Motion, Movant would show to the Court:

1.      As indicated by his affidavit attached hereto as Exhibit A, Mr. Bonanno is licensed to practice in the District of Columbia, and is in good standing to practice in that jurisdiction. Mr. Bonanno has also been admitted to practice before the United States District Court for the District of Columbia.

2.      Mr. Bonanno has not been suspended or made the subject of any disciplinary action in any court or bar.

3.      Mr. Bonanno has never been sanctioned by the Board of Professional Responsibility of the Supreme Court of Tennessee, by any similar lawyer disciplinary agency in any jurisdiction, or by any similar lawyer disciplinary authority.

4.      Mr. Bonanno consents to the disciplinary jurisdiction of the Board of Professional Responsibility of the Supreme Court of Tennessee and the courts of Tennessee in any matter arising out of his conduct in this proceeding, and further agrees to be bound by the Tennessee Rules of Professional Conduct and any other rules of conduct applicable to lawyers generally admitted in Tennessee.

5.      Mr. Bonanno has paid all fees required by Tennessee Supreme Court Rule 19 in connection with this motion for admission.

6.      Mr. Bonanno is a reputable and ethical attorney with the highest standards of personal conduct, and, as such, merits admission to practice *pro hac vice* before this Court.

WHEREFORE, Movant asks the Court to enter an order admitting Mr. Bonanno to practice *pro hac vice* in the above-captioned cause.

Respectfully submitted,

Nathan A. Bicks (#10903)
William D. Irvine, Jr. (#035193)
Lani D. Lester (#035226)
BURCH, PORTER & JOHNSON, PLLC
130 North Court Avenue
Memphis, TN 31803
Tel: (901) 524-5000
Facsimile: (901) 524-5024
*Attorneys for the Express Scripts Defendants*

2

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent by electronic mail or U.S. mail as required to all attorneys and all interested parties in this matter on this the 5th day of September 2019.

Daniel V. Parish
Patrick M. Ardis
Roy Harold Chockley
WOLF ARDIS, P.C.
5810 Shelby Oaks Drive
Memphis, TN 38134
pardis@wolfardis.com
cchockley@wolfardis.com
dparish@wolfardis.com

Donald Haviland, Jr.
William H. Platt, II
HAVILAND HUGHES
201 S. Maple Way, Suite 110
Ambler, PA 19002
haviland@havilandhughes.com
platt@havilandhughes.com
*Attorneys for Acument Global Technologies, Inc.*

Daniel B. Brown (#010918)
TAYLOR ENGLISH DUMA, LLC
1600 Parkwood Circle, SE Suite 200
Atlanta, GA 30339
dbrown@taylorenglish.com
*Counsel for James A. Tumlin, M.D.*

Daniel W. Van Horn
Kathryn K. Van Namen
Diana M. Gomes
BUTLER SNOW, LLP
6075 Poplar Avenue, 5th Floor
Memphis, TN 38119
Danny.VanHorn@butlersnow.com
Diana.Comes@butlersnow.com
Kate.VanNamen@butlersnow.com

G. Patrick Watson
Lindsay Sklar Johnson
BRYAN CAVE LEIGHTON PAISNER, LLP
One Atlantic Center, 14th Floor

1201 Peachtree Street, NW
Atlanta, GA 30309
Patrick.Watson@bclplaw.com
Lindsay.Johnson@bclplaw.com

Herbert R. Giorgio, Jr.
BRYAN CAVE LEIGHTON PAISNER, LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO 63102
Herb.Giorgio@bclplaw.com
*Attorneys for Mallinckrodt ARC Inc. and Mallinckrodt plc*

Nathan Bicks

# EXHIBIT A

## CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE
## FOR THE THIRTIETH JUDICIAL CIRCUIT AT MEMPHIS

| | |
|---|---|
| ACUMENT GLOBAL TECHNOLOGIES, INC.,<br><br>*Plaintiff,*<br><br>v.<br><br>MALLINCKRODT ARD, INC., et al.,<br><br>*Defendants.* | Docket No. CT-2275-19 |

