Exhibit 9-4

ELECTRONICALLY FILED
2019 Oct 10 2:40 PM
CLERK OF COURT

# IN THE CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE
## FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

**ACUMENT GLOBAL
TECHNOLOGIES, INC.,**                                     **Docket No. CT-2275-19**

                    **Plaintiff,**                     **Division VII**

   **vs.**

**MALLINCKRODT ARD INC.** *et al,*

                  **Defendants.**

---

## MOTION FOR *PRO HAC VICE* ADMISSION OF RYAN Z. WATTS

Defendant Mallinckrodt ARD Inc. and Defendant Mallinckrodt plc (collectively "Mallinckrodt") , by and through local counsel Daniel W. Van Horn of Butler Snow LLP, move this Honorable Court for an order admitting Ryan Watts, counsel with the law firm of Arnold & Porter, to appear on their behalf in this action *pro hac vice*. An affidavit from Mr. Watts is attached as **Exhibit 1**.

Submitted this the 10th day of October, 2019.

Respectfully Submitted,

By: _____
Daniel W. Van Horn (TN Bar No. 18940)
Diana M. Comes (TN Bar No. 30112)
Kathryn K. Van Namen (TN Bar No. 31322)
Butler Snow LLP
6075 Poplar Avenue, Suite 500
Memphis, TN 38119
Telephone: 901.680.7200
Facsimile: 901.680.7201
Danny.VanHorn@butlersnow.com
Diana.Comes@butlersnow.com
Kate.VanNamen@butlersnow.com
*Attorneys for Defendants*

## CERTIFICATE OF CONSULTATION

I, Daniel W. Van Horn, attorney for Defendants, certify that I conferred by electronic mail with all counsel, on October 7, 2019, regarding the relief that this motion requests. Plaintiff does not oppose the requested relief.

_____
Daniel W. Van Horn

49528802.v1

## CERTIFICATE OF SERVICE

I, Daniel W. Van Horn, attorney for Defendants, certify that a true and correct copy of the foregoing motion has been sent as follows:

via U.S. Mail, postage prepaid, this 10th day of October 2019, to the following:

| | |
|---|---|
| Patrick M. Ardis, Esq.<br>Daniel V. Parish, Esq.<br>**WOLF ARDIS, P.C.**<br>5810 Summer Oaks Drive<br>Memphis, Tennessee 38134<br>pardis@wolfardis.com<br>cchockley@wolfardis.com<br>dparish@wolfardis.com | Daniel B. Brown, Esq.<br>**TAYLOR ENGLISH DUMA, LLC**<br>1600 Parkwood Circle, SE<br>Suite 200<br>Atlanta, GA 30339<br>dbrown@taylorenglish.com<br><br>*Counsel for James A Tumlin, M.D.* |
| Donald E. Haviland, Jr., Esq.<br>William H. Platt II, Esq.<br>**HAVILAND HUGHES**<br>201 S. Maple Way, Suite 110<br>Ambler, PA 19002<br>haviland@havilandhuges.com<br>platt@havilandhuges.com<br><br>*Counsel for Plaintiff Acument Global Technologies, Inc.* | Nathan A. Bicks, Esq.<br>William D. Irvine, Jr., Esq.<br>Lani D. Lester, Esq.<br>**BURCH, PORTER & JOHNSON, PLLC**<br>130 North Court Avenue<br>Memphis, TN 38103<br>nbicks@bpjlaw.com<br>wirvine@bpjlaw.com<br>llester@bpjlaw.com<br><br>*Counsel for Express Scripts Defendants* |

and via FedEx Overnight Delivery, this 10th day of October 2019, to the following:

Tennessee Board of Professional Responsibility
10 Cadillac Drive, Suite 200
Brentwood, TN 37027

_____
Daniel W. Van Horn

3

ELECTRONICALLY FILED
2019 Oct 10 2:41 PM
CLERK OF COURT

# Exhibit 1

## IN THE CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE
## FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

**ACUMENT GLOBAL
TECHNOLOGIES, INC.,**

           **Plaintiff,**

  **vs.**

**MALLINCKRODT ARD INC.,**

           **Defendants.**

**Docket No. CT-2275-19**

**Division VII**

### AFFIDAVIT OF RYAN WATTS IN SUPPORT OF
### MOTION FOR *PRO HAC VICE* ADMISSION

District of Columbia

Before me, the undersigned, personally appeared Ryan Watts, who after being duly sworn makes oath and states as follows:

1.      I am an adult resident of the State of Maryland.  I have personal knowledge of the facts stated in this affidavit and know them to be true and correct.

2.      I submit this affidavit in support of the Motion for *Pro Hac Vice* Admission of Ryan Watts to practice before this court in the case of *Acument Global Technologies, Inc. v. Mallinckrodt Ard Inc.*, Docket No. CT-2275-19.

3.      I am counsel with the law firm of Arnold & Porter, 601 Massachusetts Ave., NW, Washington, DC 20001-3743, Telephone: (202) 942-6609, E-mail: ryan.watts@arnoldporter.com.  My residence address is:  9923 Edward Avenue, Bethesda, MD 20814.  I am licensed to practice law and have been a member in good standing of the Bar of the

District of Columbia since 2002 (Attorney No. 478395).  I am also admitted to practice in the Commonwealth of Virginia (Attorney No. 47513).  I am also admitted to practice and in good standing before the following courts:

(a)      U.S. Court of Appeals for the Fourth Circuit - 2002

(b)      U.S. District Court for the District of Columbia - 2004

(c)      U.S. Court of Appeals for the Third Circuit - 2014

(d)      U.S. Court of Appeals for the Seventh Circuit - 2015

4.      I am not presently, and never have been, involved in disciplinary, disbarment, or suspension proceedings in any court, jurisdiction, or state.

5.      I intend to associate in this matter with attorneys familiar with the laws of the State of Tennessee and the procedures of this Court.

6.      I have not been admitted, nor sought to be admitted, *pro hac vice* in any trial or appellate court of Tennessee within the preceding three years.

7.      I have not been denied *pro hac vice* admission or had a *pro hac vice* admission revoked by any court in any jurisdiction.

8.      I seek leave to appear *pro hac vice* in the above-titled cause for purposes of representing Defendants Mallinckrodt Ard Inc. and Mallinkckrodt plc (collectively "Mallinckrodt")..

9.      I am familiar with the Tennessee Rules of Professional Conduct and the rules governing the proceedings of this court.

10.      I consent to the disciplinary jurisdiction of the Board of Professional Responsibility of the Supreme Court of Tennessee and the courts of Tennessee in any matter arising out of my

conduct in this proceeding.   I also agree to be bound by the Tennessee Rules of Professional

Conduct and any other rules of conduct applicable to lawyers generally admitted to Tennessee.

11.     The Tennessee lawyer with whom I will be associated is:

Daniel W. Van Horn (TN Bar No. 18940)
Butler Snow LLP
Crescent Center
6075 Poplar Avenue
Suite 500
Memphis TN 38119
Telephone:  901.680.7200
Facsimile:  901.680.7201
danny.vanhorn@butlersnow.com

12.     I have paid all fees required in connection with this motion for admission and a

copy of the check that I submitted to the Tennessee Board of Professional Responsibility is

attached as **Exhibit A**.

13.     Attached as **Exhibit B** is a certificate of good standing from the District of

Columbia Court of Appeals.

14.     I declare under penalty of perjury that the foregoing is true and correct.

Ryan Watts
Arnold & Porter
601 Massachusetts Ave., NW
Washington, DC 20001-3743
Telephone:  (202) 942-6609
Fax:  (202) 942-5999
E-mail:  ryan.watts@arnoldporter.com



3

Subscribed and sworn to before me
this ___7___ day of October, 2019.

_____
Notary Public, State of DC
My commission expires: 4/14/2022

4

# Exhibit A

# Arnold & Porter

Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave, NW
Washington, DC 20001-3743

Wells Fargo, N.A.

10391497    11-24
            1210

Date        October 9, 2019

PAY   ONE HUNDRED SEVENTY AND 00/100

DOLLARS   $ 170.00

PAY
TO
THE
ORDER
OF

Board of Professional Responsibility of the Supreme Court of Tennessee
10 Cadillac Drive, suite 220
Brentwood, TN  37027tn

VOID AFTER 180 DAYS

SIGNATURE HAS A COLORED BACKGROUND · BORDER CONTAINS MICROPRINTING

THIS CHECK IS VOID WITHOUT A BLUE & GREEN BACKGROUND AND AN ARTIFICIAL WATERMARK ON THE BACK - HOLD AT AN ANGLE TO VIEW

⑈10391497⑈ ⑆121000248⑆ 4706599651⑈

| Invoice # | Invoice Date | Amount | Narrative | | |
|-----------|-------------|--------|-----------|---|---|
| 10082019D | Oct 08/19 | $170.00 | Shemaiah Strickland | October 9, 2019 | 10391497 |

* R 2 1 2 0 9 4 6 *

APOI (1/17)

# Exhibit B



On behalf of JULIO A. CASTILLO, Clerk of the District of Columbia Court of Appeals,
the District of Columbia Bar does hereby certify that

*Ryan L. Watts*

was duly qualified and admitted on July 8, 2002 as an attorney and counselor entitled to
practice before this Court; and is, on the date indicated below, an Active member in good
standing of this Bar.

**In Testimony Whereof,
I have hereunto subscribed my
name and affixed the seal of this
Court at the City of
Washington, D.C., on October
3, 2019.**

**JULIO A. CASTILLO
Clerk of the Court**

Issued By:
District of Columbia Bar Membership

For questions or concerns, please contact the D.C. Bar Membership Office at 202-626-3475 or email
memberservices@dcbar.org.

ELECTRONICALLY FILED
2019 Oct 10 2:42 PM
CLERK OF COURT

**IN THE CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE**
**FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS**

| | |
|---|---|
| **ACUMENT GLOBAL TECHNOLOGIES, INC.,** | **Docket No. CT-2275-19** |
| **Plaintiff,** | **Division VII** |
| **vs.** | |
| **MALLINCKRODT ARD INC.** *et al*, | |
| **Defendants.** | |

## MOTION FOR *PRO HAC VICE* ADMISSION OF MATT WOLF

Defendant Mallinckrodt Ard Inc. and Defendant Mallinckrodt plc (collectively "Mallinckrodt"), by and through local counsel Daniel W. Van Horn of Butler Snow LLP, move this Honorable Court for an order admitting Matt Wolf, a partner with the law firm of Arnold & Porter, to appear on their behalf in this action *pro hac vice*. An affidavit from Mr. Wolf is attached as **Exhibit 1**.

Submitted this the 10th day of October, 2019.

49637067.v1

Respectfully Submitted,

By: _____
Daniel W. Van Horn (TN Bar No. 18940)
Diana M. Comes (TN Bar No. 30112)
Kathryn K. Van Namen (TN Bar No. 31322)
Butler Snow LLP
6075 Poplar Avenue, Suite 500
Memphis, TN 38119
Telephone:  901.680.7200
Facsimile:  901.680.7201
Danny.VanHorn@butlersnow.com
Diana.Comes@butlersnow.com
Kate.VanNamen@butlersnow.com
*Attorneys for Defendants*

## CERTIFICATE OF CONSULTATION

I, Daniel W. Van Horn, attorney for Defendants, certify that I conferred by electronic mail with all counsel, on October 7, 2019, regarding the relief that this motion requests.  Plaintiff does not oppose the requested relief.

_____
Daniel W. Van Horn

2

## CERTIFICATE OF SERVICE

I, Daniel W. Van Horn, attorney for Defendants, certify that a true and correct copy of the

foregoing motion has been sent as follows:

via U.S. Mail, postage prepaid, this 10th day of October 2019, to the following:

| | |
|---|---|
| Patrick M. Ardis, Esq.<br>Daniel V. Parish, Esq.<br>**WOLF ARDIS, P.C.**<br>5810 Summer Oaks Drive<br>Memphis, Tennessee 38134<br>pardis@wolfardis.com<br>cchockley@wolfardis.com<br>dparish@wolfardis.com | Daniel B. Brown, Esq.<br>**TAYLOR ENGLISH DUMA, LLC**<br>1600 Parkwood Circle, SE<br>Suite 200<br>Atlanta, GA 30339<br>dbrown@taylorenglish.com<br><br>*Counsel for James A Tumlin, M.D.* |
| Donald E. Haviland, Jr., Esq.<br>William H. Platt II, Esq.<br>**HAVILAND HUGHES**<br>201 S. Maple Way, Suite 110<br>Ambler, PA 19002<br>haviland@havilandhuges.com<br>platt@havilandhuges.com<br><br>*Counsel for Plaintiff Acument Global<br>Technologies, Inc.* | Nathan A. Bicks, Esq.<br>William D. Irvine, Jr., Esq.<br>Lani D. Lester, Esq.<br>**BURCH, PORTER & JOHNSON, PLLC**<br>130 North Court Avenue<br>Memphis, TN 38103<br>nbicks@bpjlaw.com<br>wirvine@bpjlaw.com<br>llester@bpjlaw.com<br><br>*Counsel for Express Scripts Defendants* |

and via FedEx Overnight Delivery, this 10th day of October 2019, to the following:

Tennessee Board of Professional Responsibility
10 Cadillac Drive, Suite 200
Brentwood, TN 37027

_____
Daniel W. Van Horn

3

49637067.v1

ELECTRONICALLY FILED
2019 Oct 10 2:42 PM
CLERK OF COURT

# Exhibit 1

**IN THE CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE
FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS**

---

**ACUMENT GLOBAL
TECHNOLOGIES, INC.,**

           **Plaintiff,**

    **vs.**

**MALLINCKRODT ARD INC.,**

           **Defendants.**

**Docket No. CT-2275-19**

**Division VII**

---

**AFFIDAVIT OF MATTHEW WOLF IN SUPPORT OF
MOTION FOR *PRO HAC VICE* ADMISSION**

---

District of Columbia


Before me, the undersigned, personally appeared Matthew Wolf, who after being duly sworn makes oath and states as follows:

1.      I am an adult resident of the District of Columbia.  I have personal knowledge of the facts stated in this affidavit and know them to be true and correct.

2.      I submit this affidavit in support of the Motion for *Pro Hac Vice* Admission of Matthew Wolf to practice before this court in the case of *Acument Global Technologies, Inc. v. Mallinckrodt Ard Inc.*, Docket No. CT-2275-19.

3.      I am a partner with the law firm of Arnold & Porter, 601 Massachusetts Ave., NW, Washington, DC 20001-3743, Telephone: (202) 942-5462, E-mail: matthew.wolf@arnoldporter.com.  My residence address is:  3375 Stephenson Place, N.W., Washington, D.C. 20015.  I am licensed to practice law and have been a member in good standing

49528785.v1

of the Bar of the District of Columbia since 1997 (Attorney No. 454323).  I am also admitted to practice in the State of Maryland (Attorney No. 220026947).  I am also admitted to practice and in good standing before the following courts:

(a)     U.S. District Court for District of Maryland - 1995

(b)     U.S. Court of Appeals for the Fourth Circuit - 1995

(c)     U.S. Court of Appeals for  the Seventh Circuit - 2002

(d)     U.S. Court of Appeals for the First Circuit - 2005

(e)     U.S. Court of Appeals for the Federal Circuit - 2005

(f)     U.S. District Court for the Eastern District of Texas - 2010

(g)     U.S. District Court for the Eastern District of Michigan - 2014

(h)     U.S. Court of Appeals for the Eleventh Circuit - 2015

(i)     U.S. Supreme Court - 2016

4.     I am not presently, and never have been, involved in disciplinary, disbarment, or suspension proceedings in any court, jurisdiction, or state.

5.     I intend to associate in this matter with attorneys familiar with the laws of the State of Tennessee and the procedures of this Court.

6.     I have not been admitted, nor sought to be admitted, *pro hac vice* in any trial or appellate court of Tennessee within the preceding three years.

7.     I have not been denied *pro hac vice* admission or had a *pro hac vice* admission revoked by any court in any jurisdiction.

8.     I seek leave to appear *pro hac vice* in the above-titled cause for purposes of representing  Defendants  Mallinckrodt  Ard  Inc.  and  Mallinckckrodt  plc  (collectively "Mallinckrodt")..

2

9.      I am familiar with the Tennessee Rules of Professional Conduct and the rules governing the proceedings of this court.

10.     I consent to the disciplinary jurisdiction of the Board of Professional Responsibility of the Supreme Court of Tennessee and the courts of Tennessee in any matter arising out of my conduct in this proceeding.  I also agree to be bound by the Tennessee Rules of Professional Conduct and any other rules of conduct applicable to lawyers generally admitted to Tennessee.

11.     The Tennessee lawyer with whom I will be associated is:

> Daniel W. Van Horn (TN Bar No. 18940)
> Butler Snow LLP
> Crescent Center
> 6075 Poplar Avenue
> Suite 500
> Memphis TN 38119
> Telephone:  901.680.7200
> Facsimile:  901.680.7201
> danny.vanhorn@butlersnow.com

12.     I have paid all fees required in connection with this motion for admission and a copy of the check that I submitted to the Tennessee Board of Professional Responsibility is attached as **Exhibit A**.

13.     Attached as **Exhibit B** is a certificate of good standing from the District of Columbia Court of Appeals.

14.     I declare under penalty of perjury that the foregoing is true and correct.

Matthew Wolf
Arnold & Porter
601 Massachusetts Ave., NW
Washington, DC 20001-3743
Telephone:  (202) 942-5462
Fax:  (202) 942-5999
E-mail:  matthew.wolf@arnoldporter.com

3

49528785.v1

Subscribed and sworn to before me
this 7ᵗʰ day of October, 2019.



_Hazel Lawarn-Walker_
Notary Public, ~~State of~~ WDC
My commission expires: May 31, 2024

4

# Exhibit A

# Arnold & Porter

Wells Fargo, N.A.

10391498   11-24
1210

Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave, NW
Washington, DC 20001-3743

Date        October 9, 2019

PAY   ONE HUNDRED SEVENTY AND 00/100

DOLLARS   $ 170.00

PAY
TO
THE
ORDER
OF

Board of Professional Responsibility of the Supreme Court of Tennessee
10 Cadillac Drive, suite 220
Brentwood, TN  37027tn

VOID AFTER 180 DAYS

SIGNATURE HAS A COLORED BACKGROUND - BORDER CONTAINS MICROPRINTING

⑈ 10391498 ⑈  ⑆ 121000 248 ⑆ 4706 599651 ⑈

| Invoice # | Invoice Date | Amount | Narrative | | |
|---|---|---|---|---|---|
| 10082019C | Oct 08/19 | $170.00 | Shemaiah Strickland | October 9, 2019 | 10391498 |

\* R 2 1 2 0 9 4 7 \*

APOI (1/17)

# Exhibit B



On behalf of JULIO A. CASTILLO, Clerk of the District of Columbia Court of Appeals, the District of Columbia Bar does hereby certify that

*Matthew M Wolf*

was duly qualified and admitted on February 7, 1997 as an attorney and counselor entitled to practice before this Court; and is, on the date indicated below, an Active member in good standing of this Bar.

**In Testimony Whereof, I have hereunto subscribed my name and affixed the seal of this Court at the City of Washington, D.C., on September 19, 2019.**

**JULIO A. CASTILLO**
**Clerk of the Court**

Issued By:
District of Columbia Bar Membership

For questions or concerns, please contact the D.C. Bar Membership Office at 202-626-3475 or email memberservices@dcbar.org.

**CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE
FOR THE THIRTIETH JUDICIAL CIRCUIT AT MEMPHIS**

ACUMENT GLOBAL TECHNOLOGIES, INC.,

　　　　　　Plaintiff,

　　v.

MALLINCKRODT ARD, INC., et al.,

　　　　　　Defendants.

Docket No. CT-2275-19



FILED
OCT 1 1 2019
CIRCUIT COURT CLERK
BY _____ D.C.

## NOTICE OF FILING REVISED AFFIDAVITS IN SUPPORT OF MOTION TO ADMIT ATTORNEYS FROM QUINN, EMANUEL, URQUHART & SULLIVAN, LLP TO PRACTICE *PRO HAC VICE*

The Express Scripts Defendants hereby file the revised affidavits of Eric C. Lyttle, Micheal J. Lyle, Ethan C. Glass, Meghan A. McCaffrey, and Michael D. Bonanno in support of the Express Scripts Defendants' motion to admit the aforementioned attorneys to practice *pro hac vice* in this Court.[1]

Respectfully Submitted,

Nathan A. Bicks (#10903)
William D. Irvine, Jr. (#035193)
Lani D. Lester (#035226)
BURCH, PORTER & JOHNSON, PLLC
130 North Court Avenue
Memphis, TN 31803
Tel: (901) 524-5000
Facsimile: (901) 524-5024
*Attorneys for the Express Scripts Defendants*

---

[1] Defendants Express Scripts Holding Company; Express Scripts, Inc.; CuraScript, Inc., doing business as CuraScript SD; Priority Healthcare Corp. and Priority Healthcare Distribution Inc., doing business as CuraScript SD; Accredo Health Group, Inc.; and United BioSource LLC are collectively referred to as the Express Scripts Defendants.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent by electronic service or U.S. mail as required to all attorneys and all interested parties in this matter on this the ___ day of _October_ 2019.

Daniel V. Parish
Patrick M. Ardis
Roy Harold Chockley
WOLF ARDIS, P.C.
5810 Shelby Oaks Drive
Memphis, TN 38134
pardis@wolfardis.com
cchockley@wolfardis.com
dparish@wolfardis.com

Donald Haviland, Jr.
William H. Platt, II
HAVILAND HUGHES
201 S. Maple Way, Suite 110
Ambler, PA 19002
haviland@havilandhughes.com
platt@havilandhughes.com
*Attorneys for Acument Global Technologies, Inc.*

Daniel B. Brown (#010918)
TAYLOR ENGLISH DUMA, LLC
1600 Parkwood Circle, SE Suite 200
Atlanta, GA 30339
dbrown@taylorenglish.com
*Counsel for James A. Tumlin, M.D.*

Daniel W. Van Horn
Kathryn K. Van Namen
Diana M. Gomes
BUTLER SNOW, LLP
6075 Poplar Avenue, 5th Floor
Memphis, TN 38119
Danny.VanHorn@butlersnow.com
Diana.Comes@butlersnow.com
Kate.VanNamen@butlersnow.com

G. Patrick Watson
Lindsay Sklar Johnson
BRYAN CAVE LEIGHTON PAISNER, LLP
One Atlantic Center, 14th Floor
1201 Peachtree Street, NW
Atlanta, GA 30309
Patrick.Watson@bclplaw.com
Lindsay.Johnson@bclplaw.com

Herbert R. Giorgio, Jr.
BRYAN CAVE LEIGHTON PAISNER, LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO 63102
Herb.Giorgio@bclplaw.com
*Attorneys for Mallinckrodt ARC Inc. and Mallinckrodt plc*

Lani D. Lester

3

CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE
FOR THE THIRTIETH JUDICIAL CIRCUIT AT MEMPHIS

| | |
|---|---|
| ACUMENT GLOBAL TECHNOLOGIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>MALLINCKRODT ARD, INC., et al.,<br><br>Defendants. | Docket No. CT-2275-19 |

CITY OF WASHINGTON

DISTRICT OF COLUMBIA

### AFFIDAVIT OF ERIC C. LYTTLE

Before me, the undersigned, personally appeared Eric C. Lyttle, who after being duly sworn makes oath and states as follows:

1.    My full name is Eric Christopher Lyttle.   My residence address is 3200 N Albemarle Street, Arlington VA 22207-4219.  I am an attorney with Quinn Emanuel Urquhart & Sullivan, LLP, located at 1300 I St NW, Suite 900, Washington, D.C. 20005.  My e-mail address is ericlyttle@quinnemanuel.com and my telephone number is 202-538-8162.

2.    I seek to represent Defendants Express Scripts Holding Company; Express Scripts, Inc.; CuraScript, Inc., doing business as CuraScript SD; Priority Healthcare Corp. and Priority Healthcare Distribution Inc., doing business as CuraScript SD; Accredo Health Group, Inc.; and United BioSource LLC (collectively the "Express Scripts Defendants") in the above-captioned action.

3.    I am licensed to practice law in the District of Columbia, date of admission August 11, 2003, registration number 482856, and on inactive status in Virginia, date of admission

1

October 11, 2002, registration number 48518. I am in good standing in both the District of Columbia and Virginia. Certificates of Good Standing from the District of Columbia and Virginia are attached as Exhibits A and B to this Affidavit and incorporated herein.

4.      I am additionally licensed to practice before the United States Court of Appeals for the Fourth Circuit, date of admission October 28, 2002; the United States Court of Appeals for the Fifth Circuit, date of admission March 1, 2016; the United States District Court for the District of Columbia, date of admission June 7, 2004, registration number 482856; the United States District Court for the Western District of Michigan, date of admission March 27, 2007; the United States Bankruptcy Court for the District of Columbia, date of admission October 5, 2015, registration number 482856.

5.      I have been admitted *pro hac vice* in Tennessee State Court once during the past three years. I was admitted on October 18, 2016 in *Accredo Health Group, Inc. v. GlaxoSmithKline, LLC f/k/a SmithKline Beecham Corporation d/b/a GlaxoSmithKline*, ("Accredo Matter") in the Circuit Court of Shelby Country, Tennessee. The parties to the Accredo Matter entered into a confidential settlement agreement and the Court (Judge Rhynette N. Hurd) subsequently entered a Consent Order Granting Dismissal with Prejudice on August 29, 2017 ("Dismissal Order"). A copy of the Dismissal Order is attached as Exhibit C to this Affidavit and incorporated herein.

6.      I have never been denied admission *pro hac vice,* nor have I had an admission *pro hac vice* revoked by any court in any jurisdiction.

7.      I have never been disciplined or sanctioned by the Board of Professional Responsibility of the Supreme Court of Tennessee, by any similar lawyer disciplinary agency in any jurisdiction, or by any similar lawyer disciplinary authority.

8. There are no disciplinary actions or investigations concerning my conduct as a lawyer pending before the Board of Professional Responsibility of the Supreme Court of Tennessee, before any similar lawyer disciplinary agency in any jurisdiction, or before any similar lawyer disciplinary authority.

9. I am familiar with the Tennessee Rules of Professional Conduct and the rules governing the proceedings of the Circuit Court of Shelby County, Tennessee.

10. I consent to the disciplinary jurisdiction of the Board of Professional Responsibility of the Supreme Court of Tennessee and the courts of Tennessee in any matter arising out of the my conduct as a lawyer in the above-captioned action. I agree to be bound by the Tennessee Rules of Professional Conduct and any other rules of conduct applicable to lawyers generally admitted in Tennessee.

11. I am associated with Nathan Bicks (#10903), of the law firm Burch, Porter & Johnson, PLLC located at 130 North Court Avenue Memphis, TN 31803. Mr. Bicks's telephone number is (901) 524-5000.

12. I have paid all fees required by this Rule in connection with the Motion for Admission.

13. Service of the *pro hac vice* motion and all associated papers will be made upon all counsel of record in the proceeding and upon the Board of Professional Responsibility of the Supreme Court of Tennessee.


I declare under penalty of perjury that the foregoing is true and correct.


3

_____

*Pro Hac Vice Applicant*


Sworn to and subscribed before me this 8th day of October , 20 19 .


_____

Notary Public

JESSICA KIDANE
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires August 31, 2020

My commission expires: 8/31/20

4

# EXHIBIT A



On behalf of JULIO A. CASTILLO, Clerk of the District of Columbia Court of Appeals,
the District of Columbia Bar does hereby certify that

*Eric C Lyttle*

was duly qualified and admitted on **August 11, 2003** as an attorney and counselor entitled to
practice before this Court; and is, on the date indicated below, an **Active** member in good
standing of this Bar.

In Testimony Whereof,
I have hereunto subscribed my
name and affixed the seal of this
Court at the City of Washington,
D.C., on July 26, 2019.

JULIO A. CASTILLO
Clerk of the Court

Issued By: District of Columbia Bar Membership

For questions or concerns, please contact the D.C. Bar Membership Office at 202-626-3475 or email
memberservices@dcbar.org.

# EXHIBIT B

# VIRGINIA STATE BAR

## *CERTIFICATE OF GOOD STANDING*

THIS IS TO CERTIFY THAT **ERIC CHRISTOPHER LYTTLE** IS AN ASSOCIATE (INACTIVE) MEMBER OF

THE VIRGINIA STATE BAR IN GOOD STANDING.  **MR. LYTTLE** WAS LICENSED TO PRACTICE LAW IN

VIRGINIA ON **OCTOBER 11, 2002**, AFTER SUCCESSFULLY PASSING THE BAR EXAMINATION GIVEN BY THE

BOARD OF BAR EXAMINERS.

*Issued September 30, 2019*

KAREN A. GOULD
EXECUTIVE DIRECTOR AND
CHIEF OPERATING OFFICER

# EXHIBIT C

## IN THE CIRCUIT COURT OF TENNESSEE
## FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

ACCREDO HEALTH GROUP, INC.

      Plaintiff/Counter-Defendant,           JURY TRIAL DEMANDED

v.                                  Case No. CT-004487-12

GLAXOSMITHKLINE, LLC, f/k/a           Div. V
SMITHKLINE BEECHAM CORPORATION
d/b/a GLAXOSMITHKLINE,

      Defendant/Counter-Plaintiff.

---

### CONSENT ORDER GRANTING DISMISSAL WITH PREJUDICE

---

**IT APPEARING TO THE COURT** that Defendant/Counter-Plaintiff GlaxoSmithKline, LLC f/k/a SmithKline Beecham Corporation d/b/a GlaxoSmithKline ("GSK") and Plaintiff/Counter-Defendant Accredo Health Group, Inc. ("Accredo") (collectively the "Parties") have entered into a settlement agreement, the terms of which are confidential, and that the Parties seek to dismiss their respective claims and this entire action with **PREJUDICE**.

**IT IS THEREFORE ADJUDGED, ORDERED and DECREED** that the above-captioned action is hereby dismissed in its entirety with **PREJUDICE**. The Parties shall bear their own attorney's fees and expenses. The statutory court costs in this case shall be paid by Accredo, pursuant to the agreement of the parties.

**IT IS SO ORDERED.**

### Judge Rhynette N. Hurd

---
JUDGE RHYNETTE N. HURD

DATE:_____AUG 2 9 2017_____

A TRUE COPY ATTEST

1      JIMMY MOORE, Clerk

CROW D.C.

APPROVED BY:

Glen G. Reid, Jr. (# 8184)
Byron N. Brown IV (#23529)
Amber D. Floyd (#29160)
Wyatt Tarrant & Combs, LLP
Aaron Brenner Drive, Suite 800
Memphis, TN 38120-4367
Telephone: 901-537-1000
Facsimile: 901-537-1010

AND

Lorenzo E. Gasparetti (admitted *pro hac vice*)
Monica M. Ortiz (admitted *pro hac vice*)
Reed Smith LLP
Grand Ave., 29th Floor
Los Angeles, CA 90071
Telephone: 213-457-8000
Facsimile: 213-457-8080

*Attorneys for GlaxoSmithKline, LLC f/k/a*
*SmithKline Beecham Corporation d/b/a GlaxoSmithKline*

Justin L. Jones (#26403)
Jennifer Ziegenhorn (#16351)
HUSCH BLACKWELL LLP
International Drive, Ste. 300
Memphis, TN 38120
Telephone: 901-523-1123
Facsimile: 901-523-7472

AND

Michal Nolan (admitted *pro hac vice*)
Melissa Z. Baris (admitted *pro hac vice*)
HUSCH BLACKWELL LLP
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
Telephone: 314-480-1500

2

AND

Eric Lyttle (admitted *pro hac vice*)
Michael Lyle (admitted *pro hac vice*)
Quinn Emanuel Urquhart & Sullivan, LLP
777 6th Street, NW, 11th Floor
Washington, DC  20001

*Attorneys for Accredo Health Group, Inc.*

## CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE
## FOR THE THIRTIETH JUDICIAL CIRCUIT AT MEMPHIS

ACUMENT GLOBAL TECHNOLOGIES, INC.,

                  Plaintiff,

     v.

