# Exhibit 9-5

**CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE**
**FOR THE THIRTIETH JUDICIAL CIRCUIT AT MEMPHIS**

FILED
OCT 18 2019

CIRCUIT COURT
BY _____

---

ACUMENT GLOBAL TECHNOLOGIES, INC.,

Plaintiff,

v.

MALLINCKRODT ARD, INC., et al.,

Defendants.

Docket No. CT-2275-19

---

## ORDER GRANTING MOTION TO ADMIT ATTORNEYS FROM
## QUINN, EMANUEL, URQUHART & SULLIVAN, LLP TO PRACTICE *PRO HAC VICE*

This matter came before the Court on the motion of Defendants Express Scripts Holding Company; Express Scripts, Inc.; CuraScript, Inc., doing business as CuraScript SD; Priority Healthcare Corp. and Priority Healthcare Distribution Inc., doing business as CuraScript SD; Accredo Health Group, Inc.; and United BioSource LLC (collectively the "Express Scripts Defendants"), for the admission of Eric C. Lyttle, Micheal J. Lyle, Ethan C. Glass, Meghan A. McCaffrey, and Michael D. Bonanno, *pro hac vice*, pursuant to Supreme Court Rule 19, as additional counsel for the Express Scripts Defendants in this action.

Based on the respective motions and the supporting affidavits and certificates of good standing, it is therefore ORDERED that the afore named attorneys of the law firm of the law firm Quinn, Emanuel, Urquhart & Sullivan, LLP in Washington, D.C., are hereby admitted *pro hac vice* as additional counsel for the Express Scripts Defendants in this action.

IT IS SO ORDERED this 18 day of Oct , 2019.

JUDGE MARY L. WAGNER

Submitted by:

Nathan A. Bicks (#10903) •
William D. Irvine, Jr. (#035193) •
Lani D. Lester (#035226) •
BURCH, PORTER & JOHNSON, PLLC
130 North Court Avenue
Memphis, TN 31803
Tel: (901) 524-5000
Facsimile: (901) 524-5024
*Attorneys for the Express Scripts Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent by electronic service or U.S. mail as required to all attorneys and all interested parties in this matter on this the _11th_ day of _August_ 2019.

Daniel V. Parish •
Patrick M. Ardis •
Roy Harold Chockley •
WOLF ARDIS, P.C.
5810 Shelby Oaks Drive
Memphis, TN 38134
pardis@wolfardis.com
cchockley@wolfardis.com
dparish@wolfardis.com

Donald Haviland, Jr.
William H. Platt, II
HAVILAND HUGHES
201 S. Maple Way, Suite 110
Ambler, PA 19002
haviland@havilandhughes.com
platt@havilandhughes.com
*Attorneys for Acument Global Technologies, Inc.*

Daniel B. Brown (#010918) •
TAYLOR ENGLISH DUMA, LLC

2

1600 Parkwood Circle, SE Suite 200
Atlanta, GA 30339
dbrown@taylorenglish.com
*Counsel for James A. Tumlin, M.D.*

Daniel W. Van Horn •
Kathryn K. Van Namen •
Diana M. Gomes •
BUTLER SNOW, LLP
6075 Poplar Avenue, 5th Floor
Memphis, TN 38119
Danny.VanHorn@butlersnow.com
Diana.Gomes@butlersnow.com
Kate.VanNamen@butlersnow.com

G. Patrick Watson
Lindsay Sklar Johnson
BRYAN CAVE LEIGHTON PAISNER, LLP
One Atlantic Center, 14th Floor
1201 Peachtree Street, NW
Atlanta, GA 30309
Patrick.Watson@bclplaw.com
Lindsay.Johnson@bclplaw.com

Herbert R. Giorgio, Jr.
BRYAN CAVE LEIGHTON PAISNER, LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO 63102
Herb.Giorgio@bclplaw.com
*Attorneys for Mallinckrodt ARC Inc. and Mallinckrodt plc*

Lani D. Lester

IN THE CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE
FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

**ACUMENT GLOBAL
TECHNOLOGIES, INC.,**

**Plaintiff,**

vs.

**MALLINCKRODT ARD INC.,**

**Defendants.**

**FILED**

**OCT 2 2 2019**

CIRCUIT COURT CLERK
BY_____D.C.

**Docket No. CT-2275-19**

**Division VII**

---

## AMENDED AFFIDAVIT OF SONIA KUESTER PFAFFENROTH IN SUPPORT OF MOTION FOR *PRO HAC VICE* ADMISSION

---

DISTRICT OF COLUMBIA

Before me, the undersigned, personally appeared Sonia Kuester Pfaffenroth, who after being duly sworn makes oath and states as follows:

1.      I am an adult resident of the District of Columbia. I have personal knowledge of the facts stated in this affidavit and know them to be true and correct.

2.      I submit this affidavit in support of the Motion for *Pro Hac Vice* Admission of Sonia Kuester Pfaffenroth to practice before this court in the case of *Acument Global Technologies, Inc. v. Mallinckrodt Ard Inc.*, Docket No. CT-2275-19.

3.      I am a partner with the law firm of Arnold & Porter, 601 Massachusetts Ave., NW, Washington,      DC      20001-3743,      Telephone:      (202)      942-6831,      E-mail: sonia.pfaffenroth@arnoldporter. com.      My residence address is: 5310 Reno Road NW, Washington, DC 20015. I am licensed to practice law and have been a member in good standing of the Bar of the District of Columbia since 2006. (Attorney No. 467946). I am in good standing

before the Bar of the District of Columbia and have not been suspended or disciplined at any time. I am also admitted to practice in the State of California and have been since 12/19/2002 (Attorney No. 223984). I am in good standing before the Bar of the State of California and have not been suspended or disciplined at any time. I am also admitted to practice, in good standing and have not been suspended or disciplined in the following courts:

    (a)    U.S. District Court for the Northern District of California – 2003

    (b)    U.S. District Court for the District of Columbia – 2005

    (c)    U.S. District Court for the Eastern District of Michigan – 2019

    (d)    *U.S. District Court for the Central District of California – 2019*

4.    I am not presently, and never have been, involved in disciplinary, disbarment, or suspension proceedings in any court, jurisdiction, or state.

5.    I intend to associate in this matter with attorneys familiar with the laws of the State of Tennessee and the procedures of this Court.

6.    I have not been admitted, nor sought to be admitted, *pro hac vice* in any trial or appellate court of Tennessee within the preceding three years.

7.    I have not been denied *pro hac vice* admission or had a *pro hac vice* admission revoked by any court in any jurisdiction.

8.    I seek leave to appear *pro hac vice* in the above-titled cause for purposes of representing Defendants Mallinckrodt Ard Inc. and Mallinkckrodt plc (collectively "Mallinckrodt")..

9.    I am familiar with the Tennessee Rules of Professional Conduct and the rules governing the proceedings of this court.

2

10.     I consent to the disciplinary jurisdiction of the Board of Professional Responsibility of the Supreme Court of Tennessee and the courts of Tennessee in any matter arising out of my conduct in this proceeding. I also agree to be bound by the Tennessee Rules of Professional Conduct and any other rules of conduct applicable to lawyers generally admitted to Tennessee.

11.     The Tennessee lawyer with whom I will be associated is:

> Daniel W. Van Horn (TN Bar No. 18940)
> Butler Snow LLP
> Crescent Center
> 6075 Poplar Avenue
> Suite 500
> Memphis TN 38119
> Telephone: 901.680.7200
> Facsimile: 901.680.7201
> danny.vanhorn@butlersnow.com

11.     I have paid all fees required in connection with this motion for admission and a copy of the check that I submitted to the Tennessee Board of Professional Responsibility is attached as **Exhibit A**.

12.     Attached as **Exhibit B** is a certificate of good standing from the District of Columbia Court of Appeals.

13.     A copy of my motion for admission *pro hac vice* and this affidavit were originally served on the Tennessee Board of Professional Responsibility and all other counsel in this case on Thursday, October 10 and a copy of this Amended Affidavit was served on the Tennessee Board of Professional Responsibility and all other counsel in this case on Monday, October 21.

3

I declare under penalty of perjury that the foregoing is true and correct.

Sonia Kuester Pfaffenroth
Arnold & Porter
601 Massachusetts Ave., NW
Washington, DC 20001-3743
Telephone: (202) 942-6831
Fax: (202) 942-5999
E-mail: sonia.pfaffenroth@arholdporter.com

Subscribed and sworn to before me
this 21ˢᵗ day of October , 2019.

Notary Public, State of WDC
My commission expires: May 31, 2024

4

## CERTIFICATE OF SERVICE

I, Daniel W. Van Horn, attorney for Defendants, certify that a true and correct copy of the foregoing pleading has been served via U.S. Mail, postage prepaid, and e-mail (and hand delivery) on the Tennessee Board of Professional Responsibility this 21st day of October 2019, to the following:

| | |
|---|---|
| Patrick M. Ardis, Esq.<br>Daniel V. Parish, Esq.<br>**WOLF ARDIS, P.C.**<br>5810 Summer Oaks Drive<br>Memphis, Tennessee 38134<br>pardis@wolfardis.com<br>cchockley@wolfardis.com<br>dparish@wolfardis.com | Daniel B. Brown, Esq.<br>**TAYLOR ENGLISH DUMA, LLC**<br>1600 Parkwood Circle, SE<br>Suite 200<br>Atlanta, GA 30339<br>dbrown@taylorenglish.com |
| Donald E. Haviland, Jr., Esq.<br>William H. Platt II, Esq.<br>**HAVILAND HUGHES**<br>201 S. Maple Way, Suite 110<br>Ambler, PA 19002<br>haviland@havilandhuges.com<br>platt@havilandhuges.com<br>*Counsel for Plaintiff Acument Global Technologies, Inc.* | Kirk A. Caraway, Esq.<br>**ALLEN, SUMMERS, SIMPSON, LILLIE & GRESHAM, PLLC**<br>80 Monroe Avenue, Suite 650<br>Memphis, TN 38103<br>kcaraway@allensummers.com<br><br>*Counsel for Dr. Tumlin* |
| Nathan A. Bicks, Esq.<br>William D. Irvine, Jr., Esq.<br>Lani D. Lester, Esq.<br>**BURCH, PORTER & JOHNSON, PLLC**<br>130 North Court Avenue<br>Memphis, TN 38103<br>nbicks@bpjlaw.com<br>wirvine@bpjlaw.com<br>llester@bpjlaw.com<br>*Counsel for Express Scripts Defendants* | Tennessee Board of Professional Responsibility<br>10 Cadillac Drive, Ste. 220<br>Brentwood, TN 37027 |

_____
Daniel W. Van Horn

5

# Arnold&Porter

Wells Fargo, N.A.

10391498

11-24
1210

Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave, NW
Washington, DC 20001-3743

Date  October 9, 2019

PAY:  ONE HUNDRED SEVENTY AND 00/100

DOLLARS  $ 170.00

PAY
TO
THE
ORDER
OF

Board of Professional Responsibility of the Supreme Court of Tennessee
10 Cadillac Drive, suite 220
Brentwood, TN 37027tn

VOID AFTER 180 DAYS

SIGNATURE HAS A COLORED BACKGROUND · BORDER CONTAINS MICROPRINTING

⑾⑩ 10391498 ⑾⑤ 121000 248 ⑤ 4706 5996 51 ⑾

| Invoice # | Invoice Date | Amount | Narrative | October 9, 2019 | 10391498 |
|-----------|--------------|--------|-----------|-----------------|----------|
| 10082019C | Oct 08/19 | $170.00 | Shemaiah Strickland | | |

*R2120947*

APOI (1/17)



On behalf of JULIO A. CASTILLO, Clerk of the District of Columbia Court of Appeals,
the District of Columbia Bar does hereby certify that

*Sonia Kuester Pfaffenroth*

was duly qualified and admitted on February 27, 2006 as an attorney and counselor entitled to
practice before this Court; and is, on the date indicated below, an Active member in good
standing of this Bar.

In Testimony Whereof,
I have hereunto subscribed my
name and affixed the seal of this
Court at the City of
Washington, D.C., on October
8, 2019.

**JULIO A. CASTILLO**
Clerk of the Court

Issued By:
District of Columbia Bar Membership

For questions or concerns, please contact the D.C. Bar Membership Office at 202-626-3475 or email
memberservices@dcbar.org.

IN THE CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE
FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

**ACUMENT GLOBAL
TECHNOLOGIES, INC.,**

**FILED
OCT 2 2 2019
CIRCUIT COURT CLERK
BY_____ D.C.**

**Plaintiff,**

**Docket No. CT-2275-19**

**vs.**

**Division VII**

**MALLINCKRODT ARD INC.,**

**Defendants.**

---

### AMENDED AFFIDAVIT OF LAURA SHORES IN SUPPORT OF MOTION FOR *PRO HAC VICE* ADMISSION

---

DISTRICT OF COLUMBIA

Before me, the undersigned, personally appeared Laura Shores, who after being duly sworn makes oath and states as follows:

1.      I am an adult resident of the District of Columbia.  I have personal knowledge of the facts stated in this affidavit and know them to be true and correct.

2.      I submit this affidavit in support of the Motion for *Pro Hac Vice* Admission of Laura Shores to practice before this court in the case of *Acument Global Technologies, Inc. v. Mallinckrodt Ard Inc.*, Docket No. CT-2275-19.

3.      I am a partner with the law firm of Arnold & Porter, 601 Massachusetts Ave., NW, Washington,    DC    20001-3743,    Telephone:    (202)    942-6855,    E-mail: laura.shores@arnoldporter.com   My residence address is: 4711 32nd Street, Washington, DC 20008. I am licensed to practice law and have been a member in good standing of the Bar of the District of Columbia since 04/17/1990. (Attorney No.  42358).  I am in good standing before the

49528785.v1

Bar of the District of Columbia and have not been suspended or disciplined at any time. I am also admitted to practice in the State of Alabama and have been since 09/26/1988. I am currently admitted under Special Membership status, and have been since 2014, because I am not engaged in the active practice of law in Alabama. I am in good standing before the Bar of the State of Alabama and have not been suspended or disciplined at any time. I am also admitted to practice, in good standing and have not been suspended or disciplined in the following courts:

      (a)    U.S. District Court for the District of Columbia – 1991

      (b)    U.S. Court of Appeals for the Fourth Circuit – 1992

      (c)    U.S. Court of Appeals for the Third Circuit – 1995

      (d)    U.S. District Court for the Eastern District of Arkansas – 1997

      (e)    U.S. Court of Appeals for the Eighth Circuit – 1998

      (f)    U.S. Supreme Court – 1999

      (g)    U.S. District Court for the Eastern District of Michigan – 2011

4.    I am not presently, and never have been, involved in disciplinary, disbarment, or suspension proceedings in any court, jurisdiction, or state.

5.    I intend to associate in this matter with attorneys familiar with the laws of the State of Tennessee and the procedures of this Court.

6.    I have not been admitted, nor sought to be admitted, *pro hac vice* in any trial or appellate court of Tennessee within the preceding three years.

7.    I have not been denied *pro hac vice* admission or had a *pro hac vice* admission revoked by any court in any jurisdiction.

2

8.     I seek leave to appear *pro hac vice* in the above-titled cause for purposes of representing Defendants Mallinckrodt Ard Inc. and Mallinkckrodt plc (collectively "Mallinckrodt")..

9.     I am familiar with the Tennessee Rules of Professional Conduct and the rules governing the proceedings of this court.

10.     I consent to the disciplinary jurisdiction of the Board of Professional Responsibility of the Supreme Court of Tennessee and the courts of Tennessee in any matter arising out of my conduct in this proceeding. I also agree to be bound by the Tennessee Rules of Professional Conduct and any other rules of conduct applicable to lawyers generally admitted to Tennessee.

11.     The Tennessee lawyer with whom I will be associated is:

> Daniel W. Van Horn (TN Bar No. 18940)
> Butler Snow LLP
> Crescent Center
> 6075 Poplar Avenue
> Suite 500
> Memphis TN 38119
> Telephone: 901.680.7200
> Facsimile: 901.680.7201
> danny.vanhorn@butlersnow.com

12.     I have paid all fees required in connection with this motion for admission and a copy of the check that I submitted to the Tennessee Board of Professional Responsibility is attached as **Exhibit A**.

13.     Attached as **Exhibit B** is a certificate of good standing from the District of Columbia Court of Appeals.

14.     A copy of my motion for admission *pro hac vice* and this affidavit were originally served on the Tennessee Board of Professional Responsibility and all other counsel in this case on

3

49528785.v1

Thursday, October 10 and a copy of this Amended Affidavit was served on the Tennessee Board

of Professional Responsibility and all other counsel in this case on Monday, October 21.


I declare under penalty of perjury that the foregoing is true and correct.

Laura Shores
Arnold & Porter
601 Massachusetts Ave., NW
Washington, DC 20001-3743
Telephone: (202) 942-6855
Fax: (202) 942-5999
E-mail: laura.shores@arnoldporter.com


Subscribed and sworn to before me
this 21 day of October , 2019.

