Exhibit 9-7

ELECTRONICALLY FILED
2020 Feb 03 5:09 PM
CLERK OF COURT

## IN THE CIRCUIT COURT OF TENNESSEE FOR THE
## THIRTIETH JUDICIAL DISTRICT

| | | |
|---|---|---|
| ACUMENT GLOBAL TECHNOLOGIES, INC. | : | |
| | : | |
| Plaintiff, | : | DOCKET NO. CT-2275-19 |
| | : | |
| v. | : | Division: VII |
| | : | |
| MALLINCKRODT ARD INC., *et al.*, | : | |
| | : | |
| Defendants. | : | |

## DEFENDANTS MALLINCKRODT ARD INC., MALLINCKRODT PLC, EXPRESS SCRIPTS HOLDING CO., EXPRESS SCRIPTS, INC., CURASCRIPT, INC., PRIORITY HEALTHCARE CORP., PRIORITY HEALTHCARE DISTRIBUTION, INC., ACCREDO HEALTH GROUP, INC., AND UNITED BIOSOURCE CORP.'S MEMORANDUM IN RESPONSE TO THE COURT'S INQUIRY AS TO IMPLICATIONS OF RULE 54 ON ITS JURISDICTION

Defendants Mallinckrodt ARD Inc. and Mallinckrodt plc (collectively, "Mallinckrodt"), and Defendants Express Scripts Holding Co., Express Scripts, Inc., CuraScript, Inc., Priority Healthcare Corp., Priority Healthcare Distribution, Inc., Accredo Health Group, Inc., and United BioSource Corp. (collectively, "the ESI Entities"), respectfully submit this memorandum to address the Court's inquiry as to the implications of Fed. R. Civ. P. 54(b) on the Court's jurisdiction over this case.

### PRELIMINARY STATEMENT

The Court requested that the parties submit supplemental briefing addressing the question of whether Plaintiff is barred from maintaining this lawsuit because Plaintiff has raised materially identical claims in an earlier-filed and still-pending federal action in the U.S. District Court for the Northern District of Illinois. *City of Rockford v. Mallinckrodt ARD, Inc.*, No. 3:17-cv-50107 (N.D. Ill.) ("***Rockford***"). As explained below, Plaintiff's case in *Rockford* is still pending because there

has been no final judgment in that case.  Plaintiff's lawsuit here should therefore be dismissed, or alternatively, stayed until the resolution of *Rockford*.

## FACTUAL BACKGROUND

On December 8, 2017, Plaintiff and its co-plaintiff City of Rockford filed a class action complaint in *Rockford* against Mallinckrodt and the ESI Entities on behalf of "[a]ll third party payors and their beneficiaries in the United States and its Territories that paid for Acthar from August 2007 through the present," raising similar factual allegations and claims to those that Plaintiff brings here.  *Rockford*, ECF No. 98.  Specifically, Plaintiff brought antitrust and other overlapping claims in both *Rockford* and here.  On January 25, 2019, the *Rockford* court dismissed all of Plaintiff's claims without prejudice, holding that Plaintiff lacked antitrust standing and could not state a claim against either Mallinckrodt or the ESI Entities because Plaintiff alleged it paid CVS, not Mallinckrodt or the ESI Entities, for Acthar.  *Id.*, ECF No. 178 at 17–18.  The *Rockford* court also dismissed Plaintiff's RICO, unjust enrichment, and fraud claims as a matter of law.  *Id.* The *Rockford* court denied defendants' motions to dismiss with respect to the antitrust claims brought by co-plaintiff City of Rockford on behalf of the putative class.  *Id.*  On March 1, 2019, Plaintiff filed a notice of voluntary dismissal without prejudice, *id.*, ECF No. 195, which the *Rockford* court ordered on March 21, 2019, *id.*, ECF No. 201.[1]  The *Rockford* case is currently proceeding through discovery on the remaining antitrust claims.

---

[1] The Order stated—

> Before the court is plaintiff Acument's notice of voluntary dismissal without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1) [195].  Defendants did not file an objection by the deadline stated in the court's order taking Acument's notice under advisement [197].  Accordingly, there being no objection, Acument is terminated from this case.

## ARGUMENT

I.     **This Court Should Dismiss Plaintiff's Complaint Because Plaintiff's Case In** *Rockford* **Is Still Pending**

      A.     **Pursuant To Rule 54(b), Plaintiff's Voluntary Dismissal Without Prejudice In** *Rockford* **Was Not A Final Judgment**

Rule 54(b) directs that "any order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Therefore, an order dismissing without prejudice fewer than all the parties from a lawsuit is not a final judgment in that lawsuit. *See Long v. United States*, 972 F.2d 1174, 1178 n.5 (10th Cir. 1992) ("Finality does not attach to an order that dismisses some but not all defendants in an action."); 15A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3914.7 (2d ed. Aug. 2019); *see also Gelboim v. Bank of Am. Corp.*, 574 U.S. 405 (2015) ("A 'final decision' is one 'by which a district court disassociates itself from a case.'" (quoting *Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 42 (1995))); *Riley v. Kennedy*, 553 U.S. 406, 419 (2008) (holding that a "final judgment" in a federal court "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment" (internal quotation marks omitted)). Moreover, in the Seventh Circuit, an interlocutory order "[is] not a final judgment" if it "omit[s] the talismanic words required by Rule 54 FRCP . . . expressly directing entry of final judgment and stating that there is no just reason for delay." *Matter of Narowetz Mech. Contractors, Inc.*, 898 F.2d 1306, 1308 n.4 (7th Cir. 1990) (internal quotation marks omitted).

The *Rockford* court granted Plaintiff's notice of voluntary dismissal without prejudice without directing the entry of final judgment. Indeed, the case in *Rockford* is currently proceeding on the remaining antitrust claims brought by co-plaintiff City of Rockford on behalf of a putative class

of all third-party payors of Acthar.  Under Rule 54(b), because the *Rockford* court's order "adjudicate[d] fewer than all the claims or the rights and liabilities of fewer than all the parties," the *Rockford* court can revise its order of voluntary dismissal "at any time" before adjudicating co-plaintiff City of Rockford's and the putative class's remaining antitrust claims.  Fed. R. Civ. P. 54(b).  In other words, Plaintiff's claims in *Rockford* can still be revived "at any time" by the *Rockford* court.  *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505 (2001) (explaining that Rule 41(a)(1) would not bar "the plaintiff from returning later, to the same court, with the same underlying claim"); *State Nat'l Ins. Co. v. Cty. of Camden*, 824 F.3d 399, 406 (3d Cir. 2016) (explaining that "[u]nder its inherent powers" a district court can "reinstate[] [a party] at any point during which the litigation continue[s]"); *Rabbi Jacob Joseph Sch. v. Province of Mendoza*, 425 F.3d 207, 210 (2d Cir. 2005) (explaining that because "[a] plaintiff who voluntarily dismisses his action without prejudice may reinstate his action" such a dismissal is not "final" (internal quotation marks omitted)); *United States v. LoRusso*, 695 F.2d 45, 53 (2d Cir. 1982) ("A district court has the inherent power to reconsider and modify its interlocutory orders prior to the entry of judgment.").  Plaintiff is therefore still subject to the jurisdiction of the *Rockford* court, and Plaintiff's case remains pending there.

   **B.     Plaintiff's Reliance On Fed. R. Civ. P. 41(a) Is Misguided**

   Plaintiff contends that because it voluntarily dismissed its case without prejudice in *Rockford* pursuant to Rule 41(a), the *Rockford* court is divested of jurisdiction because the dismissal acts as a final judgment.  Pl.'s Mem. at 3.  This is not the law.  *See, e.g.*, *Spring Creek Expl. & Prod. Co., LLC v. Hess Bakken Inv., II, LLC*, 887 F.3d 1003, 1015 (10th Cir. 2018) (explaining the "general rule" that "we will not allow parties to manufacture finality by obtaining a voluntary dismissal without prejudice" (internal quotation marks omitted)); *Nat'l Inspection & Repairs, Inc. v. George*

*S. May Int'l Co.*, 600 F.3d 878, 883 (7th Cir. 2010) ("[T]he dismissal of one claim or theory without prejudice . . . makes the judgment non-final." (internal quotation marks omitted)).

The D.C. Circuit's holding in *Blue v. District of Columbia Public Schools* is persuasive. 764 F.3d 11, 15 (D.C. Cir. 2014). In *Blue*, the district court dismissed all of plaintiff's claims against Defendant A. *Id.* Plaintiff then voluntarily dismissed Defendant B from the case without prejudice and sought to appeal the district court's dismissal order with respect to Defendant A. *Id.* The D.C. Circuit held that plaintiff could not appeal the district court's dismissal order with respect to Defendant A because that order was not a "final judgment." *Id.* The D.C. Circuit went on to survey the law in every federal circuit, concluding that nearly every federal circuit had expressly barred the practice of using a Rule 41(a) dismissal without prejudice to manufacture a final judgment. *Id.* at 17.

Neither of the cases Plaintiff relies on—*American Cyanamid Co. v. McGhee*, 317 F.2d 295, 297 (5th Cir. 1963), and *In re Amerijet International, Inc.*, 785 F.3d 967, 973 (5th Cir. 2015) (per curiam)—apply here because those cases involved only one plaintiff and one defendant. *See* Pl.'s Mem. at 4. In those cases, the court lost jurisdiction when the Rule 41(a) notice was filed because the notice "adjudicat[ed] all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). By contrast, in *Rockford*, Plaintiff's notice of voluntary dismissal under Rule 41(a) did not affect co-plaintiff City of Rockford's continuing pursuit of its antitrust claims on behalf of a putative class of all third-party payors of Acthar. And because the *Rockford* case is still ongoing, the *Rockford* court, pursuant to Rule 54(b), could reinstate Plaintiff's claims at any time prior to final judgment on the remaining claims.

Ultimately, Plaintiff wants it both ways. To avoid dismissal of this action, Plaintiff wants the Court to hold that Plaintiff's earlier-filed lawsuit in *Rockford* reached a final judgment. *See* Pl.'s

Mem. at 3. But to avoid claim and issue preclusion—which would attach if there *had* been a final judgment in *Rockford*—Plaintiff wants the Court to hold that the *Rockford* court's motion to dismiss order with respect to Plaintiff's claims was not "final," but Plaintiff's voluntary dismissal was. By Plaintiff's logic, it can litigate against Defendants over and over again—as many times as it wants, in as many courts as it wants—and as long as it dismisses its case without prejudice, it can erase any adverse rulings it received and then simply try again elsewhere. *See Shannon v. Gen. Elec. Co.*, 186 F.3d 186, 192 (2d Cir. 1999) ("[I]f a litigant could refuse to proceed whenever a trial judge ruled against him . . . the policy against piecemeal litigation and review would be severely weakened." (internal quotation marks omitted)). Indeed, Plaintiff's counsel recently filed a notice of voluntary dismissal under Rule 41(a) in the U.S. District Court for the District of Maryland on behalf of an individual plaintiff raising similar claims as Plaintiff here even though the court had already dismissed all of plaintiff's claims as a matter of law and directed that the case be closed. *Washington Cty. Bd. of Educ. v. Mallinckrodt ARD, Inc.*, No. 1:19-cv-01854-JKB (D. Md.), ECF No. 98. The Court should reject Plaintiff's pattern of forum shopping and instead dismiss the Complaint.

**C.    Tennessee's Prior Suit Pending Doctrine Counsels In Favor Of Dismissal**

The Court should dismiss Plaintiff's lawsuit because its case in *Rockford* remains pending and it could revive its claims there at any time. Tennessee recognizes the wisdom of avoiding duplicative litigation on the same subject matter between parties that are essentially the same, and for over one hundred years has followed the doctrine of prior suit pending that counsels "where two courts have concurrent jurisdiction over a matter, the court first taking jurisdiction acquires exclusive jurisdiction over the matter, and the subsequent action must be dismissed." *Fid. & Guar. Life Ins. Co. v. Corley*, No. W2002-02633-COA-R9-CV, 2003 WL 23099685, at *3 (Tenn. Ct.

App. Dec. 31, 2003). Here, the Court should follow the logic of the prior suit pending doctrine and dismiss Plaintiff's Complaint.

It is true that the prior suit pending doctrine typically does not apply when the first lawsuit was filed in federal court. *See West v. Vought Aircraft Indus., Inc.*, 256 S.W.3d 618, 623 n.5 (Tenn. 2008). However, the Court should still dismiss Plaintiff's Complaint because doing so would uphold the well-recognized principle underlying the doctrine that Tennessee courts should seek to avoid duplicative litigation and potentially inconsistent outcomes and conserve the court's and the parties' time and resources. *See Corley*, 2003 WL 23099685, at *3. Antitrust claims—based on the same theory Plaintiff presents here—are still pending in *Rockford* and, indeed, that case is currently advancing through discovery.

## II.  Alternatively, The Court Should Stay This Case Pending The Resolution Of *Rockford*

For the reasons explained above, the Court should dismiss Plaintiff's Complaint because Plaintiff's case remains pending in *Rockford*. Should the Court elect not to do so, it should nonetheless stay this case pending the resolution in *Rockford*. Given that the adjudication of *Rockford* would be dispositive to the parties in this case, a stay would be appropriate and in the interests of judicial economy.

