# Exhibit 9-8

ELECTRONICALLY FILED
2020 Mar 30 4:38 PM
CLERK OF COURT

## IN THE CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE
## FOR THE THIRTIETH JUDICIAL CIRCUIT AT MEMPHIS

| | |
|---|---|
| **ACUMENT GLOBAL TECHNOLOGIES, INC.** | |
| Plaintiff, | **DOCKET NO.  CT-2275-19** |
| v. | DIVISION: |
| **MALLINCKRODT ARD, INC.,** *Formally known as* **QUESTCOR PHARMACEUTICALS, INC.; MALLINCKRODT PLC; EXPRESS SCRIPTS HOLDING COMPANY; EXPRESS SCRIPTS, INC.; CURASCRIPT, INC.,** *doing business as* **CURASCRIPT, SD; PRIORITY HEALTHCARE CORP. AND PRIORITY HEALTHCARE DISTRIBUTION, INC.,** *doing business as* **CURASCRIPT SD AND CURASCRIPT SPECIALTY DISTRIBUTION SD,** *respectively***; ACCREDO HEALTH GROUP, INC.; UNITED BIOSOURCE CORPORATION;** *and* **JAMES A. TUMLIN. M.D.** | **JURY TRIAL DEMANDED** |
| Defendants. | |

---

### MALLINCKRODT ENITITIES' ANSWER AND AFFIRMATIVE DEFENSES
### TO PLAINTIFF'S COMPLAINT

Come now Defendants Mallinckrodt ARD LLC (f/k/a/ Mallinckrodt ARD Inc. and Questcor Pharmaceuticals, Inc.) and Mallinckrodt plc (collectively "Mallinckrodt"), by and through their counsel and submit the following Answer to Acument Global Technologies, Inc.'s Complaint (the "Complaint"):

## FIRST DEFENSE

Plaintiff's Complaint fails to state a cause of action upon which relief may be granted and should be dismissed with prejudice.

## SECOND DEFENSE

In response to the separately numbered paragraphs of Plaintiff's Complaint, Mallinckrodt answers as follows:

1.      Mallinckrodt admits that Plaintiff brings this action against Mallinckrodt, and other Defendants. Mallinckrodt denies the remaining allegations in Paragraph 1.

2.      Mallinckrodt denies the allegations in Paragraph 2.

3.      Mallinckrodt admits that it manufactures, markets, distributes and sells Acthar, which is the only ACTH that is FDA-approved for therapeutic use in the United States, but which is not the only therapeutic or drug available to treat diseases treated by Acthar.  Mallinckrodt denies the remaining allegations in Paragraph 3.

4.      Mallinckrodt admits that Questcor purchased the rights to Acthar from Aventis in 2001 for $100,000.  Mallinckrodt admits that it acquired Questcor on August 14, 2014 in a transaction valued at approximately $5.8 billion. Mallinckrodt denies the remaining allegations in Paragraph 4.

5.      Paragraph 5 states legal conclusions to which no response is required. To the extent a response is required, Mallinckrodt denies the allegations.

6.      Paragraph 6 states legal conclusions to which no response is required. To the extent a response is required, Mallinckrodt denies the allegations.

7.      Paragraph 7 states legal conclusions to which no response is required. To the extent a response is required, Mallinckrodt denies the allegations.

8.      Mallinckrodt admits that, in 2013, Questcor purchased the rights to make and sell Synacthen in the United States.   Mallinckrodt denies the remaining allegations in Paragraph 8.

9.      Mallinckrodt admits that Acthar is a specialty pharmaceutical distributed through specialty pharmacy distributors, and Acthar is not sold in retail pharmacies. Mallinckrodt denies the remaining allegations in Paragraph 9.

10.      Mallinckrodt admits that there are dozens of specialty pharmacy distributors in the United States and that "CuraScript SD" is one such distributor, which Express Scripts entities have owned since 2004.  Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10; therefore these allegations are denied.

11.      Mallinckrodt admits that, in 2007, Questcor adopted a new distribution model for Acthar and selected Priority Health Distribution, Inc. d/b/a  CuraScript SD as its only distributor of Acthar to specialty pharmacies outside of the U.S. Department of Veterans Affairs' Prime Vendor Program.  Mallinckrodt denies the remaining allegations in Paragraph 11.

12.      Mallinckrodt admits that in 2007 Questcor entered into a written agreement with Priority Health Distribution, Inc. d/b/a CuraScript SD to be a distributor of Acthar to specialty pharmacies.  Mallinckrodt denies the remaining allegations in Paragraph 12.

13.      Mallinckrodt denies the allegations in Paragraph 13.

14.      Mallinckrodt denies the allegations in Paragraph 14.

15.      Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15; therefore these allegations are denied.

16.      Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegation in the first sentence of Paragraph 16; therefore the allegation is denied. Mallinckrodt denies the remaining allegations in Paragraph 16.

17.     Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 17; therefore these allegations are denied.

18.     Mallinckrodt admits that Plaintiff brings this action against Defendants. Mallinckrodt denies that Plaintiff is entitled to any relief in this matter, and it denies the remaining allegations in Paragraph 18.

19.     Paragraph 19 states legal conclusions to which no response is required. To the extent a response is required, Mallinckrodt denies the allegations.

20.     Paragraph 20 states legal conclusions to which no response is required. To the extent a response is required, Mallinckrodt denies the allegations.

21.     Paragraph 21 states legal conclusions to which no response is required. To the extent a response is required, Mallinckrodt denies the allegations.

22.     Paragraph 22 states legal conclusions to which no response is required. To the extent a response is required, Mallinckrodt denies the allegations.

23.     Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23; therefore these allegations are denied.

24.     Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24; therefore these allegations are denied.

25.     Mallinckrodt denies the allegations in the last sentence of Paragraph 25. Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 25; therefore these allegations are denied.

26.     Mallinckrodt admits that Mallinckrodt plc acquired Questcor on August 14, 2014 in a transaction valued at approximately $5.8 billion.  Mallinckrodt further admits that Questcor

purchased the rights to Acthar in 2001 for $100,000. Mallinckrodt denies the remaining allegations in Paragraph 26.

27.     Mallinckrodt admits that in 2014 Questcor became a wholly-owned subsidiary of Mallinckrodt plc and that its name was initially changed to Mallinckrodt ARD Inc., and later its name and form was changed to Mallinckrodt ARD LLC. Mallinckrodt further admits that Mallinckrodt ARD Inc. was a California corporation. Mallinckrodt admits that these entities had or have had offices at 675 McDonnell Blvd., St. Louis, MO 63042, 26118 Research Road, Hayward, California 94545, and 1425 U.S. Route 206, Bedminster, New Jersey 07921. Except as expressly admitted, Mallinckrodt denies the allegations of Paragraph 27.

28.     Mallinckrodt denies the allegations of Paragraph 28.

29.     Mallinckrodt admits that Mallinckrodt plc is an Irish public limited company that has its principal executive office at 3 Lotus Park, The Causeway, Staines-Upon-Thames, Surrey TW18 3AG, United Kingdom.

30.     Paragraph 30 contains no factual allegations and does not require a response. Mallinckrodt denies that the actions of Mallinckrodt ARD LLC (f/k/a Mallinckrodt ARD Inc.) are also actions of Mallinckrodt plc. Mallinckrodt will interpret allegations regarding the conduct of Mallinckrodt as referring to that of Mallinckrodt ARD LLC (f/k/a Mallinckrodt ARD Inc.), except as expressly stated.

31.     Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 31; therefore these allegations are denied.

32.     Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 32; therefore these allegations are denied.

33.     Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 33; therefore these allegations are denied.

34.     Mallinckrodt admits that CuraScript SD is a specialty pharmacy distribution company and has been a distributor for Acthar since 2007.  Mallinckrodt admits that from 2007 to 2017 CuraScript SD was the only distributor of Acthar to specialty pharmacies outside of the U.S. Department of Veterans Affairs' Prime Vendor Program.  Mallinckrodt denies that CuraScript SD had exclusive distribution rights for Acthar.  Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 34; therefore these allegations are denied.

35.     Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 35; therefore these allegations are denied.

36.     Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 36; therefore these allegations are denied.

37.     Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 37; therefore these allegations are denied.

38.     Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 38; therefore these allegations are denied.

39.     Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 39; therefore these allegations are denied.

40.     Mallinckrodt admits that Plaintiff attached an example of the Acthar Start Form as an exhibit to the complaint. The form speaks for itself. Mallinckrodt denies the remaining allegations in Paragraph 40.  Mallinckrodt further admits that such start forms are common to the specialty pharmaceutical industry and are not unique to Acthar.

41.     Mallinckrodt admits that UBC provides support for patients who receive pharmaceutical prescriptions, including those for Acthar.  Mallinckrodt denies that Accredo is the only specialty pharmacy to which CuraScript distributes Acthar, denies that Express Scripts is the only pharmacy benefit manager for payors covering Acthar prescriptions for patients, and denies the remaining allegations in Paragraph 41.

42.     Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 42; therefore these allegations are denied.

43.     Mallinckrodt admits that Dr. Tumlin was an employee of the Southeast Renal Research Institute.  Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 43; therefore these allegations are denied.

44.     Mallinckrodt admits that Dr. Tumlin conducted speaker programs related to Acthar for Questcor and later Mallinckrodt.  Mallinckrodt denies the remaining allegations in Paragraph 44.

45.     Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 45; therefore these allegations are denied.

46.     Paragraph 46 contains no factual allegations and does not require a response.

47.     Paragraph 47 contains no factual allegations and does not require a response.

48.     Mallinckrodt denies the allegations in Paragraph 48.

49.     Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 49; therefore these allegations are denied.

50.     Mallinckrodt denies the allegations in Paragraph 50.

51.     Mallinckrodt denies the allegations in Paragraph 51.

52.     Mallinckrodt admits that Acthar was approved in 1952 by the U.S. Food and Drug Administration ("FDA") for alcoholism and radiation sickness. Mallinckrodt admits that Acthar is currently approved for nineteen indications. Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of whether Acthar was approved for poison ivy or radiation sickness in 1952.  Mallinckrodt denies the remaining allegations in Paragraph 52.

53.     Mallinckrodt admits that Acthar is an adrenocorticotropic hormone. Mallinckrodt admits that Hench and Kendall won the Nobel Prize in 1950 along with Tadeus Reichstein for "discoveries relating to the hormones of the adrenal cortex, their structure and biological effects." Mallinckrodt admits that Acthar was developed by Armour Pharmaceutical Company. Mallinckrodt admits that Plaintiff quotes language from *Armour & Co. v. Wilson & Co.*, 274 F.2d 143 (7th Cir. 1960). The opinion speaks for itself. Mallinckrodt denies the remaining allegations in Paragraph 53.

54.     Mallinckrodt admits that Plaintiff quotes language from *Armour & Co. v. Wilson & Co.*, 274 F.2d 143 (7th Cir. 1960). The opinion speaks for itself. Mallinckrodt denies the remaining allegations in Paragraph 54.

55.     Mallinckrodt admits that generic corticosteroids can be effective to treat certain indications for which Acthar was approved.  Mallinckrodt admits that the use of Acthar for the treatment of IS was approved by FDA in October 2010.  Mallinckrodt, whose parent did not acquire Questcor until 2014, is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 55; therefore these allegations are denied.

56.     Mallinckrodt admits that Questcor purchased certain rights to Acthar from Aventis in 2001 for, among other things, $100,000 in cash.  Mallinckrodt plc admits that it acquired

Questcor on August 14, 2014 in a transaction valued at approximately $5.8 billion. Mallinckrodt denies the remaining allegations in Paragraph 56.

57.     Mallinckrodt admits that IS is a serious condition for infants with a small annual patient population. Mallinckrodt also admits that an IS indication for Acthar was approved by the FDA and orphan drug status was granted. Mallinckrodt denies the remaining allegations in Paragraph 57.

58.     Mallinckrodt admits that Acthar is a specialty pharmaceutical distributed through specialty pharmacy distributors; Mallinckrodt denies the remaining allegations in Paragraph 58.

59.     Mallinckrodt admits that Questcor purchased rights to Acthar. Mallinckrodt, whose parent did not acquire Questcor until 2014, is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 59; therefore these allegations are denied.

60.     Mallinckrodt admits that on July 2, 2007, Questcor announced that effective August 1, 2007, Acthar would be available exclusively through specialty pharmacy distribution. Mallinckrodt denies the remaining allegations in Paragraph 60.

61.     Mallinckrodt denies the allegations in Paragraph 61.

62.     Mallinckrodt admits that it was sued by the City of Rockford in April 2017 under claims of violations of the antitrust laws.  Mallinckrodt further admits that Questcor implemented ASAP start forms in or around 2007, that such start forms are common to the specialty pharmaceutical industry, and that they are not unique to Acthar.  Mallinckrodt denies the remaining allegations in Paragraph 62.

63.     Mallinckrodt denies the allegations in Paragraph 63.

64.     Mallinckrodt denies the allegations in Paragraph 64.

65.     Mallinckrodt admits that Plaintiff quotes language from a February 23, 2005, Questcor press release.  The press release speaks for itself.  Mallinckrodt denies the allegations in Paragraph 65.

66.     Mallinckrodt admits that prior to joining Questcor, Mr. Fares held a number of positions including: CEO and President of FGC Pharma/Novella Neurosciences, Sr. Vice President, Commercial Operations of Xcel Pharmaceuticals, Vice President and General Manager at Elan Pharma, Vice President of Sales at Athena Neurosciences, and various sales and marketing positions at Merck.  Mallinckrodt denies the remaining allegations in Paragraph 66.

67.     Mallinckrodt admits that Mr. Fares resigned from his positions as President and CEO of Questcor in May 2007 and he was replaced by Don Bailey, a member of Questcor's Board of Directors, who was appointed Interim President.  Further answering, Mallinckrodt admits that in November 2007, Mr. Bailey was appointed President and CEO of Questcor.  Mallinckrodt denies the remaining allegations in Paragraph 67.

68.     Mallinckrodt admits that in 2007 Questcor changed its distribution method for Acthar and signed a distribution agreement with CuraScript. Mallinckrodt denies the remaining allegations in Paragraph 68.

69.     Mallinckrodt admits that Albert Hansen resigned as a member of the Board of Questcor on August 16, 2007.  Mallinckrodt denies the remaining allegations in Paragraph 69.

70.     Mallinckrodt admits that Mr. Liebler joined Questcor in August 2006 and resigned as Senior Vice President, Strategic Planning and Communications, in August 2007.  Mallinckrodt denies the remaining allegations in Paragraph 70.

71.     Mallinckrodt denies the allegations in Paragraph 71.

72.     Mallinckrodt denies the allegations in Paragraph 72.

73.     Mallinckrodt denies the allegations in Paragraph 73.

74.     Mallinckrodt denies the allegations in Paragraph 74.

75.     Mallinckrodt denies the allegations in Paragraph 75.

76.     Mallinckrodt denies the allegations in Paragraph 76.

77.     Mallinckrodt admits that Plaintiff quotes language from a New York Times article. The article speaks for itself.  Mallinckrodt denies the remaining allegations in Paragraph 77.

78.     Mallinckrodt admits that Questcor implemented the use of ASAP start forms in or around 2007 and that such start forms are commonly and lawfully used in the specialty pharmaceutical industry.   Mallinckrodt denies the remaining allegations in Paragraph 78.

79.     Mallinckrodt admits that a physician may complete an Acthar Start Form after the physician decides to write a prescription for Acthar.  Mallinckrodt admits that Exhibit A to the Complaint is an example of an Acthar Start Form.  Mallinckrodt further admits that UBC supports patients and providers by confirming insurance coverage for the prescription and providing patient support services, which is necessary to help the very sick patients to which Acthar has been prescribed navigate the complexities of payer approval for specialty medications like Acthar. Mallinckrodt denies the remaining allegations of Paragraph 79.

80.     Mallinckrodt admits that Plaintiff attaches an example of an Acthar Start Form as an exhibit to the complaint.  That document speaks for itself.  Mallinckrodt denies the remaining allegations in Paragraph 80.

81.     Mallinckrodt admits Exhibit A to the Complaint is an example of an Acthar Start Form. The Form speaks for itself.  Mallinckrodt denies the remaining allegations in Paragraph 81.

82.     Mallinckrodt admits Exhibit A to the Complaint is an example of an Acthar Start Form. The Form speaks for itself.  Mallinckrodt denies the remaining allegations in Paragraph 82.

83.     Mallinckrodt admits Exhibit A to the Complaint is an example of an Acthar Start Form. The Form speaks for itself.  Mallinckrodt denies the remaining allegations in Paragraph 83.

84.     Paragraph 84 contains no factual allegations and does not require a response.

85.     Admitted.

86.     Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 86; therefore these allegations are denied.

87.     Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth in all instances of the broad and absolute allegations in Paragraph 87; therefore these allegations are denied.

88.     Paragraph 88 contains no factual allegations and does not require a response.

89.     Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 89; therefore these allegations are denied.

90.     Mallinckrodt admits that Plaintiff quotes language from Express Scripts Holding Company Annual Report. The document speaks for itself. Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 90; therefore these allegations are denied.

91.     Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 91; therefore these allegations are denied.

92.     Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 92; therefore these allegations are denied.

93.     Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 93; therefore these allegations are denied.

94.     Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 94; therefore these allegations are denied.

95.     Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 95; therefore these allegations are denied.

96.     Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 96; therefore these allegations are denied.

97.     Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 97; therefore these allegations are denied.

98.     Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 98; therefore these allegations are denied.

99.     Mallinckrodt denies the allegations in Paragraph 99.

100.    Mallinckrodt admits that on July 2, 2007 it announced: "Beginning July 16, 2007, all new Acthar Gel prescriptions should be submitted to the Acthar Support & Access Program." Mallinckrodt further admits Plaintiff's quote from Exhibit A (Start Form) and Exhibit B (Questor Urgent Alert);   Exhibits A and B speak for themselves.   Mallinckrodt denies the remaining allegations in Paragraph 100.

101.    Mallinckrodt denies the allegations in Paragraph 101.

102.    Mallinckrodt denies the allegations in Paragraph 102.

103.    Mallinckrodt denies the allegations in Paragraph 103.

104.    Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 104; therefore these allegations are denied.

105.    Mallinckrodt denies the allegations in Paragraph 105.

106.    Mallinckrodt admits that Express Scripts sometimes has bargaining power in negotiations for specialty medications. Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the remaining general and absolute allegations in Paragraph 106; therefore these allegations are denied.

107.    Mallinckrodt denies the allegations in Paragraph 107.

108.    Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 108; therefore these allegations are denied.

109.    Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 109; therefore these allegations are denied.

110.    Mallinckrodt admits Plaintiff quotes from an Express Scripts announcement.  The announcement speaks for itself.  Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 110; therefore these allegations are denied.

111.    Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 111; therefore these allegations are denied.  Mallinckrodt denies the remaining allegations of Paragraph 111.

112.    Mallinckrodt admits that Questcor purchased certain rights to Acthar from Aventis for, among other things, $100,000 in cash, and that Mallinckrodt acquired Questcor in 2014. Mallinckrodt denies the remaining allegations in Paragraph 112.

113.    Mallinckrodt, which did not acquire Questcor until 2014, is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 113, and therefore, these allegations are denied.

114.    Mallinckrodt, which did not acquire Questcor until 2014, is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding Questcor's WAC or AWP for Acthar in September 2001.  Mallinckrodt denies that Questcor raised or otherwise set Acthar's AWP, and it denies the remaining allegations in Paragraph 114.

115.    Mallinckrodt, which did not acquire Questcor until 2014, admits that the Acthar WAC changed to $1,650.23 as of February 1, 2007.  Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations concerning Acthar's AWP; therefore these allegations are denied.

116.    Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations concerning Acthar's WAC for 2001 or 2002 and Acthar's AWP at any point in time; therefore these allegations are denied.  Further answering, Mallinckrodt states that the WAC entry for "April 1, 2003" occurred on "January 1, 2004."

117.    Mallinckrodt, which did not acquire Questcor until 2014, admits that in 2007 Questcor changed its distribution method for Acthar.  Mallinckrodt states that the change in Acthar's WAC referenced in Paragraph 117 occurred on November 1, 2007, not August 27, 2007.  Mallinckrodt denies that Questcor set Acthar's AWP.  Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations concerning the amount of Acthar's AWP, and therefore, it denies this allegation.  Mallinckrodt denies the remaining allegations in Paragraph 117.

118.    Mallinckrodt denies that Express Script "participated directly in the decision-making" with Questcor or later Mallinckrodt on WAC pricing for Acthar.  Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 118; therefore these allegations are denied.

119.     Mallinckrodt denies that any Express Scripts entities had "direct involvement" in Questcor or later Mallinckrodt decisions regarding pricing for Acthar.  Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 119; therefore these allegations are denied.

120.     Mallinckrodt admits that Questcor did not change its WAC for Acthar between November 2, 2007 and December 31, 2010.  Mallinckrodt further admits that Questcor raised its WAC for Acthar to $24,432.00 on January 1, 2011, $25,654.00 on June 1, 2011, and $27,320.00 on December 27, 2011.  Mallinckrodt admits that FDA approved IS for treatment of IS in October 2010.  Except as expressly admitted, Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 120; therefore these allegations are denied.

121.     Mallinckrodt denies the allegations in Paragraph 121.

122.     Mallinckrodt admits that Questcor unilaterally raised the WAC price for Acthar on May 15, 2012.  Mallinckrodt denies all remaining allegations in Paragraph 122.

123.     Mallinckrodt denies the allegations in Paragraph 123.

124.     Mallinckrodt denies the allegations in Paragraph 124.

125.     Mallinckrodt admits that Questcor intended a 5% unilateral price increase for Acthar in September 2012.  Mallinckrodt denies the remaining allegations in Paragraph 125; therefore these allegations are denied.

126.     Mallinckrodt denies the allegations in Paragraph 126.

127.     Mallinckrodt denies the allegations in Paragraph 127.

128.     Mallinckrodt admits that in September 2012 Aetna issued a Clinical Policy Bulletin related to Acthar.  Mallinckrodt denies the remaining allegations in Paragraph 128.

129.    Mallinckrodt admits that Questcor's stock price declined over the week after September 19, 2012.  Mallinckrodt denies the remaining allegations in Paragraph 129.

130.    Mallinckrodt admits that, on September 21, 2012, Questcor put an intended price increase on hold.  Mallinckrodt denies the remaining allegations in Paragraph 130.

131.    Mallinckrodt admits that on June 7, 2013, Questcor increased the WAC to $30,120. Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 131; therefore these allegations are denied.

132.    Mallinckrodt denies the allegations in Paragraph 132.

133.    Mallinckrodt admits that on January 16, 2014, Questcor increased the WAC to $31,626.  Mallinckrodt denies that Questcor raised the AWP for Acthar.  Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 133; therefore these allegations are denied.

134.    Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 134; therefore these allegations are denied.

135.    Mallinckrodt admits that, after it acquired Questcor in 2014, it considered increasing Acthar's WAC by 8.9%.  Mallinckrodt denies the remaining allegations in Paragraph 135.

136.    Mallinckrodt admits that it notified CuraScript on December 15, 2014 of an impending price increase.  Mallinckrodt denies the remaining allegations in Paragraph 136.

137.    Mallinckrodt admits the allegations in Paragraph 137.

138.    Mallinckrodt admits that Plaintiff is selectively quoting language from a December 12, 2014, email from Mr. O'Neill.  The full email speaks for itself.  Mallinckrodt further admits

that the WAC for Acthar increased 2% to $32,260 on December 16, 2014.  Mallinckrodt denies the remaining allegations in Paragraph 138.

139.    Mallinckrodt denies the allegations in Paragraph 139.

140.    Mallinckrodt admits that Questcor acquired rights to Synacthen in 2013. Mallinckrodt denies the remaining allegations in Paragraph 140.

141.    Mallinckrodt admits that Plaintiff is selectively quoting language from a December 12, 2014 email.  The full email speaks for itself.  Mallinckrodt denies the remaining allegations in Paragraph 141.

142.    Mallinckrodt admits that on December 16, 2014, the Acthar WAC was increased to $32,260 based on input and hands-on decision-making by several Mallinckrodt executives, including Trudeau, Hugh O'Neill, Todd Killian, and William Hilmer.  Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 142; therefore these allegations are denied.

143.    Mallinckrodt denies the allegations in Paragraph 143.

144.    Mallinckrodt denies the allegations in Paragraph 144.

145.    Mallinckrodt admits that since acquiring Acthar just five years ago, Mallinckrodt has invested nearly $600 million—not counting any sales and marketing investments—to modernize this important therapy for appropriate patients and to generate new clinical and health-economics data to help physicians and payers appropriately use the drug.  Mallinckrodt further admits that under its ownership, while the list price of Acthar has increased on average around 5%, not factoring in inflation, the net price of Acthar went down in 2019, as the result of offering significant increased discounts.  Mallinckrodt is without knowledge or information sufficient to

form a belief as to the truth of the allegations in Paragraph 145; therefore these allegations are denied.

146.    Mallinckrodt denies the allegations in Paragraph 146.

147.    Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 147; therefore these allegations are denied.

148.    Mallinckrodt denies the allegations in Paragraph 148.

149.    Mallinckrodt admits that since acquiring Acthar just five years ago, Mallinckrodt has invested nearly $600 million – not counting any sales and marketing investments – to modernize this important therapy for appropriate patients and to generate new clinical and health-economics data to help physicians and payers appropriately use the drug.  Mallinckrodt further admits that under its ownership, while the list price of Acthar has increased on average around 5%, not factoring in inflation, the net price of Acthar went down in 2019, as the result of offering significant increased discounts.  Mallinckrodt denies the allegations in Paragraph 149.

150.    Mallinckrodt denies the allegations in Paragraph 150.

151.    Mallinckrodt admits that Plaintiff selectively quotes language from a document attached as Exhibit C to the complaint. The document speaks for itself. Mallinckrodt denies the remaining allegations in Paragraph 151.

152.    Mallinckrodt denies the allegations in Paragraph 152.

153.    Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 153; therefore these allegations are denied.

154.    Mallinckrodt denies the allegations in Paragraph 154.

155.    Mallinckrodt denies the allegations in Paragraph 155.

156.     Mallinckrodt admits that Plaintiff selectively quotes language from *In re Pharm. Ind. Average Wholesale Price Litig.*, 491 F.Supp. 2d 20, 39-44 (D. Mass. 2007). The opinion speaks for itself. Mallinckrodt denies the remaining allegations in Paragraph 156.