CITY OF WASHINGTON

DISTRICT OF COLUMBIA

### AFFIDAVIT OF MICHAEL D. BONANNO

Before me, the undersigned, personally appeared Michael D. Bonanno, who after being duly sworn makes oath and states as follows:

1.     My full name is Michael Domenic Bonanno.  My residence address 1607 N. Edison Street, Arlington, VA 22207.  I am an attorney with Quinn Emanuel Urquhart & Sullivan, LLP, located at 1300 I St NW, Suite 900, Washington, D.C. 20005.   My e-mail address is mikebonanno@quinnemanuel.com and my telephone number is 202-538-8225.

2.     I seek to represent Defendants Express Scripts Holding Company; Express Scripts, Inc.; CuraScript, Inc., doing business as CuraScript SD; Priority Healthcare Corp. and Priority Healthcare Distribution Inc., doing business as CuraScript SD; Accredo Health Group, Inc.; and United BioSource LLC (collectively the "Express Scripts Defendants") in the above-captioned action.

3.     I am licensed to practice law in the District of Columbia, admission date December 6, 2010, registration number 998208.

1

4.      I am additionally licensed to practice before the United States District Court for the District of Columbia, admission date December 4, 2017, registration number 998208.

5.      I have not been previously admitted *pro hac vice* in any trial or appellate court of Tennessee.

6.      I have never been denied admission *pro hac vice,* nor have I had an admission *pro hac vice* revoked by any court in any jurisdiction.

7.      I have never been disciplined or sanctioned by the Board of Professional Responsibility of the Supreme Court of Tennessee, by any similar lawyer disciplinary agency in any jurisdiction, or by any similar lawyer disciplinary authority.

8.      There are no disciplinary actions or investigations concerning my conduct as a lawyer pending before the Board of Professional Responsibility of the Supreme Court of Tennessee, before any similar lawyer disciplinary agency in any jurisdiction, or before any similar lawyer disciplinary authority.

9.      I am familiar with the Tennessee Rules of Professional Conduct and the rules governing the proceedings of the Circuit Court of Shelby County, Tennessee.

10.     I consent to the disciplinary jurisdiction of the Board of Professional Responsibility of the Supreme Court of Tennessee and the courts of Tennessee in any matter arising out of the my conduct as a lawyer in the above-captioned action. I agree to be bound by the Tennessee Rules of Professional Conduct and any other rules of conduct applicable to lawyers generally admitted in Tennessee.

11.     I am associated with Nathan Bicks (#10903), of the law firm Burch, Porter & Johnson, PLLC located at 130 North Court Avenue Memphis, TN 31803. Mr. Bicks's telephone number is (901) 524-5000.

2

12.     I have paid all fees required by this Rule in connection with the Motion for Admission.

13.     Service of the *pro hac vice* motion and all associated papers will be made upon all counsel of record in the proceeding and upon the Board of Professional Responsibility of the Supreme Court of Tennessee.

14.     A Certificate of Good Standing from the court of last resort of the licensing jurisdiction in which I principally practice is attached as Exhibit A to this affidavit and incorporated herein.

I declare under penalty of perjury that the foregoing is true and correct.

_____
*Pro Hac Vice Applicant*

Sworn to and subscribed before me this 7 day of August , 2019 .

_____
Notary Public

My commission expires:     My Commission Expires
                           January 31, 2024

3

# EXHIBIT A



On behalf of JULIO A. CASTILLO, Clerk of the District of Columbia Court of Appeals, the District of Columbia Bar does hereby certify that

*Michael D Bonanno*

was duly qualified and admitted on December 6, 2010 as an attorney and counselor entitled to practice before this Court; and is, on the date indicated below, an Active member in good standing of this Bar.

In Testimony Whereof,
I have hereunto subscribed my
name and affixed the seal of this
Court at the City of
Washington, D.C., on July 31,
2019.