                  Docket No. CT-2275-19

MALLINCKRODT ARD, INC., et al.,

                  Defendants.

CITY OF WASHINGTON

DISTRICT OF COLUMBIA

### AFFIDAVIT OF MICHAEL J. LYLE

Before me, the undersigned, personally appeared Michael J. Lyle, who after being duly sworn makes oath and states as follows:

1.      My full name is Michael John Lyle. My residence address is 8015 Ellingson Drive, Chevy Chase, MD 20815. I am an attorney with Quinn Emanuel Urquhart & Sullivan, LLP, located at 1300 I St NW, Suite 900, Washington, D.C. 20005. My e-mail address is mikelyle@quinnemanuel.com and my telephone number is 202-538-8166.

2.      I seek to represent Defendants Express Scripts Holding Company; Express Scripts, Inc.; CuraScript, Inc., doing business as CuraScript SD; Priority Healthcare Corp. and Priority Healthcare Distribution Inc., doing business as CuraScript SD; Accredo Health Group, Inc.; and United BioSource LLC (collectively the "Express Scripts Defendants") in the above-captioned action.

3.       I am licensed to practice law in the state of Illinois, date of admission November 10, 1988, registration number 6199227 and the District of Columbia, date of admission November 2, 2001, registration number 475078.

4.       I am additionally licensed to practice before the United States Supreme Court, date of admission March 28, 2005, registration number 254705; the United States Court of Appeals for the Second Circuit, date of admission December 2, 2015; the United States Court of Appeals for the Fourth Circuit, date of admission March 19, 1997; the United States Court of Appeals for the Fifth Circuit, date of admission December 16, 2011; the United States Court of Appeals for the Seventh Circuit, date of admission December 15, 1995; the United States Court of Appeals for the Eighth Circuit, date of admission April 18, 2002; the United States District Court for the District of Columbia, date of admission August 4, 2005, registration number 475078; the United States District Court for the Eastern District of Michigan, date of admission February 1, 1991; the United States District Court for the Western District of Michigan, date of admission March 27, 2007; the United States District Court for the Central District of Illinois, date of admission April 24, 1990; and the United States District Court for the Northern District of Illinois, date of admission January 11, 1989.

5.       I am in good standing in both the District of Columbia and Illinois.  Certificates of Good Standing from the District of Columbia and Illinois are attached as Exhibits A and B to this Affidavit and incorporated herein.

6.       I have been admitted *pro hac vice* in Tennessee State Court once during the past three years.  I was admitted on October 18, 2016 in *Accredo Health Group, Inc. v. GlaxoSmithKline, LLC f/k/a SmithKline Beecham Corporation d/b/a GlaxoSmithKline*, ("Accredo Matter") in the Circuit Court of Shelby Country, Tennessee.  The parties to the Accredo Matter

2

entered into a confidential settlement agreement and the Court (Judge Rhynette N. Hurd) subsequently entered a Consent Order Granting Dismissal with Prejudice on August 29, 2017 ("Dismissal Order"). A copy of the Dismissal Order is attached as Exhibit C to this Affidavit and incorporated herein

7.     I have never been denied admission *pro hac vice,* nor have I had an admission *pro hac vice* revoked by any court in any jurisdiction.

8.     I have never been disciplined or sanctioned by the Board of Professional Responsibility of the Supreme Court of Tennessee, by any similar lawyer disciplinary agency in any jurisdiction, or by any similar lawyer disciplinary authority.

9.     There are no disciplinary actions or investigations concerning my conduct as a lawyer pending before the Board of Professional Responsibility of the Supreme Court of Tennessee, before any similar lawyer disciplinary agency in any jurisdiction, or before any similar lawyer disciplinary authority.

10.    I am familiar with the Tennessee Rules of Professional Conduct and the rules governing the proceedings of the Circuit Court of Shelby County, Tennessee.

11.    I consent to the disciplinary jurisdiction of the Board of Professional Responsibility of the Supreme Court of Tennessee and the courts of Tennessee in any matter arising out of the my conduct as a lawyer in the above-captioned action. I agree to be bound by the Tennessee Rules of Professional Conduct and any other rules of conduct applicable to lawyers generally admitted in Tennessee.

12.    I am associated with Nathan Bicks (#10903), of the law firm Burch, Porter & Johnson, PLLC located at 130 North Court Avenue Memphis, TN 31803. Mr. Bicks's telephone number is (901) 524-5000.

3

13.    I have paid all fees required by this Rule in connection with the Motion for Admission.

14.    Service of the *pro hac vice* motion and all associated papers will be made upon all counsel of record in the proceeding and upon the Board of Professional Responsibility of the Supreme Court of Tennessee.

I declare under penalty of perjury that the foregoing is true and correct. Executed in Washington, DC.

*Pro Hac Vice Applicant*

Sworn to and subscribed before me this 7th day of October, 20 19.

Notary Public

My commission expires: 8/31/20

4

# EXHIBIT A



On behalf of JULIO A. CASTILLO, Clerk of the District of Columbia Court of Appeals,
the District of Columbia Bar does hereby certify that

*Michael J. Lyle*

was duly qualified and admitted on **November 2, 2001** as an attorney and counselor entitled
to practice before this Court; and is, on the date indicated below, an **Active** member in
good standing of this Bar.

In Testimony Whereof,
I have hereunto subscribed my
name and affixed the seal of this
Court at the City of Washington,
D.C., on July 23, 2019.

JULIO A. CASTILLO
Clerk of the Court

Issued By:

District of Columbia Bar Membership

For questions or concerns, please contact the D.C. Bar Membership Office at 202-626-3475 or email
memberservices@dcbar.org.

# EXHIBIT B

# Certificate of Admission
# To the Bar of Illinois

I, Carolyn Taft Grosboll, Clerk of the Supreme Court of Illinois, do hereby certify that

Michael John Lyle

has been duly licensed and admitted to practice as an Attorney and Counselor at Law within this State; has duly taken the required oath to support the CONSTITUTION OF THE UNITED STATES and of the STATE OF ILLINOIS, and also the oath of office prescribed by law, that said name was entered upon the Roll of Attorneys and Counselors in my office on 11/10/1988 and is in good standing, so far as the records of this office disclose.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed the seal of said Court, this 1st day of October, 2019.

*Carolyn Taft Grosboll*

Clerk,
Supreme Court of the State of Illinois

# EXHIBIT C

## IN THE CIRCUIT COURT OF TENNESSEE
## FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

ACCREDO HEALTH GROUP, INC.

       Plaintiff/Counter-Defendant,          JURY TRIAL DEMANDED

v.                                       Case No. CT-004487-12
                                          Div. V
GLAXOSMITHKLINE, LLC, f/k/a
SMITHKLINE BEECHAM CORPORATION
d/b/a GLAXOSMITHKLINE,

       Defendant/Counter-Plaintiff.

---

### CONSENT ORDER GRANTING DISMISSAL WITH PREJUDICE

---

**IT APPEARING TO THE COURT** that Defendant/Counter-Plaintiff GlaxoSmithKline, LLC f/k/a SmithKline Beecham Corporation d/b/a GlaxoSmithKline ("GSK") and Plaintiff/Counter-Defendant Accredo Health Group, Inc. ("Accredo") (collectively the "Parties") have entered into a settlement agreement, the terms of which are confidential, and that the Parties seek to dismiss their respective claims and this entire action with **PREJUDICE.**

**IT IS THEREFORE ADJUDGED, ORDERED and DECREED** that the above-captioned action is hereby dismissed in its entirety with **PREJUDICE.** The Parties shall bear their own attorney's fees and expenses. The statutory court costs in this case shall be paid by Accredo, pursuant to the agreement of the parties.

**IT IS SO ORDERED.**

**Judge Rhynette N. Hurd**

JUDGE RHYNETTE N. HURD

DATE:_____ AUG 2 9 2017

A TRUE COPY ATTEST

JIMMY MOORE, Clerk

1

APPROVED BY:

Glen G. Reid, Jr. (# 8184)
Byron N. Brown IV (#23529)
Amber D. Floyd (#29160)
Wyatt Tarrant & Combs, LLP
Aaron Brenner Drive, Suite 800
Memphis, TN  38120-4367
Telephone: 901-537-1000
Facsimile: 901-537-1010

AND

Lorenzo E. Gasparetti (admitted *pro hac vice*)
Monica M. Ortiz (admitted *pro hac vice*)
Reed Smith LLP
Grand Ave., 29th Floor
Los Angeles, CA  90071
Telephone: 213-457-8000
Facsimile: 213-457-8080

*Attorneys for GlaxoSmithKline, LLC f/k/a*
*SmithKline Beecham Corporation d/b/a GlaxoSmithKline*

Justin L. Jones (#26403)
Jennifer Ziegenhorn (#16351)
HUSCH BLACKWELL LLP
International Drive, Ste. 300
Memphis, TN 38120
Telephone: 901-523-1123
Facsimile:  901-523-7472

AND

Michal Nolan (admitted *pro hac vice*)
Melissa Z. Baris (admitted *pro hac vice*)
HUSCH BLACKWELL LLP
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
Telephone:  314-480-1500

2

AND

Eric Lyttle (admitted *pro hac vice*)
Michael Lyle (admitted *pro hac vice*)
Quinn Emanuel Urquhart & Sullivan, LLP
777 6th Street, NW, 11th Floor
Washington, DC  20001

*Attorneys for Accredo Health Group, Inc.*

CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE
FOR THE THIRTIETH JUDICIAL CIRCUIT AT MEMPHIS

| | |
|---|---|
| ACUMENT GLOBAL TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> MALLINCKRODT ARD, INC., et al., <br><br> Defendants. | Docket No. CT-2275-19 |

CITY OF WASHINGTON

DISTRICT OF COLUMBIA

### AFFIDAVIT OF ETHAN C. GLASS

Before me, the undersigned, personally appeared Ethan C. Glass, who after being duly sworn makes oath and states as follows:

1.     My full name is Ethan Charles Glass.  My residence address is 3207 Pauline Drive, Chevy Chase, MD 20815-3921.  I am an attorney with Quinn Emanuel Urquhart & Sullivan, LLP, located at 1300 I St NW, Suite 900, Washington, D.C. 20005.   My e-mail address is ethanglass@quinnemanuel.com and my telephone number is 202-538-8265.

2.     I seek to represent Defendants Express Scripts Holding Company; Express Scripts, Inc.; CuraScript, Inc., doing business as CuraScript SD; Priority Healthcare Corp. and Priority Healthcare Distribution Inc., doing business as CuraScript SD; Accredo Health Group, Inc.; and United BioSource LLC (collectively the "Express Scripts Defendants") in the above-captioned action.

1

3.      I am licensed to practice law in the state of California, date of admission December 3, 2001, registration number 216159 and the District of Columbia, date of admission September 9, 2016, registration number 1034207.

4.      I am additionally licensed to practice before the United States District Court for the Northern District of California, date of admission December 13, 2002, registration number 216159; the United States District Court for the District of Columbia, date of admission October 7, 2002, registration number M10018; the United States District Court for the District of Minnesota, April 3, 2002, registration number 316490; the United States District Court for the Western District of Michigan, date of admission August 29, 2002; the United States Court of Appeals for the Sixth Circuit, date of admission December 16, 2002; the United States Court of Appeals for the Eighth Circuit, date of admission December 27, 2002, registration number 02-0713; the United States Court of Appeals for the Ninth Circuit, date of admission November 12, 2004, registration number 216159; the United States Court of Appeals for the Federal Circuit, June 18, 2002.

5.      I am in good standing in both the District of Columbia and California.  Certificates of Good Standing from the District of Columbia and California are attached as Exhibits A and B to this Affidavit and incorporated herein.

6.      I have not been previously admitted *pro hac vice* in any trial or appellate court of Tennessee.

7.      I have never been denied admission *pro hac vice,* nor have I had an admission *pro hac vice* revoked by any court in any jurisdiction.

2

8.      I have never been disciplined or sanctioned by the Board of Professional Responsibility of the Supreme Court of Tennessee, by any similar lawyer disciplinary agency in any jurisdiction, or by any similar lawyer disciplinary authority.

9.      There are no disciplinary actions or investigations concerning my conduct as a lawyer pending before the Board of Professional Responsibility of the Supreme Court of Tennessee, before any similar lawyer disciplinary agency in any jurisdiction, or before any similar lawyer disciplinary authority.

10.     I am familiar with the Tennessee Rules of Professional Conduct and the rules governing the proceedings of the Circuit Court of Shelby County, Tennessee.

11.     I consent to the disciplinary jurisdiction of the Board of Professional Responsibility of the Supreme Court of Tennessee and the courts of Tennessee in any matter arising out of the my conduct as a lawyer in the above-captioned action. I agree to be bound by the Tennessee Rules of Professional Conduct and any other rules of conduct applicable to lawyers generally admitted in Tennessee.

12.     I am associated with Nathan Bicks (#10903), of the law firm Burch, Porter & Johnson, PLLC located at 130 North Court Avenue Memphis, TN 31803. Mr. Bicks's telephone number is (901) 524-5000.

13.     I have paid all fees required by this Rule in connection with the Motion for Admission.

14.     Service of the *pro hac vice* motion and all associated papers will be made upon all counsel of record in the proceeding and upon the Board of Professional Responsibility of the Supreme Court of Tennessee.

3

I declare under penalty of perjury that the foregoing is true and correct.

_Urban C. Glass_
_____
*Pro Hac Vice Applicant*

Sworn to and subscribed before me this 9 day of October , 20 19 .

_Carol P Clark_
_____
Notary Public

My commission expires:  CAROL P. CLARK
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires March 31, 2021

4

# EXHIBIT A



On behalf of JULIO A. CASTILLO, Clerk of the District of Columbia Court of Appeals,
the District of Columbia Bar does hereby certify that

*Ethan Charles Glass*

was duly qualified and admitted on September 9, 2016 as an attorney and counselor entitled to
practice before this Court; and is, on the date indicated below, an Active member in good
standing of this Bar.

In Testimony Whereof,
I have hereunto subscribed my
name and affixed the seal of this
Court at the City of
Washington, D.C., on July 31,
2019.

**JULIO A. CASTILLO**
**Clerk of the Court**

Issued By:
District of Columbia Bar Membership

For questions or concerns, please contact the D.C. Bar Membership Office at 202-626-3475 or email
memberservices@dcbar.org.

# EXHIBIT B

## The State Bar
## *of California*

**OFFICE OF ATTORNEY REGULATION
& CONSUMER RESOURCES**

180 Howard Street, San Francisco, CA 94105          888-800-3400          AttorneyRegulation@calbar.ca.gov

# CERTIFICATE OF STANDING

September 26, 2019

TO WHOM IT MAY CONCERN:

This is to certify that according to the records of the State Bar, ETHAN CHARLES GLASS, #216159 was admitted to the practice of law in this state by the Supreme Court of California on December 3, 2001 and has been since that date, and is at date hereof, an ACTIVE licensee of the State Bar of California; and that no recommendation for discipline for professional or other misconduct has ever been made by the Board of Trustees or a Disciplinary Board to the Supreme Court of the State of California.

THE STATE BAR OF CALIFORNIA

Denise Velasco
Custodian of Records

CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE
FOR THE THIRTIETH JUDICIAL CIRCUIT AT MEMPHIS

| | |
|---|---|
| ACUMENT GLOBAL TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> MALLINCKRODT ARD, INC., et al., <br><br> Defendants. | Docket No. CT-2275-19 |

CITY OF WASHINGTON

DISTRICT OF COLUMBIA

### AFFIDAVIT OF MEGHAN A. MCCAFFREY

Before me, the undersigned, personally appeared Meghan A. McCaffrey, who after being duly sworn makes oath and states as follows:

1.      My full name is Meghan Ann McCaffrey.  My residence address is 936 9th Street NE, Washington, D.C. 20002-3714.  I am an attorney with Quinn Emanuel Urquhart & Sullivan, LLP, located at 1300 I St NW, Suite 900, Washington, D.C. 20005.  My e-mail address is meghanmccaffrey@quinnemanuel.com and my telephone number is 202-538-8177.

2.      I seek to represent Defendants Express Scripts Holding Company; Express Scripts, Inc.; CuraScript, Inc., doing business as CuraScript SD; Priority Healthcare Corp. and Priority Healthcare Distribution Inc., doing business as CuraScript SD; Accredo Health Group, Inc.; and United BioSource LLC (collectively the "Express Scripts Defendants") in the above-captioned action.

1

3.      I am licensed to practice law in the state of New York, date of admission April 23, 2009, registration number 4703708 and the District of Columbia, date of admission March 5, 2010, registration number 993442.

4.      I am additionally licensed to practice before the Southern District of New York, date of admission November 10, 2009, registration number MM4035, and the United States District Court for the District of Columbia, date of admission May 2, 2011, registration number 993442.

5.      I am in good standing in both the District of Columbia and New York. Certificates of Good Standing from the District of Columbia and New York are attached as Exhibits A and B to this Affidavit and incorporated herein.

6.      I have not been previously admitted *pro hac vice* in any trial or appellate court of Tennessee.

7.      I have never been denied admission *pro hac vice,* nor have I had an admission *pro hac vice* revoked by any court in any jurisdiction.

8.      I have never been disciplined or sanctioned by the Board of Professional Responsibility of the Supreme Court of Tennessee, by any similar lawyer disciplinary agency in any jurisdiction, or by any similar lawyer disciplinary authority.

9.      There are no disciplinary actions or investigations concerning my conduct as a lawyer pending before the Board of Professional Responsibility of the Supreme Court of Tennessee, before any similar lawyer disciplinary agency in any jurisdiction, or before any similar lawyer disciplinary authority.

10.     I am familiar with the Tennessee Rules of Professional Conduct and the rules governing the proceedings of the Circuit Court of Shelby County, Tennessee.

2

11.     I consent to the disciplinary jurisdiction of the Board of Professional Responsibility of the Supreme Court of Tennessee and the courts of Tennessee in any matter arising out of the my conduct as a lawyer in the above-captioned action. I agree to be bound by the Tennessee Rules of Professional Conduct and any other rules of conduct applicable to lawyers generally admitted in Tennessee.

12.     I am associated with Nathan Bicks (#10903), of the law firm Burch, Porter & Johnson, PLLC located at 130 North Court Avenue Memphis, TN 31803. Mr. Bicks's telephone number is (901) 524-5000.

13.     I have paid all fees required by this Rule in connection with the Motion for Admission.

14.     Service of the *pro hac vice* motion and all associated papers will be made upon all counsel of record in the proceeding and upon the Board of Professional Responsibility of the Supreme Court of Tennessee.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Pro Hac Vice Applicant

Sworn to and subscribed before me this ⟨3⟩ day of ⟨October⟩, 20 ⟨19⟩.

_____
Notary Public

JESSICA KIDANE
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires August 31, 2020

3

2: mostly fragments

My commission expires: _____ _____

# EXHIBIT A



On behalf of JULIO A. CASTILLO, Clerk of the District of Columbia Court of Appeals,
the District of Columbia Bar does hereby certify that

*Meghan A. Mc Caffrey*

was duly qualified and admitted on **March 5, 2010** as an attorney and counselor entitled to
practice before this Court; and is, on the date indicated below, an **Active** member in good
standing of this Bar.

In Testimony Whereof,
I have hereunto subscribed my
name and affixed the seal of this
Court at the City of Washington,
D.C., on July 23, 2019.

JULIO A. CASTILLO
Clerk of the Court

Issued By:

District of Columbia Bar Membership

For questions or concerns, please contact the D.C. Bar Membership Office at 202-626-3475 or email
memberservices@dcbar.org.

# EXHIBIT B



## State of New York
## Supreme Court, Appellate Division
## Third Judicial Department

---

*I, Robert D. Mayberger, Clerk of the Appellate Division of the Supreme Court of the State of New York, Third Judicial Department, do hereby certify that*

# Meghan Ann McCaffrey

*having taken and subscribed the Constitutional Oath of Office as prescribed by law, was duly licensed and admitted to practice by this Court as an Attorney and Counselor at Law in all courts of the State of New York on the **23rd day of April, 2009**, is currently in good standing and is registered with the Administrative Office of the Courts as required by section four hundred sixty-eight-a of the Judiciary Law.*

*In Witness Whereof, I have hereunto set my hand and affixed the Seal of said Court, at the City of Albany, this **1st day of October, 2019**.*

Robert D Mayberger

*Clerk*

## CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE
## FOR THE THIRTIETH JUDICIAL CIRCUIT AT MEMPHIS

| | |
|---|---|
| ACUMENT GLOBAL TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> MALLINCKRODT ARD, INC., et al., <br><br> Defendants. | Docket No. CT-2275-19 |

CITY OF WASHINGTON

DISTRICT OF COLUMBIA

### **AFFIDAVIT OF MICHAEL D. BONANNO**

Before me, the undersigned, personally appeared Michael D. Bonanno, who after being duly sworn makes oath and states as follows:

1.      My full name is Michael Domenic Bonanno. My residence address 1607 N. Edison Street, Arlington, VA 22207. I am an attorney with Quinn Emanuel Urquhart & Sullivan, LLP, located at 1300 I St NW, Suite 900, Washington, D.C. 20005. My e-mail address is mikebonanno@quinnemanuel.com and my telephone number is 202-538-8225.

2.      I seek to represent Defendants Express Scripts Holding Company; Express Scripts, Inc.; CuraScript, Inc., doing business as CuraScript SD; Priority Healthcare Corp. and Priority Healthcare Distribution Inc., doing business as CuraScript SD; Accredo Health Group, Inc.; and United BioSource LLC (collectively the "Express Scripts Defendants") in the above-captioned action.

3.      I am licensed to practice law in the District of Columbia, admission date December 6, 2010, registration number 998208.

1

4.      I am additionally licensed to practice before the United States District Court for the District of Columbia, admission date December 4, 2017, registration number 998208.

5.      I am in good standing in the District of Columbia. A Certificate of Good Standing from the District of Columbia is attached as Exhibit A to this affidavit and incorporated herein.

6.      I have not been previously admitted *pro hac vice* in any trial or appellate court of Tennessee.

7.      I have never been denied admission *pro hac vice*, nor have I had an admission *pro hac vice* revoked by any court in any jurisdiction.

8.      I have never been disciplined or sanctioned by the Board of Professional Responsibility of the Supreme Court of Tennessee, by any similar lawyer disciplinary agency in any jurisdiction, or by any similar lawyer disciplinary authority.

9.      There are no disciplinary actions or investigations concerning my conduct as a lawyer pending before the Board of Professional Responsibility of the Supreme Court of Tennessee, before any similar lawyer disciplinary agency in any jurisdiction, or before any similar lawyer disciplinary authority.

10.     I am familiar with the Tennessee Rules of Professional Conduct and the rules governing the proceedings of the Circuit Court of Shelby County, Tennessee.

11.     I consent to the disciplinary jurisdiction of the Board of Professional Responsibility of the Supreme Court of Tennessee and the courts of Tennessee in any matter arising out of the my conduct as a lawyer in the above-captioned action. I agree to be bound by the Tennessee Rules of Professional Conduct and any other rules of conduct applicable to lawyers generally admitted in Tennessee.

12.    I am associated with Nathan Bicks (#10903), of the law firm Burch, Porter & Johnson, PLLC located at 130 North Court Avenue Memphis, TN 31803. Mr. Bicks's telephone number is (901) 524-5000.

13.    I have paid all fees required by this Rule in connection with the Motion for Admission.

14.    Service of the *pro hac vice* motion and all associated papers will be made upon all counsel of record in the proceeding and upon the Board of Professional Responsibility of the Supreme Court of Tennessee.

I declare under penalty of perjury that the foregoing is true and correct.

_____
*Pro Hac Vice Applicant*

Sworn to and subscribed before me this 10th day of October, 2019.

_____
Notary Public

My commission expires: 8/31/20

3

# EXHIBIT A



On behalf of JULIO A. CASTILLO, Clerk of the District of Columbia Court of Appeals,
the District of Columbia Bar does hereby certify that

## *Michael D Bonanno*

was duly qualified and admitted on December 6, 2010 as an attorney and counselor entitled to
practice before this Court; and is, on the date indicated below, an Active member in good
standing of this Bar.

**In Testimony Whereof,
I have hereunto subscribed my
name and affixed the seal of this
Court at the City of
Washington, D.C., on July 31,
2019.**

**JULIO A. CASTILLO
Clerk of the Court**

Issued By:
District of Columbia Bar Membership

For questions or concerns, please contact the D.C. Bar Membership Office at 202-626-3475 or email
memberservices@dcbar.org.

# IN THE CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE FOR THE
## THIRTIETH JUDICAL DISTRICT AT MEMPHIS

OCT 1 4 2019

CIRCUIT COURT CLERK
BY _____ D.C.

ACUMENT GLOBAL TECHNOLOGIES, INC.,

    Plaintiff,

VS.

NO.  CT-2275-19
JURY TRIAL DEMANDED

MALLINCKRODT ARD, INC.
*Formally known as* QUESTCOR
PHARMACEUTICALS, INC.;

MALLINCKRODT PLC;

EXPRESS SCRIPTS HOLDING
COMPANY;

EXPRESS SCRIPTS, INC.;

CURASCRIPT, INC., *doing business as*
CURASCRIPT, SD.;

PRIORITY HEALTHCARE CORP. AND
PRIORITY HEALTHCARE
DISTRIBUTION, INC. *doing business as*
CURASCRIPT SD AND CURASCRIPT
SPECIALTY DISTRIBUTION SD
*respectively*;

ACCREDO HEALTH GROUP, INC.;

UNTIED BIOSOURCE CORPORATION;

*and*

JAMES A. TUMLIN. M.D.,

    Defendants.

---

## CONSENT ORDER GRANTING DEFENDANT JAMES A. TUMLIN, M.D.'S MOTION TO ADMIT WILLIAM DANIEL DILLON TO PRACTICE PRO HAC VICE

1

Upon Motion of Defendant, James A. Tumlin, M.D., to admit William Daniel Dillon, to practice pro hac vice, for good cause shown,

**IT APPEARS TO THE COURT** that:

1. William Daniel Dillon resides in the City of Chamblee, Georgia. Mr. Dillon's office mailing address is 1600 Parkwood Circle, Suite 200, Atlanta, Georgia 30339.

2. The registration or identifying number associated with his licensure in Georgia is 222410.

The full name or style of the case in which William Daniel Dillon seeks to appear is:

> Acument Global Technologies, Inc. vs Mallinckrodt ARD, Inc. *Formally known as* Questcor Pharmaceuticals, Inc.; Mallinckrodt PLC; Express Scripts Holding Company; Express Scripts, Inc.; Curascript, Inc., *doing business as* Curascript, SD.; Priority Healthcare Corp. and Priority Healthcare Distribution, Inc. *doing business as* Curascript SD and Curascript Specialty Distribution SD *respectively*; Accredo Health Group, Inc.; Untied Biosource Corporation; *and* James A. Tumlin. M.D. CT-2275-19

The name of the client that William Daniel Dillon seeks to represent is James A. Tumlin, M.D., a Defendant in the above-referenced case.

3. William Daniel Dillon is currently licensed, in good standing, and admitted to practice before the Court of last resort in the States of Georgia and Alabama, and the Courts of the District of Columbia. The dates for his admission to those Courts are Alabama- September 28, 1987; Georgia- June 11, 1990 and District of Columbia- December 7, 2015.

William Daniel Dillon has submitted with his Motion and Affidavit a Certificate of Good Standing from the Supreme Court of the States of Georgia and Alabama, and from the Clerk of the District of Columbia Court of Appeals.

There are no disciplinary actions or investigations of William Daniel Dillon's professional conduct pending.

4. William Daniel Dillon has not sought to be admitted pro hac vice in any state trial or appellate court of Tennessee within the preceding three (3) years.

5. William Daniel Dillon has not filed pleadings nor made appearance in five (5) or more state courts of Tennessee (trial or appellate) within the past twelve (12) months.

William Daniel Dillon has not been admitted or sought to be admitted pro hac vice in any federal court in the State of Tennessee within the preceding three (3) years.

6. William Daniel Dillon has not been denied admission pro hac vice, nor has he had admission pro hac vice revoked by any court in any jurisdiction.

7. William Daniel Dillon has not ever been disciplined nor sanctioned by the Board of Professional Responsibility of the Supreme Court of Tennessee, by any similar lawyer disciplinary agency in any jurisdiction, nor by any similar lawyer disciplinary authority, including any United States District Court.

8. There is no disciplinary action or investigation concerning William Daniel Dillon's conduct pending before the Board of Professional Responsibility of the Supreme Court of Tennessee, before any similar lawyer disciplinary agency in any jurisdiction, nor before any similar lawyer disciplinary authority, including any United States District Court.

9. William Daniel Dillon is familiar with the Tennessee Rules of Professional Conduct and the rules governing the proceedings of the Court before which he seeks to practice in Shelby County, Tennessee.

10. William Daniel Dillon consents to the disciplinary jurisdiction of the Board of Professional Responsibility of the Supreme Court of Tennessee, and the Courts of Tennessee in any matter arising out of his conduct in the proceeding, and he agrees to be bound by the

Tennessee Rules of Professional Conduct and any other rules of conduct applicable to lawyers generally admitted in Tennessee.

11. In accordance with Rule 19(g), William Daniel Dillon has associated Kirk Caraway, TN BPR #18578, Allen, Summers, Simpson, Lillie & Gresham, 80 Monroe Avenue, Suite 650, Memphis, Tennessee 38103, telephone number 901-763-4200 to serve as local counsel on this case.

12. All fees required by Tennessee Supreme Court Rule 19 have been paid by William Daniel Dillon to and accepted by the Tennessee Board of Professional Responsibility in connection with his Motion for admission in this Court.

13. William Daniel Dillon's Affidavit has been submitted in support of his admission pro hac vice in this Court for Dr. Tumlin in this proceeding.

14. William Daniel Dillon has submitted a Certificate of Good Standing for the Supreme Court of Georgia, his principal place of practice, attached to his Affidavit and in support of the Motion for Pro Hac Vice admission. He has also submitted Certificates of Good Standing from the Supreme Court of Alabama, and from the Clerk of the District of Columbia Court of Appeals.

15. William Daniel Dillon has submitted a Certificate, pursuant to Rule 21, Rules for Circuit Court for the Thirtieth Judicial District, together with the Motion and Affidavit filed for his admission pro hac vice in this case.

16. The Motion for Pro Hac Vice admission of William Daniel Dillon and Affidavit in support together with a copy of the Certificates of Good Standing have been delivered to the Tennessee Board of Professional Responsibility.

17. The Parties do not oppose the relief sought in this Motion, and consent to Mr. Dillon's request to represent James A. Tumlin, M.D. in this case.