Notary Public, State of WDC
My commission expires: May 31, 2024

4

## CERTIFICATE OF SERVICE

I, Daniel W. Van Horn, attorney for Defendants, certify that a true and correct copy of the foregoing pleading has been served via U.S. Mail, postage prepaid, and e-mail (and hand delivery) on the Tennessee Board of Professional Responsibility this 21st day of October 2019, to the following:

| | |
|---|---|
| Patrick M. Ardis, Esq.<br>Daniel V. Parish, Esq.<br>**WOLF ARDIS, P.C.**<br>5810 Summer Oaks Drive<br>Memphis, Tennessee 38134<br>pardis@wolfardis.com<br>cchockley@wolfardis.com<br>dparish@wolfardis.com | Daniel B. Brown, Esq.<br>**TAYLOR ENGLISH DUMA, LLC**<br>1600 Parkwood Circle, SE<br>Suite 200<br>Atlanta, GA 30339<br>dbrown@taylorenglish.com |
| Donald E. Haviland, Jr., Esq.<br>William H. Platt II, Esq.<br>**HAVILAND HUGHES**<br>201 S. Maple Way, Suite 110<br>Ambler, PA 19002<br>haviland@havilandhuges.com<br>platt@havilandhuges.com<br>*Counsel for Plaintiff Acument Global Technologies, Inc.* | Kirk A. Caraway, Esq.<br>**ALLEN, SUMMERS, SIMPSON, LILLIE & GRESHAM, PLLC**<br>80 Monroe Avenue, Suite 650<br>Memphis, TN 38103<br>kcaraway@allensummers.com<br><br>*Counsel for Dr. Tumlin* |
| Nathan A. Bicks, Esq.<br>William D. Irvine, Jr., Esq.<br>Lani D. Lester, Esq.<br>**BURCH, PORTER & JOHNSON, PLLC**<br>130 North Court Avenue<br>Memphis, TN 38103<br>nbicks@bpjlaw.com<br>wirvine@bpjlaw.com<br>llester@bpjlaw.com<br>*Counsel for Express Scripts Defendants* | Tennessee Board of Professional Responsibility<br>10 Cadillac Drive, Ste. 220<br>Brentwood, TN 37027 |

Daniel W. Van Horn

5

49528785.v1

Case 2:21-cv-02024-JPM-tmp   Document 1-14   Filed 01/08/21   Page 17 of 88   PageID 374

# Arnold&Porter

Wells Fargo, N.A.

10391497   11-24/1210

Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave, NW
Washington, DC 20001-3743

Date.   October 9, 2019

PAY   ONE HUNDRED SEVENTY AND 00/100                    DOLLARS   $170.00

PAY
TO
THE
ORDER
OF

Board of Professional Responsibility of the Supreme Court of Tennessee
10 Cadillac Drive, suite 220
Brentwood, TN - 37027tn

VOID AFTER 180 DAYS

SIGNATURE HAS A COLORED BACKGROUND · BORDER CONTAINS MICROPRINTING

⑆10391497⑆ ⑉121000248⑊4706599651⑈

| Invoice # | Invoice Date | Amount | Narrative | | |
|-----------|--------------|--------|-----------|---|---|
| 10082019D | Oct 08/19 | $170.00 | Shemaiah Strickland | October 9, 2019 | 10391497 |

\* R 2 1 2 0 9 4 6 \*

APOI (1/17)



On behalf of JULIO A. CASTILLO, Clerk of the District of Columbia Court of Appeals,
the District of Columbia Bar does hereby certify that

*Laura S Shores*

was duly qualified and admitted on April 17, 1990 as an attorney and counselor entitled to
practice before this Court; and is, on the date indicated below, an Active member in good
standing of this Bar.

In Testimony Whereof,
I have hereunto subscribed my
name and affixed the seal of this
Court at the City of
Washington, D.C., on
September 19, 2019.

**JULIO A. CASTILLO**
Clerk of the Court

Issued By:
District of Columbia Bar Membership

For questions or concerns, please contact the D.C. Bar Membership Office at 202-626-3475 or email
memberservices@dcbar.org.

IN THE CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE
FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS



**ACUMENT GLOBAL
TECHNOLOGIES, INC.,**

Plaintiff,

vs.

**MALLINCKRODT ARD INC.,**

Defendants.

Docket No. CT-2275-19

Division VII

---

**AMENDED AFFIDAVIT OF RYAN WATTS IN SUPPORT OF
MOTION FOR *PRO HAC VICE* ADMISSION**

---

DISTRICT OF COLUMBIA

Before me, the undersigned, personally appeared Ryan Watts, who after being duly sworn

makes oath and states as follows:

1.      I am an adult resident of the State of Maryland.  I have personal knowledge of the

facts stated in this affidavit and know them to be true and correct.

2.      I submit this affidavit in support of the Motion for *Pro Hac Vice* Admission of Ryan

Watts to practice before this court in the case of *Acument Global Technologies, Inc. v. Mallinckrodt

Ard Inc.*, Docket No. CT-2275-19.

3.      I am counsel with the law firm of Arnold & Porter, 601 Massachusetts Ave., NW,

Washington,      DC      20001-3743,      Telephone:      (202)      942-6609,      E-mail:

ryan.watts@arnoldporter.com.  My residence address is:  9923 Edward Ave., Bethesda, MD

20814. I am licensed to practice law and have been a member in good standing of the Bar of the

District of Columbia since 2002. (Attorney No. 478395). I am in good standing before the Bar of

the District of Columbia and have not been suspended or disciplined at any time. I am also admitted to practice in the Commonwealth of Virginia and have been since 10/29/2001 (Attorney No. 47513). I am in good standing before the Bar of the Commonwealth of Virginia and have not been suspended or disciplined at any time. I am also admitted to practice, in good standing and have not been suspended or disciplined in the following courts:

      (a)    U.S. Court of Appeals for the Fourth Circuit – 2002

      (b)    U.S. District Court for the District of Columbia – 2004

      (c)    U.S. Court of Appeals for the Third Circuit – 2014

      (d)    U.S. Court of Appeals for the Seventh Circuit – 2015

4.    I am not presently, and never have been, involved in disciplinary, disbarment, or suspension proceedings in any court, jurisdiction, or state.

5.    I intend to associate in this matter with attorneys familiar with the laws of the State of Tennessee and the procedures of this Court.

6.    I have not been admitted, nor sought to be admitted, *pro hac vice* in any trial or appellate court of Tennessee within the preceding three years.

7.    I have not been denied *pro hac vice* admission or had a *pro hac vice* admission revoked by any court in any jurisdiction.

8.    I seek leave to appear *pro hac vice* in the above-titled cause for purposes of representing Defendants Mallinckrodt Ard Inc. and Mallinckrodt plc (collectively "Mallinckrodt")..

9.    I am familiar with the Tennessee Rules of Professional Conduct and the rules governing the proceedings of this court.

49528785.v1

10.     I consent to the disciplinary jurisdiction of the Board of Professional Responsibility of the Supreme Court of Tennessee and the courts of Tennessee in any matter arising out of my conduct in this proceeding. I also agree to be bound by the Tennessee Rules of Professional Conduct and any other rules of conduct applicable to lawyers generally admitted to Tennessee.

11.     The Tennessee lawyer with whom I will be associated is:

> Daniel W. Van Horn (TN Bar No. 18940)
> Butler Snow LLP
> Crescent Center
> 6075 Poplar Avenue
> Suite 500
> Memphis TN 38119
> Telephone: 901.680.7200
> Facsimile: 901.680.7201
> danny.vanhorn@butlersnow.com

12.     I have paid all fees required in connection with this motion for admission and a copy of the check that I submitted to the Tennessee Board of Professional Responsibility is attached as **Exhibit A**.

13.     Attached as **Exhibit B** is a certificate of good standing from the District of Columbia Court of Appeals.

14.     A copy of my motion for admission *pro hac vice* and this affidavit were originally served on the Tennessee Board of Professional Responsibility and all other counsel in this case on Thursday, October 10 and a copy of this Amended Affidavit was served on the Tennessee Board of Professional Responsibility and all other counsel in this case on Monday, October 21.

3

I declare under penalty of perjury that the foregoing is true and correct.

Ryan Watts
Arnold & Porter
601 Massachusetts Ave., NW
Washington, DC 20001-3743
Telephone:  (202) 942-6609
Fax:  (202) 942-5999
E-mail:  ryan.watts@arnoldporter.com

Subscribed and sworn to before me
this 15th day of October, 2019.

Notary Public, State of DC
My commission expires: 4|14|2022

4

## CERTIFICATE OF SERVICE

I, Daniel W. Van Horn, attorney for Defendants, certify that a true and correct copy of the foregoing pleading has been served via U.S. Mail, postage prepaid, and e-mail (and hand delivery) on the Tennessee Board of Professional Responsibility this 21st day of October 2019, to the following:

| | |
|---|---|
| Patrick M. Ardis, Esq.<br>Daniel V. Parish, Esq.<br>**WOLF ARDIS, P.C.**<br>5810 Summer Oaks Drive<br>Memphis, Tennessee 38134<br>pardis@wolfardis.com<br>cchockley@wolfardis.com<br>dparish@wolfardis.com | Daniel B. Brown, Esq.<br>**TAYLOR ENGLISH DUMA, LLC**<br>1600 Parkwood Circle, SE<br>Suite 200<br>Atlanta, GA 30339<br>dbrown@taylorenglish.com |
| Donald E. Haviland, Jr., Esq.<br>William H. Platt II, Esq.<br>**HAVILAND HUGHES**<br>201 S. Maple Way, Suite 110<br>Ambler, PA 19002<br>haviland@havilandhuges.com<br>platt@havilandhuges.com<br>*Counsel for Plaintiff Acument Global Technologies, Inc.* | Kirk A. Caraway, Esq.<br>**ALLEN, SUMMERS, SIMPSON, LILLIE & GRESHAM, PLLC**<br>80 Monroe Avenue, Suite 650<br>Memphis, TN 38103<br>kcaraway@allensummers.com<br><br>*Counsel for Dr. Tumlin* |
| Nathan A. Bicks, Esq.<br>William D. Irvine, Jr., Esq.<br>Lani D. Lester, Esq.<br>**BURCH, PORTER & JOHNSON, PLLC**<br>130 North Court Avenue<br>Memphis, TN 38103<br>nbicks@bpjlaw.com<br>wirvine@bpjlaw.com<br>llester@bpjlaw.com<br>*Counsel for Express Scripts Defendants* | Tennessee Board of Professional Responsibility<br>10 Cadillac Drive, Ste. 220<br>Brentwood, TN 37027 |

Daniel W. Van Horn

5

# Arnold & Porter

Wells Fargo, N.A.

10391499    11-24 / 1210

Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave, NW
Washington, DC 20001-3743

Date    October 9, 2019

PAY   ONE HUNDRED SEVENTY AND 00/100

DOLLARS   $170.00

PAY
TO
THE
ORDER
OF:

Board of Professional Responsibility of the Supreme Court of Tennessee
10 Cadillac Drive, suite 220
Brentwood, TN 37027tn

VOID AFTER 180 DAYS

SIGNATURE HAS A COLORED BACKGROUND • BORDER CONTAINS MICROPRINTING

⑆10391499⑆ ⑆121000248⑆ 470659965 1⑆

| Invoice # | Invoice Date | Amount | Narrative | | |
|-----------|-------------|--------|-----------|--|--|
| 10082019B | Oct 08/19 | $170.00 | Shemaiah Strickland | October 9, 2019 | 10391499 |

★ R 2 1 2 0 9 4 8 ★

APOI (1/17)



On behalf of JULIO A. CASTILLO, Clerk of the District of Columbia Court of Appeals,
the District of Columbia Bar does hereby certify that

*Ryan Z Watts*

was duly qualified and admitted on July 8, 2002 as an attorney and counselor entitled to
practice before this Court; and is, on the date indicated below, an Active member in good
standing of this Bar.

**In Testimony Whereof,
I have hereunto subscribed my
name and affixed the seal of this
Court at the City of
Washington, D.C., on October
3, 2019.**

**JULIO A. CASTILLO
Clerk of the Court**

Issued By:
District of Columbia Bar Membership

For questions or concerns, please contact the D.C. Bar Membership Office at 202-626-3475 or email
memberservices@dcbar.org.



On behalf of JULIO A. CASTILLO, Clerk of the District of Columbia Court of Appeals, the District of Columbia Bar does hereby certify that

*Matthew M Wolf*

was duly qualified and admitted on February 7, 1997 as an attorney and counselor entitled to practice before this Court; and is, on the date indicated below, an Active member in good standing of this Bar.

**In Testimony Whereof,
I have hereunto subscribed my
name and affixed the seal of this
Court at the City of
Washington, D.C., on
September 19, 2019.**

**JULIO A. CASTILLO
Clerk of the Court**

Issued By:
District of Columbia Bar Membership

For questions or concerns, please contact the D.C. Bar Membership Office at 202-626-3475 or email memberservices@dcbar.org.

## IN THE CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE
## FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

**ACUMENT GLOBAL
TECHNOLOGIES, INC.,**

FILED
OCT 2 2 2019
CIRCUIT COURT CLERK
BY_____D.C.

              **Plaintiff,**

**vs.**                                      Docket No. CT-2275-19

**MALLINCKRODT ARD INC.,**                   Division VII

              **Defendants.**

---

## AMENDED AFFIDAVIT OF MATTHEW WOLF IN SUPPORT OF
## MOTION FOR *PRO HAC VICE* ADMISSION

---

DISTRICT OF COLUMBIA

Before me, the undersigned, personally appeared Matthew Wolf, who after being duly sworn makes oath and states as follows:

1.      I am an adult resident of the District of Columbia. I have personal knowledge of the facts stated in this affidavit and know them to be true and correct.

2.      I submit this affidavit in support of the Motion for *Pro Hac Vice* Admission of Matthew Wolf to practice before this court in the case of *Acumen Global Technologies, Inc. v. Mallinckrodt Ard Inc.*, Docket No. CT-2275-19.

3.      I am a partner with the law firm of Arnold & Porter, 601 Massachusetts Ave., NW, Washington, DC 20001-3743, Telephone: (202) 942-5462, E-mail: matthew.wolf@arnoldporter.com   My residence address is: 3375 Stephenson Place, NW, Washington, DC 20015. I am licensed to practice law and have been a member in good standing of the Bar of the District of Columbia since 1997. (Attorney No. 454323). I am in good standing

49528785.v1

before the Bar of the District of Columbia and have not been suspended or disciplined at any time. I am also admitted to practice in the State of Maryland and have been since 10/15/2001 (Attorney No. 220026947). I am in good standing before the Bar of the State of Maryland and have not been suspended or disciplined at any time. I am also admitted to practice, in good standing and have not been suspended or disciplined in the following courts:

     (a)    U.S. District Court for the District of Maryland – 1995

     (b)    U.S. Court of Appeals for the Fourth Circuit – 1995

     (c)    U.S. Court of Appeals for the Seventh Circuit – 2002

     (d)    U.S. Court of Appeals for the First Circuit – 2005

     (e)    U.S. Court of Appeals for the Federal Circuit – 2005

     (f)    U.S. District Court for the Eastern District of Texas – 2010

     (g)    U.S. District Court for the Eastern District of Michigan – 2014

     (h)    U.S. Court of Appeals for the Eleventh Circuit – 2015

     (i)    U.S. Supreme Court – 2016

4.    I am not presently, and never have been, involved in disciplinary, disbarment, or suspension proceedings in any court, jurisdiction, or state.

5.    I intend to associate in this matter with attorneys familiar with the laws of the State of Tennessee and the procedures of this Court.

6.    I have not been admitted, nor sought to be admitted, *pro hac vice* in any trial or appellate court of Tennessee within the preceding three years.

7.    I have not been denied *pro hac vice* admission or had a *pro hac vice* admission revoked by any court in any jurisdiction.

2

8.      I seek leave to appear *pro hac vice* in the above-titled cause for purposes of representing Defendants Mallinckrodt Ard Inc. and Mallinckckrodt plc (collectively "Mallinckrodt")..

9.  .   I am familiar with the Tennessee Rules of Professional Conduct and the rules governing the proceedings of this court.

10.     I consent to the disciplinary jurisdiction of the Board of Professional Responsibility of the Supreme Court of Tennessee and the courts of Tennessee in any matter arising out of my conduct in this proceeding.  I also agree to be bound by the Tennessee Rules of Professional Conduct and any other rules of conduct applicable to lawyers generally admitted to Tennessee.

11.     The Tennessee lawyer with whom I will be associated is:

Daniel W. Van Horn (TN Bar No. 18940)
Butler Snow LLP
Crescent Center
6075 Poplar Avenue
Suite 500
Memphis TN 38119
Telephone:  901.680.7200
Facsimile:  901.680.7201
danny.vanhorn@butlersnow.com

12.     I have paid all fees required in connection with this motion for admission and a copy of the check that I submitted to the Tennessee Board of Professional Responsibility is attached as **Exhibit A**.

13.     Attached as **Exhibit B** is a certificate of good standing from the District of Columbia Court of Appeals.

14.     A copy of my motion for admission *pro hac vice* and this affidavit were originally served on the Tennessee Board of Professional Responsibility and all other counsel in this case on

3

49528785.v1

Thursday, October 10 and a copy of this Amended Affidavit was served on the Tennessee Board

of Professional Responsibility and all other counsel in this case on Monday, October 21.

I declare under penalty of perjury that the foregoing is true and correct.

Matthew Wolf
Arnold & Porter
601 Massachusetts Ave., NW
Washington, DC 20001-3743
Telephone: (202) 942-5462
Fax: (202) 942-5999
E-mail: matthew.wolf@arnoldporter.com

Subscribed and sworn to before me
this 21ˢᵗ day of October, 2019.

Hazel Cavann-Walker
Notary Public, State of WDC
My commission expires: May 31, 2024

4

49528785.v1

## CERTIFICATE OF SERVICE

I, Daniel W. Van Horn, attorney for Defendants, certify that a true and correct copy of the foregoing pleading has been served via U.S. Mail, postage prepaid, and e-mail (and hand delivery) on the Tennessee Board of Professional Responsibility this 21st day of October 2019, to the following:

| | |
|---|---|
| Patrick M. Ardis, Esq.<br>Daniel V. Parish, Esq.<br>**WOLF ARDIS, P.C.**<br>5810 Summer Oaks Drive<br>Memphis, Tennessee 38134<br>pardis@wolfardis.com<br>cchockley@wolfardis.com<br>dparish@wolfardis.com | Daniel B. Brown, Esq.<br>**TAYLOR ENGLISH DUMA, LLC**<br>1600 Parkwood Circle, SE<br>Suite 200<br>Atlanta, GA 30339<br>dbrown@taylorenglish.com |
| Donald E. Haviland, Jr., Esq.<br>William H. Platt II, Esq.<br>**HAVILAND HUGHES**<br>201 S. Maple Way, Suite 110<br>Ambler, PA 19002<br>haviland@havilandhuges.com<br>platt@havilandhuges.com<br>*Counsel for Plaintiff Acument Global Technologies, Inc.* | Kirk A. Caraway, Esq.<br>**ALLEN, SUMMERS, SIMPSON, LILLIE & GRESHAM, PLLC**<br>80 Monroe Avenue, Suite 650<br>Memphis, TN 38103<br>kcaraway@allensummers.com<br><br>*Counsel for Dr. Tumlin* |
| Nathan A. Bicks, Esq.<br>William D. Irvine, Jr., Esq.<br>Lani D. Lester, Esq.<br>**BURCH, PORTER & JOHNSON, PLLC**<br>130 North Court Avenue<br>Memphis, TN 38103<br>nbicks@bpjlaw.com<br>wirvine@bpjlaw.com<br>llester@bpjlaw.com<br>*Counsel for Express Scripts Defendants* | Tennessee Board of Professional Responsibility<br>10 Cadillac Drive, Ste. 220<br>Brentwood, TN 37027 |

Daniel W. Van Horn

5

49528785.v1

THIS CHECK IS VOID WITHOUT A BLUE/GREEN BACKGROUND AND AN ARTIFICIAL WATERMARK ON THE BACK. HOLD AT AN ANGLE TO VIEW.