Tennessee courts have the inherent authority to stay cases. *See Strong v. Baker*, No. M2007-00339-COA-R3-CV, 2008 WL 859086, at *4 (Tenn. Ct. App. Mar. 31, 2008) ("The decision to grant or deny a motion to stay proceedings is entrusted to the sound discretion of the trial judge."); *see also Sanjines v. Ortwein & Assocs., P.C.*, 984 S.W.2d 907, 909 (Tenn. 1998) ("[Q]uestions of stay or continuance are matters entrusted to the sound discretion of the trial judge."); *Blake v. Plus Mark, Inc.*, 952 S.W.2d 413, 415 (Tenn. 1997) ("The granting or denial of a motion for a continuance lies in the sound discretion of the court."). When a foreign proceeding is pending that would determine the rights and liabilities of the parties in a local proceeding, it is common for the

court overseeing the local proceeding to stay the case pending final judgment in the foreign proceeding. *See Stay of civil proceedings pending determination of action in another state or country*, 19 A.L.R 2d 301, at § 2. Indeed, Plaintiff's counsel's serial litigation of the same allegations in multiple venues recently led the Court of Common Pleas of Montgomery County, Pennsylvania to stay an action filed by the same Plaintiff's counsel on behalf of an individual plaintiff asserting similar factual allegations to those in *Rockford* and here. Order, *Int'l Union of Operating Eng'rs Local 542 v. Mallinckrodt ARD, Inc.*, No. 2018-14059 (Jan. 22, 2020), ECF No. 204.

Separate from its Rule 54(b) briefing, Plaintiff filed a notice of supplemental authority on January 6, 2020 regarding another class action filed by Plaintiff's counsel in which Judge Berle M. Schiller of the U.S. District Court for the Eastern District of Pennsylvania—without issuing an opinion—denied defendants' motions to dismiss. Pl.'s Notice of Suppl. Authority at Ex. D (citing *Steamfitters Local Union No. 420 v. Mallinckrodt ARD, LLC & United Biosource LLC*, No. 19-cv-03047 (Dec. 19, 2019)). Plaintiff failed to draw the Court's attention to the U.S. District Court for the District of Maryland's opinion in *Washington County* dismissing a lawsuit brought by Plaintiff's counsel relating to Acthar® under the Maryland Consumer Protection Act and related common-law doctrines. *Washington Cty. Bd. of Educ. v. Mallinckrodt ARD, Inc.*, No. CV JKB-19-1854, 2020 WL 43016 (D. Md. Jan. 3, 2020). The *Washington County* court in its opinion tracked the *Rockford* court's reasons for dismissing Plaintiff's statutory and common-law fraud claims, and adopted some of the reasons for dismissal that Defendants assert here. The proliferation of duplicative litigation in state and federal courts around the country based on the same factual allegations only serves to highlight the inefficiencies of allowing this case to proceed.

## CONCLUSION

For the reasons stated above, the Court should dismiss the Complaint.  In the alternative, the court should stay proceedings pending the resolution of the earlier filed federal action.

Dated:  January 31, 2020

Respectfully Submitted,

Daniel W. Van Horn (#18940)
Diana M. Comes (#30112)
Kathryn K. Van Namen (#31322)
**BUTLER SNOW LLP**
6075 Poplar Avenue, 5th Floor
Memphis, TN 38119
T: (901) 680-7200
F: (901) 680-7201
Danny.VanHorn@butlersnow.com
Diana.Cornes@butlersnow.com
Kate.VanNamen@butlersnow.com

Matthew M. Wolf
Lauren S. Shores
Sonia K. Pfaffenroth
Adam Pergament
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Avenue, NW
Washington, DC 20001
(202) 942-5000
matthew.wolf@arnoldporter.com
laura.shores@arnoldporter.com
sonia.pfaffenroth@aronldporter.com
adam.pergament@arnoldporter.com

*Attorneys for Defendants Mallinckrodt ARD Inc. and Mallinckrodt plc*

*Eric Lyttle by Permission DVH*
*2-3-20*

Nathan A. Bicks, Esq. (BPR #10903)
Lani D. Lester (BPR #35226)
William D. Irvine Jr. (BPR #35193)
**BURCH, PORTER & JOHNSON, PLLC**
130 North Court Avenue
Memphis, TN 38103
Tel: (901) 524-5000
Fax: (901) 524-5024
nbicks@bpjlaw.com
llester@bpjlaw.com
wirvine@bpjlaw.com

Eric C. Lyttle, Esq. (*pro hac vice*)
Michael J. Lyle, Esq. (*pro hac vice*)
Ethan C. Glass, Esq. (*pro hac vice*)
Meghan A. McCaffrey, Esq. (*pro hac vice*)
Michael D. Bonanno, Esq. (*pro hac vice*)
Brian H. Rowe, Esq. (*pro hac vice pending*)
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
1300 I Street NW, Suite 900
Washington, D.C. 20005-3314
Tel: (202) 538-8000
Fax: (202) 538-8100
mikelyle@quinnemanuel.com
ericlyttle@quinnemanuel.com
ethanglass@quinnemanuel.com
meghanmccaffrey@quinnemanuel.com
mikebonanno@quinnemanuel.com
brianrowe@quinnemanuel.com

*Attorneys for Defendants Express Scripts Holding Co., Express Scripts, Inc., CuraScript, Inc., Priority Healthcare Corp., Priority Healthcare Distribution, Inc., Accredo Health Group, Inc. and United BioSource Corp.*

## CERTIFICATE OF SERVICE

I, Daniel W. Van Horn, attorney for Defendant Mallinckrodt, certify that a true and correct copy of the foregoing motion has been sent via e-mail and via U.S. Mail, postage prepaid, this 31st day of January 2020, to the following:

| | |
|---|---|
| Patrick M. Ardis, Esq.<br>Daniel V. Parish, Esq.<br>**WOLF ARDIS, P.C.**<br>5810 Summer Oaks Drive<br>Memphis, Tennessee 38134<br>pardis@wolfardis.com<br>dparish@wolfardis.com | Daniel B. Brown, Esq.<br>**TAYLOR ENGLISH DUMA, LLC**<br>1600 Parkwood Circle, SE<br>Suite 200<br>Atlanta, GA 30339<br>dbrown@taylorenglish.com |
| Donald E. Haviland, Jr., Esq.<br>William H. Platt II, Esq.<br>**HAVILAND HUGHES**<br>201 S. Maple Way, Suite 110<br>Ambler, PA 19002<br>haviland@havilandhuges.com<br>platt@havilandhuges.com<br><br>*Counsel for Plaintiff Acument Global Technologies, Inc.* | Kirk A. Caraway, Esq.<br>**ALLEN, SUMMERS, SIMPSON, LILLIE & GRESHAM, PLLC**<br>80 Monroe Avenue, Suite 650<br>Memphis, TN 38103<br>kcaraway@allensummers.com<br><br>*Counsel for Dr. Tumlin* |
| Nathan A. Bicks, Esq.<br>William D. Irvine, Jr., Esq.<br>Lani D. Lester, Esq.<br>**BURCH, PORTER & JOHNSON, PLLC**<br>130 North Court Avenue<br>Memphis, TN 38103<br>nbicks@bpjlaw.com<br>wirvine@bpjlaw.com<br>llester@bpjlaw.com<br><br>*Counsel for Express Scripts Defendants* | Eric C. Lyttle, Esq.<br>Michael D. Bonanno, Esq.<br>Ethan C. Glass, Esq.<br>Meghan A. McCaffrey, Esq.<br>Michael Lyle, Esq.<br>Quinn Emanuel Urquhart & Sullivan, LLP<br>1300 I Street, NW<br>Washington, D.C. 2005<br>*ericlyttle@quinnemanuel.com*<br><br>*Counsel for Express Scripts Defendants* |

Daniel W. Van Horn

51457994.v1

11

## IN THE CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE
## FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

**ACUMENT GLOBAL TECHNOLOGIES, INC.**

     **Plaintiff**

**Docket No. CT-2275-19**

**vs.**

**Div. VII**

**MALLINCKRODT ARD, INC.,**
**Formally known as QUESTCOR**
**PHARMACEUTICALS, INC.;**
**MALLINCKRODT PLC; EXPRESS**
**SCRIPTS HOLDING COMPANY; EXPRESS**
**SCRIPTS, INC.; CURASCRIPT, INC., doing**
**Business as CURASCRIPT, SD; PRIORITY**
**HEALTHCARE CORP. AND PRIORITY**
**HEALTHCARE DISTRIBUTION., INC., doing**
**Business as CURASCRIPT SD AND CURASCRIPT**
**SPECIALTY DISTRIBUTION SD, respectively;**
**ACCREDO HEALTH GROUP. INC.; UNITED**
**BIOSOURCE CORPORATION; and**
**JAMES A. TUMLIN, M.D.**

     **Defendants.**

---

### ORDER MOTIONS TO DISMISS

---

This matter came to be heard on October 30, 2019[1] before the Honorable Mary L. Wagner on The Express Scripts Defendants' Motion to Dismiss; Defendant Mallinckrodt Inc and Mallinckrodt PLC's Motion to Dismiss Complaint Pursuant to Tennessee Rules of Civil

---

[1] At oral argument, Acument requested additional time to file a Sur-reply to Defendants' Reply to address newly raised arguments  This was granted and the Sur-reply filed November 13, 2019  Additionally, the Court conducted a conference call on December 12, 2019 to address the Court's concern, discussed below, regarding subject matter jurisdiction  The parties requested to file additional briefing on this issue  Acument's filed its briefing on January 10, 2020 and the Defendants' filed theirs on February 3, 2020

Procedure 12 02(1) and (6); and Defendant James A. Tumlin, M.D.'s Motion to Dismiss Complaint. Based upon the motions, response thereto, argument of counsel, and the Complaint in this matter, the Court finds as follows

### FACTUAL BACKGROUND

The following facts are drawn from the allegations in the Complaint  Because this matter is presently before the Court on a Motion to Dismiss, the Court accepts all non-conclusory allegations in the Complaint as true for purposes of this Motion only  Plaintiff, Acument Global Technologies, Inc  ("Acument") brought this matter against essentially three Defendants Mallinckrodt, Express Scripts and Dr  Tumlin.[2]

    *A  Acthar*

Acthar is an adrenocorticotropic hormone ("ACTH"), which causes the body to produce cortisone and other steroid hormones   Acthar was developed by Armour Pharmaceutical Company and approved by the Food and Drug Administration ("FDA") in 1952  The FDA originally approved it for over fifty conditions, however, currently it is indicated for fewer than nineteen.  Its market tended to be limited to treating infantile spasms

In 2007, Aventis Pharmaceuticals owned Acthar   Questcor acquired Acthar for $100,000 in 2007.  In 2010, the FDA approved the infantile spasms indication.  At that time, Acthar was granted orphan drug status   In 2014, Mallinckrodt acquired Questcor for $5 9 Billion

---

[2] Acument sued many different entities which the Court has included under these general terms  For Mallinckrodt, the Court includes Mallinckrodt ARD, Inc  formerly known as Questcor Pharmaceuticals, Inc, and Mallinckrodt PLC  Express Scripts includes Express Scripts Holding Company, Express Scripts, Inc , CuraScript, Inc  doing business as CuraScript, SD, Priority Healthcare Corp  and Priority Healthcare Distribution, Inc  doing business as CuraScript SD and CuraScript Specialty Distribution SD respectively, Accredo Health Group, Inc, and United Bio Source Corporation ("UBC")  Each of the entities referred to as Express Scripts are wholly owned subsidiaries of Express Scripts  The Complaint contained various allegations about the roles of each of the Express Scripts entities  At this time, the Court accepts as true that the various Express Scripts entities worked together to accomplish what is alleged  This does not preclude any future arguments with regard to a contention that a specific entity may not be liable for reasons other than those addressed in these motions

At the time that Mallinckrodt[3] acquired Acthar, the end payor price for a vial was approximately $40.00. In September 2001, Mallinckrodt raised the list price for Acthar – the wholesale acquisition cost ("WAC") to $748 16 and the end payor price – average wholesale price ("AWP") to $935.20. By 2007 the WAC increased to $1,650 32 and the AWP to $2,062.79 When the new strategy was adopted in 2007, the WAC was raised to $23,269 00 and the AWP to $29,086 25. As alleged by Acument, Express Scripts participated directly in the decision-making by Mallinckrodt regarding pricing In 2011, Mallinckrodt raised the price three times. In 2012, the AWP was $34,150 00. Express Scripts reviewed and approved each price increase In subsequent years, the AWP continued to be increased

### B  Exclusive Dealing Arrangement

Acthar is a specialty pharmaceutical distributed directly to patients Until 2007, Acthar was distributed to any doctor, hospital, wholesaler or specialty pharmacy who requested the drug In 2007, Mallinckrodt restricted its distribution to only Express Scripts. With this decision, all distribution would be done exclusively by CuraScript, an Express Scripts entity, and Mallinckrodt required all prescriptions to be processed by the Acthar Support & Access Program ("ASAP") From that point, Express Scripts entities handled all aspects of Acthar distribution

According to Acument, Mallinckrodt used this new strategy to "re-launch" Acthar with a new limited distribution system and a substantially higher price, to make it appear as if it were a new product being launched as the only product to treat Infantile Spasms Acument alleges that (1) Mallinckrodt conspired and agreed with Express Scripts Entities to eliminate competition, enhance Mallinckrodt's monopoly power, and to raise and fix the prices for Acthar; and (2) engaged medical providers, "key opinion leaders", in the treatment of various diseases for which

---

[3] The Complaint contends that Mallinckrodt is responsible for the actions of Questcor prior to its purchase Therefore, the Complaint refers to Mallinckrodt for actions by Questcor Accordingly, the Court does the same for purposes of these motions

Acthar was narrowly indicated to ensure that Acthar was prescribed as the primary course of treatment

Acument alleges that Mallinckrodt paid key opinion leaders to prescribe Acthar to their patients for unapproved, off-label uses   The alleged kickback scheme involved the promotion of Acthar to treat diseases for which Acthar was not the "gold standard."   Thus, enhancing and growing Mallinckrodt's and Express Scripts' profits as a result.