157.     Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 157; therefore these allegations are denied.

158.     Mallinckrodt admits that Plaintiff selectively quotes language from a *New York Times* article.  The article speaks for itself.  Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 158; therefore these allegations are denied.

159.     Paragraph 159 contains no factual allegations requiring a response.  To the extent a response is required, Mallinckrodt denies the allegations in Paragraph 159.

160.     Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 160; therefore these allegations are denied.

161.     Mallinckrodt denies the allegations in Paragraph 161.

162.     Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 162; therefore these allegations are denied.

163.     Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 163; therefore these allegations are denied.

164.     Mallinckrodt admits Plaintiff purports to quote from a Citigroup Conference Call Transcript.  The transcript speaks for itself.  Mallinckrodt further admits that Express Scripts does not set the WAC for Acthar.  Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 164; therefore these allegations are denied.

165.    Mallinckrodt denies the allegations in Paragraph 165.

166.    Mallinckrodt denies the allegations in Paragraph 166.

167.    Mallinckrodt denies the allegations in Paragraph 167.

168.    Mallinckrodt denies the allegations in Paragraph 168.

169.    Mallinckrodt admits that Plaintiff purports to quote from a Citigroup Conference Call Transcript. The transcript speaks for itself. Mallinckrodt denies that Questcor, Mallinckrodt, CuraScript, or Express Scripts concealed CuraScript's role in distributing Acthar to specialty pharmacies. Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 169; therefore these allegations are denied.

170.    Mallinckrodt denies the allegations in Paragraph 170.

171.    Mallinckrodt denies the allegations in Paragraph 171.

172.    Mallinckrodt admits Plaintiff purports to quote from a Citigroup Conference Call Transcript. The transcript speaks for itself. Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 172; therefore these allegations are denied.

173.    Mallinckrodt denies the allegations in Paragraph 173.

174.    Mallinckrodt denies the allegations in Paragraph 174.

175.    Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 175; therefore these allegations are denied.

176.    Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 176; therefore these allegations are denied.

177.    Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 177; therefore these allegations are denied.

178.    Mallinckrodt, who did not acquire Questcor until 2014, is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 178; therefore these allegations are denied.

179.    The allegations in Paragraph 179 are not factual allegations; therefore no response is required.  To the extent a response is required, Mallinckrodt denies the allegations in Paragraph 179.

180.    Mallinckrodt admits that Plaintiff quotes language from various online sources. The sources speak for themselves.  Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 180, therefore these allegations are denied.

181.    Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 181, therefore these allegations are denied.

182.    Mallinckrodt denies the allegations of Paragraph 182.

183.    Mallinckrodt admits that Plaintiff quotes language from a CNBC interview.  The interview speaks for itself.  Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 183, therefore these allegations are denied.

184.    Mallinckrodt admits that Plaintiff quotes language from a CNBC interview.  The interview speaks for itself.  Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 184, therefore these allegations are denied.

185.    Mallinckrodt denies the allegations in Paragraph 185.

186.   Mallinckrodt denies the last sentence in Paragraph 186.  Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 186; therefore these allegations are denied.

187.   Mallinckrodt admits that Plaintiff purports to quote a Canaccord Genuity Growth Conference Transcript.  The transcript speaks for itself.  Mallinckrodt denies the remaining allegations in Paragraph 187.

188.   Mallinckrodt denies the allegations in Paragraph 188.

189.   Mallinckrodt admits that Novartis developed Synacthen Depot and that Synacthen Depot was approved for certain uses in some jurisdictions outside of the United States. Mallinckrodt further admits that Questcor took preliminary steps to explore a transaction with Novartis in 2009 and that the parties did not enter into a transaction at that time.  Mallinckrodt denies any and all remaining allegations or characterizations in Paragraph 189.

190.   Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 190; therefore these allegations are denied.

191.   Mallinckrodt admits that it acquired licensing rights to Synacthen Depot in the United States from Novartis. Mallinckrodt is without knowledge or information sufficient to admit or deny the value or number of bids for Synacthen made by any other bidders. Mallinckrodt denies any and all remaining allegations in Paragraph 191.

192.   Mallinckrodt denies the allegations in Paragraph 192.

193.   Mallinckrodt denies that it raised its WAC price for Acthar from $36,144 in 2013 to $43,658.40 in 2017.  Mallinckrodt is without knowledge or information sufficient to form a belief as to the AWP for Acthar as of any point it time, because it does not set the AWP; and on that basis the remaining allegations in Paragraph 193 are denied.

194.    Mallinckrodt denies the allegations in Paragraph 194.

195.    Mallinckrodt denies the allegations in Paragraph 195.

196.    Mallinckrodt is without knowledge or information sufficient to form a belief as to
the truth of the allegations in Paragraph 196; therefore these allegations are denied.

197.    Mallinckrodt denies the allegations in Paragraph 197.

198.    Mallinckrodt denies the allegations in Paragraph 198.

199.    Mallinckrodt is without knowledge or information sufficient to form a belief as to
the truth of the allegations in Paragraph 199; therefore these allegations are denied.

200.    Mallinckrodt admits that CNN published an article on April 30, 2019, about a
whistleblower lawsuit against the company. The article speaks for itself. Mallinckrodt denies the
remaining allegations in Paragraph 200.

201.    Mallinckrodt admits that the United States filed a Notice of Election to Intervene
on March 7, 2019.  Mallinckrodt admits that the government conducted its own investigation.
Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the
remaining allegations in the second sentence of Paragraph 201; therefore these allegations are
denied.

202.    Mallinckrodt admits that a complaint was filed in 2012 in *U.S. ex. Rel. Charles
Strunck and Lisa Pratta v. Mallinckrodt ARD, Inc., et al.* 2:12-cv-00175-BMS (E.D. Pa.).
Mallinckrodt admits that Ms. Pratta was hired by Questcor in September 2010 and her employment
ended in June 2017.  Mallinckrodt is without knowledge or information sufficient to form a belief
as to the truth of the remaining allegations in Paragraph 202; therefore these allegations are denied.

203.    Mallinckrodt admits that CNN published an article on April 30, 2019, about a
whistleblower lawsuit against the company, but otherwise denies the allegations in Paragraph 203.

204.    Mallinckrodt denies the allegations in Paragraph 204.

205.    Mallinckrodt denies the allegations in Paragraph 205.

206.    Mallinckrodt admits that Plaintiff purports to quote from a transcript of a May 7, 2019 Mallinckrodt earnings conference call and that Mallinckrodt has resolved the Relators' case. The full transcript speaks for itself.  Mallinckrodt denies the remaining allegations in Paragraph 206.

207.    Mallinckrodt admits that a complaint was filed by relators in *U.S. ex. Rel. Charles Strunck and Lisa Pratta v. Mallinckrodt ARD, Inc., et al.* 2:12-cv-00175-BMS (E.D. Pa.). The complaint speaks for itself. Mallinckrodt denies the allegations of "kickbacks" and "active concealment," and denies the remaining allegations in Paragraph 207.

208.    Mallinckrodt denies the allegations in Paragraph 208.

209.    Mallinckrodt denies the allegations in Paragraph 209.

210.    Mallinckrodt denies the allegations in Paragraph 210.

211.    Mallinckrodt admits that Acthar is currently approved for nineteen indications. Mallinckrodt denies the remaining allegations in Paragraph 211.

212.    Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 212; therefore these allegations are denied.  Mallinckrodt denies the allegations in the second sentence of Paragraph 212.

213.    Mallinckrodt denies the allegations in Paragraph 213.

214.    Mallinckrodt denies the allegations in Paragraph 214.

215.    Mallinckrodt denies the allegations in Paragraph 215.

216.    Mallinckrodt denies the allegations in Paragraph 216.

217.    Mallinckrodt denies the allegations in Paragraph 217.

218.     Mallinckrodt denies the allegations in Paragraph 218.

219.     Mallinckrodt denies the allegations in Paragraph 219.

220.     Mallinckrodt denies the allegations in Paragraph 220.

221.     Mallinckrodt denies the allegations in Paragraph 221.

222.     Mallinckrodt denies the allegations in Paragraph 222.

223.     Paragraph 223 states legal conclusions to which no response is required.  To the extent a response is required, Mallinckrodt denies the allegations.

224.     Paragraph 224 states legal conclusions to which no response is required.  To the extent a response is required, Mallinckrodt denies the allegations.

225.     Mallinckrodt denies the allegations of Paragraph 225.

226.     Mallinckrodt admits the FTC filed a complaint against Mallinckrodt on January 18, 2017.  The document speaks for itself.  Mallinckrodt denies the remaining allegations in Paragraph 226.  Mallinckrodt objects to the allegations in Paragraph 226 on the basis that they improperly refer to the FTC Complaint and settlement.

227.     Mallinckrodt admits that Plaintiff quotes the FTC Complaint. The complaint speaks for itself.  Mallinckrodt denies the remaining allegations in Paragraph 227.  Mallinckrodt objects to the allegations in Paragraph 227 on the basis that they improperly refer to the FTC Complaint and settlement.

228.     Mallinckrodt denies the allegations in Paragraph 228.

229.     Mallinckrodt denies the allegations in Paragraph 229.

230.     Mallinckrodt denies the allegations in Paragraph 230.

231.     Mallinckrodt admits that Plaintiff quotes a *New York Times* article.  The article speaks for itself.  Mallinckrodt denies the remaining allegations in Paragraph 231.

232.     Mallinckrodt admits that Plaintiff included the Comparison for a 5 Year Cumulative Total Return graph from Questcor's 10-K for the fiscal year ending December 31, 2007 in Paragraph 232.  The graph speaks for itself.  Mallinckrodt denies the remaining allegations in Paragraph 232.

233.     Paragraph 233 states legal conclusions to which no response is required.  To the extent a response is required, Mallinckrodt admits that FDA approval is required to market and sell pharmaceuticals to U.S. consumers and denies the remaining allegations.

234.     Paragraph 234 state legal conclusions to which no response is required.  To the extent a response is required, Mallinckrodt denies the allegations.

235.     Mallinckrodt admits that Plaintiff quotes a transcript of an April 7, 2014 SEC investor conference call.  The transcript speaks for itself.   Mallinckrodt denies that the allegations accurately reflect the transcript.   Mallinckrodt denies the remaining allegations in Paragraph 235.

236.     Mallinckrodt admits that Plaintiff quotes a SeekingAlpha.com article.  The article speaks for itself.  Mallinckrodt denies the remaining allegations in Paragraph 236.

237.     Mallinckrodt denies the allegations in Paragraph 237.

238.     Mallinckrodt denies the allegations in Paragraph 238.

239.     Mallinckrodt denies the allegations in Paragraph 239.

240.     Mallinckrodt denies the allegations in Paragraph 240.

241.     Mallinckrodt denies the allegations in Paragraph 241.

242.     Mallinckrodt admits that in 2007 it changed its distribution method for Acthar. Mallinckrodt admits that Questcor entered a distribution agreement with CuraScript, SD, which is a wholly-owned subsidiary of Express Scripts Inc.  Mallinckrodt denies the remaining allegations in Paragraph 242.

243.    Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 243; therefore these allegations are denied.

244.    Mallinckrodt denies the allegations in Paragraph 244.

245.    Mallinckrodt denies the allegations in Paragraph 245.

246.    Mallinckrodt denies the allegations in Paragraph 246.

247.    Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 247; therefore these allegations are denied.

248.    Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 248; therefore these allegations are denied.

249.    Mallinckrodt denies the allegations in Paragraph 249.

250.    Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 250; therefore these allegations are denied.

251.    Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 251; therefore these allegations are denied.

252.    Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 252; therefore these allegations are denied.

253.    Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 253; therefore these allegations are denied.

254.    Mallinckrodt denies the allegations in Paragraph 254.

255.    Mallinckrodt admits that Questcor signed an agreement with Novartis on June 11, 2013. The agreement speaks for itself. Mallinckrodt denies the remaining allegations in Paragraph 255.

256.    Mallinckrodt denies the allegations in Paragraph 256.

257.    Mallinckrodt admits that Retrophin filed a lawsuit against Questcor in January 2014. The complaint speaks for itself. Mallinckrodt denies the remaining allegations in Paragraph 257.

258.    Mallinckrodt admits that Plaintiff cites language for the Complaint in *Retrophin, Inc., v. Questcor Pharmaceuticals, Inc.* The complaint speaks for itself. Mallinckrodt denies the remaining allegations in Paragraph 258.

259.    Mallinckrodt objects to the allegations in Paragraph 259 on the basis that they improperly refer to the FTC Complaint and settlement. Mallinckrodt denies the allegations in Paragraph 259.

260.    Mallinckrodt objects to the allegations in Paragraph 260 on the basis that they improperly refer to the FTC Complaint and settlement. Mallinckrodt denies the allegations in Paragraph 260.

261.    Mallinckrodt objects to the allegations in Paragraph 261 on the basis that they improperly refer to the FTC Complaint and settlement. Mallinckrodt denies the allegations in Paragraph 261.

262.    Mallinckrodt denies the allegations in Paragraph 262.

263.    Mallinckrodt denies the allegations in Paragraph 263.

264.    Mallinckrodt admits that Plaintiff selectively quotes from a public statement. The statement speaks for itself. Mallinckrodt denies the remaining allegations of Paragraph 264.

265.    Mallinckrodt admits that it acquired Questcor on August 14, 2014, in a transaction valued at approximately $5.8 billion. Mallinckrodt denies the remaining allegations in Paragraph 265.

266.    Mallinckrodt denies the allegations in Paragraph 266.

267.     Mallinckrodt admits the FTC issued a press release on January 18, 2017.  The press release speaks for itself. Mallinckrodt denies the remaining allegations in Paragraph 267. Mallinckrodt objects to the allegations in Paragraph 267 on the basis that they improperly refer to the FTC Complaint and settlement.

268.     Mallinckrodt admits the FTC issued a press release on January 18, 2017.  The press release speaks for itself. Mallinckrodt denies the remaining allegations in Paragraph 268. Mallinckrodt objects to the allegations in Paragraph 268 on the basis that they improperly refer to the FTC Complaint and settlement.

269.     Mallinckrodt denies the allegations in Paragraph 269.

270.     Mallinckrodt denies the allegations in Paragraph 270.

271.     Mallinckrodt denies the allegations in Paragraph 271.

272.     Mallinckrodt admits that Plaintiff quotes language from a New York Times article. The article speaks for itself.  Mallinckrodt denies the remaining allegations in Paragraph 272.

273.     Mallinckrodt is without knowledge or information sufficient to form a belief as to the trust of the allegations in Paragraph 273, therefore these allegations are denied.

274.     Mallinckrodt, which did not acquire Questcor until 2014, is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 274; therefore these allegations are denied.

275.     Mallinckrodt denies any manipulation or unlawful actions toward Plaintiff. Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 275; therefore these allegations are denied.

276.    Mallinckrodt admits that Plaintiff quotes from a Canaccord Genuity Growth
Conference Transcript.  The transcript speaks for itself.  Mallinckrodt denies the remaining
allegations in Paragraph 276.

277.    Mallinckrodt denies the allegations in Paragraph 277.

278.    Mallinckrodt denies the allegations in Paragraph 278.

279.    Mallinckrodt is without knowledge or information sufficient to form a belief as to
the truth of the allegations in Paragraph 279; therefore these allegations are denied.

280.    Mallinckrodt denies the allegations in Paragraph 280.

281.    Mallinckrodt denies the allegations in Paragraph 281.

282.    Mallinckrodt denies the allegations in Paragraph 282.

283.    Mallinckrodt admits that Plaintiff quotes language from an OIG Advisory Opinion
No. 11-08.  The opinion speaks for itself.  Mallinckrodt denies the remaining allegations in
Paragraph 283.

284.    Mallinckrodt denies the allegations in Paragraph 284.

285.    Mallinckrodt is without knowledge or information sufficient to form a belief as to
the truth of the allegations in Paragraph 285; therefore these allegations are denied.

286.    Mallinckrodt denies the allegations in Paragraph 286.

287.    Mallinckrodt admits that Dr. Tumlin has conducted speaker programs and clinical
studies related to Acthar for Mallinckrodt.  Mallinckrodt denies the remaining allegations in
Paragraph 287.

288.    Mallinckrodt admits that Mallinckrodt provided funding for clinical studies for
which Dr. Tumlin served as the principal investigator.  Mallinckrodt is without knowledge or
information sufficient to form a belief as to the truth of the allegations in the last sentence of

Paragraph 288; therefore these allegations are denied. Mallinckrodt denies the remaining allegations in Paragraph 288.

289.    Mallinckrodt admits that Questcor provided funding for clinical studies for which Dr. Tumlin served as the principal investigator. Mallinckrodt, which did not acquire Questcor until 2014, is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 289; therefore these allegations are denied.

290.    Mallinckrodt, which did not acquire Questcor until 2014, is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 290; therefore these allegations are denied.

291.    Mallinckrodt denies the allegations in Paragraph 291.

292.    Mallinckrodt admits that Dr. Tumlin conducted speaker programs related to Acthar for Questcor and later Mallinckrodt. Mallinckrodt denies the remaining allegations in Paragraph 292.

293.    Mallinckrodt admits that Questcor provided funding for clinical studies for which Dr. Tumlin served as the principal investigator. Further answering, Mallinckrodt admits that Dr. Tumlin conducted speaker programs related to Acthar. Mallinckrodt denies the remaining allegations in Paragraph 293.

294.    Mallinckrodt admits that Questcor provided funding for a study titled "Safety and Efficacy of Acthar Gel on Albuminuria and Urinary Transforming Growth Factor Excretion in Type II Insulin Requiring Diabetics with Nephrotic Range Proteinuria: A Pilot Study" for which Dr. Tumlin served as the principal investigator.

295.    Mallinckrodt denies that it engaged in "white coat marketing" of Acthar. Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 295; therefore these allegations are denied.

296.    Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 296; therefore these allegations are denied.

297.    The allegations in Paragraph 297 are not factual allegations; therefore no response is required.

298.    Mallinckrodt admits that Dr. Tumlin has conducted speaker programs related to Acthar for Mallinckrodt.  Mallinckrodt denies the remaining allegations in Paragraph 298.

299.    Mallinckrodt admits that Plaintiff lists payment data from the website Propublica. That data speaks for itself.  Mallinckrodt denies the remaining allegations in Paragraph 299.

300.    Mallinckrodt denies that it or, before it, Questcor established any AWP for Acthar. Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 300; therefore these allegations are denied.

301.    Mallinckrodt denies the allegations in Paragraph 301.

302.    Mallinckrodt admits that Plaintiff lists payment data from the website Propublica. That data speaks for itself.  Mallinckrodt denies the remaining allegations in Paragraph 302.

303.    Mallinckrodt admits that Plaintiff lists payment data from the website Propublica. That data speaks for itself.  Mallinckrodt denies the remaining allegations in Paragraph 303.

304.    Mallinckrodt denies the allegations in Paragraph 304.

305.    Mallinckrodt denies the allegations in Paragraph 305.

306.    Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 306; therefore this allegation is denied.

307.    Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 307; therefore this allegation is denied.

308.    Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 308; therefore this allegation is denied.

309.    Paragraph 309 states legal conclusions to which no response is required.  To the extent a response is required, Mallinckrodt denies the allegations.

310.    Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 310; therefore these allegations are denied.

311.    Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 311; therefore these allegations are denied.

312.    Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 312; therefore these allegations are denied.

### RESPONSES TO "COUNT I ACUMENT v. ALL DEFENDANTS MONOPOLIZATION OF THE ACTH MARKET IN VIOLATION OF THE TTPA"

313.    Mallinckrodt hereby incorporates by reference the foregoing responses as if the same were set forth fully at length herein.

314.    Mallinckrodt admits that Plaintiff quotes a Tennessee statute.  The statute speaks for itself.  Mallinckrodt denies the remaining allegations in Paragraph 314.

315.    Mallinckrodt admits that Plaintiff quotes a Tennessee statute.  The statute speaks for itself.  Mallinckrodt denies the remaining allegations in Paragraph 315.

316.    Mallinckrodt admits that Plaintiff quotes a Tennessee statute.  The statute speaks for itself.  Mallinckrodt denies the remaining allegations in Paragraph 316.

317.    Paragraph 317 states legal conclusions to which no response is required.  To the extent a response is required, Mallinckrodt denies the allegations.

318.    Paragraph 318 states legal conclusions to which no response is required. To the extent a response is required, Mallinckrodt denies the allegations.

319.    Mallinckrodt denies that Acument's or any other payor's price for Acthar is or ever was inflated or set by agreement between Mallinckrodt and Express Scripts. Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 319; therefore these allegations are denied.

320.    Paragraph 320 states legal conclusions to which no response is required. To the extent a response is required, Mallinckrodt denies the allegations.

321.    Mallinckrodt denies the allegations in Paragraph 321.

322.    Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 322; therefore these allegations are denied.

323.    Paragraph 323 states legal conclusions to which no response is required. To the extent a response is required, Mallinckrodt denies the allegations.

324.    Mallinckrodt denies the allegations in Paragraph 324.

325.    Paragraph 325 states legal conclusions to which no response is required. To the extent a response is required, Mallinckrodt denies the allegations.

326.    Mallinckrodt denies the allegations in Paragraph 326.

327.    Paragraph 327 states legal conclusions to which no response is required. To the extent a response is required, Mallinckrodt denies the allegations.

328.    Mallinckrodt denies the allegations in Paragraph 328.

329.    Paragraph 329 states legal conclusions to which no response is required. To the extent a response is required, Mallinckrodt denies the allegations.

330.    Paragraph 330 states legal conclusions to which no response is required. To the extent a response is required, Mallinckrodt denies the allegations.

331.    Mallinckrodt denies the allegations in Paragraph 331.

332.    Mallinckrodt denies the allegations in Paragraph 332.

333.    Mallinckrodt admits that IS is a serious condition for infants with a small annual patient population and that Acthar is the standard of care for IS. Mallinckrodt also admits that an IS indication for Acthar was approved by the FDA and orphan drug status was granted. Mallinckrodt denies the remaining allegations in Paragraph 333.

334.    Mallinckrodt denies the allegations in Paragraph 334.

335.    Mallinckrodt admits that in 2007 it changed the distribution method for Acthar. Mallinckrodt denies the remaining allegations in Paragraph 335.

336.    Mallinckrodt admits that in 2007 it changed the distribution method for Acthar and that Plaintiff attached a July 2, 2017 Urgent Product Alert to the Complaint. Mallinckrodt denies the remaining allegations in Paragraph 336.

337.    Mallinckrodt denies the allegations in Paragraph 337.

338.    Mallinckrodt denies the allegations in Paragraph 338.

339.    Mallinckrodt denies the allegations in Paragraph 339.

340.    Mallinckrodt denies the allegations in Paragraph 340.

341.    Mallinckrodt denies the allegations in Paragraph 341.

342.    Mallinckrodt denies the allegations in Paragraph 342.

343.    Mallinckrodt denies the allegations in Paragraph 343.

344.    Mallinckrodt denies the allegations in Paragraph 344.

345.    Mallinckrodt denies the allegations in Paragraph 345.

346.    Mallinckrodt denies the allegations in Paragraph 346.

347.    Mallinckrodt denies the allegations in Paragraph 347.

348.    Mallinckrodt denies the allegations in Paragraph 348.

### RESPONSES TO "COUNT II ACUMENT v. ALL DEFENDANTS ANTI-COMPETITIVE AGREEMENTS IN UNREASONABLE RESTRAINT OF TRADE IN VIOLATION OF THE TTPA"

349.    Mallinckrodt hereby incorporates by reference the foregoing responses as if the same were set forth fully at length herein.

350.    Mallinckrodt denies the allegations in Paragraph 350.

351.    Paragraph 351 states a legal conclusion to which no response is required. To the extent a response is required, Mallinckrodt denies the allegation.

352.    Mallinckrodt denies the allegations in Paragraph 352.

353.    Mallinckrodt admits that Express Scripts is one of the larger PBMs in the United States. Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 353; therefore these allegations are denied.

354.    Mallinckrodt denies the general and absolute allegations in Paragraph 354.

355.    Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 355; therefore these allegations are denied.

356.    Mallinckrodt denies the general and absolute allegations in Paragraph 356.

357.    Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 357; therefore these allegations are denied.

358.    Mallinckrodt admits that Plaintiff quotes language from a New York Times article. The article speaks for itself. Mallinckrodt is without knowledge or information sufficient to form

a belief as to the truth of the remaining allegations in Paragraph 358; therefore these allegations are denied.

359.    Mallinckrodt denies the allegations in Paragraph 359.

360.    Mallinckrodt is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 360; therefore these allegations are denied.

361.    Mallinckrodt denies the allegations in Paragraph 361.

362.    Mallinckrodt denies the allegations in Paragraph 362.

363.    Mallinckrodt denies the allegations in Paragraph 363.

364.    Mallinckrodt denies the allegations in Paragraph 364.

365.    Mallinckrodt denies the allegations in Paragraph 365.

366.    Mallinckrodt denies the allegations in Paragraph 366.

## RESPONSES TO "COUNT III ACUMENT v. ALL DEFENDANTS VIOLATIONS OF THE TENNESSEE CONSUMER FRAUD LAWS"

367-80.   On February 21, 2020, the Court entered an Order dismissing Count III; therefore no response is required to the allegations in Paragraphs 367-380.

## RESPONSES TO "COUNT IV ACUMENT v. ALL DEFENDANTS UNJUST ENRICHMENT"

381.    Mallinckrodt hereby incorporates by reference the foregoing responses as if the same were set forth fully at length herein.

382.    Mallinckrodt admits that Plaintiff brings a count for unjust enrichment but denies that Mallinckrodt is liable for damages or any other relief prayed for in the Complaint.

383.    Mallinckrodt denies the allegations in Paragraph 383.

384.    Mallinckrodt denies the allegations in Paragraph 384.

385.    Mallinckrodt denies the allegations in Paragraph 385.

386.    Mallinckrodt denies the allegations in Paragraph 386.

387.    Mallinckrodt denies the allegations in Paragraph 387.

388.    Mallinckrodt denies the allegations in Paragraph 388.

RESPONSES TO "COUNT V ACUMENT v. ALL DEFENDANTS FRAUD"

389-98. On February 21, 2020, the Court entered an Order dismissing Count III; therefore no response is required to the allegations in Paragraphs 389-398.