**JULIO A. CASTILLO**
**Clerk of the Court**

Issued By:
District of Columbia Bar Membership

For questions or concerns, please contact the D.C. Bar Membership Office at 202-626-3475 or email memberservices@dcbar.org.

ELECTRONICALLY FILED
2019 Sep 05 12:06 PM
CLERK OF COURT

## CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE
## FOR THE THIRTIETH JUDICIAL CIRCUIT AT MEMPHIS

|  |  |
|---|---|
| ACUMENT GLOBAL TECHNOLOGIES, INC., | |
| Plaintiff, | |
| v. | Docket No. CT-2275-19 |
| MALLINCKRODT ARD, INC., et al., | |
| Defendants. | |

## MOTION TO ADMIT MEGHAN A. MCCAFFREY TO PRACTICE *PRO HAC VICE*

Pursuant to Rule 19 of the Rules of the Tennessee Supreme Court, the undersigned, Nathan A. Bicks ("Movant" hereinafter), an attorney licensed and admitted to practice before this Court, moves for the entry of an order permitting the admission *pro hac vice* of Meghan A. McCaffrey of the law firm Quinn, Emanuel, Urquhart & Sullivan, LLP, located at 1300 I Street NW, Suite 900, in Washington, D.C 20005.

Ms. McCaffrey wishes to appear on behalf of Defendants Express Scripts Holding Company; Express Scripts, Inc.; CuraScript, Inc., doing business as CuraScript SD; Priority Healthcare Corp. and Priority Healthcare Distribution Inc., doing business as CuraScript SD; Accredo Health Group, Inc.; and United BioSource LLC (collectively the "Express Scripts Defendants").

In support of this Motion, Movant would show to the Court:

1.       As indicated by her affidavit attached hereto as Exhibit A, Ms. McCaffrey is licensed to practice in New York and the District of Columbia, and is in good standing to practice in both jurisdictions.  Ms. McCaffrey has also been admitted to practice before the United States District Courts for the District of Columbia, and the Southern District of New York.

2.      Ms. McCaffrey has not been suspended or made the subject of any disciplinary action in any court or bar.

3.      Ms. McCaffrey has never been sanctioned by the Board of Professional Responsibility of the Supreme Court of Tennessee, by any similar lawyer disciplinary agency in any jurisdiction, or by any similar lawyer disciplinary authority.

4.      Ms. McCaffrey consents to the disciplinary jurisdiction of the Board of Professional Responsibility of the Supreme Court of Tennessee and the courts of Tennessee in any matter arising out of his conduct in this proceeding, and further agrees to be bound by the Tennessee Rules of Professional Conduct and any other rules of conduct applicable to lawyers generally admitted in Tennessee.

5.      Ms. McCaffrey has paid all fees required by Tennessee Supreme Court Rule 19 in connection with this motion for admission.

6.      Ms. McCaffrey is a reputable and ethical attorney with the highest standards of personal conduct, and, as such, merits admission to practice *pro hac vice* before this Court.

WHEREFORE, Movant asks the Court to enter an order admitting Ms. McCaffrey to practice *pro hac vice* in the above-captioned cause.

Respectfully submitted,

Nathan A. Bicks (#10903)
William D. Irvine, Jr. (#035193)
Lani D. Lester (#035226)
BURCH, PORTER & JOHNSON, PLLC
130 North Court Avenue
Memphis, TN 31803
Tel: (901) 524-5000
Facsimile: (901) 524-5024
*Attorneys for the Express Scripts Defendants*

2

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent by electronic mail or U.S. mail as required to all attorneys and all interested parties in this matter on this the 5th day of _September_ 2019.