**IT FURTHER APPEARS** that the Motion is well taken and should be granted.

**IT IS THEREFORE ORDERED, ADJUDGED and DECREED** that Defendant James A. Tumlin, M.D.'s Motion to Admit William Daniel Dillon to practice Pro Hac Vice is hereby granted.  William Daniel Dillon is authorized to practice as co-counsel of record throughout the course of this action.


JUDGE _____ By Interchange

Date: _____ 10-14, 2019 _____

5

**BY CONSENT:**

_Kirk Caraway (with permission)_
KIRK CARAWAY/TN BPR (# 18578)
Allen, Summers, Simpson, Lillie & Gresham, PLLC
*Attorney for Defendant James A. Tumlin, M.D.*
80 Monroe, Suite 650
Memphis, TN 38103
(901) 763-4200
(901) 684-1768 (fax)


_Daniel Parish (with permission)_
PATRICK M. ARDIS, ESQ.   (# 008263)
DANIEL V. PARISH, ESQ.   (# 027452)
Wolf Ardis, P.C.
*Attorneys for Acument Global Technologies, Inc.*
5810 Summer Oaks Drive
Memphis, Tennessee 38134
(901) 763-3336
(901) 763-3376 (fax)


_Daniel Brown (with permission)_
DANIEL B. BROWN, ESQ (# 010918)
Taylor English Duma, LLC
1600 Parkwood Circle, SE., Suite 200
Atlanta, Georgia 30339
(770) 434-6868


_Nathan Bicks (with permission)_
NATHAN A. BICKS, ESQ. (# 10903)
WILLIAM D. IRVINE, JR., ESQ.   (# 35193)
LANI D. LESTER (# 35226)
Burch, Porter & Johnson, PLLC
130 North Court Avenue
Memphis, Tennessee 38103
(901) 524-5000

_Daniel Van Horn (with permission)_

DANIEL W. VAN HORN (# 18940)
DIANA M. COMES (# 30112)
KATHRYN K. VAN NAMEN (# 31322)
Butler Snow, LLP
6075 Poplar Avenue, Suite 500
Memphis, Tennessee 38119
(901) 680-7200
(901) 680-7201 (fax)

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Consent Order Granting Defendant James A. Tumlin, M.D.'s Motion to Admit William Daniel Dillon to Practice *Pro Hac Vice* was served by U.S. Mail or via overnight delivery upon the following this____ day of _____, _____, to the following Attorneys

DANIEL W. VAN HORN
DIANA M. COMES
KATHRYN K. VAN NAMEN
Butler Snow, LLP
6075 Poplar Avenue, Suite 500
Memphis, Tennessee 38119

NATHAN A. BICKS, ESQ.
WILLIAM D. IRVINE, JR., ESQ.
LANI D. LESTER
Burch, Porter & Johnson, PLLC
130 North Court Avenue
Memphis, Tennessee 38103

DANIEL B. BROWN, ESQ
Taylor English Duma, LLC
1600 Parkwood Circle, SE., Suite 200
Atlanta, Georgia 30339

DONALD E. HAVILAND, JR., ESQ.
WILLIAM H. PLATT, ESQ
Haviland Hughes
201 South Maple Way, suite 110
Ambler, Pennsylvania 19002

PATRICK M. ARDIS, ESQ.
DANIEL V. PARISH, ESQ.
Wolf Ardis, P.C.
5810 Summer Oaks Drive
Memphis, Tennessee 38134

_Kirk Caraway (with permission)_

KIRK A. CARAWAY

7

**Trista Perkins**

| | |
|---|---|
| **From:** | Daniel Parish |
| **Sent:** | Thursday, October 10, 2019 2:47 PM |
| **To:** | Trista Perkins |
| **Subject:** | Re: 30585: Acument Global Technologies, Inc. vs James A. Tumin. M.D., et al. / Pleading (Word) |

This looks fine, you can have EKB sign for me.

Sent from my iPhone

> On Oct 10, 2019, at 2:27 PM, Trista Perkins <tperkins@wolffardis.com> wrote:
>
> Please let me know if you approve Caraway's order.  Looks fine to me.
>
> **From:** Kirk A. Caraway [mailto:kcaraway@allensummers.com]
> **Sent:** Thursday, October 10, 2019 12:01 PM
> **To:** Trista Perkins <tperkins@wolffardis.com>; Daniel Parish <dparish@wolffardis.com>; 'Bill Dillon' <bdillon@taylorenglish.com>; 'Danny Van Horn' <Danny.VanHorn@butlersnow.com>; 'Nathan Bicks' <nbicks@BPJLAW.com>; 'Laura.Shores@arnoldporter.com' <Laura.Shores@arnoldporter.com>; 'Lani Lester' <llester@BPJLAW.com>; Kate Van Namen <Kate.VanNamen@butlersnow.com>; 'Diana Comes' <Diana.Comes@butlersnow.com>; 'Will Irvine' <wirvine@BPJLAW.com>; 'haviland@havilandhughes.com' <haviland@havilandhughes.com>; 'platt@havilandhughes.com' <platt@havilandhughes.com>; 'Daniel Brown' <dbrown@taylorenglish.com>
> **Subject:** 30585: Acument Global Technologies, Inc. vs James A. Tumin. M.D., et al. / Pleading (Word)
>
> All:
>
>        Attached is a proposed Consent Order granting our Motion to Admit Bill Dillon Pro Hac Vice.  I am leaving the office in a couple of hours to take my kids on fall break, and won't be back in the office until Wednesday morning.  Please advise if everyone needed to sign will consent to having their name signed on this Order.  If so, Trista, would you mind signing their names (including mine) and taking this Order with you when you go to Court?  If the Judge signs it, I would appreciate it if you could email an attested copy back to me and I can ask my assistant to mail it out, consistent with the certificate of service.  Thanks
>
>        Kirk
>
>
> <image001.jpg>
> Kirk A. Caraway
> Allen, Summers, Simpson, Lillie & Gresham PLLC
> 80 Monroe Avenue, Suite 650
> Memphis, Tennessee 38103
> Office: (901) 763-4200
> Facsimile: (901) 684-1768
> Website: www.allensummers.com
> Email: kcaraway@allensummers.com

**Trista Perkins**

| | |
|---|---|
| **From:** | Kirk A. Caraway <kcaraway@allensummers.com> |
| **Sent:** | Thursday, October 10, 2019 2:38 PM |
| **To:** | Trista Perkins |
| **Subject:** | 20191010 CARAWAY TO TTP RE BICKS' PERMISSION TO SIGN ORDER-ACUMENT |

You can sign Nathan's name too.
Kirk



Kirk A. Caraway
Allen, Summers, Simpson, Lillie & Gresham PLLC
80 Monroe Avenue, Suite 650
Memphis, Tennessee 38103
Office: (901) 763-4200
Facsimile: (901) 684-1768
Website: www.allensummers.com
Email: kcaraway@allensummers.com
Bio: http://www.allensummers.com/attorneys/kirk-caraway/

 MULTI-MILLION DOLLAR ADVOCATES FORUM



*******************************************************************************

NOTICE: This message contains information that is confidential and/or protected by the attorney-client privilege and/or attorney work product doctrine. If you believe that it has been sent to you in error, please do not read it. Please reply to the sender or kcaraway@allensummers.com or contact our firm at (901) 763-4200 and let us know that you have received the message in error. Then delete it. Thank you.

**From:** Nathan Bicks <nbicks@BPJLAW.com>
**Sent:** Thursday, October 10, 2019 2:36 PM
**To:** Kirk A. Caraway <kcaraway@allensummers.com>
**Subject:** RE: 30585: Acument Global Technologies, Inc. vs James A. Tumin. M.D., et al. / Pleading (Word)

Yes...you have my permission to sign my name to this order...thanks, Nathan

1

**Trista Perkins**

| | |
|---|---|
| **From:** | Kirk A. Caraway <kcaraway@allensummers.com> |
| **Sent:** | Thursday, October 10, 2019 2:22 PM |
| **To:** | Trista Perkins |
| **Subject:** | 20191010 CARAWAY TO TTP RE VAN HORN'S PERMISSION TO SIGN ORDER-ACUMENT |

See below.
Kirk



Kirk A. Caraway
Allen, Summers, Simpson, Lillie & Gresham PLLC
80 Monroe Avenue, Suite 650
Memphis, Tennessee 38103
Office: (901) 763-4200
Facsimile: (901) 684-1768
Website: www.allensummers.com
Email: kcaraway@allensummers.com
Bio: http://www.allensummers.com/attorneys/kirk-caraway/

 MULTI-MILLION DOLLAR ADVOCATES FORUM



*********************************************************************************************

NOTICE: This message contains information that is confidential and/or protected by the attorney-client privilege and/or attorney work product doctrine. If you believe that it has been sent to you in error, please do not read it. Please reply to the sender or kcaraway@allensummers.com or contact our firm at (901) 763-4200 and let us know that you have received the message in error. Then delete it. Thank you.

**From:** Danny Van Horn <Danny.VanHorn@butlersnow.com>
**Sent:** Thursday, October 10, 2019 2:16 PM
**To:** Kirk A. Caraway <kcaraway@allensummers.com>
**Subject:** RE: 30585: Acument Global Technologies, Inc. vs James A. Tumin. M.D., et al. / Pleading (Word)

Yes you can sign my name.

**Trista Perkins**

| | |
|---|---|
| **From:** | Daniel Brown <dbrown@taylorenglish.com> |
| **Sent:** | Thursday, October 10, 2019 3:29 PM |
| **To:** | Kirk A. Caraway; 'Nathan Bicks'; 'Will Irvine' |
| **Cc:** | Trista Perkins |
| **Subject:** | RE: 30585: Acument Global Technologies, Inc. vs  James A. Tumin. M.D., et al. / Pleading (Word) |

Kirk and Trista:

    I've had the chance to review.  You are authorized to sign my name on the pleading and file with the Court.  Thanks.
/Dan



**Daniel B. Brown**
**Taylor English Duma LLP** | 1600 Parkwood Circle, Suite 400, Atlanta, GA 30339
P: 678.426.4613 | M: 404.606.2608 | dbrown@taylorenglish.com
Website | vCard | LinkedIn

This communication (together with all attachments) may contain privileged or confidential information, and its sender reserves and asserts all rights that may apply to it. If you are not the intended recipient or believe that you have received this communication in error, please do not print, copy, retransmit, disseminate or otherwise use the information. Also, please indicate to the sender that you have received this communication in error and delete the copy you received. If you have not executed an engagement letter with this firm, we do not represent you as your attorney and no duties are intended or created by this communication. Most legal rights have time limits, and this e-mail does not constitute advice on the application of limitation periods unless otherwise so expressly stated.

**From:** Kirk A. Caraway <kcaraway@allensummers.com>
**Sent:** Thursday, October 10, 2019 3:34 PM
**To:** Daniel Brown <dbrown@taylorenglish.com>; 'Nathan Bicks' <nbicks@BPJLAW.com>; 'Will Irvine' <wirvine@BPJLAW.com>
**Cc:** Trista Perkins <tperkins@wolffardis.com>
**Subject:** FW: 30585: Acument Global Technologies, Inc. vs James A. Tumin. M.D., et al. / Pleading (Word)

Dan and either Nathan or Will:
    Can Trista sign your names to the attached Order?  Everyone else has approved it, and she is going to Court shortly.  Thanks
    Kirk



Kirk A. Caraway
Allen, Summers, Simpson, Lillie & Gresham PLLC
80 Monroe Avenue, Suite 650
Memphis, Tennessee 38103
Office: (901) 763-4200
Facsimile: (901) 684-1768
Website: www.allensummers.com
Email: kcaraway@allensummers.com

1

# IN THE CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE
## FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

FILED
OCT 1 4 2019

CIRCUIT COURT CLERK
BY _____ D.C.

ACUMENT GLOBAL
TECHNOLOGIES, INC.,

      Plaintiff,

v.

Case No. CT-2275-19 Division VII

MALLINCKRODT ARD, INC., Formally
known as QUESTCOR PHARMACEUTICALS,
INC., MALLINCKRODT PLC, EXPRESS
SCRIPTS HOLDING COMPANY, EXPRESS
SCRIPTS, INC., CURASCRIPT, INC. d/b/a
CURASCRIPT, SD, PRIORITY HEALTHCARE
CORP. AND PRIORITY HEALTHCARE
DISTRIBUTION, INC., d/b/a CURASCRIPT
SD AND CURASCRIPT SPECIALTY
DISTRIBUTION SD, respectively, ACCREDO
HEALTH GROUP, INC., UNITED BIOSOURCE
CORPORATION, and JAMES A. TUMLIN, M.D.,

      Defendants.

## CONSENT ORDER GRANTING MOTIONS FOR ADMISSION PRO HAC VICE FOR DONALD E. HAVILAND, JR. AND WILLIAM H. PLATT, II

It appears to the Court that, by consent by all parties, Donald E. Haviland, Jr. and William H. Platt, II, with pending Motions for Admission Pro Hac Vice, should be and are hereby granted admission for Plaintiff, *pro hac vice* in this matter.

It is so ORDERED this the _14th_ day of October, 2019.

MARY L. WAGNER   By Interchange
CIRCUIT COURT JUDGE – DIVISION VII

Agreed and Approved for Entry:


**BUTLER SNOW, LLP**

*Daniel Van Horn - with permission*

DANIEL W. VAN HORN (#18940)
DIANA M. COMES (#30112)
KATHRYN K. VAN NAMEN (#31322)
Attorneys for Defendants Mallinckrodt ARD Inc. and Mallinckrodt PLC
6075 Poplar Avenue, Suite 500
Memphis, TN 38119
(901) 680-7200


**TAYLOR ENGLISH DUMA LLP**

*Daniel B Brown - with permission*

DANIEL B. BROWN (#10918)
Attorneys for Defendant James A. Tumlin, M.D.
1600 Parkwood Circle SE, Ste. 200
Atlanta, GA 30339
(770) 434-6868


**BURCH PORTER & JOHNSON, PLLC**

*Nathan A. Bicks - with permission*

NATHAN A. BICKS (#10903)
LANI D. LESTER (#35226)
WILLIAM D. IRVINE (#35193)
Attorneys for Defendant Express Scripts
130 North Court Ave.
Memphis, TN 38103
(901) 524-5000


**WOLFF ARDIS, P.C.**

*Daniel Parish - with permission*

PATRICK M. ARDIS (#8263)
DANIEL V. PARISH (#27452)

Attorneys for Plaintiff Acument Technologies
5810 Shelby Oaks Drive
Memphis, TN 38134

And Plaintiff's Co-Counsel
Donald E. Haviland, Jr.
William H. Platt
HAVILAND HUGHES
201 S. Maple Way, Ste. 110
Ambler, PA 19002


**ALLEN, SUMMERS, SIMPSON,**
**LILLIE & GRESHAM, PLLC**


KIRK A. CARAWAY (#18578)
Attorney for Defendant James A. Tumlin, M.D.
80 Monroe Avenue, Suite 650
Memphis, TN 38103
(901) 763-4200

3

**Trista Perkins**

| | |
|---|---|
| **From:** | Kirk A. Caraway <kcaraway@allensummers.com> |
| **Sent:** | Thursday, October 10, 2019 10:50 AM |
| **To:** | Trista Perkins; 'Nathan Bicks'; Bill Dillon; Laura.Shores@arnoldporter.com; Danny Van Horn; Lani Lester; Kate Van Namen; Diana.Comes@butlersnow.com; Will Irvine |
| **Cc:** | Daniel Parish; haviland@havilandhughes.com; platt@havilandhughes.com |
| **Subject:** | 20191010 CARAWAY to TTP RE PERMISSION TO SIGN AGREED ORDER PHV-ACUMENT |

You can sign my name.
    Kirk



Kirk A. Caraway
Allen, Summers, Simpson, Lillie & Gresham PLLC
80 Monroe Avenue, Suite 650
Memphis, Tennessee 38103
Office: (901) 763-4200
Facsimile: (901) 684-1768
Website: www.allensummers.com
Email: kcaraway@allensummers.com
Bio: http://www.allensummers.com/attorneys/kirk-caraway/





\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

NOTICE:  This message contains information that is confidential and/or protected by the attorney-client privilege and/or attorney work product doctrine.  If you believe that it has been sent to you in error, please do not read it.  Please reply to the sender or kcaraway@allensummers.com or contact our firm at (901) 763-4200 and let us know that you have received the message in error.  Then delete it.  Thank you.

---

**From:** Trista Perkins <tperkins@wolffardis.com>
**Sent:** Thursday, October 10, 2019 10:23 AM
**To:** 'Nathan Bicks' <nbicks@BPJLAW.com>; Kirk A. Caraway <kcaraway@allensummers.com>; Bill Dillon <bdillon@taylorenglish.com>; Laura.Shores@arnoldporter.com; Danny Van Horn <Danny.VanHorn@butlersnow.com>; Lani Lester <llester@BPJLAW.com>; Kate Van Namen <Kate.VanNamen@butlersnow.com>;

1

Diana.Comes@butlersnow.com; Will Irvine <wirvine@BPJLAW.com>
**Cc:** Daniel Parish <dparish@wolffardis.com>; Trista Perkins <tperkins@wolffardis.com>; haviland@havilandhughes.com;
platt@havilandhughes.com
**Subject:** 20191010 ALL from TTP RE AGREED ORDER PHV-ACUMENT

Good morning, counsel. Attached is Plaintiff's proposed Agreed Order granting the pro hac vice motions for Haviland and Platt. Please email me your approval, and we will sign by permission and enter it with the Court, forwarding you an attested copy.


Trista T. Perkins, Paralegal
Wolff Ardis, P.C.
5810 Shelby Oaks Drive
Memphis, Tennessee 38134
(901) 763-3336
(901) 202-4024 (Direct)
(901) 763-3376 (Fax)
tperkins@wolffardis.com



**CONFIDENTIALITY NOTICE**

    This electronic transmission (and/or the documents accompanying it) may contain confidential information belonging to the sender which is protected by the attorney-client privilege and/or work product doctrine. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance to the contents of this information is strictly prohibited. If you have received this transmission in error, please immediately notify us by telephone, (901) 763-3336, to arrange for return of the documents.

--
This message has been scanned for viruses and dangerous content by
**E.F.A. Project**, and is believed to be clean.
Click here to report this message as spam.

## Trista Perkins

| | |
|---|---|
| **From:** | Nathan Bicks <nbicks@BPJLAW.com> |
| **Sent:** | Thursday, October 10, 2019 10:37 AM |
| **To:** | Trista Perkins; Kirk A. Caraway; Bill Dillon; Laura.Shores@arnoldporter.com; Danny Van Horn; Lani Lester; Kate Van Namen; Diana.Comes@butlersnow.com; Will Irvine |
| **Cc:** | Daniel Parish; haviland@havilandhughes.com; platt@havilandhughes.com |
| **Subject:** | 20191010 BICKS to TTP RE PERMISSION TO SIGN AGREED ORDER PHV-ACUMENT |

You may sign my name

**From:** Trista Perkins <tperkins@wolffardis.com>
**Sent:** Thursday, October 10, 2019 10:23 AM
**To:** Nathan Bicks <nbicks@BPJLAW.com>; Kirk A. Caraway <kcaraway@allensummers.com>; Bill Dillon <bdillon@taylorenglish.com>; Laura.Shores@arnoldporter.com; Danny Van Horn <Danny.VanHorn@butlersnow.com>; Lani Lester <llester@BPJLAW.com>; Kate Van Namen <Kate.VanNamen@butlersnow.com>; Diana.Comes@butlersnow.com; Will Irvine <wirvine@BPJLAW.com>
**Cc:** Daniel Parish <dparish@wolffardis.com>; Trista Perkins <tperkins@wolffardis.com>; haviland@havilandhughes.com; platt@havilandhughes.com
**Subject:** 20191010 ALL from TTP RE AGREED ORDER PHV-ACUMENT

Good morning, counsel. Attached is Plaintiff's proposed Agreed Order granting the pro hac vice motions for Haviland and Platt. Please email me your approval, and we will sign by permission and enter it with the Court, forwarding you an attested copy.

Trista T. Perkins, Paralegal
Wolff Ardis, P.C.
5810 Shelby Oaks Drive
Memphis, Tennessee 38134
(901) 763-3336
(901) 202-4024 (Direct)
(901) 763-3376 (Fax)
tperkins@wolffardis.com



**CONFIDENTIALITY NOTICE**

This electronic transmission (and/or the documents accompanying it) may contain confidential information belonging to the sender which is protected by the attorney-client privilege and/or work product doctrine. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance to the contents of this information is strictly prohibited. If you have received this transmission in error, please immediately notify us by telephone, (901) 763-3336, to arrange for return of the documents.

## Trista Perkins

| | |
|---|---|
| **From:** | Bill Dillon <bdillon@taylorenglish.com> |
| **Sent:** | Thursday, October 10, 2019 10:29 AM |
| **To:** | Danny Van Horn; Trista Perkins; 'Nathan Bicks'; Kirk A. Caraway; |
| | Laura.Shores@arnoldporter.com; Lani Lester; Kate Van Namen; Diana Comes; Will Irvine |
| **Cc:** | Daniel Parish; haviland@havilandhughes.com; platt@havilandhughes.com; Daniel Brown |
| **Subject:** | 20191010 DILLON to TTP RE PERMISSION TO SIGN AGREED ORDER PHV-ACUMENT |

Fine with Taylor English, You may sign on behalf of Dan Brown for Dr. Tumlin.



**Bill Dillon**
**Taylor English Duma LLP** | 1600 Parkwood Circle, Suite 200, Atlanta, GA 30339
P: 404.640.5934 | bdillon@taylorenglish.com
Website | vCard | LinkedIn

Georgia Legal Awards Litigation Department of the Year

This communication (together with all attachments) may contain privileged or confidential information, and its sender reserves and asserts all rights that may apply to it. If you are not the intended recipient or believe that you have received this communication in error, please do not print, copy, retransmit, disseminate or otherwise use the information. Also, please indicate to the sender that you have received this communication in error and delete the copy you received. If you have not executed an engagement letter with this firm, we do not represent you as your attorney and no duties are intended or created by this communication. Most legal rights have time limits, and this e-mail does not constitute advice on the application of limitation periods unless otherwise so expressly stated.

**From:** Danny Van Horn <Danny.VanHorn@butlersnow.com>
**Sent:** Thursday, October 10, 2019 11:28 AM
**To:** 'Trista Perkins' <tperkins@wolffardis.com>; 'Nathan Bicks' <nbicks@BPJLAW.com>; Kirk A. Caraway <kcaraway@allensummers.com>; Bill Dillon <bdillon@taylorenglish.com>; Laura.Shores@arnoldporter.com; Lani Lester <llester@BPJLAW.com>; Kate Van Namen <Kate.VanNamen@butlersnow.com>; Diana Comes <Diana.Comes@butlersnow.com>; Will Irvine <wirvine@BPJLAW.com>
**Cc:** Daniel Parish <dparish@wolffardis.com>; haviland@havilandhughes.com; platt@havilandhughes.com
**Subject:** RE: 20191010 ALL from TTP RE AGREED ORDER PHV-ACUMENT

Fine with Mallinckrodt. You can sign my name.

**Daniel W. Van Horn**
**Butler Snow LLP**

D: (901) 680-7331 | F: (901) 680-7201
6075 Poplar Avenue, Suite 500, Memphis, TN 38119
P.O. Box 171443, Memphis, TN 38187-1443
Danny.VanHorn@butlersnow.com| vCard | Bio

Twitter | LinkedIn | Facebook | YouTube

**From:** Trista Perkins [mailto:tperkins@wolffardis.com]
**Sent:** Thursday, October 10, 2019 10:23 AM
**To:** 'Nathan Bicks'; Kirk A. Caraway; Bill Dillon; Laura.Shores@arnoldporter.com; Danny Van Horn; Lani Lester; Kate Van Namen; Diana Comes; Will Irvine
**Cc:** Daniel Parish; Trista Perkins; haviland@havilandhughes.com; platt@havilandhughes.com
**Subject:** 20191010 ALL from TTP RE AGREED ORDER PHV-ACUMENT

**Trista Perkins**

| | |
|---|---|
| **From:** | Danny Van Horn <Danny.VanHorn@butlersnow.com> |
| **Sent:** | Thursday, October 10, 2019 10:28 AM |
| **To:** | Trista Perkins; 'Nathan Bicks'; Kirk A. Caraway; Bill Dillon; Laura.Shores@arnoldporter.com; Lani Lester; Kate Van Namen; Diana Comes; Will Irvine |
| **Cc:** | Daniel Parish; haviland@havilandhughes.com; platt@havilandhughes.com |
| **Subject:** | 20191010 VAN HORN to TTP RE PERMISSION TO SIGN AGREED ORDER PHV-ACUMENT |

Fine with Mallinckrodt. You can sign my name.

**Daniel W. Van Horn**
**Butler Snow LLP**

D: (901) 680-7331 | F: (901) 680-7201
6075 Poplar Avenue, Suite 500, Memphis, TN 38119
P.O. Box 171443, Memphis, TN 38187-1443
Danny.VanHorn@butlersnow.com | vCard | Bio

Twitter | LinkedIn | Facebook | YouTube

**From:** Trista Perkins [mailto:tperkins@wolffardis.com]
**Sent:** Thursday, October 10, 2019 10:23 AM
**To:** 'Nathan Bicks'; Kirk A. Caraway; Bill Dillon; Laura.Shores@arnoldporter.com; Danny Van Horn; Lani Lester; Kate Van Namen; Diana Comes; Will Irvine
**Cc:** Daniel Parish; Trista Perkins; haviland@havilandhughes.com; platt@havilandhughes.com
**Subject:** 20191010 ALL from TTP RE AGREED ORDER PHV-ACUMENT

Good morning, counsel. Attached is Plaintiff's proposed Agreed Order granting the pro hac vice motions for Haviland and Platt. Please email me your approval, and we will sign by permission and enter it with the Court, forwarding you an attested copy.

Trista T. Perkins, Paralegal
Wolff Ardis, P.C.
5810 Shelby Oaks Drive
Memphis, Tennessee 38134
(901) 763-3336
(901) 202-4024 (Direct)
(901) 763-3376 (Fax)
tperkins@wolffardis.com



1

ELECTRONICALLY FILED
2019 Oct 16 3:33 PM
CLERK OF COURT

**IN THE CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE**
**FOR THE THIRTIETH JUDICIAL CIRCUIT AT MEMPHIS**

| | |
|---|---|
| **ACUMENT GLOBAL TECHNOLOGIES, INC.,**<br><br>    Plaintiff,<br><br>  v.<br><br>**MALLINCKRODT ARD, INC.,** *et al.,*<br><br>    Defendants. | **DOCKET NO. CT-2275-19**<br><br>DIVISION:<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S RESPONSE TO THE MALLINCKRODT**
**DEFENDANTS' MOTION TO DISMISS**

Plaintiff Acument Global Technologies, Inc. ("Plaintiff" or "Acument"), by and through their undersigned counsel hereby responds to the Defendants Mallinckrodt ARD, Inc.'s and Mallinckrodt plc's (collectively, "Mallinckrodt") Motion to Dismiss.

**INTRODUCTION**

Mallinckrodt seeks the extreme remedy of dismissal *with prejudice* of Acument's Complaint "for lack of standing and failure to state a claim upon which relief can be granted." Mallinckrodt's Motion to Dismiss at 1. Rather than review the averments of the actual Complaint filed against it in this Court, however, Mallinckrodt prefers to liken this case to a "series of cases by Plaintiff's lead counsel complaining about the price of Mallinckrodt's specialty drug, H.P. Acthar Gel ("Acthar")." Mallinckrodt's Mem. of Law and Authorities in Support of Motion to Dismiss Complaint Pursuant to Tennessee Rules 12.02(1) and 12.02(6) ("Mallinckrodt's Mem."). While it is true this case is just one of several cases filed against

Mallinckrodt these other cases were, not just filed by counsel for Acument,[1] but were also file by

the Department of Justice (in a Philadelphia *qui tam* lawsuit unsealed this past summer),[2] the

large national insurer, Humana,[3] and a group of Medicare secondary payors.[4] Mallinckrodt fails

to point out that it has yet to prevail on a motion to dismiss any of these other cases filed against

it in the more than two and one-half years.  Instead, Mallinckrodt has settled.  It settled the

antitrust case brought by the Federal Trade Commission for $100 million and an agreement to

license Synacthen (a synthetic version of Acthar) to a competitor.  *See* Cmplt ¶ 267 (describing

the FTC litigation and settlement); *see also,* FTC Complaint attached to Acument's Complaint at

Exhibit "D".  It also settled the case brought by its competitor alleging antitrust violations similar

to Acument's claims here, for $15 million.  *See* Cmplt. ¶ 257-261 (describing Retrophin

litigation and settlement); *see also*, Retrophin complaint attached to Acument's Complaint at

Exhibit "E".  It settled a securities lawsuit brought by Mallinckrodt investors for $38 million, in

---

[1] Mallinckrodt neglects to point out that the only other dismissal motion it filed that has been ruled upon was **denied** by a Pennsylvania state court on January 8, 2019 in the matter of *Int'l Union of Operating Eng'rs Local 542 v. Mallinckrodt*, No. 2018-14059 (C.C.P. Montco., May 25, 2018)(*Local 542 Action*).  Mallinckrodt filed its Answer to the Local 542 complaint on February 12, 2019.

[2] *See U.S. ex. Rel. Charles Strunck and Lisa Pratta v. Mallinckrodt ARD, Inc., et al.* 2:12-cv-00175-BMS (E.D.Pa.)(Schiller, J.) at Document No. 40 ("*Strunck & Pratta Complaint*"); *U.S. ex. Rel. Scott Clark v. Questcor Pharmaceuticals, Inc.,* 2:13-cv-01776-BMS (E.D.Pa.)(Schiller, J.) at Document 1 ("*Clark Complaint*")(collectively, "*Qui Tam complaints*").  The Department of Justice ("DOJ") chose to intervene in the *qui tam* cases which were consolidated on July 8, 2019. Dkt. No. 70.  The consolidated *qui tam* cases are hereinafter referred as the "*DOJ* case".  Last month, Mallinckrodt chose to settle a portion of the government's claims – those involving kickbacks to doctors, like Dr. Tumlin in this case – for over $15 million.  Mallinckrodt has moved to dismiss the government's remaining (unsettled) claims along a similar timetable as this case.  The motion to dismiss remains pending.

[3] *Humana, Inc. v. Mallinckrodt*, Case No. 2:19-cv-06926 (C.D.Cal. 2019)(*Humana* case) at ECF No. 1.

[4] *MSP Recovery Claims, Series LLC, et al,* Case No. 1:18-cv-00379 (N.D.Ill. Jan. 18, 2018).

which the investors made similar factual allegations to Acument's allegations here.  *See* https://www.streetinsider.com/Corporate+News/Mallinckrodt+%28MNK%29+Announces+Settlement+of+Questcor+%28QCOR%29+Class+Action/10453639.html.  Finally, just law month, Mallinckrodt paid $15.4 million to settle with the federal government a second time in the DOJ case in Philadelphia.  *See* https://www.justice.gov/usao-edpa/pr/drug-maker-mallinckrodt-agrees-pay-154-million-resolve-false-claims-act-allegations.  That settlement covered a portion of Mallinckrodt's unlawful conduct involving kickbacks to doctors to prescribe Acthar, similar to the conduct alleged by Acument against Dr. Tumlin here.  The only relevant fact about these other cases is the fact that none were dismissed on a motion to dismiss; all were settled by Mallinckrodt.  But otherwise focusing on the status of other litigation against Mallinckrodt in other courts is a distraction that does not assist this Court in deciding the pending Motions to Dismiss Acument's Tennessee state law claims.