# Arnold & Porter

Wells Fargo, N.A.

10391500

11-24
1210

Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave, NW
Washington, DC 20001-3743

Date     October 9, 2019

PAY   ONE HUNDRED SEVENTY AND 00/100

DOLLARS   $170.00

PAY
TO
THE
ORDER
OF

Board of Professional Responsibility of the Supreme Court of Tennessee
10 Cadillac Drive, suite 220
Brentwood, TN 37027tn

VOID AFTER 180 DAYS

SIGNATURE HAS A COLORED BACKGROUND · BORDER CONTAINS MICROPRINTING

⑆10391500⑆ ⑈121000248⑈ 706599651⑈

| Invoice # | Invoice Date | Amount | Narrative | October 9, 2019 | 10391500 |
|-----------|--------------|--------|-----------|-----------------|----------|
| 10082019A | Oct 08/19 | $170.00 | Shemaiah Strickland | | |

*R2120949*

APOI (1/17)



On behalf of JULIO A. CASTILLO, Clerk of the District of Columbia Court of Appeals,
the District of Columbia Bar does hereby certify that

*Matthew M Wolf*

was duly qualified and admitted on February 7, 1997 as an attorney and counselor entitled to
practice before this Court; and is, on the date indicated below, an Active member in good
standing of this Bar.

**In Testimony Whereof,**
**I have hereunto subscribed my**
**name and affixed the seal of this**
**Court at the City of**
**Washington, D.C., on**
**September 19, 2019.**

**JULIO A. CASTILLO**
**Clerk of the Court**

Issued By:
District of Columbia Bar Membership

For questions or concerns, please contact the D.C. Bar Membership Office at 202-626-3475 or email
memberservices@dcbar.org.

ELECTRONICALLY FILED
2019 Oct 28 10:44 AM
CLERK OF COURT

# IN THE CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE
## FOR THE THIRTIETH JUDICIAL CIRCUIT AT MEMPHIS

ACUMENT GLOBAL TECHNOLOGIES, INC.

        Plaintiff,

VS.

MALLINCKRODT ARD, INC., f/k/a
QUESTCOR PHARMACEUTICALS, INC.,

MALLINCKRODT PLC,

EXPRESS SCRIPTS HOLDING COMPANY;

EXPRESS SCRIPTS, INC.;

CURASCRIPT, INC., d/b/a
CURASCRIPT, SD;

PRIORITY HEALTHCARE CORP.
AND PRIORITY HEALTHCARE DISTRIBUTION, INC.,
d/b/a CURASCRIPT SD AND CURASCRIPT
SPECIALTY DISTRIBUTION SD,
respectively;

ACCREDO HEALTH GROUP, INC.;

UNITED BIOSOURCE CORPORATION;

and

JAMES A. TUMLIN, M.D.,

        Defendants.

No. CT-2275-19
JURY TRIAL DEMANDED
Division: VII

## RESPONSE OF DEFENDANT JAMES A TUMLIN, M.D.
### TO PLAINTIFF'S OPPPOSITION TO MOTION TO DISMISS

Defendant James A. Tumlin, M.D. ("Dr. Tumlin"), by and through his undersigned counsel, hereby files this Response to Plaintiff's Opposition to Motion to Dismiss with Prejudice the Complaint ("Complaint") filed against Dr. Tumlin by Acument Global Technologies, Inc. ("Plaintiff"). In support, Dr. Tumlin states as follows:

## INTRODUCTION

Plaintiff Acument Global Technologies, Inc. (hereinafter "Acument") concedes, in its Opposition to Defendant James A. Tumlin's Motion to Dismiss Complaint, that it can state no cause of action against Dr. Tumlin for monopolization of the ACTH market in violation of the TTPA under Count I of the Complaint. (Acument Mem. at 6-7). In addition, Acument concedes that it can state no cause of action against Dr. Tumlin for anticompetitive agreements in unreasonable restraint of trade in violation of the TTPA under Count II of the Complaint. (*Id.*). Once these allegations under the TTPA are laid to rest, the re-characterization of the self-same facts under counts III through VI must also fail. Counts I and II are the locomotive engine to the material and relevant allegations based on the facts in the Complaint. Once those have been uncoupled from Dr. Tumlin, the empty boxcar that Plaintiff appended to his pleading-train is sitting idle on a sidetrack – unable to move and unable to be joined to the factual allegations remaining against the other two named defendants.

In addition, Plaintiff contends that it is a "hyper-technical argument" for this Court to require it to actually denominate Dr. Tumlin a defendant in order for him to be joined as a defendant in this case. (*Id.* at 6). The "notice pleading" standard of Tennessee pleading practice is not met where the Complaint clearly delineates Mallinckrodt and Express Scripts as "Defendants" and, in a wholly separate paragraph, describes Dr. Tumlin as "the treating physician for one of Acument's employee's spouse." (Compl. ¶¶ 45, 47).[1]

---

[1] Plaintiff fails to even mention Dr. Tumlin in Counts I, II, and VI. Dr. Tumlin is added as a bare afterthought in the remaining three counts with the provision of "and Dr. Tumlin." The Complaint is both legally insufficient to state a claim and fails to meet the required standards under Tennessee Rules of Civil Procedure 8 and 9.

**A.      Plaintiff Fails to Plead a Cognizable Claim Against Dr. Tumlin for Relief under The Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 (Count III).**

This Court should dismiss Plaintiff's claim under the TCPA because this claim is entirely premised upon allegations of anticompetitive conduct described in Counts I and II. Under Tennessee law, claims based on alleged anticompetitive conduct "are not cognizable under the TCPA" and "must be dismissed." *Sherwood v. Microsoft Corp.*, No. M2000-01850-COA-R9-CV, 2003 WL 21780975, at *33 (Tenn. Ct. App. July 31, 2003). In *Sherwood,* the Tennessee Court of Appeals explained that while "the Tennessee General Assembly has chosen to include in the TCPA's prohibitions 'unfair or deceptive acts or practices affecting the conduct of any trade or commerce,' Tenn. Code Ann. § 47-18-104(a), *it did not include unfair competition or anticompetitive acts.*" Id. at *31. (Emphasis added).[2] Here, as in *Sherwood*, Plaintiff's TCPA claim in Count III is entirely based on Defendants' alleged "unfair and deceptive conduct which allowed Defendants to raise and fix the prices of Acthar at supra-competitive levels, and to

---

[2] The Tennessee Consumer Protection Act, Tenn. Code Ann 47-18-104(b) provides: The following unfair or deceptive acts or practices affecting the conduct of any trade or commerce are declared to be unlawful and in violation of this part:
(1) Falsely passing off goods or services as those of another;
(2) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services….;
(3) Causing likelihood of confusion or misunderstanding as to affiliation, connection or association with, or certification by, another….;
(6) Representing that goods are original or new if they are deteriorated, altered to the point of decreasing the value, reconditioned, reclaimed, used or secondhand;
(7) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;
(8) Disparaging the goods, services or business of another by false or misleading representations of fact;
(9) Advertising goods or services with intent not to sell them as advertised…;
(11) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions….;

maintain Mallinckrodt's monopoly power in the market for ACTH drugs allowing unfettered price increases." (Compl. ¶ 378). Just as in *Sherwood*, the Court should dismiss these claims centered on "classic antitrust allegations dressed in TCPA clothing" as they are not actionable under the TCPA. *Sherwood*, at 33. Plaintiff can point to no provision, under the TCPA, that prohibits the alleged actions of MK or Express Scripts. Further, Plaintiff can make no factual showing regarding any action or involvement by Dr. Tumlin or any other prescribing physician that falls within the ambit of Tenn. Code Ann Tenn. Code Ann. § 47-18-101 *et. seq.* The mere addition of the words "and Dr. Tumlin" in Paragraphs 377, 378 and 379 of the Complaint is insufficient to state a claim against him under the TCPA.

To state a claim under the TCPA, a plaintiff must show "1) that the defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA and (2) that the defendant's conduct caused an "ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated." *Tucker v. Sierra Builders*, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005) (quoting Tenn. Code Ann. § 47–18–109(a)(1)). In addition, claims under the TCPA must be plead with particularity. *Harvey v. Ford Motor Credit Co.*, 8 S.W.3d 273, 275 (Tenn. Ct. App. 1999).

According to the Plaintiff, Dr. Tumlin received the Acthar prior authorization form and presumably prescribed the medication, although that is not specifically averred in Count III. Once again, Plaintiff falsely alleges that Dr. Tumlin "agreed to charge Acument" and its beneficiary (Patient AB) these prices. (Compl. ¶ 379). These vague and factually insufficient allegations are rebutted by Plaintiff's own response to Tumlin's Motion to Dismiss where it admits "The only thing that changed was **how Mallinckrodt chose to price, market and sell (Acthar).**" (Acument Mem., p. 3). This clear admission that Dr. Tumlin had no role in the allegedly "misleading and

4

excessive prices" for the Acthar blunts all of the hyperbole contained in the Complaint. As a medical professional, a doctor like Tumlin merely provided the service of prescribing the Acthar to his patient. Plaintiff's Pharmacy Benefits Manager ("PBM,") CVS, which is not even named in the action, took the prescription, as well as the prior authorization form, and processed them in the course of filling the prescription, presumably in the ordinary course of business. (Compl. ¶ 383).

In *Bennett v. Visa U.S.A., Inc.*, 198 S.W.3d 747 (Tenn. Ct. App. 2006), the Tennessee Court of Appeals addressed a similar case. In *Bennett*, the Circuit Court dismissed statutory claims filed by credit card and debit card merchants who claimed violations of the TTPA and TCPA. The Court of Appeals stated, "The law is well settled that the TTPA applies only to tangible goods, not intangible services." (*Id.* at 750). It went on to explain that "Anticompetitive conduct which falls outside the scope of the TTPA cannot be used to form the basis for a TCPA claim." (Citing *Blake v. Abbott Labs, Inc.* 1996 Tenn. App. LEXIS 184, No. 03A01-9509-CV-00307, 1996 WL 134947 (Tenn. Ct. App. 1996). In the current case, where Dr. Tumlin provided medical services and wrote a prescription, his actions cannot be the basis for a charge under the TTPA or the TCPA. In dismissing the unjust enrichment claim, the Court of Appeals noted in *Bennett*, "The plaintiff must further demonstrate that he or she has exhausted all remedies against the person with whom the plaintiff enjoyed privity of contract."[3]  (*Id.* at 755).

Also conspicuously absent, are any details or allegations showing which parties said what, when, to whom, and how. Plaintiff steadfastly refused to provide any necessary detail supporting its claim that any Defendant made false or misleading representations about anyone or anything.

---

[3] In the current case, Plaintiff has steadfastly refused to file suit against CVS, the PBM that distributed the Acthar to its insured. CVS is the entity that had privity of contract with the Plaintiff. Under these circumstances, its unjust enrichment count (Count IV) must also fail as against all defendants. *Infra.*

Plaintiff's sweeping, non-specific allegations about Defendants' alleged unfair and deceptive practices are vague and conclusory and not plead with requisite particularity under Tennessee law. *See Sherwood*, 2003 WL 21780975, at *34 (dismissing plaintiff's TCPA claim where "no specific conduct [was] tied to this general allegation," and where the court could "find no further explanation for this conclusory allegation, and no facts supporting it").

In addition, Plaintiff wildly alleges "Defendants have disparaged the goods, services or business *of other sellers of drugs that treat such disease more effectively and safely…*" (Compl. ¶ 376(g), Acument Mem. p. 9)(Emphasis added). This allegation is completely inconsistent with the "monopoly language" in the Complaint – where Plaintiff states "There are no medical or reasonably available substitutes for Acthar." (Compl. ¶ 225); "At all relevant times material to this case, Mallinckrodt possessed monopoly power…in the relevant product market." (Compl. ¶ 228). This basic premise of Plaintiff's antitrust allegation is completely inconsistent with its TCPA claims of disparagement of competing products which are more effective, safe and cost-efficient. (Acument Mem., p. 9).[4]

Likewise, Plaintiff concedes that Acthar is sold and dispensed by a pharmacy at the price charged by the pharmacy – which is negotiated among the drug manufacturer, the health insurance plan, and the PBM contracted by the health plan. (Compl. ¶¶ 61, 88, 92, 147, 170). This is

---

[4] In a similar vein, Plaintiff continues to argue that Acument's "investigation of DOJ allegations of wrongful kickbacks" in off-label marketing for MS patients implicates the **on-label** research and publishing activities of Dr. Tumlin for iMN patients. Exhibit C to the Complaint clearly shows that Acthar is on-label for iMN where it states, "Inducing a diuresis for a remission of proteinuria in nephrotic syndrome without uremia of the idiopathic type or that due to lupus erythematosus." (Compl., Exh. C, p. 5). (See also, Tumlin Motion to Dismiss, pp. 4-5, 12). Furthermore, Plaintiff shows no support (and offers no factual details) for its allegations of any illicit payment to Dr. Tumlin.

completely inconsistent with its vague contention that Dr. Tumlin, "charged false, misleading and excessive prices for Acthar." (Acument Mem., p. 8)

Under these circumstances, where the vague and amorphous collection of internally inconsistent allegations of the Plaintiff do not meet the heightened pleading standard for Rule 9.02, Count III should be dismissed with prejudice.

### B. Plaintiff Fails to Plead a Cognizable Claim Against Dr. Tumlin for Unjust Enrichment (Count IV).

Plaintiff's unjust enrichment claim is lifted nearly verbatim from the *Rockford* case. Here, as there, the claim fails as a matter of law. *City of Rockford v. Mallinckrodt ARD, Inc.*, 260 F. Supp. 3d 730, 772 (N.D. Ill. 2019).

To state a claim for unjust enrichment, a Plaintiff must show 1) "[a] benefit conferred upon the defendant by the plaintiff"; 2) "appreciation by the defendant of such benefit"; and 3) "acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof." *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005) (quoting *Paschall's, Inc. v. Dozier*, 407 S.W.2d 150, 155 (Tenn. 1966)).

As an initial matter, the only role attributed to Dr. Tumlin in Count IV is to write the prescription for Acthar to his patient. (Compl. ¶ 383). In order to proceed with an allegation of unjust enrichment, Count IV's conclusory allegation in conjunction with the prescription that "Dr. Tumlin, and all Defendants were unjustly enriched" is insufficient to state a claim under the analysis in *Freeman*. (*See also Bennett v. Visa U.S.A., Inc.*, 198 S.W.3d 747, 755) (Tenn. Ct. App. 2006) (The plaintiff must further demonstrate that he or she has exhausted all remedies against the person with whom the plaintiff enjoyed privity of contract.)

The Plaintiff's sweeping allegations, and refusal to join CVS, the party with which it had actual privity of contact, do not meet the necessary pleading standards for the allegation under Tennessee law for unjust enrichment and fail to state a cause of action.

For the foregoing reasons, Count IV should be dismissed with prejudice.

### C.   Plaintiff Fails to Plead a Cognizable Claim Against Dr. Tumlin for Fraud (Count V).

Plaintiff's fraud claim is essentially identical to the fraud claim that was rejected in the *Rockford* case. Just as there, the claim fails as a matter of law. *Id.* at 776−77.

To properly state a claim for fraud under Tennessee law, a plaintiff must allege facts showing: "(1) intentional misrepresentation of a material fact; (2) knowledge that the representation was false—that the misrepresentation was made knowingly or recklessly or without belief or regard for its truth; (3) reasonable reliance on the misrepresentation by the plaintiff and resulting damages; (4) that the misrepresentation relates to an existing or past fact[.]" *Dog House Inv., LLC v. Teal Prop., Inc.*, 448 S.W.3d 905, 916 (Tenn. Ct. App. 2014) (*quoting Stacks v. Saunders*, 812 S.W.2d 587, 592 (Tenn. Ct. App. 1990)). "Fraud is never presumed, and where it is alleged facts sustaining it must be clearly made out." *Homestead Grp., LLC v. Bank of Tenn.*, 307 S.W.3d 746, 751 (Tenn. Ct. App. 2009).

Tennessee courts impose a heightened pleading requirement for fraud: "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Tenn. R. Civ. P. 9.02. "[C]onclusory statements are not sufficient to make out a cause of action sounding in fraud." *Shaw v. FSG Bank, N.A.*, No. E201401365COAR3CV, 2015 WL 5169155, at *6 (Tenn. Ct. App. Aug. 31, 2015) (quoting *PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525, 556 (Tenn. Ct. App. 2012)).

Plaintiff appears to allege Defendants committed fraud in two ways. First, "[i]n setting the inflated, AWP-based prices for Acthar, which prices (sic) Acthar paid, the Defendants made material misrepresentations that those prices represented the purported 'average' of 'wholesale prices' for Acthar, or some price reasonably related thereto, which they did not." (Compl. ¶ 391). Second, "Defendants also misrepresented that the inflated AWP prices for Acthar represented the actual value of the product in the marketplace, which they did not." (*Id.*).[5]  As Plaintiff continues, "these prices were artificial prices, unrelated to any actual, reasonable price in the marketplace, or the actual value of Acthar, but created and manipulated by the Defendants for the purpose of generating exorbitant revenue, thus constituting false representations...." (Compl. ¶ 393). Plaintiff does, however, correctly note that Dr. Tumlin wrote the prescription to Acument's patient.[6]  (Compl. ¶ 396).