Under the ASAP program, once a patient (or their physician) contacted Mallinckrodt for a prescription, Mallinckrodt directed them to UBC, a pharmaceutical support services company, or patients or their providers could also contact UBC themselves   UBC serves as the hub for Mallinckrodt and the Express Scripts entities.   UBC also serves as the primary interface with other pharmacy benefits managers ("PBM"), like CVS/Caremark utilized by Acument in 2015-2016   UBC then confirms the prescription with a specialty pharmacy and confirms the patient's insurance coverage   UBC then arranges for Acthar to be delivered directly to the patient by CuraScript   Express Scripts bills the payor for Acthar.   Express Scripts is involved in every aspect of Acthar distribution from the manufacturer to the delivery at the patient's home

As alleged by Acument, Express Scripts functions on behalf of Mallinckrodt and together they set the price for Acthar.   Express Scripts is one of the largest PBM's in the United States.   As such, Express Scripts has the ability to negotiate prices from manufacturers   With Express Scripts as the exclusive distributor through the ASAP program, Mallinckrodt was able to raise prices, restrict distribution and stifle competition. The limitation of one distributor eliminated others from negotiating for a lower price and Express Scripts similarly failed to negotiate for a lower price.

As alleged by Acument, Defendants conspired and agreed to deliberately inflate the AWP price  While Express Scripts had the ability to demand a lower price, it had no interest in doing such as it profited off all aspects of the exclusive distribution arrangement with Mallinckrodt  In sum, by helping Mallinckrodt maintain and enhance its monopoly power, Express Scripts and Mallinckrodt realized greater profits at the expense of payors

### C   The Synacthen Acquisition

Acument also alleges that Mallinckrodt and Express Scripts acted in concert to maintain the monopoly and eliminate competition through Mallinckrodt's acquisition of Synacthen.  By 2013 Novartis AG developed Synacthen Depot, a synthetically derived ACTH, like Acthar.  It was not yet approved by the FDA.  Mallinckrodt attempted to purchase Synacthen in 2009, but failed  In 2013, Novartis agreed to sell Synacthen to a third party, Retrophin, Inc. for $16 million  Restrophin had plans to commercialize Synacthen  Mallinckrodt, however, interceded and acted to protect and enhance its monopoly by agreeing to purchase Synacthen for three times the agreed sales price, $135 million  Mallinckrodt had no plans to develop Synacthen or seek FDA approval  Thus, Mallinckrodt removed a competitive threat from the market, suppressing competition and thus, allowing Mallinckrodt to continue to raise prices of Acthar.  To accomplish this, Express Scripts had to agree and did agree with Mallinckrodt not to bring Synacthen to the market  To date, Mallinckrodt has not brought Synacthen to the market or sought FDA approval.  Mallinckrodt keeps Synacthen off the market to protect its monopoly.

In January 2014, Retrophin sued Mallinckrodt for antitrust violations based upon the Synacthen acquisition  In 2017, the Federal Trade Commission sued Mallinckrodt on similar allegations  Both lawsuits were settled  Acument relies on this fact to support its claims of antitrust violations for removal of the only viable competition to Acthar

D   *The Instant Action*

Acument provided healthcare benefits, including prescription drug benefits, for its employees and their dependents through Blue Cross Blue Shield of Michigan   In 2011, Express Scripts administered the prescription drug benefits   In 2015 and 2016, CVS/Caremark administered the prescription drug benefits   As alleged in the Complaint, Acument is a self-funded payor for prescriptions [4]

Mallinckrodt engaged certain nephrologists as key opinion leaders to overcome the lack of data to support the use of Acthar to treat nephrotic syndrome   One of those was Dr. Tumlin. In 2009, Mallinckrodt hired Dr Tumlin to conduct his own clinical studies on his patients by prescribing Acthar to treat their nephrotic syndrome   In 2011, Dr. Tumlin prescribed Acthar for the patient at issue, a dependent of an Acument employee   Mallinckrodt provided Acthar to the patient at no charge   It is believed that Mallinckrodt provided Acthar at no charge so that Dr. Tumlin could develop data and assist in the marking and sales of Acthar.  In 2015 and 2016, Dr Tumlin renewed the treatment and at this time, Acument paid the full price, as established by Mallinckrodt and Express Scripts   While the typical dosage was ten units, Dr Tumlin prescribed twice that

In 2015 and 2016, CVS Caremark billed Acument for Acthar at a discounted price based on the AWP.  After the patient paid the $200 per prescription co-pay, Acument paid a total of $892,017 75 for 13 prescriptions   The Acument patient at issue dealt with CVS Caremark Specialty for the fulfillment of Acthar.   UBC coordinated the shipment and Express Scripts' CuraScript shipped Acthar directly to the patient pursuant to the exclusive distribution agreement.   The medication flowed directly from Mallinckrodt through Express Scripts to the

---

[4] The role and relationship between Acument, Blue-Cross Blue-Shield, Express Scripts and CVS Caremark is unclear   For purposes of this motion, the Court takes the allegations as true and takes the strongest legitimate view in favor of Acument

patient. CVS Caremark collected payments for the price of Acthar on behalf of both Express
Scripts and Mallinckrodt   Payments sent to CVS Caremark were then routed to Express Scripts,
the exclusive distributor of Acthar and Mallinckrodt's designated, exclusive agent, who then
forwarded them to Mallinckrodt.

The Acthar at issue was marketed and sold in Tennessee, was prescribed and
delivered in Tennessee, was administered in Tennessee, and paid for in Tennessee

The Complaint alleges claims by Acument against the Defendants for violations of
the Tennessee Trade Practices Act ("TTPA")(Counts I and II); violations of the Tennessee
Consumer Protection Act ("TCPA")(Count III); Unjust Enrichment (Count IV), Fraud (Count
V), and Conspiracy to Defraud/Concerted Action (Count VI).

Acument previously filed a similar case in the Northern District of Illinois   *See City
of Rockford v  Mallinckrodt*, 360 F. Supp. 3d 730 (N.D. Ill. 2019).  It was brought as a putative
class action by the City of Rockford and Acument   Acument brought claims for unjust
enrichment, fraud, conspiracy to defraud, federal antitrust violations, state antitrust and consumer
protection violations, and federal RICO claims   Acument's claims for state antitrust violations,
consumer protection violations and unjust enrichment were all dismissed without prejudice for
lack of standing, with leave to amend.   After the dismissal, rather than amend, Acument
nonsuited its claims.  The Court does not have before it a copy of the Complaint filed in that
action

## LEGAL STANDARD

Defendants each bring a Motion to Dismiss pursuant to Tenn R. Civ. Pro Rule 12.02(6) for failure to state a claim. A motion to dismiss for failure to state a claim challenges the legal sufficiency of the Complaint. *Webb v Nashville Area Habitat for Humanity, Inc* 346 S W.3d 422, 426 (Tenn 2011) It does not challenge the strength of plaintiff's proof or evidence *Id* The relevant and material allegations of the complaint are taken as true and the plaintiff is afforded the benefit of all reasonable inferences that may be drawn *Id* Legal conclusions are not afforded the same weight *Id* at 427. To survive a motion to dismiss, the Complaint must raise the pleaders right to relief beyond a speculative level *Id*

## CONCLUSIONS OF LAW

### Rule 54

*Sua sponte* the Court raised the issue of prior suit pending and whether the dismissal of Acument from the federal case was final pursuant to the Federal Rules of Civil Procedure Rule 54(b). Like Tenn R Civ Pro. Rule 54, the federal counterpart requires that when more than one claim for relief is brought, any order that adjudicates fewer than all claims or parties "does not end the action as to any of the claims or parties and may be revised at any time before entry of a judgment adjudicating all the claims and all the parties' rights and liabilities " To avoid such a predicament, the court may expressly direct entry of a final judgment when ruling on only one party or claim. Fed R Civ Pro 54(b). Such a finding may not be implied, but must be explicitly stated From what this Court can tell, the *City of Rockford* Court did not expressly designate either the Order on the Motion to Dismiss or the Order of Nonsuit as final pursuant to Rule 54(b). Consequently, it is an interim order and subject to modification at any time.

In raising this issue, *sua sponte*, the Court had concern with its subject matter jurisdiction due to the prior suit pending doctrine [5] Prior suit pending is a rule of jurisdictional priority *Heatley v Gaither*, No. M2018-01792-COA-R3-CV, 2019 WL 2714378 at \*2 (Tenn Ct. App June 28, 2019) The doctrine has four elements (1) the lawsuits must involve the identical subject matter; (2) the lawsuits are between the same parties, (3) the first court has subject matter jurisdiction, and (4) the first court has personal jurisdiction over the parties *Id*. If the doctrine applies, the second court lacks subject matter jurisdiction *Id*. The Tennessee Supreme Court, however, has held this doctrine inapplicable when the prior lawsuit was brought in a federal court. *West v Vought Aircraft Industries, Inc.*, 256 S W 3d 618, n 5 (Tenn. 2008); *see also City of Newport v Masengill Auction Co.*, 19 S.W 3d 789 (Tenn. Ct App 1999). Because the prior pending matter is in federal court, the doctrine does not apply here and this matter may proceed

## Collateral Estoppel

In their Reply to Acument's response to their Motion, Mallinckrodt raises the issue of collateral estoppel contending that Acument's claims for state antitrust violations and unjust enrichment should be dismissed on that basis. Interestingly, Mallinckrodt does not argue that the claims for violations of the TCPA should be dismissed due to collateral estoppel.

Collateral estoppel, also known as issue preclusion, is a judicial doctrine used to prevent the re-litigation of issues already decided It is not the same as res judicata or claim preclusion Where the doctrine of res judicata bars a second suit between the same parties and their privies on the same cause of action with respect to all issues which were or could have been litigated in the former suit, collateral estoppel operates to bar litigation between the same parties and their privies on a different cause of action only as to issues which were actually litigated and

---

[5] During the phone conference and in briefing, Acument conflates this issue of Rule 54 final judgment with the issue of collateral estoppel The Court attempted to explain the difference during the phone conference addressing the issue The two matters are separate, have separate legal standards and the Court will address them separately

determined in the former suit. *State v Thompson*, 285 S.W.3d 840, 848 (Tenn. 2009) (citing *Massengill v Scott*, 738 S W 2d 629, 631 (Tenn 1987))

"The doctrine of collateral estoppel [also known as estoppel by judgment and issue preclusion] is an extension of the principle of *res judicata*, and is generally held to be applicable only when it affirmatively appears that the issue involved in the case under consideration has already been litigated in a prior suit between the same parties, even though based upon a different cause of action, if the determination of such issue in the former action was necessary to the judgment." *Home Ins Co v Leinart*, 698 S W.2d 335, 336 (Tenn 1985) (citing *Shelley v Gipson*, 400 S W.2d 709, 714 (Tenn. 1966)). A final judgment is essential under either collateral estoppel or res judicata *Thompson*, 285 S W 3d at 848

"Collateral estoppel is an affirmative defense which is best raised in an answer to a complaint Our Supreme Court has held that an affirmative defense may be raised in a Rule 12.02(6) motion when the 'defense clearly and unequivocally appears on the face of the complaint.'" *Cook v Bd of Educ of Memphis City Sch*, No 37, 1990 Tenn App LEXIS 676, at *2-3 (Tenn Ct App. Sep 27, 1990) (citing *Anthony v Tidwell*, 560 S W.2d 908, 909 (Tenn 1977)) This standard applies when the affirmative defense involves only an issue of law *Givens v Mullikin*, 75 S W 3d 383, 404 (Tenn 2002)

Whether collateral estoppel applies is an issue of law *Torres v Bridgestone/Firestone N Am Tire, LLC*, 498 S.W.3d 565, 573 (Tenn. Ct App 2016) The burden is on the party asserting collateral estoppel as a bar to litigation to demonstrate that a specific point at issue has been previously and finally decided *Thompson*, 285 S W.3d at 848 Thus, to successfully assert the defense of collateral estoppel in a Rule 12 02(6) motion, the defendant must show that the plaintiff's own allegations "clearly and unequivocally" establish the following elements. (1) that

the issue to be precluded is identical to an issue decided in an earlier proceeding, (2) that the issue to be precluded was actually raised, litigated, and decided on the merits in the earlier proceeding; (3) that the judgment in the earlier proceeding has become final; (4) that the party against whom collateral estoppel is asserted was a party or is in privity with a party to the earlier proceeding, and (5) that the party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier proceeding to contest the issue now sought to be precluded   *Torres*, 498 S.W.3d at 575

When a party invokes the collateral estoppel doctrine, the court must first ascertain what issue or issues were actually decided in the first proceeding. *Am Indus Servs v Howard*, No M2003-01656-COA-R3-CV, 2006 WL 1082833, at *5 (Tenn. Ct. App. Apr 25, 2006)   For the purpose of this analysis, an "issue" is any disputed point or question raised by the parties' pleadings concerning which the parties desire a decision. *Id*   The court must then determine what issue or issues are involved in the second proceeding and must compare the issues in the two proceedings to determine whether they are identical. *Id*   For the collateral estoppel doctrine to apply, the issue sought to be precluded in the second proceeding must be identical, not merely similar, to the issue decided in the first proceeding. *Id*

Here, the Court has been provided no record of the original Complaint or the Second Amended Complaint from *City of Rockford v Mallinckrodt ARD, Inc*, 360 F  Supp. 3d 730 (N D Ill 2019), in which Defendant contends that these current claims were previously decided It is evident from its face that the *Rockford* Court addressed claims related to unjust enrichment, fraud, conspiracy to defraud, and state antitrust and consumer protection claims The *Rockford* court addressed alleged deficiencies in the pleading by Acument.  Without the Second Amended Complaint from *Rockford* as ruled upon by that court, this Court is unable to "clearly and

unequivocally" determine whether the issues in this current proceeding are identical or merely similar to the earlier proceeding  The arguments are based upon a contention of failure to plead  The Court has no idea what was or was not plead in the *Rockford* matter outside of the summary from the Order

Second, even if the issues in this current proceeding are identical to *Rockford*, the issues in *Rockford* were not decided on their merits  The issue pertaining to Tennessee antitrust laws in *Rockford* was dismissed by the court *without prejudice* for failure to establish standing within the complaint, and Acument was expressly granted leave to replead and correct the deficiencies. *Rockford*, 360 F  Supp  3d at 760-61  Likewise, the issue of unjust enrichment was dismissed by the court *without prejudice*, and Acument was expressly granted leave to replead, based upon the technicality that Acument did not address the issue of exhaustion within the complaint  *Id*  at 772. All of the claims raised by Acument that were dismissed, were dismissed without prejudice with leave to amend.  Finally, as raised above, the Order dismissing the claims is not a final order.  Therefore, the issues as raised in *Rockford* were not fully and fairly litigated and decided upon their merits with finality.  For the foregoing reasons, this Court finds that the doctrine of collateral estoppel is not applicable in the current proceedings

### Statute of Limitations

For the first time, Express Scripts raised an argument as to Statute of Limitations in its Reply to Acument's Response to its Motion to Dismiss.  Acument argues that the defense is waived because it was not raised in the initial Motion to Dismiss, but only the Reply  As explained by the Court of Appeals, the defense of statute of limitations is not waived by the failure of the defendant to raise the defense in a pre-answer motion  *Young v  Kennedy*, 429 S W 3d 536, 549 (Tenn  Ct  App  2013)  Thus, it would be illogical to find that this defense was

waived because it was brought in a Reply brief and not an initial memorandum in support of the Motion to Dismiss.