RESPONSES TO "COUNT VI ACUMENT v. ALL DEFENDANTS CONSPIRACY TO DEFRAUD/CONCERTED ACTION"

399.    Mallinckrodt hereby incorporates by reference the foregoing responses as if the same were set forth fully at length herein.

400.    Mallinckrodt denies the allegations in Paragraph 400.

401.    Mallinckrodt denies the allegations in Paragraph 401, including all subparts.

402.    Mallinckrodt denies the allegations in Paragraph 402.

403.    Mallinckrodt denies the allegations in Paragraph 403.

404.    Mallinckrodt denies the allegations in Paragraph 404.

405.    Mallinckrodt denies the allegations in Paragraph 405.

Mallinckrodt further denies each and every allegation contained in the Complaint, including headings, charts, graphs, and figures, except as expressly admitted and qualified above.

No response is required to the unnumbered paragraphs after Paragraphs 348, 366, 388 and 405 and beginning with "Wherefore" or Plaintiff's "Prayer for Relief." To the extent that a response is required, Mallinckrodt denies that it is liable for damages or any other relief prayed for in the Complaint and that Plaintiff is entitled to any relief in this matter. Responding further, Mallinckrodt respectfully requests that this Court dismiss Plaintiff's

Complaint with prejudice and award attorneys' fees and costs and further relief as may be appropriate under the circumstances to Mallinckrodt.

Mallinckrodt admits that Plaintiff purports to demand a jury trial but denies that Plaintiff has stated claims that are triable.

### THIRD DEFENSE

Plaintiff's claims are barred, in whole or in part by, as untimely under the applicable statute of limitations.

### FOURTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff does not have standing to raise those claims.

### FIFTH DEFENSE

Plaintiff's recovery is barred because it is an indirect purchaser.

### SIXTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because and to the extent of, its failure to mitigate alleged damages, if any.

### SEVENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because Mallinckrodt is not liable for the acts of any other defendant.

### EIGHTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of laches, estoppel, waiver, unclean hands, and *in pari delicto*.

### NINTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff has not suffered an injury-in-fact actually or proximately caused by Mallinckrodt's alleged conduct.

## TENTH DEFENSE

Plaintiff's claims are barred because Mallinckrodt's alleged conduct did not unreasonably restrain trade and was lawful, justified, pro-competitive, privileged, and/or excused, constituted bona fide business practices, and was carried out in furtherance of Mallinckrodt's independent and legitimate business interests, and not for the purpose or effect of injuring competition.

## ELEVENTH DEFENSE

Plaintiff's claim for damages is barred because its alleged damages, if any, are too speculative and uncertain and remote, and because of the impossibility of ascertaining and allocating these alleged damages.

## TWELFTH DEFENSE

Plaintiff's claims are barred, in whole or in part to the extent that Plaintiff seeks damages that would constitute a duplicative recovery.

\* \* \* \* \*

Mallinckrodt has not knowingly and intentionally waived any applicable defenses, and it hereby reserves the right to assert and rely upon other defenses and affirmative defenses that become available or apparent as this matter proceeds.

By setting forth its defenses, Mallinckrodt does not assume the burden of proving any fact, issue, or element of a cause of action where such burden properly belongs to Plaintiff. Nothing herein is intended or shall be construed as an admission that any particular issue or subject matter is relevant to the Plaintiff's allegations.

Mallinckrodt reserves the right to amend or seek to amend its answer and/or its affirmative defenses.

Having now fully answered Plaintiff's Complaint, Mallinckrodt prays for the following relief:

(1)     Plaintiff's Complaint be dismissed with prejudice;

(2)     Plaintiff be forced to prove each and every element of all of their causes of action by the applicable burdens of proof and persuasion;

(3)     Grant Mallinckrodt an award of its costs and other relief pursuant to Rule 54; and

(4)     Grant Mallinckrodt all such other and further relief to which it may be entitled as a matter of law or equity.

Dated:  March 30, 2020                    Respectfully Submitted,

Daniel W. Van Horn (#18940)
Diana M. Comes (#30112)
Kathryn K. Van Namen (#31322)
**BUTLER SNOW LLP**
6075 Poplar Avenue, 5th Floor
Memphis, TN 38119
T: (901) 680-7200
F: (901) 680-7201
Danny.VanHorn@butlersnow.com
Diana.Comes@butlersnow.com
Kate.VanNamen@butlersnow.com

Matthew M. Wolf
Lauren S. Shores
Sonia K. Pfaffenroth
Adam Pergament
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Avenue, NW
Washington, DC 20001
(202) 942-5000
matthew.wolf@arnoldporter.com
laura.shores@arnoldporter.com
sonia.pfaffenroth@aronldporter.com
adam.pergament@arnoldporter.com
*Attorneys for Defendants Mallinckrodt ARD Inc. and Mallinckrodt plc*

## CERTIFICATE OF SERVICE

I, Daniel W. Van Horn, attorney for Defendant Mallinckrodt, certify that a true and correct copy of the foregoing Answer has been sent via the Court's electronic filing system and e-mail this 30th day of March 2020, to the following:

| | |
|---|---|
| Patrick M. Ardis, Esq.<br>Daniel V. Parish, Esq.<br>**WOLF ARDIS, P.C.**<br>5810 Summer Oaks Drive<br>Memphis, Tennessee 38134<br>pardis@wolfardis.com<br>dparish@wolfardis.com | Daniel B. Brown, Esq.<br>**TAYLOR ENGLISH DUMA, LLC**<br>1600 Parkwood Circle, SE<br>Suite 200<br>Atlanta, GA 30339<br>dbrown@taylorenglish.com |
| Donald E. Haviland, Jr., Esq.<br>William H. Platt II, Esq.<br>**HAVILAND HUGHES**<br>201 S. Maple Way, Suite 110<br>Ambler, PA 19002<br>haviland@havilandhuges.com<br>platt@havilandhuges.com<br><br>*Counsel for Plaintiff Acument Global Technologies, Inc.* | Kirk A. Caraway, Esq.<br>**ALLEN, SUMMERS, SIMPSON, LILLIE & GRESHAM, PLLC**<br>80 Monroe Avenue, Suite 650<br>Memphis, TN 38103<br>kcaraway@allensummers.com<br><br>*Counsel for Dr. Tumlin* |
| Nathan A. Bicks, Esq.<br>William D. Irvine, Jr., Esq.<br>Lani D. Lester, Esq.<br>**BURCH, PORTER & JOHNSON, PLLC**<br>130 North Court Avenue<br>Memphis, TN 38103<br>nbicks@bpjlaw.com<br>wirvine@bpjlaw.com<br>llester@bpjlaw.com<br><br>*Counsel for Express Scripts Defendants* | Eric C. Lyttle, Esq.<br>Michael D. Bonanno, Esq.<br>Ethan C. Glass, Esq.<br>Meghan A. McCaffrey, Esq.<br>Michael Lyle, Esq.<br>Quinn Emanuel Urquhart & Sullivan, LLP<br>1300 I Street, NW<br>Washington, D.C. 2005<br>ericlyttle@quinnemanuel.com<br><br>*Counsel for Express Scripts Defendants* |

Daniel W. Van Horn

52352922.v1

ELECTRONICALLY FILED
2020 Mar 30 5:35 PM
CLERK OF COURT

**IN THE CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE
FOR THE THIRTIETH JUDICIAL CIRCUIT AT MEMPHIS**

ACUMENT GLOBAL TECHNOLOGIES, INC.

                                           Plaintiff,

    v.

MALLINCKRODT ARD, INC., et al.,

                                       Defendants.

No. CT-2275-19

**THE EXPRESS SCRIPTS ENTITIES' ANSWER TO PLAINTIFF'S COMPLAINT**

1

Defendants Express Scripts Holding Co. ("ESHC"), Express Scripts, Inc. ("ESI"), CuraScript, Inc., ("CuraScript"), Priority Healthcare Distribution, Inc. d/b/a Curascript SD ("CuraScript SD"), Accredo Health Group, Inc. ("Accredo"), and United BioSource Corp. ("UBC") (collectively, the "Express Scripts Entities") answer Plaintiff's Civil Complaint ("Complaint") as follows, using numbered paragraphs that correspond to the numbered paragraphs of the Complaint. Except as otherwise expressly set forth below, the Express Scripts Entities deny knowledge or information sufficient to form a belief as to the truth or falsity of each and every allegation contained in the Complaint, and deny all allegations contained within the headings in the Complaint.  Any allegation, averment, contention, or statement in the Complaint not specifically and unequivocally admitted is denied.

1.      Denied, except that Plaintiff has filed a lawsuit naming Mallinckrodt ARD LLC ("Mallinckrodt"), the Express Scripts Entities, and James A. Tumlin, M.D. ("Dr. Tumlin") as defendants and that in approximately 2013, United BioSource Corporation became United BioSource LLC.

2.      Denied.

3.      The Express Scripts Entities lack knowledge or information sufficient to form a belief as to the truth of allegations contained in paragraph 3, except that the Express Scripts Entities admit that Mallinckrodt markets, distributes, and sells H.P. Acthar® Gel ("Acthar") and holds itself out as the manufacturer of Acthar, and that Acthar is the only adrenocorticotropic hormone ("ACTH") product sold in the United States.

4.      The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of allegations contained in paragraph 4.

1

5.      Paragraph 5 states legal conclusions to which no responsive pleading is necessary. To the extent a response is required, this paragraph is denied.  The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of allegations concerning Mallinckrodt.

6.      Paragraph 6 states legal conclusions to which no responsive pleading is necessary. To the extent a response is required, this paragraph is denied.

7.      Paragraph 7 states legal conclusions to which no responsive pleading is necessary. To the extent a response is required, this paragraph is denied, except the Express Scripts Entities admit that in 2007, CuraScript SD and Questcor Pharmaceuticals, Inc. ("Questcor") signed an agreement appointing CuraScript SD as Questcor's exclusive distributor of Acthar, but as of September 2017, CuraScript SD is no longer the exclusive distributor of Acthar.  The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the remaining allegations.

8.      Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of allegations concerning Mallinckrodt.

9.      Denied, except the Express Scripts Entities admit that Acthar is a specialty pharmaceutical, and that "specialty pharmacy distributors" distribute Acthar.

10.      Denied, except the Express Scripts Entities admit that ESHC acquired CuraScript, Inc. in 2004, and that ESHC acquired Priority Healthcare Corporation in 2005 and combined it with CuraScript, Inc. (collectively, "CuraScript").

11.      The Express Scripts Entities deny the allegations in paragraph 11 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

2

12.     Paragraph 12 states legal conclusions to which no responsive pleading is necessary. To the extent a response is required, this paragraph is denied, except the Express Scripts Entities admit that in 2007, CuraScript SD and Questcor signed an agreement appointing CuraScript SD as Questcor's exclusive distributor of Acthar, but as of September 2017, CuraScript SD is no longer the exclusive distributor of Acthar.  The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the remaining allegations.

13.     Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of allegations concerning Mallinckrodt.

14.     Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of allegations concerning Mallinckrodt.

15.     Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of allegations concerning Acument Global Technologies, Inc. ("Acument").

16.     Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of allegations concerning Acument, Mallinckrodt, and Dr. Tumlin.

17.     Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of allegations concerning Acument.

18.     Paragraph 18 states legal conclusions to which no responsive pleading is necessary. To the extent a response is required, this paragraph is denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of allegations concerning Acument.

19.     Paragraph 19 states legal conclusions to which no responsive pleading is necessary. To the extent a response is required, this paragraph is denied.

20.     Paragraph 20 states legal conclusions to which no responsive pleading is necessary. To the extent a response is required, this paragraph is denied.

21.     Paragraph 21 states legal conclusions to which no responsive pleading is necessary. To the extent a response is required, this paragraph is denied.

22.     Paragraph 22 states legal conclusions to which no responsive pleading is necessary. To the extent a response is required, this paragraph is denied.

23.     The Express Scripts Entities deny the allegations in paragraph 23 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

24.     The Express Scripts Entities deny the allegations in paragraph 24 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

25.     Paragraph 25 states legal conclusions to which no responsive pleading is necessary. To the extent a response is required, this paragraph is denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of allegations concerning Acument.  The Express Scripts Entities deny that Plaintiff has incurred a financial harm due to the conduct of the Express Scripts Entities.

26.     The Express Scripts Entities deny the allegations in paragraph 26 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

27.     The Express Scripts Entities deny the allegations in paragraph 27 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

28.     The Express Scripts Entities deny the allegations in paragraph 28 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

29.     The Express Scripts Entities deny the allegations in paragraph 29 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

30.     The Express Scripts Entities deny the allegations in paragraph 30 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein, except that the Express Scripts Entities admit that the Plaintiff states it refers to Mallinckrodt plc and Mallinckrodt ARD collectively as "Mallinckrodt" in the Complaint.

31.     The Express Scripts Entities deny the allegations in paragraph 31, except that ESI and ESHC are Delaware Corporations with their offices located at 1 Express Way, Saint Louis, Missouri 63121.  The Express Scripts Entities also admit that Plaintiff states it refers to Express Scripts, Inc. and Express Scripts Holding Co. collectively as "Express Scripts" in the Complaint.

32.     The Express Scripts Entities deny the allegations in paragraph 32, except that ESHC acquired Priority HealthCare Corporation in October 2005 and combined it with CuraScript, Inc. The Express Scripts Entities also admit that Priority Healthcare Corporation has done business as Priority Healthcare Corporation d/b/a CuraScript SD Specialty Distribution and is a Florida corporation with offices at 255 Technology Park, Lake Mary, Florida.

33.     The Express Scripts Entities deny the allegations in paragraph 33, except admit that acquired Priority HealthCare Corporation in October 2005 and combined it with CuraScript, Inc, and that the combined entity became a specialty pharmacy and distribution company with more than $3 billion in annual revenue.  The Express Scripts Entities also admit that Plaintiff states it refers to Priority Healthcare Corp., Priority Healthcare Distribution Inc., and CuraScript SD collectively as "CuraScript" in the Complaint.

34.     The Express Scripts Entities deny the allegations in paragraph 34, except admit that CuraScript SD's corporate headquarters are located at 255 Technology Park, Lake Mary, Florida

32746, and that in 2007, CuraScript and Questcor signed an agreement appointing CuraScript SD as Questcor's exclusive distributor of Acthar, but as of September 2017, CuraScript SD is no longer the exclusive distributor of Acthar.  The Express Scripts Entities also admit that the Plaintiff cites to the Acthar Start Form attached as Exhibit A to Plaintiff's Complaint, which states: "I may revoke (withdraw) this authorization at any time by mailing a letter to Acthar Support and Access, 255 Technology Park, Lake Mary, Florida 32746."

35.    The Express Scripts Entities deny the allegations in paragraph 35, except admit that in 2007, CuraScript and Questcor signed an agreement appointing CuraScript SD as Questcor's exclusive distributor of Acthar, but as of September 2017, CuraScript SD is no longer the exclusive distributor of Acthar.

36.    The Express Scripts Entities deny the allegations in paragraph 36, except admit that Accredo Health Group, Inc. is a wholly owned indirect subsidiary of Medco Health Solutions, Inc., which is a wholly owned subsidiary of Express Scripts Holding Company.

37.    The Express Scripts Entities admit the allegations in paragraph 37.

38.    The Express Scripts Entities deny the allegations in paragraph 38, except admit that United BioSource LLC is a wholly owned subsidiary of United BioSource Holdings, Inc., a private held corporation; that the interests of United BioSource Holdings, Inc. are held by and through various privately held intermediary entities, which are ultimately owned by private investment funds sponsored by and/or affiliated with Avista Capital Partners and individuals associated with Avista Capital Partners; that "United BioSource Corporation" became "United BioSource LLC" ("UBC") in approximately; and that ESI announced that it sold UBC to Avista Capital Partners on November 27, 2017.

39.    The Express Scripts entities admit the allegations in paragraph 39.

6

40.     The Express Scripts Entities deny the allegations in paragraph 40, except admit that Plaintiff cites to the Acthar Start Form attached as Exhibit A to Plaintiff's Complaint, a document that speaks for itself.  That document refers to "Mallinckrodt ARD Inc., the distributor of Acthar ('Mallinckrodt'), and its agents, authorized designees, and contractors, including Mallinckrodt reimbursement support personnel and United BioSource Corporation ('UBC') . . . ."

41.     The Express Scripts Entities deny the allegations in paragraph 41, except admit that UBC performed customer service and reimbursement support for Acthar, that CuraScript provided specialty distribution services for Acthar, that Accredo provided specialty pharmacy services for Acthar, and that Express Scripts provided pharmacy benefit management services for Acthar.

42.     The Express Scripts Entities deny the allegations in paragraph 42 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

43.     The Express Scripts Entities deny the allegations in paragraph 43 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

44.     The Express Scripts Entities deny the allegations in paragraph 44 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

45.     The Express Scripts Entities deny the allegations in paragraph 45 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

46.     The Express Scripts Entities admit that Plaintiff states it refers to ESI, ESHC, CuraScript, Accredo, and UBC collectively as "Express Scripts" in the Complaint.

47.     The Express Scripts Entities admit that Plaintiff states it refers Mallinckrodt and Express Scripts collectively as "Defendants" in the Complaint.

48.     Paragraph 48 states legal conclusions to which no responsive pleading is necessary. To the extent a response is required, this paragraph is denied.

49.     The Express Scripts Entities deny the allegations in paragraph 49 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

50.     The Express Scripts Entities deny the allegations in paragraph 50 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

51.     The Express Scripts Entities deny the allegations in paragraph 51.

52.     The Express Scripts Entities deny the allegations in paragraph 52 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

53.     The Express Scripts Entities deny the allegations in paragraph 53 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein, except admit that Plaintiff purports to quote from the decision, *Armour & Co. v. Wilson & Co.*, 274 F.2d 143 (7th Cir. 1960), which speaks for itself.

54.     The Express Scripts Entities deny the allegations in paragraph 54 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein, except admit that Plaintiff purports to quote from the decision, *Armour & Co. v. Wilson & Co.*, 274 F.2d 143 (7th Cir. 1960), which speaks for itself.

55.     The Express Scripts Entities deny the allegations in paragraph 55 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

56.     The Express Scripts Entities deny the allegations in paragraph 56 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

57.     The Express Scripts Entities deny the allegations in paragraph 57 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein, except admit that the FDA approved infantile spasms as an indication for Acthar and orphan drug status was granted.

58.     The Express Scripts Entities deny the allegations in paragraph 58, except admit that Acthar is a specialty pharmaceutical.

59.     The Express Scripts Entities deny the allegations in paragraph 59 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

60.     The Express Scripts Entities deny the allegations in paragraph 60, except admit that Plaintiff purports to quote from the July 2, 2017 Questcor Pharmaceutical Product Alert attached as Exhibit B to Plaintiff's Complaint, a document that speaks for itself.

61.     The Express Scripts Entities deny the allegations in paragraph 61.

62.     The Express Scripts Entities deny the allegations in paragraph 62, except admit that the City of Rockford has filed a lawsuit against Mallinckrodt and others in the United States District Court for the Northern District of Illinois.

63.     Denied, except the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of allegations concerning Mallinckrodt.

64.     Denied, except the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of allegations concerning Mallinckrodt.

65.     Denied, except the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of allegations concerning Mallinckrodt.

66.     Denied, except the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of allegations concerning Mallinckrodt.

67.     Denied, except the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of allegations concerning Mallinckrodt.

68.     The Express Scripts Entities deny the allegations in paragraph 68, except admit that in 2007, CuraScript SD and Questcor signed an agreement appointing CuraScript SD as Questcor's

exclusive distributor of Acthar, but as of September 2017, CuraScript SD is no longer the exclusive distributor of Acthar.

69.     Denied, except the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of allegations concerning Mallinckrodt.

70.     Denied, except the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of allegations concerning Mallinckrodt.

71.     Denied, except the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of allegations concerning Mallinckrodt.

72.     Denied, except the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of allegations concerning Mallinckrodt.

73.     Denied, except the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of allegations concerning Mallinckrodt.

74.     Denied, except the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of allegations concerning Mallinckrodt.

75.     Denied, except the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of allegations concerning Mallinckrodt.

76.     Denied, except the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of allegations concerning Mallinckrodt.

77.     Denied, except the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of allegations concerning Mallinckrodt.

78.     Denied, except that the Express Scripts Entities admit that UBC provides customer service and reimbursement support for Acthar and is the operator of the Acthar Support and Access Program ("ASAP").

79.     Denied, except that the Express Scripts Entities admit that UBC performs customer service and reimbursement support for Acthar and is the operator of ASAP, and that Plaintiff cites to the Acthar Start Form attached as Exhibit A to Plaintiff's Complaint, a document that speaks for itself.

80.     Denied, except that the Express Scripts Entities admit that Plaintiff cites to the Acthar Start Form attached as Exhibit A to Plaintiff's Complaint, a document that speaks for itself.

81.     Denied, except that the Express Scripts Entities admit that Plaintiff cites to the Acthar Start Form attached as Exhibit A to Plaintiff's Complaint, a document that speaks for itself.

82.     Denied, except that the Express Scripts Entities admit that Plaintiff cites to the Acthar Start Form attached as Exhibit A to Plaintiff's Complaint, a document that speaks for itself.

83.     Denied, except that the Express Scripts Entities admit that Plaintiff cites to the Acthar Start Form attached as Exhibit A to Plaintiff's Complaint, a document that speaks for itself.

84.     Denied.

85.     Denied, except that the Express Scripts Entities admit that ESHC and ESI are in the business of pharmacy benefit management, helping health benefit providers improve access to prescription drugs.

86.     Denied, except that the Express Scripts Entities admit that ESHC and ESI are in the business of pharmacy benefit management, helping health benefit providers improve access to prescription drugs.

87.     Denied, except that the Express Scripts Entities admit that ESHC and ESI are in the business of pharmacy benefit management, helping health benefit providers improve access to prescription drugs.

11

88.     Denied, except that the Express Scripts Entities admit that ESHC and ESI are in the business of pharmacy benefit management, helping health benefit providers improve access to prescription drugs.

89.     Denied, except that the Express Scripts Entities admit that ESHC and ESI are in the business of pharmacy benefit management, helping health benefit providers improve access to prescription drugs.

90.     Denied, except that the Express Scripts Entities admit that ESHC and ESI are in the business of pharmacy benefit management, helping health benefit providers improve access to prescription drugs, and that Plaintiff purports to quote from the ESHC Annual Report on Form 10-K for the Fiscal Year Ending December 31, 2012, a document that speaks for itself.

91.     Denied, except that the Express Scripts Entities admit that ESHC and ESI, together with their subsidiaries, provide integrated specialty services including pharmacy benefit management, specialty distribution, and specialty pharmacy, and that in the first sentence of paragraph 91, Plaintiff purports to quote from the Corporate Overview page on CuraScript SD's website, which speaks for itself.

92.     Denied, except that the Express Scripts Entities admit that Plaintiff purports to quote from a page on UBC's website that states: "Because UBC provides comprehensive patient access and engagement services, we are uniquely qualified to integrate our industry-leading services into a Patient Access Center, or a 'hub' that serves as a centralized point of contact for your patients, caregivers and prescribers. Our Patient Access Centers held patients navigate complex therapeutic journeys by providing patient-centric, high-touch care."

93.     Denied, except that the Express Scripts Entities admit that Plaintiff purports to quote from CuraScript SD's website, which speaks for itself.

12

94.     Denied, except that the Express Scripts Entities admit that Plaintiff purports to quote from CuraScript SD's website in the first and third sentences of paragraph 94, which speaks for itself.

95.     Denied, except that the Express Scripts Entities admit that Accredo provides specialty pharmacy services and admit that Plaintiff purports to quote a comment made by an unidentified UBC executive in the third sentence of paragraph 95, which speak for itself.

96.     The Express Scripts Entities admit the allegations in the first sentence of paragraph 96. The Express Scripts Entities deny the allegations in the second sentence of paragraph 96, except admit that Accredo's staff is comprised of a team of specialty-trained pharmacists, nurses, patient care advocates, social workers, and insurance coordinators.

97.     The Express Scripts Entities admit the allegations in paragraph 97.

98.     The Express Scripts Entities deny the allegations in paragraph 98 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

99.     Denied.

100.    The Express Scripts Entities deny the allegations in paragraph 100 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein, except admit that ESI provides pharmacy benefit management services; CuraScript SD provides specialty distribution services; UBC provides customer service and reimbursement support and is the operator of ASAP; and Accredo provides specialty pharmacy services. The Express Scripts Entities also admit that Plaintiff cites to and quotes from the July 2, 2007 Questcor Pharmaceutical Product Alert attached as Exhibit B to Plaintiff's Complaint, a document that speaks for itself. The Express Scripts Entities also admit that Plaintiff cites to the Acthar Start Form attached as Exhibit A to Plaintiff's Complaint, a document that speaks for itself.

13

101.    Denied.

102.    The Express Scripts Entities deny the allegations in paragraph 102 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

103.    The Express Scripts Entities deny the allegations in paragraph 103 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

104.    Denied, except that the Express Scripts Entities admit that Acument's health plan contracted with Medco and Express Scripts for a period of time.

105.    Denied.

106.    Denied.

107.    Denied.

108.    The Express Scripts Entities deny the allegations in paragraph 108 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

109.    Denied.

110.    Denied, except that the Express Scripts Entities admit that Plaintiff purports to quote from the cited article published on the website lab.express-scripts.com, which speaks for itself, and that ESI partnered with Imprimis Pharmaceuticals to give patients access to a low-cost alternative to Daraprim.

111.    The Express Scripts Entities deny the allegations in the second sentence of paragraph 111, and admit the allegations in the first sentence of paragraph 111.

112.    The Express Scripts Entities deny the allegations in paragraph 112 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

113.    The Express Scripts Entities deny the allegations in paragraph 113 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

14

114.     The Express Scripts Entities deny the allegations in paragraph 114 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

115.     The Express Scripts Entities deny the allegations in paragraph 115 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

116.     The Express Scripts Entities deny the allegations in paragraph 116 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

117.     The Express Scripts Entities deny the allegations in paragraph 117 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

118.     Denied, except that the Express Scripts Entities admit that Express Scripts released annual Drug Trend Reports, which speak for themselves.

119.     Paragraph 119 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

120.     The Express Scripts Entities deny the allegations in paragraph 120 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

121.     Denied.

122.     Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of allegations concerning Mallinckrodt.

123.     Paragraph 123 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

124.     Denied.

125.     Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of allegations concerning Mallinckrodt.