Daniel V. Parish
Patrick M. Ardis
Roy Harold Chockley
WOLF ARDIS, P.C.
5810 Shelby Oaks Drive
Memphis, TN 38134
pardis@wolfardis.com
cchockley@wolfardis.com
dparish@wolfardis.com

Donald Haviland, Jr.
William H. Platt, II
HAVILAND HUGHES
201 S. Maple Way, Suite 110
Ambler, PA 19002
haviland@havilandhughes.com
platt@havilandhughes.com
*Attorneys for Acument Global Technologies, Inc.*

Daniel B. Brown (#010918)
TAYLOR ENGLISH DUMA, LLC
1600 Parkwood Circle, SE Suite 200
Atlanta, GA 30339
dbrown@taylorenglish.com
*Counsel for James A. Tumlin, M.D.*

Daniel W. Van Horn
Kathryn K. Van Namen
Diana M. Gomes
BUTLER SNOW, LLP
6075 Poplar Avenue, 5th Floor
Memphis, TN 38119
Danny.VanHorn@butlersnow.com
Diana.Comes@butlersnow.com
Kate.VanNamen@butlersnow.com

G. Patrick Watson
Lindsay Sklar Johnson

3

BRYAN CAVE LEIGHTON PAISNER, LLP
One Atlantic Center, 14th Floor
1201 Peachtree Street, NW
Atlanta, GA 30309
Patrick.Watson@bclplaw.com
Lindsay.Johnson@bclplaw.com

Herbert R. Giorgio, Jr.
BRYAN CAVE LEIGHTON PAISNER, LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO 63102
Herb.Giorgio@bclplaw.com
*Attorneys for Mallinckrodt ARC Inc. and Mallinckrodt plc*

Nathan Bicks

4

# EXHIBIT A

CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE
FOR THE THIRTIETH JUDICIAL CIRCUIT AT MEMPHIS

ACUMENT GLOBAL TECHNOLOGIES, INC.,

Plaintiff,

v.

MALLINCKRODT ARD, INC., et al.,

Defendants.

Docket No. CT-2275-19

CITY OF WASHINGTON

DISTRICT OF COLUMBIA

## AFFIDAVIT OF MEGHAN A. MCCAFFREY

Before me, the undersigned, personally appeared Meghan A. McCaffrey, who after being duly sworn makes oath and states as follows:

1.       My full name is Meghan Ann McCaffrey.  My residence address is 936 9th Street NE, Washington, D.C. 20002-3714.  I am an attorney with Quinn Emanuel Urquhart & Sullivan, LLP, located at 1300 I St NW, Suite 900, Washington, D.C. 20005.  My e-mail address is meghanmccaffrey@quinnemanuel.com and my telephone number is 202-538-8177.

2.       I seek to represent Defendants Express Scripts Holding Company; Express Scripts, Inc.; CuraScript, Inc., doing business as CuraScript SD; Priority Healthcare Corp. and Priority Healthcare Distribution Inc., doing business as CuraScript SD; Accredo Health Group, Inc.; and United BioSource LLC (collectively the "Express Scripts Defendants") in the above-captioned action.

1

3.      I am licensed to practice law in the state of New York, date of admission April 23, 2009, registration number 4703708 and the District of Columbia, date of admission March 5, 2010, registration number 993442.

4.      I am additionally licensed to practice before the Southern District of New York, date of admission November 10, 2009, registration number MM4035, and the United States District Court for the District of Columbia, date of admission May 2, 2011, registration number 993442.

5.      I have not been previously admitted *pro hac vice* in any trial or appellate court of Tennessee.

6.      I have never been denied admission *pro hac vice*, nor have I had an admission *pro hac vice* revoked by any court in any jurisdiction.

7.      I have never been disciplined or sanctioned by the Board of Professional Responsibility of the Supreme Court of Tennessee, by any similar lawyer disciplinary agency in any jurisdiction, or by any similar lawyer disciplinary authority.

8.      There are no disciplinary actions or investigations concerning my conduct as a lawyer pending before the Board of Professional Responsibility of the Supreme Court of Tennessee, before any similar lawyer disciplinary agency in any jurisdiction, or before any similar lawyer disciplinary authority.

9.      I am familiar with the Tennessee Rules of Professional Conduct and the rules governing the proceedings of the Circuit Court of Shelby County Tennessee.