Acument's Complaint consists of 405 factual and legal averments, covering 87 pages, including 6 Counts under Tennessee law.  In a word, the Complaint is well-pleaded.

Mallinckrodt concedes "the Complaint is lengthy and contains a wide variety of allegations about Defendants…".  Mallinckrodt Mem. at 3.  However, Mallinckrodt fails to address such "variety of allegations", in its Motion to Dismiss.  Instead, Mallinckrodt makes the bald assertion that the Complaint here simply "re-lodges claims and allegations" from Acument's prior lawsuit filed in federal district court in Rockford, Illinois, along with the City of Rockford.  Mallinckrodt hopes this Court will gloss over the fact that Acument's Complaint here is as long as the Complaint jointly filed with the City of Rockford, even though that case involved an entirely different plaintiff and alleged 15 separate causes of action.  *See* Second Amended Complaint, ECF No. 98, filed in *City of Rockford v. Mallinckrodt ARD, Inc.*, No. 17-cv-50107

(N.D.Ill. Apr. 6, 2017) (the "*Rockford Action*").

In other words, Acument's Complaint here is different, materially different. Mallinckrodt's avoidance of such material factual and legal differences should give this Court pause in considering Mallinckrodt's request to dismiss the case with prejudice, **unlike** the Court in the *Rockford Action*. *City of Rockford v. Mallinckrodt ARD, Inc.*, 360 F. Supp. 3d 730 (N.D. Ill. 2019)(wherein the Illinois Court "grant[ed] plaintiffs leave to replead within 45 days of the date of this order to correct the deficiencies as noted in this opinion.")[5]  Rather than re-plead in Rockford, Acument chose to re-plead in Tennessee, as of right,[6] where its business is located, its beneficiary was treated and prescribed Acthar by Defendant Dr. Tumlin, and the Express Scripts Defendants have their principle place of business.  Due to Acument's new pleading, there is no legal basis for Defendants to cite to the *Rockford Action* Court's prior dismissal Order as legal grounds for dismissing the entirely different Complaint filed in this Court.

When judged on its merits, Acument's Complaint passes judicial muster under the Tennessee Rules of Court.  The state statutory causes of action for antitrust, monopolization (Count I) and price fixing (Count II), and consumer fraud (Count III), adequately plead all the prerequisites under Tennessee law.  (Because the current Complaint pleads no claim for federal

---

[5] To the extent this Court were to find Acument's complaint deficient in any material respect, leave to replead should be granted. *Jones v. Prof'l Motorcycle Escort Serv., LLC*, 193 S.W. 3d 564, 569 (Tenn. 2006)("leave is to be freely given when justice so requires").

[6] Acument took a voluntary dismissal as of right under Federal Rule 41(a), which dismissal was granted by the Federal Court after giving all Defendants the opportunity to object. *Rockford Action*, EFC No. 201 ("Before the court is plaintiff Acument's notice of voluntary dismissal without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)[ECF No. 195]. Defendants did not file an objection by the deadline in the court's order taking Acument's notice under advisement [ECF No. 197].  Accordingly, there being no objection, Acument is terminated from this case.")

antitrust, there is no legal basis for Defendants' repeated challenge under the *Illinois Brick*

"indirect purchaser" rule.)[7]  To the extent the *Rockford Action* Court provided guidance as to

Acument's Tennessee state law claims, such guidance was heeded, and substantial factual

averments were added to Acument's Complaint to address the *Rockford*  Court's concerns.  The

current Complaint now addresses all the concerns of the Court in the *Rockford Action* as to these

state law claims.  Mallinckrodt does not demonstrate otherwise.

Instead, Mallinckrodt seeks to interject extraneous factual issues at the pleading stage –

beyond the four corners of the Complaint – which should be deferred to another day, after

discovery has been had by all parties.  *E.g.*, Mallinckrodt Mem. at 3 (alleging various

"professionals …must have believed that the [Acthar] was effective and approved the payment

of the price being paid").[8]  As the Court well knows, the Plaintiff is the master of its Complaint,

and ***its*** factual averments – not those of the Defendants – must be accepted as true at this

juncture.  Defendants will have their opportunity to prove an alternate set of facts, after

---

[7] Both Mallinckrodt and Express Scripts Defendants erroneously repeat their challenge to Acument's "standing" to sue under the federal antitrust laws based upon the "indirect purchaser" rule and a lack of direct "causation", despite the fact no federal claim has been alleged here. *E.g.*, Mallinckrodt Mem. at 2 ("These two [antitrust] claims are virtually identical to Acument's failed federal antitrust claims under the Sherman Act in the *Rockford Action*."); Express Scripts Mem. at 8 ("As in the Illinois Litigation, Plaintiff's antitrust claims should be dismissed because its purported overpayment for Acthar is to attenuated from the alleged anti-competitive conduct.")

[8] Mallinckrodt cites to paragraphs 307-308 of Acument's Complaint as alleged support for its assertion about the purported "beliefs" of such other "professionals".  However, these averments say nothing about the conduct of others; to the contrary, they allege clearly that "Acument suffered antitrust injury cognizable under Tennessee law because it was charged and paid an artificially inflated and fixed price for the Acthar based upon the inflated AWP for Acthar as set by Mallinckrodt and the Express Scripts Defendants, and as charged by Dr. Tumlin through his submission of the prescription through the ASAP program."

discovery.[9]

For these reasons, Mallinckrodt's Motion to Dismiss should be denied.

## RELEVANT FACTUAL ALLEGATIONS

In its recitation of the factual allegations of Acument's Complaint, Mallinckrodt presents a confused, even distorted picture of the factual predicate for Acument's Tennessee state law claims.  Distilled to its core, however, Mallinckrodt accurately points out – what it has conceded in its prior Answers filed in other courts – all of the following material facts relevant to this case:[10] (1) "Acthar is the only therapeutic ACTH product sold in the United States"[11]; (2) Mallinckrodt acquired the rights to Acthar in 2001 for $100,000, and thus has "effectively had its ACTH monopoly since that time"[12]; (3) Acthar is a specialty pharmaceutical distributed through

---

[9] It is curious that Mallinckrodt undertakes to argue a factual position in its brief on behalf of its co-Defendant, Dr. Tumlin, that he himself has not proffered in his separate Motion to Dismiss.  *Compare* Mallinckrodt Mem. at 3 (the patient's physician … must have … approved the payment of the price being paid") *with* Mem. of Law in Support of Defendant James A. Tumlin, M.D.'s Motion to Dismiss Complaint ("*Tumlin Mem.*") at 2 ("Dr. Tumlin simply has no role in the … pricing … of the drug.  Like the Plaintiff, Dr. Tumlin [is] powerless to influence [Acthar's price] level.")  Such factual disputes between the Defendants underscore why the Rules require that only the *Plaintiff's alleged facts* be deemed true on a motion to dismiss.

[10] After losing its Motion to Dismiss the antitrust claims in the *Rockford Action*, and a losing subsequent dismissal motion as to consumer fraud claims filed against it in Pennsylvania state court in the *Local 542 Action*, Mallinckrodt was forced to file Answers to these Complaints, admitting the above-stated facts.  While Acument does not seek to convert the instant Motions to Dismiss into motions for summary judgment, by interjecting material outside the four corners of its Complaint, this Court can and should take judicial notice of the Mallinckrodt's judicial admissions contained in its Answers.  (The Mallinckrodt Answer filed in the *Rockford Action* is available at ECF No. 204.)

[11] Mallinckrodt Mem. at 3.

[12] *Compare* Mallinckrodt Mem. at 3-4 (citing Acument Cmplt at ¶ 4), *with Rockford Action* Answer at ¶¶ 3, 23, 46.

specialty pharmacy distributors, and is not sold in retail pharmacies[13]; (4) in 2007, Mallinckrodt

"announced a new distribution strategy for Acthar",[14] involving the "implementation of actual,

written agreements, signed by both Mallinckrodt and Express Scripts, by which Express Scripts

was granted exclusive specialty distribution of Acthar in exchange for its agreement to allow

Mallinckrodt to raise the prices of Acthar to exorbitant, non-competitive levels"[15]; (5) as part of

this "new strategy", Mallinckrodt and Express Scripts created the ASAP program and the Acthar

Start Form attached to Acument's Complaint as Exhibit "A"[16]; (6) in 2013, Mallinckrodt

acquired Synacthen, a synthetic version of Acthar and a competitive product to Acthar.[17]

These core factual averments formed the basis of the Court's decision in the *Rockford*

*Action* denying Mallinckrodt's Motion to Dismiss for failure to state both federal and state

antitrust claims.  *See generally*, *City of Rockford v. Mallinckrodt ARD, Inc.*, 360 F. Supp. 3d 730

(N.D. Ill. 2019).  While the federal court dismissed Acument's state law claims, without

prejudice and with leave to re-plead, due to "deficiencies associated with Acument's proper party

status" under federal law,[18] the court found that the above facts, combined with other facts

---

[13] *Compare* Mallinckrodt Mem. at 3 (citing Acument Cmplt at ¶ 9), *with Rockford Action* Answer at ¶¶ 6, 46 7.

[14] *Compare* Mallinckrodt Mem. at 4 (citing Acument Cmplt at ¶ 60), *with Rockford Action* Answer at ¶¶ 7, 90.

[15] *Compare* Mallinckrodt Mem. at 4 (citing Acument Cmplt at ¶ 12), *with Rockford Action* Answer at ¶ 131.

[16] *Compare* Mallinckrodt Mem. at 4 (citing Acument Cmplt at ¶¶ 78-79), *with Rockford Action* Answer at ¶¶ 33, 54.

[17] *Compare* Mallinckrodt Mem. at 5 (citing Acument Cmplt at ¶ 266), *with Rockford Action* Answer at ¶¶ 144, 150.

[18] "To reiterate this opinion's section on the application of AGC to **Acument's federal antitrust claims**, the SAC lacks sufficient allegations to allow the court to determine how Acument's injuries in Tennessee are connected to defendants' conduct. Thus, the court grants defendants' motions to dismiss Count VIII as it pertains to Acument. The court grants plaintiffs leave to

deemed true at the pleading stage, were sufficient to state statutory antitrust claims under both

federal and state law:

> Rockford alleges that defendants conspired to keep prices high, restrict output,
> and prevent competition from entering the market. The "new strategy" reduced
> the number of wholesale distributors of Acthar from three to one, thereby
> restricting patient's access to Acthar, and employed Express Scripts' market
> power not to push for lower-cost alternatives. SAC ¶¶ 48, 103. The ASAP thus
> allowed Mallinckrodt to maintain its dominant monopoly power in the ACTH
> drug market, maintain prices at artificially high levels, and exclude less
> expensive competitive products from the ACTH drug market.  The other focus of
> the SAC is the exclusion of competitive alternatives to the market and highlights
> the Synacthen Acquisition. Because Retrophin planned to bring Synacthen to
> market as the first viable competitor to Acthar, keeping Synacthen from the
> United States market resulted in complaints filed by the FTC and Retrophin for
> depriving the market of a lower-cost alternative with  no procompetitive
> justifications. *Id*. ¶ 151. The elimination of competition with no procompetitive
> justification is the type of conduct that the antitrust laws were designed to guard
> against. **Consequently, the court finds that Rockford's assertions of
> anticompetitive conduct are sufficient to adequately plead the
> "unreasonable restraint of trade" prong of Rockford's § 1 claim**.

*Id*. at 754-55 (emphasis added)(citations omitted); *see also, id*. at 756-57 ("[A]t this stage, the

court finds that Rockford has plausibly alleged that defendants' conduct was anticompetitive…").

The new Complaint filed by Acument in this Court included the same core facts, plus

additional facts relevant to its standing to sue as an indirect purchaser under the Tennessee

antitrust laws, as well as additional grounds for its consumer fraud claims in light of the DOJ

case unsealed last summer.  Specifically, Acument included an entirely new section titled

"Acument's payments for Acthar in Tennessee for Long-Term Treatment of iMN, and Antitrust

Injury.", as well as Acument Cmplt. at ¶¶ 306-312.  These averments – completely ignored by

Mallinckrodt in arguing Acument lacks standing (Mallinckrodt Mem. at 6-8) – explain that

"Acument's prescription drug benefits were administered by Express Scripts" through 2011,

---

replead to correct the deficiencies associated with Acument's "proper party" status concerning its
state-law claims."  *Id*. at 760.

when Acument's beneficiary was started on Acthar by Dr. Tumlin.  Acument Cmplt. at ¶ 306; *see also, id*. at 24 ("In July 2011, Medco was acquired by Express Scripts. … As of that date – which was the same year that Acument had one of its beneficiaries placed on Acthar – Express Scripts was Acument's PBM").  This critical fact was <u>not presented</u> to the Court in the *Rockford Action*.  *See generally*, *Rockford Action*, ECF No. 98 (Second Amended Complaint).  It was only after 2011 that "Acument had moved to CVS/Caremark for its PBM services."  *Id*.

In addition, Acument's Complaint here describes in detail the direct role Dr. Tumlin had in causing Acument's economic harm.  *See, e.g.,* Cmplt. at ¶¶ 25, 45 (describing Dr. Tumlin's history with the Acument's beneficiaries); 44, 75, 220, 278-305, 310 (Dr. Tumlin is employed as a "Key Opinion Leader" or KOL for Mallinckrodt and receives hundreds of thousands of dollars to promote the sale Acthar); 175, 177-178, 312, (Dr. Tumlin prescribes Acthar for nephrotic syndrome based on limited data); 307, 309, 312, 319, 379, 383-387, 395-396 (Acument is charged inflated prices due to Dr. Tumlin prescribing Acthar for an Acument beneficiary); 308 (Dr. Tumlin prescribes twice the amount of Acthar for Acument's beneficiary); 332, 334, 345 (Dr. Tumlin conspired with Defendants to promote off-label uses of Acthar); 346, 376-379,  (Dr. Tumlin's alleged unfair and deceptive acts or practices).

Nowhere does Mallinckrodt address these new facts in its argument for dismissal.  As a result, with these additional facts accepted as true, as they must be at this stage, Acument's Complaint demonstrates Acument's standing to sue and the bases for its Tennessee state law claims

## <u>ARGUMENT</u>

## I.     STANDARDS

A Motion to Dismiss under Rule 12.02(6) is "designed to test the sufficiency of the

complaint, and dismissal is warranted only when **no set of facts would entitle the plaintiffs to**

**relief."** *Sherwood v. Microsoft Corp.*, No. M2000-01850-COA-R9-CV, 2003 Tenn. App.

LEXIS 539, at *6 (Ct. App. July 31, 2003) (citing *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71

S.W.3d 691, 696 (Tenn. 2002)(emphasis supplied)); *see also, Crews v. Buckman Labs. Int'l, Inc.*,

78 S.W.3d 852, 857 (Tenn. 2002); see *Lanier v. Rains*, 229 S.W.3d 656, 660 (Tenn. 2007); *Doe*

*v. Sundquist*, 2 S.W.3d 919, 922 (Tenn. 1999); *Pemberton v. Am. Distilled Spirits Co.*, 664

S.W.2d 690, 691 (Tenn. 1984); *Fuerst v. Methodist Hosp. S.*, 566 S.W.2d 847, 848 (Tenn. 1978);

*Ladd v. Roane Hosiery, Inc.*, 556 S.W.2d 758, 759-60 (Tenn. 1977).

In considering a motion to dismiss, courts "'must construe the complaint liberally,

presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable

inferences.'" *Tigg v. Pirelli Tire Corp.*, 232 S.W.3d 28, 31-32 (Tenn. 2007) (quoting *Trau-Med*,

71 S.W.3d at 696); *Leach v. Taylor*, 124 S.W.3d 87, 92-93 (Tenn. 2004); *Stein v. Davidson Hotel*

*Co.*, 945 S.W.2d 714, 716 (Tenn. 1997); *Bellar v. Baptist Hosp., Inc.*, 559 S.W.2d 788, 790

(Tenn. 1978).

A Rule 12.02(6) motion challenges only the legal sufficiency of the complaint, not the

strength of the plaintiff's proof or evidence.  *Highwoods Props., Inc. v. City of Memphis*, 297

S.W.3d 695, 700 (Tenn. 2009); *Willis v. Tenn. Dep't of Corr.*, 113 S.W.3d 706, 710 (Tenn.

2003); *Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A.*, 986 S.W.2d

550, 554 (Tenn. 1999); *Sanders v. Vinson*, 558 S.W.2d 838, 840 (Tenn. 1977).  The resolution of

a Rule 12.02(6) motion to dismiss is determined by an examination of the pleadings alone.

*Leggett v. Duke Energy Corp.*, 308 S.W.3d 843, 851 (Tenn. 2010); *Trau-Med of Am., Inc. v.*

*Allstate Ins. Co.,* 71 S.W.3d 691, 696 (Tenn. 2002); *Cook ex rel. Uithoven v. Spinnaker's of*

*Rivergate, Inc.*, 878 S.W.2d 934, 938 (Tenn. 1994*); Cornpropst v. Sloan*, 528 S.W.2d 188, 190

(Tenn. 1975)(overruled on other grounds by *McClung v. Delta Square Ltd. P'ship*, 937 S.W.2d 891, 899-900 (Tenn. 1996)).  A defendant who files a motion to dismiss "'admits the truth of all of the relevant and material allegations contained in the complaint, but . . . asserts that the allegations fail to establish a cause of action.'"  *Brown v. Tenn. Title Loans, Inc*., 328 S.W.3d 850, 854 (Tenn. 2010) (quoting *Freeman Indus., LLC v. Eastman Chem. Co.,* 172 S.W.3d 512, 516 (Tenn. 2005)); see *Edwards v. Allen*, 216 S.W.3d 278, 284 (Tenn. 2007); *White v. Revco Disc. Drug Ctrs., Inc*., 33 S.W.3d 713, 718 (Tenn. 2000); *Holloway v. Putnam Cnty*., 534 S.W.2d 292, 296 (Tenn. 1976).

By operation of Rule 8 of the Tennessee Rules of Civil Procedure, Tennessee follows a liberal, notice pleading standard, *see Leach*, 124 S.W.3d at 92-93, which recognizes that the primary purpose of a pleading is to provide notice of the issues presented to the opposing party and the court.  *Abshure v. Methodist Healthcare-Memphis Hosps*., 325 S.W.3d 98, 103 (Tenn. 2010); *see also* Robert Banks, Jr. & June F. Entman, Tennessee Civil Procedure § 5–4(a) (3d ed. 2009) ("The essential function of the pleadings is simply to give notice of a claim or defense. History, as Professors Wright and Miller point out, has shown that the pleadings cannot successfully do more.") (footnotes omitted).  Our state's notice pleading standard is firmly established and longstanding; well before the Tennessee Rules of Civil Procedure were adopted, the Tennessee Supreme Court recognized that "[t]he object and purpose of any pleading is to give notice of the nature of the wrongs and injuries complained of with reasonable certainty, and notice of the defenses that will be interposed, and to acquaint the court with the real issues to be tried." *Hammett v. Vogue, Inc.,* 165 S.W.2d 577, 579 (Tenn. 1942).

As discussed herein, Acument's 405 paragraph, 91-page Complaint easily satisfies the pleading standards of this state as to all state-law causes of action against Mallinckrodt.

## II.     THE ELEMENTS OF ACUMENT'S CLAIMS AGAINST MALLINCKRODT ARE PROPERLY PLEAD.

### A.     Acument Has Standing to Sue for its Antitrust Claims Against Mallinckrodt under the Tennessee Trade Practices Act, Tenn. Code Ann. § 47-25-101, et seq. (Counts I and II)

The Tennessee Trade Practices Act, Tenn. Code Ann. Section 47-25-101, *et. seq.* (the "TTPA") is intended "to protect commerce and the consuming public." *Leggett v. Duke Energy Corp.*, No. W2007-00788-COA-R3-CV, 2008 Tenn. App. LEXIS 684, at *7-8 (Ct. App. Oct. 29, 2008).  In Tennessee, "indirect purchasers may bring an action for an injury caused by an alleged violation of the TTPA."  *Id.* (distinguishing *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 747, 97 S. Ct. 2061, 52 L. Ed. 2d 707 (1977))(citing *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 517 (Tenn. 2005)).

As alleged in the Complaint, Acument was a purchaser of Mallinckrodt's Acthar medication.  Cmplt. ¶¶ 16-17, 25.  Mallinckrodt does not deny this fact; nor could it.  Its records (along with the records of its co-defendants, Express Scripts and Dr. Tumlin) will plainly show Acument's payments of $894,617.75 for Acthar once discovery is permitted.

Acument's Tennessee-domiciled beneficiary received Acthar directly from the Defendants via the exclusive distribution network designed and implemented by Mallinckrodt and the Express Scripts Defendants in 2007.  Cmplt. ¶¶ 25, 28, 58-61, 78-80, 98-99, 107. Acthar was shipped directly from Express Scripts' facility (most likely here in Memphis) to the home of Acument's beneficiary where it was self-injected.  Cmplt ¶ 90-91, 98-99, 101-105.  Mallinckrodt provided "Home Injection Training Services" ("HTTS") directly to Acument's beneficiary. Cmplt. ¶ 82.

Dr. Tumlin prescribed Acthar to Acument's beneficiary.  Cmplt. ¶ 25.  These prescriptions – through the Acthar Start Form attached to the Complaint as Exhibit "A" – set in

motion a chain of activity which directly led to Acument's beneficiary obtaining Acthar at home in Tennessee. Mallinckrodt and Express Scripts' Memphis-based operation communicated directly with Acument's beneficiary about such prescription, and the inflated payments therefor. Cmplt. ¶¶ 25, 28, 61, 78-107.

In 2011, Acument's prescription drug benefits were managed by Medco, which became part of Express Scripts that same year. As a result, Acument had a direct relationship with the Express Scripts Defendants at the time its beneficiary was placed on Acthar pursuant to the scheme alleged herein. Unlike the prior complaint filed in the *Rockford Action*, the Complaint here alleges "Acument's prescription drug benefits were administered by Express Scripts" through 2011, when Acument's beneficiary was started on Acthar by Dr. Tumlin. Acument Cmplt. at ¶ 306; *see also, id*. at 24 ("In July 2011, Medco was acquired by Express Scripts. … As of that date – which was the same year that Acument had one of its beneficiaries placed on Acthar – Express Scripts was Acument's PBM"). Because this critical fact was <u>not presented</u> to the Court in the *Rockford Action*, it directly addresses the *Rockford* Court's concerns about Acument's standing under *AGC*. It was only after 2011 that "Acument had moved to CVS/Caremark for its PBM services." *Id*. Consequently, Acument alleges it had a direct relationship with Express Scripts from inception, when its beneficiary was started on Acthar by Dr. Tumlin. That direct relationship undeniably confers standing to sue on Acument.

Even after Acument transitioned its prescription drug benefit to CVS/Caremark, a competitor PBM to Express Scripts, the other aspects of its direct relationship with Express Scripts and Mallinckrodt remained the same. The Acthar prescribed by Dr. Tumlin to Acument's beneficiary in 2015, and paid for by Acument in 2015 and 2016, was delivered directly to the Acument beneficiary via the exclusive distribution of Express Scripts' CuraScript.

The prescription was managed by and through the ASAP program owned and controlled by Mallinckrodt and operated by Express Scripts' UBC.  The only change in 2015 was the method of payment: payments were now directed to the Defendants through CVS/Caremark, as opposed to Express Scripts.  While Express Scripts has argued this change in payment processing "break(s) the chain of causation in that links the alleged conduct by Express Scripts to the purported damages sustained by Plaintiff", Express Scripts Mem. at 2, such agreement fails to account or the fact that Tennessee's antitrust statute only applies to *indirect* purchases.  By definition, there is always an intermediary between the plaintiff and the antitrust defendant.  Here, that intermediary is CVS/Caremark in 2015.  And despite the existence of such intermediary, Acument suffered antitrust harm due to the conduct of the Defendants.  The amount charged by Defendants for the Acthar (and paid by Acument to Defendants via CVS/Caremark) was based upon the inflated AWPs as set by Mallinckrodt and Express Scripts.  The inflated payments made by Acument simply travelled through its PBM to the Defendants.  That Acument's inflated payments for Acthar were indirectly made does not undermine its standing under the TTPA, it confirms Acument's status as an indirect purchaser for whom the Tennessee antitrust law exists.

At this early stage in the litigation, and taking all the factual allegations set forth in the Complaint as true, Acument has alleged standing to sue all Defendants, by virtue of its direct and indirect relationships with the corporate Defendants in 2011 and 2015/2016, and direct contacts with Dr. Tumlin at all times.  Mallinckrodt's arguments against standing ignore the facts of the Complaint, and Tennessee law concerning indirect purchasers.

In seeking dismissal of Acument's Complaint, with prejudice and without leave to re-plead, Mallinckrodt argues that this Court **should adopt** the federal Supreme Court decision in

*Assoc. Gen. Contractors of Cal. Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519 (1983)("*AGC*"), as it pertains to the standards for standing to sue under the federal antitrust law. However, Mallinckrodt asks this Court to be the first Tennessee state court in the thirty-six (36) years since *AGC* was decided to adopt the *AGC* Court's standing rules for antitrust claims brought under the TTPA. Mallinckrodt Mem. at 7 (conceding that "Tennessee state courts have yet to expressly adopt *AGC*").[19]  Mallinckrodt grounds its request in a rational cobbled from a 1976 decision of the Tennessee Supreme Court – 7 years before *ACG* – wherein the Court simply stated that "the standing doctrine" is used to determine whether a plaintiff "is 'properly situated to prosecute the action.'". *Id.* (*citing ACLU v. Darnell*, 195 S.W.2d 612 (Tenn. 2006)(further *citing Knierim v. Leatherwood*, 542 S.W. 2d 806, 808 (Tenn. 1976)).

*Darnell* did not involve any claims for antitrust[20]; neither did *Knierim*.[21]  Instead, these decisions were directed at general principles of standing to sue in court, *ie*., whether a plaintiff has alleged injury in fact. Standing to sue is distinct from antitrust standing, to which *AGC* was addressed. For Mallinckrodt to conflate the two distinct standing principles in an effort to have this Court do what no other Tennessee court has done before it speaks volumes about the weakness of its legal position that Acument lacks standing to sue as either direct or indirect purchaser under the Tennessee antitrust laws. If the Tennessee Supreme Court wished to adopt *AGC* it could have done so, in *Darnell* or at any other opportunity over the last few decades.

---

[19] Mallinckrodt is forced to try to point out how *other courts* in *other states* have adopted *AGC*. Mallinckrodt Mem. at 7, n. 2 (identifying "a number of state courts [which] have expressly adopted AGC", but without any legal support for such a sweeping assertion). It matters only to Mallinckrodt's Motion to Dismiss that the Tennessee courts have <u>not</u> adopted *AGC*.

[20] *Darnell* involved "whether the Chancellor erred by refusing to declare Senate Joint Resolution 31 unconstitutional and by refusing to enjoin the Secretary of State from placing a proposed amendment to the Tennessee Constitution on the November 7, 2006 ballot for a ratification vote." 195 S.W.2d at 615.

[21]

Mallinckrodt argues that "Plaintiff's alleged injury, if any, is indirect and attenuated."
Mallinckrodt Mem. at 7.  But, nowhere does Mallinckrodt cite any Tennessee antitrust case
finding a lack of standing to sue for an indirect purchaser, like Acument.  The best Mallinckrodt
can do is cite the *Rockford Action*, which dismissed Acument's federal claim for lack of standing
based on *AGC*, and with express leave to replead.  The Tennessee case law expressly finds that
indirect purchasers, like Acument, have standing to sue.  *See, e.g., Sherwood, supra*; *Leggett,
supra.*

It is remarkable that in arguing that Acument lacks standing to sue as an indirect
purchaser Mallinckrodt fails to mention, let alone discuss, any of the decisions of the Tennessee
appellate courts.  For instance, the Court of Appeals in *Sherwood v. Microsoft Corp.*, 2003 Tenn.
App. LEXIS 539 (July 31, 2003) reviewed the Supreme Court's decision in *Illinois Brick*
(adopting the "indirect purchasers" role for federal antitrust claims), and the decisions of other
courts around the country adopting *Illinois Brick* repealers, and unambiguously held as follows:

> The Tennessee act includes no section directing the courts' interpretation. More
> specifically, **the Tennessee legislature has not included any reference to federal
> antitrust law and federal interpretations of that law.** Consequently, the [federal] cases
> listed above are useful primarily to distinguish their analysis from the one appropriate in
> this case. More relevant to our inquiry, although still only persuasive authority, are those
> decisions by other courts that do not depend upon either an *Illinois Brick* repealer or
> mandatory direction on interpretation.
>
>              ***
>
> While decisions from other states provide insight into the issues involved, our decision
> must be based on Tennessee's statute. That statute makes unlawful all arrangements
> tending to lessen competition in the importation or sale of imported and domestic articles
> or tending to affect the price "to the producer or **consumer**" of such goods. *Tenn. Code
> Ann.* § 47-25-101 (emphasis added). Similarly, price fixing agreements to sell and market
> products manufactured in this state or imported into it to any producer or **consumer** at
> below cost, to the injury of free competition, are also against public policy, unlawful, and
> void. Tenn. Code Ann. § 47-25-102 (emphasis added).
>
> In addition to criminal sanctions, the law provides a civil remedy to " Any person who is
> injured or damaged by such arrangement." Tenn. Code Ann. § 47-25-106. Unlike the

federal statute and many state statutes modeled thereon, Tennessee's statute has never included the "any person injured in his business or property" language. Combined with the use of the word "consumer" in Tenn. Code Ann. §§ 47-25-101 and -102, the statute clearly reflects an intent to protect and provide a remedy to individuals who are the ultimate consumers.

\*\*\*

While the purpose of the federal antitrust statutes is to protect competition and commerce, the state act's purposes are to protect both commerce and the consuming public. It is clear that the legislature intended that consumers, or ultimate purchasers, of goods be provided a remedy for any injury, including higher prices, sustained due to the prohibited anticompetitive conduct. There is no basis to presume that the legislature intended to protect only those consumers who purchased directly from the violator. There is clear intent to the contrary. **We hold that indirect purchasers are "persons" who may bring an action for an injury caused by violation of the TTPA.**

*Sherwood*, 2003 Tenn. App. LEXIS 539 at * 93, 97-99 (**emphasis added**).  In *Freeman Indus., LLC v. Eastman Chem. Co.*, 2004 Tenn. App. LEXIS 321 at * 12 (May 18, 2004), *rev'd on other grounds*, 172 S.W.3d 512 (Tenn. 2005), the Court of Appeals found "the *Sherwood* opinion, authored by Patricia J. Cottrell, to be an excellent and exhaustive study of the evolution of antitrust law in this state and a correct interpretation of the TTPA…". The *Freeman* Court then echoed the *Sherwood* Court's finding that "the TTPA *does* apply to indirect purchasers". *Id*. at *24 (emphasis in original).

Based on these uncontroverted, Tennessee precedents, construing the TTPA to apply to indirect purchasers, like Acument, Mallinckrodt's arguments that Acument lacks standing to sue under the TTPA based on *AGC* should be rejected, especially in light of the additional factual averments contained in Acument's pleading after the voluntary dismissal was taken from the *Rockford Action*.