Plaintiff's allegations are precisely the type of vague and conclusory allegations that Tennessee courts find insufficient to state a claim for fraud.  Plaintiff attributes no statement about prices being the "average" of "wholesale prices" to Mallinckrodt, nor does Plaintiff otherwise begin to describe the required who, what, when, where, and why of such representations. And, "high prices do not in and of themselves constitute false representations." *City of Rockford*, 360 F.Supp.3d at 777; *see generally Thompson's Gas & Elec. Serv., Inc. v. BP Am. Inc.*, 691 F. Supp.

---

[5] Plaintiff does not allege that Dr. Tumlin had a role in either the setting of wholesale prices or making representations thereon.  These are the same allegations that form the basis of Counts I and II, which the Plaintiff admits cannot be brought against Dr. Tumlin.

[6] Plaintiff incorrectly alleges that Dr. Tumlin "charged" Patient AB for the Acthar. (Compl. ¶ 395). The correct statement of facts is found earlier in the Complaint where it states that "a prescription [was] written by Dr. Tumlin...." (Compl. ¶ 383). "[I]n 2015 through 2016, Acument was billed for Acthar by CVS/Caremark at a discounted price based on AWP." (Compl. ¶ 307). These two paragraphs from the Complaint correctly show that Dr. Tumlin played no role in the billing or payment for the Acthar and is not properly joined in any fraud claim under Count V.

2d 860, 870 (N.D. Ill. 2010) ("The fact that Defendants were offering propane for sale at inflated prices does not mean those prices were somehow 'false'" so as to support a fraud claim).

And, as noted above, the fraud allegations here are nearly identical to the allegations that the Rockford Court squarely rejected:

> [P]laintiffs fail to sufficiently plead the factual information informing defendants of the "who, when, where, what, and how" components of a valid fraud claim. Instead, plaintiffs offer general allegations that because the "prices [for Acthar] were artificial prices," *id.* ¶ 206, "[d]efendants made material misrepresentations that those prices represented a calculation of real and fact-based prices for their drugs, and that they represented the actual value of the product in the marketplace," *id.* ¶ 204."

*City of Rockford,* 360 F. Supp. 3d at 776–77.

For the foregoing reasons, Plaintiff's fraud claim should be dismissed with prejudice.

### D.   Plaintiff Fails to Plead a Cognizable Claim Against Dr. Tumlin for Conspiracy to Defraud/Concerted Action (Count VI).

Finally, Plaintiff's conspiracy claim is lifted nearly verbatim from the Rockford Action. Here, as there, the claim fails as a matter of law. *City of Rockford,* 360 F. Supp. 3d at 777. In addition, as with Counts I and II, *Plaintiff fails to bother to even mention Dr. Tumlin* or his putative role in the facts surrounding the allegations in Count VI.[7]

Plaintiff's Complaint fails to properly plead a claim for conspiracy to defraud under Tennessee law. To state a claim for conspiracy under Tennessee law, a plaintiff must allege facts showing: "(1) a common design between two or more persons, (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury." *Kincaid v. SouthTrust Bank,* 221 S.W.3d 32, 38 (Tenn.

---

[7] Tennessee Rule of Civil Procedure 9.02 states "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Failing to even invoke Dr. Tumlin's name, much less to allege any act in furtherance of an alleged conspiracy, is inconsistent with "particularity."

Ct. App. 2006). A claim for conspiracy to defraud further requires that "each conspirator must have the intent to accomplish this common purpose, and each must know of the other's intent." *Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 67 (Tenn. 2001).

Here, because Plaintiff's claim for conspiracy to defraud relies on the same faulty allegations underlying its fraud claim in Count V, for the same reasons discussed above, Plaintiff's claim should be dismissed. This is precisely what the *Rockford* Court did, applying Tennessee law:

> Similarly, under Tennessee law, a "claim for civil conspiracy requires an underlying predicate tort allegedly committed pursuant to the conspiracy." *Lane v. Becker*, 334 S.W. 3d 756, 763 (Tenn. Ct. App. 2010). Because plaintiffs have not met their pleading requirements under Rule 9(b) for alleging fraud, plaintiffs' conspiracy to defraud claims must be dismissed as well."

*City of Rockford,* 360 F. Supp. 3d at 777.

Further, even if Plaintiff had alleged facts sufficient to establish fraud, "[c]ivil conspiracy claims must be pled with some degree of specificity in order to survive a motion to dismiss; conclusory allegations unsupported by material facts will not be sufficient to state a claim for relief." *PNC Multifamily Capital*, 387 S.W.3d at 556.  Here, while Plaintiff's Complaint offers a disconnected array of conclusory allegations, such disjointed claims are insufficient to properly plead a conspiracy.

The Complaint fails to state claims under the Tennessee Trade Practices Act ("TTPA"), the Tennessee Consumer Protection Act ("TCPA"), or for negligent misrepresentation, unjust enrichment, fraud, or conspiracy to defraud against Dr. Tumlin.  The Complaint should be dismissed in its entirety with prejudice as to Dr. Tumlin.

Respectfully submitted this 28th day of October, 2019.


Kirk Caraway (#18576)
ALLEN SUMMERS, SIMPSON, LILLIE & GRESHAM PLLC
Attorneys for Defendant James A. Tumlin, M.D.
80 Monroe Ave., Suite 650
Memphis, TN  38103
T: 901.763.4200  F: 901.684.1768
kcaraway@allensummers.com

William D. Dillon (admitted *pro hac vice*)
TAYLOR ENGLISH DUMA, LLP
Attorneys for Defendant James A. Tumlin, M.D.
1600 Parkwood Cir., Suite 200
Atlanta, GA  30339
T: 404 640-5934, F: 770 434-7376
bdillon@taylorenglish.com

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing **RESPONSE OF DEFENDANT JAMES A TUMLIN, M.D. TO PLAINTIFF'S OPPPOSITION TO MOTION TO DISMISS** has been delivered via electronic mail and U.S. mail this 28th day of October, 2019 to the following:

Patrick M. Ardis
Daniel V. Parish
WOLF ARDIS, P.C.
5810 Shelby Oaks Drive
Memphis, TN  38134

Nathan A. Bicks
Lani D. Lester
William D. Irvine, Jr.
BURCH, PORTER & JOHNSON, PLLC
130 N. Court Ave.
Memphis, TN  38103

Laura Shores
Sonia Pfaffenroth
Ryan Watts
Matt Wolf
ARNOLD & PORTER
601 Massachusetts Ave., NW
Washington, DC 20001-3743

Donald E. Haviland, Jr.
William H. Platt II
HAVILAND HUGHES
201 S. Maple Way, Suite 110
Ambler, PA  19002

Daniel W. Van Horn
Kathryn K. Van Namen
Diana M. Comes
BUTLER SNOW LLP
6075 Poplar Ave., 5th Floor
Memphis, TN  38119

**Kirk Caraway**

13

ELECTRONICALLY FILED
2019 Oct 28 11:16 AM
CLERK OF COURT

IN THE CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE
FOR THE THIRTIETH JUDICIAL CIRCUIT AT MEMPHIS

ACUMENT GLOBAL TECHNOLOGIES, INC.

|                                              | Plaintiff,      |                        |
| -------------------------------------------- | --------------- | ---------------------- |
| v.                                           |                 | Docket No. CT-2275-19  |
| MALLINCKRODT ARD, INC., et al.,              |                 |                        |
|                                              | Defendants.     |                        |

### REPLY MEMORANDUM OF LAW IN SUPPORT OF THE EXPRESS SCRIPTS ENTITIES' MOTION TO DISMISS

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ..............................................................................................................................1

I.     Plaintiff's TTPA Claims Should Be Dismissed (Counts I–II) ................................1

       A.     The Exclusive Distribution Agreement Does Not Violate The TTPA Because It Did Not Reduce Competition Or Affect The Price Of Acthar Paid By Plaintiff ............................................................................2

       B.     The Express Scripts Entities Had No Involvement In The Synacthen Transaction ...........................................................................................5

       C.     Plaintiff Fails To Plead Proximate Cause .....................................................5

II.     Plaintiff's TCPA Claim Should Be Dismissed (Count III) ...................................7

       A.     Plaintiff's TCPA Claim Is Based On The Express Scripts Entities' Alleged Anticompetitive Conduct, Which Is Not Cognizable Under The TCPA ......................................................................................................7

       B.     Plaintiff Fails To Particularly Plead Unfair Or Deceptive Action By The Express Scripts Entities .......................................................................8

       C.     Plaintiff Fails To Plead Proximate Cause .....................................................9

III.     The Express Scripts Entities' Alleged Anticompetitive Conduct Does Not "Substantially Effect" Tennessee Trade Or Commerce And Therefore Is *Outside The Scope Of The TTPA And TCPA* ............................................................10

IV.     Plaintiff's Unjust-Enrichment Claim Should Be Dismissed (Count IV) ..............12

V.     Plaintiff's Fraud (Count V) And Conspiracy To Defraud/Concerted Action (Count VI) Claims Should Be Dismissed ...............................................................13

VI.     Plaintiff's Claims Are Time Barred .....................................................................14

VII.     Plaintiff Should Not Be Granted Leave To Replead ............................................17

CONCLUSION ...........................................................................................................................18

## TABLE OF AUTHORITIES

Page(s)

### Cases

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,*
459 U.S. 519 (1983) ................................................................................................ 6

*Begala v. PNC Bank, Ohio, Nat'l Ass'n,*
214 F.3d 776 (6th Cir. 2000) ................................................................................ 17

*Bennett v. Visa U.S.A. Inc.,*
198 S.W.3d 747 (Tenn. Ct. App. 2006) ................................................................. 7

*Berkey Photo, Inc. v. Eastman Kodak Co.,*
603 F.2d 263 (2d Cir. 1979) ................................................................................... 4

*Berry v. Mortg. Elec. Registration Sys.,*
2013 WL 5634472 (Tenn. Ct. App. Oct. 15, 2013) ............................................. 14

*Blake v. Abbott Labs, Inc.,*
1996 WL 134947 (Tenn. Ct. App. Mar. 27, 1996) .............................................. 10

*Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic,*
65 F.3d 1406 (7th Cir. 1995) .................................................................................. 4

*California v. Infineon Techs. AG,*
531 F. Supp. 2d 1124 (N.D. Cal. 2007) ............................................................... 11

*In re Cast Iron Soil Pipe & Fittings Antitrust Litig.,*
2015 WL 5166014 (E.D. Tenn. June 24, 2015) ................................................... 11

*Chenault v. Walker,*
36 S.W.3d 45 (Tenn. 2001) ..................................................................................... 2

*City of Rockford v. Mallinckrodt ARD, Inc.,*
360 F. Supp. 3d 730 (N.D. Ill. 2019) ......................... 1, 2, 5, 6, 7, 9, 12, 13, 15, 17

*Cont'l Cablevision of Ohio, Inc. v. Am. Elec. Power Co.,*
715 F.2d 1115 (6th Cir. 1983) ................................................................................ 4

*D.E.&J. Ltd. P'ship v. Conaway,*
133 Fed. App'x 994 (6th Cir. 2005) ..................................................................... 17

*In re Dealer Mgmt. Sys. Antitrust Litig.,*
362 F. Supp. 3d 510 (N.D. Ill. 2019) ................................................................... 11

*Dean Witter Reynolds, Inc. v. McCoy,*
853 F. Supp. 1023 (E.D. Tenn. 1994) .................................................................. 16

*Diggs v. Lasalle Nat'l. Bank Ass'n,*
387 S.W.3d 559 (Tenn. Ct. App. 2012) ........................................................... 13, 14

*Eldridge v. Savage,*
2012 WL 6757941 (Tenn. Ct. App. Dec. 28, 2012) ............................................. 16

*Freeman Indus., LLC v. Eastman Chem. Co.,*
    172 S.W.3d 512 (Tenn. 2005) ................................................................ 10, 11, 12

*Gilmore v. Davis,*
    185 F. App'x 476 (6th Cir. 2006) ............................................................. 16

*Glanton v. Bob Parks Realty,*
    2005 WL 1021559 (Tenn. Ct. App. Apr. 27, 2005) ..................................... 8

*Harvey v. Ford Motor Credit Co.,*
    8 S.W.3d 273 (Tenn. Ct. App. 1999) .................................................. 8, 10, 13

*Humphries v. W. End Terrace, Inc.,*
    795 S.W.2d 128 (Tenn. Ct. App. 1990) ..................................................... 9

*Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tenn., Inc.,*
    566 S.W.3d 671 (Tenn. 2019) .................................................................. 15

*Kinkaid v. SouthTrust Bank,*
    221 S.W.3d 32 (Tenn. Ct. App. 2006) ................................................. 8, 13, 14

*Lourcey v. Estate of Scarlett,*
    146 S.W.3d 48 (Tenn. 2004) ...................................................................... 3

*Maestas v. Sofamor Danek Grp., Inc.,*
    33 S.W.3d 805 (Tenn. 2000) .................................................................... 15

*Marshall v. ESPN Inc.,*
    111 F. Supp. 3d 815 (M.D. Tenn. 2015) *aff'd* 668 F. App'x 155 (6th Cir. 2016) ................... 13

*Medison Am., Inc. v. Preferred Med. Sys., LLC,*
    357 F. App'x 656 (6th Cir. 2009) ............................................................. 11

*Morris Props., Inc. v. Johnson,*
    2008 WL 1891434 (Tenn. Ct. App. Apr. 29, 2008) ...................................... 2

*Perry v. Am. Tobacco Co., Inc.,*
    324 F.3d 845, 851 (6th Cir. 2003) ........................................................ 5, 7, 9

*In re Pre-Filled Propane Tank Antitrust Litig.,*
    2019 WL 4796528 (W.D. Mo. Aug. 21, 2019) ........................................ 15, 17

*PR Diamonds, Inc. v. Chandler,*
    364 F.3d 671 (6th Cir. 2004) ................................................................... 17

*Prism Partners, L.P. v. Figlio,*
    1997 WL 691528 (Tenn. Ct. App. 1997) ................................................... 15

*Redwing v. Catholic Bishop for Diocese of Memphis,*
    363 S.W.3d 436 (Tenn. 2012) .................................................................. 16

*Schmank v. Sonic Auto., Inc.,*
    2008 WL 2078076 (Tenn. Ct. App. May 16, 2008) ..................................... 14

*Sherwood v. Microsoft Corporation,*
    2003 WL 21780975 (Tenn. Ct. App. July 31, 2003) ............................... 4, 5, 7, 8

*Steamfitters Local Union No. 614 Health & Welfare Fund v. Philip Morris, Inc.,*
  2000 WL 1390171 (Tenn. Ct. App. Sept. 26, 2000) ................................................................ 5

*Stephens v. Home Depot U.S.A., Inc.,*
  529 S.W.3d 63 (Tenn. Ct. App. 2016) ................................................................ 2

*Strategic Capital Res., Inc. v. Dylan Tire Indus., LLC,*
  102 S.W.3d 603 (Tenn. Ct. App. 2002) ................................................................ 14

*Tenn. Med. Ass'n v. BlueCross BlueShield of Tenn., Inc.,*
  229 S.W.3d 304 (Tenn. Ct. App. 2007) ................................................................ 5, 9, 10

*United States v. E.I. du Pont de Nemours & Co.,*
  351 U.S. 377 (1956) ................................................................ 4

*Vance v. Schulder,*
  547 S.W.2d 927 (Tenn. 1977) ................................................................ 15

*In re Vitamins Antitrust Litig.,*
  2001 WL 849928 (D.D.C. Apr. 11, 2001) ................................................................ 11, 14

**Statutes**

Tenn. Code. § 28–1–115 ................................................................ 15

Tenn. Code. §28–3–105(1) ................................................................ 15

Tenn. Code. § 28–3–105(2) ................................................................ 15

Tenn. Code. § 28–3–105(3) ................................................................ 15

<u>**Rules and Regulations**</u>

Tenn. R. Civ. P.9.02 ................................................................ 8, 13

## PRELIMINARY STATEMENT

Defendants Express Scripts Holding Co. ("ESHC"), Express Scripts, Inc. ("ESI"), CuraScript, Inc. ("CuraScript"), Priority Healthcare Corp., Priority Healthcare Distribution, Inc. d/b/a CuraScript SD ("CuraScript SD"), Accredo Health Group, Inc. ("Accredo"), and United BioSource Corp. ("UBC") (collectively, the "Express Scripts Entities") respectfully submit this Reply in support of their Motion to Dismiss and supporting Memorandum ("Mem.").

Plaintiff's Opposition ("Opp.") insists that its Complaint is "entirely different" than the complaint it filed as one of the plaintiffs in *City of Rockford v. Mallinckrodt ARD, Inc.*, 360 F. Supp. 3d 730 (N.D. Ill. 2019)—where the U.S. District Court for the Northern District of Illinois dismissed a materially identical set of claims, including those brought under Tennessee state law, that Plaintiff brings here—and that its "405 paragraph, 91-page Complaint easily satisfies" Tennessee's pleading standards. Opp. 3, 9. But rather than address the fundamental deficiencies that led to the dismissal of its complaint in *City of Rockford*, Plaintiff refiled its Complaint here that simply adds a litany of conclusory allegations to the same bare facts that were held insufficient to sustain any claim against the Express Scripts Entities. Plaintiff fails to offer any satisfactory explanation for why this Court should not follow *City of Rockford*. Accordingly, and for the additional reasons explained below, all claims against the Express Scripts Entities should be dismissed with prejudice.