Further, because the Court cannot determine the accrual date from the face of the Complaint, this issue is not appropriate for a Motion to Dismiss. This ruling, however, does not prohibit any of the parties from raising this issue, if appropriate, in a future dispositive motion.

## Count I and II – Tennessee Trade Practices Act

Acument's claims under Count I and Count II are complaints for violation of the Tennessee Trade Practice Act ("TTPA"), Tenn. Code Ann. §§ 47–25–101 to –112 (2001). The TTPA is a general antitrust statute establishing that various anticompetitive practices are "against public policy, unlawful, and void" in the State of Tennessee. Tenn. Code Ann. §§ 47–25–101, – 102. Tennessee Code Annotated section 47–25–106 creates a private cause of action for persons harmed by violations of the TTPA. *Leggett v. Duke Energy Corp.*, 308 S.W.3d 843, 852 (Tenn. 2010).

### Count I and II – as to Dr. Tumlin

In both their response and at oral argument, Acument concedes that it is not seeking relief against Dr. Tumlin under Count I or II. Accordingly, Dr. Tumlin's Motion to Dismiss as to Count I and II will be granted. Additionally, to the extent that claims against Dr. Tumlin are based upon claims under Count I or II, those are also dismissed.

### Count I and II – as to Mallinckrodt and the Express Scripts Entities

Defendants argue that the antitrust claims fail for two reasons: (1) lack of standing and (2) failure to assert a claim. The Court will address each of these separately.

13

*(1) Standing*

Defendants argue that Acument does not have standing to assert the antitrust claims. Within this argument, Defendants argue that Acument has not alleged that Defendants' actions proximately caused Acument's injuries and that Acument will be unable to prove proximate cause   Despite the insertion of "proximate cause" into these arguments, it is still a standing argument

The doctrine of standing determines whether a party has the right to bring a cause of action. *ACLU of Tenn v Darnell*, 195 S.W.3d 612, 619 (Tenn  2006)   It does not consider the likelihood of success on the merits   *Id* at 620   To establish standing, a plaintiff must establish three elements   *Id*   First, a plaintiff must establish a "distinct and palpable injury "   *Id*   Injuries that are conjectural, hypothetical or predicated on a harm to the general citizenry are not sufficient   *Id.*  Second, a party must demonstrate a causal connect between the alleged injury and the challenged conduct.  *Id.*  This step only requires a showing plaintiff's injury is "fairly traceable" to the conduct of the defendant   *Id*   Third, the injury must be capable of being redressed by a decision of the Court   *Id*

The federal courts, in reviewing federal antitrust claims under the Sherman Act, have adopted additional limitations on standing known as "antitrust standing." *City of Rockford et al v Mallinckrodt et al*, 360 F. Supp  3d 730, 748 (N  D. Ill 2019).  First, only direct purchasers may bring federal antitrust actions   *Id*   (citing *Illinois Brick Co  v  Illinois*, 431 U.S. 720 (1977)) Second, federal law requires courts to "engage in a 'proximate cause' analysis to determine whether a plaintiff is a 'proper party' to bring suit "  *Id.* (citing *Assoc  Gen  Contractors of California, Inc  v  California State Council of Carpenters* ("*AGC*") 459 U.S. 519 (1983))   To

engage in this analysis, a court considers the "*AGC* factors". (1) the causal connection between the violation and the harm; (2) the presence of improper motive, (3) the type of injury and whether it was one Congress sought to redress; (4) the directness of the injury; (5) the speculative nature of the damages, and (6) the risk of duplicative recovery of complex damage apportionment  *Id* at 751.

Indeed, the *City of Rockford* Court dismissed Acument's federal antitrust claims against the same Defendants, finding that the complaint did not allege that Acument was a *direct* purchaser  *Id*. at 753  The *City of Rockford* Court also dismissed, without prejudice, Acument's state law claims for lack of standing.  It is not completely clear the standard that the Court imposed in so dismissing these claims, but it appears the Court applied the *AGC* factors in addressing the state law claims  *Id*. at 760

Tennessee Courts have expressly rejected the federal "antitrust standing" requirement from *Illinois Brick* that a plaintiff be a direct purchaser as applied to state law claims under the Tennessee Trade Practices Act. *Freeman Industries, LLC v  Eastman Chemical Co.*, 172 S.W.3d 512, 517-20 (Tenn. 2005); *see also Sherwood v  Microsoft Corporation*, No. M200-01850-COA-R9-CV, 2003 WL 21780975, at *30 (Tenn  Ct  App  July 31, 2003)  Defendants' contentions that Acument has not alleged that the alleged anticompetitive conduct proximately caused harm and thus, that Acument does not have standing, essentially argues that there can be no harm caused to Acument because Acument did not make any payments directly to the Defendants.[6] To adopt this argument would contradict well established Tennessee law that indirect purchasers may bring claims under the TTPA, and would require a direct relationship.  Such is not the law in Tennessee.

---

[6] To extent the Defendants are arguing a heightened pleading requirement for TTPA claims, the Court can find no support in the law for such

As shown above, Tennessee Courts have expressly found differences between the Sherman Act and the TTPA   Tennessee Courts have also found differences between federal antitrust standing requirements and state requirements   Defendants argue that in addressing the standing issue, this Court should adopt the *AGC* factors and the "proximate cause" analysis.  To date, no Tennessee Court has done this

One Court did address one of the *AGC* factors indirectly.  The Court of Appeals in *Tennessee Medical Ass'n v  Blue Cross BlueShield of Tennessee, Inc* , 229 S.W.3d 304 (Tenn Ct  App. 2007) analyzed the factor of directness or indirectness of an injury and cited to the discussion on this issue in *AGC*   The *Tennessee Medical Association* Court addressed this issue to consider the argument that the associations' claims were entirely derivative of the claims of its members and therefore, it did not have standing   In other words, in that case it was argued that Tennessee Medical Association did not allege any injury sustained on its own but only injury sustained through its members.  Ultimately, the Court of Appeals did not decide this issue.  *Tennessee Medical Association* cited to the case of *Steamfitters Local Union No. 614 Health and Welfare Fund v  Philip Morris, Inc*, No  W1999-01061-COA-R3-CV, 2000 WL 1390171 (Tenn. Ct. App. Sept. 26, 2000), which also discussed the issue of derivative injury

In *Steamfitters*, the Fund sought to recover for the funds' costs of treating their members' smoke-related illnesses.  *Steamfitters*, 2000 WL 1390171 at *1  The trial court dismissed the Funds' antitrust claims but denied dismissal as to the claims for fraud and deceit, misrepresentation, conspiracy and violation of the TCPA.  *Id*.  The parties did not dispute the dismissal of the antitrust claims   *Id*. at *7.  The Court of Appeals reversed the denial of the motion to dismiss as to the other claims.  *Id*.  The Funds' alleged injuries were only derivative of harm to a third party.  As explained by the Court of Appeals, "since the Funds' injuries were

'purely contingent on harm to third parties, these injuries [were] indirect '" *Id.* at *6  The Court found the amount of damage "hopelessly speculative " *Id.*  The Fund would have to prove "the effect of education or smoking cessation programs would have had on the physical injuries suffered by plan participants since the damages stem from individual smokers' decisions whether to continue to smoke and, if so, how frequently to smoke." *Id.*  Ultimately, the Court of Appeals held that the Fund's injuries were unquestionably indirect and speculative and therefore, too remote as a matter of law to support recovery under the theories of fraud and deceit, negligent misrepresentation, conspiracy and TCPA

This case is distinguishable from *Steamfitters*  First, the issue presently being addressed by this Court is Acument's own antitrust claims.  Such was not an issue in *Steamfitters*  As held by *Freeman*, indirect claims for antitrust violations under the TTPA are allowed  *Freeman Industries,* 172 S.W.3d at 517.  Second, Acument's injuries are not wholly derivative of a third party  As alleged, Acument made direct payments for Acthar, the medication at the center of the antitrust allegations, in the amount of approximately $892,000.00  Because the alleged injuries are not derivative of injuries to a third party, the injuries are not so remote and speculative as in *Steamfitters*

This Court can find no Tennessee law indicating that Tennessee would adopt the *AGC* factors as a requirement for "antitrust standing" as to state law antitrust claims [7]  Other jurisdictions have opined that Tennessee would not adopt the *AGC* factors  *See e g In re Lithium Ion Batteries Antitrust Litigation*, No  13-MD-2420 YGR, 2014 WL 4955377 (N D  CA Oct  2, 2014)(finding that Tennessee law only speaks to remoteness or proximate cause and *AGC* is more expansive); *Los Gatos Mercantile, Inc  et al v  E I  DuPont De Nemours and Company,,*

---

[7] Defendants have cited to *Gold v  Methodist Healthcare Memphis Hospitals*, No  06-2329, 2008 WL 6875019 (W D  Tenn  Jan  15  2008)  Gold, however, involved federal antitrust claims, not state  While state law claims were raised, the federal district court declined to exercise jurisdiction over those state law claims

No. 13-CV-01180-BLF, 2014 WL 4774611, at *6 n.8 (N.D. Cal. Sept 22, 2014). The Court finds that it can and should follow traditional standing requirements from Tennessee law without adopting the *AGC* factors and without contradicting prior Tennessee law.

At this stage, to establish standing, a plaintiff must demonstrate a causal connect between the alleged injury and the challenged conduct. *ACLU of Tenn v Darnell*, 195 S.W.3d 612, 619 (Tenn. 2006) This requirement, however, only requires a showing that injury to the plaintiff is "fairly traceable" to the conduct of the defendant. *Id* To adopt the *AGC* factors would raise the pleading requirement beyond "fairly traceable." Indeed, several of the *AGC* factors contradict Tennessee law. For example, factor number four — directness of injury. Indirect injuries are recoverable under the TTPA *Freeman Industries, LLC v Eastman Chemical Co*, 172 S.W.3d 512, 517-20 (Tenn. 2005). The *AGC* factors tend to lend themselves more to the plausibility pleading requirements of the federal courts, which have been expressly rejected by Tennessee Courts. *Webb v Nashville Area Habitat for Humanity, Inc*, 346 S.W 3d 422, 437 (Tenn. 2011).

Acument will still have to prove proximate cause. Under Tennessee law, "a three-pronged test for proximate cause is applied (1) the tortfeasor's conduct must have been a 'substantial factor' in bringing about the harm being complained of, and (2) there is no rule or policy that should relieve the wrongdoer from liability because of the manner in which the negligence has resulted in the harm; and (3) the harm giving rise to the action could have reasonably been foreseen or anticipated by a person of ordinary intelligence and prudence." *Haynes v Hamilton Cty*, 883 S.W.2d 606, 611–12 (Tenn 1994) (internal quotations omitted) Typically, however, this is a jury question. Although, it may, at the appropriate time, become ripe for summary judgment

18

As alleged in the Complaint, Acument purchased Acthar on behalf of its insured from a specialty pharmacy who purchased the medication from an Express Scripts entity, who purchased it directly from Mallinckrodt. In 2015 and 2016, as alleged, the Acthar medication was delivered to Acument's insured by Express Scripts – CuraScript. The prescription was managed by and through the ASAP program operated by Express Scripts – UBC, but owned and controlled by Mallinckrodt. As alleged, the Defendants worked together to eliminate competition, limit distribution and to raise the prices of Acthar.

As set forth in more detail above, Acument has alleged enough facts to indicate that it has standing under the TTPA. First, it has alleged a distinct and palpable injury in its payment of approximately $892,000.00 for a drug that just a few years before cost much less. Second, as alleged, the injury has a causal connection with the challenged conduct. "[T]he direct purchasers frequently pass on the overcharge to the indirect consumers who are the injured parties." *Freeman Industries,* 172 S.W.3d at 520.

> In other words, when a wholesaler violates the TTPA and the cost of that violation is passed through a retailer to a consumer, that consumer can seek to recover from the wholesaler, despite the fact that the two parties never directly conducted business with each other.

*Leggett v. Duke Energy Corp.,* 308 S.W.3d 843, 852 (Tenn. 2010). Third, as alleged it is capable of being redressed by the Court.