126.     Paragraph 126 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of allegations concerning Mallinckrodt.

127.     Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of allegations concerning Mallinckrodt.

128.     Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of allegations concerning Mallinckrodt.

129.     Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of allegations concerning Mallinckrodt.

130.     Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of allegations concerning Mallinckrodt.

131.     Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of allegations concerning Mallinckrodt.

132.     Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of allegations concerning Mallinckrodt.

133.     The Express Scripts Entities deny the allegations in paragraph 133 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

134.     The Express Scripts Entities deny the allegations in paragraph 134 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

135.     The Express Scripts Entities deny the allegations in paragraph 135 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

136.     The Express Scripts Entities deny the allegations in paragraph 136 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

137.     The Express Scripts Entities deny the allegations in paragraph 137 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

138.     The Express Scripts Entities deny the allegations in paragraph 138 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

139.     The Express Scripts Entities deny the allegations in paragraph 139 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

140.     The Express Scripts Entities deny the allegations in paragraph 140 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

141.     Paragraph 141 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of allegations concerning Mallinckrodt.

142.     The Express Scripts Entities deny the allegations in paragraph 142 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

143.     Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of allegations concerning Mallinckrodt.

144.     The Express Scripts Entities deny the allegations in paragraph 144 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

145.     The Express Scripts Entities deny the allegations in paragraph 145 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

146.     The Express Scripts Entities deny the allegations in paragraph 146 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein, admit that Plaintiff cites to Mallinckrodt's June 29, 2018 Press Release attached as Exhibit C to Plaintiff's Complaint, which speaks for itself.

147.     The Express Scripts Entities deny the allegations in paragraph 147 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

148.     The Express Scripts Entities deny the allegations in paragraph 148 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

149.     Paragraph 149 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of allegations concerning Mallinckrodt.

150.     Paragraph 150 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied, except because the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of allegations concerning Mallinckrodt.

151.     The Express Scripts Entities deny the allegations in paragraph 151 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein, except admit that Plaintiff purports to quote an excerpt from a document attached as Exhibit C to the Complaint, which speaks for itself.

152.     Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of allegations concerning Mallinckrodt.

153.    The Express Scripts Entities deny the allegations in paragraph 153 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

154.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of allegations concerning Mallinckrodt.

155.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of allegations concerning Mallinckrodt.

156.    Denied, except that the Express Scripts Entities admit that Plaintiff purports to quote excerpts from the court's opinion in *In re Pharm. Ind. Average Wholesale Price Litig.*, 491 F. Supp. 2d 20 (D. Mass. 2007), which speaks for itself.

157.    The Express Scripts Entities deny the allegations in paragraph 157 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

158.    Denied, except that the Express Scripts Entities admit that Plaintiff purports to quote an article published by the New York Times purportedly quoting Steve Miller, and that the article speaks for itself.

159.    Denied.

160.    The Express Scripts Entities deny the allegations in paragraph 160 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein. The Express Scripts Entities admit that their mission is to make prescription drugs safer and more affordable for their clients and their members and that they provide value to their client health plans by reducing waste and inefficiency in prescription drug spending.

161.    Paragraph 161 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied, except that the Express

Scripts Entities lack knowledge or information sufficient to form a belief about the truth of allegations concerning Mallinckrodt.

162.    Denied, except that the Express Scripts Entities admit that ESI provides pharmacy benefit management services; CuraScript SD provides specialty distribution services; UBC provides customer service and reimbursement support and is the operator of the ASAP; and Accredo provides specialty pharmacy services.

163.    Denied, except that the Express Scripts Entities admit that Plaintiff purports to quote a conference call transcript of a call hosted by Citigroup Healthcare Team, which speaks for itself.

164.    Denied, except that the Express Scripts Entities admit that Plaintiff purports to quote statements made by Mr. Neville from a conference call transcript of a call hosted by Citigroup Healthcare Team, which speaks for itself.

165.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of allegations concerning Mallinckrodt.

166.    Denied, except that the Express Scripts Entities admit that CuraScript SD provides specialty distribution services; UBC provides customer service and reimbursement support and is the operator of the ASAP; and Accredo provides specialty pharmacy services.

167.    Denied.

168.    Denied, except that the Express Scripts Entities admit that Plaintiff purports to quote statements made by Mr. Neville from a conference call transcript of a call hosted by Citigroup Healthcare Team, which speaks for itself, and that UBC provides customer service and reimbursement support and is the operator of the ASAP.

169.   Denied, except that the Express Scripts Entities admit that Plaintiff purports to quote statements made by Mr. Neville from a conference call transcript of a call hosted by Citigroup Healthcare Team, which speaks for itself, and that CuraScript SD provides specialty distribution services.

170.   Denied, except that the Express Scripts Entities admit that CuraScript SD provides specialty distribution services.

171.   Denied, except that the Express Scripts Entities admit that Plaintiff purports to quote statements made by Mr. Neville from a conference call transcript of a call hosted by Citigroup Healthcare Team, which speaks for itself.

172.   Denied, except that the Express Scripts Entities admit that Plaintiff purports to quote statements made by Dr. Miller from a conference call transcript of a call hosted by Citigroup Healthcare Team, which speaks for itself.

173.   Denied.

174.   The Express Scripts Entities deny the allegations in paragraph 174 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein, except admit that Express Scripts maintained Prior Authorization Policies for Acthar, which speak for themselves.

175.   Denied, except that the Express Scripts Entities admit that Plaintiff purports to quote what Plaintiff identifies as the 2018 Prior Authorization Policy and admit that Express Scripts maintained Prior Authorization Policies for Acthar, which speak for themselves.

176.   The Express Scripts Entities deny the allegations in paragraph 176 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

177.    Denied, except that the Express Scripts Entities admit that Plaintiff purports to quote what Plaintiff identifies as the 2018 Prior Authorization Policy and admit that Express Scripts maintained Prior Authorization Policies for Acthar, which speak for themselves.

178.    Denied, except that the Express Scripts Entities admit that Plaintiff purports to cite two articles authored by Dr. Tumlin, which speak for themselves.

179.    Paragraph 179 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

180.    Denied, except that the Express Scripts Entities admit that Plaintiff purports to quote statements made by Dr. Miller, which speak for themselves.

181.    Denied.

182.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of allegations concerning Mallinckrodt.

183.    Denied, except that the Express Scripts Entities admit that Plaintiff purports to quote statements made by Dr. Miller, which speak for themselves.

184.    Denied, except that the Express Scripts Entities admit that Plaintiff purports to quote statements made by Dr. Miller, which speak for themselves.

185.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of allegations concerning EpiPen.

186.    Denied, except that the Express Scripts Entities admit that Plaintiff purports to quote statements made by Dr. Miller, which speak for themselves.

187.    The Express Scripts Entities deny the allegations in paragraph 187 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

188.    The Express Scripts Entities deny the allegations in paragraph 188 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

189.    The Express Scripts Entities deny the allegations in paragraph 189 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

190.    The Express Scripts Entities deny the allegations in paragraph 190 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

191.    The Express Scripts Entities deny the allegations in paragraph 191 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

192.    The Express Scripts Entities deny the allegations in paragraph 192 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

193.    The Express Scripts Entities deny the allegations in paragraph 193 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

194.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of allegations concerning Mallinckrodt.

195.    Denied.

196.    The Express Scripts Entities deny the allegations in paragraph 196 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

197.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of allegations concerning Mallinckrodt.

198.    Denied.

199.    Denied, except that the Express Scripts Entities admit that Plaintiff purports to quote what Plaintiff identifies as the 2018 Prior Authorization Policy and admit that Express Scripts maintained Prior Authorization Policies for Acthar, which speak for themselves.

23

200.    The Express Scripts Entities deny the allegations in paragraph 200 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

201.    The Express Scripts Entities deny the allegations in paragraph 201 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

202.    The Express Scripts Entities deny the allegations in paragraph 202 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

203.    The Express Scripts Entities deny the allegations in paragraph 203 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

204.    The Express Scripts Entities deny the allegations in paragraph 204 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

205.    The Express Scripts Entities deny the allegations in paragraph 205 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

206.    The Express Scripts Entities deny the allegations in paragraph 206 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

207.    The Express Scripts Entities deny the allegations in paragraph 207 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

208.    The Express Scripts Entities deny the allegations in paragraph 208 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

209.    The Express Scripts Entities deny the allegations in paragraph 209 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

210.    The Express Scripts Entities deny the allegations in paragraph 210 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

211.    The Express Scripts Entities deny the allegations in paragraph 211 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

212.    The Express Scripts Entities deny the allegations in paragraph 212 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

213.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of allegations concerning Mallinckrodt.

214.    The Express Scripts Entities deny the allegations in paragraph 214 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

215.    The Express Scripts Entities deny the allegations in paragraph 215 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

216.    The Express Scripts Entities deny the allegations in paragraph 216 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

217.    The Express Scripts Entities deny the allegations in paragraph 217 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

218.    The Express Scripts Entities deny the allegations in paragraph 218 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

219.    The Express Scripts Entities deny the allegations in paragraph 219 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

220.    Paragraph 220 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 220 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

221.     Paragraph 221 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 221.

222.     Paragraph 222 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 222, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of allegations concerning Mallinckrodt

223.     Paragraph 223 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 223.

224.     Paragraph 224 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 224 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

225.     Paragraph 225 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 225.

226.     The Express Scripts Entities admit that Plaintiff cites to the FTC Complaint filed against Mallinckrodt on January 18, 2017 ("FTC Complaint"), attached as Exhibit D to Plaintiff's Complaint, which speaks for itself.  The Express Scripts' Entities further respond that none of the Express Scripts Entities were named in the FTC Complaint. The remainder of paragraph 226 states legal conclusions to which no responsive pleading is necessary.

227.    The Express Scripts Entities admit that Plaintiff purports to quote from the FTC Complaint attached as Exhibit D to Plaintiff's Complaint, which speaks for itself.

228.    The Express Scripts Entities deny the allegations in the second and third sentences of paragraph 228 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein. The first sentence of paragraph 228 states legal conclusions to which no responsive pleading is necessary. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 228 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

229.    The Express Scripts Entities deny the allegations in paragraph 229 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

230.    The Express Scripts Entities deny the allegations in paragraph 230 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

231.    The Express Scripts Entities deny the allegations in paragraph 231 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

232.    The Express Scripts Entities deny the allegations in paragraph 232 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

233.    Paragraph 233 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 233.

234.    The Express Scripts Entities admit the allegations in the second sentence of paragraph 234. The first sentence of paragraph 234 states legal conclusions to which no responsive pleading is necessary. To the extent a response is required, the Express Scripts Entities deny the allegations in the first sentence of paragraph 234.

235.     The Express Scripts Entities deny the allegations in paragraph 235 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein, except admit that Plaintiff purports to quote statements made by Mr. Bailey, which speak for themselves. Paragraph 235 also states legal conclusions to which no responsive pleading is necessary.

236.     The Express Scripts Entities deny the allegations in paragraph 236 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein, except admit that Plaintiff purports to quote statements made by Mr. Bailey, which speak for themselves.

237.     Paragraph 237 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 237.

238.     The Express Scripts Entities deny the allegations in paragraph 238 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

239.     The Express Scripts Entities deny the allegations in paragraph 239 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

240.     The Express Scripts Entities deny the allegations in paragraph 240 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

241.     The Express Scripts Entities deny the allegations in paragraph 241 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

242.     The Express Scripts Entities deny the allegations in paragraph 242 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein, except admit that in 2007, CuraScript SD and Questcor signed an agreement to have CuraScript

SD serve as Questcor's exclusive distributor of Acthar, but as of September 2017, CuraScript SD is no longer the exclusive distributor of Acthar, and that UBC provides customer service and reimbursement support and is the operator of the ASAP

243.    The Express Scripts Entities deny the allegations in paragraph 243 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

244.    The Express Scripts Entities deny the allegations in paragraph 244 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

245.    The Express Scripts Entities deny the allegations in paragraph 245 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

246.    The Express Scripts Entities deny the allegations in paragraph 246 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

247.    The Express Scripts Entities deny the allegations in paragraph 247 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

248.    The Express Scripts Entities deny the allegations in paragraph 248 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

249.    The Express Scripts Entities deny the allegations in paragraph 249 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

250.    The Express Scripts Entities deny the allegations in paragraph 250 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

251.    The Express Scripts Entities deny the allegations in paragraph 251 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

252.    The Express Scripts Entities deny the allegations in paragraph 252 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

253.     The Express Scripts Entities deny the allegations in paragraph 253 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

254.     The Express Scripts Entities deny the allegations in paragraph 254 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

255.     The Express Scripts Entities deny the allegations in paragraph 255 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

256.     The Express Scripts Entities deny the allegations in paragraph 256 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

257.     The Express Scripts Entities admit that Plaintiff cites to a complaint filed against Questcor in the United States District Court for the Central District of California on January 7, 2014 ("Retrophin Complaint"), attached as Exhibit E to Plaintiff's Complaint, which speaks for itself.  The Express Scripts Entities further respond that none of the Express Scripts Entities were named in the Retrophin Complaint,  The remainder of paragraph 257 states legal conclusions to which no responsive pleading is necessary.

258.     The Express Scripts Entities admit that Plaintiff purports to quote an excerpt from the Retrophin Complaint attached as Exhibit E to Plaintiff's Complaint, which speaks for itself.

259.     The Express Scripts Entities deny the allegations in paragraph 259 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

260.     The Express Scripts Entities deny the allegations in paragraph 260 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

261.     The Express Scripts Entities deny the allegations in paragraph 261 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

262.     Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of allegations concerning Mallinckrodt.

263.     The Express Scripts Entities deny the allegations in paragraph 263 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

264.     The Express Scripts Entities deny the allegations in paragraph 264 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein, except admit that Plaintiff purports to quote language from the document attached as Exhibit C to the Complaint, which speaks for itself.

265.     The Express Scripts Entities deny the allegations in paragraph 265 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

266.     Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of allegations concerning Mallinckrodt.

267.     The Express Scripts Entities admit that on January 18, 2017, the FTC made the announcement that Plaintiff alleges in paragraph 267.

268.     The Express Scripts Entities admit that Plaintiff purports to quote from the FTC's January 18, 2017 announcement, which speaks for itself.

269.     The Express Scripts Entities deny the allegations in paragraph 269 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

270.     The Express Scripts Entities deny the allegations in paragraph 270 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

271.     The Express Scripts Entities deny the allegations in paragraph 271 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein,

except admit that Plaintiff purports to quote language from the document attached as Exhibit C to the Complaint, which speaks for itself.

272.    The Express Scripts Entities deny the allegations in paragraph 272 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein, except admit that Plaintiff purports to quote statements made by Mr. Bailey, which speak for themselves.

273.    The Express Scripts Entities deny the allegations in paragraph 273 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

274.    The Express Scripts Entities deny the allegations in paragraph 274 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

275.    The Express Scripts Entities deny the allegations in paragraph 275 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

276.    The Express Scripts Entities deny the allegations in the first and second sentences of paragraph 276 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein, except admit that Plaintiff purports to quote statements made by Mr. Bailey, which speak for themselves. The Express Scripts Entities deny the allegations in the third sentence of paragraph 276.

277.    Denied.

278.    The first sentence of paragraph 278 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, the Express Scripts Entities deny the allegations in the first sentence of paragraph 278. The Express Scripts Entities deny the allegations in the second and third sentences of paragraph 278 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

279.    Denied, except the Express Scripts Entities admit that Express Scripts maintained Prior Authorization Policies for Acthar, which speak for themselves.

280.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of allegations concerning Mallinckrodt.

281.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of allegations concerning Mallinckrodt.

282.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of allegations concerning Mallinckrodt.

283.    The Express Scripts Entities deny the allegations in paragraph 283 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein, except admit that Plaintiff purports to quote from excerpts of the Office of Inspector General Advisory Opinion No. 11-08, a document that speaks for itself.

284.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of allegations concerning Mallinckrodt.

285.    The Express Scripts Entities deny the allegations in paragraph 285 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

286.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of allegations concerning Mallinckrodt.

287.    The Express Scripts Entities deny the allegations in paragraph 287 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

288.    The Express Scripts Entities deny the allegations in paragraph 288 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

289.     The Express Scripts Entities deny the allegations in paragraph 289 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

290.     The Express Scripts Entities deny the allegations in paragraph 290 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

291.     The Express Scripts Entities deny the allegations in paragraph 291 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

292.     The Express Scripts Entities deny the allegations in paragraph 292 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

293.     The Express Scripts Entities deny the allegations in paragraph 293 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

294.     The Express Scripts Entities deny the allegations in paragraph 294 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

295.     Denied, except the Express Scripts Entities admit that Express Scripts maintained Prior Authorization Policies for Acthar, which speak for themselves.

296.     The Express Scripts Entities deny the allegations in paragraph 296 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein, except admit that Express Scripts maintained Prior Authorization Policies for Acthar, which speak for themselves.

297.     Paragraph 297 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 297, except admit that the City of Rockford has filed a lawsuit against Mallinckrodt and others in the United States District Court for the Northern District of Illinois, and that Acument

34

Global Technologies, Inc., has filed a lawsuit against Mallinckrodt and others in Tennessee state court.

298.    The Express Scripts Entities deny the allegations in paragraph 298 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

299.    The Express Scripts Entities deny the allegations in paragraph 299 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

300.    The Express Scripts Entities deny the allegations in paragraph 300 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

301.    The Express Scripts Entities deny the allegations in paragraph 301 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

302.    The Express Scripts Entities deny the allegations in paragraph 302 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

303.    The Express Scripts Entities deny the allegations in paragraph 303 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

304.    The Express Scripts Entities deny the allegations in paragraph 304 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

305.    The Express Scripts Entities deny the allegations in paragraph 305 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

306.    The Express Scripts Entities deny the allegations in paragraph 306 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

307.    The Express Scripts Entities deny the allegations in paragraph 307 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

308.    The Express Scripts Entities deny the allegations in paragraph 308 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

309.    Paragraph 309 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 309.

310.    The Express Scripts Entities deny the allegations in paragraph 310 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

311.    The Express Scripts Entities deny the allegations in paragraph 311 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations therein.

312.    Paragraph 312 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 312.

313.    The Express Scripts Entities hereby incorporate each of the foregoing and following paragraphs as if fully set forth herein.

314.    Paragraph 314 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

315.    Paragraph 315 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

316.    Paragraph 316 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

317.    Paragraph 317 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

318.   Paragraph 318 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

319.   Paragraph 319 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

320.   Paragraph 320 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

321.   Paragraph 321 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

322.   Paragraph 322 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

323.   Paragraph 323 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

324.   Paragraph 324 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

325.   Paragraph 325 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

326.   Paragraph 326 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

327.   Paragraph 327 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

328.   Paragraph 328 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

329.    Paragraph 329 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

330.    Paragraph 330 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

331.    Paragraph 331 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

332.    Paragraph 332 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

333.    Paragraph 333 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

334.    Paragraph 334 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

335.    Paragraph 335 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

336.    Paragraph 336 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

337.    Paragraph 337 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

338.    Paragraph 338 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

339.    Paragraph 339 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

340.     Paragraph 340 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

341.     Paragraph 341 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

342.     Paragraph 342 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

343.     Paragraph 343 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

344.     Paragraph 344 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

345.     Paragraph 345 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

346.     Paragraph 346 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

347.     Paragraph 347 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

348.     Paragraph 348 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

Responding to the unnumbered WHEREFORE paragraph following paragraph 348, the Express Scripts Entities deny that they are liable to Acument for damages or any other relief demanded in the Complaint.

349.     The Express Scripts Entities hereby incorporate each of the foregoing and following paragraphs as if fully set forth herein.

350.    Paragraph 350 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

351.    Paragraph 351 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

352.    Paragraph 352 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

353.    Paragraph 353 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

354.    Paragraph 354 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

355.    Paragraph 355 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

356.    Paragraph 356 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

357.    Paragraph 357 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

358.    Paragraph 358 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied, except that the Express Scripts Entities admit that Plaintiff purports to quote statements made by Dr. Miller, which speak for themselves.

359.    Paragraph 359 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

360.     Paragraph 360 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

361.     Paragraph 361 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

362.     Paragraph 362 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

363.     Paragraph 363 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

364.     Paragraph 364 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

365.     Paragraph 365 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

366.     Paragraph 366 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

Responding to the unnumbered WHEREFORE paragraph following paragraph 366, the Express Scripts Entities deny that they are liable to Acument for damages or any other relief demanded in the Complaint.

367.     The Express Scripts Entities hereby incorporate each of the foregoing and following paragraphs as if fully set forth herein.

368.     Paragraph 368 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

369.     Paragraph 369 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

370.     Paragraph 370 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

371.     Paragraph 371 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

372.     Paragraph 372 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

373.     Paragraph 373 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

374.     Paragraph 374 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

375.     Paragraph 375 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

376.     Paragraph 376 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

377.     Paragraph 377 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

378.     Paragraph 378 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

379.     Paragraph 379 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

380.     Paragraph 380 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

Responding to the unnumbered WHEREFORE paragraph following paragraph 380, the Express Scripts Entities deny that they are liable to Acument for damages or any other relief demanded in the Complaint.

381.    The Express Scripts Entities hereby incorporate each of the foregoing and following paragraphs as if fully set forth herein.

382.    Paragraph 382 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

383.    Paragraph 383 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

384.    Paragraph 384 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

385.    Paragraph 385 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

386.    Paragraph 386 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

387.    Paragraph 387 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

388.    Paragraph 388 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

Responding to the unnumbered WHEREFORE paragraph following paragraph 388, the Express Scripts Entities deny that they are liable to Acument for damages or any other relief demanded in the Complaint.

389.   The Express Scripts Entities hereby incorporate each of the foregoing and following paragraphs as if fully set forth herein.

390.   Paragraph 390 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

391.   Paragraph 391 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

392.   Paragraph 392 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

393.   Paragraph 393 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

394.   Paragraph 394 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

395.   Paragraph 395 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

396.   Paragraph 396 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

397.   Paragraph 397 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

398.   Paragraph 398 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

Responding to the unnumbered WHEREFORE paragraph following paragraph 398, the Express Scripts Entities deny that they are liable to Acument for damages or any other relief demanded in the Complaint.

399.    The Express Scripts Entities hereby incorporate each of the foregoing and following paragraphs as if fully set forth herein.

400.    Paragraph 400 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

401.    Paragraph 401 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

402.    Paragraph 402 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

403.    Paragraph 403 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

404.    Paragraph 404 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

405.    Paragraph 405 states legal conclusions to which no responsive pleading is necessary.  To the extent a response is required, this paragraph is denied.

Responding to the unnumbered WHEREFORE paragraph following paragraph 405, the Express Scripts Entities deny that they are liable to Acument for damages or any other relief demanded in the Complaint.

Prayer For Relief.  The Express Scripts Entities Deny that Plaintiff is entitled to any relief, including any of the relief set forth in the "Prayer for Relief" section of the Complaint.

## **AFFIRMATIVE DEFENSES**

The Express Scripts Entities state the following defenses to Plaintiff's claims.  By raising these defenses, the Express Scripts Entities do not assume any burden of proof that applicable law may place on other parties.

406.    Plaintiff fails to state a claim upon which relief may be granted.

407.    Plaintiff's claims are barred, in whole or in part, by the doctrines of waiver, laches, and estoppel.

408.    Plaintiff's claims are barred, in whole or in part, because it failed to mitigate its damages.

409.    Plaintiff's claims are barred, in whole or in part, by the applicable statute of limitations.

410.    Plaintiff's claims are barred because Plaintiff's damages, if any, resulted from the acts or omissions of parties over whom the Express Scripts Entities had no control.

411.    Plaintiff's claims are barred, in whole or in part, because any recovery from the Express Scripts Entities would result in Plaintiff's unjust enrichment.

412.    Plaintiff's claims are barred on the ground that, assuming arguendo that the Express Scripts Entities' alleged conduct had any potential competitive effect, its conduct is procompetitive, and the procompetitive effects of its conduct outweigh any possible anticompetitive effects.

413.    Plaintiff's claims are barred on the grounds that it has failed to allege a legally cognizable relevant market within which to assess the competitive effects of the Express Scripts Entities' challenged conduct.

414.    To the extent there is a finding of an illegal overcharge, Plaintiff's claims are barred, in whole or in part, because and to the extent that such overcharge was passed on to or absorbed by a third party.

415.    The economic loss doctrine bars Plaintiff from recovering under the negligent misrepresentation claim (Count V).

46

416.     Plaintiff's claims are barred, in whole or in part, by its failure to plead and prove fraud and reliance with specificity and clear and convincing evidence.

417.     Plaintiff's claims are barred, in whole or in part, because it lacks standing to assert the claims contained in the Complaint.

418.     The Express Entities expressly reserves the right to assert additional affirmative defenses based on facts uncovered during discovery.