10.     I consent to the disciplinary jurisdiction of the Board of Professional Responsibility of the Supreme Court of Tennessee and the courts of Tennessee in any matter arising out of the my conduct as a lawyer in the above-captioned action. I agree to be bound by the Tennessee Rules

of Professional Conduct and any other rules of conduct applicable to lawyers generally admitted in Tennessee.

11.    I am associated with Nathan Bicks (#10903), of the law firm Burch, Porter & Johnson, PLLC located at 130 North Court Avenue Memphis, TN 31803. Mr. Bicks's telephone number is (901) 524-5000.

12.    I have paid all fees required by this Rule in connection with the Motion for Admission.

13.    Service of the *pro hac vice* motion and all associated papers will be made upon all counsel of record in the proceeding and upon the Board of Professional Responsibility of the Supreme Court of Tennessee.

14.    A Certificate of Good Standing from the court of last resort of the licensing jurisdiction in which I principally practice is attached as Exhibit A to this Affidavit and incorporated herein.

I declare under penalty of perjury that the foregoing is true and correct.

_____
*Pro Hac Vice Applicant*

Sworn to and subscribed before me this  8  day of  August  , 20 19 .

_____
Notary Public

My commission expires: _____

CAROL P. CLARK
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires March 31, 2021



3

# EXHIBIT A



On behalf of JULIO A. CASTILLO, Clerk of the District of Columbia Court of Appeals, the District of Columbia Bar does hereby certify that

*Meghan A McCaffrey*

was duly qualified and admitted on **March 5, 2010** as an attorney and counselor entitled to practice before this Court; and is, on the date indicated below, an **Active** member in good standing of this Bar.

In Testimony Whereof,
I have hereunto subscribed my
name and affixed the seal of this
Court at the City of Washington,
D.C., on July 23, 2019.

**JULIO A. CASTILLO**
**Clerk of the Court**

Issued By:
District of Columbia Bar Membership

For questions or concerns, please contact the D.C. Bar Membership Office at 202-626-3475 or email memberservices@dcbar.org.

ELECTRONICALLY FILED
2019 Sep 05 12:08 PM
CLERK OF COURT

## CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE
## FOR THE THIRTIETH JUDICIAL CIRCUIT AT MEMPHIS

|  |  |
|---|---|
| ACUMENT GLOBAL TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> MALLINCKRODT ARD, INC., et al., <br><br> Defendants. | Docket No. CT-2275-19 |

### MOTION TO ADMIT ETHAN C. GLASS TO PRACTICE *PRO HAC VICE*

Pursuant to Rule 19 of the Rules of the Tennessee Supreme Court, the undersigned, Nathan A. Bicks ("Movant" hereinafter), an attorney licensed and admitted to practice before this Court, moves for the entry of an order permitting the admission *pro hac vice* of Ethan Charles Glass of the law firm Quinn, Emanuel, Urquhart & Sullivan, LLP, located at 1300 I Street NW, Suite 900, in Washington, D.C 20005.

Mr. Glass wishes to appear on behalf of Defendants Express Scripts Holding Company; Express Scripts, Inc.; CuraScript, Inc., doing business as CuraScript SD; Priority Healthcare Corp. and Priority Healthcare Distribution Inc., doing business as CuraScript SD; Accredo Health Group, Inc.; and United BioSource LLC (collectively the "Express Scripts Defendants").

In support of this Motion, Movant would show to the Court:

1.      As indicated by his affidavit attached hereto as Exhibit A, Mr. Glass is licensed to practice in California and the District of Columbia, and is in good standing to practice in both jurisdictions. Mr. Glass has also been admitted to practice before the United States District Courts for the Northern District of California, the District of Columbia, the District of Minnesota, and the Western District of Michigan.  He is admitted to practice before the United States Courts of

Appeals for the Sixth, Eighth Circuit, and Ninth Circuits, and the United States Courts of Appeals for the Federal Circuit.

2.      Mr. Glass has not been suspended or made the subject of any disciplinary action in any court or bar.

3.      Mr. Glass has never been sanctioned by the Board of Professional Responsibility of the Supreme Court of Tennessee, by any similar lawyer disciplinary agency in any jurisdiction, or by any similar lawyer disciplinary authority.