**B.     Acument Has Properly Stated Claims for Monopolization and Price Fixing under Tennessee Trade Practices Act, Tenn. Code Ann. § 47-25-101, et seq. (Counts I and II)**

The TPPA provides states:

All arrangements, contracts, agreements, trusts, or combinations between persons or corporations made with a view to lessen, or which tend to lessen, full and free competition in the importation or sale of articles imported into this state, or in the manufacture or sale of articles of domestic growth or domestic raw material, and all arrangements, contracts, agreements, trusts, or combinations between persons or corporations designed, or which tend, to advance, reduce, or control the price or the cost to the producer or the consumer of any such product or article, are declared to be against public policy, unlawful, and void.

*Tenn. Code Ann. Section 47-25-101.*

To state a claim under the Tennessee antitrust law, a plaintiff must allege anticompetitive conduct which affects Tennessee trade or commerce to a "substantial degree." *Freeman Industries, LLC v. Eastman Chemical Co*., 172 S.W.3d 512, 523 (Tenn. 2005). The Supreme Court in *Freeman* distinguished "conduct" from "effect," stating that "[t]he focus under the substantial effects standard . . . is not on the anticompetitive conduct itself but on the effects of the conduct on Tennessee commerce." *Id*. at 524. "[T]he test is pragmatic, turning upon the particular facts of the case . . . . The anticompetitive conduct, however, need not threaten the demise of Tennessee businesses or affect market prices to substantially affect intrastate commerce." *Id*. at 523-24.[22]

Here, Mallinckrodt concedes that the alleged anticompetitive conduct at issue affected Tennessee trade or commerce. So, this Court need not dwell on the issue.

---

[22] While the *Freeman* court dismissed an indirect purchaser's claims against a business with its principal place of business in Tennessee, the plaintiff failed to allege that any sales of the relevant product took place in Tennessee, only that the defendant, located in Tennessee, had orchestrated the conspiracy from Tennessee. *Id.* at 523-24. In contrast, Acument alleges that both it, and its beneficiary, are located in Tennessee, along with Dr. Tumlin and the Express Scripts Defendants. As a result, substantial sales of Acthar took place in Tennessee, warranting the application of Tennessee antitrust laws to the conduct at issue. In so alleging, Acument's claims fall squarely within the ambit of the TTPA. *See, e.g., In re Wellbutrin XL Antitrust Litig*., 260 F.R.D. 143, 166 (E.D.Pa. 2009)(finding "the amended complaint contains facts that 'raise a reasonable expectation that discovery will reveal evidence of' a substantial effect on the Tennessee economy sufficient to prove a claim under that state's antitrust law.")

Instead, Mallinckrodt argues that dismissal of Acument's claim for monopolization is warranted for three other reasons: (1) Plaintiff allegedly "fail[s] to allege a relevant market", (2) Plaintiff allegedly "concedes that there is no monopoly", and (3) "the alleged improper conduct is not tied to the maintenance of market power".  Mallinckrodt Mem. at 8.  For these reasons, Mallinckrodt seeks dismissal of Acument's monopolization claim under the TTPA.  However, for reasons unknown to Acument, Mallinckrodt relies almost exclusively on federal precedent, construing federal antitrust law, applying stringent federal pleading standards[23], in seeking dismissal of Plaintiff's Tennessee state law claim as improperly plead.  However, under Tennessee law, Plaintiff's TTPA claim for monopolization is properly pleaded.

Mallinckrodt's lone Tennessee citation is to *Duke v. Browning-Ferris Indus. of Tenn., Inc.*, wherein the Court held, "[i]n order to establish a claim for monopolization, a plaintiff must show '(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident.'"  2006 U.S.Dist. LEXIS 355 at *13 (May 31, 2006)(citation omitted).  Importantly, the *Duke* Court also held that "[m]onopoly power is 'the power to control prices or exclude competition.'"  *Id*. at *14 (citation omitted).  Consequently, the *Duke* Court held, "in order to succeed on his claim, Mr. Duke must show that BFI has 'engaged in improper conduct that has or is likely to have the effect of

---

[23] Importantly, when given the opportunity to adopt the federal pleading standards set forth in the United States Supreme Court's decisions in *Bell Atlantic v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed. 2d. 929 (2007) and *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed. 868 (2009) to the "proper standard for Tennessee courts to apply in ruling on a Rule 12.02(6) motion to dismiss, the Tennessee Supreme Court declined.  *Webb v. Nashville Area Habitat for Humanity, Inc.* 346 S.W. 3d 422 (Tenn. 2011).  As a result, Tennessee's liberal notice pleading standard remains the standard in this Court, rendering federal court decision apply different pleading standards in aposite.

controlling prices or excluding competition, thus creating or maintaining market power.'" *Id.*

Here, Acument has adequately pleaded a claim for monopolization under the *Duke* Court's standard. Acument alleges at various points in the Complaint, and in various ways, that "[t]he anticompetitive scheme alleged herein sought to maintain and enhance Mallinckrodt's monopoly power in the U.S. market for adrenocorticotropic hormone (ACTH) drugs…". Cmplt. at ¶ 2; *see also*, Cmplt. at ¶¶. The Complaint makes the clear distinction that "[t]his case does not seek to challenge the lawfulness of Mallinckrodt's monopoly. It seeks to challenge the lawfulness of Mallinckrodt's exercise of monopoly power in conjunction with its co-conspirators, by taking actions to maintain and enhance that monopoly power … in violation of Tennessee antitrust laws." *Id.* at ¶ 5; *see also, id.* at ¶¶ 7-8. The Complaint devotes an entire section titled, "Acthar Distribution: Mallinckrodt Adopts a 'New Strategy' to Restrict Acthar Distribution to Maintain and Enhance its Monopoly Power over Acthar", to the issue of the New Strategy and how that enhanced Mallinckrodt's monopoly power. *See* Cmplt. at ¶¶ 12, 58-107. Yet, Mallinckrodt examines none of the section's detailed allegations in arguing a "failure to plead". The last averment summarizes Plaintiff's claim as follows:

> Mallinckrodt leveraged and enhanced its monopoly power by limiting the distribution of its sole specialty drug to just one specialty pharmacy distributor, CuraScript, and employing as its agents, Express Scripts, Accredo and UBC, along with CuraScript, to coordinate all aspects of the distribution and sales of Acthar: from prescription by the physician, to direct home delivery to the patient, to direct reimbursement by the payor. This allowed Mallinckrodt to raise its prices tenfold initially, and nearly double in the ensuing years.

Cmplt. ¶107. As other courts instruct, such allegations "have been found sufficient" to sustain antitrust claims under state law. *Sherwood,* 2003 Tenn. App. LEXIS 539 at 76.

Thus, Acument plainly alleges that Mallinckrodt possessed monopoly power in the relevant market for ACTH drugs, and its willful maintenance of that power was not as a

consequence of a superior product, business acumen, or historic accident.

The Complaint then describes how Mallinckrodt sought to further enhance its monopoly power through the acquisition of Synacthen, "a competitive threat" to Acthar's monopoly. Cmplt. ¶ 189.  In the section titled, "the Mallinckrodt Synacthen Acquisition and Express Scripts' Role in the Maintenance of Monopoly Pricing for Acthar," Cmplt. at 43, Acument details how Mallinckrodt set out to acquire the synthetic version of Acthar, only to deny competitors the ability to compete with Acthar.  *See* Cmplt. ¶¶ 139-141, 187-199, 238-256.  This conduct presents a classic case of monopolization.  Both a competitor of Mallinckrodt (Retrophin) and the federal government (FTC) agreed: they both successfully sued Mallinckrodt for monopolization.  Cmplt. at ¶ 226 (incorporating by reference the FTC Complaint attached to Acument's Complaint as Exhibit "D"), ¶ 257 (incorporating by reference the Retrophin Complaint attached to Acument's Complaint as Exhibit "E").  Mallinckrodt chose to settle these meritorious claims.

Mallinckrodt seeks to circumvent Acument's detailed allegations, and the detailed allegations of the two attached complaints by the FTC and Retrophin, by labeling them "sweeping, conclusory allegations".  Acument's allegations about the Synacthen acquisition by Mallinckrodt may be "sweeping", given the expansive breath of Mallinckrodt's unlawful monopolization conduct, but they are far from "conclusory".

### 1.    Acument pleads a relevant market for ACTH products.

Mallinckrodt cites *Duke* for the proposition that a plaintiff alleging a claim for monopolization must allege "the possession of monopoly power in the relevant market." Mallinckrodt Mem. at 9.  Plaintiff agrees.  But, Mallinckrodt fails to deliver on the promise of its heading, which contends that "Plaintiff fails to properly allege a relevant market."  *Id.*

Perhaps that is because there is an entire section devoted to the topic, beyond other detailed allegations in the Complaint. *See* "Relevant Markets, Monopoly Power, and the FTC Complaint Against Mallinckrodt" at Complaint p. 49. Averments 223 through 225 read as follows:

> The relevant product market is the sale of ACTH drugs, dominated by just one product, Acthar. The geographic market for purposes of this case is the State of Tennessee, as part of the larger United States market, but governed by the antitrust laws of this State. In this market, Mallinckrodt is the single seller, and the third party payors are the leading buyers.
> That market is and has been characterized by significant barriers to entry.
> There are no medical or reasonably available substitutes for Acthar. The only potential substitute was Synacthen, which Mallinckrodt purchased the rights to from Novartis in 2013, only to shelve the product, with the consent of Express Scripts, rather than seek to bring it to market in the United States, and specifically to the Tennessee market.

Ignoring these clear factual averments about the relevant market, and bypassing its own heading, Mallinckrodt then argues that "it is the rare case in which a single-brand market is actionable". Mallinckrodt Mem. at 9 (citing an unreported, federal decision from the Northern District of Illinois). No Tennessee authority is cited. Instead, Mallinckrodt follows that suggestion about this being a "rare case" with a string cite of inapposite federal precedent. *Id*.

Whether this is a "rare case" or not remains to be seen. Plaintiff is not required to "show" anything at this stage of the proceedings. Its pleading is sufficient to put Mallinckrodt on notice. Mallinckrodt's complaint that Acument "will never be able to demonstrate a single product market" is a curious statement in light of its decision to settle the monopolization claims of the FTC for $100 million and its agreement with the FTC to license Synacthen to a competitor. Cmplt at ¶ 267. It is even more curious in light of its decision to settle with its competitor for $15.5 million. Cmplt at ¶ 261. Mallinckrodt appears to be grasping at straws in trying to label this a "rare case". Rare or not, this case is meritorious, and Mallinckrodt knows why it has been sued.

### 2.    Plaintiff's allegations do not "belie monopoly power".

Mallinckrodt next quibbles with Acument's averments in its well-pleaded Complaint by
arguing that "Plaintiff's own allegations undermine its assertion that Mallinckrodt had a
monopoly" in the market for ACTH products.  Mallinckrodt Mem. at 10.  While Plaintiff agrees
with Mallinckrodt that "monopoly power is the power to control prices or exclude competition",
Acument's Complaint amply demonstrates that Mallinckrodt exercised such power in the ACTH
market.  Mallinckrodt's "cherrypicking" three lines from over 400 averments in the Complaint,
Cmplt ¶¶ 74, 128 and 2 does not "show that Mallinckrodt does not have monopoly power."

### 3.    Plaintiff alleges "improper conduct by Mallinckrodt".

Mallinckrodt's last argument for dismissal of Plaintiff's monopolization claim simply
argues that what Mallinckrodt did with its "new strategy" in 2007 and its acquisition of
Synacthen in 2013 was not "improper".  Mallinckrodt Mem. at 11 (urging "[n]either of the two
acts alleged by Plaintiff are improper conduct").  Now is not the time to argue the "propriety" of
what Acument alleges Defendants have done.

With respect to the "exclusive distribution agreement" Mallinckrodt signed with Express
Scripts in 2007, Plaintiff does not state that Mallinckrodt's Acthar monopoly was "natural", as
claimed.  (Mallinckrodt's citations to Cmplt. 331, and 338 take the use of the word "natural" by
Plaintiff completely out of context).

Further, contrary to Mallinckrodt's bald claim that "Plaintiff offers no allegations
explaining how this exclusive distribution agreement was anticompetitive", Plaintiff directs the
Court's attention to the following paragraphs of the Complaint, which Mallinckrodt has
overlooked: Cmplt. ¶¶ 7-14, 58-107, 108-11 (the example of Daraprim), 112-157 (Acthar pricing
manipulation made possible by the exclusive agreement with Express Scripts), 158- 186 (Dr.

Miller's observations of Express Scripts' power, which Mallinckrodt contracted to restrain), 229-237, 335-338 (restricted distribution), 352- 366 (Express Scripts' role). What Mallinckrodt really wants to argue is that its "exclusive dealing arrangement" was "beneficial", not harmful, to competition.  Mallinckrodt may have its opportunity to make such a case, after discovery, provided this Court disagrees with Plaintiff that Mallinckrodt's conduct should be deemed per se illegal.  Since the Court in the *Rockford Action* deferred such decision to a later stage of the federal court proceedings, Plaintiff respectfully suggests this Court should do the same.  *See City of Rockford v. Mallinckrodt ARD, Inc.*, 360 F. Supp. 3d 730, 754 (N.D. Ill. 2019)[24]; *see also, Jo Ann Forman, Inc. v. National Council on Compensation Ins., Inc.*, 13 S.W. 3d 365, 370 (1999)(noting the trial court deferred the decision as to per se versus rule of reason until summary judgment).

Finally, Mallinckrodt challenges Plaintiff's averment that Synacthen was a viable substitute for Acthar, despite the fact that both the FTC and Retrophin so alleged in their respective lawsuits, which lawsuits Mallinckrodt chose to settle rather than fight.  Mallinckrodt Mem. at 12.  Mallinckrodt's arguments bypass the Complaint's allegations, instead seeking to argue what may become potential issues in this litigation, such as whether Synacthen would be approved by the FDA, and the impact, if any, of Acthar's "orphan drug" status.  *Id*. at 12-13. Such extraneous issues are not material to the issue at hand of whether Plaintiff has pleaded an antitrust claim, and Mallinckrodt cites no authority that states otherwise.

---

[24] "Rockford alleges two anticompetitive understandings—the exclusive dealing arrangement and the Synacthen Acquisition—that together form the basis of their § 1 claims. While courts generally assess exclusive dealing arrangements under the rule of reason analysis, it is less clear that the rule of reason analysis applies here where plaintiffs have alleged that the conspiracy included both the exclusive dealing arrangement and the Synacthen Acquisition, which plaintiff argues deserves a 'per se' analysis. However, the court agrees with plaintiffs that the court need not make this determination at this time."

**C.      Acument Pleads a Cognizable Claim for an Anticompetitive Agreement in Unreasonable Restraint of Trade under the TTPA.**

With little factual or legal support therefor, Mallinckrodt argues that Plaintiff's Count II for Mallinckrodt's 2007 anticompetitive agreement with Express Scripts should be dismissed "for the same reasons as its monopoly claim above." The only cited authority, the Supreme Court's decision in *Leegin Creative Leather Prods. v. PSKS, Inc*., 551 U.S. 887 (2007), holds only that "vertical price restraints" – as alleged in Plaintiff's Count II – "are to be judged according to the rule of reason", not the prior "per se" rule.  551 U.S. at 907.  In other words, *Leegin* recognizes that vertical price restraints may be adjudged illegal under the antitrust laws. But, in what has become its mantra in courts across the country, Mallinckrodt claims its vertical price fixing agreement with Express Scripts is simply a "run-of-the-mill exclusive dealing agreement".  Mallinckrodt Mem. at 14.  Mallinckrodt's argument for dismissal has it backwards: it is Mallinckrodt's label that is an impermissible "legal conclusion", not Plaintiff's detailed averments about its contractual arrangement with the largest PBM in America, by which Mallinckrodt and Express Scripts agreed, in writing, to raise and fix the prices of Acthar, from 2007 through the present. (the contracts will be made available for this Court's review at the hearing).

**D.      Plaintiff Properly Pleads a Claim for Relief Under Tennessee Consumer Protection Act (TCPA), Tenn. Code Ann. § 47-18-101 (Count III)**

Mallinckrodt argues that Acument's TCPA claim (Count III) should be dismissed for two reasons: (1) the TCPA claim "is entirely premised upon allegations of competitive conduct", and (2) "even if [the claim] could be construed as premised upon something other than allegations of anticompetitive conduct, it nevertheless fails to state a claim under the TCPA."  Mallinckrodt Mem. at 14.  Both arguments fail when the Court examines Acument's Complaint.

First, Mallinckrodt is wrong that the TCPA is "entirely premised" on the anticompetitive

conduct that forms the basis of Acument's TTPA claims (Counts I and II).  The Complaint starts

with a discussion of a Qui Tam whistleblower complaint filed against Mallinckrodt in 2012 –

five years before the FTC's antitrust complaint was unsealed.  Cmplt. ¶¶ 200-220 (discussing

DOJ case).  In other words, two branches of the same government (FTC and DOJ) sued the same

Defendant, Mallinckrodt.  But, the conduct at issue was different, such that Mallinckrodt has

twice settled with the government.  Acument learned of the unsealed DOJ complaint this past

summer, after its case in *Rockford* was dismissed.  Acument investigated the DOJ's allegations

of wrongful kickbacks to doctors, and concluded that it was affected by the conduct of Dr.

Tumlin.  So, it sued Dr. Tumlin.  The Complaint details this wrongful conduct, entirely different

from the antitrust conduct (*ie.*, exclusive agreements and Synacthen acquisition).  Cmplt. ¶¶ 278-

305.  The Complaint pleads how this separate conduct violated the TCPA.  *Id*. at ¶¶ 367-380.

Such separate conduct is actionable.  Mallinckrodt cites no authority to the contrary.

Second, Plaintiff has properly pleaded all the requisite elements of the TCPA claim for

the separate conduct exposed in the *DOJ* case.  In order to recover under the TCPA, a plaintiff

must prove "(1) that the defendant engaged in an unfair or deceptive act or practice declared

unlawful by the TCPA and (2) that the defendant's conduct caused an "'ascertainable loss of

money or property, real, personal, or mixed, or any other article, commodity, or thing of value

wherever situated.'"  *Act for Health v. Case Mgmt. Assocs.*, 128 F.Supp. 3d 1020, (E.D.Tenn.

2014 (*quoting Cloud Nine, LLC v. Whaley*, 650 F. Supp. 2d 789, 797-98 (E.D. Tenn. 2009)

(*further quoting Tucker v. Sierra Builders*, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005)).  The

Tennessee Supreme Court has recognized that a deceptive act or practice includes a material

representation, practice or omission likely to mislead a reasonable consumer. *Cloud Nine,* 650 F. Supp. 2d at 796 (*citing Ganzevoort v. Russell*, 949 S.W.2d 293, 299 (Tenn.1997)).

Acument pleads that Mallinckrodt "misled and deceived Acument and the public about … the lack of value of Acthar for the prices being charged, in order to intentionally and deceptively charge false, misleading and excessive prices for Acthar….  In their promotion of Acthar to treat diseases other than IS, like the DM/PM suffered by Acument's beneficiary. Defendants have disparaged the goods, services or business of other sellers of drugs that treat such disease more effectively and safely, and for much less money, by false or misleading representations of fact.  [Mallinckrodt's] acts or practices, including the failures to act and to speak the truth in the face of false, misleading and deceptive statements about Acthar's pricing, distribution and value, constitute unfair and deceptive acts or practices."  Cmplt. ¶¶ 376 (f), (g), and (h).  The factual details supporting such averments are set forth at paragraphs 112-157, 158-186, 278-305 of the Complaint.  Mallinckrodt's isolated "examples" at paragraphs 376, 151, and 271 (Mallinckrodt Mem. at 16) ignores the overall factual support elsewhere.  Similar allegations of consumer fraud for the same conduct remain pending before the Federal District Court in Philadelphia, where the *DOJ* case is pending.  *See Steamfitters Local Union No. 420 v. Mallinckrodt ARD, LLC, et al*, Civil Action No. 2:19-cv-03047-BMS (E.D.Pa.) at ECF No. 1.

Finally, without citation to any legal authority, Mallinckrodt argues "Plaintiff's claim of loss is impermissibly speculative."  Mallinckrodt Mem. at 16.  This argument is perhaps weakest of all: Plaintiff properly pleads that it paid over $892,000 for 13 prescriptions of Acthar, a drug that used to costs $40 per dose, based upon the inflated AWPs set by Mallinckrodt and Express Scripts, and that the damage is "the difference between the true price of Acthar" before the

unlawful conduct "and the inflated prices charged to Plaintiff". Cmplt. ¶¶ 13-17, 25, 377.

Plaintiff explicitly alleges this is an "ascertainable loss of money". Cmplt. ¶¶ 18, 373.

### E.  <u>Plaintiff States a Claim for Unjust Enrichment (Count IV)</u>

Under Tennessee law, to establish a claim for unjust enrichment, one must plead: "1) '[a]

benefit conferred upon the defendant by the plaintiff'; 2) 'appreciation by the defendant of such

benefit'; and 3) 'acceptance of such benefit under such circumstances that it would be inequitable

for him to retain the benefit without payment of the value thereof.'" *Cole v. Caruso,* No. W2017-

00487-COA-R3-CV, 2018 Tenn. App. LEXIS 146, at \*9 (Ct. App. Mar. 20, 2018)

(quoting *Freeman Indus. LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005); *see*

*also, Paschall's, Inc. v. Dozier*, 219 Tenn. 45, 407 S.W.2d 150, 155 (Tenn. 1966)(reversing

dismissal of unjust enrichment claim). An unjust enrichment case "must be examined in light of

its factual situation and decided according to the essential elements of unjust enrichment." *Id.*

(quoting *Bridgeforth v. Jones*, No. M2013-01500-COA-R3-CV, 2015 Tenn. App. LEXIS 35,

2015 WL 336376, at \*19 (Tenn. Ct. App. Jan. 26, 2015) (citing *B & L Corp. v. Thomas &*

*Thorngren, Inc.*, 917 S.W.2d 674, 680 (Tenn. Ct. App. 1995)).  "The Tennessee Supreme Court

has noted that the most significant requirement in a claim for unjust enrichment is that the

enrichment to the defendant be unjust." *Id.* (citing *Freeman Indus., LLC.*, 172 S.W.3d at 525).

Importantly, "[a] plaintiff need not be privity with a defendant to recover under a claim of unjust

enrichment." *Freeman Indus.*, 172 S.W.3d at 31 (citing *Paschall's, Inc.*, 407 S.W.2d at 154).

Mallinckrodt does not challenge Acument's statement of a claim as to unjust enrichment.

Instead, it seeks dismissal for Acument's alleged "failure to exhaust administrative remedies"

available to it against "the person with whom the plaintiff enjoyed privity of contract".

Mallinckrodt jumps to the conclusion that the only such person was CVS/Caremark, Acument's

PBM in 2015.  However, Mallinckrodt ignores the fact that Plaintiff has sued, and therefore is

exhausting its remedies" against the two parties with whom it had privity of contract in 2011, when its patient was started on Acthar, Dr. Tumlin and Express Scripts.  Mallinckrodt cites the language in *Freeman Indus*. and the *Rockford* Court's opinion on the same issue.  *Id*. (*citing Rockford*, 360 F.Supp. 3d at 772).[25]

The *Freeman* Court, ruling on a summary judgment record, held that where a plaintiff has demonstrated exhaustion, as here, "the burden shifts" to the moving defendant "to provide facts establishing the existence of disputed issues of material fact that must be resolved by the trier of fact." *Freeman Indus*., 172 S.W.3d at 526.  Mallinckrodt has not provided any facts in the record to show that Acument's suit against its co-Defendants, with whom Acument was in privity, does not satisfy the exhaustion requirement for its unjust enrichment claim.  Indeed, the only cited authority, Freeman Indus., was decided on summary judgment, not Rule 12.02(6).

### F.    Plaintiff Fails to Plead a Cognizable Claim for Fraud (Count V)

In Tennessee, the elements of fraud are "(1) an intentional misrepresentation of a material fact, (2) knowledge of the representation's falsity, ... (3) an injury caused by reasonable reliance on the representation [and (4) the requirement] that the misrepresentation involve a past or existing fact...".  *Dobbs v. Guenther*, 846 S.W.2d 270, 274 (Tenn.Ct.App. 1992).

Concealment or nondisclosure of a material fact may also constitute fraud.  *Soles4Souls, Inc. v. Donelson Cedarstone Assocs., LP*, No. M2009-01906-COA-R3-CV, 2010 Tenn. App. LEXIS 786, at *35-36 (Ct. App. Dec. 17, 2010). "For the nondisclosure to constitute fraud, the

---

[25] The *Rockford* Court cited as support only an unreported Tennessee federal court decision, which in turn drew upon "the Supreme Court's recent pronouncement in *Twombly*" as authority for finding a failure of pleading.  *Spahr v. Leegin Creative Leather Prods*., 2008 U.S.Dist. LEXIS 90079 at * 47 (E.D.Tenn. Aug. 20, 2008).  Because the Tennessee Supreme Court rejected *Twombly*, *see supra*. n.23 and Acument amended its pleading since Rockford to (1) sue Dr. Tumlin, and (2) clarify that it was in privity with Express Scripts in 2011.  Therefore, the *Rockford* decision is not authoritative or binding on the issue of "exhaustion".

charged party must have knowledge of an existing fact or condition and a duty to disclose that fact or condition. The fact or condition must be a material fact affecting the essence of the subject matter of the contract." *Id.* (quoting *Odom v. Oliver*, 310 S.W.3d 344, 349 (Tenn. Ct. App. 2009)).

As stated in the Complaint, Mallinckrodt engaged in fraudulent concealment and deception in violation of Tennessee law when it made, *inter alia*, the following misrepresentations and material omissions[26]:

1.  Mallinckrodt and Express Scripts have willfully manipulated and inflated the AWP prices of Acthar paid by Acument, in contravention of explicit OIG Guidelines, causing Plaintiff to substantially overpay for a drug with very limited uses and benefits and an unknown method of action. Cmplt. ¶ 12-17, 25, 112-157, 165, 271-272).

2.  Mallinckrodt and Express Scripts knowingly misrepresented the purported efficacy, safety and value of Acthar for the treatment of unapproved conditions and unapproved doses in its promotional and marketing materials. Cmplt. ¶¶ 158-186.

3.  Mallinckrodt and Express Scripts engaged doctors as KOLs, including Dr. Tumlin, to misrepresent the value of Acthar patients and payors, and deceive them about the mode of action for Acthar (which remains unknown) and the approved uses and doses for Acthar. Cmplt. ¶¶ 278-305.

Defendants' willful misrepresentations that the "average wholesale prices" or AWPs of Acthar, which they inflated and which AWPs Acument paid, represented actual "average wholesale prices" for Acthar or "some price reasonably related thereto". Cmplt. ¶¶ 391, 393. What Mallinckrodt calls "vague and conclusory allegations", other courts have found to constitute consumer fraud. *See, e.g., In re Pharmaceutical Industry Average Wholesale Price Litigation v. AstraZeneca*, 582 F.3d 156 (1st Cir. 2009) (affirming trial court's finding drug

---

[26] This is not intended to be an exhaustive list of Mallinckrodt's fraud and deception as the Complaint contains additional examples of Mallinckrodt's fraudulent and deceptive conduct.

company liable for unfair and deceptive business practices for publishing inaccurate AWPs);

*Watson Labs., Inc. v. State*, 214 S. 2d 573 (Miss. 2018)(same); *Com. of Pennsylvania v. TAP*

*Pharm. Prods*., 36 A.2d 1197, (Pa. Cmwlth. 2011), vacated on other grounds, 626 Pa. 1, 94 A.2d

350 (2014)(same);  *State of Wisconsin v. Abbott Labs., et. al.,* 341 Wis. 2d 510, 816 N.W.2d 145

(2012)(affirming $9mm jury award); *Sandoz, Inc. v. State* (*In re Miss. Medicaid Pharm. Average*

*Wholesale Price Litig*.), 190 So. 3d 829, 842 (Miss. 2015)("The trial court did not err in finding

that Sandoz's practice of reporting false AWPs was a deceptive trade practice.  The 'prices' were

exaggerated to an extent that they were not even prices. Providing false information is deceptive.

. . ."); *see also, In re Lupron Mktg. & Sales Practices Litig*., 295 F.Supp. 2d 148, 181-82, n. 35

(denying motion to dismiss consumer fraud claims for AWP inflation under multiple state's

laws); *Cf. People of the State of New York v. Pharmacia Corp.*, 27 Misc. 3d 368, 895 N.Y.S.2d

682, 693-94 (N.Y. Sup. Ct. 2010)(denying cross-motions for summary judgment on consumer

fraud claims).

> **G.**      **The Complaint States a Claim under Count VI for Conspiracy to**
> **Defraud/Concerted Action**.

As a matter of Tennessee law, Plaintiff's Count VI Conspiracy claim should not be

dismissed.  Under Tennessee law, "The elements of a cause of action for civil conspiracy are: (1)

a common design between two or more persons, (2) to accomplish by concerted action an

unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance of the

conspiracy, and (4) resulting injury."  *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32 (Tenn. Ct.

App. 2006).  Here, the corporate defendants signed an exclusive agreement in 2007 to raise and

fix the prices of Acthar.  They then signed agreements with Dr. Tumlin to market and sell their

high-priced drug to patients, regardless of the cost to payors, like Acument, or the value.  The

Complaint is replete with "overt acts in furtherance" of such agreements.  The only issue is

whether there exists an "underlying predicate tort allegedly committed pursuant to the conspiracy." *Lane v. Becker*, 334 S.W.3d 756, 763 (Tenn. Ct. App. 2010). Plaintiff submits it has pled actionable claims of statutory consumer fraud under the TCPA, common law fraud, and unjust enrichment, any of which is sufficient to support Plaintiff's conspiracy claim against all Defendants.

## **CONCLUSION**

The Complaint filed by Acument in this Court is demonstrably different from the Complaint filed in the *Rockford Action*. But rather than address these material differences, Mallinckrodt glosses over them. Mallinckrodt Mem. at 2 ("This case is based on the same basic factual allegations as Acument's failed effort in the Rockford Action.") Without any analysis of the actual averments of the Complaint *in this case*, Mallinckrodt urges this Court to dismiss this case, with prejudice and without leave to re-plead, something even the *Rockford* Court did not do.

Because Acument has not filed any federal antitrust claims, the Rockford precedent is of limited value to this Court. To the extent the *Rockford* Court provided guidance as to Acument's Tennessee state law claims, such guidance was followed, and new factual averments were added. As a result, this new pleading must be judged under Tennessee law and the Tennessee pleading standards. When so judged, this Court should easily find that the Complaint adequately pleads Acument's standing to sue for its economic losses in paying the inflated prices for Acthar, as set by Mallinckrodt and the Express Scripts Defendants, and as charged by Dr. Tumlin through the Acthar Start From (Complaint Exhibit "A") and the ASAP program. The Complaint adequately states causes of action for violations of the Tennessee Trade Practices Act, § 47-25-101, *et. seq.* (Count I, monopolization, and Count II, anticompetitive agreements), violations of the Tennessee

Consumer Protection Act, § 47-18-101, *et. seq.*, (Count III), and common fraud (Count V),

conspiracy (Count VI) and unjust enrichment (Count IV).