## ARGUMENT

### I.   Plaintiff's TTPA Claims Should Be Dismissed (Counts I–II)

Plaintiff's TTPA claims boil down to two theories:  (1) that the exclusive distribution agreement between Mallinckrodt (a monopolist, as alleged by Plaintiff, that manufactures Acthar) and CuraScript SD (a specialty drug distributor) violates the TTPA's prohibition against agreements that lessen "full and free competition" or are designed to "control the price" to

consumers of a product, Tenn. Code. Ann. § 47-25-101; and (2) that Mallinckrodt's acquisition of Synacthen illegally reduced competition. Under any formulation of Plaintiff's allegations, the exclusive distribution agreement did not reduce competition or control the price of Acthar paid by Plaintiff. If Mallinckrodt is a monopolist and Acthar has no reasonable substitutes, as Plaintiff alleges, then *there is no competition to restrain*; on the other hand, if Mallinckrodt is not a monopolist and Acthar has reasonable substitutes, the exclusive distribution agreement still did not harm competition because Plaintiff does not allege that the agreement prohibited any entity from doing business with any of Mallinckrodt's competitors.[1]  With respect to Synacthen, Plaintiff pleaded only conclusory allegations—not material facts as required—to try to implicate the Express Scripts Entities in a transaction that the Express Scripts Entities had no involvement in, and no allegations are pleaded to claim otherwise. For these reasons, Plaintiff's TTPA claims should be dismissed.

### A.   The Exclusive Distribution Agreement Does Not Violate The TTPA Because It Did Not Reduce Competition Or Affect The Price Of Acthar Paid By Plaintiff

When considering the Express Scripts Entities' Motion to Dismiss, the Court "should not credit conclusory allegations or draw farfetched inferences" from Plaintiff's Complaint. *Morris Props., Inc. v. Johnson*, 2008 WL 1891434, at *1 (Tenn. Ct. App. Apr. 29, 2008) (citing *Chenault*

---

[1]    Plaintiff states that it will make Defendants' confidential, exclusive distribution agreements produced by Defendants in *City of Rockford* available to the Court for *in camera* inspection. Opp. 18. First, this violates the parties' Confidentiality Order in *City of Rockford* that prohibits disclosure of the parties' information "for any purpose whatsoever other than in [the *City of Rockford*] litigation." *City of Rockford*, Case No. 17-cv-50107, ECF No. 145. Second, if the Court considers these agreements—information which is outside the four corners of the Complaint—it must convert the present motion to a motion for summary judgment. *See Stephens v. Home Depot U.S.A., Inc.*, 529 S.W.3d 63, 73–74 (Tenn. Ct. App. 2016) (stating that a court must convert a motion to dismiss to a motion for summary judgment if the court considers matters outside the pleadings unless the information is "subject to judicial notice, matters of public records, orders, [and] items appearing in the record of the case," none of which is true here).

*v. Walker*, 36 S.W.3d 45, 56 (Tenn. 2001)). But that is exactly what Plaintiff's Complaint requires the Court to do to make out a claim against the Express Scripts Entities under the TTPA.

Plaintiff's Complaint alleges that the exclusive distribution agreement signed in 2007 between Mallinckrodt and CuraScript SD to distribute Mallinckrodt's drug, Acthar, is an unlawful, anticompetitive act under the TTPA. Compl. ¶¶ 335–38. Plaintiff's theory, however, is contradicted by its own admissions in its Complaint that "Acthar is the only therapeutic ACTH product sold in the United States. Mallinckrodt is the sole provider in the U.S. of approved ACTH drugs. Thus, Mallinckrodt is a monopolist." *Id.* ¶ 3.[2] These non-conclusory allegations must be assumed true for purposes of this Motion to Dismiss. *See Lourcey v. Estate of Scarlett*, 146 S.W.3d 48, 51 (Tenn. 2004). Assuming that they are true, there is no way the distribution agreement between Mallinckrodt and CuraScript SD could reduce competition between Acthar and other drugs because ***there are no competing drugs***. In other words, there is no competition to reduce. Mem. 10–12. Mallinckrodt is a monopolist and Acthar has no competition, so Mallinckrodt can set the price of Acthar regardless of the number of distributors it employs or its distribution method. Having one distributor would result in the same price as having multiple distributors. *Id.*

Plaintiff argues in its Opposition that "Express Scripts examines none of the section's detailed allegations in arguing a 'failure to plead," and then cites to paragraphs 58–107 of the Complaint. Opp. 17. Those paragraphs describe Mallinckrodt's decision in 2007 to contract with CuraScript SD to be the exclusive distributor of Acthar. Plaintiff then concludes—without pleading any material facts—that the exclusive distribution agreement thus "allowed Mallinckrodt

---

[2]  Plaintiff likewise alleges that "[t]he relevant product market is the sale of ACTH drugs, dominated by just one product, Acthar," Compl. ¶ 223; "Mallinckrodt is the single seller" of Acthar, *id.*; the market for ACTH drugs "is and has been characterized by significant barriers to entry," *id.* ¶ 224; and "[t]here are no medical or reasonably available substitutes for Acthar," *id.* ¶ 225.

to raise its prices." Compl. ¶ 107. But nowhere in the Complaint, nor in Plaintiff's Opposition, does Plaintiff allege *how* such an agreement allowed an alleged monopolist like Mallinckrodt—or *why* Mallinckrodt would need such an agreement—to raise the price of Acthar, a drug that Plaintiff alleges has no competitors, is manufactured only by Mallinckrodt, and for which the price is set by Mallinckrodt.  As a "monopolist," *id.* ¶ 3, Mallinckrodt by definition can unilaterally set Acthar's price.  *See United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 391 (1956) ("Monopoly power is the power to control prices or exclude competition."); *Cont'l Cablevision of Ohio, Inc. v. Am. Elec. Power Co.*, 715 F.2d 1115, 1121 (6th Cir. 1983) ("Setting a high price may be a use of monopoly power, but it is not in itself anticompetitive.") (citing *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 294 (2d Cir. 1979)); *Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*, 65 F.3d 1406, 1413 (7th Cir. 1995) ("A natural monopolist that acquired and maintained its monopoly without excluding competitors by improper means . . . can therefore charge any price that it wants.").

Plaintiff contends that other courts have found similar allegations sufficient to sustain antitrust claims under state law, but can muster citation to only a single case—*Sherwood v. Microsoft Corporation*, 2003 WL 21780975 (Tenn. Ct. App. July 31, 2003). Opp. 17. *Sherwood* is inapplicable here, however, because there, the court held that plaintiffs sufficiently alleged that Microsoft's monopolistic conduct ***harmed competition*** in the computer software market by preventing operating systems other than Microsoft's Windows from being used on computers. *Sherwood*, 2003 WL 21780975, at *2.  The computer-software market—unlike the market for ACTH drugs as pleaded by Plaintiff—consists of numerous, competing entities. Given Plaintiff's allegations that Acthar is the only drug in the ACTH market and that Mallinckrodt is a monopolist and therefore sets Acthar's price unilaterally, Plaintiff is in a fundamentally different position than

the *Sherwood* plaintiffs and cannot plausibly allege, as the plaintiffs in *Sherwood* did, that it "paid higher prices [for Acthar] than [it] would have in a competitive market." *See id.* at *22.

**B.    The Express Scripts Entities Had No Involvement In The Synacthen Transaction**

Plaintiff also alleges that Mallinckrodt's acquisition of Synacthen violated the TTPA. Compl. ¶¶ 339–45. However, Plaintiff does not plausibly allege that any Express Scripts Entity was involved in anything to do with the Mallinckrodt-Synacthen transaction. Mem. 11. In its Opposition, Plaintiff only reinforces this point, stating that its Complaint "describes how **Mallinckrodt** sought to further enhance its monopoly power through the acquisition of Synacthen," "details how **Mallinckrodt** set out to acquire the synthetic version of Acthar," and incorporates by reference the FTC Complaint and Retrophin Complaint against **Mallinckrodt**. Opp. 17 (emphasis added). Plaintiff does not allege—nor could it—that the FTC and Retrophin Complaints include any allegations against the Express Scripts Entities. Mem. 11. Indeed, neither Complaint—attached to Plaintiff's Complaint as Exhibits D and E, respectively—even mentions any of the Express Scripts Entities. For these reasons, Plaintiff cannot sustain a TTPA claim against the Express Scripts Entities based on the Mallinckrodt-Synacthen transaction.

**C.    Plaintiff Fails To Plead Proximate Cause**

Proximate cause is a required element of any claim brought pursuant to the TTPA. *Tenn. Med. Ass'n v. BlueCross BlueShield of Tenn., Inc.*, 229 S.W.3d 304, 311 (Tenn. Ct. App. 2007) (citing *Perry v. Am. Tobacco Co., Inc.*, 324 F.3d 845, 848, 851 (6th Cir. 2003)); *accord Steamfitters Local Union No. 614 Health & Welfare Fund v. Philip Morris, Inc.*, 2000 WL 1390171, at *3–4 (Tenn. Ct. App. Sept. 26, 2000). As the court in *City of Rockford* already held, Plaintiff's claims under the TTPA must fail because it cannot plead that its alleged injury was proximately caused

5

by the Express Scripts Entities' conduct. *City of Rockford*, 360 F.Supp.3d at 760 (holding that Plaintiff "would not meet even the least stringent state's 'proximate cause' test").

Plaintiff reformulates the Express Scripts Entities' causation arguments into a dispute about Plaintiff's indirect purchaser status and devotes pages in its Opposition to discussing *AGC* and its application (or lack thereof) under Tennessee law. Opp. 9–15.[3] Whether Plaintiff may bring its claims as an indirect purchaser under Tennessee law is irrelevant and does not remove the requirement that the alleged anticompetitive conduct be a proximate cause of Plaintiff's injury. The Express Scripts Entities' Motion never even mentions *AGC*—let alone relies on it—because regardless of whether *AGC* applies or not, Plaintiff's TTPA claims fail as a matter of law: its alleged injury—overpaying for Acthar—is too remote from the alleged anticompetitive conduct. Specifically, Plaintiff alleges that "in 2015 through 2016, [Plaintiff] was billed for Acthar by CVS/Caremark at a discounted priced [sic] based on AWP. The discount CVS/Caremark provided [Plaintiff] for the Acthar was AWP minus 15.75%." Compl. ¶ 307.[4] Nowhere in its Complaint or its Opposition does Plaintiff explain how the alleged conduct of the Express Scripts Entities impacted the discount that CVS/Caremark provided to Plaintiff for Acthar. Mem. 9. Plaintiff's

---

[3]   In *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 538–46 (1983), the U.S. Supreme Court held that a union's allegations of consequential harm resulting from an association's alleged violation of the antitrust laws in coercing union members to enter into business relationships with non-union contractors were insufficient as a matter of law. The Court considered that the union was neither a consumer nor a competitor in the market in which trade was allegedly restrained, the tenuous and speculative character of the causal relationship between injury and the alleged restraint, the potential for duplicative recovery or complex apportionment of damages, and the existence of more direct victims.

[4]   Although Plaintiff alleges that the spouse of one of its members was prescribed Acthar in 2011 when ESI was Plaintiff's PBM, Plaintiff "received no bill" for that prescription. Compl. ¶ 307. The only damages Plaintiff claims are for alleged payments it made to CVS/Caremark—a non-party and competitor to ESI—for Acthar between December 2015 and December 2016. *Id.* ¶ 17.

TTPA claims must therefore be dismissed. *See City of Rockford,* 360 F.Supp.3d at 760; *Perry,* 324 F.3d at 851 (affirming dismissal of TTPA claims because "Plaintiffs cannot show that they have been proximately injured by Defendants' conduct").

## II.      Plaintiff's TCPA Claim Should Be Dismissed (Count III)

### A.      Plaintiff's TCPA Claim Is Based On The Express Scripts Entities' Alleged Anticompetitive Conduct, Which Is Not Cognizable Under The TCPA

Plaintiff does not contest that "claims based upon anticompetitive conduct are not cognizable under the TCPA." *Bennett v. Visa U.S.A. Inc.*, 198 S.W.3d 747 (Tenn. Ct. App. 2006). Because Plaintiff's TCPA claim is based on the same anticompetitive conduct underlying its TTPA claims, the Court should dismiss Plaintiff's TCPA claim. Mem. 15–16.

Although Plaintiff argues that its TCPA claim is not "premised on the anticompetitive conduct that forms the basis of [Plaintiff's] TTPA claims," Opp. 18, this argument is belied by the plain language of the Complaint, which expressly incorporates by reference the paragraphs *Plaintiff pleaded in support of its TTPA claims to plead its TCPA claim.* Compl. ¶ 367. These allegations are precisely the type that Tennessee courts have rejected as outside the TCPA's scope. *See Bennett*, 198 S.W.3d at 755 (affirming dismissal of TCPA claim because allegations that Visa and MasterCard implemented debit card policies resulting in increased costs to consumers was anticompetitive conduct outside the TCPA's scope); *Sherwood*, 2003 WL 21780975, at *33–34 (reversing trial court and dismissing TCPA claim because, although Plaintiffs asserted that their amended complaint included examples of "varying ways in which consumers were victims of misleading, unfair and/or deceptive conduct by Microsoft," these allegations were "directly related to" the antitrust violation allegations).

In its Opposition, Plaintiff attempts to save its TCPA claim by arguing that it incorporates allegations contained in the Department of Justice's ("DOJ") Qui Tam whistleblower complaint

against Mallinckrodt, and "this separate conduct violated the TCPA." Opp. 18–19. However, none of the allegations in the DOJ's complaint implicate the Express Scripts Entities. *See id.* ("[T]wo branches of the same government (FTC and DOJ) sued the same Defendant, **Mallinckrodt**. But the conduct at issue was different, such that **Mallinckrodt** has twice settled with the government.") (emphasis added). Therefore, these allegations cannot be used to hold the Express Scripts Entities liable under the TCPA.

### B. Plaintiff Fails To Particularly Plead Unfair Or Deceptive Action By The Express Scripts Entities

TCPA claims "must be stated with the particularity of common-law fraud claims under Tenn. R. Civ. P. 9.02." *Glanton v. Bob Parks Realty*, 2005 WL 1021559, at \*6 (Tenn. Ct. App. Apr. 27, 2005); *accord Harvey v. Ford Motor Credit Co.*, 8 S.W.3d 273, 275 (Tenn. Ct. App. 1999). Plaintiff's Complaint fails to plead any unfair or deceptive actions by the Express Scripts Entities with the specificity required by Rule 9.02. Mem. 17–18. Plaintiff insists that it pleaded "that Express Scripts 'misled and deceived [Plaintiff] and the public about . . . the lack of value of Acthar for the prices being charged," Opp. 19, and cites to paragraphs 391 and 393 of the Complaint as reflecting "Express Scripts' willful misrepresentations," Opp. 20. But those paragraphs say nothing more than, generally, that "Defendants made material misrepresentations" about the price of Acthar. Compl. ¶¶ 391, 393. When, where, and how were those supposed misrepresentations made? Who at the Express Scripts Entities supposedly made them? This information, which is essential under Rule 9.02, is left a mystery. *See Kinkaid v. SouthTrust Bank*, 221 S.W.3d 32, 41 (Tenn. Ct. App. 2006) ("To pass the particularity test, the actors should be identified and the substance of each allegation should be pled.")

Plaintiff also offers a string cite to 100 paragraphs of its Complaint—all of which were pleaded in support of its TTPA claims—that it contends provide the missing information. Opp.

20. But these paragraphs are either devoid of the requisite allegations against the Express Scripts Entities or fail to explain what exactly the Express Scripts Entities misrepresented—which presumably is why Plaintiff's Opposition neglects to quote or paraphrase what these paragraphs actually say. Specifically:

- Paragraphs 112–157 fail to allege any unfair or deceptive action, or otherwise contain allegations against only Mallinckrodt (alleging that Mallinckrodt raised the price of Acthar and misrepresented the price in a press release);

- Paragraphs 158–186 describe public comments made by an Express Scripts employee, Everett Neville, that Acthar is "vastly overpriced" and "has very little impact," and describe Express Scripts' Prior Authorization Policy, without explaining what is false, misleading, or deceptive about those comments; and

- Paragraphs 278–305 contain allegations against Mallinckrodt and Dr. James Tumlin, not the Express Scripts Entities (describing Dr. Tumlin's alleged role in the Acthar scheme as a leading "Key Opinion Leader" for Mallinckrodt).

Plaintiff has thus failed to plead any unfair or deceptive action by the Express Scripts Entities with the particularity required by Rule 9.02, so its TCPA claim should be dismissed. *See Humphries v. W. End Terrace, Inc.*, 795 S.W.2d 128, 132 (Tenn. Ct. App. 1990) (affirming dismissal of TCPA claim because there were "no allegations setting forth any particular fraudulent or deceptive conduct on the part of any agent or employee of [Defendant]").

### C.   Plaintiff Fails To Plead Proximate Cause

"The same proximate cause standard governs [Plaintiff's] statutory claims under the TCPA and the TTPA." *Tenn. Med. Ass'n*, 229 S.W.3d at 311 (citing *Perry*, 324 F.3d at 851). For the reasons discussed above in Section I.C, and as the court held in *City of Rockford*, any purported harm to Plaintiff is too attenuated from the alleged wrongdoing to be actionable. Mem. 19; *City of Rockford*, 360 F. Supp. 3d at 760. Plaintiff misses the point when it argues that it was damaged in paying "the inflated prices charged to Plaintiff." Opp. 20. CVS/Caremark—not the Express Scripts Entities—set the discounted price that Plaintiff was charged and ultimately paid. Compl.

¶ 307. Plaintiff does not—and cannot—plausibly allege that the Express Scripts Entities proximately caused the price that third-party CVS/Caremark charged Plaintiff for Acthar.

Likewise, nowhere in Plaintiff's Complaint does Plaintiff allege that it ever saw or heard any of the Express Scripts Entities' alleged "misleading and deceptive statements about Acthar's pricing, distribution and value." Opp. 20. This is a fundamental deficiency in Plaintiff's causation argument that mandates dismissal. *See Harvey*, 8 S.W.3d at 276 (affirming dismissal of TCPA claim because Plaintiffs failed to "at least allege that they were exposed to the offensive conduct").