Discovery may illuminate that Express Scripts did not in fact play a role in the Synacthen Acquisition, that Defendants had no intention of effecting harm to the market through the exclusive dealing arrangements, and/or that Mallinckrodt conducted its allegedly unlawful conduct separate and apart from its business associations with Express Scripts. Discovery may illuminate that Acument did not in fact incur the expense of this drug itself. Or, discovery may illuminate any other set of facts that may eventually lead to another dispositive motion or a

finding of non-liability.  But at the Rule 12 stage, the Court draws all reasonable inferences in

favor of the plaintiff.  In doing so, and in applying the law as set forth above, the Court finds that

Acument has standing to bring these claims as set forth in its Complaint

### (2) Allegations – Merits

Having addressed the standing issues, the Court now turns to the merits of Acument's

claims in Count I and II for state antitrust violations   Defendants contend that Acument has

failed to assert a claim upon which relief could be granted as they contend that Acument's

allegations do not arise to allegations of anticompetitive conduct under the TTPA.  In many

ways, the Defendants argue that Acument has not shown a violation of the TTPA.  Respectfully,

a Rule 12 motion is not the appropriate vehicle to argue what has been shown or proven

Interestingly, Defendants note that the *City of Rockford* Court mistakenly ruled on this

issue   Yet, Defendants do not argue that this Court is bound by the *City of Rockford's* ruling like

they do regarding the ruling on standing.

The TTPA applies to "anticompetitive conduct that decreases competition in or increases

the price of goods paid by consumers in Tennessee   " *Sherwood v  Microsoft Corp* , No

M2000-01850-COA-R9-CV, 2003 WL 21780975, at *16 (Tenn. Ct  App. Aug. 2, 2004).  The

test is whether the conduct has a substantial effect on commerce in Tennessee. *Id*  at *21  The

question of whether conduct has a substantial effect is not a "mathematical nicety," but instead

turns on the "particular facts of the case " *Freeman*, 172 S W 3d at 523-24   The test does not

apply to the conduct itself, but to the effects of the conduct on Tennessee commerce. *Id*  at 524

To establish a claim for monopolization, a plaintiff must show: "(1) the possession of

monopoly power in the relevant market and (2) the willful acquisition or maintenance of that

power as distinguished from growth or development as a consequence of a superior product,

business acumen, or historic accident." *Duke v Browning-Ferris Indus of Tennessee, Inc.*, No W2005-00146-COA-R3CV, 2006 WL 1491547, at *5 (Tenn Ct App May 31, 2006)(citations omitted). Monopoly power is the power to control prices or exclude competition *Id* To succeed, one must show that the defendant has "engaged in improper conduct that has or is likely to have the effect of controlling prices or excluding competition, thus creating or maintaining market power." *Id.* (citing *PepsiCo, Inc v Coca-Cola, Co.*, 315 F 3d 101, 108 (2nd Cir 2002))

For purposes of Rule 12, the Court must accept all allegations in the Complaint as true Based upon the allegations in the Complaint, one could find that Defendants worked to unlawfully boost the price of Acthar, restrict its output and eliminate competition in violation of the TTPA As alleged, the goal of the exclusive distribution agreement was to lock patients into receiving Acthar through one channel and prevent a competitive product from entering the market Allegedly, Express Scripts employed its market power to effectuate these goals, allowing Mallinckrodt to maintain its monopoly, thereby increasing both of their profits and preventing competitors from challenging that monopoly. Mallinckrodt's acquisition of Synacthen was simply an intended goal of the distribution system, effectuated by both Mallinckrodt and Express Scripts. Express Scripts agreed, in exchange for the exclusive distributorship, not to push back on prices and agreed with Mallinckrodt's decisions to raise the price of Acthar. Additionally, the allegations must be read as a whole and not parceled out As alleged, this arrangement worked to control prices or exclude competition Acument alleges that the conduct increased prices beyond normal market forces and prohibited competition. This occurred as a willful and deliberate act of the Defendants, as alleged If true, this conduct could have a substantial effect on Tennessee commerce.

Again, ultimately, Defendants may be right that Acument cannot prove a violation of the TTPA. At that appropriate time, that argument may be ripe for another dispositive motion. At this time, however, Acument has alleged conduct violative of the TTPA

### Count III – TCPA

Acument brings claims for violation of the Tennessee Consumer Protection Act of 1977 ("TCPA"), Tenn. Code Ann. §§ 47–18–101 to –132 in Count III of its Complaint. The TCPA is a consumer protection statute that is to be liberally construed to promote the express policies of, clarifying existing consumer protection policies, promoting the development of fair consumer practices, and protecting consumers and legitimate business enterprises from those who engage in unfair or deceptive acts or practices in the State of Tennessee. Tenn. Code Ann. § 47–18–102 More specifically, the Act prohibits "unfair or deceptive acts or practices affecting the conduct of any trade or commerce." Tenn. Code Ann. § 47–18–104(a) An unfair or deceptive act has been defined by the courts as involving "a material representation or practice likely to mislead a reasonable consumer or the concealment or omission of a material fact." *Sherwood v. Microsoft Corp*, No. M2000-01850-COA-R9-CV, 2003 WL 21780975, at *32 (Tenn. Ct. App. July 31, 2003) (citing *Ganzevort v. Russell*, 949 S.W.2d 293, 299 (Tenn. 1997)). Tennessee Code Annotated section 47–18–109 creates a private right of action for persons harmed by violations of the TCPA It generally applies to transactions between buyers and sellers, and its purpose is to protect buyers from unfair and deceptive practices. *Id.*

A plaintiff-consumer suing under the TCPA must prove two things: (1) that the defendants engaged in unfair or deceptive acts or practices declared unlawful by the TCPA, and (2) that the defendants' conduct caused an ascertainable loss of money or property. T.C.A § 47-18-109(a)(1) Defendants contend that the TCPA should be dismissed for three reasons: (1) the

22

claim is based upon anticompetitive conduct, rather than unfair or deceptive acts or practices; (2) the claims are not plead with the requisite particularity, and (3) the claims do not plead an ascertainable loss of money or property. The Court will address each argument separately.

Defendants contend that the conduct complained of is alleged anticompetitive conduct and therefore, that Acument fails to state a claim for TCPA violations *Sherwood*, 2003 WL 21780975, at *33 (Tenn. Ct App. July 31, 2003). In *Sherwood*, the court recognized in a thorough discussion of the history of the TCPA that potential claims based upon antitrust and anticompetitive conduct were knowingly omitted by the Tennessee General Assembly as actionable claims under the TCPA Potential claims based upon antitrust and anticompetitive conduct were knowingly omitted from the Act because actions for such conduct were intended to be continually brought under the Tennessee Trade Practices Act. *Id* Consequently, claims based upon anticompetitive conduct are not cognizable under the TCPA and must be dismissed. *Id.*

In making this conclusion, the *Sherwood* court acknowledged that seeking relief for anticompetitive conduct does not preclude the application of the TCPA where additionally alleged conduct within the claim "falls within the scope of [the TCPA's] application." *Id* at *33–34. However, "[a]nti-competitive conduct which falls outside the scope of the TTPA cannot be used to form the basis for a TCPA claim." *Bennett v Visa U S A , Inc ,* 198 S W 3d 747, 754 (Tenn. Ct. App. 2006). This is to include allegations "directly related to, and an alleged consequence of, the antitrust violation allegations." *Sherwood* 2003 WL 21780975, at *34

Therefore, the first issue here is whether Acument's TCPA claims are based upon anticompetitive conduct. The Court has reviewed Acument's lengthy Complaint in full. Acument's Complaint draws the Court's attention to six particular provisions of TCPA that

23

Defendants have allegedly violated. Those specific provisions are T.C.A. § 47-18-104(b)(2), (3), (5), (7), (8), and (11)   Additionally, Acument alleges eight unfair and deceptive acts or practices in paragraph 376 of its Complaint.  In reviewing these allegations, however, none of the specific factual allegations constitute a separate allegation of unfair or deceptive acts or practices separate and apart from the allegation of anticompetitive conduct   The allegations directly relate to and are an alleged consequence or part of the antitrust violation allegations   The allegations include complaints related to the exclusive distribution agreement and the distribution process, and the increase in prices that occurred due to the arrangements for distribution and agreements between the Defendants   The Court is unable to find sufficient factual allegations to support the allegation that the Defendants engaged in deceptive acts or practices in violation of the TCPA other than through anticompetitive conduct and its consequences   *See Sherwood*, 2003 WL 21780975 at *34.

Because this finding results in the dismissal of Count III, there is no need for the Court to address the remainder of Defendants' arguments as to Count III

### Count IV – Unjust Enrichment

The Defendants all argue various reasons why the claim for unjust enrichment should be dismissed   Express Scripts argues that it should be dismissed as there is no underlying tort.  The Court can find no Tennessee law requiring an underlying tort for a claim for unjust enrichment

All of the Defendants argue that the claim for unjust enrichment should be dismissed for the failure of the Acument to plead that it has exhausted all remedies.  There is no doubt that to recover for a claim of unjust enrichment, Acument must establish that it has exhausted all remedies against the person with whom Acument enjoyed privity of contract, unless pursuit of

those remedies would be futile. *Freeman Industries, LLC v Eastman Chemical Co* , 172 S.W.3d 512, 525-26 (Tenn. 2005).  First, the parties dispute who Acument had privity of contract with for this claim   The Court need not resolve this issue for purposes of this motion   In support of their contention that Acument must allege in its Complaint that it has exhausted all remedies, Defendants cite to *Spahr* v *Leegin Creative Leather Products, Inc* No. 2:07-CV-187, 2008 WL 3914461 (E D. Tenn  Aug. 20, 2008)   *Spahr* is an opinion from the Eastern District of Tennessee, United States District Court.  It cites the *Freeman* case, which discusses application of the summary judgment standard.  *Spahr* also cites the Federal pleading requirements set forth in *Twombly*.[8]  Tennessee pleading requirements are different   *Webb v Nashville Area Habitat for Humanity, Inc* , 346 S.W.3d 422, 437 (Tenn. 2011).  While one must ultimately prove that it has exhausted all remedies or prove that the exception applies, this Court can find no Tennessee case adopting such a heightened pleading requirement   All cases discussing this requirement merely discuss what must be proved, demonstrated or shown, not alleged   *See Freeman Industries, LLC v Eastman Chemical Co* , 172 S W 3d 512 (Tenn  2005), *Paschall's, Inc v Dozier*, 407 S W.2d 150 (Tenn  1966), *Whitehaven Cmty Baptist Church v Holloway*, 973 S W 2d 592, 596 (Tenn  1998)

Finally, Dr. Tumlin argues that the conclusory allegations set forth as to him fails to plead a claim for unjust enrichment. Mallinckrodt argues that the Complaint fails to show that the benefit conferred on the Defendants is unjust   The Tennessee pleading standard only requires that a complaint contain a short statement showing the pleader is entitled to relief and a demand for judgment for the relief sought   Tenn  R  Civ  Pro. 8 01   Under the Tennessee liberal

---

[8] *Sphar* also notes that the plaintiff in that case agues that the TTPA is more expansive than the Federal counter-part – The Sherman Act  The Court, however, does not address this issue  It does note that at least one Tennessee Supreme Court case has agreed with this contention  *Sphar*, 2008 WL 3914461 at *13 (citing *Freeman Industries, LLC v Eastman Chemical Co* , 172 S W 3d 512 (Tenn  2005))

notice pleading standard, pleadings need only provide "notice of the issues presented to the opposing party and court." *Webb*, 346 S.W.3d at 426 (citing *Abshure v Methodist Healthcare-Memphis Hosps*, 325 S.W 3d 98, 103 (Tenn 2010)). Considering the Complaint as a whole, this Court finds that the Complaint sets forth a claim for unjust enrichment as to the Defendants

For the foregoing reasons, the Motions by the Defendants to dismiss Count IV — Unjust Enrichment are denied.  In the future, this finding does not prohibit any of the parties from moving for a Motion for Summary Judgment or other dispositive motion as may be appropriate

### Count V – Fraud Claim

Acument brings a claim for fraud, which it describes as "negligent misrepresentation and fraud." Claims for intentional misrepresentation and fraud are often used interchangeably. *PNC Multifamily Capital Institutional Fund XXVI Ltd P'ship v Bluff City Cmty Dev Corp*, 387 S.W.3d 525, 548 (Tenn. Ct App 2012). "In order to establish a claim for fraudulent or intentional misrepresentation, a plaintiff must show the following  (1) the defendant made a representation of an existing or past fact; (2) the representation was false when made, (3) the representation was in regard to a material fact; (4) the false representation was made either knowingly or without belief in its truth or recklessly; (5) plaintiff reasonably relied on the misrepresented fact, and (6) plaintiff suffered damage as a result of the misrepresentation " *Id* In order to recover for negligent misrepresentation, a plaintiff must show that (1) the defendant supplied information to the plaintiff, (2) the information was false, (3) the defendant did not exercise reasonable care in obtaining or communicating the information, and (4) that the plaintiff justifiably relied on the information  *Walker v Sunrise Pontiac-GMC Truck, Inc* 249 S W 3d 301, 311 (Tenn 2008).  Further, Tennessee Rule of Civil Procedure 9.02 requires these claims to

be plead with particularity  A claim of fraud is deficient if the complaint fails to state with particularity an intentional misrepresentation of a material fact  *Kincaid v SouthTrust Bank*, 221 S.W.3d 32, 41 (Tenn. Ct App. 2006)  The substance of each allegation should be plead  *Id.*

In this matter, Acument's Complaint contains 312 paragraphs of factual averments in approximately sixty-seven pages.  Count V, which is the claim for fraud, begins on page 83 in paragraph 389 and runs through paragraph 398  It begins by incorporating all averments in the preceding 388 paragraphs.  It does not limit which factual averments specifically demonstrate misrepresentations  It alleges that misrepresentations were made as to prices and values of Acthar by the Defendants, without specifically identifying which Defendant.  It alleges that Acument relied on these misrepresentations in general, but does not specify which representations Acument relied upon specifically.  In its response to the Motions, Acument cites to over 100 paragraphs of factual averments in its Complaint that it contends demonstrate fraud and deception  First, however, Acument notes in its response that this list is not exhaustive of its complaints regarding fraud and deception  Second, and more importantly, nowhere in the Complaint does it identify that these approximately 109 assertions constitute the complained of misrepresentation  It leaves this Court, and therefore, the Defendants, guessing as to what the alleged misrepresentations are, who made them, when they were made, and which representations Acument contends that it relied upon.  This is akin to *Kincaid v SouthTrust Bank*, in which the plaintiffs alleged "'each one of the Defendants did the acts herein alleged with the intent to deceive and defraud . .  ' and 'herein' refers generally to one hundred paragraphs."  *Kincaid v SouthTrust Bank*, 221 S W 3d 32, 41 (Tenn Ct App 2006) Consequently, the Court finds that Acument failed to plead with the particularity required and must dismiss this claim.