Dated: March 30, 2020                    Respectfully Submitted,

_/s/_ _____

Nathan A. Bicks, Esq. (BPR #10903)
Lani D. Lester (BPR #35226)
William D. Irvine Jr. (BPR #35193)
BURCH, PORTER & JOHNSON, PLLC
130 North Court Avenue
Memphis, TN 38103
Tel: (901) 524-5000
Fax: (901) 524-5024
nbicks@bpjlaw.com
llester@bpjlaw.com
wirvine@bpjlaw.com

Michael J. Lyle, Esq. (*pro hac vice*)
Eric C. Lyttle, Esq. (*pro hac vice*)
Ethan C. Glass, Esq. (*pro hac vice*)
Meghan A. McCaffrey, Esq. (*pro hac vice*)
Michael D. Bonanno, Esq. (*pro hac vice*)
QUINN EMANUEL URQUHART &  SULLIVAN, LLP
1300 I Street NW, Suite 900
Washington, D.C. 20005-3314
Tel: (202) 538-8000
Fax: (202) 538-8100
mikelyle@quinnemanuel.com
ericlyttle@quinnemanuel.com
ethanglass@quinnemanuel.com
meghanmccaffrey@quinnemanuel.com
mikebonanno@quinnemanuel.com

***Attorneys for Defendants Express Scripts Holding Co.,
Express Scripts, Inc., CuraScript, Inc., Priority
Healthcare Corp., Priority Healthcare Distribution,
Inc., Accredo Health Group, Inc. and United BioSource
Corp.***

## CERTIFICATE OF SERVICE

I hereby certify that on March 30, 2020, a true and correct copy of the foregoing document

was electronically filed with the Clerk of Court using the court's electronic filing system, and that

I have sent a copy to the following counsel of record:

Daniel V. Parish
Patrick M. Ardis
Roy Harold Chockley
Wolf Ardis, P.C.
5810 Shelby Oaks Drive
Memphis, TN 38134
pardis@wolfardis.com
cchockley@wolfardis.com
dparish@wolfardis.com

Donald Haviland, Jr.
William H. Platt, II
Haviland Hughes
201 S. Maple Way, Suite 110
Ambler, PA 19002
haviland@havilandhughes.com
platt@havilandhughes.com
*Attorneys for Acumen Global Technologies, Inc.*

Daniel B. Brown (#010918)
Taylor English Duma, LLC
1600 Parkwood Circle, SE Suite 200
Atlanta, GA 30339
dbrown@taylorenglish.com
*Counsel for James A. Tumlin, M.D.*

Daniel W. Van Horn
Kathryn K. Van Namen
Diana M. Gomes
Butler Snow, LLP
6075 Poplar Avenue, 5th Floor
Memphis, TN 38119
Danny.VanHorn@butlersnow.com
Diana.Comes@butlersnow.com
Kate.VanNamen@butlersnow.com

Matthew M. Wolf
Lauren S. Shores
Sonia K. Pfaffenroth

49

Adam Pergament
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Avenue, NW
Washington, DC 20001
(202) 942-5000
Matthew.wolf@arnoldporter.com
Laura.shores@arnoldporter.com
Sonia.Pfaffenroth@arnoldporter.com
Adam.pergament@arnoldporter.com
*Attorneys for Mallinckrodt ARC Inc. and Mallinckrodt plc*

/s/
Lani D. Lester

ELECTRONICALLY FILED
2020 Oct 12 3:26 PM
CLERK OF COURT

## IN THE CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE
## FOR THE THIRTIETH JUDICIAL CIRCUIT AT MEMPHIS

| | |
|---|---|
| ACUMENT GLOBAL TECHNOLOGIES, INC., <br><br>             Plaintiff, <br><br> v. <br><br> MALLINCKRODT ARD INC., *et al.*, <br><br>            Defendants. | Docket No.: CT-2275-19 <br><br> Division:  VII |

## NOTICE OF SUGGESTION OF PENDENCY OF
## BANKRUPTCY AND AUTOMATIC STAY OF PROCEEDINGS

**PLEASE BE ADVISED** that on October 12, 2020, Mallinckrodt plc and its affiliated debtors (collectively, the "**Debtors**") [1] commenced bankruptcy cases in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532, *et seq.* (the "**Bankruptcy Code**").  The Debtors' chapter 11 cases (the "**Chapter 11 Cases**") are now pending before The Honorable John T. Dorsey, United States Bankruptcy Judge, and are being jointly administered for procedural purposes only under the caption *In re Mallinckrodt plc*, Case No. 20-12522.

**PLEASE BE FURTHER ADVISED** that pursuant to Section 362 of the Bankruptcy Code, as of the commencement of the Chapter 11 Cases, the above-captioned action has been automatically stayed as against the applicable Debtor-defendant(s).  Section 362 of the Bankruptcy Code provides, in part, that the filing of a petition to commence a chapter 11 case operates as a stay of "the commencement or continuation, including the issuance or employment of process, of a judicial,

---

[1]      A complete list of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at http://restructuring.primeclerk.com/Mallinckrodt. The Debtors' mailing address is 675 McDonnell Blvd., Hazelwood, Missouri 63042.

administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under [chapter 11], or to recover a claim against the debtor that arose before the commencement of the case under [chapter 11]" and "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the [bankruptcy] case. . . ."  11 U.S.C. §§ 362(a)(1) & (6).

**PLEASE BE FURTHER ADVISED** that additional information regarding the status of the Chapter 11 Cases may be obtained by reviewing the docket of the Chapter 11 Cases, available electronically at https://ecf.deb.uscourts.gov (PACER login and password required) or free of charge via the website maintained by the Debtors' proposed claims and noticing agent, Prime Clerk LLC, at http://restructuring.primeclerk.com/Mallinckrodt or by contacting the proposed bankruptcy counsel for the Debtors: (i) Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022, Attn: George Davis, George Klidonas, Andrew Sorkin, and Anupama Yerramalli (emails: george.davis@lw.com, george.klidonas@lw.com, andrew.sorkin@lw.com, and anu.yerramalli@lw.com.com); Latham & Watkins LLP, 355 South Grand Avenue, Suite 100, Los Angeles, California 90071, Attn: Jeffrey Bjork (email: jeff.bjork@lw.com); and Latham & Watkins LLP, 330 North Wabash Avenue, Suite 2800, Chicago, Illinois 60611, Attn: Jason Gott (email: jason.gott@lw.com); and (ii) Richards, Layton & Finger, P.A., 920 N. King Street, Wilmington, Delaware 19801 (Attn:  Mark D. Collins and Michael J. Merchant (emails: collins@rlf.com and merchant@rlf.com)).

Dated: October 12, 2020

Daniel W. Van Horn (#18940)
Diana M. Comes (#30112)
Kathryn K. Van Namen (#31322)
BUTLER SNOW LLP
6075 Poplar Avenue, 5th Floor
Memphis, Tennessee  38119
(901) 680-7200
Telefax:  (901) 680-7201
danny.vanhorn@butlersnow.com
diana.comes@butlersnow.com
kate.vannamen@butlersnow.com


Matt M. Wolf
Laura S. Shores
Sonia Kuester Pfaffenroth
Adam M. Pergament
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue
Washington, DC 20001
(202) 942-5000
matthew.wolf@arnoldporter.com
laura.shores@arnoldporter.com
sonia.pfaffenroth@arnoldporter.com
adam.pergament@arnoldporter.com


***Counsel for Defendants Mallinckrodt ARD LLC (formerly known as Mallinckrodt ARD Inc.) and Mallinckrodt plc***

## CERTIFICATE OF SERVICE

I, Daniel W. Van Horn, attorney for Defendants Mallinckrodt ARD LLC (f/k/a Mallinckrodt ARD Inc.) and Mallinckrodt plc, hereby certify that a true and correct copy of the foregoing Notice of Suggestion of Pendency of Bankruptcy and Automatic Stay of Proceedings has been sent via the Court's electronic filing system and e-mail this 12th Day of October, 2020, to the following:

Patrick M. Ardis
Daniel V. Parish
WOLF ARDIS, P.C.
5810 Summer Oaks Drive
Memphis, TN 38134
pardis@wolfardis.com
dparish@wolfardis.com

Donald E Haviland, Jr
William H. Platt, II
HAVILAND HUGHES
201 S. Maple Avenue
Suite 110
Ambler, PA 19002
215-609-4661
haviland@havilandhughes.com
platt@havilandhughes.com

*Counsel for Acument Global Technologies, Inc.*

Nathan A. Bricks
William D. Irvine, Jr.
Lani D. Lester
BURCH, PORTER & JOHNSON, PLLC
130 North Court Ave.
Memphis, TN 38103
nbicks@bpjlaw.com
wirvine@bpjlaw.com
llester@bpjlaw.com

Michael Lyle
Eric Lyttle
Ethan Glass

Meghan McCaffrey
Michael Bonanno
QUINN EMANUEL URQUHART & SULLIVAN LLP
1300 I Street NE, Suite 900
Washington, DC 20005
mikelyle@quinnemanuel.com
(202) 538-8166
ericlyttle@quinnemanuel.com
(202) 538-8162
ethanglass@quinnemanuel.com
(202) 538-8265
meghanmccaffrey@quinnemanuel.com
(202) 538-8177
mikebonanno@quinnemanuel.com
(202) 538-8225

***Counsel for Express Scripts Holding Company; Express Scripts, Inc.; Curascript, Inc. (d/b/a Curascript, SD); Priority Health Care Corp. and Priority Health Care Distribution, Inc. (d/b/a Curascript SD and Curascript Specialty Distribution SD, respectively); Accredo Health Group, Inc.; and United Biosource Corporation***

Daniel W. Van Horn

ELECTRONICALLY FILED
2020 Dec 08 10:28 AM
CLERK OF COURT

**IN THE CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE
FOR THE THIRTIETH JUDICIAL CIRCUIT AT MEMPHIS**

ACUMENT GLOBAL TECHNOLOGIES, INC.,

     Plaintiff,

v.

MALLINCKRODT ARD, INC., et al.,

     Defendants.

Docket No. CT-2275-19

Div. VII

**NOTICE OF SIGNED ORDER AND BENCH RULING
OF THE BANKRUPTCY COURT ENJOINING PROCEEDINGS**

Defendants Express Scripts Holding Co., Express Scripts, Inc., CuraScript, Inc. d/b/a CuraScript SP Specialty Pharmacy, Priority Healthcare Corp., Priority Healthcare Distribution, Inc. d/b/a CuraScript SD, Accredo Health Group, Inc., and United BioSource LLC f/k/a United BioSource Corp. (collectively, the "Express Scripts Entities") hereby give notice of an order from the U.S. Bankruptcy Court for the District of Delaware enjoining for 270 days the prosecution of Acthar-related litigation, including the above-captioned action against the Express Scripts Entities (*see* the December 4, 2020 signed order of Judge John T. Dorsey attached hereto as Exhibit A). *Mallinckrodt plc v. Connecticut*, No. 1:20-ap-50850 (Bankr. D. Del.), ECF No. 180.

Pursuant to paragraph 2 of the Bankruptcy Court's order, the preliminary injunction covers the law the instant matter (*see* suits identified in Exhibit 2 to Mallinckrodt's Amended Complaint, attached hereto as Exhibit B). The preliminary injunction from the Bankruptcy Court includes, without limitation: (i) the pursuit of discovery, including depositions, from Mallinckrodt or the Express Scripts Entities; (ii) the enforcement of any discovery order against Mallinckrodt or the Express Scripts Entities; and (iii) further motion practice. Ex. A ¶ 4. The Bankruptcy Court "retains jurisdiction over this Order and the relief granted herein." *Id.* ¶ 12.

1

Also, the Express Scripts Entities attach hereto as Exhibit C, a transcript of the November 23, 2020 hearing transcript containing Judge Dorsey's bench ruling granting Mallinckrodt's supplemental motion for preliminary injunction to extend the stay to the Express Scripts Entities and overruling the objection of the Acthar Plaintiffs. *See* Ex. 3 at 41–57.

Dated:  December 8, 2020                    Respectfully Submitted,

                                            s/*Lani D. Lester*

Nathan A. Bicks, Esq. (BPR #10903)
William D. Irvine Jr., Esq. (BPR #35193)
Lani D. Lester, Esq. (BPR #35226)
BURCH, PORTER & JOHNSON, PLLC
130 North Court Avenue
Memphis, TN 38103
Tel: (901) 524-5000
Fax: (901) 524-5024
nbicks@bpjlaw.com
wirvine@bpjlaw.com
llester@bpjlaw.com

Eric C. Lyttle, Esq. (*pro hac vice*)
Michael J. Lyle, Esq. (*pro hac vice*)
Ethan C. Glass, Esq. (*pro hac vice*)
Meghan A. McCaffrey, Esq. (*pro hac vice*)
Michael D. Bonanno, Esq. (*pro hac vice*)
J. Kirk Goza, Esq. (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
1300 I Street NW, Suite 900
Washington, D.C. 20005
Tel: (202) 538-8000
Fax: (202) 538-8100
mikelyle@quinnemanuel.com
ericlyttle@quinnemanuel.com
ethanglass@quinnemanuel.com
meghanmccaffrey@quinnemanuel.com
mikebonanno@quinnemanuel.com
kirkgoza@quinnemanuel.com

***Attorneys for Defendants Express Scripts Holding Co.,
Express Scripts, Inc., CuraScript, Inc. d/b/a
CuraScript SP Specialty Pharmacy, Priority
Healthcare Corp., Priority Healthcare Distribution,
Inc. d/b/a CuraScript SD Specialty Distribution,
Accredo Health Group, Inc., and United BioSource
LLC f/k/a United BioSource Corp.***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 8, 2020, a true and correct copy of the foregoing was

sent by email or U.S. mail to the following:

Daniel V. Parish, Esq.
Patrick M. Ardis, Esq.
WOLFF ARDIS, P.C.
5810 Shelby Oaks Drive
Memphis, TN 38134
dparish@wolffardis.com
pardis@wolffardis.com

Donald E. Haviland, Jr., Esq. (*pro hac vice*)
William H. Platt, II, Esq. (*pro hac vice*)
HAVILAND HUGHES
201 S. Maple Way, Suite 110
Ambler, PA 19002
haviland@havilandhughes.com
platt@havilandhughes.com

***Attorneys for Plaintiff Acument Global Technologies, Inc.***

Daniel B. Brown, Esq.
William D. "Bill" Dillon, Esq. (*pro hac vice*)
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, SE, Suite 200
Atlanta, GA 30339
dbrown@taylorenglish.com
bdillon@taylorenglish.com

Kirk. A. Caraway, Esq.
ALLEN, SUMMERS, SIMPSON, LILLIE &
GRESHAM
80 Monroe Avenue, Suite 650
Memphis, TN 38103
kcaraway@allensummers.com

***Attorneys for Defendant James A. Tumlin, M.D.***

Daniel W. Van Horn, Esq.
Diana M. Comes, Esq.
Kathryn K. Van Namen, Esq.
BUTLER SNOW LLP
6075 Poplar Avenue, Suite 500
Memphis, TN 38119
danny.vanhorn@butlersnow.com
diana.comes@butlersnow.com
kate.vannamen@butlersnow.com

Matthew M. Wolf, Esq. (*pro hac vice*)
Laura Shores, Esq. (*pro hac vice*)
Sonia Kuester Pfaffenroth, Esq. (*pro hac vice*)
Ryan Z. Watts, Esq. (*pro hac vice*)
ARNOLD & PORTER KAYE
SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001
matthew.wolf@arnoldporter.com
laura.shores@arnoldporter.com
sonia.pfaffenroth@arnoldporter.com
ryan.watts@arnoldporter.com

***Attorneys for Defendants Mallinckrodt ARD, Inc. and Mallinckrodt PLC***

/Lani D. Lester
Lani D. Lester

3

ELECTRONICALLY FILED
2020 Dec 08 10:28 AM
CLERK OF COURT

# EXHIBIT A

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------- x
In re:                                                  :   Chapter 11
                                                        :
MALLINCKRODT PLC, et al.,¹                              :
                                                        :   Case No. 20-12522
            Debtors.                                    :
                                                        :   (Jointly Administered)
                                                        :
                                                        :
------------------------------------------------------- x
                                                        :
MALLINCKRODT PLC, et al.,                               :
                                                        :
            Plaintiffs,                                 :   Adv. Pro. No. No. 20-50850
                                                        :
v.                                                      :   Re:  Adv. D.I. 16
                                                        :
State of Connecticut, et al.²                           :
                                                        :
            Defendants.                                 :
------------------------------------------------------- x
```

## ORDER GRANTING THE DEBTORS' SUPPLEMENTAL MOTION
## FOR INJUNCTIVE RELIEF PURSUANT TO 11 U.S.C. § 105

This matter coming before the Court on the above-captioned debtors' (the "**Debtors**")

Amended Complaint and *Supplemental Motion for Injunctive Relief Pursuant to 11 U.S.C. § 105*

---

¹   A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at http://restructuring.primeclerk.com/Mallinckrodt.  The Debtors' mailing address is 675 McDonnell Blvd., Hazelwood, Missouri 63042.

²   A complete list of the Defendants is set forth in the caption of the Debtors' *Amended Adversary Complaint for Injunctive Relief Pursuant to 11 U.S.C. § 105* [Adv. D.I. 15] ("**Amended Complaint**") and in Exhibits 1 and 2 thereto.

1

(the "**Supplemental Motion**"),[3] and the Court having reviewed the Amended Complaint and the Supplemental Motion, as well as (a) *Debtors' Corrected Opening Brief in Support of Supplemental Motion for Injunctive Relief Pursuant to 11 U.S.C. § 105* [Adv. D.I. 23] (the "**Opening Brief**"), (b) the *Declaration of M. Viola So in Support of Debtors' Motion for Injunctive Relief* [Adv. D.I. 18], (c) the *Declaration of Randall S. Eisenberg in Support of Debtors' Motion for Injunctive Relief Pursuant to U.S.C. § 105* [Adv. D.I. 4], (d) the *Brief in Support of Debtors' Motion for Temporary Restraining Order* [Adv. D.I. 20], (e) the *Corrected Declaration of Randall S. Eisenberg filed in Support of the Debtors' Motion for Temporary Restraining Order* [Adv. D.I. 25]; and (f) the *Declaration of Stephen A. Welch, Chief Transformation Officer, in Support of Chapter 11 Petitions and First Day Motions* [Main Case D.I. 128], and (e) additional testimonial and documentary evidence submitted in connection with the Motion, together with responses to the Supplemental Motion; and, having heard the arguments of counsel at the hearing on November 16, 2020, the Court ruled on the record at the omnibus hearing on November 23, 2020 and finds and concludes as follows:

A.      The plaintiffs in this adversary proceeding are the Debtors. The defendants in this adversary proceeding are the Defendants listed in the caption to the Amended Complaint (also listed in the "Plaintiff Name" column of Exhibits 1 and 2 to the Amended Complaint).

B.      The MDL Actions described in Exhibit 1 are already subject to an administrative/case management stay entered in the multi-district litigation proceeding in the

---

[3]   Capitalized terms not otherwise defined herein have the meanings given to them in the Supplemental Motion.

2

Northern District of Ohio before District Judge Daniel A. Polster under the caption *In re National Prescription Opiate Litigation*, Case No. 1:17-md-02804 (MDL No. 2804) (the "MDL").[4]

C.       The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue for this matter is proper in this district pursuant to 28 U.S.C. § 1409.

D.       In this Supplemental Motion, the Debtors seek, pursuant to section 105 of the Bankruptcy Code, an order prohibiting certain of the Defendants from continuing any of the actions listed on Exhibits 1 or 2 to the Amended Complaint or commencing any substantially similar action that could have been commenced prior to the Petition Date (collectively, the "**Additional Covered Actions**") against the third-party defendants listed on Exhibit 2 to the Amended Complaint (the "**Covered Non-Debtors**").

E.       As a single exception to the requested injunction, the Debtors seek to permit mediation to continue and conclude in one of the Additional Covered Actions, namely *Shenk v. Mallinckrodt plc*, No. 1:17-cv-00145-DLF (D.D.C.).  The Debtors and the plaintiff in the *Shenk* case have entered into a separate stipulation that will be filed on the docket in this proceeding.

F.       The Court concludes that the Debtors have demonstrated that a preliminary injunction is warranted in order to enjoin the continuation or commencement of the Additional Covered Actions for 270 days (the "**Injunction Period**").  The Debtors have demonstrated that, with the benefit of the requested injunction, they have a high likelihood of reorganizing successfully.  The Debtors have further demonstrated that they will suffer irreparable harm absent the requested injunction, because the commencement or continuation of any Additional Covered

---

[4]    *See* Case Management Order One [D.I. 232], *In re National Prescription Opiate Litigation*, Case No. 1:17-md-02804 (MDL No. 2804).

3

Action, including any MDL Action that subsequently becomes an Additional Covered Action, against the Covered Non-Debtors will substantially deplete estate resources, will substantially distract key officers and employees, and risk collateral estoppel and record taint against the Debtors, and will imperil the Debtors' proposed reorganization. The Debtors have further demonstrated that the harm to the applicable Defendants, if any, due to imposition of the injunction is minimal and is outweighed by the above-stated harm to the Debtors. Finally, the Debtors have demonstrated that an injunction is in the public interest because, among other reasons, it is necessary to accomplish the Debtors' reorganization, including the establishment of one or more trusts for claimants asserting opioid-related liability to be funded with, among other things, structured cash payments aggregating to $1.6 billion over time, warrants to acquire 19.99% of the reorganized Debtors' equity, and certain other assets of the Debtors.

G.      Accordingly, this Court finds it appropriate to enter an injunction as provided herein pursuant to section 105 of the Bankruptcy Code and Rule 7065 of the Bankruptcy Rules.

H.      The legal and factual bases set forth in the Amended Complaint, the Supplemental Motion, the Opening Brief, other supporting papers, and at the hearing establish just cause for the limited relief granted herein.

I.      The Defendants who are also Supporting Governmental Opioid Claimants (as defined in the Restructuring Support Agreement filed as Exhibit A to Docket No. 128 of Case No. 20-12522 (the "RSA")), the PEC or any designee of the PEC,[5] the governmental entities identified

---

[5]   The Plaintiffs' Executive Committee (the "**PEC**") means the court-appointed Co-Lead Counsel Paul J. Hanly Jr., Joseph Rice, and Paul T. Farrell, Jr. on behalf of the court-appointed sixteen member plaintiffs' executive committee and three co-liaison counsel in the MDL, solely in their capacities as such and not in any individual capacities. *See* Plaintiffs' Renewed Motion to Approve Co-Leads, Co-Liaisons, and Executive Committee, In re: National

in the *Verified Statement of the Multi-State Governmental Entities Group Pursuant to Rule 2019 of the Federal Rules of Civil Procedure* [Bankr. D.I. 337], the municipalities identified in the *Verified Statement of the Municipalities Pursuant to Rule 2019 of the Federal Rules of Civil Procedure* [Bankr. D.I. 489], and the following States and governmental entities that did not sign the RSA: the State of Delaware; the Commonwealth of Massachusetts; the State of Oklahoma; the State of Rhode Island; the State of West Virginia; the City of San Francisco, CA; the City of Chicago, IL; and the New York State Department of Financial Services (collectively, the "**Voluntarily Bound Parties**"),[6] have each consented and agreed to abide by the terms of this Order with respect to the Covered Actions listed on Exhibit 1 to the Amended Complaint, the Securities Actions listed on Exhibit 2 to the Amended Complaint, and any substantially similar action that could have been commenced prior to the Petition Date, solely as to the Covered Non-Debtors in the Securities Actions listed on Exhibit 2 to the Amended Complaint (together, the "**VBP Actions**"), without the need to have any order or injunction entered against them, *provided*, for the avoidance of doubt, that the Voluntarily Bound Parties, by virtue of such consent and agreement, shall not be bound or otherwise prejudiced by the conclusions and findings set forth in paragraphs F, G, and H of this Order.[7]

---

Prescription Opiate Litigation, Case No. 17-md-02804, MDL No. 2804, Jan. 4, 2018 (N.D. Ohio) (D.I. 34); *see also* Margin Order Granting D.I. No. 34 (D.I. 37).

[6]    The City of Marietta, a plaintiff in one of the Covered Actions listed on Exhibit 1 to the Amended Complaint (*City of Marietta v. Mallinckrodt ARD LLC*, Case No. 1:20-cv-00552 (N.D. Ga.), has also agreed to be a voluntarily bound party, but has entered into a separate stipulation with the Debtors, which will be filed on the docket in this proceeding.

[7]    If the Supplemental Motion is granted and this Order entered, the Debtors will prepare and file revised versions of Exhibits 1 and 2 to the Amended Complaint that will indicate which parties in the Covered Actions and the Additional Covered Actions have agreed to be voluntarily

J.      If any of the Voluntarily Bound Parties stop abiding by the terms of this Order with respect to the VBP Actions, the Debtors reserve their rights to seek further relief from the Court.

Based on these findings, the Court ORDERS that:

1.      The Debtors' request, pursuant to section 105 of the Bankruptcy Code, to enjoin for 270 days prosecution of all Additional Covered Actions against the Covered Non-Debtors, is granted, other than as it pertains to the Voluntarily Bound Parties.

2.      For clarity, the Additional Covered Actions include (i) every lawsuit identified on Exhibit 2 to the Amended Complaint as against the Covered Non-Debtors, (ii) every lawsuit identified on Exhibit 1 to the Amended Complaint to the extent any plaintiff seeks to amend to add any Covered Non-Debtor as a defendant, and (iii) any future actions by any plaintiff against any of the Covered Non-Debtors alleging substantially similar facts or causes of action that could have been commenced before the Petition Date.

3.      Additionally, any MDL Action that, during the Injunction Period, is the subject of any actions taken by counsel for any plaintiff or defendant in the MDL that seeks to start litigation against any Covered Non-Debtor in the MDL Action, or take action against any Covered Non-Debtor in the MDL Action, including but not limited to seeking to amend to name any Covered Non-Debtor as a defendant, shall automatically and immediately become an Additional Covered Action and enjoined during the Injunction Period as if it were an Additional Covered Action at the time of entry of this Order.  If any plaintiff in any MDL Action seeks to start a new litigation against any Covered Non-Debtor outside of the MDL related to opioids, that matter shall be subject to the mechanics described in paragraph 6, *infra*.

_____

bound parties, which are MDL Actions subject to the mechanics described in paragraph 2, *supra*, and which parties have not agreed to be bound in any way and thus are enjoined by this Order.

6

4.      Defendants, other than the Voluntarily Bound Parties, are prohibited and enjoined from commencing or continuing to prosecute any Additional Covered Actions against the Covered Non-Debtors for 270 days, pursuant to section 105 of the Bankruptcy Code.  The Voluntarily Bound Parties, as set forth in paragraph I above, consent and agree to abide by the terms of this Order, and agree not to commence or continue to prosecute any of the VBP Actions for 270 days from the date of entry of this Order.  This includes, without limitation: (i) the pursuit of discovery, including depositions, from the Debtors or the Covered Non-Debtors; (ii) the enforcement of any discovery order against the Debtors or the Covered Non-Debtors; and (iii) further motion practice, in the Additional Covered Actions; *provided that*, solely with respect to the Voluntarily Bound Parties, items (i) thru (iii) in this paragraph 4 shall apply only with respect to the prosecution of the Additional Covered Actions as against the Debtors.

5.      Nothing in this Order shall prevent the Debtors from seeking a further extension of the injunction provided for herein.

6.      Other than for MDL Actions, which are subject to the mechanics described above in paragraphs 3, *supra,* if during the pendency of the injunction provided for herein, any Voluntarily Bound Party commences an action that is substantially similar to any of the VBP Actions, then the Debtors may promptly serve the plaintiff or plaintiffs therein (the "**Applicable Plaintiff**") with a copy of the Amended Complaint, the Supplemental Motion, the Opening Brief and this Order (collectively, the "**Service Documents**").  The Debtors shall file a notice of such service on the docket promptly after service.  If the Applicable Plaintiff in such Additional Covered Action does not file and serve an objection within seven (7) days of service of the Service Documents, the Court shall determine without further proceedings whether such Additional Covered Action shall be enjoined pursuant to this Order.  If the Applicable Plaintiff files and serves

7

an objection, the Debtors shall have the right to file and serve a response to the objection within seven (7) days of service of such objection, after which the court shall determine without further proceedings whether such Additional Covered Action shall also be enjoined pursuant to this Order.

7.      Any party subject to this Order, and the Voluntarily Bound Parties by virtue of their consent and agreement as set forth herein, may seek relief from any of the provisions of this Order, including from the stay of further proceedings in this adversary proceeding, for cause shown.  This Order is without prejudice to the Debtors' right to argue that the Additional Covered Actions are subject to the automatic stay imposed by section 362(a) of the Bankruptcy Code.

8.      The deadline for the Defendants in this proceeding to respond to the Amended Complaint is extended through and including the last date of the Injunction Period.

9.      Pursuant to Rule 7065 of the Federal Rules of Bankruptcy Procedure, the Debtors are relieved from posting any security pursuant to Rule 65(c) of the Federal Rules of Civil Procedure.

10.     The Debtors shall serve a copy of this Order on counsel for the Defendants and the Voluntarily Bound Parties within five (5) business days from entry of this Order.

11.     If a plan of reorganization is confirmed within the Injunction Period, then this Order shall remain effective for the period through thirty days after the effective date of a confirmed plan of reorganization that is no longer subject to appeal or discretionary review.

12.     The Court retains jurisdiction over this Order and the relief granted herein.


**Dated: December 4th, 2020**
**Wilmington, Delaware**

JOHN T. DORSEY
UNITED STATES BANKRUPTCY JUDGE

8

RLF1 24362004v.1

ELECTRONICALLY FILED
2020 Dec 08 10:28 AM
CLERK OF COURT

# EXHIBIT B

**EXHIBIT 2**

List of Additional Covered Actions

[*See Attached*]

Case 20-50850   Doc 15-2   Filed 10/22/20   Page 2 of 5
Exhibit 2 to Amended Complaint

| Case Name/Caption | Court | Case Number | State/ Federal Case | Plaintiff Name | Debtor Defendants | Covered Non-Debtors |
|---|---|---|---|---|---|---|
| **Securities Actions** | | | | | | |
| Healthcor Offshore Master Fund, L.P. v. Mallinckrodt plc, et al. | D.D.C. | 1:20-cv-02834 | Federal | Healthcor Offshore Master Fund, L.P.; Healthcor Sanatate Offshore Master Fund, L.P.; Blackstone Alternative Multi-Strategy Fund; Blackstone Alternative Investment Fund PLC. | Mallinckrodt plc | Mark Trudeau (current President, Chief Executive Officer, Member of the Executive Committee, and Board Director); Matthew K. Harbaugh (former Vice President, Chief Financial Officer, and Member of the Executive Committee) |
| Strougo v. Mallinckrodt plc, et al. | D.N.J. | 3:20-cv-10100 | Federal | Canadian Elevator Industry Pension Trust Fund | Mallinckrodt plc | Mark Trudeau (current President, Chief Executive Officer, Member of the Executive Committee, and Board Director); Matthew K. Harbaugh (former Executive Vice President, Chief Financial Officer, President of the Specialty Generics business, and Member of the Executive Committee); George A. Kegler (former Interim Chief Financial Officer and Vice President of Finance); Bryan M. Reasons (current Executive Vice President, Chief Financial Officer, and Member of the Executive Committee); Kathleen A. Schaefer (current Senior Vice President and Corporate Controller; former Principal Accounting Officer); Angus C. Russell (current Board Director and Chairman; former member of the Audit Committee); Melvin D. Booth (former Board Director, Board Chairman, and Member of the Audit Committee); JoAnn A. Reed (current Board Director and Chairwoman of the Audit Committee); Paul R. Carter (current Board Director and Member of the Audit Committee); Mark J. Casey (current Executive Vice President, Chief Legal Officer, and Member of the Executive Committee) |

Case 20-50850    Doc 15-2    Filed 10/22/20    Page 3 of 5
Exhibit 2 to Amended Complaint

| Case Name/Caption | Court | Case Number | State/Federal Case | Plaintiff Name | Debtor Defendants | Covered Non-Debtors |
|---|---|---|---|---|---|---|
| Shenk v. Mallinckrodt plc | D.D.C. | 1:17-cv-00145 | Federal | State Teachers Retirement System of Ohio (lead plaintiff in consolidated case) | Mallinckrodt plc | Mark Trudeau (current President, Chief Executive Officer, Member of the Executive Committee, and Board Director); Matthew K. Harbaugh (former Vice President, Chief Financial Officer) |
| Solomon v. Mallinckrodt plc | D.D.C. | 1:17-cv-01827 | Federal | Robert J. Solomon, Natalie Amaya, and Gregory Schmidt | Mallinckrodt plc | Mark C. Trudeau (current President, Chief Executive Officer, and Board Director); Matthew K. Harbaugh (former Vice President, Chief Financial Officer); Kathleen A. Schaefer (current Vice President and Corporate Controller); Melvin D. Booth (former Board Chairman); David R. Carlucci (current Board Director and Chairman of the Human Resources and Compensation Committee); J. Martin Carroll (current Board Director); Diane H. Gulyas (former Board Director and Member of the Human Resources and Compensation Committee); Nancy S. Lurker (former Board Director and Member of the Human Resources and Compensation Committee); JoAnn A. Reed (current Board Director); Angus C. Russell (current Board Director); Virgil D. Thompson (former Board Director and Member of the Human Resources and Compensation Committee); Kneeland C. Youngblood (current Board Director); Joseph A. Zaccagnino (former Board Director) |

2

Case 20-50850   Doc 15-2   Filed 10/22/20   Page 4 of 5
Exhibit 2 to Amended Complaint

| Case Name/Caption | Court | Case Number | State/Federal Case | Plaintiff Name | Debtor Defendants | Covered Non-Debtors |
|---|---|---|---|---|---|---|
| Brandhorst v. Mallinckrodt plc | D.D.C. | 1:19-cv-02778 | Federal | Lynn Brandhorst | Mallinckrodt plc (nominal defendant) | Mark Trudeau (current President, Chief Executive Officer, Member of the Executive Committee, and Board Director); Matthew K. Harbaugh (former Vice President and Chief Financial Officer); Hugh O'Neill (current Executive Vice President, Chief Commercial and Operations Officer, and Member of the Executive Committee; former Executive Vice President and President of Autoimmune and Rare Diseases at the Mallinckrodt Pharmaceuticals division); Angus Russell (current Board Chairman, Board Director, and Member of the Audit Committee; former Member of the Portfolio Committee); David Carlucci (current Board Director and Chair of the Human Resources and Compensation Committee); J. Martin Carroll (current Board Director and Chair of the Governance and Compliance Committee); David Norton (current Board Director and Chair of the Human Resources and Compensation Committee); JoAnn Reed (current Board Director and Chair of the Audit Committee); Kneeland Youngblood (current Board Director and Member of the Governance and Compliance Committee) |
| *Acthar Actions* | | | | | | |
| City of Rockford v. Mallinckrodt ARD, Inc. | N.D. Ill. | 3:17-cv-50107 | Federal | City of Rockford | Mallinckrodt ARD, Inc. (fka Questcor Pharmaceuticals, Inc.); Mallinckrodt plc | Express Scripts Holding Company; Express Scripts, Inc.; Curascript, Inc. (dba Curascript, SD); Accredo Health Group, Inc.; United Biosource Corporation |

3

Case 20-50850    Doc 15-2    Filed 10/22/20    Page 5 of 5

Exhibit 2 to Amended Complaint

| Case Name/Caption | Court | Case Number | State/Federal Case | Plaintiff Name | Debtor Defendants | Covered Non-Debtors |
|---|---|---|---|---|---|---|
| MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt ARD, Inc. | N.D. Ill. | 3:20-cv-50056 | Federal | MSP Recovery Claims, Series LLC; MAO-MSO Recovery II, LLC, Series PMPI; MSPA Claims 1, LLC | Mallinckrodt ARD Inc.; Mallinckrodt plc | Express Scripts Holding Company; Express Scripts, Inc.; Curascript, Inc. (dba Curascript SP Specialty Pharmacy); United Biosource Corporation LLC |
| Steamfitters Local Union No. 420 v. Mallinckrodt ARD, LLC | E.D. Pa. | 2:19-cv-03047 | Federal | Steamfitters Local Union No. 420 | Mallinckrodt ARD, LLC (fka Mallinckrodt ARD, Inc. and Questcor Pharmaceuticals, Inc.) | United Biosource Corporation (nka United Biosource LLC) |
| Int'l Union of Operating Eng'rs Local 542 v. Mallinckrodt ARD, Inc. | Pa. Ct. Com. Pl. | 2018-14059 | State | Int'l Union of Operating Engineers Local 542 | Mallinckrodt ARD, Inc. (fka Questcor Pharmaceuticals, Inc.); Mallinckrodt plc | Express Scripts Holding Company; Express Scripts, Inc.; Curascript, Inc.; Curascript SD; Accredo Health Group, Inc.; United Biosource Corporation (nka United Biosource LLC) |
| Acument Global Techs. v. Mallinckrodt ARD, Inc. | Tenn. Cir. Ct. | CT-2275-19 | State | Acument Global Technologies, Inc. | Mallinckrodt ARD, Inc. (fka Questcor Pharmaceuticals, Inc.); Mallinckrodt plc | Express Script Holding Company; Express Scripts, Inc.; Curascript, Inc. (dba Curascript, SD); Priority Healthcare Corp. and Priority Healthcare Distribution, Inc. (dba Curascript SD and Curascript Specialty Distribution SD, respectively); Accredo Health Group, Inc.; United Biosource Corporation |

4

ELECTRONICALLY FILED
2020 Dec 08 10:28 AM
CLERK OF COURT

# EXHIBIT C

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| IN RE: | . | Chapter 11 |
|  | . |  |
|  | . | Case No. 20-50850(JTD) |
| MALLINCKRODT PLC, et al, | . |  |
|  | . |  |
|  | . | 824 Market Street |
|  | . | Wilmington, Delaware 19801 |
| Debtors. | . |  |
| . . . . . . . . . . . . . . . | . | Monday, November 23, 2020 |
| MALLINCKRODT PLC, et al, | . |  |
|  | . | Adv. Proc. No. 20-50850(JTD) |
| vs. | . |  |
|  | . |  |
| STATE OF CONNECTICUT, et al. | . |  |
| . . . . . . . . . . . . . . | | |

TRANSCRIPT OF TELEPHONIC HEARING
BEFORE THE HONORABLE JOHN T. DORSEY
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES VIA TELEPHONE:

For the Debtors:                    Mark D. Collins, Esq.
                                    Michael J. Merchant, Esq.
                                    Amanda R. Steele, Esq.
                                    Brendan J. Schlauch, Esq.
                                    Robert C. Maddox, Esq.
                                    Sarah Silveira, Esq.
                                    Robert J. Stearn, Esq.
                                    RICHARDS, LAYTON & FINGER, PA

(Appearances Continued)

Audio Operator:                     Electronically Recorded
                                    by CourtSmart and ECRO

Transcription Company:              Reliable
                                    1007 N. Orange Street
                                    Wilmington, Delaware 19801
                                    (302)654-8080
                                    Email: gmatthews@reliable-co.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