4.      Mr. Glass consents to the disciplinary jurisdiction of the Board of Professional Responsibility of the Supreme Court of Tennessee and the courts of Tennessee in any matter arising out of his conduct in this proceeding, and further agrees to be bound by the Tennessee Rules of Professional Conduct and any other rules of conduct applicable to lawyers generally admitted in Tennessee.

5.      Mr. Glass has paid all fees required by Tennessee Supreme Court Rule 19 in connection with this motion for admission.

6.      Mr. Glass is a reputable and ethical attorney with the highest standards of personal conduct, and, as such, merits admission to practice *pro hac vice* before this Court.

WHEREFORE, Movant asks the Court to enter an order admitting Mr. Glass to practice *pro hac vice* in the above-captioned cause.

Respectfully submitted,

Nathan A. Bicks (#10903)
William D. Irvine, Jr. (#035193)
Lani D. Lester (#035226)
BURCH, PORTER & JOHNSON, PLLC
130 North Court Avenue
Memphis, TN 31803
Tel: (901) 524-5000
Facsimile: (901) 524-5024
*Attorneys for the Express Scripts Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent by electronic mail or U.S. mail as required to all attorneys and all interested parties in this matter on this the 5th day of _September_ 2019.

Daniel V. Parish
Patrick M. Ardis
Roy Harold Chockley
WOLF ARDIS, P.C.
5810 Shelby Oaks Drive
Memphis, TN 38134
pardis@wolfardis.com
cchockley@wolfardis.com
dparish@wolfardis.com

Donald Haviland, Jr.
William H. Platt, II
HAVILAND HUGHES
201 S. Maple Way, Suite 110
Ambler, PA 19002
haviland@havilandhughes.com
platt@havilandhughes.com
*Attorneys for Acumen Global Technologies, Inc.*

Daniel B. Brown (#010918)
TAYLOR ENGLISH DUMA, LLC
1600 Parkwood Circle, SE Suite 200
Atlanta, GA 30339
dbrown@taylorenglish.com

3

*Counsel for James A. Tumlin, M.D.*

Daniel W. Van Horn
Kathryn K. Van Namen
Diana M. Gomes
BUTLER SNOW, LLP
6075 Poplar Avenue, 5th Floor
Memphis, TN 38119
Danny.VanHorn@butlersnow.com
Diana.Comes@butlersnow.com
Kate.VanNamen@butlersnow.com

G. Patrick Watson
Lindsay Sklar Johnson
BRYAN CAVE LEIGHTON PAISNER, LLP
One Atlantic Center, 14th Floor
1201 Peachtree Street, NW
Atlanta, GA 30309
Patrick.Watson@bclplaw.com
Lindsay.Johnson@bclplaw.com

Herbert R. Giorgio, Jr.
BRYAN CAVE LEIGHTON PAISNER, LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO 63102
Herb.Giorgio@bclplaw.com
*Attorneys for Mallinckrodt ARC Inc. and Mallinckrodt plc*

Nathan Bicks

# EXHIBIT A

**CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE**
**FOR THE THIRTIETH JUDICIAL CIRCUIT AT MEMPHIS**

| | |
|---|---|
| ACUMENT GLOBAL TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> MALLINCKRODT ARD, INC., et al., <br><br> Defendants. | Docket No. CT-2275-19 |

CITY OF WASHINGTON

DISTRICT OF COLUMBIA

### AFFIDAVIT OF ETHAN C. GLASS

Before me, the undersigned, personally appeared Ethan C. Glass, who after being duly sworn makes oath and states as follows:

1.      My full name is Ethan Charles Glass. My residence address is 3207 Pauline Drive, Chevy Chase, MD 20815-3921. I am an attorney with Quinn Emanuel Urquhart & Sullivan, LLP, located at 1300 I St NW, Suite 900, Washington, D.C. 20005. My e-mail address is ethanglass@quinnemanuel.com and my telephone number is 202-538-8265.