    For these reasons, Mallinckrodt's Motion to Dismiss should be denied.

Respectfully submitted,

Dated: October 16, 2019      By: _____

Patrick M. Ardis, Esq.
(TN BPR No. 008263)
Daniel V. Parish, Esq.
(TN BPR No. 027452)
WOLFF ARDIS, P.C.
5810 Shelby Oaks Drive
Memphis, TN 38134
Ph: 901-763-3336
Fax: 901-763-3376
pardis@wolffardis.com
dparish@wolfardis.com

Donald E. Haviland, Jr., Esq.
(*pro hac vice pending*)
William H. Platt II, Esq.
(*pro hac vice pending*)
HAVILAND HUGHES
201 S. Maple Way, Suite 110
Ambler, PA 19002
Ph: 215-609-4661
Fax: 215-392-4400
*haviland@havilandhughes.com*
*platt@havilandhughes.com*

*Attorneys for Acument Global
Technologies, Inc.*

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................. 1

RELEVANT FACTUAL ALLEGATIONS ......................................................................... 6

ARGUMENT ...................................................................................................................... 9

I.    STANDARDS ............................................................................................................ 9

II.   THE ELEMENTS OF ACUMENT'S CLAIMS AGAINST MALLINCKRODT ARE
      PROPERLY PLEAD. ............................................................................................... 12

      A.    Acument Has Standing to Sue for its Antitrust Claims Against Mallinckrodt under
      the    Tennessee Trade Practices Act, Tenn. Code Ann. § 47-25-101, et seq.
            (Counts I and II) ............................................................................................. 12

      B.    Acument Has Properly Stated Claims for Monopolization and Price Fixing under
            Tennessee Trade Practices Act, Tenn. Code Ann. § 47-25-101, et seq.
            (Counts I and II) ............................................................................................. 17

            1.    Acument pleads a relevant market for ACTH products. ..................... 21

            2.    Plaintiff's allegations do not "belie monopoly power". ...................... 23

            3.    Plaintiff alleges "improper conduct by Mallinckrodt". ...................... 23

      C.    Acument Pleads a Cognizable Claim for an Anticompetitive Agreement in
            Unreasonable Restraint of Trade under the TTPA. ........................................ 25

      D.    Plaintiff Properly Pleads a Claim for Relief Under Tennessee Consumer Protection
            Act (TCPA), Tenn. Code Ann. § 47-18-101 (Count III)................................. 25

      E.    Plaintiff's States a Claim for Unjust Enrichment (Count IV) ........................ 28

      F.    Plaintiff Fails to Plead a Cognizable Claim for Fraud (Count V)................... 29

      G.    The Complaint States a Claim under Count VI for Conspiracy to Defraud/Concerted
            Action. ............................................................................................................ 31

      CONCLUSION................................................................................................................. 32

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                       **Page(s)**

*Abshure v. Methodist Healthcare-Memphis Hosps.*,
    325 S.W.3d 98 (Tenn. 2010) ................................................ 11

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 868 (2009) ........................ 18

*Associated Gen. Contractors v. Cal. State Council of Carpenters*,
    459 U.S. 519 (1983) ................................................ 14, 15

*B & L Corp. v. Thomas & Thorngren, Inc.*,
    917 S.W.2d 674 (Tenn. Ct. App. 1995) .............................. 28

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ................... 18

*Bell by Snyder ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A.*,
    986 S.W.2d 550 (Tenn. 1999) ...................................... 10

*Bellar v. Baptist Hosp., Inc.*,
    559 S.W.2d 788 (Tenn. 1978) ...................................... 10

*Blue Cross & Blue Shield v. AstraZeneca Pharms. LP* (*In re Pharm. Indus. Average Wholesale Price Litig.*),
    582 F.3d 156 (1st Cir. 2009) ...................................... 30

*Bridgeforth v. Jones*,
    No. M2013-01500-COA-R3-CV, 2015 Tenn. App. LEXIS 35, 2015 WL 336376 ............. 28

*Brown v. Tenn. Title Loans, Inc.*,
    328 S.W.3d 850 (Tenn. 2010) ...................................... 10

*City of Rockford v. Mallinckrodt ARD, Inc.*,
    360 F. Supp. 3d 730 (N.D. Ill. 2019) ............................... *passim*

*Cole v. Caruso*,
    No. W2017-00487-COA-R3-CV, 2018 Tenn. App. LEXIS 146 (Tenn. Ct. App. Mar. 20, 2018) ................................................ 27

*Com. of Pa. v. TAP Pharm. Prods.*,
    36 A.2d 1197 (Pa. Commw. Ct. 2011) .............................. 30

*Cook ex rel. Uithoven v. Spinnaker's of Rivergate, Inc.*,
    878 S.W.2d 934 (Tenn. 1994) ...................................... 10

*Crews v. Buckman Labs. Int'l*,
    78 S.W.3d 852 (Tenn. 2002) ...................................... 9

*Davis v. Schneiter*,
   No. 05-C-529-S, 2006 U.S. Dist. LEXIS 355 (W.D. Wis. Jan. 6, 2006) ........................ 19, 20

*Dobbs v. Guenther*,
   846 S.W.2d 270 (Tenn. Ct. App. 1992) ................................................................. 29

*Doe v. Sundquist*,
   2 S.W.3d 919 (Tenn. 1999) ................................................................................ 9

*Edwards v. Allen*,
   216 S.W.3d 278 (Tenn. 2007) .......................................................................... 10

*Freeman Indus. L.L.C. v. Eastman Chem. Co.*,
   172 S.W.3d 512 (Tenn. 2005) .................................................................... *passim*

*Freeman Indus. L.L.C. v. Eastman Chem. Co.*,
   No. E2003-00527-COA-R9-CV, 2004 Tenn. App. LEXIS 321
   (Tenn. Ct. App. May 18, 2004) ................................................................... 16-17

*Fuerst v. Methodist Hosp. S.*,
   566 S.W.2d 847 (Tenn. 1978) .......................................................................... 9

*Hammett v. Vogue, Inc.*,
   165 S.W.2d 577 (Tenn. 1942) ......................................................................... 11

*Hicks v. Frost*,
   195 S.W.2d 606 (Tex. Civ. App. 1946) .............................................................. 15

*Highwoods Props., Inc. v. City of Memphis*,
   297 S.W.3d 695 (Tenn. 2009) .......................................................................... 10

*Holloway v. Putnam County*,
   534 S.W.2d 292 (Tenn. 1976) .......................................................................... 10

*Ill. Brick Co. v. Ill.*,
   431 U.S. 720, 97 S. Ct. 2061, 52 L. Ed. 2d 707 (1977) ......................................... 11

*In re Lupron Mktg. & Sales Practices Litig.* ,
   295 F. Supp. 2d 148 (D. Mass. 2003) .......................................................... 30, 31

*In re Wellbutrin XL Antitrust Litig.*,
   260 F.R.D. 143 (E.D. Pa. 2009) ....................................................................... 18

*Jo Ann Forman, Inc. v. Nat'l Council on Comp. Ins., Inc*,
   13 S.W.3d 365 (Tenn. Ct. App. 1999) ............................................................... 24

*Jones v. Prof'l Motorcycle Escort Serv., L.L.C.*,
   193 S.W.3d 564 (Tenn. 2006) .......................................................................... 3

*Kincaid v. SouthTrust Bank*,
   221 S.W.3d 32 (Tenn. Ct. App. 2006) ............................................................... 31

*Knierim v. Leatherwood*,
  542 S.W.2d 806 (Tenn. 1976) ................................................................ 15

*Ladd v. Roane Hosiery, Inc.*,
  556 S.W.2d 758 (Tenn. 1977) ................................................................. 9

*Lane v. Becker*,
  334 S.W.3d 756 (Tenn. Ct. App. 2010) .................................................. 31

*Lanier v. Rains*,
  229 S.W.3d 656 (Tenn. 2007) ................................................................. 9

*Leach v. Taylor*,
  124 S.W.3d 87 (Tenn. 2004) .................................................................. 10

*Leegin Creative Leather Prods. v. PSKS, Inc.*,
  551 U.S. 877 (2007) ..................................................................... 24, 25

*Leggett v. Duke Energy Corp.*,
  308 S.W.3d 843 (Tenn. 2010) .......................................................... 10, 15

*Leggett v. Duke Energy Corp.*,
  No. W2007-00788-COA-R3-CV, 2008 Tenn. App. LEXIS 684 (Tenn. Ct. App. Oct. 29,
  2008) ................................................................................... 11

*Odom v. Oliver*,
  310 S.W.3d 344 (Tenn. Ct. App. 2009) .................................................. 29

*Paschall's, Inc. v. Dozier*,
  219 Tenn. 45, 407 S.W.2d 150 (1966) ............................................ 27-28, 28

*Paschall's, Inc. v. Dozier*,
  407 S.W.2d 150 (Tenn. 1966) ................................................................ 28

*Pemberton v. Am. Distilled Spirits Co.*,
  664 S.W.2d 690 (Tenn. 1984) ................................................................. 9

*People v. Pharmacia Corp.*,
  27 Misc. 3d 368, 895 N.Y.S.2d 682 (N.Y. Sup. Ct. 2010) ............................. 31

*Sanders v. Vinson*,
  558 S.W.2d 838 (Tenn. 1977) ............................................................... 10

*Sandoz, Inc. v. State  (In re Miss. Medicaid Pharm. Average Wholesale Price Litig.)*,
  190 So. 3d 829 (Miss. 2015) ............................................................... 30

*Sherwood v. Microsoft Corp.*,
  No. M2000-01850-COA-R9-CV, 2003 Tenn. App. LEXIS 539
  (Tenn. Ct. App. July 31, 2003) ........................................................ *passim*

*Soles4Souls, Inc. v. Donelson Cedarstone Assocs., LP*,
   2010 Tenn. App. LEXIS 786 (Tenn. Ct. App. Dec. 17, 2010) ............................................. 29

*Spahr v. Leegin Creative Leather Prods.*,
   U.S. Dist. LEXIS 90079 (E.D. Tenn. Aug. 20, 2008) .......................................... 28

*State v. Abbott Labs.*,
   341 Wis. 2d 510, 816 N.W.2d 145 (2012) .............................................. 30

*Stein v. Davidson Hotel Co.*,
   945 S.W.2d 714 (Tenn. 1997) ............................................... 10

*Tigg v. Pirelli Tire Corp.*,
   232 S.W.3d 28 (Tenn. 2007) ............................................... 10

*Trau-Med of Am., Inc. v. Allstate Ins. Co.*,
   71 S.W.3d 691 (Tenn. 2002) .......................................... 9, 10

*Webb v. Nashville Area Habitat for Humanity, Inc.*,
   346 S.W.3d 422 (Tenn. 2011) ............................................. 18

*White v. Revco Disc. Drug Ctrs., Inc.*,
   33 S.W.3d 713 (Tenn. 2000) ............................................... 10

*Willis v. Tenn. Dep't of Corr.*,
   113 S.W.3d 706 (Tenn. 2003) ............................................... 10

**Statutes**

Tenn. Code Ann. § 47-18-101 ................................................. *passim*

Tenn. Code Ann. § 47-25-101 ................................................. *passim*

**Rules**

Fed. R. Civ. P. 8 ............................................................. 10

Fed. R. Civ. P. 12 ........................................................... *passim*

Fed. R. Civ. P. 41(a)(1).......................................................... 4

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been delivered via U.S. mail and electronic mail this 16th day of October, 2019.

Nathan A. Bicks, Esq.
William D. Irvine, Jr., Esq.
Lani Lester, Esq.
Burch, Porter & Johnson PLLC
130 North Court Avenue
Memphis, TN 38103

*Attorneys for the Express Scripts Defendants*

Daniel W. Van Horn, Esq.
Kathryn K. Van Namen, Esq.
Diana M. Comes
*Butler Snow LLP*
6075 Poplar Ave., 5th Floor
Memphis, TN 38119

*Attorneys for Mallinckrodt Defendants*

Eric C. Lyttle, Esq.
Michael D. Bonanno, Esq.
Ethan C. Glass, Esq.
Meghan A. McCaffrey, Esq.
Michael Lyle, Esq.
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street, NW
Washington D.C. 20005

*Attorneys for the Express Scripts Defendants*

Sonia K. Pfaffenroth, Esq.
Laura Shores, Esq.
Ryan Z. Watts, Esq.
Matthew M. Wolf, Esq.
Arnold & Porter
601 Massachusetts Ave., NW
Washington, D.C. 20001-3743

*Attorneys for Mallinckrodt Defendants*

Kirk A. Caraway, Esq.
Allen, Summers, Simpson, Lillie &
Gresham, PLLC
Brinkley Plaza
80 Monroe Avenue, Suite 650
Memphis, TN 3810-2466

*Attorneys for James A. Tumlin, M.D.*

Bill Dillon, Esq.
Daniel B. Brown, Esq.
Taylor English Duma LLP
1600 Parkwood Circle, Suite 200
Atlanta, Georgia 30339

*Attorneys for James A. Tumlin, M.D.*

Daniel V. Parish, Esq.

ELECTRONICALLY FILED
2019 Oct 16 4:30 PM
CLERK OF COURT

**IN THE CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE
FOR THE THIRTIETH JUDICIAL CIRCUIT AT MEMPHIS**

| | |
|---|---|
| **ACUMENT GLOBAL TECHNOLOGIES, INC.,**<br><br>Plaintiff,<br><br>v.<br><br>**EXPRESS SCRIPTS ARD, INC., *et al.,***<br><br>Defendants. | **DOCKET NO. CT-2275-19**<br><br>DIVISION:<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S RESPONSE TO THE EXPRESS SCRIPTS DEFENDANTS'
MOTION TO DISMISS**

Plaintiff Acument Global Technologies, Inc. ("Plaintiff" or "Acument"), by and through their undersigned counsel hereby responds to the Express Script Defendants' (collectively, "Express Scripts") Motion to Dismiss.

## INTRODUCTION

Labeling Acument's Complaint a "textbook example of forum shopping", Express Scripts, like Mallinckrodt, seeks the extreme remedy of dismissal *with prejudice* of Acument's Complaint for lack of standing and failure to state a claim upon which relief can be granted. Rather than review the averments of the actual Complaint filed against it in this Court, however, Express Scripts prefers to revisit the Rockford Action, repeatedly.  Memorandum of Law in Support of the Express Scripts Defendants' Motion to Dismiss ("Express Scripts's Mem.") at 1, 2.

Acument's Complaint consists of 405 factual and legal averments, covering 87 pages, including 6 Counts under Tennessee law.  In a word, the Complaint is well-pleaded.

Express Scripts fails to address the new allegations of the Complaint in its Motion to Dismiss.  Express Scripts hopes this Court will gloss over the fact that Acument's Complaint here is as long as the Complaint jointly filed with the City of Rockford, even though that case involved an entirely different plaintiff and alleged 15 separate causes of action.  *See* Second Amended Complaint, ECF No. 98, filed in *City of Rockford v. Express Scripts ARD, Inc.*, No. 17-cv-50107 (N.D.Ill. Apr. 6, 2017) (the "*Rockford Action*").

In other words, Acument's Complaint here is different, materially different.  Express Scripts's avoidance of such material factual and legal differences should give this Court pause in considering Express Scripts's request to dismiss the case with prejudice, **unlike** the Court in the *Rockford Action*.  *City of Rockford v. Express Scripts ARD, Inc.*, 360 F. Supp. 3d 730 (N.D. Ill. 2019)(wherein the Illinois Court "grant[ed] plaintiffs leave to replead within 45 days of the date of this order to correct the deficiencies as noted in this opinion.")[1]  Rather than re-plead in Rockford, Acument chose to re-plead in Tennessee, as of right,[2] where its business is located, its beneficiary was treated and prescribed Acthar by Defendant Dr. Tumlin, and the Express Scripts Defendants have their principle place of business.  Due to Acument's new pleading, there is no legal basis for Defendants to cite to the *Rockford Action* Court's prior dismissal Order as legal

---

[1] To the extent this Court were to find Acument's complaint deficient in any material respect, leave to replead should be granted.  *Jones v. Prof'l Motorcycle Escort Serv., LLC,* 193 S.W. 3d 564, 569 (Tenn. 2006)("leave is to be freely given when justice so requires").

[2] Acument took a voluntary dismissal as of right under Federal Rule 41(a), which dismissal was granted by the Federal Court after giving all Defendants the opportunity to object.  *Rockford Action*, EFC No. 201 ("Before the court is plaintiff Acument's notice of voluntary dismissal without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)[ECF No. 195].  Defendants did not file an objection by the deadline in the court's order taking Acument's notice under advisement [ECF No. 197].  Accordingly, there being no objection, Acument is terminated from this case.")

grounds for dismissing the entirely different Complaint filed in this Court.

When judged on its merits, Acument's Complaint passes judicial muster under the Tennessee Rules of Court.  The state statutory causes of action for antitrust, monopolization (Count I) and price fixing (Count II), and consumer fraud (Count III), adequately plead all the prerequisites under Tennessee law.  (Because the current Complaint pleads no claim for federal antitrust, there is no legal basis for Defendants' repeated challenge under the *Illinois Brick* "indirect purchaser" rule.)[3]  To the extent the *Rockford Action* Court provided guidance as to Acument's Tennessee state law claims, such guidance was heeded, and substantial factual averments were added to Acument's Complaint to address the *Rockford* Court's concerns.  The current Complaint now addresses all the concerns of the Court in the *Rockford Action* as to these state law claims.  Express Scripts does not demonstrate otherwise.

For these reasons, Express Scripts' Motion to Dismiss should be denied.

## RELEVANT FACTUAL ALLEGATIONS

In its recitation of the factual allegations of Acument's Complaint, Express Scripts and Mallinckrodt present a confused, even distorted picture of the factual predicate for Acument's Tennessee state law claims.  Distilled to its core, however, Defendants accurately concede – what they both have conceded in their prior Answers filed in other courts – all of the following

---

[3] Both Mallinckrodt and Express Scripts Defendants erroneously repeat their challenge to Acument's "standing" to sue under the federal antitrust laws based upon the "indirect purchaser" rule and a lack of direct "causation", despite the fact no federal claim has been alleged here. *E.g.*, Mallinckrodt Mem. at 2 ("These two [antitrust] claims are virtually identical to Acument's failed federal antitrust claims under the Sherman Act in the *Rockford Action*."); Express Scripts Mem. at 8 ("As in the Illinois Litigation, Plaintiff's antitrust claims should be dismissed because its purported overpayment for Acthar is to attenuated from the alleged anti-competitive conduct.")

material facts relevant to this case:[4] (1) "Acthar is the only therapeutic ACTH product sold in the United States"[5]; (2) Mallinckrodt acquired the rights to Acthar in 2001 for $100,000, and thus has "effectively had its ACTH monopoly since that time"[6]; (3) Acthar is a specialty pharmaceutical distributed through specialty pharmacy distributors, and is not sold in retail pharmacies[7]; (4) in 2007, Mallinckrodt "announced a new distribution strategy for Acthar",[8] involving the "implementation of actual, written agreements, signed by both Mallinckrodt and Express Scripts, by which Express Scripts was granted exclusive specialty distribution of Acthar in exchange for its agreement to allow Mallinckrodt to raise the prices of Acthar to exorbitant, non-competitive levels"[9]; (5) as part of this "new strategy", Mallinckrodt and Express Scripts created the ASAP program and the Acthar Start Form attached to Acument's Complaint as

---

[4] After losing its Motion to Dismiss the antitrust claims in the *Rockford Action*, and a losing subsequent dismissal motion as to consumer fraud claims filed against it in Pennsylvania state court in the *Local 542 Action*, Express Scripts was forced to file Answers to these Complaints, admitting the above-stated facts.  While Acument does not seek to convert the instant Motions to Dismiss into motions for summary judgment, by interjecting material outside the four corners of its Complaint, this Court can and should take judicial notice of the Express Scripts's judicial admissions contained in its Answers.  (The Express Scripts Answer filed in the *Rockford Action* is available at ECF No. 205.)

[5] Mallinckrodt Mem. at 3.

[6] *Compare* Mallinckrodt Mem. at 3-4 (citing Acument Cmplt at ¶ 4), *with Rockford Action* Answer at ¶¶ 3, 23, 46.

[7] *Compare* Mallinckrodt Mem. at 3 (citing Acument Cmplt at ¶ 9), *with Rockford Action* Answer at ¶¶ 6, 46 7.

[8] *Compare* Mallinckrodt Mem. at 4 (citing Acument Cmplt at ¶ 60), *with Rockford Action* Answer at ¶¶ 7, 90.

[9] *Compare* Mallinckrodt Mem. at 4 (citing Acument Cmplt at ¶ 12), *with Rockford Action* Answer at ¶ 131.

Exhibit "A"[10]; (6) in 2013, Mallinckrodt acquired Synacthen, a synthetic version of Acthar and a competitive product to Acthar.[11]

These core factual averments formed the basis of the Court's decision in the *Rockford Action* denying Express Scripts' Motion to Dismiss for failure to state both federal and state antitrust claims. *See generally*, *City of Rockford v. Mallinckrodt ARD, Inc.*, 360 F. Supp. 3d 730 (N.D. Ill. 2019). While the federal court dismissed Acument's state law claims, without prejudice and with leave to re-plead, due to "deficiencies associated with Acument's proper party status" under federal law,[12] the court found that the above facts, combined with other facts deemed true at the pleading stage, were sufficient to state statutory antitrust claims under both federal and state law:

> Rockford alleges that defendants conspired to keep prices high, restrict output, and prevent competition from entering the market. The "new strategy" reduced the number of wholesale distributors of Acthar from three to one, thereby restricting patient's access to Acthar, and employed Express Scripts' market power not to push for lower-cost alternatives. SAC ¶¶ 48, 103. The ASAP thus allowed Mallinckrodt to maintain its dominant monopoly power in the ACTH drug market, maintain prices at artificially high levels, and exclude less expensive competitive products from the ACTH drug market. The other focus of the SAC is the exclusion of competitive alternatives to the market and highlights the Synacthen Acquisition. Because Retrophin planned to bring Synacthen to market as the first viable competitor to Acthar, keeping Synacthen from the United States market resulted in complaints filed by the FTC and Retrophin for depriving the market of a lower-cost alternative with no procompetitive justifications. *Id*. ¶ 151. The elimination of competition with no procompetitive justification is the type of conduct that the

---

[10] *Compare* Mallinckrodt Mem. at 4 (citing Acument Cmplt at ¶¶ 78-79), *with Rockford Action* Answer at ¶¶ 33, 54.

[11] *Compare* Mallinckrodt Mem. at 5 (citing Acument Cmplt at ¶ 266), *with Rockford Action* Answer at ¶¶ 144, 150.

[12] "To reiterate this opinion's section on the application of <u>AGC</u> to **Acument's federal antitrust claims**, the SAC lacks sufficient allegations to allow the court to determine how Acument's injuries in Tennessee are connected to defendants' conduct. Thus, the court grants defendants' motions to dismiss Count VIII as it pertains to Acument. The court grants plaintiffs leave to replead to correct the deficiencies associated with Acument's "proper party" status concerning its state-law claims." *Id*. at 760.

antitrust laws were designed to guard against. **Consequently, the court finds that Rockford's assertions of anticompetitive conduct are sufficient to adequately plead the "unreasonable restraint of trade" prong of Rockford's § 1 claim**.

*Id*. at 754-55 (emphasis added)(citations omitted); *see also, id*. at 756-57 ("[A]t this stage, the court finds that Rockford has plausibly alleged that defendants' conduct was anticompetitive…").

The new Complaint filed by Acument in this Court included the same core facts, plus additional facts relevant to its standing to sue as an indirect purchaser under the Tennessee antitrust laws, as well as additional grounds for its consumer fraud claims in light of the DOJ case unsealed last summer. Specifically, Acument included an entirely new section titled "Acument's payments for Acthar in Tennessee for Long-Term Treatment of iMN, and Antitrust Injury.", as well as Acument Cmplt. at ¶¶ 306-312. These averments – completely ignored by Express Scripts in arguing Acument lacks standing (Express Scripts Mem. at 8-9) – explain that "Acument's prescription drug benefits were administered by Express Scripts" through 2011, when Acument's beneficiary was started on Acthar by Dr. Tumlin. Acument Cmplt. at ¶ 306; *see also, id*. at 24 ("In July 2011, Medco was acquired by Express Scripts. … As of that date – which was the same year that Acument had one of its beneficiaries placed on Acthar – Express Scripts was Acument's PBM"). This critical fact was <u>not presented</u> to the Court in the *Rockford Action*. *See generally*, *Rockford Action*, ECF No. 98 (Second Amended Complaint). It was only after 2011 that "Acument had moved to CVS/Caremark for its PBM services." *Id*.

In addition, Acument's Complaint here describes in detail the direct role Dr. Tumlin had in causing Acument's economic harm. *See, e.g.,* Cmplt. at ¶¶ 25, 45 (describing Dr. Tumlin's history with the Acument's beneficiaries); 44, 75, 220, 278-305, 310 (Dr. Tumlin is employed as a "Key Opinion Leader" or KOL for Mallinckrodt and Express Scripts and receives hundreds of thousands of dollars to promote the sale Acthar); 175, 177-178, 312, (Dr. Tumlin prescribes

6

Acthar for nephrotic syndrome based on limited data); 307, 309, 312, 319, 379, 383-387, 395-396 (Acument is charged inflated prices due to Dr. Tumlin prescribing Acthar for an Acument beneficiary); 308 (Dr. Tumlin prescribes twice the amount of Acthar for Acument's beneficiary); 332, 334, 345 (Dr. Tumlin conspired with Defendants to promote off-label uses of Acthar); 346, 376-379,  (Dr. Tumlin's alleged unfair and deceptive acts or practices).

Nowhere does Express Scripts address these new facts in its argument for dismissal.  As a result, with these additional facts accepted as true, as they must be at this stage, Acument's Complaint demonstrates Acument's standing to sue and the bases for its Tennessee state law claims

## ARGUMENT

## I.    STANDARDS

A Motion to Dismiss under Rule 12.02(6) is "designed to test the sufficiency of the complaint, and dismissal is warranted only when **no set of facts would entitle the plaintiffs to relief."** *Sherwood v. Microsoft Corp.*, No. M2000-01850-COA-R9-CV, 2003 Tenn. App. LEXIS 539, at *6 (Ct. App. July 31, 2003) (citing *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 696 (Tenn. 2002)(emphasis supplied)); *see also, Crews v. Buckman Labs. Int'l, Inc.*, 78 S.W.3d 852, 857 (Tenn. 2002); see *Lanier v. Rains*, 229 S.W.3d 656, 660 (Tenn. 2007); *Doe v. Sundquist*, 2 S.W.3d 919, 922 (Tenn. 1999); *Pemberton v. Am. Distilled Spirits Co*., 664 S.W.2d 690, 691 (Tenn. 1984); *Fuerst v. Methodist Hosp. S*., 566 S.W.2d 847, 848 (Tenn. 1978); *Ladd v. Roane Hosiery, Inc*., 556 S.W.2d 758, 759-60 (Tenn. 1977).

In considering a motion to dismiss, courts "'must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences.'" *Tigg v. Pirelli Tire Corp*., 232 S.W.3d 28, 31-32 (Tenn. 2007) (quoting *Trau-Med,*

71 S.W.3d at 696); *Leach v. Taylor*, 124 S.W.3d 87, 92-93 (Tenn. 2004); *Stein v. Davidson Hotel Co*., 945 S.W.2d 714, 716 (Tenn. 1997); *Bellar v. Baptist Hosp., Inc*., 559 S.W.2d 788, 790 (Tenn. 1978).

A Rule 12.02(6) motion challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence. *Highwoods Props., Inc. v. City of Memphis*, 297 S.W.3d 695, 700 (Tenn. 2009); *Willis v. Tenn. Dep't of Corr*., 113 S.W.3d 706, 710 (Tenn. 2003); *Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A*., 986 S.W.2d 550, 554 (Tenn. 1999); *Sanders v. Vinson*, 558 S.W.2d 838, 840 (Tenn. 1977). The resolution of a Rule 12.02(6) motion to dismiss is determined by an examination of the pleadings alone. *Leggett v. Duke Energy Corp*., 308 S.W.3d 843, 851 (Tenn. 2010); *Trau-Med of Am., Inc. v. Allstate Ins. Co.,* 71 S.W.3d 691, 696 (Tenn. 2002); *Cook ex rel. Uithoven v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934, 938 (Tenn. 1994*); Cornpropst v. Sloan*, 528 S.W.2d 188, 190 (Tenn. 1975)(overruled on other grounds by *McClung v. Delta Square Ltd. P'ship*, 937 S.W.2d 891, 899-900 (Tenn. 1996)). A defendant who files a motion to dismiss "'admits the truth of all of the relevant and material allegations contained in the complaint, but . . . asserts that the allegations fail to establish a cause of action.'" *Brown v. Tenn. Title Loans, Inc*., 328 S.W.3d 850, 854 (Tenn. 2010) (quoting *Freeman Indus., LLC v. Eastman Chem. Co.,* 172 S.W.3d 512, 516 (Tenn. 2005)); see *Edwards v. Allen*, 216 S.W.3d 278, 284 (Tenn. 2007); *White v. Revco Disc. Drug Ctrs., Inc*., 33 S.W.3d 713, 718 (Tenn. 2000); *Holloway v. Putnam Cnty*., 534 S.W.2d 292, 296 (Tenn. 1976).

By operation of Rule 8 of the Tennessee Rules of Civil Procedure, Tennessee follows a liberal, notice pleading standard, *see Leach*, 124 S.W.3d at 92-93, which recognizes that the primary purpose of a pleading is to provide notice of the issues presented to the opposing party

and the court.  *Abshure v. Methodist Healthcare-Memphis Hosps*., 325 S.W.3d 98, 103 (Tenn.

2010); *see also* Robert Banks, Jr. & June F. Entman, Tennessee Civil Procedure § 5–4(a) (3d ed.

2009) ("The essential function of the pleadings is simply to give notice of a claim or defense.

History, as Professors Wright and Miller point out, has shown that the pleadings cannot

successfully do more.") (footnotes omitted).  Our state's notice pleading standard is firmly

established and longstanding; well before the Tennessee Rules of Civil Procedure were adopted,

the Tennessee Supreme Court recognized that "[t]he object and purpose of any pleading is to

give notice of the nature of the wrongs and injuries complained of with reasonable certainty, and

notice of the defenses that will be interposed, and to acquaint the court with the real issues to be

tried." *Hammett v. Vogue, Inc.,* 165 S.W.2d 577, 579 (Tenn. 1942).

As discussed herein, Acument's 405 paragraph, 91-page Complaint easily satisfies the

pleading standards of this state as to all state-law causes of action against Express Scripts.

## II.    THE ELEMENTS OF ACUMENT'S CLAIMS AGAINST EXPRESS SCRIPTS ARE PROPERLY PLEAD.

### A.    Acument Has Standing to Sue for its Antitrust Claims Against Express Scripts under the Tennessee Trade Practices Act, Tenn. Code Ann. § 47-25-101, et seq. (Counts I and II)

The Tennessee Trade Practices Act, Tenn. Code Ann. Section 47-25-101, *et. seq.* (the

"TTPA") is intended "to protect commerce and the consuming public." *Leggett v. Duke Energy*

*Corp.*, No. W2007-00788-COA-R3-CV, 2008 Tenn. App. LEXIS 684, at *7-8 (Ct. App. Oct. 29,

2008).  In Tennessee, "indirect purchasers may bring an action for an injury caused by an alleged

violation of the TTPA." *Id.* (distinguishing *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 747, 97 S.