### III.   The Express Scripts Entities' Alleged Anticompetitive Conduct Does Not "Substantially Effect" Tennessee Trade Or Commerce And Therefore Is Outside The Scope Of The TTPA And TCPA

The Tennessee Supreme Court has held that "the proper standard for determining whether a case falls within the scope of the TTPA is a 'substantial effects' standard. Pursuant to this standard, courts must decide whether the alleged anticompetitive conduct affects Tennessee trade or commerce to a substantial degree." *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 523 (Tenn. 2005). Tennessee courts apply "the same limitations" to the TCPA as those applied to the TTPA. *Blake v. Abbott Labs, Inc.*, 1996 WL 134947, at *7 (Tenn. Ct. App. Mar. 27, 1996). Here, the only "effects" on Tennessee trade or commerce that Plaintiff pleaded was that a single doctor in Tennessee prescribed Acthar to a single patient in Tennessee. *See* Compl. ¶¶ 307–08. Plaintiff is a Delaware corporation headquartered in Michigan that provides healthcare benefits to its employees through Blue Cross Blue Shield of Michigan. *See id.* ¶¶ 23–24. Plaintiff did not allege that Mallinckrodt, which manufactures Acthar, or non-party CVS/Caremark, which Plaintiff paid for Acthar, have any connection to Tennessee. *See id.* ¶¶ 26–30, 307–08. And though Plaintiff pleaded that certain of the Express Scripts Entities have operations in Tennessee, it offered only conclusory assertions, not plausible allegations, that these operations included the distribution of Acthar. *See id.* ¶¶ 31–41. In fact, Plaintiff pleaded that "the patient at issue dealt

10

with CVS Caremark Specialty for their fulfillment of Acthar," not any of the Express Scripts Entities. *Id.* ¶ 98.

Plaintiff's allegations against the Express Scripts Entities fall well short of meeting the required "substantial effects" standard. Courts considering allegations with far more connections to Tennessee have dismissed similar claims. *See Freeman*, 172 S.W.3d at 524 (affirming dismissal of TTPA claim because plaintiff failed to "establish how the defendants' anticompetitive conduct affected Tennessee commerce to a substantial degree even though the conduct resulted in [Defendant] paying higher prices to retailers"); *Medison Am., Inc. v. Preferred Med. Sys., LLC*, 357 F. App'x 656, 662–63 (6th Cir. 2009) ("The only effects that [Plaintiff] cites here are its own alleged injuries, which do not amount to a 'substantial' effect on Tennessee trade or commerce as a whole."); *In re Cast Iron Soil Pipe & Fittings Antitrust Litig.*, 2015 WL 5166014, at *40 (E.D. Tenn. June 24, 2015) (allegations that product was sold by defendants based in Tennessee, who effectuated their plan from Tennessee, and who generated revenue by utilization of the product in Tennessee was not substantial); *California v. Infineon Techs. AG*, 531 F. Supp. 2d 1124, 1159 (N.D. Cal. 2007) ("[P]laintiff's allegations—which stated that defendant had taken sales orders and implemented sales to customers at artificially raised prices from its principal place of business in Tennessee—were too 'bare' to sufficiently establish that Tennessee commerce was substantially affected."); *In re Vitamins Antitrust Litig.*, 2001 WL 849928, at *6 (D.D.C. Apr. 11, 2001) (dismissing TTPA and TCPA claims because of the "notable lack of allegations regarding any part of the conspiracy that took place in Tennessee, other than the purchase of vitamin supplements by indirect purchasers and the actions of certain [Defendant] executives located in Tennessee"); *In re Dealer Mgmt. Sys. Antitrust Litig.*, 362 F. Supp. 3d 510, 550 (N.D. Ill. 2019) (dismissing TTPA

11

claim as not satisfying the "substantial effect" standard where plaintiff auto dealerships brought putative class action against providers of dealer management system software).

Plaintiff does not dispute that it must allege anticompetitive conduct that affects Tennessee trade or commerce to a "substantial degree," Opp. 15, but instead curiously argues that "Express Scripts concedes that the alleged anticompetitive conduct at issue affected Tennessee trade or commerce. So, this Court need not dwell on the issue," Opp. 16. That is incorrect. The Express Scripts Entities have not, and do not, concede that point. Plaintiff additionally attempts to distinguish the Tennessee Supreme Court's holding in *Freeman* by stating that in *Freeman*, plaintiff failed to allege that any sales took place in Tennessee, whereas here, "substantial sales of Acthar took place in Tennessee." Opp. 16 n.16. This is patently false. Plaintiff's 405-paragraph Complaint discusses the sale of Acthar to only a *single* patient. *See* Compl. ¶¶ 307–08. And in *Freeman*, the court acknowledged that plaintiff alleged that defendant "took orders and implemented sales to customers at the new prices from Tennessee," but that this "bare allegation without more" was not sufficient to establish that Tennessee commerce was substantially affected. *See Freeman*, 172 S.W.3d at 524. Just so here. Plaintiff has not plausibly alleged that the challenged conduct had a substantial effect on Tennessee trade or commerce, which is yet another reason why the Court should dismiss Plaintiff's TTPA and TCPA claims.

## IV.    Plaintiff's Unjust-Enrichment Claim Should Be Dismissed (Count IV)

As the court in *City of Rockford* held, Plaintiff's unjust-enrichment claim fails under Tennessee law because Plaintiff cannot show that it has exhausted any remedy it may have against CVS/Caremark, *City of Rockford*, 360 F. Supp. 3d at 772, and because Plaintiff cannot show that the Express Scripts Entities were unjustly enriched. Mem. 21–22. Plaintiff argues that it need not exhaust its remedies with CVS/Caremark because it is exhausting its remedies by suing Express Scripts. Opp. 22. Plaintiff cites no authority supporting its contention that it need not seek to

exhaust its remedies against CVS/Caremark—who Plaintiff reimbursed directly for Acthar pursuant to its PBM contract, and which payments Plaintiff alleges as damages—because it is suing Express Scripts, which according to Plaintiff's allegations last served as Plaintiff's PBM in 2011 and to which Plaintiff made no payments for Acthar. *See* Compl. ¶¶ 307–08. Moreover, under Tennessee law, where an unjust-enrichment claim rests on the same improper conduct as the underlying tort claim, the unjust-enrichment claim will rise or fall with the underlying claim. *See Marshall v. ESPN Inc.*, 111 F. Supp. 3d 815, 837 (M.D. Tenn. 2015), *aff'd* 668 F. App'x 155 (6th Cir. 2016). Here, Plaintiff's unjust-enrichment claim focuses on the same supposed anticompetitive and fraudulent conduct that underlies its TTPA and TCPA claims, and because those claims fail as a matter of law, so too does Plaintiff's unjust-enrichment claim. Mem. 21–22.

## V. Plaintiff's Fraud (Count V) And Conspiracy To Defraud/Concerted Action (Count VI) Claims Should Be Dismissed

Plaintiff's fraud and conspiracy claims—like its TCPA claim—must be pleaded with particularity pursuant to Tenn. R. Civ. P. 9.02. *Kincaid*, 221 S.W.3d at 41. "The party alleging fraud bears the burden of proving each element." *Diggs v. Lasalle Nat'l. Bank Ass'n*, 387 S.W.3d 559, 564 (Tenn. Ct. App. 2012). As with its TCPA claim, Plaintiff in its Opposition offers a laundry list of paragraphs that it contends "details . . . distinct acts of misrepresentation and deception." Opp. 24. As discussed above in Section II.B, the Complaint does not allege with the requisite particularity that the Express Scripts Entities engaged in any fraudulent action; what, if any, particular misrepresentations made by the Express Scripts Entities that Plaintiff relied on; that Plaintiff actually believed the purported misrepresentations; and that Plaintiff would not have paid for Acthar but for the purported misrepresentations. Mem. 19–21; *City of Rockford*, 360 F. Supp. 3d at 776–77 (dismissing Plaintiff's fraud claim under Tennessee law for lack of particularity). Tennessee courts routinely dismiss fraud claims for these reasons. *See Harvey*, 8 S.W.3d at 276

(affirming dismissal of fraud claim because "[n]owhere in the Amended Complaint . . . does the appellant allege that he ever saw or heard any of these advertisements"); *Kinkaid*, 221 S.W.3d at 41 (affirming dismissal of fraud claim where plaintiff failed to identify the actors and the substance of each allegation); *Strategic Capital Res., Inc. v. Dylan Tire Indus., LLC*, 102 S.W.3d 603, 611 (Tenn. Ct. App. 2002) (same); *Berry v. Mortg. Elec. Registration Sys.*, 2013 WL 5634472, at \*6 (Tenn. Ct. App. Oct. 15, 2013) (affirming dismissal of fraud claim where plaintiff made no allegations that the "purported wrongdoings are in any way tied" to *her own* case); *Diggs*, 387 S.W.3d at 565 (affirming dismissal of fraud claim where plaintiff made no allegations that it relied on false representations to his detriment).

Finally, Tennessee courts have held that "conspiracy in and of itself is not a free-standing cause of action and that there must exist an underlying colorable claim." *See In re Vitamins Antitrust Litig.*, 2001 WL 849928, at \*10 (citing cases). Here, because Plaintiff's other claims fail as a matter of law for the reasons stated above, so too does Plaintiff's conspiracy claim. Mem. 21–22.

## VI.   **Plaintiff's Claims Are Time Barred**

"[W]here the undisputed facts demonstrate that no reasonable trier of fact could conclude that a plaintiff did not know, or in the exercise of reasonable care and diligence should not have known, that he or she was injured as a result of the defendant's wrongful conduct, Tennessee case law has established that judgment on the pleadings or dismissal of the complaint is appropriate." *Schmank v. Sonic Auto., Inc.*, 2008 WL 2078076, at \*3 (Tenn. Ct. App. May 16, 2008). In its Opposition, Plaintiff for the first time states that it is suing and "therefore is exhausting its remedies" against the Express Scripts Entities based on the PBM contract it allegedly had with ESI *in 2011*. Opp. 22. Plaintiff failed to plead any facts that it therefore did not have notice of its claims *in 2011*, which is when it alleges it utilized ESI as its PBM when its beneficiary was started

on Acthar, though it was not charged for the prescription. Compl. ¶¶ 24–25, 306–07. At the very latest, Plaintiff had notice of its claims in December 2015 when it paid CVS/Caremark $68,186.75 per prescription for Acthar. *Id.* However, Plaintiff did not file its Complaint until May 21, 2019—outside the one-year and three-year statute of limitations applicable to its claims—and thus each of its claims are time barred and should be dismissed with prejudice.[5]

Under Tennessee law, there is a **three-year** statute of limitations for tort claims alleging "injuries to personal or real property," Tenn. Code. § 28–3–105(1), and those "based upon the alleged violation of any federal or state statute creating monetary liability for personal services rendered, or liquidated damages or other recovery thereof, when no other time of limitation is fixed by the statute creating such liability," *id.* § 28–3–105(3). This includes Plaintiff's claims under the **TTPA**, see *In re Pre-Filled Propane Tank Antitrust Litig.*, 2019 WL 4796528, at \*15 (W.D. Mo. Aug. 21, 2019), Plaintiff's **fraud** claim, *see Vance v. Schulder*, 547 S.W.2d 927, 930 (Tenn. 1977), and Plaintiff's **unjust-enrichment** claim, *see* Tenn. Code. § 28–3–105(2); *Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tenn., Inc.*, 566 S.W.3d 671, 680 (Tenn. 2019). There is a **one-year** statute of limitations for Plaintiff's **TCPA** claim, Tenn. Code Ann. § 47-18-110, and **conspiracy** claim, *see Prism Partners, L.P. v. Figlio*, 1997 WL 691528, at \*4 (Tenn. Ct. App. 1997).

---

[5]   Tennessee does not recognize cross-jurisdictional tolling (i.e., tolling one jurisdiction's statute of limitations pending a judicial outcome in a foreign jurisdiction). *Maestas v. Sofamor Danek Grp., Inc.*, 33 S.W.3d 805, 807–08 (Tenn. 2000). Therefore, Plaintiff cannot claim that the complaint it filed in *City of Rockford* tolled Tennessee's statute of limitations applicable to its claims. *See id.* Likewise, Plaintiff cannot rely on Tenn. Code § 28–1–115 (Dismissed Federal Court Actions) because that allows a party one year to file an action in state court after it was dismissed in federal court only **for lack of jurisdiction**, which was not the case in *City of Rockford*. Opp. 2 n.2 (stating that Plaintiff "took a voluntary dismissal as of right under Federal Rule 41(a)").

A cause of action accrues and the statute of limitations begins to run "when the plaintiff has either actual or constructive knowledge of the claim." *Eldridge v. Savage*, 2012 WL 6757941, at \*4 (Tenn. Ct. App. Dec. 28, 2012) (citing *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 459 (Tenn. 2012)). "Constructive or 'inquiry' notice occurs 'when the plaintiff has actual knowledge of facts sufficient to put a reasonable person on notice that he or she has suffered an injury as a result of wrongful conduct.'" *Id.* "In other words, 'inquiry notice charges a plaintiff with knowledge of those facts that a reasonable investigation would have disclosed.'" *Id.* "Once the plaintiff 'gains information sufficient to alert a reasonable person of the need to investigate the injury, the limitation period begins to run.'" *Id.* The plaintiff "need not know the exact legal standards in order to know that [he] has sustained an injury," and once he has detected the injury, he "cannot wait until all of its effects are known, that is, until he knows all of the injurious effects as consequences of an actionable wrong" to bring suit. *Gilmore v. Davis*, 185 F. App'x 476, 482 (6th Cir. 2006); *see also Dean Witter Reynolds, Inc. v. McCoy*, 853 F.Supp. 1023, 1036 (E.D. Tenn. 1994) ("[T]he statute of limitations is tolled only during the period of time when the injured party had no knowledge at all that the wrong had occurred, and, as a reasonable person, was not put on inquiry.").

Plaintiff alleges that on July 2, 2007, Mallinckrodt publicly announced that it was limiting the distribution of Acthar to "just Express Scripts." Compl. ¶ 60. Plaintiff also alleges that this exclusive distribution agreement allowed "Mallinckrodt to raise the prices of Acthar to exorbitant, non-competitive levels." *Id.* ¶ 13. Therefore, when one of Plaintiff's beneficiaries received Acthar *in 2011* pursuant to "a direct relationship with the Express Scripts Defendants," Opp. 10, Plaintiff was on notice of its claims. At the very latest, in December 2015, when Plaintiff paid CVS/Caremark $68,186.75 per prescription of Acthar, Compl. ¶¶ 24–25, it was on actual notice

or else on inquiry notice. In other words, after receiving a bill for $68,186.75 from CVS/Caremark for a prescription of Acthar, Plaintiff would have had reason to suspect, at the time it paid CVS/Caremark in December 2015, the basis for the claims that it now brings.

Last, Plaintiff cannot avail itself of the continuing violation doctrine to toll the statute of limitations. As a federal court recently found, "the Court is unaware of any Tennessee court opinion that has recognized the continuing violation doctrine as applied to TTPA claims or to this statute of limitations. In the absence of any state precedent to foreshadow the Tennessee Supreme Court applying the continuing violations doctrine to TTPA claims, the Court find that those claims are untimely." *In re Pre-Filled Propane Tank Antitrust Litig.*, 2019 WL 4796528, at *15.

## VII.   Plaintiff Should Not Be Granted Leave To Replead

Plaintiff has had two chances to adequately plead its claims—once in *City of Rockford* and once here—and has failed both times. There is no indication that a third bite at the apple would cure the fundamental deficiencies inherent in Plaintiff's theories of liability. Plaintiff nonetheless requests leave to replead "[t]o the extent this Court were to find [Plaintiff's] complaint deficient in any material respect." Opp. 2 n.1. Courts routinely deny such requests in situations such as these and should do so here. *See D.E.&J. Ltd. P'ship v. Conaway*, 133 Fed. App'x 994, 1001–02 (6th Cir. 2005) (holding district court did not abuse its discretion in denying plaintiff an opportunity to file what would have amounted to a fourth complaint); *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 698–700 (6th Cir. 2004), *abrogated in part on other grounds* (upholding the district court's denial of leave to amend where the plaintiffs requested leave to amend "in the event the Court grants any part of the Defendants' motion to dismiss"); *Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 214 F.3d 776, 784 (6th Cir. 2000) (affirming denial of leave to amend because "[w]hat plaintiffs may have stated, almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss is [ ] not a motion to amend"); *id.* (plaintiffs cannot expect

"an advisory opinion from the Court informing them of the deficiencies of their complaint and then an opportunity to cure those deficiencies").

## CONCLUSION

For the foregoing reasons, all claims against the Express Scripts Entities should be dismissed with prejudice.