27

In their responses to the Motions to Dismiss, Acument discuss fraudulent concealment This would be a separate type of claim. *PNC Multifamily Capital*, 387 S.Wd.3d at 549. Fraudulent concealment occurs when there is a duty to disclose  Because the claim also involves an allegation of fraud, it should be plead with particularity  First, the Complaint does not mention a claim for fraudulent concealment.  Further, it does not allege any such concealment, including a duty to disclose, with particularity  Therefore, to the extent that any such claim has been made, which the Court does not find it has been, that claim is also dismissed.

### Count VI: Conspiracy to Defraud/Concerted Action

A claim for civil conspiracy requires an underlying tort *Lane v Becker,* 334 S W 3d 756, 763 (Tenn Ct App 2010). In its response to the Motions to Dismiss, Acument contends that it has pled viable claims for consumer fraud under the TCPA, common law fraud and unjust enrichment  Because the Court dismisses the claims brought under the TCPA and claims for common law fraud, the Court must also dismiss any conspiracy claims based upon those torts. The claims for conspiracy for unjust enrichment and TTPA, however, may proceed.

**IT IS SO ORDERED ADJUDGED AND DECREED**, based upon the foregoing findings:

1        The Motions to Dismiss are denied as to Counts I and II for violations of the Tennessee Trade Practices Act, with the exception that Dr Tumlin's Motion to Dismiss Count I and II is granted.

2.       The Motions to Dismiss are granted as to Count III for violations of the Tennessee Consumer Protection Act

3      The Motions to Dismiss are denied as to Count IV for claims of unjust enrichment.

4.      The Motions to Dismiss are granted as to Count V for fraud and negligent misrepresentation.

5.      The Motions to Dismiss are granted as to Count VI for conspiracy with regard to the underlying claims of the Tennessee Consumer Protection Act, fraud and negligent misrepresentation  The Motions to Dismiss are denied as to Count VI for conspiracy with regard to violations of the Tennessee Trade Practices Act and unjust enrichment

JUDGE MARY L. WAGNER

Date: 08/21/2020


## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the forgoing has been mailed via US Mail to·

Patrick M  Ardis
Daniel Parish
5810 Summer Oaks Drive
Memphis TN 38134

Daniel B. Brown
1600 Parkwood Circle SE
Suite 200
Atlanta, GA30339

Donald E. Haviland, Jr.
William H. Platt II
201 S. Maple Way, Suite 110
Ambler PA 19002

Kirk Caraway
80 Monroe Avenue Suite 650
Memphis TN 38103

Nathan A. Bicks
William Irvine
Lani Lester
130 North Court Avenue
Memphis TN 38103

Eric Lyttle
Michael D Bonanno
Ethan C. Glass
Meghan McCaffrey
Michael Lyle
1300 I Street, NW
Washington DC 2005

CLERK

FEB 2 1 2020

Date:_____

**IN THE CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE**
**FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS**

FILED
MAR 16 2020
CIRCUIT COURT CLERK
BY _____ D.C.

ACUMENT GLOBAL                 )
TECHNOLOGIES, INC ,            )
                               )
        Plaintiff,             )
                               )       Case No  CT-2275-19
v                              )       Division VII
                               )
MALLINCKRODT ARD INC , ET AL , )
                               )
        Defendants             )

---

### CONSENT ORDER EXTENDING TIME FOR ALL DEFENDANTS TO ANSWER

---

The Court having granted in part and denied in part the motions to dismiss, the

Defendants' answers not yet being due and the parties reaching agreement as to an answer date

for all remaining Defendants, it is hereby

ORDERED that all Defendants shall have until the close of business, 5 00 p m  Central,

on Monday, March 30, 2020 to file their answers to the remaining claims brought against them

It is so ORDERED this the __16__ day of March, 2020

MARY L  WAGNER
CIRCUIT COURT JUDGE – DIVISION VII

Approved as to form

**BUTLER SNOW, LLP**

By _____

DANIEL W  VAN HORN       (18940)
DIANA M  COMES            (30112)
KATHRYN K  VAN NAMEN      (31322)

Attorneys for Defendants
MALLINCKRODT ARD INC  and MALLINCKRODT plc
6075 Poplar Ave , Ste. 500
Memphis, TN 38119
(901) 680-7200

 and co-counsel

**ARNOLD & PORTER KAYE SCHOLER LLP**
Matthew M  Wolf
Laura S  Shores
Sonia K. Pfaffenroth
Adam Pergament
601 Massachusetts Avenue, NW
Washington, DC 20001
(202) 942-5000

**BURCH PORTER & JOHNSON, PLLC**

By _____  3-12-20

NATHAN A  BICKS          (10903)
LANI D  LESTER           (35226)
WILLIAM D  IRVINE        (35193)

Attorneys for Defendant Express Scripts
130 North Court Ave
Memphis, TN 38103
(901) 524-5000

and co-counsel

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Eric C  Lyttle, Esq
Michael D  Bonanno, Esq
Ethan C  Glass, Esq

2

Meghan A McCaffiey, Esq.
Michael Lyle. Esq
1300 I Street, NW
Washington, D C 2005

**WOLFF ARDIS, P.C.**

By _Patrick Ardis         Dan Parish     DVH 3-12-20_
    PATRICK M ARDIS      (8263)
    DANIEL V PARISH     (27452)

Attoineys foi Plaintiff Acument Technologies
5810 Shelby Oaks Diive
Memphis, TN 38134

and Plaintiff's Co-Counsel

**HAVILAND HUGHES**
Donald E. Haviland, Ji.
William H Platt
201 S Maple Way, Ste 110
Amblei, PA 19002

## Certificate of Service

The undeisigned counsel heieby ceitifies that a tiue and coniect copy of the foregoing
ordei has been served on all counsel of iecord via e-mail this the 13th day of Maich 2020

3

ELECTRONICALLY FILED
2020 Mar 30 9:15 AM
CLERK OF COURT

## IN THE CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE
## FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

ACUMENT GLOBAL TECHNOLOGIES, INC.

       Plaintiff,

v.

MALLINCKRODT ARD, INC., f/k/a QUESTCOR
PHARMACEUTICALS, INC., MALLINCKRODT
PLD, EXPRESS SCRIPTS HOLDING COMPANY,
EXPRESS SCRIPTS, INC., CURASCRIPT, INC.,
d/b/a CURASCRIPT, SD, PRIORITY HEALTHCARE
CORP. AND PRIORITY HEALTHCARE
DISTRIBUTION, INC., d/b/a CURASCRIPT SD AND
CURASCRIPT SPECIALTY DISTRIBUTION SD,
respectively, ACCREDO HEALTH GROUP, INC.,
UNITED BIOSOURCE CORPORATION, and
JAMES A. TUMLIN, M.D.,

       Defendants.

No. CT-2275-19
Div. VII
Jury Demanded

## ANSWER AND AFFIRMATIVE DEFENSES
## OF JAMES A. TUMLIN, M.D.

COMES NOW, James A. Tumlin, M.D., and files his Answer to the Complaint filed by Acument Global Technologies, Inc. ("Acument").

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The causes of action asserted in the Complaint are barred, in whole or in part, as failing to state a cause of action upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

1

The causes of action asserted in the Complaint are barred, in whole or in part, on the grounds of unclean hands.

### THIRD AFFIRMATIVE DEFENSE

The causes of action asserted in the Complaint are barred, in whole or in part, on the grounds of laches.

### FOURTH AFFIRMATIVE DEFENSE

The causes of action asserted in the Complaint are barred, in whole or in part on the grounds of estoppel.

### FIFTH AFFIMATIVE DEFENSE

The causes of action asserted in the Complaint are barred, in whole or in part, by the doctrines of collateral estoppel and/or res judicata.

### SIXTH AFFIRMATIVE DEFENSE

In the event it is determined that Defendant Tumlin is liable to Plaintiff for any of the conduct alleged in the Complaint (which is denied), it is denied that Defendant Tumlin's conduct was the proximate cause or cause-in-fact of the damages alleged in the Complaint.

### SEVENTH AFFIRMATIVE DEFENSE

Defendant Tumlin objects to the Complaint to the extent any items of special damages are demanded. In the alternative, to the extent any items of special damages are demanded generally in the Complaint, such demands should be struck from the Complaint as immaterial. As required by Tenn. R. Civ. P. 9.07, when items of special damages are claimed, they must be specifically stated.

### EIGHTH AFFIRMATIVE DEFENSE

In the event Plaintiff failed to mitigate some or all of its alleged injuries and/or damages,

Plaintiff's recovery, if any, should be barred or reduced accordingly.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff's damages in whole or in part, if any, were caused by actions and conduct of third parties for whose conduct Defendant Tumlin is not liable.

## TENTH AFFIRMATIVE DEFENSE

Defendant Tumlin denies that he is guilty of the matters, things, wrongs, or acts charged and alleged against him in the Complaint, either in the manner or form alleged or in any other manner or form.

## ELEVENTH AFFIRMATIVE DEFENSE

Defendant Tumlin denies that he breached any duty to Plaintiff.

## TWELFTH AFFIRMATIVE DEFENSE

Defendant Tumlin denies Plaintiff has been injured to the nature and extent as asserted in the Complaint and, therefore, demands strict proof as to all claims of injury or damages.

## THIRTEENTH AFFIRMATIVE DEFENSE

Defendant Tumlin denies that he is liable to Plaintiff for punitive damages in any amount. No acts or omissions, if any, of Defendant Tumlin constituted fraudulent, malicious, willful, or reckless conduct and, therefore, any award of punitive damages is barred.

## FOURTEENTH AFFIRMATIVE DEFENSE

Defendant Tumlin avers that Plaintiff's demand for punitive damages violates the rights guaranteed by the United States Constitution, in that the claim for punitive damages is penal in nature, but that the burden of proof for Plaintiff is less than the "beyond a reasonable doubt"

standard required in criminal cases.

## FIFTEENTH AFFIRMATIVE DEFENSE

Defendant Tumlin asserts that the imposition of punitive damages against him would be unconstitutionally vague and/or overbroad due to the lack of clear standards.

## SIXTEENTH AFFIRMATIVE DEFENSE

Defendant Tumlin avers that Plaintiff's claim for punitive damages is in contravention of Defendant Tumlin's rights under each of the following constitutional provisions: (1) the Commerce Clause of Article I, Section 8, of the United States Constitution; (2) the Contracts Clause of Article I, Section 10, of the United States Constitution; (3) the Supremacy Clause of Article VI, of the United States Constitution; (4) the Due Process Clauses of the Fifth and Fourteenth Amendments of the United States Constitution; (5) the Fifth Amendment of the United States Constitution; (6) the Excessive Fines Clause of the Eighth Amendment of the United States Constitution; (7) the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution; and (8) the Constitution of the State of Tennessee.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Defendant Tumlin demands that this Honorable Court bifurcate the trial of this matter as to references to and concerning punitive damages, as set forth in Hodges v. S.C. Toof & Co., 833 S.W.2d 896 (Tenn. 1992), and demands that the issues of liability for compensatory and punitive damages be bifurcated from the trial of the issues of the amount of punitive damages, if any.

## EIGHTEENTH AFFIRMATIVE DEFENSE

The causes of action asserted in the Complaint are barred, in whole or in part, by the doctrine of accord and satisfaction.

## NINETEENTH AFFIRMATIVE DEFENSE

The causes of action asserted in the Complaint are barred, in whole or in part, on the grounds of failure of consideration

## TWENTIETH AFFIRMATIVE DEFENSE

Plaintiff is unable to establish the *prima facie* elements of a claim for Unjust Enrichment.

## TWENTY FIRST AFFIRMATIVE DEFENSE

Plaintiff is unable to establish the *prima facie* elements of a claim for Fraud.

## TWENTY SECOND AFFIRMATIVE DEFENSE

Plaintiff is unable to establish the *prima facie* elements of a claim for Conspiracy.

## TWENTY THIRD AFFIRMATIVE DEFENSE

The causes of action asserted in the Complaint are barred, in whole or in part, by the doctrine of waiver.

## TWENTY FOURTH AFFIRMATIVE DEFENSE

The causes of action asserted in the Complaint are barred, in whole or in part, by the statute of limitations and/or statute of repose.

## TWENTY FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claim for Unjust Enrichment fails because it has alleged insufficient facts upon which a contractual obligation can be imposed.

## TWENTY SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claim for Unjust Enrichment fails because enforceable contracts exist on the

same subject matter.

### TWENTY SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claim for Unjust Enrichment fails because there was no benefit conferred by Plaintiff upon Defendant Tumlin.

### TWENTY EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claim for Unjust Enrichment fails because there was no appreciation of any benefit by Defendant Tumlin.

### TWENTY NINTH AFFIRMATIVE DEFENSE

Plaintiff's claim for Unjust Enrichment fails because any alleged enrichment to Defendant Tumlin was not unjust.