```
APPEARANCES VIA TELEPHONE:   (Continued)

For the Debtors:                George A. Davis, Esq.
                                Jeffrey E. Bjork, Esq.
                                Elizabeth Marks, Esq.
                                Jason B. Gott, Esq.
                                Christopher R. Harris, Esq.
                                Andrew Sorkin, Esq.
                                Anupama Yerramalli, Esq.
                                Hugh K. Murtagh, Esq.
                                Sara Brown, Esq.
                                Liza Burton, Esq.
                                Jason Moehlmann, Esq.
                                Viola So, Esq.
                                Kelsey Zottnick, Esq.
                                LATHAM & WATKINS, LLP

                                John Bueker, Esq.
                                Daniel Egan, Esq.
                                Andrew O'Connor, Esq.
                                Brien O'Conner, Esq.
                                ROPES & GRAY, LLP

                                Michael Cassel, Esq.
                                Emil Kleinhaus, Esq.
                                Philip Mindlin, Esq.
                                Neil M. Snyder, Esq.
                                WACHTEL, LIPTON, ROSEN & KATZ

                                George Klidonas, Esq.
                                KIRKLAND & ELLIS, LLP

For the U.S. Trustee:           Jane M. Leamy, Esq.
                                Richard Schepacarter, Esq.
                                OFFICE OF THE U.S. TRUSTEE

For the Official Committee
of Unsecured Creditors:         Jamie L. Edmonson, Esq.
                                James Lathrop, Esq.
                                Natalie D. Ramsey, Esq.
                                ROBINSON & COLE, LLP

                                Cathy Hershcopf, Esq.
                                Cullen D. Speckhart, Esq.
                                COOLEY, LLP

(Appearances Continued)
```

```
APPEARANCES VIA TELEPHONE:    (Continued)


For the Official Committee
of Opioid Claimants:          Justin Alberto, Esq.
                              Sarah A. Carnes, Esq.
                              Anthony De Leo, Esq.
                              Stuart Komrower, Esq.
                              Patrick J. Reilley, Esq.
                              Andrew Roth-Moore, Esq.
                              COLE SCHOTZ, PC

                              Sara Brauner, Esq.
                              Mitch Hurley, Esq.
                              Arik Preis, Esq.
                              AKIN, GUMP, STRAUSS, HAUER
                               & FELD, LLP

For Wilmington Saving
Fund Society:                 William Bowden, Esq.
                              Michael D. DeBaecke, Esq.
                              ASHBY & GEDDES

                              Sameer M. Alifarag, Esq.
                              PRYOR CASHMAN, LLP

Legal Representatives for
Future Claimants:             Robert S. Brady, Esq.
                              Jaime Chapman, Esq.
                              Edwin Harron, Esq.
                              Jaclyn C. Marasco, Esq.
                              James Patton, Esq.
                              Melanie K. Sharp, Esq.
                              YOUNG, CONAWAY, STARGATT
                               & TAYLOR, LLP

                              Roger Frankel, Esq.
                              Richard Wyron, Esq.
                              FRANKEL WYRON, LLP

For Acthar IP Unlimited
Company:                      Daniel Astin, Esq.
                              Walter W. Gouldsbury, III
                              CIARDI, CIARDI & ASTIN

                              Don Haviland, Esq.
                              HAVILAND HUGHES, LLC



(Appearances Continued)
```

```
APPEARANCES VIA TELEPHONE:    (Continued)


For Deerfield Partners,
LP:                           Jeremy W. Ryan, Esq.
                              Christopher M. Samis, Esq.
                              Aaron Stulman, Esq.
                              POTTER, ANDERSON & CORROON, LLP

                              Benjamin Beller, Esq.
                              James Bromley, Esq.
                              Thiago Nascimento dos Reis, Esq.
                              SULLIVAN & CROMWELL

For the Governmental
Plaintiff Ad Hoc
Committee:                    Brya M. Keilson, Esq.
                              MORRIS JAMES, LLP

                              Philip Bentley, Esq.
                              Kenneth Eckstein, Esq.
                              KRAMER, LEVIN, NAFTALIS
                               & FRANKEL, LLP

For the Ad Hoc Group of
First Lien Term Lenders:      David M. Fournier, Esq.
                              Kenneth A. Listwak, Esq.
                              Marcy J. McLaughlin Smith, Esq.
                              TROUTMAN PEPPER HAMILTON
                               SANDERS, LLP

                              Matthew Biben, Esq.
                              Michael J. Cohen, Esq.
                              Jennifer Conn, Esq.
                              Jeremy D. Evans, Esq.
                              Scott Greenberg, Esq.
                              Oscar Garza, Esq.
                              Eric Haitz, Esq.
                              Leesa Haspel, Esq.
                              Mark Kirsch, Esq.
                              Peter Saba, Esq.
                              GIBSON, DUNN & CRUTCHER, LLP




(Appearances Continued)
```

APPEARANCES VIA TELEPHONE:   (Continued)

For the Ad Hoc Group of
Unsecured Noteholders:          Richard S. Cobb, Esq.
                                LANDIS, RATH & COBB, LLP

                                Alice B. Eaton, Esq.
                                Andrew N. Rosenberg, Esq.
                                Claudia Tobler, Esq.
                                PAUL, WEISS, RIFKIND, WHARTON
                                  & GARRISON

For OCM Luxembourg OPPS
XB Sarl:                        Scott D. Cousins, Esq.
                                COUSINS LAW, LLC

For the Independent
Managers of the Specialty
Generic Debtors:                David Crichlow, Esq.
                                Geoffrey King, Esq.
                                KATTEN MUCHIN ROSENMAN, LLP

For the National Association
for the Advancement of
Colored People:                 Ronald Gellert, Esq.
                                GELLERT, SCALI, BUSENKELL
                                  & BROWN, LLC

For the Multi-State
Governmental Entities
Group:                          James S. Green, Jr., Esq.
                                SEITZ, VAN OGTROP & GREEN, PA

                                Kevin Maclay, Esq.
                                Todd E. Phillips, Esq.
                                Steven J. Reisman, Esq.
                                CAPLIN & DRYSDALE, CHARTERED

For the Ad Hoc First
Lien Notes Group:               William A. Hazeltine, Esq.
                                SULLIVAN HAZELTINE ALLINSON, LLC

For the Ad Hoc Revolving
Loan Participants Group:        James O. Johnston, Esq.
                                JONES DAY

For Deutsche Bank National
Trust:                          Kent C. Kolbig, Esq.
                                MOSES & SINGER, LLP

(Appearances Continued)

APPEARANCES VIA TELEPHONE:   (Continued)


For the Express Group
Entities:                    Michael Lyle, Esq.
                             Erik Lyttle, Esq.
                             Meghan McCaffrey, Esq.
                             K. John Shaffer, Esq.
                             QUINN, EMANUEL, URQUHART
                              & SULLIVAN, LLP


For the State of
Connecticut:                 Christine M. Miller, Esq.
                             OFFICE OF THE ATTORNEY GENERAL


For New Pharmatop, LP:       James E. O'Neill, Esq.
                             PACHULSKI, STANG, ZIEHL
                              & JONES, LLP


For Board County of
Commissioners of San Miguel
County:                      Felicia Weingartner, Esq.
                             FELICIA WEINGARTNER, PC


For Deutsche Bank, AG
New York Branch:             Andrew Zatz, Esq.
                             WHITE & CASE, LLP


For the NAS Children:        Scott Bickford, Esq.
                             MARTZELL, BICKFORD & CENTOLA


For Bristol Myers:           Bruce Buechler, Esq.
                             LOWENSTEIN SANDLER, LLP


For MSP Recovery Claims
Series:                      David Hundley, Esq.
                             PENDLEY, BAUDIN & COFFIN, LLP


For Canadian Elevator
Industry Pension Trust
Fund:                        Laurence May, Esq.
                             EISEMAN LEVINE


Also Appearing:              Karin I. Bray, Esq.
                             GREENBERG TRAURIG, LLP


                             Mark Casey
                             Matt Peters
                             Bryan Reasons
                             Stephen Welch
                             MALLINCKRODT, PLC


(Appearances Continued)

```
APPEARANCES VIA TELEPHONE:    (Continued)

Also Appearing:              Nikan Ansari
                             Teddy Kindelan
                             Olivia Parsons
                             David Skatoff
                             Agnes Tang
                             DUCERA PARTNERS

                             Daun Chung
                             Brendan Hayes
                             GUGGENHEIM PARTNERS

                             Randall Eisenberg
                             ALIXPARTNERS, LLC
```

8

INDEX

|                                                                      | Page |
|----------------------------------------------------------------------|------|
| RETENTION APPLICATIONS                                               | 10   |
| INTERCOMPANY RESTRUCTURING TRANSACTIONS                              | 14   |
| BAR DATE MOTION                                                      | 21   |
| COURT DECISION RE:  SUPPLEMENTAL MOTION TO EXTEND STAY TO CERTAIN THIRD PARTIES | 41 |

| EXHIBIT                              | IDENT. | EVID. |
|-------------------------------------|--------|-------|
| Welch Declaration Re:  Latham       |        | 13    |
| Welch Declaration Re:  Wachtell     |        | 13    |
| Welch Declaration Re:  Ropes        |        | 13    |
| Davis Declaration                   |        | 13    |
| Davis Supplemental Declaration      |        | 13    |
| Mindlin Declaration                 |        | 13    |
| Mindlin Supplemental Declaration    |        | 13    |
| O'Connor Declaration                |        | 13    |
| Peters Declaration                  |        | 15    |

1      (Proceedings commence at 2:02 p.m.)

2           THE OPERATOR:  Thank you, Your Honor.  Recording

3    has begun, and we are now live.

4           THE COURT:  Thank you.

5           Good afternoon, everyone.  This is Judge Dorsey.

6    We're on the record in Mallinckrodt PLC, Case Number 20-

7    12522.

8           Before we begin, just a reminder, if you wish to be

9    heard, please use the raise your hand feature on the Zoom

10   call.  It makes it easier for me to identify who wants to

11   speak.  I see Mr. Gott already has his hand up.

12          And if you are in the waiting room, if you're not

13   on CourtCall, if you didn't sign up for CourtCall, we do not

14   allow you into the Zoom meeting.  And if you're signed up on

15   CourtCall, but you're not using a proper name, we do not

16   allow you in, either, in order to avoid having disruptions to

17   the Zoom call.

18          So, with that, I'll go ahead and turn it over to

19   debtors' counsel to run the agenda.

20          MR. GOTT:  Thank you, Your Honor.  Jason Gott from

21   Latham & Watkins.  We are here today for the debtors' omnibus

22   hearing in the Mallinckrodt PLC matter.

23          We filed an updated agenda today at Docket Number

24   611.  It's a long agenda, but there's really only one matter

25   that's contested, and that's a tribute to the engagement and

1    the cooperation that we're continuing to get from all corners

2    here in the cases, and that includes the U.S. Trustee, who

3    has been very helpful and very cooperative with their

4    comments, from our (indiscernible) parties, from the

5    committees, and from our secured creditor constituency.

6         To preview the hearing briefly, all that remains

7    from the agenda, after Your Honor entered several orders on

8    certification, are three of the debtors' retention

9    applications, a motion seeking authorization to execute

10   certain intercompany restructuring transactions, and our bar

11   date motion.  We'll plan to take them up in that order for

12   efficiency's sake because the bar date motion is the one

13   topic where we're going to have some argument, so we propose

14   to save that for last, unless Your Honor would prefer to

15   proceed differently.

16        THE COURT:  No, that's fine.  Thank you.

17        MR. GOTT:  All right.  First up then are the

18   debtors' retention applications for Latham & Watkins at

19   Docket Number 384, for Wachtell, Lipton, Rosen & Katz at

20   Docket Number 382, and for Ropes & Gray at Docket Number 380,

21   and those are Agenda Items 15 through 17.  And I lumped them

22   together because I think the resolution of the three is the

23   same (indiscernible) today.

24        As Your Honor heard during the November 20th

25   hearing, just on Friday, there was an obligation filed by the

1     Acthar plaintiffs group to these retentions.  After the

2     scheduling discussion at that hearing, the Acthar plaintiffs

3     withdrew their objection and filed a limited objection in its

4     place at Docket Number 604.  And based on the statements on

5     the record of the November 20th hearing, based on our

6     correspondence with counsel to the Acthar plaintiffs and the

7     statements and the limited objection that they filed, our

8     understanding is that the orders approving these three

9     retention applications today are uncontested.

10         And so, presuming that's the case, I'll just

11     proceed with some housekeeping around declarations and the

12     orders.  But I'll pause now to make sure that we are

13     proceeding on that basis.

14         THE COURT:  Okay.  Is there anyone who disagrees

15     that, as of -- for today's purposes at least, the retention

16     motions are unopposed?

17         (No verbal response)

18         THE COURT:  Okay.  You may proceed, Mr. Gott.

19         MR. GOTT:  Thank you, Your Honor.

20         So, to address the housekeeping, we request that

21     the declarations filed in support of the three applications

22     be admitted into evidence, and these are the following:

23         For Latham's retention application, those are the

24     declaration of George Davis and the declaration of Stephen

25     Welch, which were both attached to the application at Docket

12

1    Number 384, as well as the supplemental declaration of George

2    Davis, filed at Docket Number 589, to address certain

3    requests from the U.S. Trustee.

4              THE COURT:  Mr. Gott, that last -- the last name

5    you just said did not come through.  There was some rustling

6    of papers that cut you off.

7              MR. GOTT:  Okay.  No problem.  That reference is to

8    the supplemental declaration of George Davis, filed at Docket

9    Number 589.

10             THE COURT:  Okay.  Thank you.

11             MR. GOTT:  For Wachtel's retention application,

12   those declarations are Philip Mindlin, and also Stephen

13   Welch, both of which were, likewise attached to the

14   application at Docket Number 382; as well as the supplemental

15   declaration of Philip Mindlin filed at Docket Number 588,

16   likewise, to address certain requests from the U.S. Trustee.

17             And for Ropes & Gray's retention application, the

18   relevant declarations are those of Brien O'Connor and of

19   Stephen Welch, which were attached to the application at

20   Docket Number 380.

21             Each of these witnesses -- Mr. Welch, Mr. Davis,

22   Mr. Mindlin, and Mr. O'Connor, are present on the call for

23   today's hearing and are available for cross-examination.  But

24   we would request that these declarations be admitted into

25   evidence.

13