2.      I seek to represent Defendants Express Scripts Holding Company; Express Scripts, Inc.; CuraScript, Inc., doing business as CuraScript SD; Priority Healthcare Corp. and Priority Healthcare Distribution Inc., doing business as CuraScript SD; Accredo Health Group, Inc.; and United BioSource LLC (collectively the "Express Scripts Defendants") in the above-captioned action.

1

3.      I am licensed to practice law in the state of California, date of admission December 3, 2001, registration number 216159 and the District of Columbia, date of admission September 9, 2016, registration number 1034207.

4.      I am additionally licensed to practice before the United States District Court for the Northern District of California, date of admission December 13, 2002, registration number 216159; the United States District Court for the District of Columbia, date of admission October 7, 2002, registration number M10018; the United States District Court for the District of Minnesota, April 3, 2002, registration number 316490; the United States District Court for the Western District of Michigan, date of admission August 29, 2002; the United States Court of Appeals for the Sixth Circuit, date of admission December 16, 2002; the United States Court of Appeals for the Eighth Circuit, date of admission December 27, 2002, registration number 02-0713; the United States Court of Appeals for the Ninth Circuit, date of admission November 12, 2004, registration number 216159; the United States Court of Appeals for the Federal Circuit, June 18, 2002.

5.      I have not been previously admitted *pro hac vice* in any trial or appellate court of Tennessee.

6.      I have never been denied admission *pro hac vice*, nor have I had an admission *pro hac vice* revoked by any court in any jurisdiction.

7.      I have never been disciplined or sanctioned by the Board of Professional Responsibility of the Supreme Court of Tennessee, by any similar lawyer disciplinary agency in any jurisdiction, or by any similar lawyer disciplinary authority.

8.      There are no disciplinary actions or investigations concerning my conduct as a lawyer pending before the Board of Professional Responsibility of the Supreme Court of

2

Tennessee, before any similar lawyer disciplinary agency in any jurisdiction, or before any similar lawyer disciplinary authority.

9.     I am familiar with the Tennessee Rules of Professional Conduct and the rules governing the proceedings of the Circuit Court of Shelby County, Tennessee.

10.     I consent to the disciplinary jurisdiction of the Board of Professional Responsibility of the Supreme Court of Tennessee and the courts of Tennessee in any matter arising out of the my conduct as a lawyer in the above-captioned action. I agree to be bound by the Tennessee Rules of Professional Conduct and any other rules of conduct applicable to lawyers generally admitted in Tennessee.

11.     I am associated with Nathan Bicks (#10903), of the law firm Burch, Porter & Johnson, PLLC located at 130 North Court Avenue Memphis, TN 31803. Mr. Bicks's telephone number is (901) 524-5000.

12.     I have paid all fees required by this Rule in connection with the Motion for Admission.

13.     Service of the *pro hac vice* motion and all associated papers will be made upon all counsel of record in the proceeding and upon the Board of Professional Responsibility of the Supreme Court of Tennessee.

14.     A Certificate of Good Standing from the court of last resort of the licensing jurisdiction in which I principally practice is attached as Exhibit A to this Affidavit and incorporated herein.

I declare under penalty of perjury that the foregoing is true and correct.

_Ethan C. Glass_
_____
*Pro Hac Vice Applicant*

Sworn to and subscribed before me this __6__ day of __August__, 20__19__.


_Carol P. Clark_
_____
Notary Public

CAROL P. CLARK
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires March 31, 2021

My commission expires: _____

4

# EXHIBIT A



On behalf of JULIO A. CASTILLO, Clerk of the District of Columbia Court of Appeals, the District of Columbia Bar does hereby certify that

*Ethan Charles Glass*

was duly qualified and admitted on September 9, 2016 as an attorney and counselor entitled to practice before this Court; and is, on the date indicated below. an Active member in good standing of this Bar.