Ct. 2061, 52 L. Ed. 2d 707 (1977))(citing *Freeman Indus., LLC v. Eastman Chem. Co.*, 172

S.W.3d 512, 517 (Tenn. 2005)).

As alleged in the Complaint, Acument was a purchaser of Mallinckrodt's Acthar

medication.  Cmplt. ¶¶ 16-17, 25.  Express Scripts does not deny this fact; nor could it.  Its records (along with the records of its co-defendants, Mallinckrodt and Dr. Tumlin) will plainly show Acument's payments of $894,617.75 for Acthar once discovery is permitted.

Acument's Tennessee-domiciled beneficiary received Acthar directly from the Defendants via the exclusive distribution network designed and implemented by Mallinckrodt and the Express Scripts Defendants in 2007.  Cmplt. ¶¶ 25, 28, 58-61, 78-80, 98-99, 107. Acthar was shipped directly from Express Scripts' facility (most likely here in Memphis) to the home of Acument's beneficiary where it was self-injected.  Cmplt ¶ 90-91, 98-99, 101-105.  Mallinckrodt then provided "Home Injection Training Services" ("HTTS") directly to Acument's beneficiary, which HITS was coordinated by Express Scripts.  Cmplt. ¶ 82.

Dr. Tumlin prescribed Acthar to Acument's beneficiary.  Cmplt. ¶ 25.  These prescriptions – through the Acthar Start Form attached to the Complaint as Exhibit "A" – set in motion a chain of activity which directly led to Acument's beneficiary obtaining Acthar at home in Tennessee.  Mallinckrodt and Express Scripts' Memphis-based operation communicated directly with Acument's beneficiary about such prescription, and the inflated payments therefor. Cmplt. ¶¶ 25, 28, 61, 78-107.

In 2011, Acument's prescription drug benefits were managed by Medco, which became part of Express Scripts that same year.  As a result, Acument had a direct relationship with the Express Scripts Defendants at the time its beneficiary was placed on Acthar pursuant to the scheme alleged herein.  Unlike the prior complaint filed in the *Rockford Action*, the Complaint here alleges "Acument's prescription drug benefits were administered by Express Scripts" through 2011, when Acument's beneficiary was started on Acthar by Dr. Tumlin.  Acument Cmplt. at ¶ 306; *see also, id*. at 24 ("In July 2011, Medco was acquired by Express Scripts.  …

As of that date – which was the same year that Acument had one of its beneficiaries placed on Acthar – Express Scripts was Acument's PBM"). Because this critical fact was <u>not presented</u> to the Court in the *Rockford Action*, it directly addresses the *Rockford* Court's concerns about Acument's standing under *AGC*. It was only after 2011 that "Acument had moved to CVS/Caremark for its PBM services." *Id*. Consequently, Acument alleges it had a direct relationship with Express Scripts from inception, when its beneficiary was started on Acthar by Dr. Tumlin. That direct relationship undeniably confers standing to sue on Acument.

Even after Acument transitioned its prescription drug benefit to CVS/Caremark, a competitor PBM to Express Scripts, the other aspects of its direct relationship with Express Scripts and Express Scripts remained the same. The Acthar prescribed by Dr. Tumlin to Acument's beneficiary in 2015, and paid for by Acument in 2015 and 2016, was delivered directly to the Acument beneficiary via the exclusive distribution of Express Scripts' CuraScript. The prescription was managed by and through the ASAP program owned and controlled by Mallinckrodt and operated by Express Scripts' UBC. The only change in 2015 was the method of payment: payments were now directed to the Defendants through CVS/Caremark, as opposed to Express Scripts. While Express Scripts has argued this change in payment processing makes causation "too attenuated", Express Scripts Mem. at 8, such argument fails to account for the fact that Tennessee's antitrust statute only applies to *indirect* purchasers. By definition, there is always an intermediary between the plaintiff and the antitrust defendant. Here, that intermediary is CVS/Caremark in 2015. And despite the existence of such intermediary, Acument suffered antitrust harm due to the conduct of the Defendants. The amount charged by Defendants for the Acthar (and paid by Acument to Defendants via CVS/Caremark) was based upon the inflated AWPs as set by Mallinckrodt and Express Scripts. The inflated payments made by Acument

simply travelled through its PBM to the Defendants.  That Acument's inflated payments for Acthar were indirectly made does not undermine its standing under the TTPA, it confirms Acument's status as an indirect purchaser for whom the Tennessee antitrust law exists.

At this early stage in the litigation, and taking all the factual allegations set forth in the Complaint as true, Acument has alleged standing to sue all Defendants, by virtue of its direct and indirect relationships with the corporate Defendants in 2011 and 2015/2016, and direct contacts with Dr. Tumlin at all times.  Express Scripts' arguments against standing and causation ignore the facts of the Complaint, and Tennessee law concerning indirect purchasers.

In seeking dismissal of Acument's Complaint, with prejudice and without leave to re-plead, Mallinckrodt has argued that this Court **should adopt** the federal Supreme Court decision in *Assoc. Gen. Contractors of Cal. Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519 (1983)("*AGC*"), as it pertains to the standards for standing to sue under the federal antitrust law. Express Scripts implicitly agrees in arguing causation of *AGC*, but without the citation.  This Court would be the first Tennessee state court in the thirty-six (36) years since *AGC* was decided to adopt the *AGC* Court's standing rules for antitrust claims brought under the TTPA. Mallinckrodt Mem. at 7 (conceding that "Tennessee state courts have yet to expressly adopt *AGC*").[13]  Mallinckrodt grounds its separate, more explicit request in a rational cobbled from a 1976 decision of the Tennessee Supreme Court – 7 years before *ACG* – wherein the Court simply stated that "the standing doctrine" is used to determine whether a plaintiff "is 'properly situated to prosecute the action.'".  *Id.* (*citing ACLU v. Darnell*, 195 S.W.2d 612 (Tenn. 2006)(further

---

[13] Mallinckrodt is forced to try to point out how *other courts* in *other states* have adopted *AGC*. Mallinckrodt Mem. at 7, n. 2 (identifying "a number of state courts [which] have expressly adopted AGC", but without any legal support for such a sweeping assertion).  It matters only to Express Scripts' Motion to Dismiss that the Tennessee courts have <u>not</u> adopted *AGC*.

*citing Knierim v. Leatherwood*, 542 S.W. 2d 806, 808 (Tenn. 1976)).

*Darnell* did not involve any claims for antitrust[14]; neither did *Knierim*.[15]  Instead, these decisions were directed at general principles of standing to sue in court, *ie*., whether a plaintiff has alleged injury in fact.  Standing to sue is distinct from antitrust standing, to which *AGC* was addressed.  If the Tennessee Supreme Court wished to adopt *AGC* it could have done so, in *Darnell* or at any other opportunity over the last few decades.

In arguing that Plaintiff's "purported overpayment for Acthar is too attenuated."  Express Scripts Mem. at 8, Express Scripts nowhere cites any Tennessee antitrust case finding a lack of standing to sue for an indirect purchaser, like Acument.  The best Express Scripts can do is cite the *Rockford Action*, which dismissed Acument's federal claim for lack of standing based on *AGC*, and with express leave to replead.  The Tennessee case law expressly finds that indirect purchasers, like Acument, have standing to sue.  *See, e.g., Sherwood, supra*; *Leggett, supra.*

It is remarkable that in arguing that Acument lacks standing to sue as an indirect purchaser both Mallinckrodt and Express Scripts fail to mention, let alone discuss, any of the decisions of the Tennessee appellate courts.  For instance, the Court of Appeals in *Sherwood v. Microsoft Corp.*, 2003 Tenn. App. LEXIS 539 (July 31, 2003) reviewed the Supreme Court's decision in *Illinois Brick* (adopting the "indirect purchasers" role for federal antitrust claims), and the decisions of other courts around the country adopting *Illinois Brick* repealers, and unambiguously held as follows:

> The Tennessee act includes no section directing the courts' interpretation. More specifically, **the Tennessee legislature has not included any reference to federal antitrust law and federal interpretations of that law.** Consequently, the [federal] cases listed above are

---

[14] *Darnell* involved "whether the Chancellor erred by refusing to declare Senate Joint Resolution 31 unconstitutional and by refusing to enjoin the Secretary of State from placing a proposed amendment to the Tennessee Constitution on the November 7, 2006 ballot for a ratification vote." 195 S.W.2d at 615.
[15]

useful primarily to distinguish their analysis from the one appropriate in this case. More relevant to our inquiry, although still only persuasive authority, are those decisions by other courts that do not depend upon either an *Illinois Brick* repealer or mandatory direction on interpretation.

\*\*\*

While decisions from other states provide insight into the issues involved, our decision must be based on Tennessee's statute. That statute makes unlawful all arrangements tending to lessen competition in the importation or sale of imported and domestic articles or tending to affect the price "to the producer or **consumer**" of such goods. *Tenn. Code Ann.* § 47-25-101 (emphasis added). Similarly, price fixing agreements to sell and market products manufactured in this state or imported into it to any producer or **consumer** at below cost, to the injury of free competition, are also against public policy, unlawful, and void. Tenn. Code Ann. § 47-25-102 (emphasis added).

In addition to criminal sanctions, the law provides a civil remedy to " Any person who is injured or damaged by such arrangement." Tenn. Code Ann. § 47-25-106. Unlike the federal statute and many state statutes modeled thereon, Tennessee's statute has never included the "any person injured in his business or property" language. Combined with the use of the word "consumer" in Tenn. Code Ann. §§ 47-25-101 and -102, the statute clearly reflects an intent to protect and provide a remedy to individuals who are the ultimate consumers.

\*\*\*

While the purpose of the federal antitrust statutes is to protect competition and commerce, the state act's purposes are to protect both commerce and the consuming public. It is clear that the legislature intended that consumers, or ultimate purchasers, of goods be provided a remedy for any injury, including higher prices, sustained due to the prohibited anticompetitive conduct. There is no basis to presume that the legislature intended to protect only those consumers who purchased directly from the violator. There is clear intent to the contrary. **We hold that indirect purchasers are "persons" who may bring an action for an injury caused by violation of the TTPA.**

*Sherwood*, 2003 Tenn. App. LEXIS 539 at * 93, 97-99 (**emphasis added**).  In *Freeman Indus.,*

*LLC v. Eastman Chem. Co.*, 2004 Tenn. App. LEXIS 321 at * 12 (May 18, 2004), *rev'd on other*

*grounds*, 172 S.W.3d 512 (Tenn. 2005), the Court of Appeals found "the *Sherwood* opinion,

authored by Patricia J. Cottrell, to be an excellent and exhaustive study of the evolution of

antitrust law in this state and a correct interpretation of the TTPA…". The *Freeman* Court then

echoed the *Sherwood* Court's finding that "the TTPA *does* apply to indirect purchasers". *Id*. at

*24 (emphasis in original).

Based on these uncontroverted, Tennessee precedents, construing the TTPA to apply to indirect purchasers, like Acument, Express Scripts' arguments that Acument lacks standing to sue under the TTPA, or causation, based on *AGC* should be rejected, especially in light of the additional factual averments contained in Acument's pleading after the voluntary dismissal was taken from the *Rockford Action*.

### B.   Acument Has Properly Stated Claims for Monopolization and Price Fixing under Tennessee Trade Practices Act, Tenn. Code Ann. § 47-25-101, et seq. (Counts I and II)

The TPPA provides states:

All arrangements, contracts, agreements, trusts, or combinations between persons or corporations made with a view to lessen, or which tend to lessen, full and free competition in the importation or sale of articles imported into this state, or in the manufacture or sale of articles of domestic growth or domestic raw material, and all arrangements, contracts, agreements, trusts, or combinations between persons or corporations designed, or which tend, to advance, reduce, or control the price or the cost to the producer or the consumer of any such product or article, are declared to be against public policy, unlawful, and void.

*Tenn. Code Ann. Section 47-25-101.*

To state a claim under the Tennessee antitrust law, a plaintiff must allege anticompetitive conduct which affects Tennessee trade or commerce to a "substantial degree." *Freeman Industries, LLC v. Eastman Chemical Co*., 172 S.W.3d 512, 523 (Tenn. 2005). The Supreme Court in *Freeman* distinguished "conduct" from "effect," stating that "[t]he focus under the substantial effects standard . . . is not on the anticompetitive conduct itself but on the effects of the conduct on Tennessee commerce." *Id*. at 524. "[T]he test is pragmatic, turning upon the particular facts of the case . . . . The anticompetitive conduct, however, need not threaten the demise of Tennessee businesses or affect market prices to substantially affect intrastate

commerce." *Id*. at 523-24.[16]

Here, Express Scripts concedes that the alleged anticompetitive conduct at issue affected Tennessee trade or commerce. So, this Court need not dwell on the issue.

Instead, Express Scripts argues that dismissal of Acument's antitrust claims is warranted because: (1) Plaintiff does not sufficiently alleged "harm to competition", or (2) Mallinckrodt and Express Scripts "conspired to fix prices." Express Scripts Mem. at 10-13.

Contrary to Express Scripts' claim, without citation to the Complaint, Acument has adequately pleaded a claim for monopolization that "[t]he anticompetitive scheme alleged herein sought to maintain and enhance Express Scripts' monopoly power in the U.S. market for adrenocorticotropic hormone (ACTH) drugs…". Cmplt. at ¶ 2. The Complaint makes the clear distinction that "[t]his case does not seek to challenge the lawfulness of Express Scripts' monopoly. It seeks to challenge the lawfulness of Express Scripts' exercise of monopoly power in conjunction with its co-conspirators, by taking actions to maintain and enhance that monopoly power … in violation of Tennessee antitrust laws." *Id*. at ¶ 5; *see also, id*. at ¶¶ 7-8. The Complaint devotes an entire section titled, "Acthar Distribution: Express Scripts Adopts a 'New Strategy' to Restrict Acthar Distribution to Maintain and Enhance its Monopoly Power over

---

[16] While the *Freeman* court dismissed an indirect purchaser's claims against a business with its principal place of business in Tennessee, the plaintiff failed to allege that any sales of the relevant product took place in Tennessee, only that the defendant, located in Tennessee, had orchestrated the conspiracy from Tennessee. *Id.* at 523-24. In contrast, Acument alleges that both it, and its beneficiary, are located in Tennessee, along with Dr. Tumlin and the Express Scripts Defendants. As a result, substantial sales of Acthar took place in Tennessee, warranting the application of Tennessee antitrust laws to the conduct at issue. In so alleging, Acument's claims fall squarely within the ambit of the TTPA. *See, e.g., In re Wellbutrin XL Antitrust Litig*., 260 F.R.D. 143, 166 (E.D.Pa. 2009)(finding "the amended complaint contains facts that 'raise a reasonable expectation that discovery will reveal evidence of' a substantial effect on the Tennessee economy sufficient to prove a claim under that state's antitrust law.")

Acthar", to the issue of the New Strategy and how that enhanced Mallinckrodt's monopoly

power. *See* Cmplt. at ¶¶ 12, 58-107. Yet, Express Scripts examines none of the section's

detailed allegations in arguing a "failure to plead". The last averment summarizes Plaintiff's

claim as follows:

> Mallinckrodt leveraged and enhanced its monopoly power by limiting the distribution of
> its sole specialty drug to just one specialty pharmacy distributor, CuraScript, and
> employing as its agents, Express Scripts, Accredo and UBC, along with CuraScript, to
> coordinate all aspects of the distribution and sales of Acthar: from prescription by the
> physician, to direct home delivery to the patient, to direct reimbursement by the payor.
> This allowed Mallinckrodt to raise its prices tenfold initially, and nearly double in the
> ensuing years.

Cmplt. ¶107. As other courts instruct, such allegations "have been found sufficient" to sustain

antitrust claims under state law. *Sherwood,* 2003 Tenn. App. LEXIS 539 at 76.

The Complaint then describes how Mallinckrodt sought to further enhance its monopoly

power through the acquisition of Synacthen, "a competitive threat" to Acthar's monopoly.

Cmplt. ¶ 189. This is "harm to competition", as the *Rockford* Court found. In the section titled,

"the Mallinckrodt Synacthen Acquisition and Express Scripts' Role in the Maintenance of

Monopoly Pricing for Acthar," Cmplt. at 43, Acument details how Mallinckrodt set out to

acquire the synthetic version of Acthar, only to deny competitors the ability to compete with

Acthar. *See* Cmplt. ¶¶ 139-141, 187-199, 238-256. This conduct presents a classic case of

monopolization. Both a competitor of Mallinckrodt (Retrophin) and the federal government

(FTC) agreed: they both successfully sued Mallinckrodt for monopolization. Cmplt. at ¶ 226

(incorporating by reference the FTC Complaint attached to Acument's Complaint as Exhibit

"D"), ¶ 257 (incorporating by reference the Retrophin Complaint attached to Acument's

Complaint as Exhibit "E"). Mallinckrodt chose to settle these meritorious claims.

Express Scripts seeks to circumvent Acument's detailed allegations, and the detailed

allegations of the two attached complaints by the FTC and Retrophin, by labeling them

"sweeping, conclusory allegations".  Acument's allegations about the Synacthen acquisition by

Mallinckrodt may be "sweeping", given the expansive breath of Mallinckrodt's and Express

Scripts' unlawful monopolization conduct, but they are far from "conclusory".

　　　　Express Scripts' last argument for dismissal of Plaintiff's antitrust claims simply argues

that "Plaintiff does not allege facts to suggest an agreement" between Express Scripts and

Mallinckrodt "as to the prices Mallinckrodt charges for Acthar.  Since both Mallinckrodt and

Express Scripts were ordered to produce such agreements, and Acument's counsel has such

agreements, they will be made available to the Court at the hearing for its *in camera* inspection.[17]

There is no need to debate the substance of available, written agreements.

### C.　　Plaintiff Properly Pleads a Claim for Relief Under Tennessee Consumer Protection Act (TCPA), Tenn. Code Ann. § 47-18-101 (Count III)

　　　　Express Scripts argues that Acument's TCPA claim (Count III) should be dismissed for

two reasons: (1) the TCPA claim is allegedly based upon allegations of competitive conduct, and

(2) it fails to state a claim under the TCPA.  Express Scripts Mem. at 15, 16.  Both arguments fail

when the Court examines Acument's detailed Complaint.

　　　　First, Express Scripts is wrong that the TCPA is premised on the anticompetitive conduct

that forms the basis of Acument's TTPA claims (Counts I and II).  The Complaint starts with a

discussion of a Qui Tam whistleblower complaint filed against Mallinckrodt in 2012 – five years

before the FTC's antitrust complaint was unsealed.  Cmplt. ¶¶ 200-220 (discussing DOJ case).

In other words, two branches of the same government (FTC and DOJ) sued the same Defendant,

---

[17] Plaintiff counsel is unable to attach these agreements to its pleading due to Defendants'
confidentiality stamps on the documents, and the lack of an order governing the confidentiality
of such documents in this case.

Mallinckrodt.  But, the conduct at issue was different, such that Mallinckrodt has twice settled with the government.  Acument learned of the unsealed DOJ complaint this past summer, after its case in *Rockford* was dismissed.  Acument investigated the DOJ's allegations of wrongful kickbacks to doctors, and concluded that it was affected by the conduct of Dr. Tumlin.  So, it sued Dr. Tumlin.  The Complaint details this wrongful conduct, entirely different from the antitrust conduct (*ie.*, exclusive agreements and Synacthen acquisition).  Cmplt. ¶¶ 278-305.  The Complaint pleads how this separate conduct violated the TCPA.  *Id*. at ¶¶ 367-380.  Such separate conduct is actionable.  Express Scripts cites no authority to the contrary.

Second, Plaintiff has properly pleaded all the requisite elements of the TCPA claim for the separate conduct exposed in the *DOJ* case.  In order to recover under the TCPA, a plaintiff must prove "(1) that the defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA and (2) that the defendant's conduct caused an '"ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated.'"  *Act for Health v. Case Mgmt. Assocs.*, 128 F.Supp. 3d 1020, (E.D.Tenn. 2014 (*quoting Cloud Nine, LLC v. Whaley*, 650 F. Supp. 2d 789, 797-98 (E.D. Tenn. 2009) (*further quoting Tucker v. Sierra Builders*, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005)).  The Tennessee Supreme Court has recognized that a deceptive act or practice includes a material representation, practice or omission likely to mislead a reasonable consumer. *Cloud Nine,* 650 F. Supp. 2d at 796 (*citing Ganzevoort v. Russell*, 949 S.W.2d 293, 299 (Tenn.1997)).

Acument pleads that Express Scripts "misled and deceived Acument and the public about … the lack of value of Acthar for the prices being charged, in order to intentionally and deceptively charge false, misleading and excessive prices for Acthar….  In their promotion of Acthar to treat diseases other than IS, like the DM/PM suffered by Acument's beneficiary.

19

Defendants have disparaged the goods, services or business of other sellers of drugs that treat such disease more effectively and safely, and for much less money, by false or misleading representations of fact.  [Express Scripts'] acts or practices, including the failures to act and to speak the truth in the face of false, misleading and deceptive statements about Acthar's pricing, distribution and value, constitute unfair and deceptive acts or practices."  Cmplt. ¶¶ 376 (f), (g), and (h).  The factual details supporting such averments are set forth at paragraphs 112-157, 158-186, 278-305 of the Complaint.  Express Scripts' isolated "examples" at paragraphs 376, 163-64 (Express Scripts Mem. at 17) ignores the overall factual support elsewhere.  Similar allegations of consumer fraud for the same conduct remain pending before the Federal District Court in Philadelphia, where the *DOJ* case is pending.  *See Steamfitters Local Union No. 420 v. Express Scripts ARD, LLC, et al*, Civil Action No. 2:19-cv-03047-BMS (E.D.Pa.) at ECF No. 1.

Finally, Express Scripts argues "Plaintiff does not plead facts suggesting any purportedly deceptive conduct caused it harm."  Express Scripts Mem. at 19.  Plaintiff properly pleads that it paid over $892,000 for 13 prescriptions of Acthar, a drug that used to costs $40 per dose, based upon the inflated AWPs set by Mallinckrodt and Express Scripts, and that the damage is "the difference between the true price of Acthar" before the unlawful conduct "and the inflated prices charged to Plaintiff".  Cmplt. ¶¶ 13-17, 25, 377.  Plaintiff explicitly alleges this is an "ascertainable loss of money" under the TCPA.  Cmplt. ¶¶ 18, 373.

Express Scripts' willful misrepresentations that the "average wholesale prices" or AWPs of Acthar, which they inflated and which AWPs Acument paid, represented actual "average wholesale prices" for Acthar or "some price reasonably related thereto".  Cmplt. ¶¶ 391, 393.  What Express Scripts calls "vague and conclusory allegations", other courts have found to constitute consumer fraud.  *See, e.g., In re Pharmaceutical Industry Average Wholesale Price*

*Litigation v. AstraZeneca*, 582 F.3d 156 (1st Cir. 2009) (affirming trial court's finding drug company liable for unfair and deceptive business practices for publishing inaccurate AWPs); *Watson Labs., Inc. v. State*, 214 S. 2d 573 (Miss. 2018)(same); *Com. of Pennsylvania v. TAP Pharm. Prods.*, 36 A.2d 1197, (Pa. Cmwlth. 2011), vacated on other grounds, 626 Pa. 1, 94 A.2d 350 (2014)(same); *State of Wisconsin v. Abbott Labs., et. al.,* 341 Wis. 2d 510, 816 N.W.2d 145 (2012)(affirming $9mm jury award); *Sandoz, Inc. v. State* (*In re Miss. Medicaid Pharm. Average Wholesale Price Litig.*), 190 So. 3d 829, 842 (Miss. 2015)("The trial court did not err in finding that Sandoz's practice of reporting false AWPs was a deceptive trade practice. The 'prices' were exaggerated to an extent that they were not even prices. Providing false information is deceptive. . . ."); *see also, In re Lupron Mktg. & Sales Practices Litig.*, 295 F.Supp. 2d 148, 181-82, n. 35 (denying motion to dismiss consumer fraud claims for AWP inflation under multiple state's laws); *Cf. People of the State of New York v. Pharmacia Corp.*, 27 Misc. 3d 368, 895 N.Y.S.2d 682, 693-94 (N.Y. Sup. Ct. 2010)(denying cross-motions for summary judgment on consumer fraud claims).

### D.     Plaintiff States a Claim for Unjust Enrichment (Count IV)

Under Tennessee law, to establish a claim for unjust enrichment, one must plead: "1) '[a] benefit conferred upon the defendant by the plaintiff'; 2) 'appreciation by the defendant of such benefit'; and 3) 'acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof.'" *Cole v. Caruso,* No. W2017-00487-COA-R3-CV, 2018 Tenn. App. LEXIS 146, at *9 (Ct. App. Mar. 20, 2018) (quoting *Freeman Indus. LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005); *see also, Paschall's, Inc. v. Dozier*, 219 Tenn. 45, 407 S.W.2d 150, 155 (Tenn. 1966)(reversing dismissal of unjust enrichment claim). An unjust enrichment case "must be examined in light of its factual situation and decided according to the essential elements of unjust enrichment." *Id.*

(quoting *Bridgeforth v. Jones*, No. M2013-01500-COA-R3-CV, 2015 Tenn. App. LEXIS 35, 2015 WL 336376, at *19 (Tenn. Ct. App. Jan. 26, 2015) (citing *B & L Corp. v. Thomas & Thorngren, Inc.*, 917 S.W.2d 674, 680 (Tenn. Ct. App. 1995)).   "The Tennessee Supreme Court has noted that the most significant requirement in a claim for unjust enrichment is that the enrichment to the defendant be unjust."  *Id.* (citing *Freeman Indus., LLC.*, 172 S.W.3d at 525).  Importantly, "[a] plaintiff need not be privity with a defendant to recover under a claim of unjust enrichment."  *Freeman Indus.*, 172 S.W.3d at 31 (citing *Paschall's, Inc.*, 407 S.W.2d at 154).

Express Scripts does not challenge Acument's statement of a claim as to unjust enrichment. Instead, it argues that it "rel[ies] on the same alleged misconduct" that underlies Plaintiff's other claims.  It seeks dismissal for Acument's alleged failure to "exhaust" administrative remedies available to it against CVS/Carmark, with whom the Plaintiff enjoyed privity of contract in 2015.  But, Express Scripts jumps to the conclusion that the only such person with whom Plaintiff had privity was CVS/Caremark, Acument's PBM in 2015.  Express Scripts ignores the fact that Plaintiff has sued, and therefore is exhausting its remedies" against the two parties with whom it had privity of contract in 2011, when its patient was started on Acthar, Dr. Tumlin **and Express Scripts**.  Express Scripts cites only the language in *Freeman Indus.* and the *Rockford* Court's opinion on the same issue.  *Id.* (citing *Rockford*, 360 F.Supp. 3d at 772).[18]  But, neither decision addresses the situation at bar.

The *Freeman* Court, ruling on a summary judgment record, held that where a plaintiff has

---

[18] The *Rockford* Court cited as support only an unreported Tennessee federal court decision, which in turn drew upon "the Supreme Court's recent pronouncement in *Twombly*" as authority for finding a failure of pleading.  *Spahr v. Leegin Creative Leather Prods.*, 2008 U.S.Dist. LEXIS 90079 at * 47 (E.D.Tenn. Aug. 20, 2008).  Because the Tennessee Supreme Court rejected *Twombly*, *see supra*. n.23 and Acument amended its pleading since Rockford to (1) sue Dr. Tumlin, and (2) clarify that it was in privity with Express Scripts in 2011.  Therefore, the *Rockford* decision is not authoritative or binding on the issue of "exhaustion".

demonstrated exhaustion, as here, "the burden shifts" to the moving defendant "to provide facts establishing the existence of disputed issues of material fact that must be resolved by the trier of fact." *Freeman Indus.*, 172 S.W.3d at 526.  Express Scripts has not provided any facts in the record to show that Acument's suit against its co-Defendants, with whom Acument was in privity, does not satisfy the exhaustion requirement for its unjust enrichment claim.  Indeed, the only cited authority, Freeman Indus., was decided on summary judgment, not Rule 12.02(6).

### E.   Plaintiff Pleads a Cognizable Claim for Fraud (Count V)

In Tennessee, the elements of fraud are "(1) an intentional misrepresentation of a material fact, (2) knowledge of the representation's falsity, ... (3) an injury caused by reasonable reliance on the representation [and (4) the requirement] that the misrepresentation involve a past or existing fact...".  *Dobbs v. Guenther*, 846 S.W.2d 270, 274 (Tenn.Ct.App. 1992).

Concealment or nondisclosure of a material fact may also constitute fraud.  *Soles4Souls, Inc. v. Donelson Cedarstone Assocs., LP*, No. M2009-01906-COA-R3-CV, 2010 Tenn. App. LEXIS 786, at *35-36 (Ct. App. Dec. 17, 2010). "For the nondisclosure to constitute fraud, the charged party must have knowledge of an existing fact or condition and a duty to disclose that fact or condition. The fact or condition must be a material fact affecting the essence of the subject matter of the contract."  *Id.* (quoting *Odom v. Oliver*, 310 S.W.3d 344, 349 (Tenn. Ct. App. 2009)).

As stated in the Complaint, Express Scripts engaged in fraudulent concealment and deception in violation of Tennessee law when it made, *inter alia*, the following misrepresentations and material omissions[19]:

---

[19] This is not intended to be an exhaustive list of Express Scripts' fraud and deception as the Complaint contains additional examples of Express Scripts' fraudulent and deceptive conduct.

1.      Mallinckrodt and Express Scripts have willfully manipulated and inflated the AWP prices of Acthar paid by Acument, in contravention of explicit OIG Guidelines, causing Plaintiff to substantially overpay for a drug with very limited uses and benefits and an unknown method of action.  Cmplt. ¶ 12-17, 25, 112-157, 165, 271-272).

2.      Mallinckrodt and Express Scripts knowingly misrepresented the purported efficacy, safety and value of Acthar for the treatment of unapproved conditions and unapproved doses in its promotional and marketing materials. Cmplt. ¶¶ 158-186.

3.      Mallinckrodt and Express Scripts engaged doctors as KOLs, including Dr. Tumlin, to misrepresent the value of Acthar patients and payors, and deceive them about the mode of action for Acthar (which remains unknown) and the approved uses and doses for Acthar. Cmplt. ¶¶ 278-305.

The details of these distinct acts of misrepresentation and deception are set forth in the

Complaint.  Nothing more is required at this juncture.

   **F.**  **The Complaint States a Claim under Count VI for Conspiracy to Defraud/Concerted Action.**

As a matter of Tennessee law, Plaintiff's Count VI conspiracy claim should not be

dismissed.  "The elements of a cause of action for civil conspiracy are: (1) a common design

between two or more persons, (2) to accomplish by concerted action an unlawful purpose, or a

lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4)

resulting injury."  *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32 (Tenn. Ct. App. 2006).  Here, the

corporate defendants signed an exclusive agreement in 2007 to raise and fix the prices of Acthar.