Dated: October 28, 2019

Respectfully Submitted,

/s/ Nathan A. Bicks
Nathan A. Bicks, Esq. (BPR #10903)
Lani D. Lester (BPR #35226)
William D. Irvine Jr. (BPR #35193)
BURCH, PORTER & JOHNSON, PLLC
130 North Court Avenue
Memphis, TN 38103
Tel: (901) 524-5000
Fax: (901) 524-5024
nbicks@bpjlaw.com
llester@bpjlaw.com
wirvine@bpjlaw.com

Michael J. Lyle, Esq. (*pro hac vice*)
Eric C. Lyttle, Esq. (*pro hac vice*)
Ethan C. Glass, Esq. (*pro hac vice*)
Meghan A. McCaffrey, Esq. (*pro hac vice*)
Michael D. Bonanno, Esq. (*pro hac vice*)
Brian H. Rowe, Esq. (*pro hac vice pending*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
1300 I Street NW, Suite 900
Washington, D.C. 20005-3314
Tel: (202) 538-8000
Fax: (202) 538-8100
mikelyle@quinnemanuel.com
ericlyttle@quinnemanuel.com
ethanglass@quinnemanuel.com
meghanmccaffrey@quinnemanuel.com
mikebonanno@quinnemanuel.com
brianrowe@quinnemanuel.com

*Attorneys for Defendants Express Scripts Holding Co.,*
*Express Scripts, Inc., CuraScript, Inc., Priority*
*Healthcare Corp., Priority Healthcare Distribution,*
*Inc., Accredo Health Group, Inc. and United BioSource*
*Corp.*

## CERTIFICATE OF SERVICE

I hereby certify that on October 28, 2019, a true and correct copy of the foregoing was sent

by email or U.S. mail to the following:

Daniel V. Parish, Esq.
Patrick M. Ardis, Esq.
Roy Harold Chockley, Esq.
WOLFF ARDIS, P.C.
5810 Shelby Oaks Drive
Memphis, TN 38134
dparish@wolffardis.com
pardis@wolffardis.com
cchockley@wolffardis.com

Donald E. Haviland, Jr., Esq. (*pro hac vice*)
William H. Platt, II, Esq. (*pro hac vice*)
HAVILAND HUGHES
201 S. Maple Way, Suite 110
Ambler, PA 19002
haviland@havilandhughes.com
platt@havilandhughes.com

*Attorneys for Plaintiff Acument Global Technologies, Inc.*

Daniel B. Brown, Esq.
William D. "Bill" Dillon, Esq. (*pro hac vice*)
TAYLOR ENGLISH DUMA, LLC
1600 Parkwood Circle, SE, Suite 200
Atlanta, GA 30339
dbrown@taylorenglish.com
bdillon@taylorenglish.com

Kirk. A. Caraway, Esq.
ALLEN, SUMMERS, SIMPSON, LILLIE, &
GRESHAM, PLLC
80 Monroe Avenue, Suite 650
Memphis, TN 38103
kcaraway@allensummers.com

*Attorneys for Defendant James A. Tumlin, M.D.*

Daniel W. Van Horn, Esq.
Diana M. Comes, Esq.
Kathryn K. Van Namen, Esq.
BUTLER SNOW, LLP
6075 Poplar Avenue, Suite 500
Memphis, TN 38119
danny.vanhorn@butlersnow.com
diana.comes@butlersnow.com
kate.vannamen@butlersnow.com

Matthew M. Wolf, Esq. (*pro hac vice pending*)
Laura Shores, Esq. (*pro hac vice pending*)
Sonia Kuester Pfaffenroth, Esq. (*pro hac vice pending*)
Ryan Z. Watts, Esq. (*pro hac vice pending*)
ARNOLD & PORTER KAYE
SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001
matthew.wolf@arnoldporter.com
laura.shores@arnoldporter.com
sonia.pfaffenroth@arnoldporter.com
ryan.watts@arnoldporter.com

*Attorneys for Defendants Mallinckrodt ARD, Inc. and Mallinckrodt PLC*

/s/ Nathan A. Bicks
Nathan A. Bicks

ELECTRONICALLY FILED
2019 Oct 28 11:51 AM
CLERK OF COURT

## IN THE CIRCUIT COURT OF TENNESSEE FOR THE
## THIRTIETH JUDICIAL DISTRICT

ACUMENT GLOBAL TECHNOLOGIES, INC.　　　　:

　　　　　　　　　　Plaintiff,　　　　　　　　:　　DOCKET NO. CT-2275-19

　　　　　　v.　　　　　　　　　　　　　　　:　　Division: VII

MALLINCKRODT ARD, *et al.*,　　　　　　　　:

　　　　　　　　　　Defendants.　　　　　　　:

## DEFENDANTS MALLINCKRODT ARD INC. AND MALLINCKRODT PLC'S
## REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

### INTRODUCTION

One court has already held that Plaintiff's allegations do not support claims under Tennessee law. *See City of Rockford and Acument Global Techs., Inc. v. Mallinckrodt ARD, Inc., et. al.,* 360 F. Supp. 3d 730, 778 (N.D. Ill. Jan. 25, 2019). That court found that the connection between Plaintiff's alleged injuries and Mallinckrodt's alleged conduct is too remote to establish standing to bring claims under the Tennessee Trade Practices Act ("TTPA"). While Plaintiff claims that this Complaint is "entirely different," the additions to allegations concerning this critical connection are trivial. As a result, the doctrine of collateral estoppel bars Plaintiff from refiling those claims here. If this Court is nevertheless inclined to consider Plaintiff's claims on the merits, the result should be the same: Plaintiff's antitrust claims, asserted here in Counts I and II, should be dismissed—this time with prejudice.

Collateral estoppel also bars Plaintiff's unjust enrichment claim (Count IV). The federal court ruled that Plaintiff failed to plead, as Tennessee law requires, that it had exhausted all remedies against CVS Caremark—a failure it deemed "fatal to its claim." Plaintiff has made no attempt to cure this flaw here. A party cannot relitigate legal issues that were raised and rejected

in other courts. Count IV, whether barred by collateral estoppel or considered on the merits, should be dismissed as well.

Plaintiff's new claims fare no better. Plaintiff has failed to allege actual facts (with particularity or otherwise) to support its Tennessee Consumer Protection Act ("TCPA") and fraud claims. As Plaintiff concedes, each of those claims requires allegations that the defendant made a material representation. But the Complaint fails to allege that Mallinckrodt made *any* representation to it at all, much less any that was false. Instead, it attempts to contort the price of Acthar® Gel ("Acthar") into a misrepresentation of its true value. This theory, however, is based on Mallinckrodt's allegedly anticompetitive conduct, and Tennessee law is clear that anticompetitive conduct cannot form the basis of a claim under the TCPA. The allegations concerning Mallinckrodt's promotion of Acthar—all borrowed from an inadmissible *qui tam* complaint—have nothing to do with this case. The *qui tam* complaint concerns representations allegedly made to other doctors to induce them to prescribe Acthar to treat conditions for which it was not approved. No claim is made here that Mallinckrodt unlawfully promoted the drug to Dr. Tumlin, who prescribed Acthar to Plaintiff's beneficiary to treat a condition for which it *was* approved. Because Plaintiff has no actionable representation on which it can rely, Counts III, V, and VI should be dismissed with prejudice as well.

## DISCUSSION

### I.      Plaintiff's TTPA Claims Must Be Dismissed (Counts I and II)

Plaintiff's TTPA claims fail on several grounds. To begin with, the claims are precluded: the *Rockford* court dismissed them, and while its dismissal was without prejudice, Plaintiff's TTPA claims here are in all material respects identical to those rejected on standing grounds in *Rockford*. *See infra* Part I.A. The claims also fail on their merits, for additional reasons. *First*, Plaintiff fails to allege a relevant market. *Second*, it does not allege facts that if proved would

2

show that Mallinckrodt's distribution agreement with Express Scripts violated the TTPA; *Third*, it does not allege facts showing that Mallinckrodt's acquisition of a license for Synacthen had any impact on it, making its theory of antitrust injury too speculative to state a claim for relief. *See infra* Parts I.D-F.

### A.   Plaintiff's Assertion of Claims Previously Dismissed in a Different Court Based on the Same Allegations Requires Dismissal

The federal court in *Rockford* correctly concluded that Acument lacked antitrust standing to pursue recovery under the TTPA. Finding that "Acument would not meet *even the least stringent* state's 'proximate cause' test," *City of Rockford*, 360 F. Supp. 3d at 760 (emphasis added), the court held that Acument's complaint "does not sufficiently allege that Acument is a proper party to bring any antitrust or consumer protection claims (federal or state). . . . including those in Tennessee."[1] Because the allegations relevant to standing here are materially the same as those found insufficient in *Rockford*, Plaintiff is estopped from relitigating the issue.

"Collateral estoppel prohibits re-litigating issues that already have been fully and fairly litigated." *Partin v. Scott*, No. E2007-02604-COA-R3-CV, 2008 WL 4922412, at *11 (Tenn. Ct. App. Nov. 13, 2008). As one court explained, "[i]t matters not that the prior action resulted in a dismissal without prejudice, so long as the determination being accorded preclusive effect was essential to the dismissal." *Deutsch v. Flannery*, 823 F.2d 1361, 1364 (9th Cir. 1987). That is

---

[1] Plaintiff attempts to evade this holding by arguing that the federal court's standing analysis was conducted under *Associated General Contractors of California, Inc. v. California State Council of Carpenters* ("*AGC*"), 459 U.S. 519 (1983), which has not been expressly adopted by the Tennessee Supreme Court. *See* Opp., Part II.A. But the *Rockford* court held that Acument failed to satisfy any state's proximate cause requirement, thus depriving it of standing to pursue claims under any state antitrust law. In any event, the "same proximate cause standard" governing federal antitrust and RICO claims applies to claims under the TTPA. *Perry v. American Tobacco Co., Inc.*, 324 F.3d 845, 851 (6th Cir. 2003); and the Tennessee Court of Appeals has cited *AGC* as "analogous" when analyzing whether alleged harm was "too remote" from defendants' conduct under the Tennessee Consumer Protection Act. *Tennessee Medical Ass'n v. BlueCross BlueShield of Tennessee, Inc.* 229 S.W.3d 304, 308 (Tenn. Ct. App. 2007).

what happened in *Partin:* plaintiffs brought a civil rights action in the U.S. District Court for the Eastern District of Tennessee. 2008 WL 4922412, at *1. The district court granted summary judgment on the plaintiffs' federal claims and dismissed the plaintiffs' state law claims without prejudice. *Id.* Plaintiffs re-filed the state law claims in state court, the trial court dismissed them on collateral estoppel grounds, and the Court of Appeals of Tennessee affirmed. *Id.* at *10-11.

As in *Rockford*, Plaintiff's antitrust claims here are premised on (1) a 2007 exclusive Acthar agreement between Express Scripts and Mallinckrodt's predecessor, Questcor, and (2) Questcor's 2013 acquisition of a license for Synacthen. Compl. ¶¶ 7-8; *Rockford* Second Am. Compl. ¶¶ 48-49 (ECF 98) (No. 3:17-cv-50107) ("*Rockford* Second Am. Compl."). And, as in *Rockford*, Plaintiff alleges here that it paid non-party CVS/Caremark, not Express Scripts, for portions of Acthar prescriptions for one of its beneficiaries between December 2015 and December 2016 and seeks overcharge damages. Compl. ¶ 311; *Rockford* Second Am. Compl. ¶¶ 10, 66, 196.

The *Rockford* court held that Acument's complaint did "not sufficiently allege that Acument is a proper party to bring any antitrust or consumer protection claims (federal or state)." *City of Rockford*, 360 F. Supp. 3d at 761 (emphasis in original). The *Rockford* court noted that Acument purchased Acthar from CVS/Caremark, an entity that the complaint described as a co-conspirator without any factual support: "Curiously, the SAC claims that payments for Acthar flow directly from Acument to CVS, which is described as one of the 'co-conspirators,' yet no details are provided anywhere else in the SAC as to how CVS participates in the alleged conspiracy." *City of Rockford*, 360 F. Supp. 3d at 752 n.11 (citations omitted). Based on the complaint's lack of detail explaining how CVS was involved in the anticompetitive scheme, the

court concluded that, without more detail about the relationship of Acument, CVS, and the patient, Acument's injury was too remote for standing purposes. *Id*. at 752.

"The litigation of an issue presented and necessarily decided in a prior action between the same parties is foreclosed by the doctrine of issue preclusion." *Deutsch*, 823 F.2d at 1364 (citing *Allen v. McMurry*, 449 U.S. 90, 94 (1980)). "It matters not that the prior action resulted in a dismissal without prejudice, so long as the determination being accorded preclusive effect was essential to the dismissal." *Id*. The federal court in *Rockford* already determined that Acument's allegations are insufficient to satisfy standing requirements; it is accordingly estopped from relitigating that issue here.

Plaintiff insists that the two complaints are "entirely different" and that it has bolstered its allegations to cure the deficiencies in its federal complaint. *See* Opp., Introduction.[2]  But the additional allegations do nothing to strengthen the connection between Acument's purchases of Acthar from CVS/Caremark and the defendants' allegedly anticompetitive acts; if anything, they do the opposite.  Plaintiff alleges that Express Scripts administered Acument's prescription drug benefits through 2011, when Acument's beneficiary was prescribed Acthar for the first time. *See* Opp., Part II.A.  But Plaintiff admits that it did not pay for any part of that prescription.  Compl. ¶¶ 307, 312.  Accordingly, Plaintiff could not have suffered any harm in 2011.  The first time Plaintiff paid for a portion of the cost of an Acthar prescription was in 2015. *See id.* ¶ 311.  That payment was made to CVS/Caremark, not to Express Scripts.  Instead of offering new allegations that would explain how  CVS/Caremark is tied to the scheme, Acument appears to have abandoned the effort entirely, having omitted language from its federal complaint asserting the existence of a "likely understanding" between CVS/Caremark and Mallinckrodt. *Compare*

---

[2]  Because Acument's brief is not paginated, citations are to the pertinent sections.

*Rockford* Second Am. Compl. ¶ 196 ("Indeed, such payments were transferred by CVS Caremark to Mallinckrodt pursuant to a likely understanding between the two that the total amount would be forwarded to Mallinckrodt, less a certain amount previously agreed to by Mallinckrodt and CVS Caremark."); *with* Compl. ¶ 383 ("Indeed, such payments were transferred by CVS Caremark to Mallinckrodt through its exclusive agent, Express Scripts . . .").

Instead, the best Plaintiff could do was to throw references to Dr. Tumlin and Express Scripts into its description of how payments from Acument allegedly reached Mallinckrodt: "Acument made direct payments to CVS Caremark for the benefit of Mallinckrodt, *via Dr. Tumlin and Express Scripts*," and allege that "such payments were transferred by CVS Caremark to Mallinckrodt through its exclusive agent, Express Scripts pursuant to a prescription written by Dr. Tumlin that charged the inflated Acthar AWP." Compl. ¶ 383 (emphasis added). Those allegations do not add to Plaintiff's prior allegation that it paid CVS/Caremark for Acthar; they only muddy the issue further. Because the only differences in the two complaints on this issue "obviously lack substantive significance," *Deutsch*, 823 F.2d at 1364, collateral estoppel applies. Even if Plaintiff were not precluded from relitigating the question, the result would be the same: Plaintiff's claims here are too attenuated and remote to state a claim under the TTPA.

Plaintiff argues repeatedly that its status as an indirect purchaser ends the inquiry in its favor as to whether it is a proper plaintiff to assert antitrust claims against Mallinckrodt under the TTPA. *See* Opp., Part II.A. Not so; the analysis is a separate one. Under the TTPA, a plaintiff's claim may be "too remote, as a matter of law, to permit recovery." *Steamfitters Local Union No. 614 Health & Welfare Fund v. Philip Morris Inc.*, No. W1999-0161-COA-R9-CV, 2000 WL 1390171, at *7 (Tenn. Ct. App. Sept. 26, 2000). The cosmetic differences between the two complaints filed by Plaintiff in federal court and in this Court do nothing to shorten the distance

between the allegedly anticompetitive conduct and the price Acument paid to CVS/Caremark. Plaintiff's claims here are too attenuated and remote to state a claim under the TTPA.

**B.      Plaintiff Has Failed to Allege Facts That If Proved Would Establish Antitrust Injury**

Plaintiff's TTPA claims fails for additional reasons.  Antitrust injury is a "prerequisite to recovery for a violation of antitrust statutes." *Ghem, Inc. v. Mapco Petroleum, Inc.*, 850 S.W.2d 447, 453 (Tenn. 1993) (citing *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)); *see also Kroger Co. v. Sanofi-Aventis*, 701 F. Supp. 2d 938 (S.D. Ohio 2010).   In *Kroger*, the manufacturer of the brand name drug Plavix and a potential generic manufacturer entered into settlement agreements to resolve patent litigation.  *Id.* at 945-46.  The generic manufacturer began selling its product, and in response, the brand manufacturer sought and obtained an injunction requiring the generic manufacturer to halt its sales.   Purchasers of Plavix—filed suit, alleging that the manufacturers' settlement agreements were anticompetitive, delaying the availability of generic Plavix.   *Id.*   Plaintiffs alleged that "but for" the anticompetitive agreements, the manufacturers would have entered into a different settlement agreement on more procompetitive terms, and thus generic Plavix would have been available earlier.  *Id.* at 956.  The court dismissed plaintiffs' claims, rejecting as "circuitous" plaintiffs' "but for" scenario and holding that plaintiffs' alleged antitrust injury was too speculative.  *Id.*

Plaintiff's theory of injury here is even more speculative.  *First*, Plaintiff does not allege any *facts* that would support a finding that absent Questcor's acquisition of Synacthen, another bidder would have entered the market prior to December 2016, the *last* time Plaintiff paid for Acthar.  *See infra* Part I.E.   *Second*, Plaintiff's distribution theory is equally implausible; Acument does not allege facts suggesting that Mallinckrodt would charge any less if it distributed Acthar on its own, or through multiple distributors, rather than through just one.

7

Exclusive distribution agreements are presumptively lawful; restricting the number of dealers within a territory can "allow the manufacturer to achieve certain efficiencies in the distribution of his products." *Continental T.V., Inc. v. GTE Sylvania, Inc.*, 433 U.S. 36, 54 (1977) ("."). Plaintiff's failure to allege a plausible antitrust injury means that it has no standing to bring a claim.

### C.    The Complaint Fails to Allege Facts That If Proved Would Support a Finding that Mallinckrodt Has Monopoly Power in a Relevant Market

Alleging a relevant market is a prerequisite for allegations of anticompetitive harm. *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2285 (2018) ("Without a definition of the market there is no way to measure the defendant's ability to lessen or destroy competition.") (internal quotations omitted).    "The relevant market includes those products or services that are reasonably interchangeable with, as well as identical to, defendant's product." *Am. Council of Certified Podiatric Physicians and Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 622 (6th Cir. 1999).   Plaintiff alleges that the relevant product market is "ACTH drugs."   Compl. ¶¶ 2, 223.   But the Complaint asserts that alternative therapies existed to treat the same conditions.   It specifically alleges that Acthar is "not the preferred course of treatment" in some circumstances, even for conditions where it has an indication, and that "[o]ne such field was nephrology"— which includes the very condition for which Acthar was prescribed to Acument's beneficiary. Compl. ¶ 278.  Plaintiff's failure to adequately define a relevant market that is consistent with its theory of antitrust liability is fatal to its claim.