### THIRTIETH AFFIRMATIVE DEFENSE

Plaintiff's claim for Unjust Enrichment fails because to the extent Plaintiff received a benefit, the retention of such without compensation to Defendant Tumlin would be inequitable.

### THIRTY FIRST AFFIRMATIVE DEFENSE

Plaintiff's claim for Fraud fails because Plaintiff failed to rely upon any alleged representation or act made or committed by Defendant Tumlin.

### THIRTY SECOND AFFIRMATIVE DEFENSE

Plaintiff's claim for Fraud fails because any alleged reliance by Plaintiff upon any alleged representation or act made or committed by Defendant Tumlin was not detrimental.

### THIRTY THIRD AFFIRMATIVE DEFENSE

6

Plaintiff's claim for Fraud fails because any purported misrepresentation by Defendant Tumlin was not material.

**THIRTY FOURTH AFFIRMATIVE DEFENSE**

Plaintiff's claim for Fraud fails because any purported representation made by Defendant Tumlin was not false, or Defendant Tumlin had no reason to know of its falsity.

**THIRTY FIFTH AFFIRMATIVE DEFENSE**

Plaintiff's claim for Fraud fails because Defendant Tumlin exercised reasonable care in conveying the information.

**THIRTY SIXTH AFFIRMATIVE DEFENSE**

Plaintiff's claim for Conspiracy fails because there was no overt act, common design or purpose, or concert of action between Defendant Tumlin and any of the other Defendants.

**THIRTY SEVENTH AFFIRMATIVE DEFENSE**

Plaintiff's claim for Conspiracy fails because Defendant Tumlin had no intent to conspire with the other Defendants.

**THIRTY EIGHTH AFFIRMATIVE DEFENSE**

Plaintiff's claim for Conspiracy fails because Defendant Tumlin did not use any unlawful means or take any action for an unlawful purpose.

**THIRTY NINTH AFFIRMATIVE DEFENSE**

Defendant Tumlin alleges that, as to the allegations directed at him in the Complaint, he has insufficient information to respond completely, and on the basis of further information, other affirmative defenses may become known or substantiated. Defendant Tumlin, therefore, reserves

the right to add said affirmative defenses after the facts underlying said affirmative defenses may become known to him.

## ANSWER

1.

Defendant Tumlin denies that he engaged in any anti-competitive, unfair and deceptive scheme and conspiracy. Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the remaining averments of this paragraph, which therefore stand denied.

2.

Defendant Tumlin denies the allegations contained in this paragraph as they relate to him. Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the remaining averments of this paragraph, which therefore stand denied.

3.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

4.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

5.

Defendant Tumlin denies the allegations contained in this paragraph as they relate to him. Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

6.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

7.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

8.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

9.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

10.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

11.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

12.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

13.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

14.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

15.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

16.

Defendant Tumlin denies that he was a "provider partner" as alleged in this Paragraph. Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the remaining averments of this paragraph, which therefore stand denied.

17.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

18.

Defendant Tumlin denies the allegations contained in this paragraph as they relate to him. Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

19.

Defendant Tumlin admits that the Court has personal jurisdiction over him in this case. Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the remaining averments of this paragraph, which therefore stand denied.

20.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth

of the averments of this paragraph, which therefore stand denied.

21.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

22.

Defendant Tumlin denies the allegations contained in this paragraph as they relate to him. Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

23.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

24.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

25.

Defendant Tumlin admits that he prescribed Acthar to certain patients diagnosed with iMN in Chattanooga, TN during the time period alleged.   Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the remaining averments of this paragraph, which therefore stand denied.

26.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

27.

11

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

28.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

29.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

30.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

31.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

32.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

33.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

34.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

35.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

36.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

37.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

38.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

39.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

40.

Defendant Tumlin admits that UBC is referenced in Exhibit A, but he lacks knowledge or information sufficient to form a belief as to the truth of the remaining averments of this paragraph, which therefore stand denied.

41.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

42.

13

Admitted.

43.

Defendant Tumlin admits that he founded and was medical director of SERRI.  He denies the remainder of the averment.

44.

Denied.

45.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

46.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

47.

Admitted.

48.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

49.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

50.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

14

51.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

52.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

53.

Defendant Tumlin admits that Acthar is adrenocorticotropic hormone ("ACTH"), which causes the body to produce cortisone and other steroid hormones.  Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the remaining averments of this paragraph, which therefore stand denied.

54.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

55.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

56.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

57.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

58.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

59.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

60.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

61.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

62.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

63.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

64.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

65.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth

of the averments of this paragraph, which therefore stand denied.

66.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth
of the averments of this paragraph, which therefore stand denied.

67.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth
of the averments of this paragraph, which therefore stand denied.

68.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth
of the averments of this paragraph, which therefore stand denied.

69.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth
of the averments of this paragraph, which therefore stand denied.

70.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth
of the averments of this paragraph, which therefore stand denied.

71.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth
of the averments of this paragraph, which therefore stand denied.

72.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth
of the averments of this paragraph, which therefore stand denied.

73.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

74.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

75.

Defendant Tumlin admits that he is a leading medical provider for his patients but denies that he was a "KOL…to ensure that Acthar was prescribe [sic] as a primary course of treatment." Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the remaining averments of this paragraph, which therefore stand denied.

76.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

77.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

78.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

79.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

80.

Defendant Tumlin admits that the "Acthar Start Form" is attached as Exhibit A.  He lacks knowledge or information sufficient to form a belief as to the truth of the remaining averments of this paragraph, which therefore stand denied.

81.

Defendant Tumlin admits that the "Acthar Start Form," attached as Exhibit A, states its requirements.  Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the remaining averments of this paragraph, which therefore stand denied.

82.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

83.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

84.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

85.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

86.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

87.

19

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

88.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

89.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

90.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

91.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

92.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

93.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

94.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

95.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth
of the averments of this paragraph, which therefore stand denied.

96.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth
of the averments of this paragraph, which therefore stand denied.

97.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth
of the averments of this paragraph, which therefore stand denied.

98.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth
of the averments of this paragraph, which therefore stand denied.

99.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth
of the averments of this paragraph, which therefore stand denied.

100.

Defendant Tumlin admits that the Acthar Start Form, attached as Exhibit A, has been used
by some iMN patients to submit the prescription for payment approval.  Defendant Tumlin lacks
knowledge or information sufficient to form a belief as to the truth of the remaining averments of
this paragraph, which therefore stand denied.

101.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth
of the averments of this paragraph, which therefore stand denied.

21

102.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth
of the averments of this paragraph, which therefore stand denied.

103.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth
of the averments of this paragraph, which therefore stand denied.

104.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth
of the averments of this paragraph, which therefore stand denied.

105.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth
of the averments of this paragraph, which therefore stand denied.

106.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth
of the averments of this paragraph, which therefore stand denied.

107.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth
of the averments of this paragraph, which therefore stand denied.

108.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth
of the averments of this paragraph, which therefore stand denied.

109.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth

22

of the averments of this paragraph, which therefore stand denied.

110.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

111.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

112.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

113.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

114.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

115.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

116.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

117.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

118.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

119.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

120.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

121.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

122.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

123.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

124.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

125.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

126.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

127.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

128.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

129.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

130.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

131.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

132.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth

of the averments of this paragraph, which therefore stand denied.

133.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

134.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

135.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

136.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

137.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

138.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

139.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

140.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

141.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

142.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

143.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

144.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

145.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

146.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

147.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

148.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

149.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

150.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

151.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

152.

Denied.

153.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

154.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

155.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

156.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

157.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

158.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

159.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

160.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

161.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

162.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

163.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth

of the averments of this paragraph, which therefore stand denied.

164.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

165.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

166.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

167.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

168.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

169.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

170.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

171.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

172.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

173.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

174.

Defendant Tumlin denies any "assistance" in any alleged conspiracy to increase prices of Acthar or overcharge. Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the remaining averments of this paragraph, which therefore stand denied.

175.

Defendant Tumlin admits that, when medically indicated, he has prescribed Acthar for treatment of nephrotic syndrome, specifically idiopathic membranous nephropathy (iMN), but lacks knowledge or information sufficient to form a belief as to the truth of the remaining averments of this paragraph, which therefore stand denied.

176.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

177.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

178.

Defendant Tumlin admits that he co-authored the studies cited in footnotes 11 and 12, but lacks knowledge or information sufficient to form a belief as to the truth of the remaining averments of this paragraph, which therefore stand denied.

179.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

180.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

181.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

182.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

183.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

184.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

185.

32

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

186.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

187.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

188.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

189.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

190.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

191.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

192.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

193.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

194.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

195.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

196.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

197.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

198.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

199.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

200.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth

of the averments of this paragraph, which therefore stand denied.

201.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

202.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

203.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

204.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

205.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

206.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

207.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

208.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

209.

Defendant Tumlin denies that he was paid to prescribe Acthar to patients. Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the remaining averments of this paragraph, which therefore stand denied.

210.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

211.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

212.

Defendant Tumlin admits that he has prescribed Acthar to iMN patients, in the manner consistent with the independent exercise of his professional medical judgment. Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the remaining averments of this paragraph, which therefore stand denied.

213.

Defendant Tumlin denies that Acthar is "off label" when prescribed for iMN. Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the remaining averments of this paragraph, which therefore stand denied.

214.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth

of the averments of this paragraph, which therefore stand denied.

215.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

216.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

217.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

218.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

219.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

220.

Defendant Tumlin denies that he received hundreds of thousands of dollars from Mallinckrodt to prescribe Acthar. He lacks knowledge or information sufficient to form a belief as to the truth of the remaining averments of this paragraph, which therefore stand denied.

221.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

222.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

223.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

224.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

225.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

226.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

227.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

228.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

229.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth

of the averments of this paragraph, which therefore stand denied.

230.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

231.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

232.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

233.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

234.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

235.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

236.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

237.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

238.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

239.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

240.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

241.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

242.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

243.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

244.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

245.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

246.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

247.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

248.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

249.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

250.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

251.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

252.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth

of the averments of this paragraph, which therefore stand denied.

253.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

254.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

255.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

256.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

257.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

258.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

259.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

260.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

261.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

262.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

263.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

264.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

265.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

266.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

267.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

268.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth
of the averments of this paragraph, which therefore stand denied.

269.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth
of the averments of this paragraph, which therefore stand denied.

270.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth
of the averments of this paragraph, which therefore stand denied.

271.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth
of the averments of this paragraph, which therefore stand denied.

272.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth
of the averments of this paragraph, which therefore stand denied.

273.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth
of the averments of this paragraph, which therefore stand denied.

274.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth
of the averments of this paragraph, which therefore stand denied.

275.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth

of the averments of this paragraph, which therefore stand denied.

276.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

277.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

278.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

279.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

280.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

281.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

282.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

283.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

284.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

285.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

286.

Defendant Tumlin denies being recruited as a "KOL," as defined, or generating new data in the United States to support the off-label use of Acthar.  He lacks knowledge or information sufficient to form a belief as to the truth of the remaining averments of this paragraph, which therefore stand denied.

287.

Defendant Tumlin denies he was hired by Mallinckrodt in March 2009 to develop supporting data using his existing patients as test subjects in a non-FDA approved clinical study. Defendant Tumlin denies that Mallinckrodt paid him handsomely for clinical research studies.

288.

Defendant Tumlin denies that Mallinckrodt entered into a contract with him to conduct clinical studies of his patients using Acthar to treat their nephrology syndrome.  Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the remaining averments of this paragraph, which therefore stand denied.

289.

Defendant Tumlin admits that he served a Principal Investigator for the Tumlin 2009 Study conducted by Nephrology Associates of Chattanooga.  Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the remaining averments of this paragraph, which therefore stand denied.

290.

Defendant Tumlin admits that he knew Mallinckrodt did not charge patients for Acthar in certain iMN clinical trials that he conducted.  Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the remaining averments of this paragraph, which therefore stand denied.

291.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

292.

Defendant Tumlin admits that he was a paid speaker on nephrology syndrome and that Mallinckrodt paid his actual travel expenses and certain fees for his time to present on that topic in accordance with the Code on Interactions with Healthcare Professionals (the PhRMA Code), which is published by the Pharmaceutical Research and Manufacturers of America.  Payments under the PhRMA Code are recognized ethically standard arrangements between drug manufacturers and physicians who provide research or speaking sponsored by drug manufacturers.  Defendant Tumlin admits that he co-authored the articles cited in footnotes 11 and 12 in the Complaint.  Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the remaining averments of this paragraph, which therefore stand denied.

293.

Defendant Tumlin denies that he received any compensation directly from Mallinckrodt to conduct clinical studies or co-author articles. Defendant Tumlin admits that Mallinckrodt sponsored clinical studies, conducted by Nephrology Associates of Chattanooga, that were consistent with the Code on Interactions with Healthcare Professionals (the PhRMA Code), which is published by the Pharmaceutical Research and Manufacturers of America. Payments under the PhRMA Code are recognized ethically standard arrangements between drug manufacturers and physicians who provide research or speaking sponsored by drug manufacturers. Defendant Tumlin admits that he co-authored the articles cited in footnotes 11 and 12 in the Complaint. Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the remaining averments of this paragraph, which therefore stand denied.

294.

Defendant Tumlin admits that he was principal investigator in a study which generated the paper entitled "Safety and Efficacy of Acthar Gel on Albuminuria and Urinary Transforming Growth Factor Excretion in Type II Insulin Requiring Diabetics with Nephrotic Range Proteinuria: A Pilot Study." Defendant Tumlin denies that he received any compensation directly from Mallinckrodt to conduct clinical studies or co-author articles. Tumlin admits that Mallinckrodt sponsored clinical studies, conducted by Nephrology Associates of Chattanooga, that were consistent with the Code on Interactions with Healthcare Professionals (the PhRMA Code), which is published by the Pharmaceutical Research and Manufacturers of America. Payments under the PhRMA Code are recognized ethically standard arrangements between drug manufacturers and physicians who provide research or speaking sponsored by drug manufacturers. Defendant Tumlin admits that he co-authored the articles cited in footnotes 11 and 12 in the Complaint. Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the remaining

averments of this paragraph, which therefore stand denied.