```
1          THE COURT:  Is there any objection?
2      (No verbal response)
3          THE COURT:  They're admitted without objection.
4      (Welch Declaration Re:  Latham received in evidence)
5      (Welch Declaration Re:  Wachtell received in evidence)
6      (Welch Declaration Re:  Ropes received in evidence)
7      (Davis Declaration received in evidence)
8      (Davis Supplemental Declaration received in evidence)
9      (Mindlin Declaration received in evidence)
10     (Mindlin Supplemental Declaration received in evidence)
11     (O'Connor Declaration received in evidence)
12         MR. GOTT:  Thank you.
13         Turning briefly to the forms of order, just as a
14 point of order, we uploaded revised forms of order for the
15 Wachtell and Ropes & Gray retentions that addressed certain
16 comments from the United States Trustee's Office.
17         For the Wachtell order, the one substantive change
18 was to add a paragraph around the treatment of Wachtell's
19 retainer.  For the Ropes order, there is, likewise, a change
20 regarding the retainer held by Ropes, as well as an added
21 statement that Ropes will use reasonable efforts to avoid
22 duplication of services with the debtors' other
23 professionals.  And both of those revised forms of order were
24 approved by the U.S. Trustee and were shared yesterday with
25 the committees and with the Acthar plaintiffs.  And for the
```

14

1    third order, for Latham's retention, there have been no

2    changes from the originally filed version.

3          And so, absent any questions from Your Honor, we

4    would request entry of the orders approving the Latham, the

5    Wachtell, and the Ropes & Gray retention applications.

6          THE COURT:  Okay.  I have no questions.  I did

7    review the redlines, so I'm satisfied.

8          Is there anyone else who wishes to be heard?

9       (No verbal response)

10         THE COURT:  Okay.  I'm satisfied then, based on the

11   record, that the requested relief is appropriate and the

12   retention of the three firms is appropriate, and I will enter

13   the order.

14         UNIDENTIFIED:  (Indiscernible)

15         MR. GOTT:  Next on the agenda and for moving

16   through the hearing is Agenda Item 18, and that's the

17   debtors' intercompany restructuring motion.

18         And before a short presentation on this item, I

19   would move the declaration of Matthew Peters in support of

20   this motion -- which was filed at Docket Number 405 -- into

21   evidence.  Mr. Peters is present on the call for today's

22   hearing and is available for cross-examination.

23         THE COURT:  Is there any objection?

24       (No verbal response)

25         THE COURT:  It's admitted without objection.

1    (Peters Declaration received in evidence)

2         MR. GOTT:  Thank you, Your Honor.

3         So, by this motion, the debtors are seeking

4    authority to execute on a series of intercompany

5    restructuring transactions.  The net effect of these

6    transactions will be to save the debtors from needlessly

7    incurring as much as 12 million to $15 million per month of

8    income tax liability, beginning on December 26th, 2020, at

9    the start of the debtors' next fiscal year.

10        And while that justification speaks for itself, the

11   debtors recognize that, as debtors-in-possession, they must

12   be mindful that there are many, many parties-in-interest out

13   there, who, when they read this motion and they see the plan

14   movement of assets and the institution of new liabilities,

15   that they might be concerned about how all of this could

16   affect their rights.

17        So the debtors built into this transaction -- and

18   this is part of both the proposed order, and will also be

19   part of the transaction documents themselves -- there are a

20   number of protections for creditors.  These include what the

21   Court would have seen described in the motion and in the

22   order.  We have special provisions that will be placed in the

23   new notes being issued that subordinate those notes to other

24   claims and limit their recourse and principal amounts, based

25   on the value of the issuer's assets against its liabilities.

1          There are provisions in the order that the claims

2     and interests at the transferring debtors will travel with

3     the assets being moved, and that recourse at the recipient

4     entity will be cabined between its old claims and its old

5     assets on the one hand and its new assumed claims and new

6     received assets on the other hand.

7          And then, finally, we've built in several

8     reservation of rights for all creditors, especially those who

9     have engaged with us to make sure that all interests were

10    properly protected with those goals in mind.

11         And that's an important point here.  We've had the

12    benefit of some really great engagement by all our key

13    creditor groups to add to and to clarify the form of order,

14    and that includes our RSA parties, the ad hoc term loan

15    group, the credit agreement agent, the ad hoc group of

16    revolver lenders, the trustee under our first and second lien

17    notes, the unsecured creditors' committee, the opioid

18    claimants' committee, and also the -- certain of the

19    counterparties whose contracts we will assume and assign in

20    these transactions.

21         Of course, each group has been focused primarily on

22    its own interests and the interests of the creditors they

23    represent in certain cases.  And -- but I think what that

24    means is that, at the end of the process, we've reached a

25    balanced resolution.  Tax claims and interests will be

17

1    properly guarded.  Go forward relationships are clearly

2    delineated.  And all the parties that have engaged with us

3    seemingly feel that they will be protected.

4            The resolutions that we've reached are mostly all

5    shown in the revised form of order we filed in the last

6    couple of hours at Docket Number 609.  We also included a

7    redline to the originally filed form.  And our understanding

8    is that all substantive comments, at least that we've

9    received (indiscernible) hearing are resolved by that form of

10   order.  Although I'll note that we are still working on some

11   language tweaks that we will be working to address with all

12   the parties after today's hearing.  And we expect to be in a

13   position to file a further revised form of order under

14   certification, either tonight or perhaps tomorrow.

15           But absent any questions from the Court -- and I'm

16   happy to walk through either the redline that was filed or to

17   address specific questions, if there are any -- I think we

18   would leave it at that, with the intent being to file the

19   order on certification.

20           THE COURT:  Okay.  No, I don't have any questions.

21   I did see the redline before the hearing, so I'm familiar

22   with the relief that's being requested.

23           Ms. Speckhart raised her hand.

24           MS. SPECKHART:  Are you able to hear me, Your

25   Honor?

18

1    THE COURT:  I can.  Thank you.

2    MS. SPECKHART:  Great.  Good afternoon, Your Honor.

3    Cullen Speckhart, for the record, of Cooley, LLP, appearing

4    on behalf of the Official Committee of Unsecured Creditors in

5    this case.

6    And just briefly, to offer some perspective on the

7    topic of the intercompany motion, which was filed on November

8    2nd, after what was clearly a very thorough consideration by

9    the debtors of their corporate income tax strategy and how to

10   optimize their structures, in light of recent changes to the

11   law.

12   The intercompany motion does indicate, as Mr. Gott

13   just noted, that no creditors will be prejudiced by the

14   requested relief for a number of reasons.  And in approaching

15   this motion, we were particularly interested in understanding

16   what those reasons are, and just as importantly, how that

17   preservation of creditor interest and related protections

18   could be demonstrated in a way that would allow us to remedy

19   that no harm to creditors would be done.

20   And in our view, that kind of understanding

21   requires more than just a high level conception of what the

22   request entails, but a deeper knowledge of how value is

23   intended to move within the corporate structure to capture

24   the tax advantages that we all believe are worthwhile to

25   pursue.  And I have to say the debtors were quite patient in

1  helping us and the committee's tax professionals to get to a

2  place where we're comfortable in our own awareness of what's

3  involved in the transaction and in revising the order to

4  provide for certain tools that will be useful to us in our

5  efforts to evaluate the economic consequences along the way

6  and after the fact.

7        So we understood from the very beginning how

8  critical the timing is here.  And while we could have

9  probably spent several months learning and considering the

10  finer points of Irish tax law as they operate on the debtors,

11  we didn't want to cause any detrimental delay.  So we worked

12  very hard to learn the material on a condensed time frame and

13  to achieve a level of ongoing visibility that we think is

14  appropriate to test the transactions and their impact on the

15  interests of unsecured creditors.

16        So we support the debtors in their business

17  judgment and we're satisfied with the provisions of the

18  revised order by which the transactions will be implemented

19  under 363(b)(1).

20        THE COURT:  Thank you, Ms. Speckhart.  I appreciate

21  the comments.

22        Mr. O'Neill raised his hand.

23        MR. O'NEILL:  Yes, Your Honor.  Good afternoon.

24  Can you hear me okay?

25        THE COURT:  I can.  Thank you.

1          MR. O'NEILL:  Good afternoon, Your Honor.  James

2     O'Neill appearing on behalf of New Pharmatop, LP.

3          New Pharmatop's agreement is being assumed as part

4     of the transaction, and we've worked with Mr. Gott and his

5     team on language, which has been incorporated into the form

6     of order that appears in the revised order at Paragraph 14.

7     It includes the cure amount for New Pharmatop and also terms

8     regarding the payment.

9          We're appreciative of the debtors' help in getting

10    us to this point.  And our informal comments are resolved as

11    a result of this language being added to the order.  Thank

12    you.

13         THE COURT:  Thank you, Mr. O'Neill.

14         Anyone else wish to be heard?

15      (No verbal response)

16         THE COURT:  Okay.  Mr. Gott, who are you still

17    needing to negotiate some of the language with, or at least

18    tweak some of the language with?

19         MR. GOTT:  That is a -- there's a complicated

20    answer there because each one of the gives and takes requires

21    some back and forth between different constituencies.  But we

22    hope to have it all resolved very shortly.

23         There -- I think the -- what's left to be done are

24    mainly clarifications around a particular -- the reference

25    dates used in various provisions of the order and whether

1    the, you know, potential harm to creditors or the base line

2    against which any perceived harm to creditors would be

3    tested, you know, just clarifying that that will be as of

4    immediately before the restructuring transactions are

5    implemented.

6         THE COURT:  Okay.  Thank you, Mr. Gott.

7         All right.  Well, based on the representations and

8    the record presented, I'm satisfied that the requested relief

9    is appropriate and subject to receipt of the final version of

10   the form of order under COC.  I will enter the order when I

11   receive it.

12        MR. GOTT:  Thank you, Your Honor.

13        And that takes us, last, to Agenda Item 14, back up

14   the agenda.  Next, the debtors' bar date motion, filed at

15   Docket Number 270.

16        The bar date represents an important step here

17   toward plan confirmation and emergence, as it always does.

18   The claims information to be gathered by the bar date process

19   will allow the debtors to allocate recoveries for general

20   unsecured creditors and to funnel that information into the

21   disclosure statement, to make sure voting creditors have

22   appropriate information, as required under the Bankruptcy

23   Code.  So setting the bar date now will ensure that the

24   debtors can meet their milestones and proceed on the pace

25   that they currently carry towards confirmation.

1        We're proposing to send out notices of the bar date

2    within five business days after filing our schedules and

3    statements.  And so, in all likelihood, that period will

4    begin likely during the last week of the year or even to the

5    first day or two of the new year, given that our deadline to

6    file the schedules and statements is December 24th.

7        We received comments on the proposed form of order

8    from several parties, including the U.S. Trustee, certain

9    funded debt creditors, and the Official Committee of

10   Unsecured Creditors.  We filed a revised form of order this

11   morning at Docket Number 607.

12       The most material change from those comments is

13   that we agreed to extend the claims filing period for non-

14   governmental creditors to 45 days from the original 35.  And

15   that was based on a request from the unsecured creditors'

16   committee.

17       And there's also been one further change since this

18   morning, which we tried to circulate quickly ahead of the

19   hearing, just so no one was caught by surprise, although we

20   think it's -- we don't think it's contentious.  And that was

21   to add the following proviso at the end of some language that

22   had been requested by the Chubb Companies, which appears in

23   Paragraph 19.  An the proviso reads:

24       "Provided further that the debtors and all parties-

25       in-interest's rights, defenses, and objections in

1     respect of any claims filed by the Ace Companies or

2     the Chubb Companies, other than for the express

3     reasons listed in Subpoints (1) through (3) of this

4     sentence, are fully preserved."

5         And we'll, of course -- you know, we'll make sure

6     that that change is apparent to all parties and that they'll

7     have time to review it and ensure that they have no

8     objections.

9         But the good news on the front for all those

10    comments we received is we've resolved the vast majority of

11    them.  And if the motion is granted, then we expect to have a

12    final form of order to file on certification shortly after

13    the hearing.

14        And Your Honor, that takes me to the two responses

15    we've received formally on the docket.  Those are the only

16    objections to the bar date motion, which was filed by the

17    Acthar plaintiffs at Docket Number 422.  We did have

18    discussions with the Acthar plaintiffs around resolving the

19    objection, but ultimately, we could not resolve all of their

20    issues.

21        And we've also been in discussions with the opioid

22    claimants' committee around the bar date order and the

23    proposed structure, but there is a difference of opinion

24    there, as Your Honor may have seen from the OCC's statement

25    that was filed at Docket Number 566.

24

1       So, again, aside from those two parties, we have no

2   other responses to the order at this time.  And at this

3   point, I suggest it may make sense to have counsel for the

4   Acthar plaintiffs present their objection to the Court.

5       THE COURT:  All right.  I see Mr. Haviland has

6   raised his hand.  Go ahead, Mr. Haviland.

7       MR. HAVILAND:  Good afternoon, Your Honor.  So I

8   want to begin by thanking Mr. Gott for making himself

9   available to us.  As you've heard in the past from others,

10  the debtors' counsel have been very willing to give up their

11  time, day and night and over the weekend.  And we did receive

12  some comments over the weekend and tried to get to finality.

13      I don't want to bury the lead, Judge.  There were

14  three issues we raised.  One is the bar date itself, one is

15  the desire of the Acthar plaintiffs to file a class proof of

16  claim, and the third was concerns about the notice, plan, and

17  proposal for that.

18      Mr. Gott and I did agree that, with some additional

19  language that was added to the order at Paragraph 3, you'll

20  see, Judge, that there's nothing in the order intended to

21  permit or prohibit any party from seeking permission from the

22  Court to file a class proof of claim on proper motion.  So

23  that issue has been resolved, Judge, by that language.  We

24  recognize there is a procedure for the Court to decide

25  whether to allow class proofs of claim.  We just wanted to

1    make clear that, by the motion and the Court's order, that

2    that wasn't precluded.

3              And we're going to be moving forward with that

4    probably right after the holiday, to get, hopefully, a

5    briefing schedule with debtors' counsel that we can have that

6    proceed on a track that Your Honor is comfortable with.

7              And that then takes me to the next two issues

8    because they key off of that.  And just to be clear, Judge,

9    three of the Acthar plaintiffs that you've been hearing from,

10   most importantly Rockford, they are putative class

11   representatives in cases under Rule 23, and have been for

12   years.

13             And in fact, the debtors' Chapter 11 filing

14   preceded the Rockford deadline for filing the Rule 23 motion

15   by five days.  It was due to be filed that week.  I think

16   they filed on a Monday; we were going to file our class

17   motion on Friday.  So that was an immediate concern of our

18   clients, to make sure that we have the opportunity now, in

19   the bankruptcy, to file a class proof of claim, to allow that

20   representative status to proceed.  But I won't belabor that

21   issue, Judge.  We did reach agreement with the debtors that

22   that process should take place after this procedure.

23             The bar date was a concern of ours, Judge, because

24   of the 35 days.  It seemed -- and I realize it doesn't line

25   up with the bankruptcy procedures.  But in our world, where

1   we've got thousands and thousands of unsecured claimants who

2   have purchased Acthar, we're waiting on that notice to know

3   when to proceed.  And Your Honor heard a lot through the

4   proceedings in the last month about the notoriety of this

5   case, the 60 Minutes.  And so, without getting that notice

6   and knowing that this has moved to a different phase and the

7   opportunity now exists to submit an unsecured proof of claim,

8   we're concerned that the claims won't go file.

9        So that was the discussion I had with Mr. Gott,

10   about how that might happen, so that we could make sure that

11   we had a robust notice period, and then enough time for folks

12   to respond, realizing that mail notice has some issues with

13   what's been going on with the mail service.  I know Your

14   Honor probably has seen what's happened in the election

15   arena.  And we're just concerned about that bar date being

16   really too tight for that.

17        It was extended ten days.  I will tell Your Honor,

18   we had originally proposed could we not have the same date as

19   the Government, April the 12th.  I then said to Mr. Gott I

20   was willing to cut the baby, if you will, and agree to St.

21   Patrick's Day.  And then, finally, my last proposal, as I was

22   bidding against myself, I said give me March 1, and we can

23   take that back to our clients and co-counsel.

24        I respect the debtors' counsel had some issues in

25   terms of that changing of the date from 45 days even two more

1   weeks, but that's where we left it.  Our final proposal was

2   March the 1st, which I think gives us six weeks, as opposed

3   to the current -- I'm sorry -- eight weeks, as opposed to the

4   six weeks we currently have.  So that's where it is, Judge.

5        I thought that the 60 days was appropriate, given,

6   as I said, the issues with the mails and responsive periods

7   and all that's going on in people's lives these days.  But we

8   leave that to the Court to decide.  I think we're looking

9   basically at Valentine's Day versus the 1st of March.

10        And then, finally, on the notice -- I know Your

11  Honor probably read in our objection -- I'm always interested

12  in where the Rule 23 procedures align with the Bankruptcy

13  Code.  And all courts recognize the Supreme Court in Mullane,

14  that first-class mail notice is the best practicable under

15  the circumstances.  And I understand the debtors are

16  proposing to send first-class mail notice to all known

17  unsecured creditors.  We had some good discussions with Mr.

18  Gott about that.

19        It's our position that the purchasers of Acthar are

20  known by the company.  Attached to one of our complaints, we

21  had the actual forms that are filled out by doctors, and the

22  patients fill it out, as well.  So the medication is sent to

23  people's homes, nurses are sent to their homes, so ...

24        But we did reach an agreement with Mr. Gott that

25  that is an issue that can be addressed down the road, in

1    conjunction with the class claim process.  So I don't want to

2    tell you that we didn't object to the proposed plan, as

3    stated, because we thought that the, quote, "unknown

4    creditors" can be known.  But that really gets to a question,

5    I guess, Judge, of ascertainability [sic] and the

6    reasonableness of the debtor pulling that data and being able

7    to mail notice to people's homes.

8            So the bar date issue is a question of two weeks.

9    The notice, I believe, can be taken up down the road.  And we

10   have agreement on class claims.  That was a long way of

11   saying that I appreciate Mr. Gott's efforts.  I thought we

12   got really far along on an issue of significance to the

13   Acthar plaintiffs.  But we leave it to the Court to decide

14   how best to proceed.  Thank you.

15           THE COURT:  Thank you, Mr. Haviland.

16           Ms. Ramsey, you had your hand up.

17           MS. RAMSEY:  Thank you, Your Honor.  Can you hear

18   me okay?

19           THE COURT:  I can, thank you.

20           MS. RAMSEY:  Thank you.

21           Good afternoon.  For the record, Natalie Ramsey,

22   Robinson & Cole, appearing on behalf of the Official

23   Committee of Unsecured Creditors.

24           Your Honor, as Mr. Gott indicated, we have been

25   actively engaged in discussions with the debtors, really,

1    since our retention.  And the Court may recall that the

2    official committee is a very diverse group of claimants and

3    represents really the diversity of the interests of our

4    constituents.  So, accordingly, our comments and our

5    discussion was very wide-ranging.

6           As Mr. Gott indicated, it's important, first of

7    all, to talk about the period of time.  And the additional 10

8    days, we think, is a reasonable compromise between our

9    desire, when we started off, Your Honor, at 60, 90 days, but

10   recognizing that the debtor has certain milestones in the

11   RSA, 45 days was an agreeable period to the committee.

12          We also, as Mr. Haviland had talked with the debtor

13   extensively about ensuring that there was nothing in the bar

14   date order that would prohibit a party from seeking

15   permission of the Court to proceed with a class proof of

16   claim.  And Your Honor, now that that is expressly written

17   into the order and not just absent as a prohibition from it,

18   we are very much supportive of that.

19          A third significant change, Your Honor, was

20   providing a non-mandatory provision for holders of debt

21   claims to file a single master proof of claim.

22          And finally, Your Honor, a significant change to us

23   was providing that counsel representing un-manifested

24   asbestos claimants could file a single claim with an exhibit

25   noting the individuals that they had identified that might

30

1    have claims based on exposure.

2              As part of that, Your Honor -- and you'll hear more

3    about this on December the 7th, in connection with the motion

4    for an FCR -- one of the important aspects to us, also, was

5    to specifically leave open a door for an eventual 524(g)

6    trust resolution and channeling injunction for the asbestos

7    claimants.  The debtor has currently indicated that it is not

8    intending to proceed with that relief, but we didn't want to

9    foreclose it, and we wanted to make it clear that we were not

10   foreclosing it through the bar date order.

11             Although we had requested more extensive changes,

12   Your Honor -- and as the Court knows, some of our committee

13   members, in their individual capacities, are not satisfied

14   with the changes that have been made up to this point.  The

15   committee, as a whole, as a fiduciary, has not objected and

16   supports the bar date order as revised.

17             We finally just wanted to add, Your Honor, again --

18   you've heard this a lot -- but we appreciate very much

19   (indiscernible) the debtor working with us to reach this

20   resolution.

21             THE COURT:  Thank you, Ms. Ramsey.

22             MS. RAMSEY:  Thank you.

23             THE COURT:  Mr. Preis, you have your hand up.

24             MR. PREIS:  Good afternoon, Your Honor.  Can you

25   hear me?

1          THE COURT:  I can.  Thank you.

2          MR. PREIS:  Your Honor, Arik -- for the record,

3     Arik Preis, Akin, Gump, Strauss, Hauer & Feld.  We are

4     proposed counsel to the Official Committee of Opioid Related

5     Claimants.

6          Your Honor, we -- per the extension granted to us

7     by the debtors, we filed a very short statement regarding the

8     motion, it is Docket Number 566.  It is not my intention to

9     repeat the statements we made in that motion, but I do want

10    to mention a few things to you today and make, basically,

11    three points.  The first is as follows:

12         At the beginning of the case, the debtors announced

13    that it was their current intention not to seek the

14    establishment of a bar date for any opioid related claimant.

15    Although they apparently have reserved their rights to seek

16    the establishment of an opioid related bar date in their

17    motion and proposed form of order, nothing in what they have

18    said to date evidences anything other than their intent not

19    to seek a bar date for the opioid claimants.

20         We disagree with this decision, and we've had a few

21    discussions with the debtors about this.  Admittedly, the

22    debtors have been focused on numerous things to date, and so

23    the depth of those discussions have not been at the level

24    they deserve throughout absolutely no fault of the debtors.

25    We hope to continue those discussions, including whether a

1    bar date would be needed for opioid related claimants,

2    whether there be different proofs of claim forms, the breadth

3    and extent of a noticing program, et cetera.

4          We understand that nothing in the relief requested

5    is being -- today would exclude the establishment of a bar

6    date for opioid related claimants; and, as such, we're not

7    objecting to the relief being sought today.  That being said,

8    if we are unable to reach our issues -- resolve the issues

9    consensually, we may be back in front of Your Honor seeking

10   your assistance in helping us resolve that issue.  So that's

11   the first part.

12         The second point -- because we do believe in

13   flagging issues for Your Honor, as we try to do each time

14   we're in front of you -- we wanted to note that we believe

15   the debtors' decision not to seek approval of an opioid

16   related claims bar date is closely intertwined with their

17   motion to appoint a future claims rep, as well as that

18   proposed rep's request to retain three sets of legal

19   advisors, one financial advisor, and one investment banker.

20         The debtors have agreed to adjourn the hearing on

21   the retention of the proposed FCR to December 7th, and our

22   objection deadline is now this Saturday, November 28th, at 5

23   p.m.  And the debtors' response deadline is Thursday,

24   December 3rd, at noon.

25         The proposed FCR also agreed to adjourn the hearing

1    on its retention application to December 7th, but was

2    unwilling to extend the objection deadline for the retention

3    of its professionals past this Wednesday, November 25th, at 7

4    p.m.  Therefore, again, to flag something for Your Honor,

5    unless we reach resolution, we will be filing responses to

6    all six motions within the next six days, but separately and

7    on different days, unfortunately.  In these responses, we're

8    going to address the relationship between the debtors'

9    proposed manner to avoid having an opioid claims bar date and

10   the relief requested in those motions.  Again, I raise this

11   to emphasize that none of this is going to be decided until

12   December 7th.

13        So, third, because of this timing and because of

14   our relief -- our belief that the issues are intertwined, we

15   asked the debtors to modify the order slightly, to insert a

16   provision stating that the mailing deadline for the relief

17   being sought today will not occur until the Court makes a

18   determination with regard to the establishment of a opioid

19   claims bar date, one way or the other.

20        Given that, as you just heard from Mr. Gott, the

21   mailing deadline is likely not to occur until the second half

22   of December, maybe early January, the way we understand it,

23   we figured that all of the opioid related issues could be

24   decided, as it relates to the bar date and the FCR, before

25   then.  And then the debtors, perhaps more efficiently, could

1    just have one mailing solicitation date, but with two

2    different bar dates, two different noticing procedures

3    potentially, and two different proof of claim forms.

4           The debtors declined to grant our request and told

5    us merely that the issue that we are raising is not relevant

6    to today's motion.  We disagree.  We actually think it's

7    extremely relevant to ensuring that creditors are not

8    confused by whatever they may see in publications,

9    newspapers, or any other noticing forum of communication.

10   And given that what we're proposing is not going to affect

11   the time line of the case, we would think that we could and

12   should deal with it in the month of December, perhaps at the

13   omnibus hearing scheduled for the 22nd.  That will give us

14   time for the debt -- you know, to talk to the debtors

15   further.

16          And if they're willing to establish a bar date, we

17   think that that could occur in the month of December.  And if

18   not, we can resolve it at the December 22nd hearing.  We

19   think the debtors would have to then submit some sort of

20   written submission as to why they're not going to seek an

21   opioid claim related bar date, and all the parties would have

22   a right to object.  Again, in taking heed from the

23   noteholders statement that was filed last week, nothing we're

24   asking for today would change the time line of the bar date

25   for the non-opioid creditors.

1   I realize the time line I'm setting forth here is
2   not something we've put in a motion.  But we were a little
3   surprised, frankly, that the debtors didn't just agree to the
4   clarification that we asked, given that it doesn't really
5   affect the timing that they lay out in their motion or their
6   proposed form of order, nor does it prejudice any creditor or
7   other party-in-interest in the case.  Therefore, again, while
8   I understand it's a bit unorthodox for me to do this, this
9   way, we fail to see how anyone is prejudiced.  And again, we
10  were a little bit surprised that the debtors just didn't