**In Testimony Whereof, I have hereunto subscribed my name and affixed the seal of this Court at the City of Washington, D.C., on July 31, 2019.**

**JULIO A. CASTILLO**
**Clerk of the Court**

Issued By:
District of Columbia Bar Membership

For questions or concerns. please contact the D.C. Bar Membership Office at 202-626-3475 or email memberservices@dcbar.org.

ELECTRONICALLY FILED
2019 Sep 13 12:12 PM
CLERK OF COURT

## CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE
## FOR THE THIRTIETH JUDICIAL CIRCUIT AT MEMPHIS

| | |
|---|---|
| ACUMENT GLOBAL TECHNOLOGIES, INC., | |
| Plaintiff, | |
| v. | Docket No. CT-2275-19 |
| MALLINCKRODT ARD, INC., et al., | |
| Defendants. | |

## NOTICE OF HEARING ON MOTIONS TO ADMIT
## QUINN, EMANUEL, URQUHART & SULLIVAN, LLP TO PRACTICE *PRO HAC VICE*

Notice is hereby given that the motions on behalf of Defendants Express Scripts Holding Company; Express Scripts, Inc.; CuraScript, Inc., doing business as CuraScript SD; Priority Healthcare Corp. and Priority Healthcare Distribution Inc., doing business as CuraScript SD; Accredo Health Group, Inc.; and United BioSource LLC (collectively the "Express Scripts Defendants") for the admission of Eric C. Lyttle, Micheal J. Lyle, Ethan C. Glass, Meghan A. McCaffrey, and Michael D. Bonanno, *pro hac vice*, pursuant to Supreme Court Rule 19, as additional counsel for the Express Scripts Defendants in this action, will be heard on **Friday, September 20, 2019** at **9:00 a.m.**.

Respectfully submitted,

BURCH, PORTER & JOHNSON, PLLC

Nathan A. Bicks (#10903)
William D. Irvine, Jr. (#035193)
Lani D. Lester (#035226)
130 North Court Avenue
Memphis, TN 31803
Tel: (901) 524-5000
Facsimile: (901) 524-5024
*Attorneys for the Express Scripts Defendants*

## CERTIFICATE OF SERVICE

       I hereby certify that a true and correct copy of the foregoing was sent by electronic service or U.S. mail as required to all attorneys and all interested parties in this matter on this the _13th_ day of _September_ 2019.

Daniel V. Parish
Patrick M. Ardis
Roy Harold Chockley
WOLF ARDIS, P.C.
5810 Shelby Oaks Drive
Memphis, TN 38134
pardis@wolfardis.com
cchockley@wolfardis.com
dparish@wolfardis.com

Donald Haviland, Jr.
William H. Platt, II
HAVILAND HUGHES
201 S. Maple Way, Suite 110
Ambler, PA 19002
haviland@havilandhughes.com
platt@havilandhughes.com
*Attorneys for Acument Global Technologies, Inc.*

Daniel B. Brown (#010918)
TAYLOR ENGLISH DUMA, LLC
1600 Parkwood Circle, SE Suite 200
Atlanta, GA 30339
dbrown@taylorenglish.com
*Counsel for James A. Tumlin, M.D.*

Daniel W. Van Horn
Kathryn K. Van Namen
Diana M. Gomes
BUTLER SNOW, LLP
6075 Poplar Avenue, 5th Floor
Memphis, TN 38119
Danny.VanHorn@butlersnow.com
Diana.Comes@butlersnow.com
Kate.VanNamen@butlersnow.com

G. Patrick Watson
Lindsay Sklar Johnson

Bryan Cave Leighton Paisner, LLP
One Atlantic Center, 14th Floor
1201 Peachtree Street, NW
Atlanta, GA 30309
Patrick.Watson@bclplaw.com
Lindsay.Johnson@bclplaw.com

Herbert R. Giorgio, Jr.
Bryan Cave Leighton Paisner, LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO 63102
Herb.Giorgio@bclplaw.com
*Attorneys for Mallinckrodt ARC Inc. and Mallinckrodt plc*

_____
Lani D. Lester