They then signed agreements with Dr. Tumlin to market and sell their high-priced drug to

patients, regardless of the cost to payors, like Acument, or the value.  The Complaint is replete

with "overt acts in furtherance" of such agreements.  The only issue is whether there exists an

"underlying predicate tort allegedly committed pursuant to the conspiracy."  *Lane v. Becker*, 334

S.W.3d 756, 763 (Tenn. Ct. App. 2010).  Plaintiff submits it has pled actionable claims of

statutory consumer fraud under the TCPA, common law fraud, and unjust enrichment, any of

which is sufficient to support Plaintiff's conspiracy claim against all Defendants.

## **CONCLUSION**

The Complaint filed by Acument in this Court is demonstrably different from the Complaint filed in the *Rockford Action*. But rather than address these material differences, Express Scripts glosses over them. Express Scripts Mem. at 1 ("Plaintiff's lawsuit is a textbook") Without any analysis of the actual averments of the Complaint *in this case*, Express Scripts urges this Court to dismiss this case, with prejudice and without leave to re-plead, something even the *Rockford* Court did not do.

Because Acument has not filed any federal antitrust claims, the *Rockford* precedent is of limited value to this Court. To the extent the *Rockford* Court provided guidance as to Acument's Tennessee state law claims, such guidance was followed, and new factual averments were added. As a result, this new pleading must be judged under Tennessee law and the Tennessee pleading standards. When so judged, this Court should easily find that the Complaint adequately pleads Acument's standing to sue for its economic losses in paying the inflated prices for Acthar, as set by Mallinckrodt and the Express Scripts Defendants, and as charged by Dr. Tumlin through the Acthar Start From (Complaint Exhibit "A") and the ASAP program. The Complaint adequately states causes of action for violations of the Tennessee Trade Practices Act, § 47-25-101, *et. seq.* (Count I, monopolization, and Count II, anticompetitive agreements), violations of the Tennessee Consumer Protection Act, § 47-18-101, *et. seq.*, (Count III), and common fraud (Count V), conspiracy (Count VI) and unjust enrichment (Count IV).

For these reasons, Express Scripts' Motion to Dismiss should be denied.

Respectfully submitted,

Dated: <u>October 16, 2019</u>

By:

Patrick M. Ardis, Esq.
(TN BPR No. 008263)
Daniel V. Parish, Esq.
(TN BPR No. 027452)
WOLFF ARDIS, P.C.
5810 Shelby Oaks Drive
Memphis, TN 38134
Ph: 901-763-3336
Fax: 901-763-3376
pardis@wolffardis.com
dparish@wolfardis.com

Donald E. Haviland, Jr., Esq.
(*pro hac vice pending*)
William H. Platt II, Esq.
(*pro hac vice pending*)
HAVILAND HUGHES
201 S. Maple Way, Suite 110
Ambler, PA 19002
Ph: 215-609-4661
Fax: 215-392-4400
*haviland@havilandhughes.com*
*platt@havilandhughes.com*

*Attorneys for Acument Global
Technologies, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been delivered via U.S. mail and electronic mail this 16th day of October, 2019.

Nathan A. Bicks, Esq.
William D. Irvine, Jr., Esq.
Lani Lester, Esq.
Burch, Porter & Johnson PLLC
130 North Court Avenue
Memphis, TN 38103

*Attorneys for the Express Scripts Defendants*

Eric C. Lyttle, Esq.
Michael D. Bonanno, Esq.
Ethan C. Glass, Esq.
Meghan A. McCaffrey, Esq.
Michael Lyle, Esq.
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street, NW
Washington D.C. 20005

*Attorneys for the Express Scripts Defendants*

Kirk A. Caraway, Esq.
Allen, Summers, Simpson, Lillie &
Gresham, PLLC
Brinkley Plaza
80 Monroe Avenue, Suite 650
Memphis, TN 3810-2466

*Attorneys for James A. Tumlin, M.D.*

Daniel W. Van Horn, Esq.
Kathryn K. Van Namen, Esq.
Diana M. Comes
*Butler Snow LLP*
6075 Poplar Ave., 5th Floor
Memphis, TN 38119

*Attorneys for Express Scripts Defendants*

Sonia K. Pfaffenroth, Esq.
Laura Shores, Esq.
Ryan Z. Watts, Esq.
Matthew M. Wolf, Esq.
Arnold & Porter
601 Massachusetts Ave., NW
Washington, D.C. 20001-3743

*Attorneys for Express Scripts Defendants*

Bill Dillon, Esq.
Daniel B. Brown, Esq.
Taylor English Duma LLP
1600 Parkwood Circle, Suite 200
Atlanta, Georgia 30339

*Attorneys for James A. Tumlin, M.D.*

Daniel V. Parish, Esq.

ELECTRONICALLY FILED
2019 Oct 16 4:10 PM
CLERK OF COURT

**IN THE CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE
FOR THE THIRTIETH JUDICIAL CIRCUIT AT MEMPHIS**

| | |
|---|---|
| **ACUMENT GLOBAL TECHNOLOGIES, INC.,**<br><br>Plaintiff,<br>v.<br><br>**MALLINCKRODT ARD, INC., *et al.*,**<br><br>Defendants. | **DOCKET NO. CT-2275-19**<br><br>DIVISION: VII<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF ACUMENT GLOBAL TECHNOLOGIES, INC.'S
OPPOSITION TO DEFENDANT JAMES A. TUMLIN, M.D.'S
MOTION TO DISMISS COMPLAINT**

Plaintiff Acument Global Technologies, Inc., (hereinafter "Acument" or "Plaintiff") by and through its undersigned counsel hereby files its Response in Opposition to Defendant James A. Tumlin, M.D.'s (hereinafter "Dr. Tumlin") Motion to Dismiss Complaint.

## **INTRODUCTION**

In a telling sign that Dr. Tumlin's Atlanta-based counsel has worked closely with Mallinckrodt's Atlanta-based counsel on their respective briefs in support of their Motions to Dismiss Acument's Complaint, Dr. Tumlin prefaces his argument with a curious argument that the Complaint here "is little more than a restatement of the allegations dismissed" in the prior action brought by Acument.  Dr. Tumlin Mem. at 1. But, Dr. Tumlin was not sued in the *Rockford Action*.  *See* Second Amended Complaint, ECF No. 98, filed in *City of Rockford v. Mallinckrodt ARD, Inc.*, No. 17-cv-50107 (N.D.Ill. Apr. 6, 2017) (the "*Rockford Action*").  So, anything Dr. Tumlin has to say about did or did not happen in the *Rockford Action*,[1] is from he

---

[1] Dr. Tumlin's lack of understanding of the proceedings in *Rockford* is demonstrated by his opening salvo, contending that Acument was "granted" two "opportunities to amend the

has read, or what he has been told.  Either way, his views of the *Rockford Action* provide little guidance to this Court in ruling on his present Motion to Dismiss.

It is also curious that Dr. Tumlin would resort to an analogy involving a train, in a case involving an alleged conspiracy among the Defendants, to argue his point that he is "like an empty box car hitched to the end of a railroad train."  Dr. Tumlin Mem. at 2.  Certainly, Dr. Tumlin's counsel is familiar with the "well-known simile that a conspiracy is like a train.  When a party knowingly steps aboard, he is part of the crew, and assumes conspirator's responsibility for the existing freight -- or conduct -- regardless of whether he "is aware of just what it is composed."  *United States v. Baines*, 812 F.2d 41, 42 1st Cir. 1987).  "Verbal acts in furtherance of the conspiracy", like the ones Acument alleges Dr. Tumlin committed, are treated no "different form physical acts."  *Id*.

Dr. Tumlin's unsolicited proffer of his resume and credentials at various times in his moving papers, respectfully, has no bearing on whether Acument has pleaded a case against him, for conspiracy or otherwise.  *See, e.g*., Dr. Tumlin Mem. at 2-4, 5-14.[2]  If all Dr. Tumlin is proven by Acument to have done in this case is conspired and agreed with Mallinckrodt and/or others to assist them in *their commission* of acts or practices in violation of the TCPA, or the Tennessee common law, he could still be held liable "for existing freight" on the train to which he chose to hitch his boxcar, whether itself empty or not.

---

Complaint".  Dr. Tumlin Mem. at 2.  In fact, Acument was granted leave to replead by the Court only once, and that new pleading is the case Complaint filed here, naming Dr. Tumlin.  *City of Rockford v. Mallinckrodt ARD, Inc.*, 360 F. Supp. 3d 730 (N.D. Ill. 2019)(wherein the Illinois Court "grant[ed] plaintiffs leave to replead within 45 days of the date of this order to correct the deficiencies as noted in this opinion.")

[2] Likewise, Dr. Tumlin's individual views of Acthar, and its efficacy, Mallinckrodt and Express Scripts, and sundry other topics he discussed in his Motion – outside the four corners of the Complaint – are equally irrelevant to his Motion under Rule 12.02(6).

Dr. Tumlin seeks to diminish his role in causing Acument to be overcharge nearly

$900,000 for a drug that used to cost $40.00.  It's the same generic drug as it has been since

1952, no better or worse.  The only thing that changed was how Mallinckrodt chose to price,

market and sell it.  Mallinckrodt needed doctors to help to promote this "orphan drug" to others

in the medical community.  Dr. Tumlin raised his hand, and since at least 2011, he has assisted

Mallinckrodt in making Acthar the billion-dollar product it is for the company today.  (Along the

way, Dr. Tumlin was paid a meager stipend – a few hundred thousand dollars out of

Mallinckrodt's billions -- for his efforts.)

Without Dr. Tumlin, Acument's beneficiary does have Acthar prescribed, and Acument

does not have to pay nearly $900,000 for an old drug of questionable efficacy, safety and value

for the disease at issue.  Whether or not Dr. Tumlin was a "corporate shill" of Mallinckrodt and

Express Scripts is not the issue.  Dr. Tumlin Mem. at 2.  The only issue is whether Acument has

properly pleaded claims under Tennessee law against the good doctor.  Acument submits that it

has, and that Dr. Tumlin's Motion to Dismiss should be denied.[3]

Cutting through the surplusage of Dr. Tumlin's Motion, and when judged by this Court

on its merits, Acument's Complaint passes judicial muster under the Tennessee Rules of Court.

The state statutory cause of action consumer fraud (Count III) adequately pleads all the

prerequisites of the TCPA against Dr. Tumlin for his words and actions discussed herein.  As the

Court well knows, the Plaintiff is the master of its Complaint, and ***its*** factual averments – not

those of Dr. Tumlin – must be accepted as true at this juncture.  Dr. Tumlin will have his

---

[3] To the extent this Court were to find Acument's complaint deficient in any material respect, leave to replead should be granted. *Jones v. Prof'l Motorcycle Escort Serv., LLC,* 193 S.W. 3d 564, 569 (Tenn. 2006)("leave is to be freely given when justice so requires").

opportunity to prove an alternate set of facts, after discovery.[4]

For these reasons, Dr. Tumlin's Motion to Dismiss should be denied.

## BACKGROUND

Dr. Tumlin concedes that his Background discussion is "not essential to whether or not a cause of action is stated." Dr. Tumlin Mem. at 3. Accordingly, is not necessary for Acument to address such "nonessential" discussion in responding to a Motion to Dismiss a Complaint with detailed, essential facts consisting of 405 factual and legal averments, covering 87 pages, including 6 Counts under Tennessee law. In a word, the Complaint is well-pleaded.

## ARGUMENT

## I.   STANDARDS

A Motion to Dismiss under Rule 12.02(6) is "designed to test the sufficiency of the complaint, and dismissal is warranted only when **no set of facts would entitle the plaintiffs to relief.**" *Sherwood v. Microsoft Corp.*, No. M2000-01850-COA-R9-CV, 2003 Tenn. App. LEXIS 539, at *6 (Ct. App. July 31, 2003) (citing *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 696 (Tenn. 2002)(emphasis supplied)); *see also, Crews v. Buckman Labs. Int'l, Inc.*, 78 S.W.3d 852, 857 (Tenn. 2002); see *Lanier v. Rains*, 229 S.W.3d 656, 660 (Tenn. 2007); *Doe v. Sundquist*, 2 S.W.3d 919, 922 (Tenn. 1999); *Pemberton v. Am. Distilled Spirits Co.*, 664 S.W.2d 690, 691 (Tenn. 1984); *Fuerst v. Methodist Hosp. S.*, 566 S.W.2d 847, 848 (Tenn. 1978); *Ladd v. Roane Hosiery, Inc.*, 556 S.W.2d 758, 759-60 (Tenn. 1977).

---

[4] It is curious that Mallinckrodt undertakes to argue a factual position in its brief on behalf of its co-Defendant, Dr. Tumlin, that he himself has not proffered in his separate Motion to Dismiss. *Compare* Mallinckrodt Mem. at 3 (the patient's physician … must have … approved the payment of the price being paid") *with* Mem. of Law in Support of Defendant James A. Tumlin, M.D.'s Motion to Dismiss Complaint ("*Tumlin Mem.*") at 2 ("Dr. Tumlin simply has no role in the … pricing … of the drug. Like the Plaintiff, Dr. Tumlin [is] powerless to influence [Acthar's price] level.") Such factual disputes between the Defendants underscore why the Rules require that only the *Plaintiff's alleged facts* be deemed true on a motion to dismiss.

In considering a motion to dismiss, courts "'must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences.'" *Tigg v. Pirelli Tire Corp.*, 232 S.W.3d 28, 31-32 (Tenn. 2007) (quoting *Trau-Med*, 71 S.W.3d at 696); *Leach v. Taylor*, 124 S.W.3d 87, 92-93 (Tenn. 2004); *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn. 1997); *Bellar v. Baptist Hosp., Inc.*, 559 S.W.2d 788, 790 (Tenn. 1978).

A Rule 12.02(6) motion challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence.  *Highwoods Props., Inc. v. City of Memphis*, 297 S.W.3d 695, 700 (Tenn. 2009); *Willis v. Tenn. Dep't of Corr.*, 113 S.W.3d 706, 710 (Tenn. 2003); *Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A.*, 986 S.W.2d 550, 554 (Tenn. 1999); *Sanders v. Vinson*, 558 S.W.2d 838, 840 (Tenn. 1977).  The resolution of a Rule 12.02(6) motion to dismiss is determined by an examination of the pleadings alone. *Leggett v. Duke Energy Corp.*, 308 S.W.3d 843, 851 (Tenn. 2010); *Trau-Med of Am., Inc. v. Allstate Ins. Co.,* 71 S.W.3d 691, 696 (Tenn. 2002); *Cook ex rel. Uithoven v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934, 938 (Tenn. 1994*); Cornpropst v. Sloan*, 528 S.W.2d 188, 190 (Tenn. 1975)(overruled on other grounds by *McClung v. Delta Square Ltd. P'ship*, 937 S.W.2d 891, 899-900 (Tenn. 1996)).  A defendant who files a motion to dismiss "'admits the truth of all of the relevant and material allegations contained in the complaint, but . . . asserts that the allegations fail to establish a cause of action.'"  *Brown v. Tenn. Title Loans, Inc.*, 328 S.W.3d 850, 854 (Tenn. 2010) (quoting *Freeman Indus., LLC v. Eastman Chem. Co.,* 172 S.W.3d 512, 516 (Tenn. 2005)); see *Edwards v. Allen*, 216 S.W.3d 278, 284 (Tenn. 2007); *White v. Revco Disc. Drug Ctrs., Inc.*, 33 S.W.3d 713, 718 (Tenn. 2000); *Holloway v. Putnam Cnty.*, 534 S.W.2d 292, 296 (Tenn. 1976).

By operation of Rule 8 of the Tennessee Rules of Civil Procedure, Tennessee follows a liberal, notice pleading standard, *see Leach*, 124 S.W.3d at 92-93, which recognizes that the primary purpose of a pleading is to provide notice of the issues presented to the opposing party and the court. *Abshure v. Methodist Healthcare-Memphis Hosps*., 325 S.W.3d 98, 103 (Tenn. 2010); *see also* Robert Banks, Jr. & June F. Entman, Tennessee Civil Procedure § 5–4(a) (3d ed. 2009) ("The essential function of the pleadings is simply to give notice of a claim or defense. History, as Professors Wright and Miller point out, has shown that the pleadings cannot successfully do more.") (footnotes omitted).  Our state's notice pleading standard is firmly established and longstanding; well before the Tennessee Rules of Civil Procedure were adopted, the Tennessee Supreme Court recognized that "[t]he object and purpose of any pleading is to give notice of the nature of the wrongs and injuries complained of with reasonable certainty, and notice of the defenses that will be interposed, and to acquaint the court with the real issues to be tried." *Hammett v. Vogue, Inc.,* 165 S.W.2d 577, 579 (Tenn. 1942).

As discussed herein, Acument's 405 paragraph, 91-page Complaint easily satisfies the pleading standards of this state as to all state-law causes of action against Dr. Tumlin.

## II.     THE ELEMENTS OF ACUMENT'S CLAIMS AGAINST DR. TUMLIN ARE PROPERLY PLEAD.

### 1.     Plaintiff's Claims for Relief Against Dr. Tumlin

Dr. Tumlin argues that he has not been sued, based upon some reference to paragraph 47 of the Complaint.  Dr. Tumlin Mem. at 15.  This hyper-technical argument should be rejected. There is no question Dr. Tumlin has been named in the caption, and the Defendants, and the Counts of the Complaint.  He was served with the Complaint and has filed a Motion to Dismiss.

However, to avoid any confusion by the Court, to the extent Plaintiff's Complaint may be read to include Dr. Tumlin in Plaintiff's antitrust causes of action under the TTPA (Counts I and

II),[5] Plaintiff does not intend to pursue such causes of action against him.  Accordingly, the balance of this Memorandum will address Counts III through VI.

> **2.      Acument Properly Pleads a Claim Against Dr. Tumlin Under the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 (Count III)**

Like Mallinckrodt, Dr. Tumlin argues that Acument's TCPA claim (Count III) should be dismissed for two reasons: (1) the TCPA claim "is entirely premised upon allegations of competitive conduct", and (2) "even if [the claim] could be construed as premised upon something other than allegations of anticompetitive conduct, it nevertheless fails to state a claim under the TCPA."  Dr. Tumlin Mem. at 18.  Both arguments fail when the Court examines Acument's Complaint.

First, Dr. Tumlin is wrong that the TCPA is "entirely premised" on the anticompetitive conduct that forms the basis of Acument's TTPA claims (Counts I and II).  The Complaint starts with a discussion of a Qui Tam whistleblower complaint filed against Mallinckrodt in 2012 – five years before the FTC's antitrust complaint was unsealed.  Cmplt. ¶¶ 200-220 (discussing DOJ case).  In other words, two branches of the same government (FTC and DOJ) sued the same Defendant, Mallinckrodt.  But, the conduct at issue was different, such that Mallinckrodt has twice settled with the government.  Importantly, the DOJ case revealed for the first time that Mallinckrodt was conspiring with doctors, like Dr. Tumlin, to promote the sale of Acthar for unapproved uses and doses through a scheme of kickbacks.  The charges were brought by three (3) former sales representatives of Mallinckrodt who witnesses firsthand such collusive activity. In a separate Complaint filed in Philadelphia Federal District Court, Dr. Tumlin has been expressly named and his unlawful conduct has been detailed, even moreso than in Acument's

---

[5] Dr. Tumlin argues "Plaintiff makes no claim against Dr. Tumlin under Count I."  Dr. Tumlin Mem. at 15.  Plaintiff agrees.

pleadings. *See Steamfitters Local Union No. 420 v. Mallinckrodt ARD, LLC, et al*, Civil Action No. 2:19-cv-03047-BMS (E.D.Pa.) at ECF No. 1 ("*Local 420 Action*").

Acument only learned of the unsealed *DOJ* complaint this past summer, after its case in *Rockford* was dismissed. Acument investigated the DOJ's allegations of wrongful kickbacks to doctors, and concluded that it was affected by the conduct of Dr. Tumlin. So, it sued Dr. Tumlin. The Complaint details this wrongful conduct, entirely different from the antitrust conduct (*ie.*, exclusive agreements and Synacthen acquisition). Cmplt. ¶¶ 278-305. The Complaint pleads how this separate conduct violated the TCPA. *Id*. at ¶¶ 367-380. Such separate conduct is actionable. Dr. Tumlin cites no authority to the contrary.

Second, Plaintiff has properly pleaded all the requisite elements of the TCPA claim for the separate conduct exposed in the *DOJ* case. In order to recover under the TCPA, a plaintiff must prove "(1) that the defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA and (2) that the defendant's conduct caused an "'ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated.'" *Act for Health v. Case Mgmt. Assocs.*, 128 F.Supp. 3d 1020, (E.D.Tenn. 2014 (*quoting Cloud Nine, LLC v. Whaley*, 650 F. Supp. 2d 789, 797-98 (E.D. Tenn. 2009) (*further quoting Tucker v. Sierra Builders*, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005)). The Tennessee Supreme Court has recognized that a deceptive act or practice includes a material representation, practice or omission likely to mislead a reasonable consumer. *Cloud Nine*, 650 F. Supp. 2d at 796 (*citing Ganzevoort v. Russell*, 949 S.W.2d 293, 299 (Tenn.1997)).

Acument pleads that Dr. Tumlin "misled and deceived Acument and the public about … the lack of value of Acthar for the prices being charged, in order to intentionally and deceptively charge false, misleading and excessive prices for Acthar…. In their promotion of Acthar to treat

diseases other than IS, like the DM/PM suffered by Acument's beneficiary, Defendants have disparaged the goods, services or business of other sellers of drugs that treat such disease more effectively and safely, and for much less money, by false or misleading representations of fact. [Dr. Tumlin's] acts or practices, including the failures to act and to speak the truth in the face of false, misleading and deceptive statements about Acthar's pricing, distribution and value, constitute unfair and deceptive acts or practices."  Cmplt. ¶¶ 376 (f), (g), and (h).  The factual details supporting such averments are set forth at paragraphs 112-157, 158-186, 278-305 of the Complaint.  Dr. Tumlin's isolated "examples" at paragraphs 376-79 (Dr. Tumlin Mem. at 19) ignores the overall factual support elsewhere.  Similar allegations of consumer fraud for the same conduct remain pending before the Federal District Court in Philadelphia in the *Local 420 Action*, where the *DOJ* case also is pending.

Finally, Dr. Tumlin claims that Acument's pleading lacks the "who, what, when, to whom, and how" he actually committed consumer fraud.  Dr. Tumlin Mem. at 20.  But, TCPA claims involving deception do not require the same specificity as claims for common law fraud, which included the elements of intent and reliance that the TCPA does not require.  Even so, the Complaint provides the detail required to give Dr. Tumlin reasonable notice as to why he has been sued.  Additional detail lies with the control of Dr. Tumlin, and the other defendants.

### 3. Acument Properly Pleads Claim Against Dr. Tumlin for Unjust Enrichment (Count IV)

Under Tennessee law, to establish a claim for unjust enrichment, one must plead: "1) '[a] benefit conferred upon the defendant by the plaintiff'; 2) 'appreciation by the defendant of such benefit'; and 3) 'acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof.'" *Cole v. Caruso,* No. W2017-

00487-COA-R3-CV, 2018 Tenn. App. LEXIS 146, at \*9 (Ct. App. Mar. 20, 2018)

(quoting *Freeman Indus. LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005); *see also, Paschall's, Inc. v. Dozier*, 219 Tenn. 45, 407 S.W.2d 150, 155 (Tenn. 1966)(reversing dismissal of unjust enrichment claim). An unjust enrichment case "must be examined in light of its factual situation and decided according to the essential elements of unjust enrichment." *Id.* (quoting *Bridgeforth v. Jones*, No. M2013-01500-COA-R3-CV, 2015 Tenn. App. LEXIS 35, 2015 WL 336376, at \*19 (Tenn. Ct. App. Jan. 26, 2015) (citing *B & L Corp. v. Thomas & Thorngren, Inc.*, 917 S.W.2d 674, 680 (Tenn. Ct. App. 1995)). "The Tennessee Supreme Court has noted that the most significant requirement in a claim for unjust enrichment is that the enrichment to the defendant be unjust." *Id.* (citing *Freeman Indus., LLC.*, 172 S.W.3d at 525). Importantly, "[a] plaintiff need not be privity with a defendant to recover under a claim of unjust enrichment." *Freeman Indus.*, 172 S.W.3d at 31 (citing *Paschall's, Inc.*, 407 S.W.2d at 154).

Dr. Tumlin does not challenge Acument's statement of a claim as to unjust enrichment. Instead, he seeks dismissal for Acument's alleged "failure to exhaust administrative remedies" available to it against "the person with whom the plaintiff enjoyed privity of contract". But, Dr. Tumlin **is that person**. He concedes that he wrote "the prescription for Acthar" to Acument's patient beneficiary. Dr. Tumlin was paid by both the patient and Acument for the office visit, and it was out of the monies patients and the payors paid for Acthar that he was paid his substantial monies by which he was unjustly enriched. The *Rockford* Court's ruling says nothing about the liability of a prescribing doctor for unjust enrichment

### 4.   Acument Properly Pleads a Claim Against Dr. Tumlin for Fraud (Count V)

In Tennessee, the elements of fraud are "(1) an intentional misrepresentation of a material fact, (2) knowledge of the representation's falsity, ... (3) an injury caused by reasonable reliance on the representation [and (4) the requirement] that the misrepresentation involve a past or existing fact...". *Dobbs v. Guenther*, 846 S.W.2d 270, 274 (Tenn.Ct.App. 1992).

10

Concealment or nondisclosure of a material fact may also constitute fraud. *Soles4Souls, Inc. v. Donelson Cedarstone Assocs., LP*, No. M2009-01906-COA-R3-CV, 2010 Tenn. App. LEXIS 786, at *35-36 (Ct. App. Dec. 17, 2010). "For the nondisclosure to constitute fraud, the charged party must have knowledge of an existing fact or condition and a duty to disclose that fact or condition. The fact or condition must be a material fact affecting the essence of the subject matter of the contract." *Id.* (quoting *Odom v. Oliver*, 310 S.W.3d 344, 349 (Tenn. Ct. App. 2009)).

As stated in the Complaint, Dr. Tumlin engaged in fraudulent concealment and deception in violation of Tennessee law when was engaged by Mallinckrodt as a KOLs to misrepresent the value of Acthar patients and payors, like Acument, and deceive them about the mode of action for Acthar (which remains unknown) and the approved uses and doses for Acthar. Cmplt. ¶¶ 278-305. As a physician, Dr. Tumlin has a duty to speak the truth about Acthar, its price, its value, especially when he chose to speak to Acument's beneficiary about Acthar in 2011, 2015, and 2016. Dr. Tumlin fails to explain how he cannot be held liable for fraud by deception for using Acument's beneficiary as part of his non-FDA sanctioned clinical trials, and then prescribing Acthar for more than a year at an exorbitant price, when it is only approved for flares and acute exacerbations of disease. Dr. Tumlin does not concede he ever told Acument or his patient how much money he was being paid by Mallinckrodt to conduct trials on his patients, and to engage in speaking engagements around the country for the drug company.

## 5.   Acument Properly Pleads a Claim Against Dr. Tumlin for Conspiracy to Defraud/Concerted Action (Count VI)

As a matter of Tennessee law, Plaintiff's Count VI Conspiracy claim should not be dismissed. Under Tennessee law, "the elements of a cause of action for civil conspiracy are: (1) a common design between two or more persons, (2) to accomplish by concerted action an

11

unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury." *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32 (Tenn. Ct. App. 2006). Here, the corporate defendants signed an exclusive agreement in 2007 to raise and fix the prices of Acthar. They then signed agreements with Dr. Tumlin to market and sell their high-priced drug to patients, regardless of the cost to payors, like Acument, or the value. The Complaint is replete with "overt acts in furtherance" of such agreements. The only issue is whether there exists an "underlying predicate tort allegedly committed pursuant to the conspiracy." *Lane v. Becker*, 334 S.W.3d 756, 763 (Tenn. Ct. App. 2010). Plaintiff submits it has pled actionable claims of statutory consumer fraud under the TCPA, common law fraud, and unjust enrichment, against both Dr. Tumlin and the corporate Defendants, any of which is sufficient to support Plaintiff's conspiracy claim against all Defendants, including Dr. Tumlin.

## **CONCLUSION**

The Complaint filed by Acument in this Court is demonstrably different from the Complaint filed in the *Rockford Action*. But rather than address these material differences, Dr. Tumlin, like Mallinckrodt, glosses over them. Without little analysis of the actual averments of the Complaint ***in this case***, Dr. Tumlin urges this Court to dismiss this case, with prejudice and without leave to re-plead, something even the *Rockford* Court did not do.

The new pleading filed in this Court must be judged under Tennessee law and the Tennessee pleading standards. When so judged, this Court should easily find that the Complaint adequately pleads causes of action against Dr. Tumlin for violations of the Tennessee Consumer Protection Act, § 47-18-101, *et. seq.*, (Count III), and common fraud (Count V), conspiracy (Count VI) and unjust enrichment (Count IV).

For these reasons, Dr. Tumlin's Motion to Dismiss should be denied.

Dated:  <u>October 16, 2019</u>

By: _____

Respectfully submitted,

Patrick M. Ardis, Esq.
(TN BPR No. 008263)
Daniel V. Parish, Esq.
(TN BPR No. 027452)
WOLFF ARDIS, P.C.
5810 Shelby Oaks Drive
Memphis, TN 38134
Ph: 901-763-3336
Fax: 901-763-3376
pardis@wolffardis.com
dparish@wolfardis.com

Donald E. Haviland, Jr., Esq.
(*pro hac vice pending*)
William H. Platt II, Esq.
(*pro hac vice pending*)
HAVILAND HUGHES
201 S. Maple Way, Suite 110
Ambler, PA 19002
Ph: 215-609-4661
Fax: 215-392-4400
*haviland@havilandhughes.com*
*platt@havilandhughes.com*

*Attorneys for Acument Global
Technologies, Inc.*

13

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been delivered via U.S. mail and electronic mail this 16th day of October, 2019.

Nathan A. Bicks, Esq.
William D. Irvine, Jr., Esq.
Lani Lester, Esq.
Burch, Porter & Johnson PLLC
130 North Court Avenue
Memphis, TN  38103

*Attorneys for the Express Scripts Defendants*

Daniel W. Van Horn, Esq.
Kathryn K. Van Namen, Esq.
Diana M. Comes
Butler Snow LLP
6075 Poplar Ave., 5th Floor
Memphis, TN  38119

*Attorneys for Mallinckrodt Defendants*

Eric C. Lyttle, Esq.
Michael D. Bonanno, Esq.
Ethan C. Glass, Esq.
Meghan A. McCaffrey, Esq.
Michael Lyle, Esq.
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street, NW
Washington D.C.  20005

*Attorneys for the Express Scripts Defendants*

Sonia K. Pfaffenroth, Esq.
Laura Shores, Esq.
Ryan Z. Watts, Esq.
Matthew M. Wolf, Esq.
Arnold & Porter
601 Massachusetts Ave., NW
Washington, D.C. 20001-3743

*Attorneys for Mallinckrodt Defendants*

Kirk A. Caraway, Esq.
Allen, Summers, Simpson, Lillie &
Gresham, PLLC
Brinkley Plaza
80 Monroe Avenue, Suite 650
Memphis, TN  3810-2466

*Attorneys for James A. Tumlin, M.D.*

Bill Dillon, Esq.
Daniel B. Brown, Esq.
Taylor English Duma LLP
1600 Parkwood Circle, Suite 200
Atlanta, Georgia 30339

*Attorneys for James A. Tumlin, M.D.*

Daniel V. Parish, Esq.