### D.    The Complaint Fails to Allege Facts Showing Mallinckrodt's Exclusive Distribution Agreement With Express Scripts Violated the TTPA

To state a claim under the TTPA, Plaintiff must allege facts showing that it was "injured or damaged" by Mallinckrodt's alleged anticompetitive conduct.  Tenn. Code Ann. § 47-25-106. The Complaint does not satisfy this standard.   Plaintiff does not dispute that, in general,

exclusive distribution agreements do not violate antitrust laws. *See* Opp., Part II.B; *see also Electronics Commc'ns Corp. v. Toshiba Am. Consumer Prods.*, 129 F.3d 240, 245 (2d Cir. 1997) ("[E]xclusive distributorship arrangements are presumptively legal."); *Crane & Shovel Sales Corp. v. Bucyrus-Eric Co.*, 854 F.2d 802, 807 (6th Cir. 1988) (holding a manufacturer's change of distributors does not state a claim unless it alleges anticompetitive effect at the interbrand level). *See id.* ¶ 311. The Complaint describes nothing more than a typical distribution arrangement for a specialty pharmaceutical product that requires special care and handling and treats a small patient population. Tennessee's basic pleading rules require more.

**E.     Plaintiff Has Failed to Allege Injury Arising Out of the Synacthen License**

Plaintiff also claims that its 2015 overcharge was caused by Questcor's acquisition of the rights to market Synacthen in 2013. Plaintiff's theory is that had another company acquired those rights, it would have developed Synacthen and sold it at a lower price. Plaintiff does not claim that Synacthen would have been prescribed to its beneficiary instead of Acthar; rather, Plaintiff claims that with Synacthen in the market, Mallinckrodt would have lowered Acthar's price, and Plaintiff would have paid less for it. As an initial matter, Plaintiff has not alleged facts showing that Synacthen, even if another company were successful in obtaining FDA approval, would have competed with Acthar. Moreover, Plaintiff fails to allege that: (1) an alternative purchaser would have succeeded at manufacturing a consistent Synacthen product; (2) the alternative purchaser would have conducted clinical trials for one or more of the same conditions for which Acthar is indicated; (3) the clinical trials would have been successful; (4) FDA would have approved the alternative purchaser's application; (5) doctors would have switched from Acthar to Synacthen; (6) enough doctors would have switched so as to cause Mallinckrodt to lower the price of Acthar; (7) all before December 2016, the date of Plaintiff's last payment for Acthar. Proof of each of these links in the chain would be necessary to sustain Plaintiff's theory.

Plaintiff alleges *no* facts that would support a finding that this speculative chain of events would have come about. The Complaint alleges that there were three alternative bidders, each of which "planned to develop Synacthen for Infantile Spasms ("IS") and to use Synacthen to compete directly with Acthar." Compl. ¶ 248. But Plaintiff does not allege that any of the bidders would have pursued *any* indications beyond IS, much less the one for which Acthar was prescribed in this case. *See* Compl. ¶¶ 253-54. Indeed, the Complaint does not even allege even that Synacthen is on the market today, much less plausible facts to suggest that it would have been approved by FDA to treat its beneficiary's condition in 2015. The absence of such allegations is fatal to Plaintiff's theory of injury.[3]

## II.   Plaintiff Fails to State an Unjust Enrichment Claim (Count IV)

Like its TTPA claims, Plaintiff's unjust enrichment claim was properly dismissed in *Rockford*. The federal court ruled that Plaintiff failed to allege, as Tennessee law requires, that it had exhausted all remedies against the person with whom it enjoyed privilege of contract. Plaintiff made no effort whatsoever to cure this deficiency and Plaintiff once again fails to allege here that it has made any attempt to recover from CVS/Caremark. For the reasons stated above, collateral estoppel principles preclude Plaintiff from relitigating that claim in this Court.

---

[3] Plaintiff's allegations regarding settlements with other parties are improper and should be disregarded. The settlement agreements are inadmissible, *see* Tenn. R. Evid. 408, and they are irrelevant, as none contains an admission of liability. *See* Stipulated Agreement, at 8, *FTC v. Mallinckrodt ARD Inc. et al.*, No. 1:17-cv-00120, (ECF 2-1) (D.D.C. Jan. 18, 2017) ("Order does not constitute evidence against the Defendants or any admission of liability or wrongdoing by Defendants."); Settlement Agreement, at 3, *Strunck et al. v. Mallinckrodt ARD*, No. 2:12-cv-00175-BMS, (ECF 74-1) (E.D. Penn. Sept. 20, 2019) ("The Settlement Agreement is neither an admission of liability by Questcor nor a concession by the United States that its claims are not well founded."); Stipulation of Dismissal of Action With Prejudice, at 2, *Retrophin, Inc. v. Questcor Pharmaceuticals, Inc.*, 8:14-cv-00026, (ECF No. 65) (C.D. Cal. June 4, 2015) (stipulating that claims be "dismissed with prejudice, without any admission of liability").

The *Rockford* court correctly dismissed the claim; Plaintiff's failure to allege facts showing that it exhausted all remedies against CVS/Caremark requires dismissal. *See Spahr v. Leegin Creative Leather Prods.*, 2008 U.S. Dist. LEXIS 90079 at \*45, (E.D. Tenn. Aug. 20, 2008).[4]  Plaintiff admits that under *Freeman Industries, LLC v. Eastman Chemical Co.*, 172 S.W.3d 512, 525 (Tenn. 2005), exhaustion is required. *See* Opp., Part II.E.[5]  Plaintiff argues that it is somehow satisfying the exhaustion requirement under *Freeman* by suing two parties—Dr. James Tumlin and Express Scripts—neither of which had a direct relationship with Plaintiff. Aside from the obvious point that efforts to exhaust remedies must be made *before* a lawsuit is filed, these parties are irrelevant to the question whether Plaintiff exhausted its remedies against CVS/Caremark—the only party with whom it was in privity when it conferred the benefit it now seeks to recover. That Dr. Tumlin first prescribed the drug in 2011, when it was dispensed by Express Scripts at no cost to Plaintiff or its beneficiary, is completely beside the point. Plaintiff evidently did nothing to recover from CVS/Caremark the money it paid for the medicine, and its failure to plead that it did so is fatal to its unjust enrichment claim--just as it was in *Rockford*.[6]

---

[4] Plaintiff purports to distinguish *Spahr* on the grounds that it relied on federal pleading standards. Plaintiff is wrong; in *Spahr*, the court held that Plaintiff's unjust enrichment claim failed because it did not exhaust all remedies against retailers with whom they had privity of contract. *See id.*  The issue here is the absence, not sufficiency, of allegations concerning exhaustion.

[5] Plaintiff contends that Mallinckrodt bears the burden with respect to exhaustion. It cites no authority for that proposition, and Mallinckrodt is aware of none.

[6] The Opposition states that Mallinckrodt "does not challenge Acument's statement of a claim as to unjust enrichment." Opp., Part II.E. This is incorrect. In addition to the Complaint's failure to plead exhaustion, Mallinckrodt's opening brief points to its failure to plead facts that would support a finding that any benefit Mallinckrodt received is "unjust." Mot. 18. Plaintiff's Opposition does not challenge that assertion.

11

**III.    Plaintiff Fails to State a Claim Under the Tennessee Consumer Protection Act (Count III)**

The allegations offered to support the Complaint's TCPA claim are the same as those offered to support its TTPA claims: Plaintiff paid too much for Acthar because Mallinckrodt uses a sole distributor and allegedly failed to undertake efforts to develop Synacthen.  *See* Compl. ¶¶ 376-79.  In its Opposition, Plaintiff argues a different theory: it asserts that its TCPA claim is premised on the allegedly fraudulent promotion of Acthar.  The Complaint governs, but under either theory, Plaintiff's TCPA claim fails.

**A.    Plaintiff Concedes That Alleged Anticompetitive Conduct Is Not Actionable Under the TCPA**

Plaintiff's TCPA claim is premised on the same allegedly anticompetitive conduct underlying its TTPA claims.  *See* Compl. ¶¶ 376-79.  Plaintiff's TCPA claim alleges, for instance, (1) that Defendants' conduct allowed them "to raise and fix prices of Acthar at supra-competitive levels, and to maintain Mallinckrodt's monopoly power in the market for ACTH drugs," *id.* ¶ 378; (2) that "Mallinckrodt and Express Scripts agreed to raise the prices of Acthar," *id.* ¶ 379; and (3) that Defendants made a "joint decision to raise the prices of Acthar," *id.* ¶ 376f.  In its Opposition, Plaintiff confirms that it seeks antitrust overcharge damages based on "inflated prices."  *See* Opp., Part II.D.  These allegations do not state a TCPA claim.  The Tennessee Supreme Court has held that "claims based on anticompetitive conduct are not cognizable under the TCPA." *Sherwood v. Microsoft Corp.*, No. M2000-01850-COA-R9CV, 2003 WL 21780975, at *33 (Tenn. Ct. App. July 31, 2003).  Apparently recognizing that, Plaintiff now insists that its TCPA claim is premised on Mallinckrodt's allegedly fraudulent promotion of Acthar.  But the Complaint does not allege any facts that would, if proved, show any misrepresentation or deceptive practice by Mallinckrodt, let alone with the particularity that the law requires.

12

Plaintiff's Opposition cites a *qui tam* whistleblower complaint filed in 2012 by a *different* plaintiff in a *different* state concerning alleged promotion to *different* specialists for *different* conditions than the condition for which the patient at issue here was prescribed Acthar. *See* Opp., Part II.D (citing Compl. ¶¶ 200-20).[7]   Specifically, the *qui tam* complaint alleges that Mallinckrodt unlawfully promoted Acthar to neurologists for use in the treatment of *multiple sclerosis*, a disease affecting the brain and central nervous system that Acthar was not approved to treat.   In its Complaint in this Court, Plaintiff seeks recovery of payments it made for a prescription made by a kidney doctor—nephrologist Dr. Tumlin—to an Acument beneficiary for a *kidney disease*, Idiopathic Membranous Nephropathy (iMN), that Acthar is approved to treat. *See* Compl. ¶¶ 175, 177, 300; *see also* Compl. ¶¶ 306-12.  The Complaint states repeatedly FDA has approved Acthar for long-term use for treatment of nephrotic syndromes such as iMN.  *See* Compl., ¶¶ 52 and 177e, Ex. A at 2; Ex. C at 5, Ex. E at ¶¶ 30-34, 43-45.  Plaintiff here alleges that a doctor prescribed Acthar to Plaintiff's beneficiary for an FDA-approved indication—not off-label ones as alleged in the *qui tam* complaint.[8]

The *qui tam* complaint's unproven allegations therefore have nothing to do with Plaintiff or this case.  Plaintiff claims that it paid too much for Acthar when it was prescribed to treat a condition for which the drug had been approved.   Unable to assert that Acthar was inappropriately promoted or prescribed, or even that it was not effective in treating its beneficiary's condition, Plaintiff argues generally that Mallinckrodt "misled and deceived Acument and the public about the lack of value of Acthar for the prices being charged," thereby

---

[7] The Court should disregard Plaintiff's references to the factual allegations in the *qui tam* complaint, for the reasons stated in n.3 *supra*.

[8] Within Count III, the Complaint contains a stray reference to the condition "DM/PM" (dermatomyositis and polymyositis), which is not a kidney disease. *See* Compl. ¶ 376g. The Complaint it does not allege that Acument ever paid for a prescription that was prescribed for DM/PM.

somehow implicitly disparaging other products.  *See* Opp., Part II.D.  Plaintiff does not explain

how marketing an FDA-approved product for its indicated use could give rise to liability for

disparagement.  The Complaint does not allege that the price of Acthar was the result of

deception, and without any such allegation, it fails to state a claim under the TCPA.

## IV.   Plaintiff Fails to State a Claim for Fraud (Count V) or Conspiracy to Defraud (Count VI)

Plaintiff does not dispute that it must plead its fraud claim with particularity under Rule

9.02 of the Tennessee Rules of Civil Procedure.  *See id.* Part II.F.  Not one of the alleged

"misrepresentations   and   omissions"   that   Plaintiff   cites   constitutes   an   actionable

misrepresentation or omission by Mallinckrodt.  *See id.*

*First*, Plaintiff alleges that Defendants "manipulated and inflated AWP prices."  *Id.*

Prices, however, are not representations.  Plaintiff points to decisions in the *Average Wholesale*

*Price Litigation*, but the *AWP* litigation had nothing to do with the claims asserted here.  In those

cases, plaintiffs alleged that manufacturers offered prescription drugs at secret, lower prices

while being reimbursed for them at higher published list prices.  *See, e.g., In re Pharm. Indus.*

*Average Wholesale Price Litig.*, 582 F.3d 156, 160-61 (1st Cir. 2009); *In re Mississippi*

*Medicaid Pharm. Average Wholesale Price Litig.*, 190 So. 3d 829, 834 (Miss. 2015).  The

Complaint nowhere alleges that Mallinckrodt ever published a false "AWP."  Compl. ¶¶ 153-55.

It does reference a press release in which Mallinckrodt cites a price per vial that, according to the

Complaint, was lower than its listed AWP price.  Even if there were some basis to find that the

price was factually inaccurate, it has no relevance to Plaintiff's claim.  The press release was

released in 2018, years *after* Plaintiff claims it was overcharged for Acthar.  *See, e.g.*, Compl. ¶

146.

14

*Second*, Plaintiff argues that Defendants, collectively, "misrepresented the purported efficacy, safety and value of Acthar for the treatment of unapproved conditions and unapproved doses." Opp., Part II.F.  Tennessee law requires fraud to be pleaded with particularity. *See Sherwood*, 2003 WL 21780975, at *34 (dismissing plaintiff's TCPA claim where "no specific conduct was tied to this general allegation," and where the court could "find no further explanation for this conclusory allegation, and no facts supporting it.").  But neither the Complaint nor the Opposition provides any details about which parties said what, when, to whom, or how.  Absent this necessary detail, Plaintiff alleges no facts to support its claim that any Defendant made misrepresentations about anything.  Neither the Complaint nor Plaintiff's Opposition identify *any* representation by Mallinckrodt or any other defendant concerning Acthar's efficacy, safety, or value, let alone a specific, actionable misrepresentation with particularity as required under Rule 9.02.

Plaintiff does not dispute that dismissal of its underlying claims requires dismissal of its conspiracy to defraud claim as well.  *See* Opp., Part II.G.  For the reasons stated above, Plaintiff's allegations fail to state any of the underlying claims.  Accordingly, the Court should dismiss Plaintiff's fraud and conspiracy to defraud claims.

## CONCLUSION

The claims asserted in Counts I, II, and IV have already been considered and rejected by one court, and Plaintiff is not entitled to refile them here in hopes of obtaining a different result.  They fail here for the same reason that they failed there.  Plaintiff's remaining claims also lack merit as a matter of law; even accepted as true, they do not state a claim for relief under Tennessee law.  The Court should dismiss the Complaint in its entirety with prejudice.

For the reasons stated above and in Mallinckrodt's opening brief, the Court should dismiss the Complaint. Moreover, because Plaintiff's claims each lack merit as a matter of law, the Court should dismiss the Complaint in its entirety with prejudice.

Dated: October 28, 2019                    Respectfully submitted,

                                           Daniel W. Van Horn (#18940)
                                           Diana M. Comes (#30112)
                                           Kathryn K. Van Namen (#31322)
                                           **BUTLER SNOW LLP**
                                           6075 Poplar Avenue, 5th Floor
                                           Memphis, TN 38119
                                           T: (901) 680-7200
                                           F: (901) 680-7201
                                           Danny.VanHorn@butlersnow.com
                                           Diana.Cornes@butlersnow.com
                                           Kate.VanNamen@butlersnow.com

                                           Matthew M. Wolf
                                           Laura S. Shores
                                           Sonia K. Pfaffenroth
                                           Adam Pergament
                                           **ARNOLD & PORTER KAYE SCHOLER LLP**
                                           601 Massachusetts Avenue, NW
                                           Washington, DC 20001
                                           (202) 942-5000
                                           matthew.wolf@arnoldporter.com
                                           laura.shores@arnoldporter.com
                                           sonia.pfaffenroth@aronldporter.com
                                           adam.pergament@arnoldporter.com

## CERTIFICATE OF SERVICE

I, Daniel W. Van Horn, attorney for Defendant Mallinckrodt, certify that a true and correct copy of the foregoing motion has been sent via e-mail and via U.S. Mail, postage prepaid, this 28th day of October 2019, to the following:

| | |
|---|---|
| Patrick M. Ardis, Esq.<br>Daniel V. Parish, Esq.<br>**WOLF ARDIS, P.C.**<br>5810 Summer Oaks Drive<br>Memphis, Tennessee 38134<br>pardis@wolfardis.com<br>cchockley@wolfardis.com<br>dparish@wolfardis.com | Daniel B. Brown, Esq.<br>**TAYLOR ENGLISH DUMA, LLC**<br>1600 Parkwood Circle, SE<br>Suite 200<br>Atlanta, GA 30339<br>dbrown@taylorenglish.com |
| Donald E. Haviland, Jr., Esq.<br>William H. Platt II, Esq.<br>**HAVILAND HUGHES**<br>201 S. Maple Way, Suite 110<br>Ambler, PA 19002<br>haviland@havilandhuges.com<br>platt@havilandhuges.com<br><br>*Counsel for Plaintiff Acument Global Technologies, Inc.* | Kirk A. Caraway, Esq.<br>**ALLEN, SUMMERS, SIMPSON, LILLIE & GRESHAM, PLLC**<br>80 Monroe Avenue, Suite 650<br>Memphis, TN 38103<br>kcaraway@allensummers.com<br><br>*Counsel for Dr. Tumlin* |
| Nathan A. Bicks, Esq.<br>William D. Irvine, Jr., Esq.<br>Lani D. Lester, Esq.<br>**BURCH, PORTER & JOHNSON, PLLC**<br>130 North Court Avenue<br>Memphis, TN 38103<br>nbicks@bpjlaw.com<br>wirvine@bpjlaw.com<br>llester@bpjlaw.com<br><br>*Counsel for Express Scripts Defendants* | Eric C. Lyttle, Esq.<br>Michael D. Bonanno, Esq.<br>Ethan C. Glass, Esq.<br>Meghan A. McCaffrey, Esq.<br>Michael Lyle, Esq.<br>Quinn Emanuel Urquhart & Sullivan, LLP<br>1300 I Street, NW<br>Washington, D.C. 2005<br>ericlyttle@quinnemanuel.com<br><br>*Counsel for Express Scripts Defendants* |

Daniel W. Van Horn

17