295.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

296.

Defendant Tumlin admits that he co-authored the papers referenced in Paragraph 296, but he lacks knowledge or information sufficient to form a belief as to the truth of the remaining averments of this paragraph, which therefore stand denied.

297.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

298.

Defendant Tumlin admits that Mallinckrodt paid his actual travel expenses and industry standard honoraria for speaking on nephrology syndrome, in accordance with the Code on Interactions with Healthcare Professionals (the PhRMA Code), which is published by the Pharmaceutical Research and Manufacturers of America.  Payments under the PhRMA Code are recognized ethically standard arrangements between drug manufacturers and physicians who provide research or speaking sponsored by drug manufacturers.   The averment and argument that Defendant Tumlin "has been paid handsomely for his work on behalf of Mallinckrodt" is denied.

299.

Defendant Tumlin denies that he was paid for promotional activity or selling Acthar. Defendant Tumlin admits that he was a paid speaker on nephrology syndrome and that Mallinckrodt paid his actual travel expenses and certain fees for his time to present on that topic

49

in accordance with the Code on Interactions with Healthcare Professionals (the PhRMA Code),
which is published by the Pharmaceutical Research and Manufacturers of America.   Payments
under the PhRMA Code are recognized ethically standard arrangements between drug
manufacturers and physicians who provide research or speaking sponsored by drug manufacturers.
Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the
remaining averments of this paragraph, which therefore stand denied.

300.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth
of the averments of this paragraph, which therefore stand denied.

301.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth
of the averments of this paragraph, which therefore stand denied.

302.

Defendant Tumlin admits that he was a paid speaker on nephrology syndrome and that
Mallinckrodt paid his actual travel expenses and honoraria for his time to present on that topic in
accordance with the Code on Interactions with Healthcare Professionals (the PhRMA Code),
which is published by the Pharmaceutical Research and Manufacturers of America.   Payments
under the PhRMA Code are recognized ethically standard arrangements between drug
manufacturers and physicians who provide research or speaking sponsored by drug manufacturers.
Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the
remaining averments of this paragraph, which therefore stand denied.

303.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth

50

of the averments of this paragraph, which therefore stand denied.

304.

Defendant Tumlin admits that he was a paid speaker on nephrology syndrome and that Mallinckrodt paid his travel expenses and certain fees for his time to present on that topic in accordance with the Code on Interactions with Healthcare Professionals (the PhRMA Code), which is published by the Pharmaceutical Research and Manufacturers of America.  Payments under the PhRMA Code are recognized ethically standard arrangements between drug manufacturers and physicians who provide research or speaking sponsored by drug manufacturers. Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the remaining averments of this paragraph, which therefore stand denied.

305.

Defendant Tumlin admits that he was a paid speaker on nephrology syndrome and that Mallinckrodt paid his travel expenses and certain fees for his time to present on that topic in accordance with the Code on Interactions with Healthcare Professionals (the PhRMA Code), which is published by the Pharmaceutical Research and Manufacturers of America.  Payments under the PhRMA Code are recognized ethically standard arrangements between drug manufacturers and physicians who provide research or speaking sponsored by drug manufacturers. Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the remaining averments of this paragraph, which therefore stand denied.

306.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

307.

51

Defendant Tumlin admits that he never billed any party for Acthar at any time. Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

308.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

309.

Defendant Tumlin admits that he prescribed Acthar to his iMN patients, as medically indicated. Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the remaining averments of this paragraph, which therefore stand denied.

310.

Defendant Tumlin denies he was a "leading KOL in promotion of Acthar." Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the remaining averments of this paragraph, which therefore stand denied.

311.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

312.

Defendant Tumlin denies that he "put the patient on Acthar in order to charge him." Defendant Tumlin denies that Acthar was "not approved" for iMN during the relevant time period, as it was an FDA-approved treatment for iMN. Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the remaining averments of this paragraph, which therefore stand denied.

52

313.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

314.

The allegations and characterizations contained in this paragraph are denied to the extent they misquote or misinterpret the statute or authority referenced herein. Defendant Tumlin would further state that the quotation of selective portions or sections of the statute or authority referenced herein distorts its meaning, the determination of which is solely a question of law for the Court.

315.

The allegations and characterizations contained in this paragraph are denied to the extent they misquote or misinterpret the statute or authority referenced herein. Defendant Tumlin would further state that the quotation of selective portions or sections of the statute or authority referenced herein distorts its meaning, the determination of which is solely a question of law for the Court.

316.

The allegations and characterizations contained in this paragraph are denied to the extent they misquote or misinterpret the statute or authority referenced herein. Defendant Tumlin would further state that the quotation of selective portions or sections of the statute or authority referenced herein distorts its meaning, the determination of which is solely a question of law for the Court.

317.

The allegations and characterizations contained in this paragraph are denied to the extent

53

they misquote or misinterpret the statute or authority referenced herein. Defendant Tumlin would further state that the quotation of selective portions or sections of the statute or authority referenced herein distorts its meaning, the determination of which is solely a question of law for the Court.

318.

The allegations and characterizations contained in this paragraph are denied to the extent they misquote or misinterpret the statute or authority referenced herein. Defendant Tumlin would further state that the quotation of selective portions or sections of the statute or authority referenced herein distorts its meaning, the determination of which is solely a question of law for the Court.

319.

Defendant Tumlin denies that he ever "charged" a patient for Acthar.  Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the remaining averments of this paragraph, which therefore stand denied.

320.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

321.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

322.

Defendant Tumlin admits that he prescribed Acthar within the State of Tennessee, as medically indicated for his iMN patients.  Defendant Tumlin lacks knowledge or information

sufficient to form a belief as to the truth of the remaining averments of this paragraph, which therefore stand denied.

### 323.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

### 324.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

### 325.

The allegations and characterizations contained in this paragraph are denied. The interpretation of the authority referenced in this paragraph is solely a question of law for the Court.

### 326.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

### 327.

The allegations and characterizations contained in this paragraph are denied. The interpretation of the authority referenced in this paragraph is solely a question of law for the Court.

### 328.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

### 329.

55

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

330.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

331.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

332.

Denied.

333.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

334.

Denied as to the role described for Defendant Tumlin and denied as to any allegation regarding off-label prescribing.  Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the remaining averments of this paragraph, which therefore stand denied.

335.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

336.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth

of the averments of this paragraph, which therefore stand denied.

337.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

338.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

339.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

340.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

341.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

342.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

343.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

344.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

345.

Denied as to the role described for Defendant Tumlin. Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the remaining averments of this paragraph, which therefore stand denied.

346.

Denied.

347.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

348.

Denied.

349.

Defendant Tumlin adopts and incorporates his foregoing responses, answers and denials to the prior paragraphs of the Complaint.

350.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

351.

The allegations and characterizations contained in this paragraph are denied. The interpretation of the authority referenced in this paragraph is solely a question of law for the Court.

352.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

353.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

354.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

355.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

356.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

357.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

358.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

359.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth

of the averments of this paragraph, which therefore stand denied.

360.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

361.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

362.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

363.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

364.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

365.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

366.

The allegations and characterizations contained in this paragraph are denied. The interpretation of the authority referenced in this paragraph is solely a question of law for the Court.

367.

Defendant Tumlin adopts and incorporates his foregoing responses, answers and denials to the prior paragraphs of the Complaint.

368.

The allegations and characterizations contained in this paragraph are denied. The interpretation of the authority referenced in this paragraph is solely a question of law for the Court.

369.

The allegations and characterizations contained in this paragraph are denied to the extent they misquote or misinterpret the statute or authority referenced herein. Defendant Tumlin would further state that the quotation of selective portions or sections of the statute or authority referenced herein distorts its meaning, the determination of which is solely a question of law for the Court.

370.

The allegations and characterizations contained in the first two sentences of this paragraph are denied to the extent they misquote or misinterpret the statute or authority referenced herein. Defendant Tumlin would further state that the quotation of selective portions or sections of the statute or authority referenced herein distorts its meaning, the determination of which is solely a question of law for the Court. The allegations and characterizations contained in the third sentence of this paragraph are denied. The interpretation of the authority referenced in this paragraph is solely a question of law for the Court.

371.

The allegations and characterizations contained in this paragraph are denied. The

61

interpretation of the authority referenced in this paragraph is solely a question of law for the Court.

372.

The allegations and characterizations contained in this paragraph are denied to the extent they misquote or misinterpret the statute or authority referenced herein.  Defendant Tumlin would further state that the quotation of selective portions or sections of the statute or authority referenced herein distorts its meaning, the determination of which is solely a question of law for the Court.

373.

The allegations and characterizations contained in this paragraph are denied. The interpretation of the authority referenced in this paragraph is solely a question of law for the Court.

374.

The allegations and characterizations contained in this paragraph are denied to the extent they misquote or misinterpret the statute or authority referenced herein. Defendant Tumlin would further state that the quotation of selective portions or sections of the statute or authority referenced herein distorts its meaning, the determination of which is solely a question of law for the Court.

375.

The allegations and characterizations contained in this paragraph are denied to the extent they misquote or misinterpret the statute or authority referenced herein.  Defendant Tumlin would further state that the quotation of selective portions or sections of the statute or authority referenced herein distorts its meaning, the determination of which is solely a question of law for

the Court.

376.

The allegations and characterizations contained in this paragraph are denied.  The interpretation of the authority referenced in this paragraph is solely a question of law for the Court.

377.

The allegations and characterizations contained in this paragraph are denied.  The interpretation of the authority referenced in this paragraph is solely a question of law for the Court.

378.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

379.

Defendant Tumlin denies that he "agreed to charge Acument and its beneficiary" for the Acthar prescribed.  Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the remaining averments of this paragraph, which therefore stand denied.

380.

The allegations and characterizations contained in this paragraph are denied.  The interpretation of the authority referenced in this paragraph is solely a question of law for the Court.

381.

Defendant Tumlin adopts and incorporates his foregoing responses, answers and denials to the prior paragraphs of the Complaint.

63

382.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

383.

Defendant Tumlin denies that he ever received "payments" from Acument for Acthar. Defendant Tumlin admits that he prescribed Acthar, as medically indicated, to patients diagnosed with iMN. He lacks knowledge or information sufficient to form a belief as to the truth of the remaining averments of this paragraph, which therefore stand denied.

384.

Defendant Tumlin denies that he was unjustly enriched. He never received payment from Acument for writing an Acthar prescription. Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the remaining averments of this paragraph, which therefore stand denied.

385.

Denied.

386.

Denied.

387.

Denied.

388.

Denied.

389.

Defendant Tumlin adopts and incorporates his foregoing responses, answers and denials

to the prior paragraphs of the Complaint.

390.

Denied.

391.

Denied.

392.

Defendant Tumlin lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, which therefore stand denied.

393.

Denied.

394.

Denied.

395.

Defendant Tumlin denies that he ever "charged" for Acthar. Defendant Tumlin admits that he prescribed Acthar to patients diagnosed with iMN. He lacks knowledge or information sufficient to form a belief as to the truth of the remaining averments of this paragraph, which therefore stand denied.

396.

Denied.

397.

Denied.

398.

Denied.

65

399.

Defendant Tumlin adopts and incorporates his foregoing responses, answers and denials to the prior paragraphs of the Complaint.

400.

Denied.

401.

Denied.

402.

Denied.

403.

Denied.

404.

Denied.

405.

Denied

All requests made in the Complaint for a judgment to be entered in Plaintiff's favor, as well as all allegations in the section of the Complaint entitled Prayer for Relief are denied.

All allegations of the Complaint which are not heretofore expressly admitted, are denied.

Defendant Tumlin, having fully answered the Complaint, prays that he be dismissed and he recover such relief to which he is entitled.

Respectfully submitted this  _30th_  the day of March, 2020.

_____
Kirk A. Caraway (#18578)
ALLEN, SUMMERS, SIMPSON, LILLIE &
GRESHAM PLLC
Attorneys for Defendant James A. Tumlin, M.D.
80 Monroe Ave., Suite 650
Memphis, TN  38103
T: 901.763.4200  F: 901.684.1768
kcaraway@allensummers.com

William D. Dillon (admitted *pro hac vice*)
TAYLOR ENGLISH DUMA, LLP
Attorneys for Defendant James A. Tumlin, M.D.
1600 Parkwood Cir. Suite 200
Atlanta, GA  30339
T: 404 640-5934, F: 770 434-7376
bdillon@taylorenglish.com

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing **ANSWER AND AFFIRMATIVE DEFENSES OF DEFENDANT JAMES A. TUMLIN, M.D.** has been delivered via electronic mail and U.S. mail this 30th day of March, 2020 to the following:

Patrick M. Ardis
Daniel V. Parish
WOLF ARDIS, P.C.
5810 Shelby Oaks Drive
Memphis, TN  38134

Nathan A. Bicks
Lani D. Lester
William D. Irvine, Jr.
BURCH, PORTER & JOHNSON, PLLC
130 N. Court Ave.
Memphis, TN  38103

Laura Shores
Sonia Pfaffenroth
Ryan Watts
Matt Wolf
ARNOLD & PORTER
601 Massachusetts Ave., NW
Washington, DC 20001-3743

Donald E. Haviland, Jr.
William H. Platt II
HAVILAND HUGHES
201 S. Maple Way, Suite 110
Ambler, PA  19002

Daniel W. Van Horn
Kathryn K. Van Namen
Diana M. Comes
BUTLER SNOW LLP
6075 Poplar Ave., 5th Floor
Memphis, TN  38119

_____
KIRK CARAWAY