11  agree.
12          Your Honor, with that, unless you have any
13  questions, that was what we wanted to say.
14          THE COURT:  So you're not asking for any relief
15  today, Mr. Preis.
16          MR. PREIS:  The only request we would ask is that
17  they modify the order to clarify or to confirm that the
18  mailing date for the non-opioid claimants would not occur
19  until the opioid related claimant bar date issue has been
20  resolved.  And we would -- you know, we can put a deadline to
21  that for December 31st or December -- whatever comports with
22  their already proposed mailing deadline, which, as Mr. Gott
23  said earlier, I think about ten minutes ago, was probably
24  likely early January.
25          THE COURT:  Mr. Gott?  I'll do this first, and then

1    I'll come back to Mr. Haviland's issue.  Mr. Gott?

2           MR. GOTT:  Oh, I'm sorry.  I did not -- I did not

3    hear you redirect to me.

4           So -- okay.  So you'd like me to address the opioid

5    claimants first.  Is that right, Your Honor?

6           THE COURT:  Yes.

7           MR. GOTT:  Okay.  So, look, I think our view here

8    is that the relief we've requested is -- does specifically

9    carve out opioid claims.  The issue of whether and when to

10   impose an opioid bar date is for another day, it's for

11   another motion.

12          And this is our -- this is the debtors' view that

13   this is the right path forward for proceeding with these

14   cases, to have a bar date that accepts opioids claims, to

15   have a future claims representative, and to have all opioid

16   claims -- regardless of whether they are filed before a bar

17   date or not -- channeled to the opioid settlement trust.  We

18   think that that is the process that gives -- that actually

19   gives greater due process and gives greater opportunity for

20   recovery to opioid claimants.

21          Your Honor, I -- if -- we had not heard previously

22   a request to put an outside date on what the opioid

23   claimants' committee is suggesting; you know, in other words,

24   a -- sort of a parachute that would allow us to start the

25   process, in the event that there is no resolution by a date

1    certain.   That is a new aspect to the relief that they're --

2    to their request that I could certainly take back and we

3    could discuss on our side.   I just don't have the -- I don't

4    have the benefit of being able to run around the courtroom

5    right now, to check with folks and see if they're comfortable

6    with it.

7            But I think, if the request is simply to just put

8    on hold this bar date process -- which Mr. Preis just said,

9    even if we do move forward with an opioid bar date process,

10   and even if that starts at the same time as the non-opioid

11   bar date process, it's going to involve different dates,

12   different proofs of claim form, different publication notice.

13   It's just a completely separate issue from what we're looking

14   to establish today.   And so we don't see a need or a reason

15   to tie the two together, and so we just don't think that

16   that's appropriate at this time.

17           THE COURT:   Mr. Preis, it seems like the debtors

18   have now indicated on the record that they're -- the opioid

19   claimants are carved out of this order.   And they're willing

20   to continue to discuss with you the issues that you have

21   concerns about.

22           So, at this point, I don't think there's anything

23   that I need to do.   I think we can just send you back -- and

24   unfortunately, I can't send you to the hallway to talk about

25   it before the hearing is over.   But it sounds like this is

38

1    something that can and should be able to be resolved.  So I

2    would ask you to go back and talk after the hearing.  And

3    obviously, we're going to have to submit a revised order

4    under COC, in any event.  So let's handle it that way for

5    now, I think.

6              MR. PREIS:  Thank you, Your Honor.

7              THE COURT:  Okay.  Thank you.

8              Now to Mr. Haviland's question, Mr. Gott.  The

9    holidays are coming up, 45 days, with all of the things that

10   are going on with COVID, I do have some concerns that that

11   might not be enough time.

12             MR. GOTT:  Sure, Your Honor.  I think I can address

13   that with a couple of points.

14             First is that, as I mentioned, the mailing is

15   looking like it will occur -- you know, the letters will go

16   in the mail very much towards the end of the year, the last

17   few days of the calendar year.  So I think that largely gets

18   us past the holiday season, when those things will be

19   arriving in the mailboxes of the folks who will receive them.

20             You know, I think another important point here is,

21   you know, as is typical for large Chapter 11s, we have a very

22   smooth, electronic claims submission process through Prime

23   Clerk's website now that eliminates delays on the back end.

24   So, once someone receives that notice, it's very easy for

25   them to go onto the website and get their claim in, as

39

1    opposed to putting it together in paper, putting it in an

2    envelope, and then risking the delay on the back end, as well

3    as on the front end.

4         And Your Honor, you know, I think mailing delays

5    are certainly nothing new.  Yes, they receive more press

6    lately in connection with election mailings.  But you know,

7    it's not unusual for there to be some delays in the postal

8    service and in the mail getting to folks.  But that doesn't

9    change and has never changed that the minimum period for

10   notice here is 21 days under the federal rules, and that our

11   forty-five-day period is typical, if not on the long end for

12   bar date periods for large cases in this district.  It

13   (indiscernible) of course not dispositive, but it is just to

14   say that the period sought here is very much in line with the

15   norm.

16        And just to clarify one thing, our reluctance to

17   extend the period further here isn't arbitrary.  We are

18   aiming to have our plan and our disclosure statement on file

19   well ahead of the February 12th milestone for doing so under

20   the RSA.  And that would allow us to get the notice and

21   voting process for confirmation started as soon as that bar

22   date comes and goes and we're able to -- we're able to piece

23   together information that we need to complete that disclosure

24   statement.  This is an expensive case with a high run rate,

25   and delay always opens the risk to disruption, to second

1  guessing, and to more delay.  So waiting that extra two weeks

2  would be meaningful here.

3        And so, for all those reasons, we think that that

4  forty-five-day period is the appropriate resting point here.

5  We have the support for that period from the unsecured

6  creditors' committee, from the ad hoc noteholder group, and

7  our opioid claimants that are party to the RSA, as well.  And

8  so we think that's the right date to stick to.

9        THE COURT:  All right.  All right.  Well, it is

10  beyond the time required by the Code, 45 days.  And if the

11  mailings aren't going to go out until the end of this year,

12  or maybe even early January, that puts us past the holiday

13  time.  And we do need to get the proofs of claim filed for

14  voting purposes.

15        But that doesn't mean, Mr. Haviland, that, if some

16  individual claimants file claims late, that I won't have the

17  opportunity to say that those claims can be filed, and they

18  can still bring their claim against the estate.  They might

19  not have time to be able to vote, but they will have a claim

20  against the estate.  So I'll approve the forty-five-day

21  period.

22        Mr. Gott, anything else?

23        MR. GOTT:  No.  Thank you, Your Honor.

24        So, as mentioned, we will -- we'll plan to file an

25  order with some slight tweaks and any other changes that may

1   arise out of further discussions with the opioid claimants'

2   committee on certification.

3          THE COURT:  Okay.

4          MR. GOTT:  And with that, I believe, you know, at

5   least the part of the agenda that we were going to run is

6   concluded.  And I think Your Honor indicated that a ruling

7   would be coming on the 105 motion.

8          THE COURT:  Yes.

9          MR. GOTT:  But I think my part of the day is done

10  here.

11         THE COURT:  Okay.  Thank you, mister -- excuse me.

12  Thank you, Mr. Gott.

13         Yes, I will issue my bench ruling on the

14  supplemental motion to extend the stay to certain third

15  parties.

16         When the debtors filed their petitions, they had

17  approximately 3,000 proceedings pending against them in

18  various federal, state, and other fora.  They had also

19  entered into a restructuring support agreement -- or RSA --

20  with certain constituencies, including unsecured noteholders

21  holding more than 84 percent of the fulcrum unsecured notes;

22  50 Attorneys General of various states, Washington D.C., and

23  U.S. territories, with respect to opioid claims; and members

24  of the plaintiffs executive committee, who indicated they

25  would recommend to more than 1,000 plaintiffs they represent

1    in national opioid litigation that they should also support

2    the RSA.  The debtors had also reached an agreement in

3    principle with the Federal Government and others related to

4    debtors' Acthar product.  Despite the RSA, however, the

5    debtors still had approximately 2,650 lawsuits and

6    administrative actions brought by various government entities

7    pending against them.

8         The debtors filed a motion for injunctive relief,

9    the initial motion, seeking a two-hundred-and-seventy-day

10   stay of all those actions, anticipating that the governmental

11   entities would argue that the claims they were asserting were

12   a function of their police powers, and therefore exempt from

13   the automatic stay provided by Section 362 of the Bankruptcy

14   Code.  Prior to the time of the -- prior to the time for the

15   hearing on that motion, all of the entities subject to that

16   motion agreed to the two-hundred-and-seventy-day stay.

17        Ten days after filing the initial motion, the

18   debtors filed an amended complaint and supplemental motion

19   for injunctive relief, pursuant to Section 105 of the

20   Bankruptcy Code, seeking to extend the stay to nondebtor

21   entities and individuals who are co-defendants with debtors

22   in certain actions.  Those actions include the following:

23   First, certain securities actions, Solomon v. Mallinckrodt,

24   pending in the District of Columbia; Healthcor Offshore

25   Master Fund, LP v. Mallinckrodt, pending in the -- also in

43

the District of Columbia; and Broadhurst [sic] -- Brandhorst

v. Mallinckrodt, also pending in the District of Columbia.

None of the plaintiffs in those three actions objected to the

relief.  And since there were no objections made by these

parties, the motion to stay the parties from pursuing actions

against -- the motions to stay the parties from pursuing

those actions will be granted.

A fourth action called Strougo v. Mallinckrodt,

pending in the District of New Jersey, the plaintiffs in that

case did file a late objection for the -- and for the reasons

that I'll explain in a moment, that objection will be

overruled.

And finally, there's Shenk v. Mallinckrodt, pending

in the District of Columbia.  Debtors seek to carve out this

case solely to the extent necessary to permit mediation from

proceeding, which seeks to obtain a settlement in principle,

subject to court approval.  I will approve that request and

exclude the Shenk case from the order.

In addition to the securities actions, the

supplemental motion also seeks to stay the plaintiffs in the

following actions from pursuing claims against nondebtor

parties relating to debtors' Acthar Gel product:  The City of

Rockford v. Mallinckrodt, pending in the Northern District of

Illinois; MSP Recovery Plaintiff, Series v. Mallinckrodt,

pending in the Northern District of Illinois; Steamfitters

1   Local Union 420 v. Mallinckrodt, pending in the Eastern

2   District of Pennsylvania; International Union of Operating

3   Engineers Local 542 v. Mallinckrodt, pending in Pennsylvania

4   Court of Common Pleas; and Acument Global Tech v.

5   Mallinckrodt, pending in Tennessee Circuit Court.

6        These cases are collectively referred as the

7   "Acthar litigation matters."  The plaintiffs in these cases,

8   the Acthar plaintiffs, are represented -- they're represented

9   by the same counsel.  For the reasons I am about to explain,

10  the Acthar plaintiffs' objection to the motion is overruled.

11       I will first address the objections raised by the

12  Acthar plaintiffs, and then turn to the Strougo securities

13  litigation.

14       As the Acthar plaintiffs correctly point out, this

15  Court has subject matter jurisdiction over cases that, quote,

16  "relate to" a bankruptcy proceeding, pursuant to 28 USC

17  1334(b).  A proceeding is related to a bankruptcy case if,

18  quote:

19            "-- the outcome of the proceeding could conceivably

20            have any effect on the estate being administered in

21            bankruptcy."

22       Pacor v. Higgins, 743 F.2d 984, at 994 (3d Cir.

23  1984).

24       Thus, if an action could alter the debtors' rights,

25  liabilities, options, or freedom of action, either positively

1  or negatively, and in any way impacts upon the handling and

2  administration of the bankruptcy estate, related to

3  jurisdiction exists.

4  The Acthar plaintiffs argue, however, that the

5  debtors have not established the existence of related to

6  jurisdiction.  I disagree.  The debtors cite to several

7  factors establishing that related to jurisdiction exists,

8  including the assertion of indemnity claims by Express

9  Scripts, a co-defendant in the actions, and its affiliates,

10  collectively referred as "ESI," by submitting discovery

11  demands will be placed on the debtors if the actions against

12  the nondebtors are allowed to proceed; that there is a risk

13  of collateral estoppel and record taint if the actions are

14  allowed to proceed; that the ESI defendants will defend the

15  actions based upon the alleged conduct of the debtors,

16  damages to the debtors' business if the actions proceed,

17  including potential impact on the morale and employees that

18  could result in significant attrition during this critical

19  time; and disruption of the debtors' reorganization by

20  causing other parties that have agreed to a stay to their

21  actions to walk away, including potentially withdrawing from

22  the RSA.  Debtors argue that any one of these factors is

23  sufficient (indiscernible) related to jurisdiction.

24  The Acthar plaintiffs principally argue that

25  related to jurisdiction does not exist pursuant to the

1    purported indemnification claims asserted by ESI.  They argue

2    that the three agreements referred to by ESI in asserting

3    their contractual indemnity claims do not establish a

4    credible claim for indemnity.  In support of this argument,

5    the Acthar plaintiffs point to the language of the indemnity

6    agreements and make legal arguments about whether the claims

7    raised by the Acthar plaintiffs in their cases would fit

8    within the legal requirements for asserting an

9    indemnification claim under those agreements.

10         It is not for this Court to make that -- make the

11   ultimate determination, ultimate ruling on whether the

12   question -- excuse me.  It is not for this Court to make an

13   ultimate ruling on the question of whether ESI indemnity

14   claims will be successful.  The question is only whether

15   potential indemnity claims exist.  Whatever the ultimate

16   answer to the question of indemnification, prudence dictates

17   that the debtor treat its indemnity obligations as very real

18   and substantial.  See In Re American Film Technology, 175

19   B.R. 847 (Bankr. D. Del. 1994) and Sudbury, Inc. v. Escott,

20   140 B.R. 461, at 464 (Bankr. N.D. Ohio).

21         Therefore, based solely on the existence of

22   potential contractual indemnification claims, the Court has

23   subject matter jurisdiction.  See W.R. Grace & Company, 384

24   B.R. 17, at 28 (Bank. D. Del. 2008).

25         Even if I were to find that the ESI -- that ESI's

1    alleged indemnification claims were not valid, the debtors

2    have pointed to several other reasons (indiscernible) why

3    continuing -- excuse me -- why continuation of the litigation

4    against the nondebtor entities would have an adverse impact

5    on the debtors' estates.  Significantly, the Acthar

6    plaintiffs themselves describe the litigations as involving

7    assertions of conspiracy to fix the price of Acthar.  The

8    conspiracy only exists if there's more than one party

9    involved in the alleged conspiracy.

10         The allegations in the complaint show that the

11    claims against the debtors and the nondebtors are

12    inextricably intertwined, creating a risk of collateral

13    estoppel and record taint that would require the debtors to

14    participate in the litigation in order to protect their

15    interests.  The Acthar plaintiffs also admit that they would

16    need to take discovery of debtors' officers and directors in

17    order to establish their claims against the debtors.  And as

18    the debtors noted, ESI will need to defend itself against the

19    claims against the Acthar plaintiffs by pointing to the

20    conduct of the debtors, the party that manufactured and

21    priced the drug for marketing, especially in light of the

22    assertions of joint and several liability against debtors and

23    ESI.  Any of these factors could have an adverse impact on

24    the debtors' estates sufficient to establish related to

25    jurisdiction under 1334.

1          Having established that the Court does have

2    jurisdiction, I will now turn to whether the debtors have met

3    the requirements for imposing an injunction on the

4    continuation of the Acthar actions against nondebtor

5    entities.

6          The Acthar plaintiffs assert that, in order to

7    impose an injunction, the debtors must first establish the

8    existence of unusual circumstances.  These unusual

9    circumstances exist where there is such an identity of

10   interest between the debtor and the third-party defendant

11   that the debtor may be said to be the real party-in-interest,

12   and that a judgment against the third party will in, effect,

13   be a judgment against the debtor.  Citing to W.R. Grace, 386

14   B.R. 17, at 33, and American Film Technologies, 175 B.R. 847,

15   at 851.

16         The Acthar plaintiffs claim that, while both the

17   debtors and ESI are parties to the same actions, quote:

18              "-- their liability is predicated on different acts

19              in the conspiracy, and they do not share the

20              identity of interest required so as to create

21              unusual circumstances" --

22         Sufficient to meet the standard of imposing an

23   injunction.

24         As an example, during argument, the Acthar

25   plaintiffs cite to the Steamfitters case pending in

1    Pennsylvania State Court to say that there are also claims

2    independent of the debtors; specifically, a breach of

3    contract claim between the plaintiffs in that action and ESI.

4    As I will discuss in a moment, I disagree.

5         The debtors counter that they do not need to

6    establish exceptional circumstances because they can also

7    show the right to an injunction based on the separate concept

8    of adverse impact on the debtors' estates.  Moreover, they

9    argue, even if it was necessary to show exceptional

10   circumstances, the debtors have done so by showing that the

11   unmistakable focus of the actions is an alleged conspiracy

12   between the ESI defendants and the debtors to exploit a

13   monopoly controlled by the debtors.  These allegations, the

14   debtors argue, are sufficient to show an identity of interest

15   between the ESI defendants and debtors.  I agree with the

16   debtors.

17        It is not necessary to establish unusual

18   circumstances when the debtor can establish a stay protection

19   was essential to the debtor's reorganization efforts.  As the

20   Third Circuit recognized in McCartney v. Integra National

21   Bank North, 106 F.3d 506, at 510 (3d Cir. 1997), courts have

22   extended the stay in two circumstances:  One, where the

23   debtor shows unusual circumstances, such that there is an

24   identity of interest between the third-party defendant and

25   the debtor; and two, where extending the stay is essential to

1    the debtors' reorganization efforts.

2          Even so, the debtors have shown unusual

3    circumstances in this case.  As Judge Fitzgerald noted in

4    W.R. Grace, the existence of contractual indemnification

5    claims is sufficient to meet the unusual circumstances test.

6    Moreover, in this case, all of the complaints make

7    allegations of similar conspiracy between debtors and the

8    nondebtor defendants.  It would be impossible to proceed

9    against the nondebtor defendants only without creating

10   significant risk of collateral estoppel and record taint, to

11   the point where the debtors would need to participate in

12   those actions to protect their interests.

13         The Acthar plaintiffs' example of proceeding

14   against the ESI defendants in the Steamfitter case is

15   unavailing for two reasons:

16         First, there is no separate cause of action pled in

17   that case for breach of contract against the ESI defendants.

18         Second, even if there was, the ESI defendants would

19   still assert indemnification claims against the debtors --

20   whether those claims would be valid, as I have said, is an

21   issue for another day -- and would likely defend the actions

22   by asserting that the breach was caused by debtors' actions;

23   i.e., setting the price for Acthar, thus bringing us back to

24   square one.

25         I will now turn to whether the debtors have met the

1    four-factor test for imposing an injunction.  Those factors

2    are well established:  One, the likelihood of success on the

3    merits; two, whether continuation of the actions against the

4    nondebtors would cause irreparable harm to the debtors;

5    three, whether the harm suffered by the Acthar plaintiffs

6    substantially outweighs the harm to the debtors; and four,

7    whether the -- whether injunctive relief will further the

8    public interest.

9          Likelihood of success is determined by whether the

10   debtor has demonstrated a reasonable likelihood of success,

11   of a successful reorganization.  See Lane v. Philadelphia

12   Newspapers, 423 B.R. 98, at 106 (E.D.P.A. 2010), and W.R.

13   Grace, 386 B.R. 17, at 33.

14         It certainly is not necessary, at this early stage

15   of the debtors' cases, to require that the debtors prove that

16   they have a confirmable plan.  As noted in Lyondell Chemical

17   Company, 402 B.R. 571, at 590 (Bankr. S.D.N.Y. 2009), quote:

18              "Where the debtors are proceeding on track and have

19              met the challenges faced so far, that is

20              sufficient."

21         As I noted at the beginning of this ruling, the

22   debtors established that they entered bankruptcy with an RSA

23   that included many of the key players in these cases.  They

24   have added to those numbers since the time of the filing.  In

25   addition, all but a few parties involved in the original

1   motion and this motion have agreed to a stay, pending -- have

2   agreed to stay the pending litigation against the debtors, in

3   order to give them the breathing spell they need to work

4   toward a successful reorganization.

5          The Acthar plaintiffs attempt to undermine this

6   evidence by pointing to the potential decline in sales of

7   Acthar, which could have a negative impact on debtors'

8   revenues, and that the Acthar plaintiffs are not parties to

9   the RSA.  Neither of these points are persuasive, and

10   certainly do not overcome the overwhelming evidence put on by

11   the debtors to show that they are, indeed, on track to a

12   successful reorganization and have met the challenges

13   presented so far.  Therefore, the debtors have met the burden

14   of showing likelihood of success.

15          Irreparable harm to the debtors.  The debtors

16   presented extensive evidence at the hearing on the potential

17   harms to the estate if the Acthar litigation goes forward

18   against the nondebtor defendants.  This included the

19   testimony of Stephen Welch and Randall Eisenberg, who

20   testified about the burdensome and distracting discovery that

21   would occur if these actions proceed, the potential indemnity

22   claims against the debtors, the significant cost the debtors

23   would incur in participating in discovery, and the potential

24   significant adverse effects on the restructuring process.

25   This included parties to the RSA potentially withdrawing

53

1    their support.

2         They also testified that it would create

3    significant distraction for senior management, not just in

4    the discovery process, but also in spending time attempting

5    to reassure customers, who might want to (indiscernible)

6    elsewhere for their product in light of the ongoing

7    litigation taint.  This is more than sufficient to meet the

8    burden of showing that the debtors will suffer irreparable

9    harm if the Acthar cases can proceed against the nondebtor

10   entities.

11        As for the potential harm to the Acthar plaintiffs,

12   debtors contend that the only potential harm to the Acthar

13   plaintiffs is the delay in being allowed to pursue their

14   claims, and that delay is not sufficient to overcome the

15   potential harm to the debtors.  The Acthar plaintiffs counter

16   that, if they are not allowed to pursue their causes of

17   action against the nondebtors, their unlawful conduct will

18   continue, causing harm to the patients who must purchase

19   Acthar.

20        In closing statements, counsel for the Acthar

21   plaintiffs argued the Court should not bless the antitrust

22   and RICO conduct of the debtors on its watch.  This

23   presupposes that I am making a finding on whether the

24   debtors, in fact, committed antitrust or RICO violations.  I

25   am not making any findings on those claims, one way or the

54

1   other.   Those issues are for another day.

2           Similarly, I make no findings that any particular

3   person will be unable to purchase Acthar because of pricing

4   issues.   No evidence, other than statements of counsel, was

5   presented on that issue.   The debtors contend that they work

6   with patients to ensure that the -- and the debtors contend

7   that they work with patients to ensure that those who need

8   the drug can get it.   Therefore, I find that the Acthar

9   plaintiffs have not shown that any harm to them will outweigh

10  the harm to the estates, if the injunction is not granted.

11          With regard to whether the injunction will further

12  the public interest, debtors correctly state that, in the

13  context of a bankruptcy proceeding, the public interest

14  element means the promoting of a successful reorganization.

15  American Film Technologies, 175 B.R. at 849.

16          For the reasons I've already articulated, imposing

17  an injunction to stay the Acthar claims for 270 days

18  certainly promotes a successful reorganization.   Indeed, the

19  debtors have already done a great deal in pulling together

20  vastly different constituencies to move these cases forward.

21  The Acthar plaintiffs assert that the Court, quote:

22          "-- should not prevent action to root out corporate

23          misconduct occurring on its watch."

24          Once again, this presupposes that the Court is

25  making findings regarding the nature of debtors' conduct.   I

1    am not.  The stay being imposed in temporal in scope.  It is

2    not a permanent injunction that will prevent the Acthar

3    plaintiffs from pursuing their claims.  They will have that

4    opportunity when the time comes.  Therefore, the debtors have

5    shown that public policy favors granting the injunction.

6         I will now turn to the Strougo securities action.

7    The Strougo plaintiffs do not allege that the Court does not

8    have jurisdiction to consider the proposed injunction.

9    Indeed, the only argument the Strougo plaintiffs make is

10   that, given the procedural posture of the case -- of their

11   case, no irreparable harm would come to the debtors if the

12   case can proceed, at least in the near term.

13        They point out that, currently, the only remaining

14   items to be dealt within the case are the filing of a reply

15   brief by the debtors, in connection with debtors' pending

16   motion to dismiss, and perhaps oral argument on that motion.

17   And they assert that, during the pendency of the motion to

18   dismiss, no discovery can occur.  Counsel also represented

19   that they do not believe the motion to dismiss will be

20   decided for at least six months, if not nine months.  They

21   concede, however, that, once the motion to dismiss is

22   decided, there will either be an appeal, if the case is

23   dismissed, or discovery would begin.

24        I would note that, given the arguments made by

25   counsel at the hearing, it would appear that the Strougo

56

1    plaintiffs are asking us for a lift of the automatic stay to

2    allow the action to proceed, not only against the nondebtor

3    defendants, but also against the debtors.  No motion to lift

4    stay has been filed; and, if there were, the burden of proof

5    would be on the Strougo plaintiffs, not the debtors.

6           Nevertheless, the debtors argue that there would

7    still be some distraction to management in dealing with the

8    motion if it goes forward.  Indeed, several senior members of

9    management are the third parties to that litigation.  But

10   there are no guarantees when the District Court might decide

11   the motion to dismiss, and once decided, the debtors would be

12   forced to come back to this Court to seek a stay of the

13   action if it was appealed or to stop discovery from going

14   forward if it was not, causing further distraction and cost

15   to the estate in seeking a second injunction.

16          Moreover, if the case proceeded only against the

17   nondebtor defendants, issues of collateral estoppel, record

18   taint, indemnification, and depletion of insurance proceeds

19   to which the debtor is a co-insured with the nondebtors would

20   create further issues of irreparable harm to the estates.

21   Therefore, I agree with the debtors and overrule the Strougo

22   objection.

23          So, based on the ruling, the debtors should submit

24   a revised form of order, making reference to the Court's

25   ruling on the record, and I'll enter that order.

57

 1            Any questions?

 2         (No verbal response)

 3            THE COURT:  Okay.  And I guess that's all we have

 4    for today.  Mr. Gott, nothing further, right?

 5            MR. GOTT:  That's correct, Your Honor.

 6            THE COURT:  Okay.  Thank you all very much.  Then

 7    we are adjourned.  I'll see everybody on -- what is it,

 8    December 7th?

 9            MR. GOTT:  Yes, correct.

10            THE COURT:  See everybody December 7th.  Have a

11    good Thanksgiving, stay safe, and we'll see you in a couple

12    of weeks.  Thank you.  We're adjourned.

13            COUNSEL:  Thank you, Your Honor.  Thank you, Your

14    Honor.

15         (Proceedings concluded at 3:07 p.m.)

16                         *****

58

<u>CERTIFICATION</u>

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter to the best of my knowledge and ability.

November 24, 2020

Coleen Rand, AAERT Cert. No. 341

Certified Court Transcriptionist

For Reliable